1

**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**

2

Gregory W. Poulos  (SBN 131428)
Max L. Kelley (SBN 205943)

3

190 The Embarcadero
San Francisco, CA  94105

4

Telephone No.: 415-438-4600
Facsimile No.:  415-438-4601

5

6

**McKASSON KLEIN & HOLMES LLP**
Mark D. Holmes (SBN 156660)

7

600 Anton Boulevard, Suite 650
Costa Mesa, CA 92626

8

Telephone: (714) 436-1470
Facsimile:  (714) 436-1471

9

Attorneys for Plaintiff

10

DEL MAR SEAFOODS, INC.

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

SAN FRANCISCO DIVISION

14

15

DEL MAR SEAFOODS, INC.                    )    Case No.: CV 07-02952 WHA
                                          )
                  Plaintiff,              )    **OPPOSITION TO DEFENDANTS'**

16

                                          )    **MOTION FOR ADMINSTRATIVE**
                                          )    **RELIEF TO SHORTEN TIME FOR**

17

        vs.                               )    **HEARING DEFENDANTS' MOTION**
                                          )    **TO VACATE ORDER OF ARREST**

18

BARRY COHEN, CHRIS COHEN (aka             )
CHRISTENE COHEN), *in personam* and       )

19

F/V POINT LOMA, Official Number           )
515298, a 1968 steel-hulled, 126-gross ton, )

20

70.8- foot long fishing vessel, her engines, )
tackle, furniture, apparel, etc., *in rem,* and )

21

Does 1-10,                                )
                                          )

22

                  Defendants.             )
                                          )

23

24

25

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

26

27

28

Pursuant to Local Rules 6-3 (c) and 7-11 (b) Plaintiff, Del Mar Seafoods, Inc. ("Plaintiff") submits this Opposition to the Defendants' Motion for Administrative Relief ("Motion").

INTRODUCTION

The instant motion for administrative relief should be denied on the following grounds:

1) The Motion is procedurally and substantively defective because one of the moving parties, F/V POINT LOMA Fishing Company, Inc., is a suspended California corporation that lacks the capacity to sue or defend this action; and the other two possible movants –Barry Cohen and Christine Cohen -- do not have any ownership or possessory interest in the Vessel. Consequently they personally lack standing to make any claim or assertion regarding the Vessel.

2) There is no need for an expedited hearing when the moving papers themselves establish that the Defendants are in default under a mortgage and lack the ability to post substitute security for the subject vessel; and

3) The expedited hearing date that the movants seek is a date when Plaintiff's counsel is unavailable and Plaintiff's counsel disclosed this fact to the moving party's counsel in writing before the filing of the Motion.

STATEMENT OF FACTS

The Motion for Administrative Relief ("Motion") purports to have been filed on behalf of the Cohens and F/V POINT LOMA Fishing Company, Inc. ("Company")

According to the verified answer to the complaint, paragraph 7, the ownership of the vessel was transferred from Barry Cohen and Christene Cohen to that corporation prior to filing of the suit.   This fact is also alleged in paragraph 7 of the Declaration of Barry Cohen filed in support of the motion to vacate the arrest and in Exhibit A to that same declaration. In short, defendants have admitted that the vessel is owned by the F/V POINT LOMA Fishing Company, Inc. and neither of the Cohens has retained any possessory interest in the vessel.   Because the Cohens have admitted they transferred the vessel without retaining any

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

possessory interest, only the Company has an interest in the Vessel and standing to contest the arrest.

Defendants have also admitted that the Company took title and possession of the Vessel subject to the First Preferred Ship Mortgage. Plaintiff does not dispute that the ownership of the Vessel was so transferred, although the propriety of the transfer is an issue.

The Company is a suspended corporation due to non-payment of taxes. Attached as Exhibit 1 is a copy of the printout from the Secretary of State showing that the company is suspended. Plaintiff's counsel has ordered on an expedited basis a certified copy of the Certificate of Status for the Corporation, which Plaintiff's counsel expects to receive from the California Secretary of State in the next seven to ten business days. This information was brought to the attention of the defendants' counsel in a letter from plaintiff's counsel on July 2, 2007, a copy of which is attached as Exhibit 2. This was also brought to defendants' attention again on July 9 prior to their filing of the present motion. Exhibit 3.

In addition, defendants' counsel has admitted that the *in personam* defendants lack the funds necessary to obtain a bond to secure the vessel's release. In his letter of June 27, 2007 defendant's counsel wrote that "Del Mar must have been aware the Mr. Cohen would not likely be able to bond the vessel and, in fact, he cannot do so." Exhibit 4, page 2. In summary, this motion has been brought by a company that has been suspended for non-payment of taxes and *in personam* defendants that do not have the resources to pay a judgment if one is obtained. The only security is the vessel that they want to have released from arrest.

