**COX, WOOTTON, GRIFFIN,
HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**McKASSON KLEIN & HOLMES LLP**
Mark D. Holmes (SBN 156660
600 Anton Boulevard, Suite 650
Costa Mesa, CA 92626
Telephone: (714) 436-1470
Facsimile: (714) 436-1471

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. | Case No.: CV 07-02952 WHA <br><br> **OPPOSITION TO DEFENDANTS' MOTION TO VACATE ORDER OF ARREST** <br><br><br> Date: August 16, 2007 <br> Time: 8:00 a.m. <br> Courtroom 9, 19th Floor <br> Hon. William H. Alsup |

Plaintiff Del Mar Seafoods, Inc. ("Plaintiff" or "Del Mar") submits this Opposition to the Defendants' Motion To Vacate Arrest ("Motion").

/ / /

/ / /

/ / /

## I. THE BASIS FOR THIS MOTION

The Defendants' Motion to Vacate the Arrest should be denied on the following grounds:

1) The Court has jurisdiction over this matter; and

2) Based on the Verified Complaint and attachments thereto, and the declarations of Joe Cappuccio and Joe Roggio, Plaintiff Del Mar's President and Controller, respectively, Del Mar has met its burden to make a *prima facie* showing that it had probable cause and reasonable grounds on which to arrest the Vessel.

Furthermore, as set out in Plaintiff's previously filed Motion to Dismiss the Cohens' Counterclaim, Defendants Barry Cohen ("Cohen") and Christene Cohen (collectively "Cohens") do not have any ownership or possessory interest in the Vessel. Consequently they personally lack standing to contest the arrest of the Vessel.

## II. STATEMENT OF RELEVANT FACTS

### 1. The Note and Mortgage

In 1999, Del Mar and Cohen formed the Olde Port joint venture (the "joint venture") for the purpose of buying, processing and selling fish from a site that Cohen leased in Port San Luis in Avila Beach, California. During the course of the joint venture, between 1999 and 2003, Del Mar advanced the Cohens substantial amounts of money. Del Mar become concerned about Cohens ability to repay the money it had advanced the Cohens and requested that the Cohens provide collateral to secure Del Mar's advances. *See*, Declarations of Joe Cappuccio and Joe Roggio ( collectively, "Cappuccio and Roggio Decs."), at ¶ 10.

In order to provide the collateral requested by Plaintiff, the Cohens entered into the Promissory Note ("Note") and First Preferred Ship's Mortgage ("Mortgage") at the end of October of 2003 in the original amount of $215,000. Under the terms of the Note, the Cohens were to make:

> monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on January '04 and on the 15th day of each succeeding

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1  month until principal and interest are fully paid. Payments are to be applied to interest first.

2  Cappuccio Dec., **Exhibit A**, page 1.

The Note incorporates the terms of the First Preferred Ship Mortgage and specifically provides that it will "secure payment of said indebtedness [$215,000] and interest and all other sums that hereafter may become due to the performance of all covenants hereof." *Id.*

Furthermore, the collateral that secures the Mortgage includes not just the Vessel, but also:

> . . . all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by this reference . . .

*Id.*, **Exhibit B**, pg. 2.

**2.     Plaintiff's Advances To The Defendants Under The Note and Mortgage**

The Mortgage includes the following provision for "FUTURE ADVANCES":

> This mortgage is executed for the purpose of securing not only payment of the above-described noted but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and renewals of the above described note.

*Id.*, Article IV, page 8.

In 2003 all of the books and records for the joint venture, as well as one of the joint venture's checking accounts were in the control of Cohen. At the time, Cohen was writing himself checks as personal advances from an account that Del Mar funded and which Plaintiff believed had been closed. Nevertheless, Del Mar recorded the advances on the books of the joint venture as advances to Cohen and the Vessel. Cappuccio and Roggio Decs., ¶ 16.

