1  **COX, WOOTTON, GRIFFIN,**
   **HANSEN & POULOS LLP**
2  Gregory W. Poulos  (SBN 131428)
   Max L. Kelley (SBN 205943)
3  190 The Embarcadero
   San Francisco, CA  94105
4  Telephone No.:  415-438-4600
   Facsimile No.:  415-438-4601
5
   **McKASSON KLEIN & HOLMES LLP**
6  Mark D. Holmes (SBN 156660)
   600 Anton Boulevard, Suite 650
7  Costa Mesa, CA 92626
   Telephone: (714) 436-1470
8  Facsimile:  (714) 436-1471
9  Attorneys for Plaintiff
   DEL MAR SEAFOODS, INC.
10

11                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13                      SAN FRANCISCO DIVISION

14
   DEL MAR SEAFOODS, INC.              )   Case No.: CV 07-02952 WHA
15                                     )
            Plaintiff,                 )
16                                     )
      vs.                              )   **DECLARATION OF JOE**
17                                     )   **CAPPUCCIO IN SUPPORT OF**
                                       )   **PLAINTIFF'S OPPOSITION TO**
   BARRY COHEN, CHRIS COHEN (aka       )   **MOTION TO VACATE ORDER OF**
18 CHRISTENE COHEN), *in personam* and )   **ARREST**
   F/V POINT LOMA, Official Number     )
19 515298, a 1968 steel-hulled, 126-gross ton, )
   70.8- foot long fishing vessel, her engines, )
20 tackle, furniture, apparel, etc., *in rem*, and )
   Does 1-10,                         )
21                                     )
                                       )
22          Defendants.                )
                                       )
23 _____ )   Date:  August 16, 2007
                                       )   Time:   8:00 AM
24 And Related Counterclaims           )   Courtroom  19, 19th Floor
                                       )   Hon. William H. Alsup
25 _____ )

26 I, Joe Cappuccio, hereby declare:

27 1.      I am the President of Del Mar Seafoods, Inc. ("Del Mar").  I submit this declaration in

28 support of Del Mar's Opposition to Motion To Vacate Arrest of the Vessel.  I have personal

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1    knowledge of the facts declared herein and if called to testify regarding said facts, I would

2    and could competently testify thereto.

3    **FISHING INDUSTRY EXPERIENCE**

4        2.    I have been involved in the commercial fishing industry for about twenty-five

5    years. During that time, I have become familiar with the kinds of commercial fishing done

6    along and off the California coast, as well as the kinds of vessels that engage in such fishing.

7        3.    I have served as the President since 1989. At present, I am the President of

8    Del Mar. As such, I am the Del Mar officer chiefly responsible for the operational decision-

9    making of the corporation.

10        4.    Del Mar, through affiliate entities, owns three fishing vessels. Del Mar runs a

11    fish processing plant in both Watsonville and Terminal Island, California; an unloading

12    station in Ventura, California, and a fish processing plant in Astoria, Oregon.

13        5.    Del Mar's revenues from its fish processing operations exceed $10 million per

14    year.

15        6.    During the last twenty-five years that I have worked in the fishing industry, I

16    have become familiar with the customs and practices of fishing companies and fishing

17    vessels, including vessels such as the subject vessel, the F/V POINT LOMA.

18        7.    I am also familiar with the subject vessel, the F/V POINT LOMA, Official

19    Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her

20    engines, tackle, furniture, apparel, (the "Vessel"), as a result of having dealt with the Cohens

21    and the Vessel since at least October of 2003.

22    **BACKGROUND FACTS SURROUNDING THE NOTE, MORTGAGE AND AGREED**

23    **"FUTURE ADVANCES" UNDER THE NOTE AND MORTGAGE; AND THE**

24    **COHENS' DEFAULT UNDER THE NOTE AND MORTGAGE**

25        8.    In 1999, Del Mar and Barry Cohen formed a joint venture for the purpose of

26    buying, processing and selling fish from a site that Barry Cohen leased in Port San Luis in

27    Avila Beach, California.

28        9.    During the course of the joint venture, between 1999 and 2003, Del Mar

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

150 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1  advanced the Cohens substantial amounts of money.   Because Del Mar became concerned

2  about the amount of money that Del Mar had advanced the Cohens, Del Mar requested that

3  the Cohens provide collateral to secure the advances to the Cohens.

4       10.     The Cohens originally entered into the Note and Mortgage at the end of

5  October of 2003 in the amount of $215,000.   The Note provides that the Cohens were to

6  make:

7       monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of
        each and every landing of seafood product made by the fishing vessel POINT LOMA,
8       whichever is greater, commencing on January '04 and on the 15th day of each succeeding
        month until principal and interest are fully paid.  Payments are to be applied to interest
9       first.

10  Note at page 1, a true and correct copy of which is attached hereto as **Exhibit A**.  As the following

11  discussion will demonstrate, the Cohens have repeatedly failed to adhere to the terms of the Note,

12  as they have repeatedly failed to make monthly payments, and failed to make payments in the

13  proper amounts since they executed the Note and Mortgage.

14       11.     The Note incorporates the terms of the First Preferred Ship Mortgage and

15  specifically provides that it will "secure payment of said indebtedness [$215,000] and interest and

16  all other sums that hereafter may become due to the performance of all covenants hereof."  Exhibit

17  A, Note, at page 1.

18       12.     In addition, the collateral that secures the Mortgage includes not just the vessel,

19  but also:

20       . . .all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors,
        chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and
21       fishing and all other appurtenances and accessories and additions, improvements and
        replacements now or hereafter belonging thereto, whether or not removed there from, all
22       of which shall be deemed to be included in the term "vessel" herein, and said document(s)
        being deemed included herein by this reference . . .
23

24  Mortgage, pg. 2, a true and correct copy of the Mortgage is attached as **Exhibit B** hereto.

25       13.     I have recently been advised by counsel that courts have held that the term

26  "appurtenances" includes the Vessel's fishing permit.

27       14.     The Mortgage also includes a provision for "FUTURE ADVANCES" that

28  provides:

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

150 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-3-                                    Case No.: CV 07-02952 WHA

> This mortgage is executed for the purpose of securing not only payment of the above-described noted but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and renewals of the above described note.

Exhibit B, Mortgage, Article IV, page 8.

15.    In 2003, all of the books and records for the Olde Port joint venture, as well as one of the Old Porte checking accounts, were in the control of Mr. Cohen. At the time, Barry Cohen was writing himself checks as personal advances from an account that Del Mar funded and which I thought was closed. Nevertheless, Del Mar recorded the advances on the books of the Old Port Fishery as advances to Barry Cohen and the fishing vessel POINT LOMA.

16.    After discovering the foregoing in the Summer of 2003, I and Mr. Roggio became very concerned that Cohen had taken these advances because Del Mar did not have any security for the advances.

17.    Therefore, Del Mar requested, and Cohen agreed, to execute the Note and Mortgage so that the Vessel and its appurtenances would stand as security for repayment of these amounts.

18.    Although the Note states the balance is $215,000, the actual balance, by the time the Note and Mortgage were finalized and Del Mar had the proper opportunity to audit the Old Port books to determine the extent of the advances, the amount owed was actually $237,035.48.