Plaintiff's counsel also informed defendants' counsel before the pending motion was filed that the proposed hearing date of August 2, 2007 conflicted with counsel's pre-planned vacation schedule and that it would also be best to coordinate the hearing with other Motions to Dismiss that Plaintiff is filing. Apart from confirming that the plaintiff's counsel was unavailable on the earlier hearing date, no meet and confer process was undertaken.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafood/2504

2

ARGUMENT

1) The Motion is Procedurally Defective Since the Moving Parties Lack Capacity or Standing to Assert the Motion:

Defendants have admitted that the F/V POINT LOMA is now owned by the F/V POINT LOMA Fishing Company, Inc. ("Company")  No other person has been alleged to have any ownership or possessory interest in the vessel.

The Company, a corporation, is the only entity that has standing to seek to vacate the arrest of the vessel under Supplemental Rule E(4)(f) (motion may be brought by a person "claiming an interest in [the vessel]").  In this case, however, the Company is a suspended corporation under California law.

A suspended corporation may not sue or defend a suit in California.  Calif. Revenue & Tax Code §23301. Timberline, Inc. v. Jaisinghani, 54 Cal. App. 4th 1361 (Cal.App. 2d Dist. 1997).  Indeed, the Courts have held that "The plain language of Revenue and Taxation Code section 23301 "expressly deprives the corporation of all 'corporate powers, rights and privileges' . . . ." Timberline, Inc. v. Jaisinghani, supra at 1366, citing *Boyle* v. *Lakeview Creamery Co.*, 9 Cal.2d 16, 20.

Since the only entity that has standing under Federal law to bring the motion for administrative relieve and the motion to vacate is a suspended Corporation which lacks capacity to sue or defend an action, the motion should be denied.

2.    There Is No Need For Expedited Hearing

Local Rule 6-3(a)(3) requires the plaintiff to show by declaration the "substantial harm and prejudice" that would result from having the hearing held on its normal schedule. The only harm that the defendants have identified is a loss of income.

This is the same harm that has already been suffered by the Plaintiff which has suffered from a non-payment under the Note and Mortgage, and a significantly wasting of and loss in value of the asset – the Vessel- that is supposed to be collateral for the Note and Mortgage.  Indeed, it is Plaintiff that is bearing the expense of keeping the Vessel under arrest!  Financial loss by either side, by itself should not be considered a substantial harm since it can always be remedied by a payment of damages.

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO SAN FRANCISCO, CA 94105 TEL 415-438-4600 FAX 415-438-4601

DelMarSeafoods/2504

Moreover, the Defendants' alleged "harm" is only suffered if in fact there is likely to be a release of the vessel ordered at the hearing. Based on the fact that there is an obvious factual issue developed by the pleadings (with the parties disputing whether there has been an act of default under the Mortgage and Note – See Holmes Declaration and Exhibit 2), it should be considered unlikely that the Court would order a release of the Vessel, the security provided for under the Note and Mortgage. This is particularly true where, as here:

1) The corporation that now owns the vessel has defaulted on its taxes and is a suspended under California law,

2) Defendants have admitted through their counsel that they lack the financial ability to secure even a bond that would release the Vessel from arrest;

3) Barry Cohen has admitted he has no assets or sources of income beyond social security checks which are not typically subject to levy (See Cohen's Declaration filed in support of the motion); and

4) A fishing vessel is a highly mobile asset that can leave the District in a matter of hours, and the United States in twenty-four hours, the Vessel in this case could easily disappear after being released from arrest; be sold in a foreign country; and never to be seen or found again.

In short, the Defendants themselves have shown that there is a real risk that they will not pay the Note and Mortgage. These facts alone justify keeping the Vessel under arrest until the rights and liabilities of the parties can be determined.

3.     The Early Hearing Date Conflicts with Counsel's Pre-Planned Vacation

The Declaration of Gregory W. Poulos filed in opposition to the Motion for Administrative Relief shows that the undersigned counsel will be out of State on a pre-planned, pre-paid family vacation from July 22 until August 6, 2007. Co-counsel Mark Holmes will also be on a pre-planned vacation between July 28 and August 12, 2007. See Declaration of Holmes, par. 8-9. Plaintiff contends that Defendants' counsel did not adequately bring these facts to the Court's attention either.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

<u>Conclusion</u>

The moving papers have been filed on behalf of a suspended corporation that is prohibited by law from prosecuting, defending or even appearing this action; and the other moving parties, the Cohens, have no standing because they do not have an ownership or possessory interest in the Vessel.  On this basis alone the Motion should be denied.

In addition, the Defendants have failed to establish that they will suffer substantial harm if the hearing is not held pursuant to the Court's normal procedures; and the proposed hearing date is a date on which the undersigned counsel for Plaintiff is unavailable and will be out of the State.