In the summer of 2003 Del Mar discovered the personal advances Cohen had made to himself from the joint venture's checking account and became very concerned because Del Mar did not have any security for the advances. Therefore, Del Mar requested, and the

2
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601
DelMarSeafoods/2504

Cohens agreed, to execute the Note and Mortgage in favor of Del Mar so that the Vessel and its appurtenances would stand as security for repayment of the amounts owed to Del Mar by the Defendants, including the advances. *Id.*, ¶¶ 17, 18.

Although the Note states the amount owed is $215,000, by the time the Note and Mortgage were finalized and Del Mar had the proper opportunity to audit the joint venture's books to determine the extent of the Cohen's advances, the actual balance owed was actually $237,035.48. *Id.*, ¶ 19.

### 3. November 2004 Advances In Connection With Del Mar Pulling Out Of Avila Beach

By November 1, 2004, Del Mar had pulled its fishing operations out of Avila Beach and there were still significant sums owed to Del Mar by the Cohens, including the advances, and outstanding balances for fuel. Additionally, Cohen's sons, Michael Cohen and Leonard Cohen, also owed Del Mar money. At Mr. Cohen's request, these amounts were all added to the Note and Mortgage balance. *Id.*, ¶ 20.

The amount owed to Del Mar by Cohen's son, Michael Cohen, was $13,920.00. The amount owed by his other son, Leonard, was $18,069.10. The Cohens also agreed to add an inventory debt to the Note and Mortgage in the amount of $10,383.24. *Id.*, ¶ 21.

Del Mar agreed to add the foregoing amounts to the Note and Mortgage balance pursuant to Cohen's request because Michael and Leonard Cohen were not able to pay the money they owed to Del Mar themselves. Cohen agreed to have those debts added to the Note and Mortgage balance so that Del Mar would forebear collecting those amounts from Michael and Leonard Cohen. *Id.*, ¶ 22.

Further, at the time Del Mar stopped doing business in Avila Beach the Cohens also owed Del Mar $16,021.31 for fuel advances. The total amount of the Avila Beach Advances added to the balance owing under the Note and Mortgage was $58,394.05, resulting in total principal amount due and owing under the Note and Mortgage of $295,429.53. At that time, interest had also accrued in the amount of $16,638.11. *Id.*, ¶ 23.

Between November of 2004 and November of 2005, the Cohens made only three

3
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

payments against the Note and Mortgage: a payment of $5,000 in December of 2004; $1474.75 in June of 2005; and $1,000 in September of 2005. As was allowed under the terms of the Mortgage, Del Mar applied these payments to the accrued interest only, leaving the principal balance the same, and reducing the accrued interest to $27,143.02. *Id*, ¶ 24.

### 4. Barry Cohen's Payment of $175,000 In November of 2005

Cohen took out a loan against his home to make a payment against various debts, including large attorneys fees he owed to the firm of Miller, Starr & Regalia for legal work it performed in furtherance of Del Mar's cessation of its business operations in Avila Beach, and the indebtedness to Del Mar under the Note and Mortgage. *Id.*, ¶ 25.

At approximately the end of 2005 Del Mar's Controller, Joe Roggio, attended a meeting at which Barry Cohen asked him to agree to make the loan subject to the Note and Mortgage interest free, Del Mar did not agree, however, that the loan would be interest free under any circumstances. Del Mar also did not agree to make the loan interest free if Cohen made a large payment against the Note and Mortgage. At all times, when and how much Cohen decided to pay down the Note was in Cohen's control, and the decision he made to make the $175,000 payment against the Note and Mortgage was not tied in any way to any agreement by Del Mar to make the loan subject to the Note and Mortgage interest free. *Id.*, ¶ 27.

In addition, Del Mar's President, Joe Cappuccio, did not make any statement or representation to Cohen at the time Cohen delivered his $175,000 check to Del Mar that he was no longer concerned about the amounts that Mr. Cohen owed Del Mar. *Id.*, ¶ 28.