**November 2004 Advances In Connection With Del Mar pulling out of Avila Beach**

19.    By November 1, 2004, Del Mar had pulled out of Avila Beach and there were still significant sums owed to Del Mar by the Cohens, Michael Cohen, Leonard Cohen, and other sums. **At Mr. Cohen's request, these amounts were all added to the Note and Mortgage balance.**

20.    The amount with respect to Barry Cohen's son, Michael Cohen, was $13,920.00. The amount with respect to Barry Cohen's son, Leonard (Olde Port Inn) was $18,069.10. The Cohens also agreed to add an inventory debt to the Note and Mortgage in the amount of $10,383.24.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

193 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafoods/2504

21.     Del Mar agreed to add the foregoing amounts to the Note and Mortgage balance pursuant to Barry Cohen's request because Barry's sons, Michael and Leonard Cohen (Olde Port Inn), were not able to pay the balances then owing to Del Mar. Barry Cohen agreed to have these balances added to the Note and Mortgage balance so the Del Mar would not go after Michael and Leonard for payment of these debts.

22.     Further, at the time Del Mar pulled out of Avila Beach, the Cohens also owed Del Mar $16,021.31 for fuel advances. The total amount of the Avila Beach Advances added to the balance owing under the Note and Mortgage was **$58,394.05**, resulting in total principal amount due and owing of **$295,429.53.** At that time, interest had accrued in the amount of $16,638.11.

23.     Between November of 2004 and November of 2005, the Cohens made only three payments against the indebtedness to Del Mar – a payment of $5,000 in December of 2004; $1474.75 in June of 2005; and $1,000 in September of 2005. These payments were applied to interest only, leaving the principal balance the same, and reducing accrued interest to $27,143.02. Clearly, the Cohens repeatedly failed to make timely payments under the Note and Mortgage between November of 2003 and November of 2005.

**Barry Cohen's Payment of $175,000 In November of 2005**

24.     Apparently, Barry Cohen took out a loan against his home to make a payment against various debts, including his large attorneys fees owed to Miller, Starr & Regalia for the Avila Beach litigation, and the indebtedness to Del Mar.

25.     Contrary to Mr. Cohen's assertion at page 4, paragraph 11, lines 2-6, of his Declaration in support of Motion to Vacate Arrest ("Cohen Declaration"), I did not attend a meeting with Joe Roggio at the end of 2005, at which I purportedly asked Barry Cohen to make a large payment on the Note and Mortgage.

26.     Contrary to Mr. Cohen's assertion at page 4, paragraph 11, lines 6-7, of the Cohen Declaration, I understand that Mr. Roggio attended a meeting at which Barry Cohen asked me to agree to make the loan subject to the Note and Mortgage interest free. I understand that Mr. Roggio did not agree, however, that the loan would be interest free under

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO SAN FRANCISCO, CA 94105 TEL 415-438-4600 FAX 415-438-4601

DelMar/Sexfoods/2504

1  any circumstances. I certainly did not agree on behalf of Del Mar to make the loan interest

2  free if Cohen made a large payment. At all times, when and how much Cohen decided to pay

3  was Cohen's decision, and any decision he made to make the $175,000 payment was not tied

4  to Del Mar agreeing to make the loan subject to the Note and Mortgage interest free.

5          27.    Mr. Cohen's assertions at page 4, paragraph 11, lines 11-17, of the Cohen

6  Declaration are directly contradicted by the Note and Mortgage, other relevant documentation

7  discussed below, and Mr. Cohen's behavior since November or 2005. I never made any

8  statement to Cohen when he delivered the $175,000 check to Del Mar that I was no longer

9  concerned about the amounts that Mr. Cohen owed Del Mar. Consequently, I specifically

10  deny the assertions made by Mr. Cohen in the Cohen Declaration at page 4, paragraph 11,

11  lines 11-17, wherein Cohen asserts as follows:

12      It was my understanding that this payment (and the earlier one) reduced the total
        amount of the debt from $215,000 to $35,000; that monthly payments were covered
13      well into the future; and that no interest would be due on payment of the remaining
        amount. When I delivered the check to Joe Cappuccio, I told him would pay the rest
14      as soon as I can. In response, he said it was now such a small amount that he was not
        concerned about it any more, which reinforced my understanding that I had made
15      advance payments on the Note.
16

17          28.    I understand that a portion of the loan that Barry Cohen took against his

18  house, $175,000, was paid to Del Mar. At the time of payment, additional interest accrued in

19  the amount of $3,216.81, resulting in total accrued interest of $30,359.83. There was also an

20  inventory adjustment at this time in the amount of $1300 which was applied to reduce the

21  debt. After application of the $176,300, all interest had been paid current, and the balance of

22  $145,940.17 was applied to reduce the principal balance. The new principal balance was

23  $149,489.36.

24          29.    The foregoing is evidenced by documentation that Mr. Roggio gave to Mr.

25  Cohen, which Mr. Cohen received and did not question or object to. Shortly after Mr. Cohen

26  made the $175,000 on November 10, 2005, Mr. Cohen requested that Mr. Roggio provide a

27  written explanation of the various advances which had been added to his debt, so that he

28  could have specific numbers for the portions attributable to the debts of his sons. Mr. Cohen

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

192 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1  explained that he was going to ask his sons to pay those sums to Mr. Cohen. In order to

2  assist Mr. Cohen, Mr. Roggio created a statement showing the various advance balances, and

3  forwarded the same to Mr. Cohen. A true and correct copy of that statement ("Statement") is

4  attached hereto as **Exhibit C**.

5        30.    The Statement that Mr. Roggio gave to Mr. Cohen shortly after the November

6  10, 2005 payment showed the payments made under the Note and Mortgage as of that date.

7  (See top left corner of the Statement, Ex. C.)

8        31.    The Statement shows the list of debts subject to the Note and Mortgage going

9  across the top of the page described as – Michael Cohen; Olde Port Inn; Inventory;  Point

10 Loma; Barry and Total. (See top of Statement, Ex. C.)

11       32.    The beginning balances for each debt under the Note and Mortgage are listed

12 underneath the description of the debt on the Statement. On the bottom of the Statement is

13 the application of the $175,000 payment that Cohen made on 11-10-2005.  As it appears on

14 the Statement, the Michael Cohen, Olde Port Inn; Inventory; and Point Loma debts were

15 completely paid off, **the Barry debt was only reduced.**

16       33.    Mr. Cohen received and accepted the Statement without any objection to me;

17 and the documentation Mr. Cohen attached as Exhibits D-G to the Cohen Declaration clearly

18 show **the Cohens continued to make payments despite Del Mar advising Barry Cohen as**

19 **to how Del Mar had applied the $175,000 payment.**

20       34.    Since Mr. Roggio  sent Mr. Cohen the Statement, Mr. Cohen never objected

21 to me to the information on the Statement, nor was there a reason to, since Mr. Cohen had

22 already agreed to all that was done.

23 **Further Advances To The Cohens In December of 2006**

24       35.    After November of 2005, the Cohens continued their repeated failure to make

25 payments, which caused interest to continue to accrue on the amount of the unpaid

26 indebtedness.