For all of the above reasons, the Motion for Administrative Relief to schedule an early hearing date should be denied.


Dated: July 11, 2007                         COX, WOOTTON, GRIFFIN,
                                             HANSEN & POULOS, LLP
                                             Attorneys for Plaintiff
                                             DEL MAR SEAFOODS, INC.


                                      By: _____
                                             Gregory W. Poulos

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

5

# EXHIBIT 1

Westlaw.

CA02713874                                                                Page 1

CA02713874

### CORPORATE RECORDS & BUSINESS REGISTRATIONS

This Record Last Updated:     06/05/2007
Database Last Updated:        06-06-2007
Update Frequency:             WEEKLY
Current Date:                 06/08/2007
Source:                       AS REPORTED BY THE SECRETARY OF STATE OR OTHER OFFICIAL
                              SOURCE

THIS DATA IS FOR INFORMATION PURPOSES ONLY.  CERTIFICATION CAN ONLY BE OBTAINED
THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

### COMPANY INFORMATION

Name:                         **F/V POINT LOMA** FISHING COMPANY, INC.
Address:                      7121 FERN FLAT ROAD
                              APTOS, CA 95003

### FILING INFORMATION

Identification Number:        C2713874
Filing Date:                  01/03/2005
State of Incorporation:       CALIFORNIA
Status:                       SUSPENDED
Corporation Type:             PROFIT
Business Type:                CORPORATION

Where Filed:                  SECRETARY OF STATE/CORPORATIONS DIVISION
                              1500-11TH STREET
                              SACRAMENTO, CA 95814

### REGISTERED AGENT INFORMATION

Name:                         BARRY COHEN
Address:                      7121 FERN FLAT ROAD

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CA02713874                                                                    Page 2

APTOS, CA 95003

**PRINCIPAL INFORMATION**

Name:                       BARRY COHEN
Address:                    7121 FERN FLAT ROAD
                           APTOS, CA  95003


**AMENDMENT INFORMATION**


Amendments:                06/01/2007 FRANCHISE TAX BOARD SUSPENSION

**TAX INFORMATION**


Franchise Tax Details:
        Status:            SUSPENDED


            Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
           to order copies of documents related to this or other matters.
                         Additional charges apply.

THE PRECEDING PUBLIC RECORD DATA IS FOR INFORMATION PURPOSES ONLY AND IS NOT THE
OFFICIAL RECORD.  CERTIFIED COPIES CAN ONLY BE OBTAINED FROM THE OFFICIAL SOURCE.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

From: 7144361471     Page: 1/10     Date: 7/2/2007 3:33:56 PM



McKASSON**KLEIN**

CONFIDENTIALITY NOTICE: THIS FAX IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO
WHICH IT IS ADDRESSED. THE TERMS "PRIVILEGED" AND "CONFIDENTIAL" INCLUDE ATTORNEY-CLIENT COMMUNICATIONS, ATTORNEY WORK PRODUCT,
TRADE SECRETS AND OTHER PROPRIETARY INFORMATION. NOTHING IN THIS FAX IS INTENDED TO CONSTITUTE A WAIVER OF THE CONFIDENTIALITY OF
THIS MESSAGE. IF THE READER IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING
OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY
TELEPHONE AND DESTROY THE ORIGINAL FAX. THANK YOU.

July 2, 2007

To:     Greg Poulos, Esq.

From:     Mark Holmes, Esq.

Receiving Fax:     (415) 438-4601

Re:     Del Mar Seafoods v. F/V POINT LOMA . . . .

Page 1 of 10

If there is a problem with this transmission or you do not receive all pages, please contact us.

MESSAGE:

MᴄKASSON ▫ KLEIN ▫ HOLMES ▫



Mark D. Holmes
E-Mail:
MHOLMES@MCKASSONKLEIN.COM

Direct Line:
(714) 345-9993

July 2, 2007

**By Facsimile and U.S. Mail**
**James P. Walsh, Esq.**
**DAVIS WRIGHT & TREMAINE LLP**
**505 Montgomery Street, Suite 800**
**San Francisco CA 94111-3611**

> Re:  **Del Mar Seafoods, Inc. v. Barry Cohen, et al.**
>       **United Status District Court For The Northern District**
>       **Civil Case No. C-07-2952-WHA**

Dear Mr. Walsh:

We respond to your letter dated June 27, 2007.

### The Cohens Are In Default; And Del Mar Was And Is Fully Justified In Arresting The Vessel

We have explained our client's position at length in our last letter. Your June 27 letter merely disputes our client's assertions. Your main assertion is that the $175,000 Mr. Cohen paid in November of 2005 was agreed to go against the initial indebtedness, instead of the "advances" under the Note and Mortgage......

As I explained in my last letter, we have written evidence, course of dealing, custom and practice and direct witness testimony to support our client's position.