At the time of Cohen's $175,000 payment, additional interest on the Defendants' indebtedness had accrued in the amount of $3,216.81, resulting in total accrued interest of $30,359.83. There was also an inventory adjustment credit at this time in the amount of $1,300 that was applied to reduce the debt. After applying Cohen's payment and credit, all interest had been paid current, and the remaining balance of $145,940.17 was applied to reduce the principal balance. The new principal balance was $149,489.36. *Id.*, ¶ 29.

///

### 5. Cohen's Deposition Testimony In *Cohen v. Port San Luis Harbor District*

On November 16, 2005, six days after Cohen made the $175,000 payment to Del Mar, Cohen gave deposition testimony in *Cohen v. Port San Luis Harbor District,* San Luis Obispo Co. Sup. Ct. Case No. CV 040897, regarding the Defendants' debts to Plaintiff. *See,* Plaintiff's concurrently filed Request for Judicial Notice and Declaration of Max L. Kelley ("Kelley Dec."), **Exhibit 1**.

### 6. The Statement That Joe Roggio Gave Barry Cohen In November Of 2005

Shortly after Cohen made the $175,000 payment to Del Mar on November 10, 2005, Cohen requested that Mr. Roggio provide him with a written explanation of the various advances which had been added to his debt, so that he could have specific numbers for the debts attributable to his sons. Cohen explained to Mr. Roggio that he was going to ask his sons to pay those sums to Cohen. In order to assist Cohen, Mr. Roggio created an accounting statement showing the various advance balances, and forwarded it to Cohen ("Statement"). *Id.*, ¶ 30, **Exhibit C**.

The Statement itemized the payments Cohen had made under the Note and Mortgage as of the date of the Statement. *Id.*, ¶ 31. Across the top of the Statement, the debts subject to the Note and Mortgage are listed: "Michael Cohen"; "Olde Port Inn" (Leonard Cohen); "Inventory"; "Point Loma" (the Vessel); "Barry" (Cohen); and "Total." *Id.*, ¶ 32.

The beginning balances for each debt under the Note and Mortgage are listed underneath the description of the debt on the Statement. The bottom of the Statement evidences the application of the $175,000 payment that Cohen made on November 10, 2005. The Statement shows that the debts of Michael Cohen, Olde Port Inn (Leonard Cohen), Inventory, and Point Loma were completely paid off, however Cohen's debt was only reduced. *Id.*, 33.

Cohen received and accepted the Statement from Mr. Roggio without any objection, and continued to make payments on the Note and Mortgage even though the Statement he received showed exactly how the $175,000 had been applied by Del Mar. *Id*, ¶ 34.

5
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

### 7. Plaintiff's Further Advances To The Cohens In December Of 2006

After November of 2005 interest continued to accrue on the amount of the unpaid indebtedness. *Id.*, 36. Furthermore, in December of 2006, Olde Port Fisheries was indebted to Del Mar in the amount of $7,417.67 as a result of Del Mar's leaving Avila Beach. Old Port Fisheries, however, could not pay the debt. Cohen requested and agreed that Joe Roggio add the amount of Olde Port Fisheries' debt to the Note and Mortgage balance and Mr. Roggio agreed and did it. Cohen also agreed to add another $1,368.82 the Note and Mortgage indebtedness for fuel advances. *Id.*, ¶ 37.

Cohen also agreed that he would reimburse Del Mar for Del Mar's attorneys' fees and costs incurred during litigation connected to its pulling out of Avila Beach. By the time Del Mar's involvement in the litigation had concluded, the total attorneys' fees and costs were $21,308.52. Cohen agreed that this sum would be added to the Note and Mortgage's principal balance. As of December of 2006, therefore, the amount owing under the Note and Mortgage rose to the principal sum of $179, 584.37, with accrued interest of $11,190.63. . *Id.*, ¶ 38.