27       36.    In addition, in December of 2006, Barry Cohen agreed to add the amount of

28 $7,417.67, which was the amount that Olde Port Fisheries was indebted to Del Mar after Del

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-02952 WHA

1  Mar pulled out of Avila Beach. Since Old Port Fisheries could not pay, Barry Cohen

2  requested that Joe Roggio add this amount to the Note and Mortgage balance, which was

3  done. Barry Cohen also agreed to add another $1,368.82 for fuel advances.

4       37.    Further, Barry Cohen agreed that he would reimburse Del Mar for Del Mar's

5  attorney's fees and costs incurred in connection with the Avila Beach litigation. By the time

6  Del Mar's involvement in the matter concluded, the total fees and costs were $21,308.52.

7  Mr. Cohen agreed that this sum would be added to the principal balance. As of December of

8  2006, therefore, the amount owing under the Note and Mortgage rose to the principal sum of

9  **$179,584.37**, with accrued interest of $11,190.63.

10 **The Three Payments In 2007**

11      38.    The Cohens made a payment in the amount of $2,000 in February of 2007;

12 $3,000 later in February; and $3,000 in April of 2007. These were all applied to interest

13 only, and did not reduce the principal. As a result, the amount of principal and interest due

14 and owing under the Note and Mortgage was **$189,374.54 ($179,584.37 principal and**

15 **$9,790.17 accrued interest as of June 14, 2007.)** Interest continues to accrue at $34.92 per

16 day. A true and correct copy of a Spreadsheet showing the amounts, payments, and interest

17 accrual is attached hereto as **Exhibit D**.

18      39.    Moreover, as the spreadsheet demonstrates, the Cohens were indeed

19 repeatedly in default prior to Del Mar bringing its action.

20 **WHY DEL MAR FELT IS WAS NECESSARY TO ARREST THE VESSEL AND**

21 **FORECLOSE ON THE NOTE AND MORTGAGE**

22      40.    Finally, the foregoing amounts are not the only debts that Mr. Cohen owes to

23 Del Mar. As a result of the joint venture between Del Mar and the Cohens, Del Mar was

24 able in 2006 to fully reconcile the profits and losses from the Avila Beach joint venture. As a

25 result, I discovered the Cohens also owe Del Mar $72,546 for losses that the joint venture

26 sustained but which the Cohens did not cover. A true and correct Statement of Account

27 showing Del Mar's and Barry Cohen's debt to Del Mar from the joint venture is attached

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

hereto as **Exhibit E.** I understand that Del Mar will amend its Complaint against Barry

Cohen to add this claim for monies owed from the joint venture.

41.    In addition, before the Vessel was arrested, I learned that the Cohens were

involved in a divorce proceeding to end their marriage.    A true and correct copy of the

documents relating to the Dissolution of Marriage for the Cohens is attached hereto as

**Exhibit F.**

42.    Further, before the Vessel was arrested, I learned that Barry Cohen owes his

attorneys (and may not recover) $1 million as a result of his ill-considered litigation against

the Port San Luis Harbor District regarding his lease on the facility in Avila Beach.    A true

and correct copy of the papers showing the monies that Barry Cohen owes from that litigation

is attached hereto as **Exhibit G.**

43.    I also understand that the Cohens' initial response to the arrest was to hire a

bankruptcy lawyer, who advised Del Mar's counsel that he intended to file bankruptcy to stop

the litigation against the Vessel and the Cohens from going forward.

44.    I also understand that in response to the Cohens counsel's request to have Del

Mar release the Vessel from arrest, Del Mar's counsel has repeatedly suggested that the

Vessel could easily be released from arrest if the Cohens posted a bond to obtain its release;

and even directed the Cohens' counsel to bonding companies who routinely provide bonds

for such purposes.    The Cohens' counsel, however, has repeated stated that the Cohens are in

no position to post a bond, pointing out that the Cohens do not have any unencumbered

assets to provide as collateral.    The lack of any unencumbered assets is extremely disturbing,

as it suggests the Cohens are drowning in debt.

45.    In this regard, the Note provides that, in addition to the Cohens failing to

make timely or sufficient payments, the Note may become due and payable immediately if:

the maker fails to notify holder or any material change in their financial condition." Exhibit

A, Note, at page 2.

46.    The Mortgage also provides, in addition to the Cohens failing to make timely

or sufficient payments, that the Note and the Mortgage are immediately due and payable if

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods2504

Case No.: CV 07-02952 WHA

1   Del Mar reaches the conclusion "in good faith at any time that, through actual or prospective

2   net current asset position, net worth, asset-liability ratio, or earning, . . Mortgagee is in danger

3   of losing said debt, or any part thereof . . .." See Exhibit B, Mortgage, at page 5.

4       47.    Repeated non-payment and/or insufficient payment on a secure debt, and

5   liability for $1 million in attorney's fees from a litigation, would normally be enough by itself

6   for any creditor to declare a default. The combination of all of the circumstances outlined

7   above, however, should remove any doubt that there was and is ample cause for Del Mar to

8   declare a default under the Note and Mortgage.

9       48.    Nevertheless, if Barry Cohen really wants to release the Vessel from arrest, he

10  can do so. For example, I understand Mr. Cohen owns a vintage Corvette, which I

11  understand is worth at least $200,000 and unencumbered by debt. Mr. Cohen could sell the

12  Corvette and use the money from the sale to post a bond to release the Vessel. Of course, if

13  Mr. Cohen no longer owns the Corvette, or the Corvette is no longer unencumbered, this may

14  not be possible, which is cause for even greater concern by Del Mar regarding the Cohens'

15  financial condition.

16      49.    In summary, I believe that Del Mar has arrested the Vessel in good faith

17  because the Cohens' finances are in an utter shambles and the Cohens appear to be

18  contemplating bankruptcy; their corporation has been suspended for failure to pay taxes; the

19  Cohens have repeatedly failed to make payments as required by the Note and Mortgage; were

20  and are in default under the Note and Mortgage; and now, with expense of arrest and

21  attorney's fees incurred in this litigation, the Cohens now owe Del Mar more than $200,000

22  under the Note and Mortgage, not including the more than $72,000 they owe Del Mar from

23  the Avila Beach joint venture, or the $1 million they owed to his attorneys as a result of the

24  Port of San Luis litigation. At present, I am unaware that the Cohens have anywhere near

25  sufficient assets to pay off their presently outstanding debts.

26  ///

27  ///

28  ///

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1
2
3    **50.** With the foregoing in mind, it is important to point out that if the Court releases the
4    Vessel from arrest, without requiring a bond be posted, the Vessel, because it is highly
5    mobile, can leave this district in a matter of hours; and can leave the United States in less
6    than twenty-four hours, thereby depriving Del Mar of a prime source of collateral that
7    secures any judgment Del Mar obtains under the Note and Mortgage. Del Mar, at this
8    point, has little hope of recovering on a judgment against the Cohens, as the Cohens may
9    well carry through on their threats and file personal bankruptcy at any stage of this litigation
10   prior to or after Del Mar obtains a judgment against them.

11        I declare under penalty of perjury under the laws of the United States of America that
12   the forgoing is true and correct. Dated July 11, 2007 at Astoria, Oregon.