As to the documentation you have provided, the schedule you have provided is a fiction, much like your client's position in this matter. The checks you have provided merely confirm the correctness of Del Mar's position.

By contrast, although I referenced some documentation in my earlier letter, we are presently assembling a significant volume of documentation that supports Del Mar's assertions. I have attached to this letter the statement that Del Mar sent to Mr. Cohen on 11-15-2005 showing the payments made under the Note and Mortgage as of that date ("Statement"). (See top left corner of the Statement).

## McKASSON ▪ KLEIN ▪ HOLMES



James P. Walsh, Esq.
Cohens/F/V Point Loma Fishing Company, Inc.
F/V POINT LOMA
July 2, 2007
Page No. 2

The Statement shows the list of debts subject to the Note and Mortgage going across the top of the page described as — Michael Cohen; Olde Port Inn; Inventory; Point Loma; Barry and Total. (See top of Statement).

The beginning balances for each debt under the Note and Mortgage are listed underneath the description of the debt on the Statement. On the bottom of the Statement, is the application of the $175,000 payment that Cohen made on 11-10-2005. As you can see on the Statement, the Michael Cohen, Olde Port Inn; Inventory; and Point Loma debts were completely paid off, **the Barry debt was only reduced**.

Mr. Cohen received and accepted the Statement without objection; and as the documentation you provided in your June 27 letter clearly shows, **the Cohens continued to make payments despite Del Mar advising Barry Cohen as to how Del Mar had applied the $175,000 payment.**

### Del Mar Now Has A Clear Understanding Why The Cohens Have Not Posted A Bond To Release The Vessel

You state in your June 27 letter that the bonding companies "require that the full amount of your client's claim ($180,000) be secured by real estate, cash or a bank letter of credit. The bonding companies then demand another percent (2-4%) to provide the guarantee. Del Mar must have been aware that Mr. Cohen would not likely be able to bond the vessel **and, in fact, he cannot do so.**" See your June 27 letter, page 2.

Therefore, just as we previously asserted in our letter, bonding companies are available to bond out the Vessel — you as an experienced maritime lawyer must have known this.

The real problem is that the Cohens' financial situation is apparently in such a shambles that they and their company, F/V Point Loma Fishing Company, Inc. ("Corp.") have no creditworthy assets available to bond out the Vessel.

In response to my letter, you have failed to disavow that the Cohens are in the process of divorce; or that the Cohens face a $1 million judgment against them for attorney's fees as a result of the Cohens' lawsuit against the Port in Avila Beach. Instead, you have confirmed Del Mar's worst fears regarding the Cohens and their Corp's financial position:

McKASSON ▫ KLEIN ▫ HOLMES



James P. Walsh, Esq.
Cohens/F/V Point Loma Fishing Company, Inc.
F/V POINT LOMA
July 2, 2007
Page No. 3

Consequently, it is the default in the payments on the amounts due under the Note and Mortgage, and ever growing instability in the Cohens' and Corp.'s finances (now confirmed by you) that have caused Del Mar to foreclose on the Note and Mortgage.

## Del Mar's Interpretation of the Note, Mortgage and Relevant Law Is Correct

As to the order you sent from a Western District of Washington case in 1998, the order is apparently unpublished — we have not been able to find any citation to this order anywhere.

In addition, the orders does not contain any the detailed analysis found in the published cases we have cited, which also happen to be factually on point. The order you provided contains none of this analysis; and the facts of the underlying case -- from what we can discern from the order -- appear to be significantly different from the cases we have cited; and the present case. Most importantly, any suggestion that the unpublished order you have provided is "Ninth Circuit" law is unfounded.

By contrast, Lush v. TERRI AND RUTH F/V, 324 F.Supp.2d 90, 93 and Gowen, Inc. v. F/V Quality One, 2000 WL 893402, *2 n. 5 (D.Me.2000) are reported, as are Gowen, Inc. v. F/V Quality One, 244 F.3d 67-70 (1st Cir. 2001); PNC Bank Delaware, v. F/V MISS LAURA , 381 F.3d 183,185 (3rd Cir. 2004) (Gowen distinguished on factual grounds); see also Motor Services Hugo Stamp, Inc. v. M/V ROYAL EMPRESS, 165 Fed. Appx. 837, 840 (11th Cir. 2006) (cited Gowen in support of conclusion fishing permits are appurtenances to vessel).

Further, the Cohens and Corp. have been placed on written notice that they should not attempt to sell the fishing permit. **In that regard, we ask your clients to stipulate in writing that the fishing permit is an "appurtenance" of the Vessel and, therefore, under arrest by no later than July 6, 2007.** Otherwise, we will be compelled to seek assistance from the Court to clarify that the fishing permit is an "appurtenance" and request that it be placed in the hands of the Marshal pending resolution of this matter, as Del Mar does not want any confusion as to its position with respect to the fishing permit.