### 8. The Three Payments The Cohens Made In 2007

The Cohens made a payments on the Note and Mortgage in the amounts of $2,000 in February 2007; $3,000 later in February; and $3,000 in April 2007. These payments were all applied to interest only and did not reduce the principal, as allowed under the terms of the Mortgage. As a result, as of June 14, 2007 the amount of principal and interest due and owing under the Note and Mortgage was $189,374.54 ($179,584.37 in principal and $9,790.17 in accrued interest). Interest continues to accrue at $34.92 per day. *Id.*, ¶ 39; **Exhibit D.**

### III. LEGAL ARGUMENT

### 1. The Court Has Subject Matter Jurisdiction Over This Matter.

Defendants' argument that because Plaintiff's claims are without merit, this Court somehow lacks subject matter jurisdiction is erroneous. (Motion, 7:13 The Plaintiff's Verified Complaint in Admiralty, both *in rem* and *in personam* vested this Court with

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

subject matter jurisdiction under Article III of the Constitution, 46 U.S.C. § 31325, and general maritime law. The outcome of the Court's Supplemental Admiralty Rule E(4)(f) hearing will determine whether or not this Court may retain jurisdiction.

As the court in *Bay Casino, LLC v. M/V ROYAL EMPRESS*, 20 F.Supp. 2d 440, 448 (E.D.N.Y. 1998), relied upon by Defendants, explained:

> Under the admiralty law of the United States, *in personam* and *in rem* actions may arise from the same claim, and may be brought separately or in the same suit. Supplemental Rule C(1)(b). As its name implies, the *in personam* action is filed against the owner personally, whereas the *in rem* action is filed against the res, the vessel--a maritime lien on the vessel being a prerequisite to an action *in rem*. *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner,* 724 F.2d 1161, 1163 (5th Cir.1984), citing G. Gilmore & C. Black, The Law of Admiralty 685 (2d ed.1975), § 1-12, at pg. 35.

As Plaintiff pointed out in its previously filed *ex parte* application for the arrest of the Vessel, the Preferred Ship's Mortgage alleged in the Verified Complaint is a maritime contract over which the district courts of the United States have original jurisdiction under Article III of the Constitution. *Madruga v. Superior Court of California*, 346 U.S. 556, 557 (1954); *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437. Subject matter jurisdiction also exists under 46 U.S.C. section 31325(c), which provides that with respect to an action for the foreclosure of a Preferred Ship's Mortgage: "The district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section." An *in rem* action against a vessel to foreclose a maritime lien, such as foreclosure of a Preferred Ship's Mortgage, is only cognizable in a federal district court. Thomas J. Schoenbaum, *Admiralty & Maritime Law*, Vol. 2, Section 21-3, page 401 (4th ed. 2002), citing at footnote 2, *inter alia, Madruga, supra*, 346 U.S. 556 (1954).

Consequently, this Court has exclusive admiralty jurisdiction over this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, Rule C of the Supplemental Admiralty Rules, and 46 U.S.C. § 31325 (c). This Court also has jurisdiction over Del Mar's *in personam* claims against the Cohens as mortgagors. 46 U.S.C. § 31325 (b).

///

///

### 2. The Applicable Standard Legal Standard For A Rule E(4)(f) Hearing

The court in *North of England Protecting and Indem. Ass'n v. M/V NARA*, 1999 WL 33116416, 2000 A.M.C. 681 (E.D.La.,1999) at pages *4-5, ably explained the standard applicable to Defendants' motion as follows:[1]

> Under Rule E(4)(f), ***the plaintiff must show that reasonable grounds*** exist for the arrest and attachment and that it should be maintained. A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant, and if so to fix an appropriate bond. *See 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, citing *Salazar v. Atlantic Sun*, 881 F.2d 73, 79-80 (3d Cir.1989). Here, the merits of the case, which may involve questions of English law, will ultimately be adjudicated by an arbitration panel in England. ***At this stage in the proceedings, plaintiff merely needs to show "probable cause" for the issuance of the warrant and writ.*** *Continental v. Adriatic Tankers Shipping Co.*, 1995 WL 649942 (E.D.La.1995). ***Courts sometimes characterize this burden as a requirement to make a prima facie showing that plaintiff is entitled to the damages sought and secured by the arrest and attachment.*** *Casper Marine Inc. v. Sea Trans Shipping Corp.*, 969 F.Supp. 395 (E.D.La.1997).