13
14                              Joe Cappuccio
15                              President, Del Mar Seafoods, Inc.
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

From : 4361471    Page: 15/15    Date: 6/5/2007 6      8 PM

05/15/2007  11:55    5622182960    RICHARD P WAGNER                    PAGE  18/20

COPY

**PROMISSORY NOTE**

NATIONAL VESSEL DOCUMENTATION CE
USCG
RECEIVED / FILED

20 APR '04                      10 : 08

RECORDED: BOOK _____ PAGE ___

DOCUMENTATION OFFICER

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on _January '04_ and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

1.    This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. ~~557978~~ C.L.C.575298 Bad. ; dated _10/31/03_.

2.    Incorporation of Terms of First Preferred Mortgage.

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated _10/31/03_, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same effect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

3.    Acceleration of Maturity.

In the event of default, in the payment of any of the installments or interest due as provided in this

note, time being of the essence, holder may, without notice or demand, declare the entire principal sum then unpaid immediately due and payable. Further, if maker should at any time fail in business or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment, attachment, or other legal process is issued against any deposit account or other property of maker, or if any assessment for taxes against maker, other than taxes on real property, is made by the federal or state government, or any department or agency of the federal or state government, or if maker fails to notify holder of any material change in their financial condition, all of the obligations of maker shall, at option of holder, become due and payable immediately without demand or notice.

### 4. Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any installment in advance, all without affecting the liability of maker.

### 5. Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all costs.

### 6. Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to holder until all indebtedness of maker to holder, however arising, shall have been paid; and (c) the right to require holder to proceed against any party to this note, or to pursue any other remedy in holder power. Holder may proceed against maker directly and independently of any other party to this note, and the cessation of the liability of any other party or

any reason other than full payment, or any revision, renewal, extension, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of holder's remedies or rights against any other party, shall not in any way affect the liability of maker.

DATED: 10/31/03

Barry Cohen

Chris Cohen

# EXHIBIT B

COPY

## FIRST PREFERRED MORTGAGE

Official No: _5/5 298_

On the vessel:
POINT LOMA

Dated: _10/31/03_

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

20 APR '04      10 : 08 AM

RECORDED: BOOK _04-70_ PAGE _497_
DOCUMENTATION OFFICER

Amount of Mortgage $215,000.000

and made by BARRY COHEN And CHRIS COHEN a married couple

(Hereinafter called "Owner")

### WITNESSETH

Whereas, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term vessel means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by the promissory note dated _10/31/0.3_ in the principal amount of $215,000.00, payable to the order of Mortgagee as follows:

Per the Attached Promissory Note which shall become a part of this mortgage.
THE TOTAL AMOUNT OF THIS MORTGAGE IS TWO HUNDRED FIFTEEN THOUSAND
DOLLARS AND PERFORMANCE OF MORTGAGE COVENANTS.

And has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof. Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the Vessel named below and further described in her (their) last marine document(s) issued and identified as follows:

From    361471    Page: 5/14    Date: 6/5/2007 6:5    PM
05/15/2007  11:55    5522161.960                RICHARD, P WAGNER                          PAGE  09/20

Name:    POINT LOMA.

Home Port: Avila Beach, California  ..............

Official Number: 575 298

Together, with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all singular the above described vessel unto Mortgagee, it's successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject the lien hereof any property other than a vessel as the term issued in Title 46, Chapter 313, and Section 31322 of the United States Code. Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I - PARTICULAR COVENANTS OF OWNER

Owner Covenants as follows:

1.    Owner is and shall continue to be a citizen of the United States entitled to own and operate said vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the

05/15/2007  11:55     From  361471     Page: 6/14     Date: 6/5/2007 6:5   PM
           5522162J50                RICHARD P WAGNER                    PAGE  10/20

good faith affidavit filed herewith and of said note has been taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of NOT APPLICABLE and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2.      Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee of this mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3.      Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, towers liability risks if the vessel performs towage, employees compensation and other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgage for account of Mortgage and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefore have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach or warranty or otherwise.

4.      Owner shall comply with and not permit the vessel to be operated contrary to any provision of the law, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof,

nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to, establish and maintain this Mortgage as First Preferred Mortgage on said vessel.

5.. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, government charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken Into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel there from and in any event within fifteen (15) days after such attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owners related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor,

From    .361471    Page: 8/14    Date: 6/5/2007 6:5    PM
05/15/2007   11:55    562216.360                RICHARD P WAGNER                PAGE 12/20

if a corporation, to merge or consolidate with any other person, firm or corporation, or dissolve.

11.        From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject to vessel more effectual to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article 11.

## ARTICLE II - DEFAULT

1.        In any one or more of the following events, herein termed events of default:

        (a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 or Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in performance of any other covenant herein; or

        (b) Commission of any act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or to appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earning, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collecting thereof until the time above limited for the payment thereof, then, and in every such case, Mortgagee may:

(a)    Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(b)    Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(c)    Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at the Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by the law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2.    In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of the Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.      Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power, or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.      The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:      To the payment of all attorneys fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:  To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment of next of any or all matured installments of principal and then of any or all un-matured installments of principal in the inverse order of this maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5.      All advances and expenditures which Mortgagee in its discretion may make any repairs, insurance, payment of liens or other claims, defense of suit, or for any other purpose whatsoever related hereto or said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien thereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto:

## ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to obtain actual possession and use of the vessel.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignments hereof, any reference herein of "Mortgagee" shall be deemed to refer to the assignee. If one or more person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES. This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year above written, Owner has executed this Mortgage, or if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized or as required by State law.

# MIDSTATE BANK & TRUST

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo

On 10-31-03 before me, Nancy E. Martin, Notary Public, personally appeared Christene Layne Cohen and Barry A. Cohen,

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Nancy E. Martin*

*Signature of Notary*

**NANCY E. MARTIN**
COMM. #1428428
NOTARY PUBLIC-CALIFORNIA
SAN LUIS OBISPO COUNTY
My Comm. Expires August 5, 2007

---

**OPTIONAL**

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER (PRINCIPAL)**

☐ Individual
☐ Corporate Officer

Title

☐ Partner(s)        ☐ Limited
                     ☐ General

☐ Attorney-in-Fact
☐ Trustee(s)
☐ Guardian/Conservator
☐ Other:

Absent Signer (Principal) is Representing:

**DESCRIPTION OF ATTACHED DOCUMENT**

First Preferred Mortgage

*Title or Type of Document*

11 plus attached acknowledgment

*Number of Pages*

10-31-03

*Date of Document*

None

*Signer(s) Other Than Name(s) Above*

ADM-005 (07/01)

1                                    **VERIFICATION**

2    I, JOE ROGGIO, hereby state:

3    1. I am an officer of DEL MAR SEAFOODS, INC., Plaintiff in the instant action.

4    2. I have read the contents of the above Complaint and hereby verify the facts

5    contained therein are true and correct to the best of my knowledge, information and

6    belief.

7        4. I am authorized on behalf of DEL MAR SEAFOODS, INC. to verify this

8    Complaint.

9        I declare under penalty of perjury under the laws of the State of California and

10    the United States that the forgoing is true and correct and that this verification was

11    executed at Watsonville, California on May 16, 2007.