McKASSON • KLEIN • HOLMES



James P. Walsh, Esq.
Cohens/F/V Point Loma Fishing Company, Inc.
F/V POINT LOMA
July 2, 2007
Page No. 4

## Del Mar Would Like To Mediate This Matter In The Near Future

Del Mar would like to mediate this matter as soon as possible. What would help Del Mar move forward more quickly is a written stipulation by your clients that the fishing permit is an "appurtenance" of the Vessel subject to the Note and Mortgage.

Del Mar also requests that your clients reconsider the defective Answer and Counter Claim your clients have filed against Del Mar.

First, Mr. Cohen on behalf of himself and F/V Point Loma Fishing Company, Inc. ("Corp") verified that Corp – not the Cohens – now owns the Vessel. Consequently, we do not understand how the Cohens have standing to make a claim of wrongful arrest against Del Mar when they no longer own the Vessel. In addition, if anyone has suffered any losses as a result of the arrest, it is Corp., not the Cohens, which is again a standing problem.

Second, Mrs. Cohen has not verified either the Answer or the Counter Claim, rendering it defective on that ground as well.

Third, we understand Corp. has been suspended by the California Franchise Tax Board for failure to pay taxes. Consequently, we request that the Answer and Counter Claim, and the Claim, filed with the Court on its behalf be dismissed immediately, and remained dismissed until Corp has revived its status with the State of California. In short, Corp. does not have the capacity to defend or prosecute a claim before the Court at present. A copy of the Westlaw record with respect to Corp. is enclosed herewith.

Fourth, your clients have alleged Del Mar wrongfully arrested the Vessel. With respect to a claim for wrongful arrest, the burden is on the party pressing the claim to demonstrate that the arresting party acted with bad faith, malice, or gross negligence. See Result Shipping Co. v. Ferruzzi Trading USA, Inc., 56 F.3d 394, 402 n. 5 (2d Cir.1995); Furness Withy (Chartering), Inc. v. World Energy Sys. Assoc., 854 F.2d 410, 411 (11th Cir.1988); Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir.1937). This showing of bad faith, malice, or gross negligence is an essential element to a claim for wrongful arrest. See, e.g., Parsons, Inc. v. Wales Shipping Co., 1986 WL 10282, at *3 (S.D.N.Y. Sept. 9, 1986) (dismissing a counterclaim for wrongful attachment due to counterclaimant's failure to demonstrate bad faith); see also Frontera Fruit Co., 91 F.2d at 297 ("The gravamen of the right to recover damages for seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party.").

McKASSON ▪ KLEIN ▪ HOLMES



James P. Walsh, Esq.
Cohens/F/V Point Loma Fishing Company, Inc.
F/V POINT LOMA
July 2, 2007
Page No. 5

In the present case, your clients have not alleged any facts suggesting, bad faith, maliciousness or gross negligence. *At most*, they may have raised a factual dispute as to the application of the $175,000 payment Cohen made in November of 2005.

By contrast, you have already been advised of a statement sent to Mr. Cohen shortly after he made the payment – showing how the payment was applied. We have also attached a copy of that statement with this letter – as a further gesture of good faith on Del Mar's part – that shows Del Mar sent the Statement to Cohen on 11-15-2005, five days after he made the $175,000; and it is undisputed that Cohen accepted the Statement and its allocation regarding the payment against the debts described on the Statement without objection; and even kept making payments thereafter.

Your clients' Counter Claim, therefore, does not even come close to supporting an allegation of "bad faith, malice or gross negligence." Rather, it is becoming ever clearer that it is the Cohens who are taking a bad faith position in this matter.

Therefore, before we can discuss mediation in this matter, the Cohens and Corp need to fix the obvious defects in their pleadings (largely by dismissing their Counter Claim and Corp's claim) and realize they do not have a case for wrongful arrest against Del Mar.

**If your clients do not dismiss the Answer and Counter Claim, and Claim by Corp., by July 6, 2007, I am instructed to file Motions to dismiss and otherwise address the defects in these pleadings.**

After the Cohens come to the foregoing realizations (or the Court has dismissed the Answer, Counter Claim, and Claim), Del Mar is willing to sit down with the Cohens and work out an equitable settlement of the matter – and will not rule out the possibility of buying the Vessel and the Vessel's fishing permit from the Cohens (or Corp.) at their fair market value after an independent appraisal of their value.

If the Cohens are unable to bond out the Vessel, and do not wish to continue litigating this matter while the Vessel is under arrest, please advise whether the Cohens are interested in pursuing settlement of the matter under circumstances broadly outlined in the above paragraph.

I look forward to your response.