(Emphasis added); *see also, Seatrade Group N.V. v. 6,785.5 Tons of Cement*, 2005 WL 3878026, *6-7, 2006 A.M.C. 193 (S.D.Tex. 2005) (plaintiff's burden is a preponderance of the evidence (citation omitted)); *Mujahid v. M/V Hector*, 948 F.2d 1282, page 2 (4th Cir. 1991).

At least two district courts in the Fourth Circuit have recently held that a Verified Complaint is all that is required to satisfy the plaintiff's *prima facie* showing under Rule E(4)(f). *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.*, 2007 U.S. Dist. LEXIS 502260, *8-11 (S.D.N.Y. July 6, 2007), citing and following the reasoning in *Tide Line, Inc. v. Easttrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS 95870 at *14 (S.D.N.Y. 2006) (relying on *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445-447).

In *Casper Maine, Inc. v. Seatrans Shipping Corp.* 969 F.Supp. 395, 396 (E.D.La.,1997), the court found that a plaintiff had made a "prima facie showing" despite

---

[1] The "standards and procedures" regarding the Rule E(4)(f) hearing are the same for both post-arrest and post-attachment cases. *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 1999 U.S. Dist. LEXIS 22501, *8 (M.D.Fla.,1999), citing Rule E(4)(f).

8
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

the fact that plaintiff had submitted an unsworn declaration under penalty of perjury in which the declarant merely stated that the defendant had been invoiced for but had failed to pay $105,942.41 in charter hire for the specified charter term. Attached to the declaration was a "Provisional Final Hire Statement" that indicated that defendant had paid only $1,557,446.84 of the $1,663,389.25 in charter hire invoiced, leaving a balance owing of $105,942.21. Based on the declaration and exhibit, the court found that plaintiff's evidence amounted to a *prima facie* showing that plaintiff is entitled to the damages sought.

In *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 1999 U.S. Dist. LEXIS 22501, *19 (M.D.Fla.,1999), the court found that the plaintiff had met its burden under Rule E(4)(f), notwithstanding that the court found the evidence "inconclusive," yet "sufficient" to support a finding of probable cause. The court emphasized its decision to uphold the attachment did not resolve the contested issues between the parties. Rather, the court was only making a determination that at that time of the attachment, reasonable grounds existed for the attachment.

Finally, in a Ninth Circuit case, *Greger Leasing Corp. v. Barge PT. Portrero*, 2006 U.S. Dist. LEXIS 18863, *4 (N.D. Cal. 2006), Judge Conti of this Court explained the standard to be applied at a Rule E(4)(f) hearing as: "Plaintiff bears the burden of showing that 'probable cause' existed to arrest the vessel, which 'translates roughly to requiring that plaintiff show entitlement to a maritime lien,'" citing *Newport News Shipbldg. and Dry Dock Co. v. S.S. Independence*, 872 F.Supp. 262, 265 (E.D. Va. 1994). Judge Conti also found that "[a] post-arrest hearing under Rule E(4)(f) 'is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant.'" Quoting *Lion De Mer S.A. v. M/V Loretta D*m 1998 U.S. Dist. LEXIS 10182, No. Civ. L-98-921, 1998 WL 307077 at *2 (D. Md. Apr. 3, 1998).

Consequently, the standard applicable to Defendants' motion to vacate arrest is whether Del Mar can make a *prima facie* showing that reasonable grounds, or probable cause, exists that it is entitled to the damages sought.

9
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

### 3. Plaintiff Has Met Its Burden Under The Applicable Legal Standard

Defendants admit in paragraph 26 of their Verified Answer and Counterclaim that "Plaintiff has a valid maritime lien on the F/V POINT LOMA." They simply deny that Del Mar has a right to foreclose on the lien.