12

13

14                                                                        JOE ROGGIO

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    -8-

# EXHIBIT C

11-15-2005   08:55AM   FROM-DEL MAR SEAFOODS INC Cm                T-131   P.002/008   F-239

Del Mar Seafoods, Inc.
Schedule of Payments

| | Michael Cohen | Olde Port Inn | Inventory | Point Loma | Barry | Total |
|---|---|---|---|---|---|---|
| Beginning Balance | 13,620.40 | 16,050.10 | 10,383.24 | 16,021.31 | 237,035.48 | 295,420.03 |
| 12/22/2004 Barry Paymt | | | | | (5,000.00) | (5,000.00) |
| 6/24/2005 American Payment | | | (1,474.75) | | | (1,474.75) |
| 9/14/2005 Olde Port PYMT | | | (1,000.00) | | | (1,000.00) |
| 11/10/2005 Inv. Adj | | | (1,900.00) | | | (1,900.00) |
| 11/10/2005 Payment from Barry | (13,620.40) | (16,050.10) | (6,008.48) | (16,021.31) | (120,380.70) | (175,900.00) |
| Ending Balance | - | - | - | - | 111,854.78 | 111,854.78 |

# EXHIBIT D

| Date | Activity | Amount | Principal Balance | Days | Interest | Application of Funds | M. Cohen | OP Fishery | OP Inn | Inventory | Point Loma | Barry Cohen |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/03 | Beginning Balances | 237,035.48 | 237,035.48 | | | | | | | | | 237,035.48 |
| 11/01/04 | Accrued Interest | | | 361 | 16,638.11 | | | | | | | |
| 11/01/04 | Advance to Close Avila Debts | 58,394.05 | | | | | 13,920.40 | | 18,069.10 | 10,383.24 | 16,021.31 | |
| 11/01/04 | New Principal Balance | | 295,429.53 | | | | | | | | | |
| 12/22/04 | Accrued Interest | | | 51 | 2,929.59 | | | | | | | |
| 12/22/04 | Barry Paymt | (5,000.00) | | | (5,000.00) | Applied to Interest Only | | | | | | (5,000.00) |
| 12/22/04 | New Interest Balance | | | | 14,567.70 | | | | | | | |
| 06/24/05 | Accrued Interest | | | 182 | 10,464.63 | | | | | | | |
| 06/24/05 | American Payment | (1,474.75) | | | (1,474.75) | Applied to Interest Only | | | | | (1,474.75) | |
| 06/24/05 | New Interest Balance | | | | 23,547.58 | | | | | | | |
| 09/14/05 | Accrued Interest | | | 80 | 4,595.44 | | | | | | | |
| 09/14/05 | Ckle Port PYMT | (1,000.00) | | | (1,000.00) | Applied to Interest Only | | | | (1,000.00) | | |
| 09/14/05 | New Interest Balance | | | | 27,143.02 | | | | | | | |
| 11/10/05 | Accrued Interest | | | 56 | 3,216.81 | | | | | | | |
| 11/10/05 | Inventory Adjustment | (1,300.00) | | | (1,300.00) | Applied to Interest Only | | | | (1,300.00) | | |
| 11/10/05 | Payment from Barry | (175,000.00) | | | (175,000.00) | Interest Paid Current | (13,920.40) | | (18,069.10) | (6,608.49) | (16,021.31) | (120,380.70) |
| 11/10/05 | Principal Reduction | | (145,940.17) | | (145,946.17) | Excess Applied to Principal | | | | | | |
| 11/10/05 | New Principal Balance | | 149,489.36 | | | | | | | | | |
| 12/05/06 | Accrued Interest | | | 385 | 11,190.63 | | | | | | | |
| 12/05/06 | Ckle Port Advance | 7,417.67 | | | | | | 7,417.67 | | | | |
| 12/05/06 | Point Loma Advance | 1,368.82 | | | | | | | | | 1,368.82 | |
| 12/05/06 | Ckle Port Case Fees | 21,308.52 | | | | | | | | | | 21,308.52 |
| 12/05/06 | New Principal Balance | | 179,584.37 | | | | | | | | | |
| 02/05/07 | Accrued Interest | | | 60 | 2,095.09 | | | | | | | |
| 02/05/07 | Payment | (2,000.00) | | | (2,000.00) | Applied to Interest Only | | | | | | (2,000.00) |
| 02/05/07 | New Interest Balance | | | | 11,285.72 | | | | | | | |
| 02/20/07 | Accrued Interest | | | 15 | 523.77 | | | | | | | |
| 02/20/07 | Payment | (3,000.00) | | | (3,000.00) | Applied to Interest Only | | | | | | (3,000.00) |
| 02/20/07 | New Interest Balance | | | | 8,809.49 | | | | | | | |
| 04/25/07 | Accrued Interest | | | 65 | 2,269.68 | | | | | | | |
| 04/25/07 | Payment | (3,000.00) | | | (3,000.00) | Applied to Interest Only | | | | | | (3,600.00) |
| 04/25/07 | New Interest Balance | | | | 3,079.18 | | | | | | | |
| 06/14/07 | Accrued Interest | | | 49 | 1,710.99 | | | | | | | |
| 06/14/07 | Current Balances | | 179,584.37 | | 9,790.17 | | | | | | | |