McKASSON ▪ KLEIN ▪ HOLMES



James P. Walsh, Esq.
Cohens/F/V Point Loma Fishing Company, Inc.
F/V POINT LOMA
July 2, 2007
Page No. 6

Yours truly,

Mark D. Holmes

Enclosures:  11-15-2005 Del Mar Statement sent to Barry Cohen
             Secretary of State Record re Suspension of Corp.

1/10/2006 22:01 FAX 828 860 9120    MILLER LAWN    T-131   P.002/009   F-232

11-15-2005   08:55AM   FROM-DEL MAR SEAFOODS INC 00

Del Mar Seafoods, Inc.
Schedule of Payments

| | Michael Cohen | Chris Paulson | Inventory | Fred Ladd | Perry | Total |
|---|---|---|---|---|---|---|
| Beginning Balance | 13,901.40 | 10,089.10 | 10,502.24 | 16,021.31 | 237,035.41 | 286,480.50 |
| 12/20/2004 Berry Payroll | | | | | (7,000.00) | (7,000.00) |
| 8/24/2005 Advance Payments | | | (1,474.70) | | | (1,474.70) |
| 8/24/2005 Chris Paul PYMT | | | (1,000.00) | | | (1,000.00) |
| 11/10/2005 Unused | | | (1,500.00) | | | (1,500.00) |
| 11/10/2005 Payment from Perry | (13,901.40) | (10,089.10) | (6,000.00) | (16,021.31) | (137,232.70) | (176,500.00) |
| Ending Balance | | | | | 111,864.75 | 111,864.75 |

Page 2 of 3

Westlaw.

CA02713874

Page 1

CA02713874

CORPORATE RECORDS & BUSINESS REGISTRATIONS

This Record Last Updated:       06/05/2007
Database Last Updated:          06-06-2007
Update Frequency:               WEEKLY
Current Date:                   06/08/2007
Source:                         AS REPORTED BY THE SECRETARY OF STATE OR OTHER OFFICIAL
                                SOURCE

THIS DATA IS FOR INFORMATION PURPOSES ONLY.  CERTIFICATION CAN ONLY BE OBTAINED
THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

COMPANY INFORMATION

Name:                   F/V POINT LOMA FISHING COMPANY, INC.
Address:                7121 FERN FLAT ROAD
                        APTOS, CA 95003

FILING INFORMATION

Identification Number:  C2713874
Filing Date:            01/03/2005
State of Incorporation: CALIFORNIA
Status:                 SUSPENDED
Corporation Type:       PROFIT
Business Type:          CORPORATION

Where Filed:            SECRETARY OF STATE/CORPORATIONS DIVISION
                        1500-11TH STREET
                        SACRAMENTO, CA 95814

REGISTERED AGENT INFORMATION

Name:                   BARRY COHEN
Address:                7121 FERN FLAT ROAD

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CA02713874                                                                    Page 2

APTOS, CA 95003

PRINCIPAL INFORMATION

Name:                          BARRY COHEN
Address:                       7121 FERN FLAT ROAD
                               APTOS, CA  95003


AMENDMENT INFORMATION

Amendments:                    06/01/2007 FRANCHISE TAX BOARD SUSPENSION

TAX INFORMATION

Franchise Tax Details:
        Status:                SUSPENDED

            Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
            to order copies of documents related to this or other matters.
                            Additional charges apply.

THE PRECEDING PUBLIC RECORD DATA IS FOR INFORMATION PURPOSES ONLY AND IS NOT THE
OFFICIAL RECORD.  CERTIFIED COPIES CAN ONLY BE OBTAINED FROM THE OFFICIAL SOURCE.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**

**Gregory W Poulos**

07/09/2007 04:00 PM

To: "Walsh, James" <budwalsh@dwt.com>
Subject: RE: Point Loma Arrest

Dear Mr. Walsh:

      This is to confirm our telephone conversation of a few minutes ago regarding your efforts to meet and confer regarding an expedited hearing on the proposed motion under Supplemental Rule E(4)(f). You informed me that the motion would be set for hearing on August 16 but that you plan to ask the Court for an expedited hearing to be held on August 2. I informed you in the initial call that I have a pre-planned and pre-paid family vacation at that time. I will in fact be in Oregon from July 22 until August 6. You asked about the availability of Mr. Holmes to cover the hearing, and I told you that as I am the local counsel I would prefer to have the hearing when I am available, but I also agreed to check with Mr. Holmes regarding his availability. Mr. Holmes has now informed me (and I have left a message on your office voice mail confirming) that he is also on vacation until August 12. As a result, he too is unavailable on the proposed August 2 date.

      I have specifically asked that you bring these conflicts to the Court's attention when you file the motion seeking an expedited hearing. As it is clear that there is a conflict with pre-scheduled vacations of counsel, I believe it is inappropriate for you to seek an expedited hearing on dates that you know the opposing counsel is unavailable.