Plaintiff Del Mar has presented to the Court, not only its Verified Complaint, but the sworn affidavits its President and Controller attesting to the Defendants' defaults under the Mortgage and the veracity of the Statement of accounting evidencing the debts owed by Defendants under the Note and Mortgage. Under the applicable case law, Plaintiff submits that the Statement, in conjunction with Mr. Roggio's and Mr. Cappuccio's declarations, provide this Court with enough evidence for it to determine that Del Mar has shown that reasonable grounds existed to arrest the Vessel for a default under the Mortgage.

### 4. Cohen's Deposition Testimony In *Cohen v. Port San Luis Harbor District* Confirms That The Cohens Were In Default Under The Mortgage

The Defendants' Verified Answer and Counterclaim, as well as Cohen's Declaration under penalty of perjury in support of Defendants' Motion, both assert that the Cohens never agreed:

(a) to more than $215,000 in debt being subject to Del Mar's Note and Mortgage;

(b) that advances bringing the total amount of principal owed to $295,439.53 would be subject to the Note or Mortgage; and

(c) that Del Mar could apply the $175,000 to the amounts advanced before reducing the original principal amount of $215,000.[2]

During Cohen's deposition in *Cohen v. Port San Luis Harbor District*, however, on November 16, 2005 ("Cohen Depo."), six days after he made the $175,000 payment to Del Mar, Cohen testified that the $215,000 appearing as the initial principal amount due and owing appearing on the Note was *not* correct; and that this original sum was only "a low guess" as to "the money that I borrowed for the boat from Del Mar" under the Note and

---

[2] *See*, Defendants' Verified Answer and Counterclaim, ¶ 39; Declaration of Barry Cohen in support of Motion To Vacate Arrest ("Cohen Dec."), ¶ 12; Cohen Dec., ¶ 13.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

10
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

1  Mortgage. Request for Judicial Notice, **Exhibit 1** (Cohen Depo., Vol. III), at pg. 508, line 3
2  to pg. 510, line 20 (508:3 – 510:20).
3        Cohen also confirmed during his deposition that the Statement Del Mar prepared
4  and gave him *correctly* reflected the amount due and owing under the Note and Mortgage:

> Q [Mr. Moroski]. Directing your attention to Exhibit 398 [the Statement]. Can you identify that document for the record?
> A [Cohen]. Yes.
> Q. Would you do so?
> A. It's a Del Mar Seafoods, Inc. schedule of payments.
> Q. **And what does the schedule of payments relate to?**
> A. **What I paid, what the boat owed, what inventory was owed for Avila, receivable on Olde Port Inn and on Michael Cohen.**
> Q. **So this document, Exhibit 398, does not relate to the promissory note?**
> A. Yes.
> Q. **It does?**
> A. **Yes.**

13  *Id.*, 510:21 – 511:11 (emphasis added).
14        When Mr. Moroski, opposing counsel in the *Port San Luis* matter, pressed Cohen on
15  whether the amount on the Statement reflected the correct amount subject to the Note, Mr.
16  Cohen testified as follows:

> Q. Okay. How do you account for the different balances?
> A. We don't account for it.
> Q. Okay. **Can you explain to me why the principal balance owed under the terms of the promissory note, Exhibit 397, dated effective October 31, 2003, is $215,000, and the beginning balance reflected on this schedule of payments documents is $295,429?**
> A. **Because I took the responsibility for these amounts owed and just put it on mine.**
> Q. **Okay. So the beginning balance does not relate to the promissory note balance. Correct?**
> A. **No, but it - it relates to the promissory note.**

24  *Id.* 511:12-25. (emphasis added).
25        To make the foregoing even clearer, opposing counsel pressed further with his
26  questions getting Cohen to confirm that the Statement provided by Del Mar correctly
27  reflected the amount owed under the Note and Mortgage:
28  / / /

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

11
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

Q. Well, I'm looking at all of these figures, Mr. Cohen, and let's start with Barry, the column Barry, $237,035.48. That's the beginning balance. That doesn't tie with the $215,000 principal balance owed pursuant to the terms of the promissory note.
A. Right.
Q. Okay. How does it - how does that total relate to the promissory note obligation?
A. I just told you that the $215,000 was a low estimate.
Q. Okay.
A. So --
Q. You owed money over and above the $215,000?
A. Right. But we didn't know how much. This was just prepared a few days ago. This -- a lot of this was not known until a few days ago.
Q. And "this," you're referring to Exhibit 398?
A. Yes.