# EXHIBIT E

From: 7144361471    Page: 2/3    Date: 7/26/2007 2:25:37 PM

## Del Mar Seafoods, Inc. - Olde Port Division
## Income Statement

|  | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 |
|---|---|---|---|---|---|---|
| Sales | 2,411,032 | 3,651,142 | 4,320,377 | 3,427,723 | 3,837,552 | 3,055,023 |
| **SALES** | 2,411,032 | 3,651,142 | 4,320,377 | 3,427,723 | 3,837,552 | 3,055,023 |
| Raw Materials-Fish | 1,297,266 | 1,969,174 | 2,506,411 | 1,876,699 | 2,241,516 | 1,586,807 |
| Inventory Change | 13,760 | 2,312 | | | | |
| Processing Costs | 769,890 | 1,048,329 | 1,248,203 | 1,105,144 | 1,054,543 | 921,898 |
| Freight | 47,253 | 71,170 | 68,457 | 57,921 | 68,330 | 59,125 |
| Commission | - | - | - | - | - | - |
| **COST OF SALES** | 2,128,170 | 3,090,984 | 3,823,071 | 3,039,764 | 3,364,389 | 2,566,830 |
| **GROSS PROFIT** | 282,862 | 560,158 | 497,306 | 387,959 | 473,163 | 488,193 |
| **Gross profit Percentage** | 0 | 0 | 0 | 0 | 0 | 0 |
| **General/Administrative:** | | | | | | |
| Salaries - Office | 176,571 | 228,335 | 177,704 | 108,036 | 190,948 | 193,578 |
| Salaries - Plant Main. | - | - | - | - | - | - |
| P/R Taxes | 15,861 | 19,064 | 17,003 | 9,652 | 13,591 | 10,501 |
| P/R Benefits | 26,730 | 32,793 | 20,012 | 13,441 | 12,787 | 11,524 |
| Depreciation & Amort. | - | - | - | - | - | - |
| Repair & Main- Plant | 14,980 | 12,772 | 23,404 | 30,044 | 14,876 | 8,489 |
| Repair & Main- Forklifts | - | - | - | - | - | - |
| Repair & Main -Vehicle | - | - | - | - | - | - |
| Plant Supplies | 14,592 | 15,401 | 15,339 | 11,701 | 9,167 | 9,175 |
| Pallets | - | - | - | - | - | - |
| Equipment Rental | 5,619 | 6,118 | 5,839 | 7,096 | 4,575 | 694 |
| Utilities - Elec. | 76,524 | 100,454 | 109,151 | 87,486 | 58,143 | 53,284 |
| Water/Sewer | - | - | - | - | - | - |
| Fuel | 124 | 1,309 | 2,839 | 3,014 | 2,691 | 2,511 |
| Rent | 49,689 | 57,301 | 66,190 | 70,581 | 60,509 | 49,586 |
| Uniforms | 2,185 | 2,890 | 2,439 | 2,756 | 2,489 | 1,970 |
| Protective Clothing | - | - | - | - | - | - |
| Insurance | 4,500 | 5,400 | 5,400 | 5,400 | 4,702 | - |
| Travel | 2,434 | 2,695 | 8,414 | 10,322 | 4,940 | 2,656 |
| Moving Exp. | - | - | - | - | - | - |
| Lodging | - | - | - | - | - | - |
| Telephone | 5,809 | 7,718 | 7,800 | 8,614 | 10,563 | 8,461 |
| Telephone - Cell & Pager | - | - | - | - | - | - |
| Professional Services | 1,959 | 2,128 | 7,692 | 1,165 | 4,612 | 11,788 |
| Tax & License | 5,321 | 3,663 | 5,964 | 3,914 | 4,424 | 1,277 |
| City Permit Fees | - | - | - | - | - | - |
| Promotions/Entertainment | 2,325 | 873 | 3,108 | 3,048 | 2,860 | 6,335 |
| Office Supplies | 2,542 | 2,436 | 4,936 | 5,392 | 5,766 | 5,866 |
| Bank Fees | 6,127 | 5,323 | 5,245 | 3,139 | 908 | 1,258 |
| Payroll Fees | 4,730 | 5,745 | 6,042 | 6,720 | 6,150 | 5,461 |
| Mealsey Roggio | - | Page-4 | - | - | - | 7/10/2007 |

**Del Mar Seafoods, Inc. - Olde Port Division**
**Income Statement**

| | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 |
|---|---|---|---|---|---|---|
| Express Mail | - | - | - | - | - | - |
| Waste Disposal | 1,522 | 1,509 | 2,534 | 1,551 | - | 680 |
| Postage | 225 | 332 | 306 | 370 | 392 | 390 |
| Safety | - | - | - | - | - | - |
| Misc. Freight | - | - | - | - | - | - |
| Fine & Penalties | 270 | - | 998 | - | - | - |
| First Aid/Workers Comp. | - | - | - | - | - | - |
| Dues & Subscriptions | 15 | 63 | 65 | 395 | - | - |
| Food Inspection | - | - | - | - | - | - |
| Food Chemicals | - | - | - | - | - | - |
| Contributions | 250 | 1,000 | 1,100 | 1,200 | 1,010 | - |
| Misc. expense | 16,190 | 7,192 | 6,539 | 4,727 | 6,327 | 7,253 |
| Misc. scale fees | | | - | | - | |
| **Total Gen/Admin** | 437,078 | 522,517 | 506,063 | 398,764 | 422,450 | 392,739 |
| **Gen/Admin Percentage** | 0 | 0 | 0 | 0 | 0 | 0 |
| **Operating Income** | (154,218) | 37,641 | (8,757) | (10,805) | 50,618 | 95,454 |
| Interest Income | - | - | - | - | - | 2 |
| Gain on Sale of Assets | - | - | - | - | - | - |
| Other Income | 825 | 382 | 1,033 | 1,105 | 485 | 1,114 |
| Interest Expense | - | | - | - | (7) | - |
| MBSPA | - | | | - | - | - |
| Loss on Sale of Assets | - | | - | - | - | - |
| Bad Debts | (4,812) | | (6,832) | (529) | - | (16) |
| Other Expense | - | | - | (127) | (5,485) | - |
| **Income before Tax** | (158,203) | 38,024 | (14,556) | (10,356) | 45,611 | 96,552 |
| **Income Tax** | - | | - | - | - | - |
| **Net Income** | (158,203) | 38,024 | (14,556) | (10,356) | 45,611 | 96,552 |
| Barry 1099 Income | - | - | - | - | 54,938 | 87,226 |
| Pending Activity | (79,102) | 19,012 | (7,278) | (5,178) | - | - |
| **Amount Due** | | | (72,546) | | | |

# EXHIBIT F

 

# Actions

**Home**          **Complaints/Parties**    **Actions**    **Minutes**
**Pending Hearings**    **Case Report**

## Case FLSFL024432 - CHRISTENE COHEN V BARRY ALLEN COHEN

[ Move To This Date ]

| Viewed | Date | Action Text | Disposition |
|---|---|---|---|
| | 10/02/2007 8:30 AM DEPT. 4 | FURTHER STATUS CONFERENCE | |
| | 08/06/2007 10:00 AM DEPT. 4 | SETTING RE EVIDENTIARY HRG RE TRO DOMESTIC VIOLENCE | |
| | 08/06/2007 10:00 AM DEPT. 4 | HEARING REISSUANCE OF TRO DOMESTIC VIOLENCE | |
| | 07/03/2007 8:30 AM DEPT. 4 | STATUS HEARING - Minutes | COMPLETED |
| | 07/03/2007 | PROOF OF SERVICE BY MAIL OF FINDINGS AND ORDER AFTER HEARING SERVED ON CHRISTENE COHEN FILED. DATE OF MAILING: 07/03/07. | Not Applicable |
| | 06/28/2007 | FINDINGS & ORDER AFTER HEARING OF 06/07/07 FILED BY BARRY ALLEN COHEN. | Not Applicable |
| | 06/18/2007 | (FL) STATUS CONFERENCE STATEMENT RECEIVED FROM BARRY ALLEN COHEN | |
| | 06/12/2007 | REPORTER'S TRANSCRIPT FILED | Not Applicable |
| | 06/07/2007 8:30 AM DEPT. 4 | HRG ON OSC RE ENFORCE COURT ORDER, SANCTION, REIMBURSMENT & VANGUARD ACCT FILED BY BARRY ALLEN COHEN - Minutes | COMPLETED |
| | 06/07/2007 8:30 AM DEPT. 4 | (FL) REVIEW HEARING - SPOUSAL SUPPORT | |
| | 06/07/2007 8:31 AM DEPT. 4 | (FL) REVIEW HEARING - SPOUSAL SUPPORT - Minutes | CONTINUED |
| | 06/01/2007 | SET FOR 6/07/07 AT 8:30 IN DEPT 4 | |
| | 06/01/2007 | NOTICE OF ENTRY OF ORDER FILED BY CHRISTENE COHEN | Not Applicable |
| | 05/31/2007 8:32 AM DEPT. 4 | (FL) MOTION RE NOM & MOTION TO BE RELIEVED AS COUNSEL BY CHRISTENE COHEN - Minutes | COMPLETED |
| | 05/31/2007 | ORDER GRANTING ATTORNEYS MOTION TO BE RELIEVED FILED | Not Applicable |
| | 05/23/2007 | FEE TAKEN FOR MOTION TO BE RELIEVED AS COUNSEL. | Not Applicable |
| | 05/22/2007 | (FL) EX PARTE APPLICATION RE OST FOR NOTICE& HEARING ON MOTION TO WITHDRAW FILED BY CHRISTENE COHEN | Not Applicable |
| | | | |