      I also have informed you that we will be filing motions as well, and that as a result coordination of the motions for common hearing on August 16 makes the most sense. Mr. Holmes has written to you explaining the motions that Del Mar will be making, but to emphasize, one of them will be a motion to strike the answer of F/V Point Loma Fishing Company on the basis that it has been suspended for non-payment of taxes and therefore lacks capacity to defend the suit or, in this particular case, to file motions seeking to vacate the arrest. It is our view that further pleadings filed on behalf of a suspended corporation raises a Rule 11 issue.

      We look forward to your clients' response.

      Best regards,

      Gregory Poulos

Gregory W. Poulos
Partner
Cox, Wootton, Griffin, Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, CA 94105
Voice: (415) 438-4600 x201
Fax: (415) 438-4601
E-mail: mailto:gpoulos@cwghp.com
Website: http://www.cwghp.com

*****************************************************

PRIVILEGE AND CONFIDENTIALITY NOTICE
The information in this electronic mail is intended for named
recipients only. It may contain privileged or confidential matter.
If you received this electronic mail in error, please notify the
sender immediately by replying to this electronic mail or by
collect telephone call to (415) 438-4600 x201. Do not disclose
the contents of this electronic mail to anyone.

**EXHIBIT 4**

LAWYERS



# Davis Wright Tremaine LLP

ANCHORAGE     BELLEVUE     LOS ANGELES     NEW YORK     PORTLAND     SAN FRANCISCO     SEATTLE     SHANGHAI     WASHINGTON, D.C.

JAMES P. WALSH
DIRECT (415) 276-6556
budwalsh@dwt.com

SUITE 800
505 MONTGOMERY STREET
SAN FRANCISCO, CA 94111-6533

TEL (415) 276-6500
FAX (415) 276-6599
www.dwt.com

June 27, 2007

**VIA EMAIL AND REGULAR MAIL**

Mr. Mark D. Holmes
McKasson Klein & Holmes LLP
Anton Blvd., Suite 650
Costa Mesa, CA  92626

Re:    Del Mar Seafoods, Inc. v. Barry Cohen, et al., Case No. C-07-02952 (WHA), Federal
        District Court, Northern District of California; Settlement Discussions Protected by
        Federal Rule of Evidence 408

Dear Mr. Holmes:

I am responding to your letter of June 21, 2007 in which your client rejects our request that the F/V POINT LOMA be released by stipulation so that it may continue its fishing business. The purposes of this letter are (1) to respond to your client's allegations and clarify certain issues; (2) to point out the unsound business decision made by your client to seize the vessel; and (3) to renew the request for a release by stipulation. As you know, we filed the Answer and Counterclaim on Monday.

**Arrest of the Vessel: No Events of Default Occurred**

Your client's reasons for arresting the vessel are not at all persuasive and show a lack of the rigorous pro and con analysis that any lender should engage in before taking a legal remedy of last resort. We understand that the Promissory Note and Ship Mortgage were drafted by your client's attorneys and that the Cohens were not represented by counsel during the negotiation of the Note and Mortgage. Clearly, many of the provisions lack balance in their treatment of the rights of the parties to the Note. As you know, in these circumstances, the Court will interpret the Note and Mortgage in a light more favorable to our client, not yours, where uncertainties may arise.

Mr. Mark D. Holmes
June 27, 2007
Page 2



First of all, the only basis under the Note for foreclosing the lien on the vessel is a failure to make the $3,000 monthly payments. Mr. Cohen, at your client's request, made a $175,000 advance payment under the note that covers 37 monthly payments from November 2005. He did so by mortgaging his home. Not only did the advance payment reduce the size of the overall indebtedness under the Note, it allowed him to be current on the note until 2009. In fact, your client admits these facts. Thus, we do not understand how Mr. Cohen can be in default if he prepaid the $3,000 monthly payments through early 2009.

Second, your client's fears and speculations are not grounds for declaring the balance immediately due and payable under the Note or Mortgage: affirmative acts or a good faith assessment of current net asset positions or other affirmative events are required. Your client, because Del Mar never sought to give notice and learn in good faith as to whether the vessel business itself was at risk of default, jumped the gun here. The mention of bankruptcy in your letter was occasioned by the seizure of the vessel, not by any other event. Ironically, your client may very well have created the financial problems the company is worried about.

Third, the decision to declare default makes no business sense. The F/V POINT LOMA is a functioning business asset. At present, the vessel is Mr. Cohen's only source of income, other than his social security. Del Mar had previously employed Mr. Cohen but summarily dismissed him in November 2006, in addition to having various prior business dealings with him that have ended. The bonding companies we contacted require that the full amount of your client's claim ($180,000, more or less) be secured by real estate, cash or a bank letter of credit. The bonding companies then demand another percent (2-4%) to provide the guarantee. Del Mar must have been aware that Mr. Cohen would not likely be able to bond the vessel and, in fact, he cannot do so. Thus, your client has deprived Mr. Cohen of his ability to make the final payments on the vessel because it deprived him of the ability to do so through use of the vessel.