*Id.*, 512:1-18. (emphasis added).

To make it even clearer that the sum of $295,439.53 was subject to the Note and Mortgage, opposing counsel questioned Cohen about the specific amounts that appeared on the Statement that were due and owing under the Note:

Q. The Michael Cohen beginning balance, what does that relate to?
A. Money that Michael Cohen owes.
Q. For what?
A. For purchases that he made.
Q. Purchases of what?
A. Of seafood from Del Mar.
Q. Okay. Olde Port Inn, what does that --
A. Purchases.
Q. Of fish?
A. Yes.
Q. Okay. Inventory, what does that relate to?
A. Fish and supplies.
Q. Point Loma, what does that refer to?
A. I think that was an advance or advances.
Q. And the Barry column, what does that beginning balance number refer to?
A. That was probably the beginning balance of where I was at the time of this promissory note.
Q. And the total amount, $237,035, what does that total include?
A. I couldn't tell you offhand.
Q. Advances?
A. At the time they were not advances, but they turned into advances. This is what Joe Roggio was talking about when we were going to go partners in the boat, and we did a lot of work on the boat to get ready for Mexico. That was going to be Joe's contribution to the 50/50.

12
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

Q.  Joe Cappuccio?
A.  Yes.

*Id.*, 512:19-513:23.

Cohen's foregoing testimony ***directly*** contradicts his assertions in the Answer and Counterclaim, and at paragraphs 12 and 13 of his declaration, that the only amount subject to the Note and Mortgage was the original $215,000; that he did not agree the additional amounts advanced that totaled $295,439 were subject to the Note and Mortgage; and that he did not agree that Del Mar could pay down the amounts "advanced" with the $175,000 payment before reducing the original $215,000 owed.

Cohen's bald assertions in his declaration that he is *not* in default under the Note and Mortgage cannot overcome the preponderance of evidence Del Mar has presented showing it had probable cause to arrest the Vessel and to keep it under arrest. In this case, Del Mar has made, and will continue to make, not only a *prima facie* showing that the Cohens were in default under the Note and Mortgage, but a rather convincing one.

Joe Cappuccio and Joe Roggio, the President and Controller of Del Mar respectively, have both explained in their Declarations that:

- The amount the Cohens initially borrowed subject to the Note and Mortgage was $215,000, but with "advances" increased to $295,429.53. Roggio and Cappuccio Decs., ¶¶ 9-23; Exhibits A-C thereto;
- Cohen agreed that the additional amounts advanced would be added to the principal owed under the Note and Mortgage. *Id.*;
- The Cohens failed to make monthly payments as required under the Note and Mortgage. *Id.*, ¶¶ 24 and 40, Exhibits A-C)
- The Cohens' $175,000 payment in November of 2005 was properly credited against the $295,429 then owing under the Note and Mortgage. *Id.*, ¶¶ 25-35, Exhibits A-C)
- Del Mar never agreed to waive its right to interest under the Note and Mortgage *Id.*, ¶¶ 25-27. Exhibits A-C);

///

- Del Mar never agreed the Cohens did not have to make the payments required under the Note and Mortgage after Cohen made the $175,000 payment. *Id.*, ¶¶ 27, Exhibits A-C);

- At the time of the arrest, the Cohens were in default under the Note and Mortgage. *Id.*, ¶¶ 25 and 40, Exhibits A-D.[3]

Plaintiff has therefore submitted sufficient evidence that: (1) Del Mar has a valid maritime lien; (2) the Cohens were in default under the Note and Mortgage at the time the Vessel was arrested; and (3) the Cohens owe a specific amount under the Note and Mortgage as a result of their default.

Plaintiff respectfully submits that the foregoing is a *prima facie* showing of reasonable grounds sufficient to defeat Defendants' Motion.