| | 05/22/2007 | EX PARTE ORDER OST FOR NOTICE & HEARING ON MOTION TO WITHDRAW FILED BY CHRISTENE COHEN | Not Applicable |
| --- | --- | --- | --- |
| | 05/22/2007 | MOTION RE NOM & MOTION TO BE RELIEVED AS COUNSEL FILED BY CHRISTENE COHEN. EX-PARTE REQUEST FOR ORDER SHORTENING TIME GRANTED. | |
| | 05/22/2007 | SET FOR 5/31/07 AT 8:32 IN COURTROOM 4 | |
| | 05/18/2007 8:31 AM DEPT. 4 | (FL) REVIEW HEARING - SPOUSAL SUPPORT - Minutes | CONTINUED |
| | 05/15/2007 | MOTION RE: ATTY FEES, ENFORCE COURT ORDER AND SANCTIONS, ETC. FILED BY BARRY ALLEN COHEN. | |
| | 05/03/2007 | FINDINGS & ORDER AFTER HEARING OF 03/22/07 FILED BY CHRISTENE COHEN. | Not Applicable |
| | 04/30/2007 | RESERVED HEARING DATE FOR OSC/MOTION RE COMPLY WITH CT ORDER-ATTY FEES/VICKI PARRY | Not Applicable |
| | 04/20/2007 | FINDINGS AND ORDER AFTER HEARING RECEIVED FROM CHRISTENE COHEN. | Not Applicable |
| | 04/02/2007 1:30 PM DEPT. 4 | EVIDENTIARY HRG RE TRO DOMESTIC VIOLENCE | VACATED |
| | 03/29/2007 | SET ON 8/06/07 AT 10:00 IN DEPT 4 | |
| | 03/29/2007 | REISSUANCE OF DV TROS AND NOTICE OF HEARING FILED - TROS EXPIRE 08/06/07 | |
| | 03/27/2007 | FEE TAKEN FOR PHOTOCOPIES. | Not Applicable |
| | 03/22/2007 8:30 AM DEPT. 4 | (FL) MOTION RE SPOUSAL SUPPORT AND ATTORNEY FEES AND COSTS BY CHRISTENE COHEN - Minutes | COMPLETED |
| | 03/19/2007 | RESPONSIVE DECLARATION TO OSC/NOTICE OF MOTION SET FOR 03/22/07 FILED BY BARRY ALLEN COHEN | Not Applicable |
| | 03/19/2007 | INCOME AND EXPENSE DECLARATION FILED BY BARRY ALLEN COHEN | Not Applicable |
| | 03/06/2007 | FEE TAKEN FOR COPIES. | Not Applicable |
| | 03/06/2007 | FEE TAKEN FOR COPIES(REQ). | Not Applicable |
| | 02/27/2007 | MOTION RE: SPOUSAL SUPPORT AND ATTORNEY FEES AND COSTS FILED BY CHRISTENE COHEN. | |
| | 02/27/2007 | SET FOR 3/22/07 AT 8:30 IN COURTROOM 4 | |
| | 02/27/2007 | INCOME AND EXPENSE DECLARATION FILED BY CHRISTENE COHEN | Not Applicable |
| | 02/06/2007 | RESERVED HEARING DATE FOR OSC/MOTION RE NOT OF MOT TO SET SPOUSAL SUPPORT/JENNIFER GRAY | Not Applicable |
| | 02/02/2007 | RESPONSE FILED BY BARRY ALLEN COHEN REPRESENTED BY VICKI J PARRY | Not Applicable |
| | 01/22/2007 | REISSUANCE OF DV TROS AND NOTICE OF HEARING FILED - TROS EXPIRE 040207 | |
| | 01/22/2007 10:00 AM DEPT. 4 | HEARING RE TRO DOMESTIC VIOLENCE - Minutes | COMPLETED |
| | 01/16/2007 | PROOF OF SERVICE (PERSONAL) OF APPLICATION - (SUPPLEMENTAL) DV W/O MINOR CHILD OF CHRISTENE COHEN SERVED ON BARRY ALLEN COHEN WITH SERVICE DATE OF 01/05/07 | Not Applicable |

| | | | |
|---|---|---|---|
| | 01/11/2007 | PROOF OF SERVICE (PERSONAL) OF SUMMONS AND PETITION - DISSO W/O MINOR CHILD OF CHRISTENE COHEN SERVED ON BARRY ALLEN COHEN WITH SERVICE DATE OF 01/05/07 | Not Applicable |
| | 01/04/2007 | PETITION FOR DISSOLUTION OF MARRIAGE FILED | Not Applicable |
| | 01/04/2007 | FL SUMMONS ISSUED AND FILED | Not Applicable |
| | 01/04/2007 | STATUS HEARING SET FOR 7/03/07 AT 8:30 IN DEPARTMENT 4 | |
| | 01/04/2007 | APPLICATION FOR DOMESTIC VIOLENCE (SUBSEQUENT) FILED BY CHRISTENE COHEN RESTRAINED PARTY BARRY ALLEN COHEN | Not Applicable |
| | 01/04/2007 | NOTICE OF HEARING RE DOMESTIC VIOLENCE RESTRAINING ORDERS FILED | |
| | 01/04/2007 | SET ON 1/22/07 AT 10:00 IN DEPT 4 | |

 **Minute Orders** 

**Home**              **Complaints/Parties**    **Actions**    **Minutes**
**Pending Hearings**  **Case Report**

**Action:**   (Choose)

## HEARING RE TRO DOMESTIC VIOLENCE
## 01/22/2007 - 10:00 AM DEPT. 4

HONORABLE COMMISSIONER IRWIN H. JOSEPH PRESIDING
CLERK: JANET GARLAND
REPORTER: KEN KNUTH
-
-

APPEARANCES:
GREGORY CARTER, ESQ., COUNSEL APPEARING WITH CHRISTENE COHEN
VICKI PARRY, ESQ., COUNSEL APPEARING WITH BARRY ALLEN COHEN
-
-

COUNSEL/PARTIES ADDRESS(ES) THE ISSUES NOW BEFORE THE COURT.
THE COURT IS ADVISED THAT THE FAMILY RESIDENCE IS BEING LISTED FOR SALE.
-
-

THE COURT REMINDS THE PARTIES OF THE AUTOMATIC RESTRAINING ORDERS AND OF THE NEED TO MAINTAIN
THE MORTGAGE ON THE RESIDENCE PENDING SALE.
-
-