Finally, your client surely understands that, with respect to any other debt there may be, Del Mar's first preferred ship mortgage places it well ahead of other lenders. But, by seizing the vessel, the custodian charges will now diminish the secured position of Del Mar in the vessel, besides requiring additional cash outlays by the company. Moreover, because the issues in this case will be vigorously contested, it surely occurred to your client that the transaction cost of this litigation will put Del Mar in an even less secure position. Again, your client seems bent on making the financial situation worse for itself, not better.

**Advances: Del Mar's Breathtaking Interpretation of the Note and Mortgage Is Not Correct**

As you have admitted, the basis of your client's claims as to the so-called "advances" the company has made depend on Del Mar's unilateral assertions. Your letter included no contemporaneous written evidence of Del Mar's claims in this regard, only an after-the-fact spreadsheet prepared, no doubt, to support Del Mar's weak assertions in hindsight. At a minimum, some strong evidence of a course of dealing is required to show that the parties agreed that totally unrelated existing debts, which by definition are not advances for the operation of the

Mr. Mark D. Holmes
June 27, 2007
Page 3



vessel, should be added to the Note and Mortgage. You mention "documentation and sworn evidence" on these points, but provide none. Attached is our client's calculation of the payments he has made and copies of all the cancelled checks evidencing those payments.

Del Mar appears to believe that the Note and Mortgage gives it the right to treat as "advances" almost any debt that relates in some way to the Cohens, even if it does not relate at all to the operation of the vessel, which is the reason why the agreements were entered into in the first place. The idea that the Ship Mortgage should become the "security" of last resort at Del Mar's whim makes no sense in light of the clear purpose of the original loan. Additionally, the idea that Del Mar now claims that the Note was not in the amount of $215,000.00 at the time it was entered into, but rather $237,035.48, does not even pass the red face test.[1] Moreover, the notion that Mr. Cohen agreed to these so-called advances because he failed to object to information provided well after the fact by Del Mar is not very convincing. Also quite amazing is the notion that Mr. Cohen, after being fired by Del Mar, agreed to add even more unrelated debt (debts of other entitles, Del Mar's legal fees) to the Note and Mortgage.

As the Answer and Counterclaim indicates, Mr. Cohen strongly denies that he agreed to any of these vessel-unrelated "advances" or expansion of the original debt of $215,000. No doubt this issue will be the subject of discovery in the days to come.

**The Fishing Permits and Fishing History**

Contrary to your letter, the Ninth Circuit has not definitively ruled on the question of whether the lien of a ship mortgage on a fishing vessel applies to the fishing permits that may be used on the vessel, which, by the way, often are issued to an individual and are transferable and do not presumptively transfer with the vessel at sale. The First Circuit has ruled, as you suggest, that fishing permits are "appurtenances" to the vessel and part of the lien of the mortgage. *Gowen, Inc. v. F/V Quality One*, 244 F.3d 1478 (1st Cir. 2001). But we are in the Ninth Circuit. At least one senior and respected federal district judge has ruled that fishing permits are intangibles and must be listed in the ship mortgage to be covered by the lien on the vessel. Attached is Judge Rothstein's ruling on this point in *Western Pioneer v. F/V Tenacity*. The Maine District Court you referred to, 2000 WL 893402, *2 n.5 (2000), did not rely on the *Bank of America* case you cited because the Ninth Circuit in that case did not directly rule as to whether fishing permits are intangibles or appurtenances.

The issue generally does not come up much any more because most lenders early on included fishing permits and fishing history in the definition of what was covered by a ship mortgage. Quite clearly, the Note and the Mortgage in this case do not include fishing permits or

---

[1]    This weakness is underscored by your citation to a 1932 New York case as the precedent for this proposition, a 75-year old case which involved the confusion created by the existence of two separate notes.

Mr. Mark D. Holmes
June 27, 2007
Page 4



fishing history. It therefore appears that your client made a mistake in failing to include fishing permits or fishing history in the Note and Mortgage.

**Conclusion: Stipulate to the Release of the Vessel and Send the Case to Mediation**

Given the amount of money involved, it makes no sense to go to full-blown litigation in this case. We should discuss a stipulated release that would keep the vessel operating and your client's security available by agreement. The dispute should go to mediation to try to work out something sensible that allows payment of the amounts that are truly due on a reasonable schedule.

If this proposal is of interest to your client, please give me a call at (415) 276-6556.

Very truly yours,

Davis Wright Tremaine LLP

By     James P. Walsh

cc:     Barry Cohen
        Gwen Fanger
        Hank Niles

Attachments