As discussed above, Cohen's testimony in the *Port San Luis* litigation confirms that:

- the amount that the Cohens initially borrowed from Del Mar and agreed was to be subject the Note and Mortgage was $215,000, but with advances ended up totaling $295,429;

- Cohen agreed that the additional amounts advanced totaling $295,429 would be added to the principal amount owing under the Note and Mortgage; and

- By November 16, 2005 Cohen had received the Statement from Del Mar describing the debts that were subject to the Note and Mortgage and their amounts, and documenting that Del Mar had applied Cohen's $175,000 payment against the $295,429 then owing under the Note and Mortgage; and reflecting the amount of principal that was still outstanding.

///

///

---

[3] At the time of the arrest, Del Mar was also aware of significant changes in the Cohens' financial circumstances giving rise to their *bona fide* concern whether the Cohens would be able to honor their obligations under the Note and Mortgage. These circumstances included the Cohens' bitter divorce, the more recent denial of their request for more than $2 million in attorneys' fees in the *Port San Luis* litigation, the Cohens' inability to post a bond for the release of the Vessel, and Del Mar's determination that the Cohens also owe an additional $72,546 on losses sustained from the Port San Luis joint venture. Roggio and Cappuccio Decs., ¶¶ 41-43, and Exhibits E-G.

14
OPPOSITION TO DEFENDANTS' MOTION TO VACATE ARREST

1   In short, the assertion Cohen has made in his Declaration that he does not owe
2   $295,429 under the Note and Mortgage is directly contradicted by his deposition testimony
3   in the *Port San Luis Harbor District* matter.

4   **5.  Defendants' Reliance on *Marubeni America Corp. v M/V Unity* is Misplaced**

5   Defendants rely in their Motion on *Marubeni America Corp. v M/V Unity*, 802
6   F.Supp. 1353, 1356, to argue that the Court does not have jurisdiction because the *Marubeni*
7   court was not convinced a breach had occurred. Motion, 8:6-14.

8   In *Marubeni* a vessel M/V Unity was arrested by the charterer, Marubeni America
9   Corp ("MAC"). MAC alleged that the vessel's owner, Leona Shipping Limited ("Leona"),
10  had breached its charter party with MAC. The Court noted that MAC's "underlying
11  argument is that Leona's breaches of the Time Charter caused delivery of the sugar to be
12  delayed, and therefore, caused Marubeni either to incur unnecessary expenses or to have
13  been overcharged for hire payments made at the outset." *Id.* at 1355.

14  The Court found, however, that MAC's claim was premature because the charter
15  party itself provided for a sixty-day 'window' for the parties to square their accounts and
16  resolve any differences after the vessel had been delivered back to Leona, and that the
17  vessel had not yet been re-delivered. Consequently, no breach had yet occurred and the
18  parties could foreseeably work out their differences during the sixty-day window after
19  redelivery. As the *Marubeni* Court pointed out, the element glaringly absent from the case
20  was "the unquestionable existence of a live dispute." *Id.* at 1356.

21  *Marubeni* is easily distinguishable from the present case. Here, the parties dispute
22  (1) the amounts owed under the Note and Mortgage; and/or (2) whether the Cohens are in
23  default under the Note and Mortgage. Under the applicable authorities cited above,
24  however, the existence of a factual dispute alone cannot provide the basis for releasing a
25  vessel from arrest; otherwise, almost every vessel arrested would be released on such
26  grounds. Rather, a vessel's arrest may only be vacated if the plaintiff fails to make a *prima*
27  *facie* showing of a valid lien, default, and damages resulting from the default. In the present
28  ///

case, Del Mar submits that it has presented substantially more than the *prima facie* evidence sufficient to defeat Defendants' Motion.

### IV. CONCLUSION

Del Mar has made a *prima facie* showing that there were reasonable grounds to find Cohens were in default and owe at least $189,000 under the Note and Mortgage, Del Mar respectfully requests that the Defendants' Motion be denied.

Dated: July 26, 2007

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: _____
Max L. Kelley
Gregory W. Poulos