IT IS ORDERED:
-

RESTRAINING ORDERS:
THE TEMPORARY RESTRAINING ORDERS SHALL REMAIN IN EFFECT PENDING THE NEXT HEARING DATE.
-
-

THE COURT SIGNS THE ORDER PRESENTED.
-

NEXT COURT DATE:
THIS MATTER IS SET FOR EVIDENTIARY HRG RE TRO DOMESTIC VIOLENCE ON 04/02/07 AT 01:30 IN DEPARTMENT 4.
TIME ESTIMATE: 3 HOURS
========== MINUTE ORDER END/JG ==========

 **Minute Orders** 

**Home**          Complaints/Parties    **Actions**    **Minutes**
**Pending Hearings**    **Case Report**

**Action:**    (Choose)

## (FL) MOTION RE SPOUSAL SUPPORT AND ATTORNEY FEES AND COSTS BY CHRISTENE COHEN
### 03/22/2007 - 8:30 AM DEPT. 4

HONORABLE COMMISSIONER IRWIN H. JOSEPH PRESIDING
CLERK: JANET GARLAND
REPORTER: KEN KNUTH
-
-

APPEARANCES:
JENNIFER GRAY, ESQ., COUNSEL APPEARING WITH CHRISTENE COHEN
VICKI PARRY, ESQ., COUNSEL APPEARING WITH BARRY ALLEN COHEN
-
-

COUNSEL/PARTIES ADDRESS(ES) THE ISSUES NOW BEFORE THE COURT.
COUNSEL ADVISE THE COURT THAT THERE IS A STIPULATION AND MS. PARRY RECITES SAID
STIPULATION WHICH INCLUDES, BUT IS NOT LIMITED TO, THE FOLLOWING COURT ORDERS INTO THE
RECORD.
-
-

IT IS ORDERED:
-
-

STIPULATIONS:
STIPULATIONS:
RESPONDENT SHALL PAY TEMPORARY SPOUSAL SUPPORT IN THE AMOUNT OF $2,500;
JURISDICTION IS RESERVED RE
MODIFICATION OF SUPPORT; PETITIONER SHALL BE PROVIDED WITH THE GAVRON WARNING;
PETITIONER
SHALL PROVIDE JOB SEARCH RECORDS TO MS. PARRY AND MS. PARRY WILL NOT DISCLOSE TO
RESPONDENT
THE LOCATION OR OTHER PERTINENT IDENTIFYING INFORMATION RE PETITIONERS RESIDENCE;
THE NEXT SPOUSAL SUPPORT PAYMENT SHALL BE MADE ON 4/15/07 AND THE MARCH PAYMENT
SHALL BE MAILED TO
MS. GRAYS OFFICE BY 3/30/07; A WALK THROUGH OF THE RESIDENCE SHALL BE ARRANGED; AND
THE
PERSONAL PROPERTY SHALL BE DIVIDED PURSUANT TO THE LIST AS AGREED EXCEPT THAT THE
DINING ROOM
SET AND "BOMBAY" SHALL BE STORED.
-

THE PARTIES ADVISE THEY ARE IN AGREEMENT WITH THE STIPULATION.

THE COURT ADOPTS THE STIPULATION AND SO ORDERS.

RESTRAINING ORDERS:
THE TEMPORARY RESTRAINING ORDERS SHALL REMAIN IN EFFECT PENDING THE NEXT HEARING DATE.
BOTH PARTIES WAIVE TIME FOR HEARING.

NEXT COURT DATE:
THE PREVIOUSLY SET EVIDENTIARY HEARING ON 4/2/07 AT 1:30 PM IN DEPT. 4 SHALL BE VACATED.

THIS MATTER IS SET FOR REVIEW OF SPOUSAL SUPPORT ON 05/18/07 AT 08:31 IN DEPARTMENT 4.
THIS MATTER IS SET FOR REVIEW OF SPOUSAL SUPPORT ON 05/18/07 AT 08:31 IN DEPARTMENT 4.

THIS MATTER IS SET FOR SETTING RE EVIDENTIARY HRG RE TRO DOMESTIC VIOLENCE ON 08/06/07 AT 10:00 IN DEPARTMENT 4.
========== MINUTE ORDER END/JG ==========

 # Minute Orders 

**Home**            **Complaints/Parties**    **Actions**    **Minutes**
**Pending Hearings**    **Case Report**

**Action:**    (Choose)

## HRG ON OSC RE ENFORCE COURT ORDER, SANCTION, REIMBURSMENT & VANGUARD ACCT FILED BY BARRY ALLEN COHEN
## 06/07/2007 - 8:30 AM DEPT. 4

HONORABLE COMMISSIONER IRWIN H. JOSEPH PRESIDING
CLERK: JANET GARLAND
REPORTER: KEN KNUTH
-
-

APPEARANCES:
VICKI PARRY, ESQ., COUNSEL APPEARING WITH BARRY ALLEN COHEN
-
-

COUNSEL ADDRESS(ES) THE ISSUES NOW BEFORE THE COURT.
COUNSEL ADDRESS THE ISSUES NOW BEFORE THE COURT.
-
-

THE COURT FINDS THAT MS. GRAY WAS PREVIOUSLY AND PROPERLY GRANTED HER REQUEST TO BE RELIEVED AS
COUNSEL FOR PETITIONER AND THAT PETITIONER WAS PROPERLY NOTICE OF TODAYS HEARING DATE.
-
-

IT IS ORDERED:
-

ASSETS AND LIABILITIES:
ALL PERSONAL PROPERTY NOTED BY RESPONDENT SHALL BE RETURNED TO SANTA CRUZ FORTHWITH BY THE
PETITIONER AND PLACED IN STORAGE AT PETITIONERS EXPENSE UNTIL THE ITEMS ARE DIVIDED PROPERLY.
-
-

THE AMOUNT OF $3,711 FROM THE TOTAL EXCROW AMOUNT OF $7,422, IS DUE AND PAYABLE TO RESPONDENT.
-
-

THE $2,000 FOR THE WASHER AND DRYER SHALL BE SHARED EQUALLY WITH RESPONDENT TO RECEIVE
$1,000.
-

-

THE JOINT VANGUARD ACCOUNT OF $10,000 IN FUNDS SHALL BE PROVIDED TO MS. PARRY TO PLACE IN HER

TRUST ACCOUNT OR EVIDENCE OFTHE DISTRIBUTION OF SAID FUNDS SHALL BE PROVIDED TO MS. PARRY.

-

ATTORNEY FEES/COSTS:

PETITIONER TO PAY RESPONDENTS ATTORNEY FEES IN THE AMOUNT OF $540 PLUS FILING FEES OF $40.

ADDITIONALLY, THE OUT-OF-POCKET EXPENSES OF RESPONDENT, APPROXIMATELY $159 SHALL BE PAID TO

MS. PARRY BY PETITIONER AS SANCTIONS.

-

SUPPORT:

SPOUSAL SUPPORT, PAYABLE BY RESPONDENT TO PETITIONER, SHALL BE SET AT $0 PER MONTH, EFFECTIVE 6/1/07. THE COURT RESERVES JUSRIDICTION TO RETROACTIVELY MODIFY SUPPORT AND

NOTES THAT ANY RETROACTIVE MODIFICATION SHALL GIVE CREDIT FOR MONETARY ISSUES DECIDED TODAY

========== MINUTE ORDER END/JG ==========