# EXHIBIT G

01/22/2007 11:09 FAX 925 933 4126        MILLER STARR _____        ☒002

4 40

1  GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2  CAROLYN E. NELSON (Bar No. 238526)
   MILLER STARR REGALIA
3  A Professional Law Corporation
   1331 N. California Blvd., Fifth Floor
4  Post Office Box 8177
   Walnut Creek, California 94596
5  Telephone:    925 935 9400
   Facsimile:    925 933 4126
6
   Attorneys for Plaintiffs
7  BARRY A. COHEN, LEONARD A. COHEN,
   OLDE PORT INN, INC., and OLDE PORT
8  FISHERIES, INC.

                                        **FILED**

                                        JAN 22 2007

                                SAN LUIS OBISPO SUPERIOR COURT
                                BY _Nancy G. Gudino_
                                   N. Gudino, Deputy Clerk

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF SAN LUIS OBISPO                    **BY FAX**

11

12  BARRY A. COHEN; LEONARD A.              Case No. CV 040897
    COHEN; OLDE PORT INN, INC.; and
13  OLDE PORT FISHERIES, INC.,             NOTICE OF MOTION AND MOTION OF
                                           PLAINTIFFS FOR ATTORNEYS' FEES AND
14            Plaintiffs,                   LITIGATION EXPENSES AND COSTS

15      v.                                  Date:    February 21, 2007
                                            Time:    9:00 a.m.
16  PORT SAN LUIS HARBOR DISTRICT;          Judge:   Hon. Barry T. LaBarbera
    and DOES 1 to 50, inclusive,            Location: 801 Grand Avenue
17                                                    San Luis Obsipo, CA
              Defendants.
18                                          Complaint Filed:  October 22, 2004
19  _____         Trial Date:  May 8, 2006
    AND RELATED CROSS-ACTION.
20
    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
21
            PLEASE TAKE NOTICE that on February 21, 2007, at  9:00 a.m., or as soon
22
    thereafter as the matter may be heard, in Department 2 of the above-entitled Court, located at
23
    1035 Palm Street, San Luis Obispo, California, Plaintiffs Barry Cohen, Leonard Cohen, Olde Port
24
    Fisheries, Inc., and Olde Port Inn, Inc. (the "Cohens" or "Plaintiffs") will move, and hereby do,
25
    move this Court pursuant to Civil Code section 1717, Code of Civil Procedure sections 1021 and
26
    1032, California Rule of Court 3.1702, the applicable contracts, and all applicable law, for an
27

28
    CRAA\44158\683365.1                         -1-
                        NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

1    order awarding to Plaintiffs their attorneys' fees, litigation expenses, and costs against Defendant

2    Port San Luis Harbor District ("Defendant" or "District").

3        This motion is made on the grounds that Plaintiffs prevailed and recovered the

4    greater relief in this action to enforce, declare rights under, and obtain damages and/or equitable

5    relief under the 1993 Settlement Agreement and the 1994 Lease, which provide for recovery of

6    attorneys' fees to the party prevailing in such actions. In its Statement of Decision and Judgment,

7    this Court awarded B. Cohen $50,000 in damages, and awarded all Plaintiffs substantial equitable

8    relief, requiring Defendant to comply with its contractual obligations to provide 17 to 20 public

9    parking spaces on the Harford Pier terminus, to provide commercial trucks at least one space to

10   stop (two if possible) that does not block the public parking spaces or fire lane, to repair all public

11   walkways from the Harford Landing to the end of the Pier terminus, and to implement and

12   enforce parking regulations and rights of the Cohens. Since before this lawsuit was filed,

13   Plaintiffs primary litigation objective was to compel District to recognize, stop breaching and

14   comply with these very contractual and legal obligations. Plaintiffs recovered the greater relief in

15   this action, and are therefore entitled to recover their fees. Because the 1993 Settlement

16   Agreement, which is incorporated into and integrated with the 1994 Lease, and which also

17   incorporates the 1976 Lease, provides that the prevailing party shall be entitled to litigation

18   "expenses" and "costs", in addition to attorney fees, Plaintiffs are also entitled to recover their

19   litigation expenses not claimed in the Memorandum of Costs filed pursuant to Code of Civil

20   Procedure section 1032 on December 7, 2006.

21       This motion is based on this Notice of Motion and Motion for Attorneys' Fees, the

22   accompanying Memorandum of Points and Authorities, Declarations of Arthur F. Coon, Barry A.

23   Cohen, Leonard A. Cohen, and Richard Carsel, and Request for Judicial Notice, all pleadings and

24

25

26

27

28

CRAA\4415886R83365.1

-2-

1  records on file herein, and on such further oral and documentary evidence and argument as may

2  be presented at or before the hearing of the motion.

3  Dated: January 22, 2007                    MILLER STARR REGALIA

4

5                                              By: _____

6                                              ARTHUR F. COON
                                               Attorneys for Plaintiffs BARRY A.
7                                              COHEN, LEONARD A. COHEN, OLDE
                                               PORT INN, INC., and OLDE PORT
8                                              FISHERIES, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44158\683365.1                         -3-

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

**PROOF OF SERVICE**
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR ATTORNEYS' FEES AND LITIGATION EXPENSES AND COSTS

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Martin P. Moroski<br>Adamski, Moroski, Madden & Green<br>P. O. Box 3835<br>San Luis Obispo, CA 93403-3835<br>Tel: (805) 543-0990<br>Fax: (805) 543-0980<br>e-mail:<br>moroski@adamskimoroski.com | David M. Cumberland<br>Cumberland, Coates & Duenow, LLP<br>550 Dana Street<br>San Luis Obispo, CA 93401-3429<br>Tel: (805) 541-4200<br>Fax: (805) 541-4293<br>e-mail: dmc@ccdlawfirm.com |
| *Overnight/Hand Delivery Only:*<br>6633 Bay Laurel Place<br>Avila Beach, CA 93424 | Co-Counsel for Defendant and Cross-Complainant PORT SAN LUIS HARBOR DISTRICT |
| Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT** | |

CRAA\44158\683365.1     -4-

1         **_Courtesy Copy:_**

2         Hon. Barry T. LaBarbera

3         San Luis Obispo Superior Court
          Department 2

          1035 Palm St., 3rd Fl.

4         San Luis Obispo, CA 93408
          e-mail:

5         Barry.LaBarbera@slo.courts.ca.gov

6         I am readily familiar with the firm's practice of collection and processing

7 correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I

8 am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9         I declare under penalty of perjury under the laws of the State of California that the

10 foregoing is true and correct.

11         Executed on January 22, 2007, at Walnut Creek, California.

12

13                                   Karen Irias

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44158\683365.1                        -5-

01/22/2007  11:17 FAX  925 933 4126        MILLER STARR                                    ⌀002

1  GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2  CAROLYN E. NELSON (Bar No. 238526)
   MILLER, STARR & REGALIA
3  A Professional Law Corporation
   1331 N. California Blvd., Fifth Floor
4  Post Office Box 8177
   Walnut Creek, California 94596
5  Telephone:    (925) 935-9400

6  Attorneys for Plaintiffs and Cross-Defendants
   BARRY A. COHEN, LEONARD A. COHEN,
7  OLDE PORT INN, INC., and OLDE PORT
   FISHERIES, INC.

8

**FILED**

**JAN 22 2007**

SAN LUIS OBISPO SUPERIOR COURT
BY  _Nancy G. Gudino_
    N. Gudino, Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN LUIS OBISPO

11                                                              **BY FAX**

12  BARRY A. COHEN; LEONARD A.          Case No. CV 040897
    COHEN; OLDE PORT INN. INC.; and
13  OLDE PORT FISHERIES. INC.,          MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
14         Plaintiffs.                  PLAINTIFFS' MOTION FOR ATTORNEYS'
                                        FEES AND LITIGATIONS EXPENSES AND
15  v.                                  COSTS

16  PORT SAN LUIS HARBOR DISTRICT;      [Civ. Code, § 1717; Code Civ. Proc., §§ 1021,
    and DOES 1 to 50. inclusive,        1032; Cal. Rules of Court, Rule 3.1702]
17
           Defendants.                  Date:       February 21, 2007
18                                       Time:       9:00 a.m.
                                         Judge:      Hon. Barry T. LaBarbera
19  AND RELATED CROSS-ACTION.           Location: 801 Grand Avenue
                                                   San Luis Obispo, CA
20
                                        Complaint Filed:  October 22, 2004
21                                       Trial Date:       May 8, 2006

22

23

24

25

26

27

28

CRAA\44139\683299.5

01/22/2007 11:17 FAX 925 933 4126    MILLER STARR    ☒003

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.   STATEMENT OF FACTS ............................................................................................. 2

      A.    Defendant Breaches, and Cohens File Suit to Enforce, the Settlement ............... 2

      B.    The Court's Statement of Decision and Judgment.............................................. 3

      C.    The Contractual Attorneys' Fees Provisions ..................................................... 5

III.  LEGAL ARGUMENT.................................................................................................. 5

      A.    Governing Standards........................................................................................ 5

      B.    Plaintiffs Are Entitled to an Award of Their Attorneys' Fees, Litigation
            Expenses, and Costs Under the Contracts on Which They Prevailed.................... 6

            1.    Plaintiffs Are Prevailing Parties Entitled to Recover Their
                  Attorneys' Fees Under Section 1717 and the Clear Language of the
                  Contracts ............................................................................................... 6

            2.    Plaintiffs Are Entitled by Contract to Recover Their Litigation
                  Expenses and Costs in Addition to Fees ................................................. 12

      C.    Plaintiffs Are Entitled to the Full Amount of Fees and Litigation Expenses
            Sought .......................................................................................................... 13

            1.    Plaintiffs' Requested Attorneys' Fees Are Reasonable ............................ 13

            2.    Plaintiffs' Litigation Expenses Are Reasonable ..................................... 15

IV.   CONCLUSION ......................................................................................................... 15

MPA I/S/O MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

Page

### CASES

*Acree v. General Motors Acceptance Corp.*
(2001) 92 Cal.App.4th 385 .......................................................................... 7, 9, 11

*Ajaxo, Inc. v. E\*Trade Group, Inc.*
(2005) 135 Cal.App.4th 21 .............................................................................. 6

*Baugh v. Garl*
(2006) 137 Cal.App.4th 737 ............................................................................ 7

*Bussey v. Affleck*
(1990) 225 Cal.App.3d 1162.......................................................................... 12, 13

*City of Oakland v. Oakland Raiders*
(1988) 203 Cal.App.3d 78.............................................................................. 14

*Epstein v. Frank*
(1981) 125 Cal.App.3d 111............................................................................ 7

*Graciano v. Robinson Ford Sales, Inc.*
(2006) 144 Cal.App.4th 140 .......................................................................... 13

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*
(9th Cir. 1996) 100 F.3d 691 ......................................................................... 14

*Hastings v. Matlock*
(1985) 171 Cal.App.3d 826............................................................................ 7

*Horsford v. Board of Trustees of Cal. State Univ.*
(2005) 132 Cal.App.4th 359 .......................................................................... 14

*Hsu v. Abbara*
(1995) 9 Cal.4th 863 ..................................................................................... 6, 8

*Jackson v. Homeowners Assn. Monte Vista Estates – East*
(2001) 93 Cal.App.4th 773 ............................................................................ 8

*PLCM Group, Inc. v. Drexler*
(2000) 22 Cal.4th 1084 ................................................................................. 13, 14

*Sears v. Baccaglio*
(1998) 60 Cal.App.4th 1136 .......................................................................... 5, 6, 7

*Texas Commerce Bank v. Garamendi*
(1994) 28 Cal.App.4th 1234 .......................................................................... 6, 7

1

## STATUTES

2  Civil Code

3  Section 1641 ........................................................................................... 7
Section 1717 ...................................................................................... passim
4  Section 1717(a) .................................................................................. 5, 6
Section 1717(b)(1) .............................................................................. 6, 7

5

6  Code of Civil Procedure

Section 1021 .......................................................................... 1, 5
7  Section 1052 ....................................................................................... 5, 6
Section 1033.5(a)(10)(A) ........................................................................ 6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA I/S/O MOTION FOR ATTORNEYS' FEES

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Forced to fight a bullying governmental Goliath which stonewalled, contested liability, and fought an economic war of attrition every step of the way, Plaintiffs Barry Cohen, Leonard Cohen, OPF, and OPI ("Cohens" or "Plaintiffs") ultimately prevailed by obtaining a favorable judgment equitably enforcing the parties' settlement agreement. The jury and Court found and declared that Defendant Port San Luis Harbor District ("Defendant" or "District") breached every contract; that all plaintiffs were beneficiaries of the breached contracts; that District must pay Barry Cohen $50,000 in past damages; and that District must specifically perform the material parking/truck access and repair and maintenance settlement provisions, breach of which gave rise to this lawsuit over two years ago.

For its part, District claims "victory" because Plaintiffs "only" won $50,000 in monetary relief, the declaratory and specific performance awards it fought so hard against--and still defiantly refuses to comply with--are supposedly "de minimis"; and the Court cut B. Cohen's past and future rent under the 1994 Lease in half until District performs its material contract obligations as ordered. All District's contentions are absurd; the last is akin to claiming a court order cutting a borrower's mortgage payments in half is a "victory" for the lender--a "defeat" any rational borrower would welcome. In short, unmeritoriously belittling the greater relief won by Plaintiffs does not give Defendant the greater relief. District's claims on the prevailing party issue are thinner than the Emperor's new clothes. Cohens clearly won the greater relief on the contracts, and achieved their primary litigation objective of establishing District's breaches and enforcing the settlement agreement, thus entitling them to an award of fees, costs and expenses under Code of Civil Procedure section 1021 and Civil Code section 1717 ("Section 1717").

A primary purpose of attorneys' fees clauses like those in the 1993 Settlement Agreement and 1994 Lease is to protect plaintiffs with meritorious contract claims from defendants with superior economic resources who could otherwise litigate to "win" an economic war of attrition and render any victory by the prevailing parties a Phyrric one. Fee clauses should be equitably enforced to prevent plaintiffs with meritorious contract claims from having to choose between enforcing their rights and preserving their financial solvency.

CRAA\44158\683389.5                                  -1-

1    In sum, and for reasons stated in more detail below, the plain language of the contract

2    clauses, the applicable law, and simple justice require this court to enforce the fee clauses and to

3    protect the Cohens from Defendant's overreaching use of its raw economic power to attempt to

4    bully them into submission to its breaches. In equity, this Court must recognize Plaintiffs as

5    prevailing parties and grant their motion for fees, costs and expenses.

6    II.    STATEMENT OF FACTS

7        A.    Defendant Breaches, and Cohens File Suit to Enforce, the Settlement.

8        The facts of this case are by now well known to the Court.[1] This lawsuit arose when

9    District breached a settlement agreement embodied in the 1993 Settlement Agreement . . . 1

10    Mutual Release ("1993 Settlement Agreement") and the 1994 Cold/Dry Storage Facility L. .se

11    ("1994 Lease"), which required District to make at least 17 public parking spaces available on the

12    Pier terminus, provide regular semi-truck access to the Pier businesses without impeding the

13    parking, repair and maintain the Pier (including decking), and grant Cohens and their customers

14    non-exclusive use of public parking areas.

15        On June 25, 2004, District breached the settlement by adopting its "interim shared-use

16    plan" (with no termination date) over Cohens' objections. (Complaint, Ex. E; Declaration of

17    Barry A. Cohen ("B. Cohen decl."), ¶¶ 12-13.) The plan violated the settlement agreement by

18    converting 9 of the promised 17 public parking spaces to a truck loading area. Cohens hired

19    counsel,[2] and on July 2, 2004, sent District a public entity claim letter setting forth their demand,

20    the facts regarding District's breaches, and a proposed resolution. (Declaration of Arthur F. Coon

---

[1] To avoid unnecessary repetition and save paper, Plaintiffs incorporate by reference the State-
ment of Facts in their Memorandum of Points and Authorities in support of Motion to Strike
District's Entire Memorandum of Costs, filed on December 26, 2006.
[2] Cohens hired Miller Starr Regalia ("MSR") when it became evident District would breach the
settlement. (B. Cohen decl , ¶ 11; Declaration of Leonard A. Cohen ("L. Cohen decl."), ¶ 3.)
Cohens chose MSR because it had successfully handled a prior law suit (which resulted in the
settlement agreement), and the firm therefore had a specialized knowledge of the parties and the
agreements at issue. (Declaration of Richard A. Carsel ("Carsel decl."), ¶¶ 10-11; B. Cohen decl.,
¶ 11.) A local San Luis Obispo attorney, Richard Carsel, had referred Cohens to MSR for the
preceding litigation because there were no local firms with practices comparable to MSR's
specialized CEQA and real estate practice. (Carsel decl., ¶¶ 6-7.) MSR negotiated the settlement
on behalf of Cohens and became well-acquainted with the parties and agreements. Because of the
firm's special knowledge and connection to the case, Mr. Carsel again recommended and Cohens
again hired MSR when District later breached that agreement. (B. Cohen decl., ¶ 11; L. Cohen
decl., ¶ 3; Carsel decl., ¶ 10.)

CRAAM4158\0683389.5                                    -2-

1  ("Coon decl."), Ex. A.) The letter stated: *"Olde Port's primary concern and demand is that the*

2  *District do whatever needs to be done to comply with its legal obligations* without adversely

3  affecting the contractual and legal rights of Olde Port and causing it further damages." (*Id.*, p. 3,

4  emph. added.)[3]

5      District refused to honor its material settlement obligations, ultimately forcing B. Cohen's

6  fish processing business out of business. (B. Cohen decl., ¶¶ 2, 12-16.) Left with no choice,

7  Cohens were forced to file this lawsuit, seeking to compel District to comply with its obligations.

8  Plaintiffs jointly alleged nine causes of action with a common purpose: to establish Defendant's

9  breaches and remedy its stubborn refusal to honor its agreements to provide the required public

10  parking and truck access, and to adequately repair and maintain the Pier.[4]

11      B.   The Court's Statement of Decision and Judgment.

12      Defendant mounted an aggressive defense (Coon decl., ¶¶ 6, 11.) and denied liability

13  throughout the litigation. Defendant continued to breach, never offered to perform, and never

14  made any realistically reasonable settlement offer. After several continuances (obtained by

15  Defendant, over Plaintiffs' objections), trial commenced in May, 2006. The jury heard Plaintiffs'

16  money damage claims for breach of the contracts and intentional interference with business

17  advantage, and this Court heard their equitable claims, as well as Defendant's remaining Cross-

18  Complaint causes of action for breach of contract, ejectment, and declaratory relief.[5]

19      The jury found Defendant breached every contract. It found OPI, OPF, and L. Cohen were

20  third party beneficiaries of the contracts, including the 1994 Lease and 1993 Settlement

21  Agreement. (12/11/06 Judgment ["Judg."], 3:16-8:12.) It awarded B. Cohen $50,000 in past

22  damages for Defendant's breaches of the 1994 Lease. (*Id.*, 8:25-27, 12:19-21.)[6]

---

3  Cohens suggested–though they had no obligation to–how District might reconfigure the Pier
terminal to meet its legal obligations and even offered to advance up to $20,000 to help District
pay for the necessary work. (*Id.* at 4-5.) District rejected the advice and the offer.
4  Plaintiffs prudently alleged several causes of action. Virtually all of the causes of action
addressed one wrong: District's breach of contract. While District's conduct violated other laws
(including the Coastal Act), and Plaintiffs had to prudently allege and seek all possible forms of
*relief* (i.e., damages and specific performance), the focus of the complaint was clearly redressing
District's *breach of contract.*
5  Defendant's Cross-Complaint causes of action for express contractual and equitable indemnity
were summarily adjudicated against it and in Cohens' favor before trial. (Judg., 2:23-28.)
6  The jury did not award other Plaintiffs money damages, not because such damages did or
would not occur, but because future damages were too difficult to ascertain. (SOD, 7:6-9.)

CRAAW41S8\683389.5                   -3-

1     After the Court heard argument on the remaining equitable claims, it issued a 11/7/06

2 Statement of Decision ("SOD"), and entered a Judgment incorporating the SOD,[7] awarding

3 substantial equitable relief to Cohens on their breach of contract claims. The Court entered a

4 declaratory judgment agreeing with Cohens and finding District breached the settlement by

5 failing to provide required semi-truck access, failing to maintain the public walkways, failing to

6 provide 17 to 20 public parking spaces, and failing to enforce parking restrictions and limits.

7 (SOD, 3:20-4:5, 6:8-13, 6:21-24; Judg., 12:28-13:8.) It ordered specific performance in favor of

8 all Cohens on the 1994 Lease (and integrated 1993 Settlement Agreement), requiring District to

9 provide commercial trucks *at least* one space for stopping that does not block the public parking

10 spaces or fire lane,[8] to repair all public walkways from Harford Landing to the end of the Pier

11 terminus, and to reconfigure the defined parking spaces (per either Option D or F of Trial Exhibit

12 32) so the public and customers of Plaintiffs' and other Pier businesses will have access to at least

13 17 parking spaces on the Pier terminus. (SOD, 10:12-21; Judg., 13:12-18, 21-26.) The Court

14 required District to ensure parking spaces adjacent to the Pier landing are not designated as

15 exclusive parking for RVs or boat trailers. (SOD, 10:21-24; Judg., 13:26-14:1.) It ordered District

16 to begin the work within 30 days from the Judgment. (SOD, 10:24-25; Judg., 14:1-2.) The Court

17 further ordered that only one-half the rent set by the 1994 Lease terms would be due in the future

18 until Defendant fully performed its obligations. (SOD, 5:25-27, 6:1-7; Judg., 13:18-21.)

19     On Defendant's Cross-Complaint, the Court entered judgment for B. Cohen on the

20 express contractual indemnity claim, and for B. Cohen and OPF on the equitable indemnity claim.

21 (Judg., 14:15-21.) On Defendant's claim for breach of the 1994 Lease, the Court did not award

22 the relief sought by Defendant; it found that B. Cohen was substantially justified in not paying

23 rent (due to District's breaches), and ordered that B. Cohen pay only partial back rent with no late

24 fees. (SOD, 5:25-27; Judg., 13:18-21, 14:22-25.)[9] Judgment was entered for B. Cohen on

25 Defendant's ejectment claim, and partly for each side – as just set forth – on the wholly derivative

26 ---
[7] This Court issued the Judgment on November 22, 2006 and an Amended Judgment nunc pro tunc to correct clerical errors on December 11, 2006.

27 [8] Defendant must make *at least* one space available for temporary truck stoppage. If either Option D or F would allow a second space, Defendant *must* provide one. (SOD, 10:15-17.)

28 [9] This partial back rent, plus prejudgment interest thereon, amounted to $44,808.98, making B. Cohen the party with the net monetary recovery. (Judg., 14:22-25.)

CRAA\4415\0283389.5        -4-

1   declaratory relief claim. (SOD, 5:8-10, 5:27-6:1; Judg., 14:26 – 15:6.)

2       C.   **The Contractual Attorneys' Fees Provisions.**

3       The contracts District breached provide that the prevailing party in an action to enforce

4   them shall be entitled to attorneys' fees. (Complaint, Exs. B, C, [1994 Lease and 1993 Settlement

5   Agreement], B. Cohen decl., ¶¶ 8-9.) The 1993 Settlement Agreement states:

6             If any litigation be commenced between the parties hereto concerning this

7             Agreement or the rights and duties of either Cohen or the District hereunder, *whether it be an action for damages, equitable or declaratory relief,* the

8             prevailing party in such litigation, in addition to such other relief as may be granted by the Court, *shall* be entitled to recover from the other party *reasonable*

9             *expenses, attorneys' fees and costs.*

10  (1993 S.A., ¶ 11, emph. added; B. Cohen decl., ¶ 8.) The 1994 Lease provides: "If either party

11  brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in

12  any such action, on trial or appeal, shall be entitled to its reasonable attorneys' fees to be paid by

13  the losing party as fixed by the court." (1994 Lease, ¶ 18.M.)[10]

14  III.   LEGAL ARGUMENT

15      A.   Governing Standards.

16       A prevailing party in litigation is entitled to recover attorneys' fees where the parties have

17  an agreement that provides for such recovery. (Code Civ. Proc., § 1021.) Where a contract

18  specifically provides that attorneys' fees and costs shall be awarded to the prevailing party in an

19  action to enforce that contract, the prevailing party on the contract *shall* be entitled to reasonable

20  attorneys' fees. (Civ. Code, § 1717(a).) Section 1717 is properly applied where a prevailing party

21  claims attorneys' fees based on a contract provision. (*Sears v. Baccaglio* (1998) 60 Cal.App.4th

22  1136, 1158.) The party prevailing for the award of CCP § 1032 ("Section 1032") costs is not

23  necessarily the prevailing party for the award of attorney's fees in contract actions under Section

---

24  [10] While the 1976 Lease does not contain an express attorneys' fees provision, a breach of that

25  Lease – such as District alleged in its claim express contractual indemnity – would constitute a breach of the express good faith covenant in the 1993 Settlement Agreement, which as worded

26  contains a broad prevailing party attorneys' fees clause. The 1993 Settlement Agreement contains a "Good Faith" clause, which expressly makes a violation of the 1976 Lease a violation of the

27  1993 Settlement Agreement. (1993 S.A., ¶ 15 & Recitals; B. Cohen decl., ¶ 9.) Because the 1993 Settlement Agreement provides that a prevailing party in an action to enforce the agreement is

28  entitled to attorneys' fees, a prevailing party in an action to enforce the 1976 Lease is similarly entitled to attorneys' fees.

C:\RAAM415R\683380.5         -5-

1717. (*Id.* at 1142.) Section 1717 defines "prevailing party" as "the party who recovered *a greater relief in the action* on the contract." (Civ. Code, § 1717(b)(1), emph. added.)

> [T]he history of section 1717 . . . consistently adheres to the theme of equity in the award of fees....
>
> . . .
>
> "The legislative purpose underlying section 1717 . . . is to ensure that contractual attorney fee provisions are enforced evenhandedly." The simplest definition of evenhandedness has always been "equitable" and "dealing equitably with all." [] Resort to the dictionary is instructive, but hardly necessary, because the identification of the party obtaining "a greater relief" itself requires an immediate assessment more equitable in nature than the checklist supplied by section 1032.

(*Sears v. Baccaglio, supra,* 60 Cal.App.4th at 1150-51, citations omitted.)

The court, upon noticed motion, shall determine who is the prevailing party on the contract. (Civ. Code, § 1717(b)(1).) The court also fixes the amount of reasonable attorneys' fees awarded to the prevailing party. (Civ. Code, § 1717(a).) The court has wide discretion in determining which party has prevailed on a contract and in fixing the amount of fees awarded, and its determination will not be disturbed on appeal absent a clear abuse of discretion. (*Ajaxo, Inc. v. E*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 58.) Despite this considerable discretion, the court may not completely deny fees to the prevailing party. (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1247; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 875.)

**B.    Plaintiffs Are Entitled to an Award of Their Attorneys' Fees, Litigation Expenses, and Costs Under the Contracts on Which They Prevailed.**[11]

**1.    Plaintiffs Are Prevailing Parties Entitled to Recover Their Attorneys' Fees Under Section 1717 and the Clear Language of the Contracts.**

Where a contract specifically provides that attorneys' fees and costs shall be awarded to the prevailing party in an action to enforce that contract, then the party who is determined to be the prevailing party on the contract *shall* be entitled to reasonable attorneys' fees. (Civ. Code, § 1717(a).) The 1993 Settlement Agreement provides that, in an action concerning the agreement or the rights and duties of Cohens or District thereunder (whether it be for damages, equitable or

---

[11] As already set forth in Plaintiffs' Motion to Strike and Opposition to District's Motion to Tax, Plaintiffs are prevailing parties, entitled to their costs as of right under CCP § 1032 because B. Cohen obtained a net monetary recovery, and all Plaintiffs obtained significant equitable relief. Among such allowable costs are attorneys' fees when provided by contract. (Code Civ. Proc., § 1033.5(a)(10)(A).) Plaintiffs are entitled to their fees on this additional basis, separately and independently of Section 1717.

CRAA\44158\683289.5                                   -6-

1   declaratory relief), the prevailing party *shall* be entitled to recover not only costs, but also reason-

2   able *expenses* and *attorneys' fees*. (1993 S.A., ¶ 11.) The 1994 Lease also provides that

3   attomeys' fees shall be awarded to the prevailing party. (1994 Lease, ¶ 18.M.) Accordingly, in

4   this action to enforce District's obligations under the settlement agreement, the prevailing party is

5   entitled to attorneys' fees, expenses, and costs.[12]

6       Section 1717 defines "prevailing party" as "the party who recovered *a greater relief in*

7   *the action* on the contract." (Civ. Code, § 1717(b)(1), emph. added.) In determining who

8   recovered the "greater relief," the court must *equitably* assess which party prevailed. (*Sears*,

9   *supra*, 60 Cal.App.4th at 1151, citations omitted.) It is fundamental that a party may prevail even

10   though it did not recover all the relief sought. (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 124

11   ["As a general rule, where claims and counterclaims arise in connection with a contract

12   containing an attorney's fees provision, the party who obtains a *favorable judgment* is deemed to

13   be the prevailing party, *even though he did not successfully obtain all the relief which he*

14   *sought in the action*." Emph. added].)[15]

15       "Greater relief" does not necessarily mean monetary relief. (*Id.* at 399.) Specific perfor-

16   mance, declaratory relief, and injunctive relief can all constitute "greater" relief, supporting an

17   award of attorneys' fees to the party granted such relief.[14] (See *Baugh v. Garl* (2006) 137

18   Cal.App.4th 737, 742-43 [awarding $200,000 in fees following judgment enjoining defendant

19   from violating settlement]; *Texas Commerce Bank, supra*, 28 Cal.App.4th at 1238 [awarding fees

20   to prevailing party in declaratory relief action]; *Hastings v. Matlock* (1985) 171 Cal.App.3d 826,

21   834, 840-42 [awarding fees following judgment awarding specific performance of a settlement].)

22   [12] When negotiating the settlement, B. Cohen insisted upon broad attorneys' fees provisions so
that he would not find himself in the position of later having to pay for attorneys' fees and related

23   expenses out of his own pocket if District again breached the 1976 Lease or settlement agree-
ment. (B. Cohen decl., ¶¶ 8-9.) Use of the term "expenses" is significant, and denotes something

24   in addition to "attorneys' fees" and "costs." It is a well established principle of contract
construction that, if at all possible, meaning must be given to every word. (Civ. Code, § 1641.)

25   [13] "'[L]itigation may involve a series of attacks on an opponent's case. The final ground of reso-
lution may become clear only after a series of unsuccessful attacks. [Attorney fee] [c]ompen-

26   sation is ordinarily warranted even for those unsuccessful attacks to the extent those attacks led to
a successful claim.'" (*Acree v. General Motors Acceptance Corp.*, (2001) 92 Cal.App.4th 385,

27   405.)
[14] This is because specific performance, declaratory relief, and injunctive relief are all remedies

28   for a breach of contract, and obtaining such relief constitutes success on a contract claim. (*Baugh
v. Garl* (2006) 137 Cal.App.4th 737, 742.)

CRAA\44158\6833189.5      -7-

1   In determining whether the plaintiffs obtained a greater relief in the action, the court

2   should examine "the results of the action in relative terms: the general term 'greater' includes

3   '[l]arger in size than others of the same kind' as well as 'principal' and '[s]uperior in quality.'"

4   (*Jackson v. Homeowners Assn. Monte Vista Estates – East* (2001) 93 Cal.App.4th 773, 787.) The

5   court should "'compare the relief awarded on the contract claim or claims with the parties'

6   demands on those same claims and their litigation objectives as disclosed by the pleadings, trial

7   briefs, opening statements, and similar sources.'" (*Id.*) The prevailing party determination is made

8   by a comparison of the extent to which each party has succeeded and failed to succeed in its

9   contentions. (*Id.*) "[T]he 'form of the judgment is not necessarily controlling, but must give way

10   to equitable considerations.' [] *[I]n determining litigation success,* courts should respect

11   substance rather than form, and to this extent should be guided by 'equitable considerations.'"

12   (*Hsu v. Abbara, supra,* 9 Cal.4th at 877.)

13   Here, the Cohens must fairly be regarded as the "winners" who succeeded to the greater

14   extent on their contentions, recovered the greater relief in this action, and are therefore entitled to

15   attorneys' fees. From the time District announced its intention to implement the interim shared-

16   use plan, Plaintiffs' main objective was to establish that District was in breach and to force

17   District to comply with its settlement agreement obligations. As Cohens' July, 2004 public entity

18   claim letter explained, *"Olde Port's primary concern and demand is that the District do*

19   *whatever needs to be done to comply with its legal obligations* without adversely affecting the

20   contractual and legal rights of Olde Port and causing it further damages." (Coon decl., Ex. A,

21   p. 3, emph. added.) At that time, Cohens did not request any money to compensate for

22   Defendant's breaches, other than reimbursement of $8,000 in fees. They simply demanded that

23   District comply with its settlement obligations. (*Id.* at 4-5.) District denied breaching and would

24   not comply with its obligations; after District's material breaches forced B. Cohen's fish

25   processing business to close, Plaintiffs had no choice but to sue, and jointly filed a Complaint

26   alleging nine causes of action with a common purpose: to remedy Defendant's breaches of its

27   agreements to provide the required public parking and truck access, and to adequately repair and

28   maintain the Pier. While Plaintiffs prudently pursued multiple forms of relief for District's

1   breaches of contract, their main litigation objective was always to establish and remedy

2   District's wrongful breaches.

3       Liability was a huge issue in contention in this case. Defendant steadfastly denied liability

4   on any of the contracts, and Plaintiffs were forced to prove liability to obtain any type of relief,

5   whether legal or equitable. Accordingly, during the course of the litigation, Plaintiffs' primary

6   concern remained District's breaches of the settlement agreement. Plaintiffs' 9/28/04 mediation

7   brief, which identified District's relevant contract breaches to include breaches of its obligations

8   to maintain and repair the Pier, to provide 17 to 20 public parking spaces at the end of the Pier, to

9   enforce parking regulations and limitations, and to guarantee regular truck access, and to ensure

10  quiet enjoyment of the premises demonstrated Plaintiffs' goal of compelling performance. (Coon

11  decl., Ex. B, pp. 5, 10.) Plaintiffs' discovery requests served on District also focused on obtaining

12  information relevant to the same breaches highlighted in the mediation brief. (Coon decl., ¶ 9.)

13      After more than 2 years of litigation during which Defendant stubbornly refused to ac-

14  knowledge its breaches or offer to perform, Plaintiffs finally achieved their primary litigation goal

15  of establishing District's liability and compelling District to comply with its obligations when the

16  Court issued its SOD and entered Judgment granting both substantial past money damages and

17  significant equitable relief in Plaintiffs' favor.[15] Regarding future damages, Cohens obtained

18  substantial equitable relief by the declaratory judgment and specific performance decree granting

19  substantially all redress their lawsuit sought to achieve.[16] The Court ordered District to comply

[15] This Judgment is "good news" to Plaintiffs since it establishes District's obligations and breaches and orders District to perform its obligations so that Plaintiffs will not suffer future damages from continuing breaches; it is all "bad news" to District, which must now pay B. Cohen money, finally acknowledge its liability, cure its material breaches by performing its contract obligations, and further substantially reduce the 1994 Lease rent it was previously entitled to collect from Cohens until it complies.

[16] While they prudently sought *alternative remedies* to redress future harm, oppression, wrong and injustice resulting from Defendant's continuing breaches, throughout the litigation Plaintiffs' primary goal remained enforcing the settlement. That Cohens did not succeed on all nine causes of action they alleged toward this end is immaterial. The Complaint sought redress District's breaches of contract. Moreover, this Court only denied certain claims because the relief thereunder would be duplicative and therefore unnecessary. For example, the Court did not grant separate relief for District's breach of the 1976 Lease because it was unnecessary given the other relief granted. (SOD, 3:11-19.) Nor did the Court grant injunctive relief because specific performance was sufficient relief. (SOD, 11:1-3[injunctive relief not necessary to achieve a just result after specific performance granted].) As noted above, even where some "attacks" are unsuccessful, when they lead to a successful claim, that is all that is required for an award of attorneys' fees. (See *Acree v. General Motors Acceptance Corp.*, *supra*, 92 Cal.App.4th at 405.)

CRAA\44158\6833K9.5

-9-

1   with its obligations to repair and maintain the walkways, provide at least 17 parking spaces,

2   enforce parking, and ensure truck access that does not interfere with the guaranteed parking.

3   From the outset, Plaintiffs' primary contention was that District was breaching those very

4   obligations.[17]  (Coon decl., ¶¶ 7-10.) Meanwhile, District stonewalled and denied that it had any

5   such obligations or that it failed to honor any obligations it may have had. (Coon decl., ¶ 10.) This

6   fundamental dispute over liability was resolved resoundingly in Plaintiffs' favor.

7         In addition to achieving Plaintiffs' primary litigation objectives, the relief they obtained is

8   greater by far than any relief supposedly granted to District. From the outset, District contended

9   that it did not have and/or did not have to comply with its settlement obligations. This contention

10  failed. District has now been ordered to comply with its material contractual obligations -- a result

11  it fought hard to avoid and one it has judicially admitted will be expensive and time-consuming

12  for it.

13        District's claims for express and comparative indemnity *were rejected on summary*

14  *adjudication.* District's claim for ejectment was also *rejected in its entirety by the Court.*

15  District's additional contention that Plaintiffs owed *full* back rent *plus late fees* under the 1994

16  Lease *also failed.* While the Court ordered that B. Cohen pay Defendant $44,808.98 in back rent

17  on the cross-complaint. *this actually represented a huge success for B. Cohen on Defendant's*

18  *breach of contract claim.* The amount awarded was less than half of what Defendant demanded

19  and excludes late fees. (B. Cohen decl., ¶ 20.) It is also less than B. Cohen's $50,000 money

20  damages award, giving B. Cohen the net monetary recovery on the 1994 Lease.[18] While the Court

21  granted declaratory relief partially in Cohen's favor, and partially for District, this relief is strictly

22  derivative in nature and reflects District's overall defeat on its ejectment and breach of contract

23  claims. When District's multiple failed claims and minimal relief are compared with Cohens'

24  success in establishing liability and obtaining substantial equitable and monetary awards, it is

25

26  [17] Those obligations were the material consideration for Plaintiffs' settlement and dismissal of the

27  prior lawsuit and were, as this Court expressly found in the SOD, material to the value of the 1994 Lease.

28  [18] Moreover, the amount of future rent on the 1994 Lease is reduced by half until Defendant complies with the Judgment, a success for Plaintiffs, not District.

CRAA\4415\652389.5                                    -10-

1   abundantly clear that Cohens obtained the "greater relief" in this action and are therefore

2   prevailing parties contractually entitled to fees.[19]

3        Awarding Cohens their fees incurred in this action comports with the equitable nature of

4   Section 1717. This is not the first time Cohens have had to file a lawsuit to force District to

5   comply with its contractual (and public) obligations. A prior lawsuit between Cohens and District,

6   filed to prevent District's threatened unlawful destruction of the historic Harford Pier canopy and

7   Olde Port Inn restaurant in violation of the 1976 Lease and CEQA, resulted in issuance of a pre-

8   liminary injunction against District and ultimately settled in Cohens' favor. (B. Cohen decl., ¶¶ 3-

9   6; Coon decl., ¶ 2.) Despite their success, and the public benefit conferred, Cohens were not

10  awarded fees because the 1976 Lease had no attorneys' fees clause. Now, Cohens have been

11  forced to file another lawsuit to protect their contractual rights. Again, they were successful on

12  the merits. This time, they are entitled to fees.

13       It is also equitable to award fees in this case, given that District consistently drove up the

14  cost of litigation. (Coon decl., ¶¶ 6, 11.) It filed a massive but wholly meritless motion for

15  summary adjudication, filed numerous improper and repetitive papers at all stages of this

16  litigation, improperly attempted to use privileged tax returns, doubled the length of all Plaintiffs'

17  depositions of District personnel and other witnesses by continuously (and meritlessly) objecting,

18  noticed multitudes of individual and records depositions, and conducted discovery related to

19  irrelevant issues (e.g., Plaintiffs' personal finances). (L. Cohen decl., ¶ 6; Coon decl., ¶ 11.)

20  District's economic bullying tactics drove up the expense of the litigation significantly beyond

21  anything Plaintiffs could reasonably have anticipated at the outset. (L. Cohen decl., ¶ 6.) As a

22  result, Cohens have been forced to obtain large loans against their residences to finance their

23  meritorious action, and are now forced to sell those residences as a result of the enormous

24  expense of the litigation. (L. Cohen decl., ¶¶ 7-9.) The only equitable fee award is one which

25  honors the parties' contracts, and is, accordingly, one of *all* Plaintiffs' litigation fees, costs and

26  expenses.

27  [19]  Even though B. Cohen also received the greater monetary relief, "greater relief" does not
require greater monetary relief. (See *Acree v. General Motors Acceptance Corp., supra,* 92
28  Cal.App.4th at 399.) Plaintiffs' equitable relief alone warrants an award of attorneys' fees in this
case.

CRAA\441536\683389.5                              -11-

1
       **2.    Plaintiffs Are Entitled by Contract to Recover Their Litigation**
**Expenses and Costs in Addition to Fees.**

2

3
       Under the broad language of the settlement agreement, the prevailing party shall recover

4
not only "attorneys' fees", but reasonable "*expenses*" and "*costs*" as well. (1993 S.A., ¶ 11,

5
emph. added.) Such reasonable expenses here include expert witness fees and the costs of

6
computer legal research. Where a *contract* provides for recovery of *expenses* and attorneys' fees,

7
expenses not allowed as *costs* under Sections 1032 may still be recovered as fees by the

8
prevailing party. (*Bussey v. Affleck* (1990) 225 Cal.App.3d 1162, 1166.) "An agreement for

9
attorneys' fees and costs would be less than effectual if it could not cover the actual costs of

10
litigation, including disbursements of counsel, and a contrary conclusion would mean that the

11
prevailing party on the contract could never be made whole." (*Id.* at 1166.) Thus, in *Bussey*, the

12
court awarded expenses such as expert witness fees, photocopying charges, messenger charges,

13
and telephone bills, finding that the items were expressly authorized by law in that Section 1717

14
provides parties may contract for the payment of attorneys' fees and costs and the parties had

15
done so in that case. (*Id.* at 1167.) The court explained:

16
       "[A]ttorneys' fees and expenses are inseparably intertwined as equally vital
       components of the costs of litigation . . . [E]xpenses such as supplemental

17
       secretarial costs, copying, telephone costs and necessary travel, are integrally
       related to the work of an attorney and the services for which outlays are made

18
       may play a significant role in the ultimate success of litigation . . . ."

19
(*Id.* at 1166.) To be recoverable, the expenses must represent "expenses ordinarily billed to a

20
client," "not included in the overhead component of counsel's hourly rate." (*Id.* at 1166.)

21
       Based on the broad language in the 1993 Settlement Agreement, which provides for reco-

22
very of reasonable expenses, attorneys' fees, and costs, Plaintiffs, as prevailing parties in this

23
litigation, are entitled to recover expenses ordinarily billed to a client that were not included in the

24
overhead component of counsel's hourly rate. Accordingly, Plaintiffs should be awarded liti-

25
gation expenses, such as expert witness fees, Westlaw expenses, photocopying, messenger

26
services, word processing, and the like, in this case. MSR ordinarily bills clients for such

27
litigation expenses, and the firm did so in this case. (Coon decl.,¶¶ 37-42.) Such expenses are not

28

01/22/2007 11:19 FAX 925 933 4126    MILLER STARR    ☒018

1    included in the firm's overhead. (*Id.*) They are therefore recoverable under Section 1717 and

2    *Bussey*.

3        **C.**    **Plaintiffs Are Entitled to the Full Amount of Fees and Litigation Expenses Sought.**

4            **1.**    **Plaintiffs' Requested Attorneys' Fees Are Reasonable.**

5        As prevailing parties in this litigation, Plaintiffs have requested $1,847,180.00 in

6    attorneys' fees. This figure is reasonable under the circumstances of this case, as demonstrated by

7    the accompanying Declarations of Arthur F. Coon, Barry A. Cohen, Leonard A. Cohen, and

8    Richard Carsel in support of this motion. In determining a reasonable fee, courts typically apply

9    the lodestar formula, multiplying the number of hours reasonably expended by a reasonable rate.

10    (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The reasonable hourly rate is that

11    prevailing in the community for similar work.[20] (*Id.*)

12        Here, MSR's billing statements reflect the lodestar formula. (Coon decl., Ex. C.) Plaintiffs

13    were billed for attorney work on an hourly basis. This case demanded a substantial commitment

14    of attorney hours. MSR litigated the case from the initial notice of public entity claim through

15    jury trial, then equitable briefing and court trial, and finally statement of decision and judgment.

16    All this required extensive litigation work, including, inter alia, preparation of a complaint, an

17    answer, discovery requests and responses, two motions to compel, opposition to District's motion

18    to compel, a motion for summary adjudication, opposition to District's motion for summary

19    adjudication, two mediation briefs, numerous motions in limine, opposition to District's

20    numerous motions in limine, and equitable briefing. The jury trial, from selection through verdict,

21    also demanded substantial time and preparation. (Coon decl., ¶¶ 6-10.)

22        MSR attorneys expended a reasonable number of hours on each task required, as

23    demonstrated by the billing statements, which contain a general description of work performed.

24    (Coon decl., Ex. C.) MSR also billed time at reasonable rates. MSR's rates are comparable to

---

25    [20] The lodestar figure may be adjusted based on consideration of factors specific to the case,

26    including the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the nature of the litigation precluded other employment by the

27    attorneys, and the contingent nature of the fee award. (*Id.*; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154.) "Such an approach anchors the trial court's analysis to an

28    objective determination of the value of the attorneys' services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at 1095.)

CRAA\4158\683389.5                                                        -13-

1  other similarly qualified San Francisco Bay Area firms, if not below market (Coon decl., ¶¶ 4-5,

2  14-34, Carsel decl., ¶¶ 8, 11-12). While MSR's hourly rates are reasonable, the "effective rate"

3  (the rate actually billed after discounts to the client[21]) is actually even lower than the hourly rate.[22]

4           In this case, the reasonable hourly rate is properly calculated based on the rate prevailing

5  in the San Francisco Bay Area for similar work. While the reasonable rate is sometimes deter-

6  mined based on rates prevailing in the community where the service is rendered, it is proper in

7  certain situations to award the rate prevailing in the community where the attorneys are based.

8  (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1984; *Horsford v. Board of Trustees of Cal.*

9  *State Univ.* (2005) 132 Cal.App.4th 359 [trial in Fresno; attorney received San Francisco Bay

10  Area rates]; *City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78 [trial in Monterey;

11  attorney received San Francisco Bay Area rates]; *Guam Soc'y of Obstetricians & Gynecologists*

12  *v. Ada* (9th Cir. 1996) 100 F.3d 691 [case in Guam; New York attorneys received fees New York

13  community rates].) Where local counsel lacks the necessary specialized skills or ability to handle

14  a case, out-of-town counsel should recover the rates prevailing in their community.

15           Cohens hired MSR to handle this case because the firm had represented them in prior

16  litigation involving the same parties and the 1976 Lease. (Carsel decl., ¶¶ 10-12; B. Cohen decl.,

17  ¶ 11; L. Cohen decl., ¶ 3.) The prior case involved CEQA claims and lease, and a local San Luis

18  Obispo attorney recommended MSR to Cohens because of the firm's unique expertise in those

19  areas. (Carsel decl., ¶¶ 6-8.) MSR thereafter negotiated the settlement agreement at issue, so it

20  was natural for Cohens to hire the same firm when District breached that very agreement. (B.

21  Cohen decl., ¶ 11; L. Cohen decl., ¶ 3.) There was no other firm in the San Luis Obispo area as

22  familiar with Cohens' position and businesses, the agreements, the case, and the issues as MSR,

23  [21] In this case, the lead attorney at MSR exercised considerable discretion and often reduced or
24  wrote-off time. When possible, he gave Cohens a discount for the substantial work required to
   respond to District's bad faith and/or dilatory tactics, which drove up the number of hours re-
25  quired far beyond anything Cohens or their attorneys could have reasonably anticipated. (Coon
   decl., ¶ 36.) The client was not billed for reduced and written off time, and while it would be just
26  and reasonable to do so, Plaintiffs do not seek to recover it here.
   [22] Much of the work performed was necessitated by District's "war of attrition" litigation.
27  Plaintiffs' attorneys were forced to spend substantial time responding to District's massive and
   wholly meritless motion for summary judgment, filing of improper and repetitive papers, attempt-
28  ed use of privileged tax returns, drawing out depositions of District personnel unnecessarily and
   without support, and noticing multitudes of depositions and conducting discovery on irrelevant
   issues. (Coon decl., ¶ 11; L. Cohen decl., ¶ 6.)

CRAA\\4158\683389.5                                    -14-

1    and, by hiring MSR, Cohens therefore saved substantial fees that would have otherwise been

2    incurred for a new firm to "get up to speed." No local firm was as uniquely qualified, and had the

3    depth and ability to handle this case, as MSR. Accordingly, it is reasonable to calculate Cohens'

4    attorneys' fees based on reasonable San Francisco Bay Area market rates.

5                    2.    Plaintiffs' Litigation Expenses Are Reasonable.

6         Plaintiffs have also requested $327,053.39 in litigation expenses. This amount is

7    supported and reasonable. (Coon decl., Exs. C, D [billing statements].)[23]

8    IV.    CONCLUSION

9         This Court's Judgment and Statement of Decision grant B. Cohen money damages and all

10   Plaintiffs substantial relief, and deny all District's claims, except its rent claim, which is cut in

11   half and shorn of late fees. Plaintiffs prevailed by achieving their main litigation objective of

12   establishing District's liability, and enforcing the settlement, and they obtained the greater relief

13   on the contracts under Section 1717. Plaintiffs are therefore entitled to recover their reasonable

14   attorneys' fees in the amount of $1,847,180.00, and reasonable litigation expenses in the amount

15   of $327,053.39.

16                                              Respectfully submitted,

17   Dated: January 22, 2007                    MILLER, STARR & REGALIA

18

19                                              By:

20                                                 ARTHUR F. COON
                                                   Attorneys for Plaintiffs,
21                                                 BARRY A. COHEN, LEONARD A.
                                                   COHEN, OLDE PORT INN, INC., and
22                                                 OLDE PORT FISHERIES, INC.

23

24

25

26   [23] Of the litigation expenses claimed, $53,215.86 is for Westlaw expenses. This amount is
     reasonable, particularly in light of the many motions and corresponding research required by this
27   case (i.e., motions for summary judgment, motion for a protective order, motions in limine,
     equitable briefing, etc.), often required as a result of District's litigation tactics. In modern legal
28   practice computer legal research is an imperative tool. Accordingly, this Court should grant
     Plaintiffs' Westlaw fees and other litigation expenses.

                                                                    -13-

01/22/2007 11:20 FAX 925 933 4126        MILLER STARR                    ☒021

**PROOF OF SERVICE**
(*Barry A. Cohen, et al.* v. *Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATIONS EXPENSES AND COSTS

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Martin P. Moroski<br>Adamski, Moroski, Madden & Green<br>P. O. Box 3835<br>San Luis Obispo, CA 93403-3835<br>Tel: (805) 543-0990<br>Fax: (805) 543-0980<br>e-mail:<br>moroski@adamskimoroski.com<br><br>*Overnight/Hand Delivery Only:*<br>6633 Bay Laurel Place<br>Avila Beach, CA 93424<br><br>Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT** | David M. Cumberland<br>Cumberland, Coates & Duenow, LLP<br>550 Dana Street<br>San Luis Obispo, CA 93401-3429<br>Tel: (805) 541-4200<br>Fax: (805) 541-4293<br>e-mail: dmc@ccdlawfirm.com<br><br>Co-Counsel for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT** |

CRAA\44158\683389.5                    -16-

MPA IS/O MOTION FOR ATTORNEYS' FEES

01/22/2007 11:20 FAX 925 933 4126     MILLER STARR     ✏022

1

_Courtesy Copy:_

2   Hon. Barry T. LaBarbera
    San Luis Obispo Superior Court
3   Department 2
    1035 Palm St., 3rd Fl.
4   San Luis Obispo, CA 93408
    e-mail:
5   Barry.LaBarbera@slo.courts.ca.gov

6       I am readily familiar with the firm's practice of collection and processing
    correspondence for mailing. Under that practice it would be deposited with the U.S. Postal
7   Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
    am aware that on motion of the party served, service is presumed invalid if postal cancellation
8   date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9       I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.
10

11      Executed on January 22, 2007, at Walnut Creek, California.

12

13      _____
                    Karen Irias

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44158\683389.5                    -17-

MPA ISO MOTION FOR ATTORNEYS' FEES

01/22/2007 11:03 FAX 925 933 4126    MILLER STARR    ☒002

1  GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2  CAROLYN E. NELSON (Bar No. 238526)
   MILLER STARR REGALIA
3  A Professional Law Corporation
   1331 N. California Blvd., Fifth Floor
4  Post Office Box 8177
   Walnut Creek, California 94596
5  Telephone:   925 935 9400
   Facsimile:   925 933 4126
6
   Attorneys for Plaintiffs
7  BARRY A. COHEN, LEONARD A. COHEN,
   OLDE PORT INN, INC., and OLDE PORT
8  FISHERIES, INC.

**FILED**

**JAN 22 2007**

SAN LUIS OBISPO SUPERIOR COURT
BY ___Nancy G. Gudino___
N. Gudino, Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   COUNTY OF SAN LUIS OBISPO

11                                                    **BY FAX**

12
   BARRY A. COHEN; LEONARD A.          Case No. CV 040897
13 COHEN; OLDE PORT INN, INC.; and
   OLDE PORT FISHERIES, INC.,          DECLARATION OF ARTHUR F. COON IN
14                                     SUPPORT OF PLAINTIFFS' MOTION FOR
              Plaintiffs,              ATTORNEYS' FEES
15
   v.                                  Date:      February 21, 2006
16                                     Time:      9:00 a.m.
   PORT SAN LUIS HARBOR DISTRICT;      Judge:     Hon. LaBarbera
17 and DOES 1 to 50, inclusive,        Location:  801 Grand Avenue
                                                  San Luis Obispo, CA
18            Defendants.

19 _____
   AND RELATED CROSS-ACTION.
20

21         I, Arthur F. Coon, declare:

22         1.      I am an attorney at law duly licensed to practice before the courts of the

23 State of California, and I am a shareholder in the law firm of Miller, Starr & Regalia ("MSR"),

24 attorneys for Plaintiffs Barry A. Cohen, Leonard A. Cohen, Olde Port Inn, Inc., and Olde Port

25 Fisheries, Inc. ("Plaintiffs" or "Cohens") in the above-captioned action. Unless stated on

26 information and belief, in which case I am informed and believe them to be true, the facts stated in

27 this declaration are true as of my own personal knowledge and, if called as a witness, I could

28

C:\RAA\44158\083410.2                          -1-

DECL. OF ARTHUR F. COON I/S/O MOTION FOR ATTORNEYS' FEES

1    competently testify thereto.

2        2.    Barry Cohen first hired MSR to represent him and his family businesses in

3    or about January 1991. MSR was retained at that time to prevent Defendant Port San Luis Harbor

4    District's ("District") threatened unlawful destruction of the historic Harford Pier canopy, which

5    would have resulted in structural and financial damages to the Olde Port Inn restaurant, in

6    violation of the California Environmental Quality Act ("CEQA") (Pub. Resources Code, §§

7    21000, et seq.) and Barry Cohen's 1976 Lease with District. MSR is recognized in the legal and

8    real estate communities as one of the (if not the) premiere real property specialty law firms in the

9    State of California. The firm literally wrote (and continues to write) the book on real estate law --

10    Miller & Starr, California Real Estate 3d edition -- and its members specialize in all aspects of the

11    subject matter, including land use, CEQA and landlord-tenant law. I am coauthor and continue

12    (since Harry Miller's death) as author of the "Subdivisions" chapter of the Miller & Starr treatise,

13    which covers, inter alia, CEQA and land use law. George B. Speir and I were the lead attorneys

14    on the case ("Cohen I"). We filed a lawsuit on behalf of Cohens, and obtained a preliminary

15    injunction from the court enjoining the District's illegal action. After substantial further litigation,

16    the case eventually settled, resulting in a settlement agreement encompassing the 1993 Settlement

17    Agreement and subsequent 1994 Lease. George Speir, for Cohens, on the one hand, and Ty

18    Green, for District's representatives, on the other hand, as well as the principals, negotiated the

19    1993 Settlement Agreement and 1994 Lease, which contain the terms of the settlement.

20        3.    In 2004, Cohens again retained MSR to represent them because District was

21    breaching and refused to honor its agreements in the 1993 Settlement Agreement and 1994 Lease

22    to provide required public parking and truck access, and to adequately repair and maintain the

23    Pier. We tried for months -- unsuccessfully -- to resolve the case without litigation. I made a

24    personal appearance before the District's Commissioners at a meeting to attempt to persuade them

25    to comply with their agreements and their Master Plan, including its Coastal Act policies, but to

26    no avail.

27        4.    When Cohens initially retained MSR in 2004, I sent a fee agreement to

28    Cohens. The fee agreement, signed by Barry Cohen, Leonard Cohen, and myself, stated that MSR

1   customarily charges an hourly fee for legal services, and that Cohens would be billed our standard

2   hourly rates.  The agreement stated that the rates for paralegals at that time ranged between $100

3   and $175 per hour, and the rates for attorneys at that time ranged between $175 and $415 per hour,

4   depending on level of experience.  The agreement stated that the firm's rates are reviewed and

5   may be adjusted each year.  The fee agreement also provided that MSR would charge Cohens, in

6   addition to attorneys' fees, for other costs and expenses associated with litigation (but which are

7   not included in overhead) including, inter alia, expert consultants and computerized research.

8         5.     During the course of the litigation, which has now lasted over two years, the

9   firm's rates were reviewed and adjusted, as provided in the fee agreement.  The rates were raised

10   to more accurately reflect market rates at comparable firms in the San Francisco Bay Area.  As of

11   the date of this declaration, the current rate for paralegals ranges between $100 and $175 per hour,

12   and the rates for attorneys range between $200 and $500 per hour, depending on level of

13   experience.

14         6.     This case demanded a substantial commitment of attorney hours, especially

15   because of the District's attorneys' manner of litigating it.  MSR litigated the case from the initial

16   notice of public entity claim through discovery and motion practices, extremely substantial

17   deposition discovery, disposition motions, jury trial, briefing and argument on equitable claims,

18   statement of decision and judgment, and finally the post-judgment proceedings now occurring.

19   During the course of the litigation, this firm prepared, inter alia, a complaint, an answer to

20   District's cross-complaint, discovery requests, discovery responses, at least two motions to compel

21   (including a successful motion to compel return of privileged tax returns), opposition to District's

22   motion to compel, a successful motion for summary adjudication, a successful opposition to

23   District's meritless motion for summary adjudication, a joinder in the California Business,

24   Transportation & Housing Agency's successful motion to quash District's subpoena, and two

25   mediation briefs.  This case involved approximately 30 depositions, which consumed a total of

26   approximately 59 days.  District took approximately 60 percent of these depositions, and

27   consumed approximately 60 percent of the total deposition days; it also substantially increased the

28   length of the depositions taken by Plaintiffs through repeated objections, speaking objections, and

CRA\4415884\83410.2           -3-

1   even coaching the witnesses. I am informed and believe that approximately 60 document

2   subpoenas were also served. In preparation for and at trial, this firm prepared a trial brief, motions

3   in limine, numerous oppositions to District's motions in limine, proposed jury instructions,

4   proposed verdict forms, a successful opposition to District's motion(s) for directed verdict, and

5   various supplemental briefs either requested by the Court or in response to briefs filed by District.

6   The jury trial began on May 8, 2006 and the jury announced its verdict on or about June 21, 2006,

7   with over 20 witnesses and hundreds of exhibits being presented. After the jury portion of the trial

8   ended, this firm prepared further extensive briefing to the Court on Cohens' reserved equitable

9   claims, including a motion for relief on equitable relief claims, an opposition to District's motion

10  for relief on its cross-complaint, a reply to District's opposition to Plaintiffs' motion for relief on

11  equitable relief claims, a supplemental brief regarding Plaintiffs' motion for relief on equitable

12  claims, a reply to District's supplemental brief regarding Plaintiffs' equitable claims, a request for

13  statement of decision, a supplemental request for statement of decision, objections to District's

14  response to Court's tentative decision and request for a supplemental statement of decision, a

15  proposed judgment, a response to District's objections to Plaintiffs' proposed judgment, and

16  objections to District's proposed judgment, as well as more informal, successful pleas to the Court

17  requesting that it clarify that the judgment following jury verdict was interlocutory in nature and

18  that the Court correct inaccuracies in the proposed judgment submitted by District. This firm also

19  prepared extensive correspondence and email correspondence to the Court and counsel. The firm

20  has also prepared a memorandum of costs, motion to strike District's memorandum of costs,

21  alternative motion to tax District's memorandum of costs, opposition to District's motion to tax

22  Plaintiffs' memorandum of costs, and the instant motion for attorneys' fees, and related exhibits

23  and papers. Before the litigation is over, the firm anticipates preparing a reply to District's

24  opposition to Plaintiffs' motions to strike and (alternatively) to tax, an opposition to District's

25  motion for attorneys' fees, a reply to District's opposition to Plaintiffs' motion for attorneys' fees,

26  and a reply to District's opposition to Plaintiffs' motion for prejudgment interest, as well as

27  arguing at at least two hearings (unless they are consolidated by the Court), inter alia.

28          7.      Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs'

CRA\A\44158\683410.2                      -4-

1   public entity claim letter dated July 2, 2004. Rather than requesting money to compensate for

2   District's breaches (other than reimbursement of the minimal $8,000 in attorneys' fees then

3   incurred), the letter simply demanded that District comply with its contractual settlement

4   obligations to provide and manage the required parking and truck access, and comply with its

5   continuing obligation to maintain the Pier (including decking surfaces). (Public Entity Claim,

6   p. 4-5.) *"Olde Port's primary concern and demand is that the District do whatever needs to be*

7   *done to comply with its legal obligations* without adversely affecting the contractual and legal

8   rights of Olde Port and causing it further damages." (*Id.*, p. 3, emph. added.) Anticipating District

9   would claim complying with its contracts was impossible or too costly, Cohens suggested –

10  though they had no obligation to – how District might reconfigure the Pier terminus to meet its

11  legal obligations. *and even offered to advance up to $20,000 to help District pay for the*

12  *necessary work.* (*Id.*, p. 5.)

13          8.      Attached hereto as Exhibit "B" is a true and correct copy of Plaintiffs'

14  Mediation Brief dated September 28, 2004. The brief identifies District's relevant contract

15  breaches to include breaches of the obligations to maintain and repair the Pier, to make best efforts

16  to provide 20, but at least 17, public parking spaces at the end of the Pier, to enforce parking

17  regulations and limitations, to guarantee regular truck access, and to ensure quiet enjoyment of the

18  premises.

19          9.      Plaintiffs' discovery requests served on District also focused on obtaining

20  information relevant to establishing District's breaches of its obligations to maintain and repair the

21  Pier, to make best efforts to provide 20, but at least 17, public parking spaces at the end of the

22  Pier, to enforce parking regulations and limitations, to guarantee regular truck access, and to

23  ensure quiet enjoyment of the premises.

24          10.     From the outset, Plaintiffs' primary contention was that District breached its

25  obligations to maintain and repair the Pier, to make best efforts to provide 20, but at least 17,

26  public parking spaces at the end of the Pier, to enforce parking regulations and limitations, to

27  guarantee regular truck access, and to ensure quiet enjoyment of the premises. This is

28  demonstrated by Plaintiffs' public entity claim, complaint, mediation brief, and discovery

CRAA\4158\683410.2                          -5-

1   requests. Throughout the litigation, District stonewalled and claimed it did not breach any

2   obligations.

3        11.   During the course of the litigation, District engaged in dilatory and bad faith

4   tactics, exceeded the permissible scope of discovery, requested continuances of the trial date, and

5   unnecessarily multiplied these proceedings. As an example, Plaintiffs' attorneys were forced to

6   spend substantial time responding to District's massive and wholly meritless motion for summary

7   adjudication, which contained approximately 41 attached exhibits and listed 14 issues and

8   approximately 34 "facts" in its separate statement of "undisputed" material facts, even though the

9   material facts were clearly in dispute and required a trial if the case did not settle. The sheer size

10   of the motion did not vitiate the fact that it was entirely without merit, however, and the Court

11   denied District's motion for summary adjudication in its entirety. Confronted with Defendant's

12   meritless Cross-Complaint's indemnity causes of action, Plaintiffs successfully obtained summary

13   adjudication disposing of these claims. Plaintiffs were also forced to respond to improper and

14   repetitive papers filed by District, such as District's unauthorized objections to the Court's Final

15   Statement of Decision. Discovery was also drawn out and rendered more time-consuming and

16   expensive as a result of District's dilatory tactics—depositions of District personnel were

17   unnecessarily drawn out by District's repeated, unsupported objections (including speaking

18   objections) and witness coaching, and District noticed a multitude of depositions and conducted

19   discovery on irrelevant issues, to which Plaintiffs were forced to respond. District also even

20   improperly retained and attempted to use inadvertently produced (by a third party) privileged tax

21   returns, denying Plaintiffs' demands for their return, and requiring Plaintiffs to seek a protective

22   order before Judge Crandall (which Plaintiffs did and successfully obtained), and to file additional

23   motions in limine. As a result of these and other dilatory and bad faith tactics on District's part,

24   Plaintiffs' attorneys were required to spend far more hours on this case than would have been the

25   case had District not engaged in such tactics.

26        12.   Attached hereto as <u>Group Exhibit "C"</u> are true and correct copies of relevant

27   portions of billing statements generated by MSR's accounting department in the ordinary course

28   of business and sent by MSR to Plaintiffs in this matter, covering the period from October 1, 2004

1    to December 31, 2006. The billing statements are redacted to protect attorney-client privileged

2    and work product protected communications, while providing sufficient information regarding the

3    services rendered to demonstrate they were actually and reasonably incurred in this case. (The

4    submission of these statements in redacted form is made to carry Plaintiffs' burden to produce

5    competent evidence in support of their motion and is not, is not intended, and shall not be deemed

6    or construed to be a waiver of this privilege or protection with respect to any entry,

7    communication or matter mentioned or referred to therein or relating thereto.) The billing

8    statements include the date on which work was performed, the attorney who performed the work,

9    the amount of time spent, at which hourly rate, a general description of the services performed,

10    and the amount billed to the clients. The billing statements also reflect client discounts, which, as

11    explained in more detail below, were frequently given by MSR as a courtesy or accommodation to

12    the Cohens to reduce the total amount of fees and/or costs incurred and due in any given period.

13        13.   The billing statements in Group Exhibit "C" demonstrate that, over the

14    more than two-year course of this litigation, the following MSR attorneys billed significant time to

15    the above-captioned case: shareholders Arthur F. Coon and George B. Speir, associates Dana C.

16    Tsubota, Stacey C. Wright, Gavin D. Whitis, Carolyn E. Nelson, and Stephen E. Velyvis, and

17    shareholder Thomas S. McConnell. The following MSR paralegals worked on and billed

18    significant time to the above-captioned case: Arlene J. Deguzman, Matthew T. Holman, Sherrell

19    L. Green, Frank Z. Khalil, and David A. Villanueva. The following MSR summer law clerks

20    worked on the above-captioned case: Stephanie A. Butori and Kristin B. Hood. The following

21    case clerks worked on and billed significant time to the above-captioned case: Theodore E. Geier,

22    Terri C. Pangelina, Carol L. Davis, and Ruth Beckett.

23        14.   I have been practicing law for over 20 years. I am a shareholder at MSR

24    and have been since 1993. My litigation practice includes a broad range of real property, land use,

25    and environmental litigation, with special emphasis on land use litigation (and on behalf

26    of) public agencies, and the California Environmental Quality Act ("CEQA"). I was admitted to

27    practice law in California in December 1986. George Speir and I were the attorneys in the prior

28    litigation involving Cohens and District, which resulted in the settlement agreement that is the

CRAA\4158\683410.2             -7-

1   subject of this litigation. Barry Cohen called me to retain MSR again when District was

2   threatening and/or committed the breaches established in this case. I was the lead attorney with

3   day to day responsibility on this case, and over the course of the approximately two and one-half

4   years of this litigation engagement, as reflected by the bills I have billed approximately 1874.2

5   hours for a total of $742,036.50 (effective rate of $395.92 per hour). I also billed approximately

6   6.7 hours for a total of $2479.00 (effective rate of $370.00 per hour) preparing the public entity

7   claim necessary to file this lawsuit. The statements reflecting the charges for the public entity

8   claim work are dated July 1, 2004 and August 1, 2004, and are attached hereto as Group Exhibit

9   "D". My current standard hourly rate is $475 per hour. My "effective rate" in this case was

10  considerably less than my current hourly rate throughout the course of this case due in large part to

11  client discounts given in the firm's discretion as a courtesy or accommodation. I personally

12  reviewed all the bills in this case before they were sent. I am informed and believe that the bills

13  for my work in this case were reasonable and competitive or below market rate for civil litigators

14  of comparable skill and experience in the San Francisco Bay Area. My role in this litigation

15  included day to day case management, defending and taking key depositions, preparing, opposing

16  and arguing the various summary adjudication motions, trial brief, motions in limine, trial and

17  witness preparation and substantial equitable briefing following the jury trial. I also tried the jury

18  portion of the case with George Speir, including arguing motions in limine, making opening and

19  closing statements, and examining and cross-examining witnesses.

20          15.    George B. Speir is a senior shareholder of MSR, with substantial

21  commercial and business litigation and trial experience. Mr. Speir has been practicing law for

22  over 30 years and was admitted to practice law in California in 1977. Mr. Speir was lead trial

23  counsel, and conducted voir dire exclusively, due to his significant jury trial experience. Over the

24  course of the litigation and trial in this case, as reflected by the bills Mr. Speir billed

25  approximately 738.4 hours for a total of $307,184.00 (effective rate of $416.01 per hour). I am

26  informed and believe that his current standard hourly rate is $500 per hour. His "effective rate" in

27  this case was considerably less than his current hourly rate due in large part to client discounts

28  given in the firm's discretion as a courtesy or accommodation. I am informed and believe that the

1   bills for his work were reasonable and competitive or below market rate for civil litigators of

2   comparable skill and experience in the San Francisco Bay Area. In addition to Mr. Speir's role in

3   this litigation as lead trial counsel, he was also primarily responsible for retention and preparation

4   of expert witnesses and responding to District's rent demand and notice of termination.

5        16.    Dana C. Tsubota is a litigation associate at MSR. Ms. Tsubota was

6   admitted to practice law in California in 2002. Over the course of the litigation, as reflected by the

7   bills Ms. Tsubota billed approximately 523.6 hours for a total of $99,472.00 (effective rate of

8   $189.98 per hour). I am informed and believe that Ms. Tsubota's current standard hourly rate is

9   $275 per hour. Her "effective rate" in this case was considerably less than her current hourly rate

10  due in large part to client discounts given in the firm's discretion as a courtesy or accommodation.

11  I am informed and believe that the bills for her work were reasonable and competitive or below

12  market rate for civil litigators of comparable skill and experience in the San Francisco Bay Area.

13  Ms. Tsubota was responsible for the review and production of documents and preparing written

14  discovery and motions to compel.

15       17.    Gavin D. Whitis is a litigation associate at MSR. Mr. Whitis has been

16  practicing law for over 10 years and was admitted to practice law in California in 1996.

17  Mr. Whitis was assigned to assist in this case when Ms. Tsubota went on leave. Over the course

18  of the litigation and trial, as reflected by the bills Mr. Whitis billed approximately 1049.5 hours for

19  a total of $327,222.00 (effective rate of $320.96 per hour). His current standard hourly rate is

20  $350 per hour. His "effective rate" in this case was considerably less than his current hourly rate

21  due in large part to client discounts given in the firm's discretion as a courtesy or accommodation.

22  I am informed and believe that the bills for his work were reasonable and competitive or below

23  market rate for civil litigators of comparable skill and experience in the San Francisco Bay Area.

24  Mr. Whitis was responsible for discovery, depositions, third party subpoenas, motions to compel

25  and for protective orders, motions in limine, and research under my direction.

26       18.    Carolyn E. Nelson is a litigation associate at MSR.[1] Ms. Nelson was

---

[1] Ms. Nelson recently married and is in the process of officially changing her name to Carolyn
Nelson Rowan. Her initials appear as "CEN" and "CNR" on the statements. Her original name
still appears on pleadings, as that is the name currently on record with the State Bar.

CRAAM4158N663410.2         -9-

1   admitted to practice law in California in 2005. Over the course of the litigation, as reflected by the

2   bills Ms. Nelson billed approximately 315.6 hours for a total of $58,413.50 (effective rate of

3   $185.09 per hour). Her current standard hourly rate is $225 per hour. Her "effective rate" in this

4   case was considerably less than her current hourly rate due in large part to client discounts given

5   in the firm's discretion as a courtesy or accommodation.  I am informed and believe that the bills

6   for her work were reasonable and competitive or below market rate for civil litigators of

7   comparable skill and experience in the San Francisco Bay Area. Ms. Nelson was responsible for

8   conducting research under my direction, preparing motions in limine, support in briefing equitable

9   claims, and preparing motions to strike and tax District's cost memorandum and this motion for

10  attorneys' fees.

11          19.    Stacey C. Wright was formerly a litigation associate at MSR.  Ms. Wright

12  has since left employment with the firm.  Over the course of the litigation, as reflected by the bills

13  Ms. Wright billed approximately 23.3 hours for a total of $3,836.00 (effective rate of $164.64 per

14  hour). Her "effective rate" in this case was considerably less than the current hourly rate charged

15  for third year MSR associates due in large part to client discounts given in the firm's discretion as

16  a courtesy or accommodation.  I am informed and believe that the bills for her work were

17  reasonable and competitive or below market rate for civil litigators of comparable skill and

18  experience in the San Francisco Bay Area. Ms. Wright was responsible for research under my

19  direction related to the motion for summary judgment and discovery issues.

20          20.    Stephen E. Velyvis is a litigation associate at MSR. Mr. Velyvis was

21  admitted to practice law in California in 1999. Over the course of the litigation, as reflected by the

22  bills Mr. Velyvis billed approximately 63.3 hours for a total of $17,473.50 (effective rate of

23  $276.04 per hour). His current standard hourly rate is $320. His "effective rate" in this case was

24  less than his current hourly rate due in large part to client discounts given in the firm's discretion

25  as a courtesy or accommodation.  I am informed and believe that the bills for his work were

26  reasonable and competitive or below market rate for civil litigators of comparable skill and

27  experience in the San Francisco Bay Area. Mr. Velyvis was responsible for research related to

28  District's Code of Civil Procedure section 998 offers to compromise, preparation of objections to

CRAA\4415\683410.2                        -10-

1    same, preparation of motions in limine and objections to District's motions in limine, and research

2    under my direction.

3          21.    Thomas S. McConnell is a litigation shareholder at MSR, focusing on real

4    estate matters, landlord/tenant and leasing and business disputes. Mr. McConnell has been

5    practicing nearly 20 years and was admitted to practice law in California in 1987. Over the course

6    of the litigation, as reflected by the bills Mr. McConnell billed approximately 2.1 hours for a total

7    of $585.00 (effective rate of $278.57 per hour). His current standard hourly rate is $430 per hour.

8    His "effective rate" in this case was considerably less than his current hourly rate due in large part

9    to client discounts given in the firm's discretion as a courtesy or accommodation. I am informed

10    and believe that the bills for his work were reasonable and competitive or below market rate for

11    civil litigators of comparable skill and experience in the San Francisco Bay Area. Mr. McConnell

12    was consulted briefly for assistance in the legal analysis of issues related to his landlord/tenant,

13    unlawful detainer practice area, specifically issues regarding the legality and propriety of District's

14    notice of termination for nonpayment of rent and its ejectment claim.

15          22.    Stephanie A. Butori was a second year law student at the University of

16    California, Hastings, employed as a summer associate at MSR from June 2006 to August 2006.

17    Over the course of the litigation, as reflected by the bills Ms. Butori billed approximately 19.6

18    hours for a total of $1025.00 (effective rate of $52.30 per hour). The current hourly rate for a

19    summer law clerk is $150. Her "effective rate" in this case was considerably less than her

20    standard hourly rate due in large part to client discounts given in the firm's discretion as a courtesy

21    or accommodation. I am informed and believe that the bills for her work were reasonable and

22    competitive or below market rate for paralegals of comparable skill and experience in the San

23    Francisco Bay Area. Ms. Butori's responsibilities were primarily research and analysis regarding

24    District's cross-complaint.

25          23.    Kristin B. Hood was a second year law student at the University of

26    California, Los Angeles, employed as a summer associate at MSR from June 2006 to August

27    2006. Over the course of the litigation, as reflected by the bills Ms. Hood billed approximately

28    53.20 hours for a total of $5085.00 (effective rate of $95.58 per hour). The current hourly rate for

CRAA\44158%83410.2      -11-

1    a summer law clerk is $150. Her "effective rate" in this case was considerably less than her

2    standard hourly rate due in large part to client discounts given in the firm's discretion as a courtesy

3    or accommodation. I am informed and believe that the bills for her work were reasonable and

4    competitive or below market rate for paralegals of comparable skill and experience in the San

5    Francisco Bay Area. Ms. Hood's responsibilities were primarily research and analysis regarding

6    District's 998 offers.

7           24.    Arlene J. Deguzman was a paralegal at MSR and was the primary paralegal

8    assigned to this case during her tenure at the firm. Ms. Deguzman no longer works at this firm.

9    Over the course of the litigation, as reflected by the bills Ms. Deguzman billed approximately

10   850.5 hours for a total of $97,907.50 (effective rate of $115.12 per hour). Her "effective rate" in

11   this case was considerably less than the current hourly rate for a paralegal with her experience due

12   in large part to client discounts given in the firm's discretion as a courtesy or accommodation. I

13   am informed and believe that the bills for her work were reasonable and competitive or below

14   market rate for paralegals of comparable skill and experience in the San Francisco Bay Area. Ms.

15   Deguzman was responsible for much of the paralegal work in this matter, including case file and

16   computer data base management, preparation and organization of documents, coordination of

17   document productions, management of deposition transcripts, preparation and organization of

18   deposition exhibits and deposition calendar, trial preparation, and research.

19          25.    Matthew T. Holman was a paralegal at MSR. Mr. Holman no longer works

20   at this firm. Over the course of the litigation, as reflected by the bills Mr. Holman billed

21   approximately 88.2 hours for a total of $10,337.50 (effective rate of $117.21 per hour). His

22   "effective rate" in this case was considerably less than the current hourly rate for a paralegal with

23   his experience due in large part to client discounts given in the firm's discretion as a courtesy or

24   accommodation. I am informed and believe that the bills for his work were reasonable and

25   competitive or below market rate for paralegals of comparable skill and experience in the San

26   Francisco Bay Area. Mr. Holman was responsible for preparation and organization of documents,

27   deposition preparation, and preparation and organization of deposition exhibits.

28          26.    Sherrell L. Green was a case clerk, and is now a paralegal at MSR. At the

CRAA\441\580683410.2                            -12-

1    ...nset of the litigation, Ms. Green was a case clerk. During the course of the litigation, Ms. Green

2    was promoted to paralegal. Over the course of the litigation, as reflected by the bills Ms. Green

3    billed approximately 363.5 hours for a total of $26,337.50 (effective rate of $72.46 per hour). Her

4    current standard hourly rate is $100 per hour. Her "effective rate" in this case was considerably

5    less than her current hourly rate due in large part to client discounts given in the firm's discretion

6    as a courtesy or accommodation. I am informed and believe that the bills for her work were

7    reasonable and competitive or below market rate for paralegals of comparable skill and experience

8    in the San Francisco Bay Area. As paralegal, Ms. Green was responsible for preparation and

9    management of documents and trial preparation. As case clerk, she was responsible for organizing

10    various documents, including pleadings, correspondence, and client documents.

11         27.    Frank Z. Khalil is a paralegal at MSR. Over the course of the litigation, as

12    reflected by the bills Mr. Khalil billed approximately 465.6 hours for a total of $64,099.50

13    (effective rate of $137.67 per hour). His current standard hourly rate is $175 per hour. His

14    "effective rate" in this case was considerably less than his current hourly rate due in large part to

15    client discounts given in the firm's discretion as a courtesy or accommodation. I am informed and

16    believe that the bills for his work were reasonable and competitive or below market rate for

17    paralegals of comparable skill and experience in the San Francisco Bay Area. Mr. Khalil was the

18    lead paralegal at trial in this matter, coordinating witness schedules, trial exhibits, managing

19    evidence, revising documents and filing with court as needed. He also assisted in pre-trial matters

20    such as preparation of exhibits.

21         28.    David A. Villanueva was a paralegal at MSR. Mr. Villanueva no longer

22    works at this firm. Over the course of the litigation, as reflected by the bills Mr. Villanueva billed

23    approximately 14.0 hours for a total of $2450.00 (effective rate of $175.00 per hour). His

24    "effective rate" in this case was considerably less than the current hourly rate for paralegals with

25    his level of experience due in large part to client discounts given in the firm's discretion as a

26    courtesy or accommodation. I am informed and believe that the bills for his work were reasonable

27    and competitive or below market rate for paralegals of comparable skill and experience in the San

28    Francisco Bay Area. Mr. Villanueva assisted with trial preparation.

CRA\W4158\683410.2    -13-

29.     Theodore E. Geier was a case clerk at MSR. Over the course of the litigation, as reflected by the bills Mr. Geier billed approximately 35.4 hours for a total of $885.00 (effective rate of $25.00 per hour). The current rate for case clerks is $25 per hour. I am informed and believe that the bills for his work were reasonable and competitive or below market rate for case clerks of comparable skill and experience in the San Francisco Bay Area. As case clerk, Mr. Geier was responsible for organizing various documents, including pleadings, correspondence, and client documents. This case required substantial case clerk attention. The voluminous files occupy a whole office at MSR. The case involved, *inter alia*, approximately 38 volumes of pleadings, 30 volumes of correspondence, 22 binders of deposition exhibits, 25 binders of trial exhibits, 15 boxes of documents produced by District and third parties, a book case (from floor to just below ceiling) full of documents related to depositions, and 16 boxes of related documents.

30.     Terri L. Pangelina is a case clerk at MSR. Over the course of the litigation, as reflected by the bills Ms. Pangelina billed approximately 21.4 hours for a total of $265.00 (effective rate of $12.38 per hour). The current rate for case clerks is $25 per hour. Her "effective rate" was considerably less than her current hourly rate due in large part to client discounts given in the firm's discretion as a courtesy or accommodation. I am informed and believe that the bills for her work were reasonable and competitive or below market rate for case clerks of comparable skill and experience in the San Francisco Bay Area. As case clerk, Ms. Pangelina was responsible for organizing various documents, pleadings, correspondence, etc.

31.     Carol L. Davis was a case clerk at MSR. Ms. Davis no longer works at this firm. Over the course of the litigation, as reflected by the bills Ms. Davis billed approximately 63.5 hours for a total of $1587.50 (effective rate of $25.00 per hour). I am informed and believe that the bills for her work were reasonable and competitive or below market rate for case clerks of comparable skill and experience in the San Francisco Bay Area. As case clerk, Ms. Davis was responsible for organizing various documents, pleadings, correspondence, etc.

32.     Ruth Beckett was a case clerk at MSR. Ms. Beckett no longer works at this firm. Over the course of the litigation, as reflected by the bills Ms. Beckett billed approximately 166.7 hours for a total of $4167.50 (effective rate of $25.00 per hour). I am informed and believe

1   that the bills for her work were reasonable and competitive or below market rate for case clerks of

2   comparable skill and experience in the San Francisco Bay Area. As case clerk, Ms. Beckett was

3   responsible for organizing various documents, pleadings, correspondence, etc.

4        33.    Stephen Z. Waterman is a case clerk recently hired at MSR. Over the

5   course of the litigation, as reflected by the bills Mr. Waterman billed approximately 6.2 hours for a

6   total of $155.00 (effective rate of $25.00 per hour). I am informed and believe that the bills for his

7   work were reasonable and competitive or below market rate for case clerks of comparable skill

8   and experience in the San Francisco Bay Area.

9        34.    In addition to the attorneys, summer law clerks, paralegals, and case clerks

10  who billed significant time to this case, as reflected by the bills a number of other attorneys,

11  paralegals, and case clerks billed relatively minimal amounts of time on this case, totaling

12  $5,464.50. Their work on this matter is reflected in time entries included in the bills. (See Group

13  Exhibit C). I am informed and believe that the bills for their work were reasonable and

14  competitive or below market rate for legal professionals of comparable skill and experience in the

15  San Francisco Bay Area.

16       35.    For all attorney, paralegal, summer associate time spent on this case, this

17  firm billed a total of approximately $1,778,468.00 in fees as of December 31, 2006, which

18  Plaintiffs are entitled to recover because of their prevailing party status.

19       36.    As the bills demonstrate, as the billing attorney I often obtained MSR

20  permission to write off or reduce fees and/or costs in this case. MSR often wrote off or reduced

21  the time charged traveling to and/or from San Luis Obispo (a trip that took approximately three

22  and one-half hours each way) as a courtesy or accommodation to the client. Mr. Speir and I did

23  not charge the client at all for some client communications. These write offs and reductions were

24  often made to attempt to reduce the severe strain on our clients' finances that resulted from

25  District's dilatory and bad faith tactics, which drove up the cost of litigation substantially. I also

26  wrote off or reduced charges for time in some cases if I felt work may have been duplicative or not

27  as efficient as would be ideal, e.g., where a project took longer than expected. This motion seeks

28  to recover only the reduced fees and/or costs actually billed to the client, not the fees and/or costs

1   that would have been incurred at standard rates.

2        37.   The billing statements in Group Exhibit C also include charges for legal

3   research conducted on Westlaw.  As reflected by the bills, the total amount billed to Plaintiffs for

4   Westlaw research in this case was approximately $53,215.86 as of December 31, 2006.  The use of

5   Westlaw was both reasonable and necessary in this case.  Today, Westlaw (and comparable

6   computer legal research web sites) is often the most efficient vehicle for legal research.  This case

7   raised several complex and/or novel issues that required the use of Westlaw, including, for

8   example, issues raised by District's motion for summary adjudication, motions in limine, and

9   equitable briefing, relating to standing, statute of limitations, damages, specific performance, the

10   privileged nature of tax returns, and the public entity claim, as well as issues related to the

11   recovery of fees and costs.  As the bills demonstrate, I often reduced Westlaw charges in months

12   where there was an exceptional need for computerized legal research, often a result of District's

13   litigation tactics and arguments.  This motion seeks recovery of only the reduced charges actually

14   billed to the Cohens.

15        38.   As provided in the fee agreement, MSR customarily bills its clients for the

16   time spent conducting research on Westlaw because Westlaw is an expense to the firm not

17   included in the overhead component of the attorneys' hourly rates.

18        39.   Attached hereto as Group Exhibit "E" are true and correct copies of expert

19   and consultant witness billing statements received for services provided in this litigation.

20   Together, as reflected by the documents, Bradley Baxter, Gary Rogers, Ted Mitchell, David

21   Myerson, and Don Winter charged a total of approximately $172,366.74 in fees and expenses.

22   These charges are reasonable given their expertise, and qualifications, with which the Court is

23   familiar from the trial record, and documents in its own files and under the circumstances of this

24   case.

25        40.   As provided in the fee agreement, MSR customarily bills its clients for the

26   fees of expert consultants/witnesses it retains, and such fees are therefore an expense to the firm

27   not included in the overhead component of the attorneys' hourly rates.

28        41.   The billing statements also include charges for other litigation expenses,

1   including, photocopying, faxing, postage, word processing, delivery charges, research fees, and

2   supplies. The firmed billed a total of approximately $101,470.79 in such litigation costs. (This

3   figure does not include the $53,215.86 billed for Westlaw research and the $172,366.74 billed for

4   experts. This figure also excludes all litigation expenses claimed on Plaintiffs' Amended

5   Memorandum of Costs filed on November 7, 2006.) MSR ordinarily bills its clients for each of

6   the litigation expenses claimed in this paragraph because the expenses are not included in the

7   overhead component of the attorneys' hourly rates.

8         42.    For all litigation expenses spent on this case and billed to the client, which

9   were not included in Plaintiffs' Amended Memorandum of Costs filed November 7, 2006,

10   Plaintiffs incurred a total of approximately $327,053.39 in costs as of December 31, 2006, which

11   Plaintiffs are entitled to recover because of their prevailing party status.

12         43.    The aforementioned fees are calculated as of December 31, 2006. Since

13   that date, MSR has billed approximately $41,000.00 (and counting) in additional fees for, among

14   other things, preparation of this motion and Opposition to District's Motion to Tax. Plaintiffs

15   anticipate filing a Reply to District's Opposition to Plaintiffs' Motion to Strike, Reply to District's

16   Opposition to Plaintiffs' Motion to Tax, Opposition to District's Motion for Attorneys' Fees,

17   Reply to District's Opposition to Plaintiffs' Motion for Attorneys' Fees, and Reply to District's

18   Opposition to Plaintiffs' Motion for Prejudgment Interest, all of which will require approximately

19   45 hours of additional work at a billing rate ranging from $225 to $500 per hour (or, an average

20   rate of $362/hour), for a total of approximately $16,312.00. I anticipate I will also have to prepare

21   for, travel to, and attend two hearings, which will require approximately 24 hours of additional

22   work, at a billing rate of $475 per hour, for a total of approximately $11,400.00. Thus, in addition

23   to the fees set forth in the statements attached as <u>Group Exhibit C</u>, Plaintiffs conservatively

24   estimate they will incur approximately $68,712.00, which they claim in their fee motion.

25   Plaintiffs reserve the right to claim the actual amounts once they can be ascertained.

26         44.    As the preceding paragraphs demonstrate, Plaintiffs, as prevailing parties

27   under the contracts, Code of Civil Procedure section 1021 and Civil Code section 1717, should be

28   awarded $1,847,180.00 in attorneys' fees and $327,053.39 in litigation expenses, to compensate

CRA\\44158\683410.2                   -17-

1   for the fees and expenses already incurred and yet to be incurred in this action to enforce their

2   rights under the settlement agreement.

3          I declare under penalty of perjury under the laws of the State of California that the

4   foregoing is true and correct. Executed this 22nd day of January, 2007, at Walnut Creek,

5   California.

6

7                                                      ARTHUR F. COON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



## PROOF OF SERVICE

*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

DECLARATION OF ARTHUR F. COON IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Martin P. Moroski
Adamski, Moroski, Madden & Green
P. O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
e-mail:
moroski@adamskimoroski.com

*Overnight/Hand Delivery Only:*
6633 Bay Laurel Place
Avila Beach, CA 93424

Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

David M. Cumberland
Cumberland, Coates & Duenow, LLP
550 Dana Street
San Luis Obispo, CA 93401-3429
Tel: (805) 541-4200
Fax: (805) 541-4293
e-mail: dmc@ccdlawfirm.com

Co-Counsel for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

CRA:\44158\684410.2                        -19-

DECL. OF ARTHUR F. COON I/S/O MOTION FOR ATTORNEYS' FEES

01/22/2007 11:08 FAX 925 933 4126          MILLER STARR                              ☒021

1       *Courtesy Copy:*

2       Hon. Barry T. LaBarbera
        San Luis Obispo Superior Court
3       Department 2
        1035 Palm St., 3rd Fl.
4       San Luis Obispo, CA 93408
        e-mail:
5       Barry.LaBarbera@slo.courts.ca.gov

6              I am readily familiar with the firm's practice of collection and processing
        correspondence for mailing. Under that practice it would be deposited with the U.S. Postal
7       Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
        am aware that on motion of the party served, service is presumed invalid if postal cancellation date
8       or postage meter date is more than one day after date of deposit for mailing in affidavit.

9              I declare under penalty of perjury under the laws of the State of California that the
        foregoing is true and correct.
10
               Executed on January 22, 2007, at Walnut Creek, California.
11

12

13                                                        _____
                                                                    Karen Irias
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44158\583410.2                              -20-
─────────────────────────────────────────────────────────────────
DECL. OF ARTHUR F. COON I/S/O MOTION FOR ATTORNEYS' FEES

01/22/2007 11:13 FAX 925 933 4126    MILLER STARR    Ø029

1 GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2 CAROLYN E. NELSON (Bar No. 238526)
   MILLER, STARR & REGALIA
3 A Professional Law Corporation
   1331 N. California Blvd., Fifth Floor
4 Post Office Box 8177
   Walnut Creek, California 94596
5 Telephone:    (925) 935-9400

6 Attorneys for Plaintiffs
   BARRY A. COHEN, LEONARD A. COHEN,
7 OLDE PORT INN, INC., and OLDE PORT
   FISHERIES, INC.

8

**FILED**

JAN 22 2007

SAN LUIS OBISPO SUPERIOR COURT
BY *Nancy G. Gudino*
N. Gudino, Deputy Clerk

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN LUIS OBISPO

11

12 BARRY A. COHEN; LEONARD A.             Case No. CV 040897
   COHEN; OLDE PORT INN, INC.; and
13 OLDE PORT FISHERIES, INC.,             DECLARATION OF RICHARD CARSEL IN
                                          SUPPORT OF PLAINTIFFS' MOTION FOR
14            Plaintiffs,                 ATTORNEYS' FEES

15    v.                                  Date:  February 21, 2007
                                          Time:  9:00 a.m.
16 PORT SAN LUIS HARBOR DISTRICT;         Judge: Hon. Barry T. LaBarbera
   and DOES 1 to 50, inclusive,           Location:  801 Grand Avenue
17                                                    San Luis Obispo, CA
              Defendants.
18

19 AND RELATED CROSS-ACTION.

20

21        I, Richard A. Carsel, hereby declare that I make this declaration based upon my

22 personal knowledge, that I am competent to testify as to all matters stated herein, and if I were

23 called and sworn as a witness I would testify as follows:

24        1.      I am now and at all times relevant have been a duly licensed California

25 attorney. I maintain my law practice in San Luis Obispo, California, and am a partner in the firm

26 of Carsel & Attala, LLP.

27

28

-1-

01/22/2007 11:13 FAX 925 933 4126     MILLER STARR     805 544 6357     ☐030
JAN-19-2007  11:19     CARSEL & ATTALA, LLP     P. 03/06

1    2. I have been the general counsel for Olde Port Inn, Inc. and Olde Port

2   Fisheries, Inc., and personal attorney for Barry A. Cohen and Leonard A. Cohen and

3   their family businesses for many years (perhaps 20 or more). I have been directly or

4   indirectly involved in numerous disputes between one or both of those corporations

5   or businesses and one or both of the Cohens on the one hand, and the Port San Luis

6   Harbor District ("District") on the other hand for perhaps the past 15 years.

7    3. For at least the past ten (10) years (and perhaps longer) there has been a

8   major problem with respect to the condition of the Harford Pier, on which the Olde

9   Port Inn restaurant and fish business is located. All of my efforts, and those of the

10   Cohens, to resolve those matters informally by discussion and negotiation with the

11   District ended in failure. The result was that the condition of the pier simply worsened.

12    4. For reference, I have practiced real estate law since 1973. I taught real

13   estate law courses in the Business Department at Cal Poly for many years as an

14   Assistant Professor of Business Administration. I was also counsel to the San Luis

15   Obispo County Planning Commission and Board of Supervisors on real estate law

16   matters when I was employed as a Deputy District Attorney for the County in the

17   early 1970s (prior to the formation of the County Counsel's Office).

18    5. At one point, perhaps 15 or more years ago, Barry Cohen contacted me to

19   advise that the District was threatening to unlawfully destroy the historic Hanford Pier

20   canopy, as well as the Olde Port Inn restaurant. Barry Cohen believed that the

21   threatened action violated his lease with the District dated January 1, 1976, as well

22   as the California Environmental Quality Act ("CEQA") (Public Resources Code, §§

23   21000, et seq.).

24    6. I met extensively with Barry Cohen, discussed the problem at length, and

25   conducted my own research to determine what his options were and whether or not

26   a lawsuit against the District to preserve the Pier was meritorious. I decided that the

27   case had merit, but would require a specialized firm with unique experience and

28   qualifications in CEQA litigation. In addition, I knew from experience that the District

Cohen, et. al. v. Port San Luis Harbor District     DECLARATION OF RICHARD A. CARSEL IN SUPPORT
Case No. CV 0408987               OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
2

01/19/2007 FRI 11:18  [TX/RX NO 7868]

01/22/2007 11:14 FAX 925 933 4126        MILLER STARR                          805 544 6357        ☑031

JAN-19-2007  11:20        CARSEL & ATTALA, LLP                                              P.04/06

1  would mount a vigorous defense, that it would be very expensive to prosecute the

2  litigation, and that whatever firm undertook the representation of the plaintiffs would

3  have to be large enough to be able to devote several attorneys to the prosecution of

4  the case. At that time, other than the Sinsheimer law firm which represented the

5  District, in my opinion there were no attorneys or firms in the local San Luis Obispo

6  area equipped with the necessary specialized skills, expertise and depth to handle

7  Barry Cohen's case.  Accordingly, I recommended Barry Cohen to the law firm of

8  Miller, Starr & Regalia ("MSR") in Walnut Creek, California.

9          7. I knew that MSR was a real estate law firm, and that several of its attorneys

10  had special knowledge and experience with CEQA cases. I have known of MSR for

11  over forty-five (45) years (since the early 1960s), as Marvin Starr, a name partner,

12  was my mother's friend and personal attorney; he counseled me as a college student

13  preparing to go to law school. I had great personal respect for Mr. Starr, which later

14  grew into professional respect as well when I became an attorney and practiced real

15  estate law. For at least the last thirty (30) years of my practice I have relied upon The

16  Current Law of California Real Estate, written by Miller & Starr, as the Bible for all

17  questions dealing with real estate law. In short, I believed then and now that MSR

18  was one of the best, if not the best, real estate law firms in California. I also believed

19  it would take a firm of that quality to successfully represent the plaintiffs against the

20  District.

21          8. At the time I referred Barry Cohen to MSR I was aware of their rate

22  structure.  I am informed and believe that the firm's rates were reasonable or

23  competitive or below market rate for attorneys of comparable skill and expertise in the

24  San Francisco Bay Area or the Los Angeles area. I discussed MSR's rates with both

25  Barry and Leonard Cohen at that time, prior to their engagement of MSR. We also

26  discussed using a larger firm from Santa Barbara and/or Ventura County. In the end,

27  it was decided that the quality of representation we expected from MSR (based on

28  their expertise) justified the higher rate (than would have been paid to a San Luis

Cohen, et. al. v. Port San Luis Harbor District        DECLARATION OF RICHARD A. CARSEL IN SUPPORT
Case No. CV 0408987                                    OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
                                                3

01/19/2007 FRI 11:16  [TX/RX NO 7968]

01/22/2007 11:14 FAX 925 933 4126     MILLER STARR     805 544 6357     Ø032
JAN-19-2007 11:22     CARSEL & ATTALA, LLP

1  Obispo County firm, had there been one that was capable of handling this litigation).

2      9. I am informed and believe that after obtaining an injunction in Barry Cohen's

3  favor, (a) MSR negotiated a settlement with District which resolved the case, but (b)

4  District has since breached its obligations under the settlement agreement, leading

5  to the litigation currently before this Court.

6      10. In approximately 2004, when the dispute with the District flared up again

7  and it was clear that it was not resolved, I was again contacted by Barry and Leonard

8  Cohen to discuss the situation and evaluate their options. After those discussions, I

9  again recommended that they call MSR as they were completely familiar with the

10  case, would not require any time to "get up to speed", and were most capable of

11  protecting the interests of the plaintiffs.

12      11. I have recently discussed MSR's current rate structure with Leonard Cohen

13  and I understand it to be approximately as follows: $500/hr for lead trial counsel.

14  $395-475 for lead management counsel, $190-275 for mid-level associates, $321-

15  350 for senior associates and $185-225 for relatively new associates.  I have

16  personal knowledge as to the hourly fees currently charged by the larger and better

17  law firms in the San Luis Obispo area and in many cases the senior partners are

18  billing at $400/hr or more.

19      12. It is still my opinion that MSR was the best firm to handle the case for

20  plaintiffs in 2004 because of their expertise, familiarity with the case and the ability

21  to handle litigation of this nature and magnitude. Assuming, *arguendo*, that the

22  plaintiffs had been able to retain a local firm in 2004 that could have provided the

23  same level of services which MSR provided - which, in my opinion, would not have

24  been possible - it does not appear to me that there would have been a cost savings

25  on the fees incurred by the plaintiffs (because the new firm would have had to incur

26  substantial fees and expenses to "get up to speed", etc.). Based on my experience,

27  //

28  //

01/22/2007 11:14 FAX 925 933 4126    MILLER STARR

JAN-19-2007 11:23    CARSEL & ATTALA, LLP

⌀033
P.06/06

805 544 6357

1    given the nature of the litigation and the skill of the attorneys for the defendants, the

2    fees charged by MSR appear to me to be reasonable under the circumstances.

3        I declare under penalty of perjury under the laws of the State of California that

4    the foregoing is true and correct. Executed this 19th day of January, 2007, at San Luis

5    Obispo, California.

6

7

8                                    RICHARD A. CARSEL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cohen, et. al. v. Port San Luis Harbor District
Case No. CV 0408987

DECLARATION OF RICHARD A. CARSEL IN SUPPORT
OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
TOTAL P.06

01/19/2007 FRI 11:16 [TX/RX NO 7868]

01/22/2007 11:14 FAX 925 933 4126    MILLER STARR    ☎034

**PROOF OF SERVICE**
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

DECLARATION OF RICHARD CARSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Martin P. Moroski
Adamski, Moroski, Madden & Green
P. O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
e-mail:
moroski@adamskimoroski.com

*Overnight/Hand Delivery Only:*
6633 Bay Laurel Place
Avila Beach, CA 93424

Attorneys for Defendant and Cross-Complainant PORT SAN LUIS HARBOR DISTRICT

David M. Cumberland
Cumberland, Coates & Duenow, LLP
550 Dana Street
San Luis Obispo, CA 93401-3429
Tel: (805) 541-4200
Fax: (805) 541-4293
e-mail: dmc@ccdlawfirm.com

Co-Counsel for Defendant and Cross-Complainant PORT SAN LUIS HARBOR DISTRICT

01/22/2007 11:14 FAX 925 933 4126    MILLER STARR    ☒035

1    *Courtesy Copy:*

2    Hon. Barry T. LaBarbera
     San Luis Obispo Superior Court
3    Department 2
     1035 Palm St., 3rd Fl.
4    San Luis Obispo, CA 93408
     e-mail:
5    Barry.LaBarbera@slo.courts.ca.gov

6         I am readily familiar with the firm's practice of collection and processing
     correspondence for mailing. Under that practice it would be deposited with the U.S. Postal
7    Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
     am aware that on motion of the party served, service is presumed invalid if postal cancellation date
8    or postage meter date is more than one day after date of deposit for mailing in affidavit.

9         I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.
10
11        Executed on January 22, 2007, at Walnut Creek, California.

12

13                                                 Karen Irias

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF RICHARD CARSEL I/S/O MOTION FOR ATTORNEYS' FEES

1  GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2  GAVIN D. WHITIS (Bar No. 184133)
   CAROLYN NELSON ROWAN (Bar No. 238526)
3  MILLER, STARR & REGALIA
   A Professional Law Corporation
4  1331 N. California Blvd., Fifth Floor
   Post Office Box 8177
5  Walnut Creek, California 94596
   Telephone:   (925) 935-9400
6  Facsimile:   (925) 933-4126

7  Attorneys for Plaintiffs
   BARRY A. COHEN, LEONARD A. COHEN,
8  OLDE PORT INN, INC., and OLDE PORT
   FISHERIES, INC.

9

**FILED**

**JAN 22 2007**

SAN LUIS OBISPO SUPERIOR COURT
BY _Nancy G. Gudino_
   N. Gudino, Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    COUNTY OF SAN LUIS OBISPO

12

13  BARRY A. COHEN; LEONARD A.              Case No. CV 040897
    COHEN; OLDE PORT INN, INC.; and
14  OLDE PORT FISHERIES, INC..              PLAINTIFFS' REQUEST FOR JUDICIAL
                                            NOTICE IN SUPPORT OF MOTION FOR
15              Plaintiffs,                 ATTORNEYS' FEES AND LITIGATION
                                            EXPENSES AND COSTS
16  v.
                                            [Cal. Evid. Code §§ 452(d), 453]
17  PORT SAN LUIS HARBOR DISTRICT;
    and DOES 1 to 50, inclusive,           Date:  February 21, 2007
18                                          Time:  9:00 a.m.
              Defendants.                   Judge: Hon. Barry T. La Barbera
19                                          Location:  801 Grand Avenue
                                                       San Luis Obispo, CA
20

21  AND RELATED CROSS-ACTION.

22  I.        **REQUEST FOR JUDICIAL NOTICE**

23          Plaintiffs Barry Cohen, Leonard Cohen, Olde Port Fisheries, Inc. ("OPF"), and

24  Olde Port Inn, Inc. ("OPI") (the "Cohens" or "Plaintiffs") respectfully request that, pursuant to

25  Evidence Code sections 452(d) and 453, and all applicable law, the Court take judicial notice of

26  its own records and files in the above-captioned matter, including, but not limited to, all

27  pleadings, briefs, declarations, exhibits, correspondence, e-mails, documents, evidence, orders,

28

CRAA\44158\687771.1                           -1-

1    trial transcripts, and depositions lodged with the Court, and any other papers, documents and

2    things in the Court's file in this matter.

3         This Request for Judicial Notice is submitted with Plaintiffs' Notice of Motion and

4    Motion for Attorneys' Fees and its supporting Memorandum of Points and Authorities, the

5    Declarations of Arthur F. Coon, Barry A. Cohen, Leonard A. Cohen, and Richard Carsel, and all

6    supporting papers.

7    II.        **MEMORANDUM OF POINTS AND AUTHORITIES**

8         Judicial notice may be taken of records of any court of this state. (Evid. Code,

9    § 452(d)(1).) When a party requests that a trial court take judicial notice of court records, the

10   court must take judicial notice if the party requesting judicial notice gives each adverse party

11   sufficient notice of the request to enable the party to prepare to meet the request, and furnishes the

12   court with sufficient information to enable it to take judicial notice of the matter. (Evid. Code,

13   § 453.)

14        This Court can and should take judicial notice of its own records and files in the

15   above-captioned matter, as requested above, as the Cohens hereby make a proper application and

16   provide adequate notice as set forth in Evidence Code section 453. (*See* Evidence Code, §§

17   452(*c*), 453.) The Court has sufficient information to enable it to take judicial notice of the

18   matter, since the files that are the subject of this request are in the Court's control and possession.

19        Accordingly, the Court should take judicial notice of its own files, records and

20   documents as requested.

21                  Respectfully submitted,

22   Dated: January 22, 2007       MILLER, STARR & REGALIA

23

24                  By:

25                  ARTHUR F. COON
                    Attorneys for Plaintiffs BARRY A.

26                  COHEN, LEONARD A. COHEN, OLDE
                    PORT INN, INC., and OLDE PORT

27                  FISHERIES, INC.

28

CRAA\44158\687771.1          -2-

01/22/2007 11:13 FAX 925 933 4126          MILLER STARR                              ☒038

# PROOF OF SERVICE

*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Martin P. Moroski
Adamski, Moroski, Madden & Green
P. O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
e-mail:
moroski@adamskimoroski.com

*Overnight/Hand Delivery Only:*
6633 Bay Laurel Place
Avila Beach, CA 93424

Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

David M. Cumberland
Cumberland, Coates & Duenow, LLP
550 Dana Street
San Luis Obispo, CA 93401-3429
Tel: (805) 541-4200
Fax: (805) 541-4293
e-mail: dmc@ccdlawfirm.com

Co-Counsel for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

CRAA\44158\687771.1                              -3-

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE I/s/o MOTION FOR ATTORNEYS' FEES

01/22/2007 11:15 FAX 925 933 4128        MILLER STARR                                    ☒039

1       *Courtesy Copy:*

2       Hon. Barry T. LaBarbera
        San Luis Obispo Superior Court
3       Department 2
        1035 Palm St., 3rd Fl.
4       San Luis Obispo, CA 93408
        e-mail:
5       Barry.LaBarbera@slo.courts.ca.gov

6           I am readily familiar with the firm's practice of collection and processing
    correspondence for mailing. Under that practice i, would be deposited with the U.S. Postal
7   Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
    am aware that on motion of the party served, service is presumed invalid if postal cancellation
8   date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9           I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.
10

11          Executed on January 22, 2007, at Walnut Creek, California.

12

13                                          _____
                                                     Karen Irias
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAAW415\687771.1                              -4-

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE i/s/o MOTION FOR ATTORNEYS' FEES

01/22/2007 11:11 FAX 925 933 4126    MILLER STARR    ☒014

1  GEORGE B. SPEIR (Bar No. 78276)
   ARTHUR F. COON (Bar No. 124206)
2  CAROLYN E. NELSON (Bar No. 238526)
   MILLER, STARR & REGALIA
3  A Professional Law Corporation
   1331 N. California Blvd., Fifth Floor
4  Post Office Box 8177
   Walnut Creek, California 94596
5  Telephone:   (925) 935-9400

6  Attorneys for Plaintiffs
   BARRY A. COHEN, LEONARD A. COHEN,
7  OLDE PORT INN, INC., and OLDE PORT
   FISHERIES, INC.

8

**FILED**

**JAN 22 2007**

SAN LUIS OBISPO SUPERIOR COURT
BY _Nancy G. Gudino_
N. Gudino, Deputy Clerk

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN LUIS OBISPO

11

12  BARRY A. COHEN; LEONARD A.            Case No. CV 040897
    COHEN; OLDE PORT INN, INC.; and
13  OLDE PORT FISHERIES, INC.,            DECLARATION OF BARRY COHEN IN
                                          SUPPORT OF PLAINTIFFS' MOTION FOR
14            Plaintiffs,                 ATTORNEYS' FEES

15       v.                              Date:  February 21, 2007
                                         Time:  9:00 a.m.
16  PORT SAN LUIS HARBOR THE             Judge: Hon. Barry T. LaBarbera
    DISTRICT; and DOES 1 to 50, inclusive, Location: 801 Grand Avenue
17                                                 San Luis Obispo, CA
            Defendants.
18                                       Complaint Filed: October 22, 2004
                                         Trial Date: May 8, 2006
19

20  AND RELATED CROSS-ACTION.

21

22       I, Barry Cohen, declare:

23       1.    I am an individual currently residing in Aptos, Santa Cruz County,

24  California.  I am a plaintiff in this lawsuit and an owner of plaintiff Olde Port Fisheries, Inc.

25  ("OPF").  The facts stated in this declaration are true as of my own personal knowledge, and if

26  called as a witness I could and would testify competently to those facts.

27       2.    I am a fisherman and have been for most of my adult life.  I built the Olde

28  Port Inn restaurant and OPF facilities on the Harford Pier (the "Pier") starting in approximately

CRAA\4415\683417.3                         -1-

DECL OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   1964. I had operated a wholesale/processing fish busi    on the Pier for over 40 years, until the

2   actions of Defendant Port San Luis Harbor District ("the District") in mid-to-late 2004

3   drastically and fatally prevented me from operating my business on the Pier. Without the

4   necessary, reasonable truck access, I was virtually "kicked off the Pier." These actions of the

5   District, among others, breached the settlement and lease agreements I made over ten years ago

6   with the District and resulted in the filing of this lawsuit.

7            3.      The District has been found by the jury and the Court to have breached

8   several contracts it has with me and the other plaintiffs. The 1994 Lease that the District

9   breached was required by and incorporates the 1993 Settlement Agreement. The 1993

10  Settlement Agreement and 1994 Lease embody the settlement of my previous lawsuit against the

11  District in the early-1990s. That lawsuit concerned the District's plan to demolish the historic

12  warehouse canopy on the terminus of the Pier. This historic structure serves as the supporting

13  structure for the OPI restaurant and OPF buildings, as well as the restaurant roof.

14           4.      I hired the law firm of Miller Starr Regalia ("MSR") to represent me in

15  that lawsuit. Before hiring MSR, I sought the advice of my local counsel. Richard Carsel, my

16  attorney in the San Luis Obispo area, informed me that I would need an attorney with special

17  experience with CEQA issues. He suggested MSR, which then had offices in Oakland and

18  Walnut Creek, California. Following Mr. Carsel's recommendation, I met with George Speir

19  and Arthur F. Coon of MSR, and I hired MSR because they seemed most qualified to handle my

20  case and there were no comparable alternative firms in the San Luis Obispo area that I knew of

21  to handle issues of this nature, complexity and importance.

22           5.      MSR instituted litigation on my behalf in which I was successful in

23  obtaining a preliminary injunction against the District's threatened unlawful demolition of the

24  canopy. After substantial additional litigation, but before trial and as an alternative to continuing

25  that lawsuit, the District and I made an agreement that I would dismiss the lawsuit in return for

26  the District's agreement to, among other things, the following material conditions:

27           a.      The District would not demolish the canopy;

28

CRAA\4158\6834173                           -2-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1              b.     The District would perform certain duties, such as enforcement of

2  parking regulations on the Pier, repair and maintenance of the Pier, etc.;

3              c.     The District would grant certain rights to me, my businesses and

4  my customers, such as guaranteed fish semi-truck access, a specific minimum number of public

5  parking spaces on the Pier, and non-exclusive parking rights on all other the District property;

6  and

7              d.     The District would construct an additional building, and the

8  District and I would enter into a lease for the additional site and building on certain terms and for

9  which I would pay fair rent.

10        6.     In return for a dismissal of the lawsuit, the District agreed to these

11  conditions and we memorialized them in the 1993 Settlement Agreement, and later the 1994

12  Lease. Accordingly, I dismissed the lawsuit. However, the District has now breached the

13  material terms and conditions of our settlement contained in both the 1993 Settlement

14  Agreement and the 1994 Lease.

15        7.     I fulfilled my obligation to the District by dismissing the lawsuit in 1993.

16  On the other hand the District, after receiving the benefits of this dismissal, chose not to fulfill its

17  obligation to honor the terms and conditions of our underlying settlement agreement, namely, the

18  terms and conditions of the 1993 Settlement Agreement and the 1994 Lease.

19        8.     As a result of my initial lawsuit against the District, I first considered the

20  issue of an attorneys' fees clause because the 1976 Lease did not have one. I had to pay my

21  attorneys' fees out-of-pocket even though I did nothing to bring about the circumstances giving

22  rise to the District's illegal decision to demolish the canopy. I decided I had to protect myself in

23  the event that the District might again take unlawful action and/or breach some aspect of the

24  1976 Lease and/or the settlement agreement. An attorneys' fees clause, I hoped and believed,

25  would act as a deterrent and afford me some protection. If the District still persisted and

26  deprived me of my legal rights, and if I prevailed in a legal and/or equitable action, then the

27  District would be held accountable and responsible to pay my expenses, costs and attorneys'

28

CRAA\44158683417.3            -3-

1   fees. This is exactly what the District agreed to do on page 14 of the 1993 Settlement

2   Agreement, at paragraph 11 ("Attorneys' Fees")

3           If any litigation be commenced between the parties hereto concerning this
        agreement or the rights and duties of either Cohen or The District hereunder,
4       whether it be an action for damages, equitable or declaratory relief, the prevailing
        party in such litigation, in addition to such other relief as may be granted by the
5       court, shall be entitled to recover from the other party reasonable expenses,
        attorneys' fees and costs.
6
        9.      The District agreed to have "Attorneys' Fees" clauses in the 1993
7
    Settlement Agreement and the 1994 Lease, and to "tie" an attorneys' fees clause to the 1976
8
    Lease. The "tie" for attorneys' fees to the 1976 Lease comes from the 1993 Settlement
9
    Agreement, page 16, paragraph, 15 ("Good Faith"): "The parties acknowledge and agree that
10
    each party hereto has an obligation of good faith and fair dealing, to conduct himself or itself in
11
    such a fashion so as not to deprive any other party of the benefits to be derived from this
12
    Agreement *or from the Lease.*" (Italics added.) The "Lease" referred to was defined in the 1993
13
    Settlement Agreement on page 1 in the recitals: "WHEREAS, Cohen and The District are
14
    parties to a lease agreement dated January 1, 1976 ('Lease'), pursuant to which Cohen leases
15
    certain property from the District." So a violation of the 1976 Lease is also a violation of the
16
    "Good Faith" clause of the 1993 Settlement Agreement, which includes an attorneys' fees
17
    clause.
18
        10.     Although over the years the District did not live up to all of its continuing
19
    contract obligations, as shown by its lack of parking enforcement, allowance of exclusive RV
20
    parking, failure to maintain the Pier, etc., I did not take any legal action against the District. I
21
    complained to the District about its failures to uphold its end of the agreements, but I did not
22
    want another legal battle with the District. A lawsuit would be my absolute last recourse.
23
        11.     When it became clear that the District's threat of breaches regarding
24
    guaranteed truck access and parking were real and imminent, my son, Leonard, and I, again
25
    following Richard Carsel's advice, retained MSR to try to resolve the dispute. We retained the
26
    firm again because of its affiliation with the prior lawsuit, and its qualifications, capability, and
27
    familiarity with the facts and issues. MSR was uniquely acquainted with the parties and
28

CRAAM41536683417.3                                  -4-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  contracts at issue, as it had handled the prior litigation and participated in negotiating and

2  drafting the 1993 Settlement Agreement and 1994 Lease. No local firm shared this familiarity

3  with the issues, parties, documents and evidence, and we felt MSR was really our only wise

4  choice.

5        12.    Unfortunately, at the June 2004 the District Commissioners' Meeting, the

6  District took action that I could not live with. The District reconfigured the parking areas on the

7  Pier terminus in such a manner as to deprive me of the settlement agreement's guaranteed

8  twenty, but in no event less than seventeen, public parking spaces. I was also deprived of the

9  reasonable fish truck access guaranteed by the 1994 Lease. Either way, at any given time, I

10  could only have one or the other, but not both.

11        13.    At that meeting I pleaded with the District's Commissioners to reconsider.

12  I explained that the action the District was about to take would be in direct violation of our 1993

13  Settlement Agreement and our 1994 Lease. I reminded Commissioner Carolyn Moffat that she

14  was the Commissioner who signed the 1993 Settlement Agreement on behalf of the District. I

15  explained there were other viable options that would accomplish the same goals the District said

16  it wanted to achieve -- primarily an open 18-foot fire lane the length of the Pier -- without

17  violating the agreements the District had with me. Commissioner Moffat said she was sorry that

18  this would hurt our customers, and in turn hurt me, but she voted for the new parking

19  configuration anyway. All but one of the Commissioners voted in favor of the new

20  configuration, without even looking at the 1993 Settlement Agreement or the 1994 Lease, even

21  though copies of the agreements were available in the same building as the meeting. The

22  Commissioners apparently did not care enough about their obligations to even review the

23  agreements to confirm what their obligations were under those agreements, prior to voting on an

24  action that would clearly breach them.

25        14.    Still, I wanted to avoid any legal action if at all possible. I had Arthur

26  Coon, our attorney from MSR, come to the next meeting of the Harbor The District Commission

27  to speak with the Commissioners in an effort to avoid any legal action. He explained in detail

28  how the District could comply with its contracts with the Cohens and its own Master Plan and

CRAA\44159\683417.3                                          -5-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    Coastal Act obligations in a way that would be a "win-win." The Commissioners simply

2    thanked Mr. Coon for his concerns and moved on to the next agenda item without further

3    comment or acknowledgement. Nothing changed. Next, my son Leonard and I offered the

4    District up to a $20,000 loan to help cover the cost to use another parking/truck access option

5    that both the District and I could live with. The District rejected the offer, which was formally

6    made in a July 2, 2004, letter to the District. We tried to meet with CDF to explain and resolve

7    the problem, but CDF, which is the District's designated fire protection agent, would only meet

8    with the District. I tried very hard to find a compromise that would avoid litigation, but the

9    District would not budge one inch off their position. It did not even try to honor its contracts.

10         15.    Eventually, the District started placing "warning" tickets on "illegally"

11    stopped vehicles (mostly the semi fish trucks). Finally, the District had the CDF Fire Marshall

12    issue an actual citation to a semi fish truck. Once that happened, I had no choice but to seek

13    legal redress. I notified Art Coon who filed a complaint. We attempted mediation with Judge

14    Conklin, and CDF's Mike Harkness even attended a session at the Judge's request to see if a

15    solution to the pier configuration problem could be reached, but the District would still not agree

16    to honor its contract obligations.

17         16.    The District put me in an impossible position that left me no choices or

18    options. I did nothing to provoke this lawsuit and in fact made great efforts to avoid it. In spite

19    of my repeated pleas, the leases, the settlement agreement, our attorney's public explanation to

20    the Commissioners, and our monetary offer, the District knowingly chose to breach its

21    settlement agreement. If I wanted to maintain and protect my bargained-for rights, then I was

22    forced to seek this Court's assistance.

23         17.    Since the District chose to deprive me of the full advantage of the leases

24    and settlement agreement and drove my wholesale fish processing operation out of business, I

25    stopped paying rent under the 1994 Lease and wanted to renegotiate a new "fair" rental value for

26    the 1994 Lease. But the District chose, instead, to send me a 15-day "notice of eviction" to evict

27    me for nonpayment of rent. I responded in good faith by tendering a $6,000 adjusted rent check

28    with an explanation that this was a good faith effort toward payment of a reasonably reduced

CRAAM4158\683417.3                -6-

1   rent. If the District and I could not agree on what a "fair" rent should be, as required in the 1993

2   Settlement Agreement, I felt that the only option was to make a good faith tender and let a court

3   of law make the decision as to the fair amount for us given the District's material breaches of our

4   Settlement Agreement.

5       18.    The District rejected my good faith offer, returned the check and notified

6   me that only the full rent amount would be acceptable. The District then sued me in a cross-

7   complaint, asking for full rent and seeking to evict me for not paying such rent. My position,

8   going into court, remained the same. I should pay whatever the judge or jury decided to be a fair

9   reduced rent for the premises due to the District's breach of the leases and settlement agreement.

10  For its part, the District went into court asking for full rent only, plus late fees and interest, and

11  my eviction from the premises.

12      19.    I am a prevailing party in this action because I received the "greater relief"

13  on the contract claims. From the beginning of this dispute, when the District announced its

14  intention to implement the interim shared-use plan, my main objective was to stop the District's

15  breaches and force the District to comply with its settlement agreement obligations. To try to

16  achieve this objective, my attorney drafted a public entity claim letter demanding that the

17  District "do whatever needs to be done to comply with its legal obligations." When it became

18  clear that the District would not comply with its obligations, my attorney filed a Complaint

19  seeking to remedy the District's stubborn refusal to honor its agreements to provide the required

20  public parking and truck access, and to adequately repair and maintain the Pier. Throughout the

21  litigation, my primary concern remained the District's breaches of the contracts at issue, i.e., the

22  settlement agreement. After more than 2 years of litigation during which the District refused to

23  acknowledge its breaches or offer to perform, I finally achieved my goal of proving those

24  breaches and compelling the District to comply with its obligations when the Court issued its

25  Statement of Decision and entered Judgment granting me $50,000 in past damages (as awarded

26  by the jury) and significant equitable relief, and setting a fair reduced rent. The declaratory

27  judgment and specific performance decree granted me substantially all redress I sought to

28  achieve by this law suit.

CRA\A\441589\683417.3    -7-

20.   In addition to achieving my primary litigation objectives, this relief far
outweighs any relief granted to the District. From the outset, the District's contentions have
been that it did breach the contracts and did not have to comply with what we contended were its
obligations under the contracts. The District also made a claim against me for indemnity,
ejectment, and full back rent under the agreements. The Court's Judgment—which found that
the District had and breached contract obligations to the plaintiffs, that the District must comply
with those obligations, that I need not indemnify the District, that the District's claim for
ejectment was rejected, and that I owe only partial back rent because of the District's breaches—
is therefore a complete failure for the District. It was not the District's primary litigation
objective to be declared and found liable for breach of all the contracts, to pay my damages, to
be forced to reduce my rent to half and allow me to remain in possession of the premises, and to
be ordered to permit parking truck access, remove RVs from Harford landing and require the
pier walkway as we had requested. While the Court ordered that I pay the District $44,808.98 in
back rent on the cross-complaint, *this actually represented a success for me on Defendant's
breach of contract claim.* The new "fair" amount of "back rent due" awarded to the District was
actually a net loss to the District of one-half of the original "fair" amount of "rent due" under the
1994 Lease (before the District's breach). Therefore, the District suffered a net loss of rent
income under the 1994 Lease by one-half of the rent otherwise due because of their breach of the
1994 Lease. Moreover, the District will suffer further loss of rent income under the 1994 Lease
by one-half until they comply with the 1993 Settlement Agreement and the 1994 Lease, which
again, will be a monetary gain to me. The amount awarded by the Court to the District was less
than my $50,000 damages award, and less than half of what the District demanded and excludes
late fees. Essentially, the Court found that I was substantially justified in not paying rent due to
the District's material breaches, ruling in favor of my request for an adjusted "fair" rent and at
the same time verifying that the District was in breach of the leases and settlement agreement
and could not expect payment of full rent, just like I had said. At the outset, I had offered partial
rent – which the District rejected, insisting on full rent – so this partial rent award is no victory at
all for the District. When the District's minimal, partial relief, and failure to achieve its primary

CRAA\4158\683417.3                              -8-

1 litigation objectives, is compared with my substantial equitable and monetary awards, and

2 achievement of our primary litigation objectives, it is clear that we obtained the greater relief in

3 this action.

4      21.    The District never made any sincere effort to reach an agreement with me

5 or any of us to settle our dispute or this lawsuit. It is also a fact that the District, at its sole

6 discretion, could have corrected and cured its breaches and fulfilled its obligations at any time,

7 before the trial, during the trial and now. The District is the only one, between us, that has the

8 authority and ability to make things right. However, the District has chosen not to do so.

9      22.    I believe, and with good cause, that one of the District's strategies was to

10 spend its insurance company's money to multiply and expand this litigation so as to force

11 Leonard and I to expend all their personal resources until none were left and the District could

12 win by default. Why else would such a basic decision-making process over parking, truck

13 access and a fire lane be turned into a multi-million dollar lawsuit, especially when there were

14 attorneys' fees clauses benefiting the prevailing party who obtained either damages or equitable

15 relief? At this point, this lawsuit has cost me so much in time, money and personal hardship,

16 that even if I were awarded all of the expenses, costs and attorneys' fees, it would still take me

17 years, if ever, to be made whole. I have been forced to take out loans on and finally to put my

18 house up for sale to finance this lawsuit in an effort to enforce the contracts with the District. I

19 ask the Court to consider the overall fairness and justice of the outcome of the jury trial and the

20 Court's rulings on plaintiffs' equitable claims. With their eyes wide open, the District

21 knowingly and in bad faith has purposely deprived me, my son and our family businesses of the

22 material benefits under their current agreements with me, which they promised me in 1993, if I

23 would dismiss the lawsuit against them.

24      I find it ludicrous that the District would even think to ask this Court or me for

25 anything other than forgiveness. Again, the District, with their eyes open, knowingly and in bad

26 faith "broke" their word to me. They "breached" all our leases between us. They violated the

27 1993 Settlement Agreement after they enjoyed a dismissal of the previous lawsuit. They deprived

28 Leonard and I of our Lease rights. They have hurt and are still hurting our businesses and even

CRAAM41588\834173                          -9-

1    "ran" the major commercial fishing activities (which is in violation of the California Coastal Act)

2    out of the Harbor.  They let the Pier deteriorate and fall into neglect.  They knowingly allowed our

3    customers to get hurt walking the Pier because of their neglect.  They displaced our customer's

4    parking spaces with RVs.  They used "scorched earth" tactics during this lawsuit to drain all of our

5    resources.  They attacked Leonard and I personally.  They invaded our privacy.  They knowingly

6    lied about me.  They were found by the judge and jury to have "breached" our leases and

7    Settlement Agreement, yet they continue on.  Threatening me with an appeal of this Court's

8    decision, I know now without a doubt their motives and actions.  They feel no remorse for acting

9    like a bully throughout this litigation, forcing us to trial, forcing us to establish liability and

10    breaches, but still failing to comply with this Court's order.  Even today, they still have not made

11    any effort to do the "right thing."

12        The District has acted in bad faith with me and now with this Court, also.  In my

13    opinion the District has not made a sincere effort to comply with this Court's orders.  The District

14    has tried again and again to mislead this Court.  Today they stand in defiance of this Court's

15    orders.  The District seems to think they are above the law, but that is not how I understand

16    the legal system to work.  I have also personally watched and listened to them mislead and be less

17    than truthful to the Coastal Commission.

18        It is incredible that they have the temerity to come into this Court, claiming to be

19    the prevailing party.  They are also asking this same Court, that they defy, to order Leonard and I

20    to pay their costs and their attorneys' fees, even though they acted in such bad faith and caused

21    such harm.  Have these people absolutely no conscience at all?  Here are the facts: These are the

22    people that promised in 1993 to pay our reasonable expenses, attorneys' fees, and costs if

23    they acted in such a fashion as to deprive us of the benefits of our leases and settlement

24    agreement.  Well, here we are today and that's exactly what they did: "deprive us of the benefits

25    of our leases and settlement agreement," with their eyes wide open.  I am astonished that the

26    District can stand before you and with a straight face say they deserve anything other than

27    punishment for their behavior, acting  as if they did nothing wrong, caught "red

28    handed," and yet not be embarrassed for their defiance of this Court's orders, for their disregard of

CRAAM415B\683417 3                    -10-

1    other's rights, and their total lack of good faith and fair dealing. The District badly hurt my son

2    and I, our families, and our businesses.

3             In my humble opinion, it would not be fair to my son and I if we were denied

4    an award of expenses, attorneys' fees, and costs. After all, that is what the District promised us in

5    1993. Denial of our total lawsuit expenses may actually cause me to be forced out of business

6    totally and into bankruptcy, only because I stood up for my clear legal rights when they were

7    being knowingly and intentionally violated by the District.

8             23.    In summary:

9                 a.    The District made an agreement with me in 1993, from which they

10    have already enjoyed the benefits and are now depriving me of my benefits.

11                b.    The District was found by the judge and the jury to have breached

12    our leases and settlement agreement.

13                c.    The District agreed to an "Expenses, Attorneys' Fees, and Costs"

14    clause as part of our 1993 Settlement Agreement.

15                d.    The District agreed to a "Good Faith" provision in our 1993

16    Settlement Agreement.

17                e.    The District voted to hurt our businesses before even reviewing our

18    agreements.

19                f.    We offered The District up to a $20,000 loan to help fund a

20    mutually agreeable option.

21                g.    The District made this lawsuit as expensive as they possibly could to

22    "clean us out," hoping to "win" by default.

23                    (i)    The District used insurance money to finance this litigation.
                     (ii)   We used our money to enforce our rights and stand up to The

24    District's tactics.

25                h.    The District has not complied with the judge's order.

26                i.    The District did not use "good faith" and "fair dealings" in their

27    agreements with me.

28

CRAA\441158\683417.3                    -11-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1            j.     We had to pay and owe over two million dollars just to protect our

2  rights from the same people that "gave" them to us.

3            k.     We did all we could to avoid this lawsuit, but the District was the

4  one that had the "power" to make things right. They chose not to avoid the lawsuit.

5           24.    For all the reasons previously stated, and the Court's orders and the jury's

6  findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who

7  obtained the greater relief under the contracts. Furthermore, I ask the Court to enforce those

8  contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of

9  our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact

10  circumstances, in exchange for me dismissing my worthy lawsuit against the District.

11  Furthermore, I ask for any other award this Court deems appropriate.

12           I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct. Executed this _____ day of January, 2007, at Aptos, California.

14

15

16                            BARRY A. COHEN

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44159\083417.3                -12-

01/22/2007 11:13 FAX 925 933 4126     MILLER STARR     @026

1    j.    We had to pay and owe over two million dollars just to protect our

2  rights from the same people that "gave" them to us.

3          k.    We did all we could to avoid this lawsuit, but the District was the

4  one that had the "power" to make things right. They chose not to avoid the lawsuit.

5          24.    For all the reasons previously stated, and the Court's orders and the jury's

6  findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who

7  obtained the greater relief under the contracts. Furthermore, I ask the Court to enforce those

8  contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of

9  our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact

10  circumstances, in exchange for me dismissing my worthy lawsuit against the District.

11  Furthermore, I ask for any other award this Court deems appropriate.

12          I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct. Executed this ___21ˢᵗ___ day of January, 2007, at Aptos, California.

14

15                                    _____
16                                         BARRY A. COHEN
17

18

19

20

21

22

23

24

25

26

27

28

CRAAH41585683417.3                    -12-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

01/22/2007 11:13 FAX 925 933 4126     MILLER STARR     ☑027

**PROOF OF SERVICE**
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

DECLARATION OF BARRY COHEN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Martin P. Moroski
Adamski, Moroski, Madden & Green
P. O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
e-mail:
moroski@adamskimoroski.com

*Overnight/Hand Delivery Only:*
6633 Bay Laurel Place
Avila Beach, CA 93424

Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

David M. Cumberland
Cumberland, Coates & Duenow, LLP
550 Dana Street
San Luis Obispo, CA 93401-3429
Tel: (805) 541-4200
Fax: (805) 541-4293
e-mail: djmc@ccdlawfirm.com

Co-Counsel for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT**

CRAA\4158\683417.3     -13-

01/22/2007 11:13 FAX 925 933 4126        MILLER STARR                    Ø028

1       *Courtesy Copy:*

2       Hon. Barry T. LaBarbera
        San Luis Obispo Superior Court
3       Department 2
        1035 Palm St., 3rd Fl.
4       San Luis Obispo, CA  93408
        e-mail:
5       Barry.LaBarbera@slo.courts.ca.gov

6               I am readily familiar with the firm's practice of collection and processing
        correspondence for mailing. Under that practice it would be deposited with the U.S. Postal
7       Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
        am aware that on motion of the party served, service is presumed invalid if postal cancellation date
8       or postage meter date is more than one day after date of deposit for mailing in affidavit.

9               I declare under penalty of perjury under the laws of the State of California that the
        foregoing is true and correct.
10

11              Executed on January 22, 2007, at Walnut Creek, California.

12

13                                              _____
                                                        Karen Irias
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\41158\683417.3                             -14-

        DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

GEORGE B. SPEIR (Bar No. 78276)
ARTHUR F. COON (Bar No. 124206)
GAVIN D. WHITIS (Bar No. 184133)
CAROLYN NELSON ROWAN (Bar No. 238526)
MILLER, STARR & REGALIA
A Professional Law Corporation
1331 N. California Blvd., Fifth Floor
Post Office Box 8177
Walnut Creek, California 94596
Telephone:    (925) 935-9400
Facsimile:    (925) 933-4126

Attorneys for Plaintiffs and Cross-Defendants
BARRY A. COHEN, LEONARD A. COHEN,
OLDE PORT INN, INC., and OLDE PORT
FISHERIES, INC.

**FILED**

JAN 22 2007

SAN LUIS OBISPO SUPERIOR COURT
BY *Nancy G. Gudino*
N. Gudino, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

| | |
|---|---|
| BARRY A. COHEN; LEONARD A. COHEN; OLDE PORT INN, INC.; and OLDE PORT FISHERIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT SAN LUIS HARBOR DISTRICT; and DOES 1 to 50. inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No. CV 040397<br><br>DECLARATION OF LEONARD COHEN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES<br><br>Date:   February 21, 2007<br>Time:   9:00 a.m.<br>Judge:  Hon. Barry T. LaBarbera<br>Location:   801 Grand Avenue<br>San Luis Obispo, CA |

I, Leonard Cohen, declare:

1.    I am the owner of the Olde Port Inn restaurant in Avila Beach, San Luis Obispo County, California, and I am a plaintiff in this lawsuit. My personal residence is also in Avila Beach, California. The facts stated in this declaration are true as of my own personal knowledge, and if called as a witness I could and would testify competently thereto.

2.    The law firm of Miller, Starr & Regalia ("MSR") served as counsel in a preceding dispute involving my father (Barry Cohen) and Defendant Port San Luis Harbor

CRAA\44158\686347.1                      -1-

DECLARATION OF L. COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  District ("District"). That dispute arose due to District's illegal proposal to demolish the Harford

2  Pier's canopy. The lawsuit was settled, and MSR participated in drafting the 1993 Settlement

3  Agreement and the 1994 Lease, two of the agreements at issue in this case.

4      3.    My father hired MSR in the prior dispute because that case involved

5  specialized CEQA issues and a local San Luis Obispo attorney (Richard Carsel) recommended

6  MSR. When it appeared District was breaching our settlement agreement in 2004, I participated

7  in again retaining MSR to attempt to get District to comply. We retained MSR again because of

8  the firm's qualifications and because the firm had handled the prior case and therefore had special

9  knowledge of the parties and agreements at issue.

10      4.    MSR, my father, and I all attempted on numerous occasions for many

11  months prior to filing this case to persuade District to cease their breaches of contract and correct

12  the parking, truck access and pier conditions. We offered to advance District up to $20,000 to

13  help undertake the changes necessary to put it in compliance. Additionally, we offered

14  suggestions and plans regarding parking, truck unloading, and relocating the skiff racks which

15  would not only solve the problems and cure District's breaches, but would eliminate their backlog

16  of people waiting for skiff racks and increase their revenues from renting the suggested additional

17  skiff racks.

18      5.    District rebuffed all attempts to reasonably resolve the issues, and left us

19  with no choice but to file a lawsuit to compel District's compliance with the settlement

20  agreement. This suit was filed and prosecuted, and we never received any offers from the District

21  to cease or correct its breaches at any time.

22      6.    Defendant has engaged in "scorched earth" litigation tactics throughout this

23  case. These include, but are not limited to, filing a massive but wholly meritless motion for

24  summary adjudication, filing numerous repetitive papers at all stages of this litigation, improperly

25  attempting to use privileged tax returns, at least doubling the length of all Plaintiffs' depositions

26  of District personnel and other witnesses (and substantially lengthening the trial) by continuously

27  (and, most often, meritlessly) objecting, and noticing multitudes of individual and records

28  depositions and conducting discovery related to irrelevant issues (such as, for example, Plaintiffs'

CRAAM4158\686347.1                  -2-

1  personal finances). These tactics continue to the present, as evidenced by, among other things,

2  District's improper "objections" to this Court's final Statement of Decision, and by the statements

3  of Ty Green, District's counsel, to the California Coastal Commissioners, at their November 16,

4  2006 meeting in Huntington Beach (which I personally attended), including that the statements

5  that Option F was new and that the Commission should not adopt it in the LCP, and that

6  Defendant will probably appeal this Court's orders. The very fact that District filed a cost bill

7  and claims to be a prevailing party is a bad faith tactic, given the relief awarded to us in the

8  Court's Statement of Decision and Judgment, and one which has and will cause us to incur

9  substantial additional fees, costs, and expenses. As a result of District's tactics, the cost of this

10  litigation has far exceeded anything we reasonably anticipated at the outset. District never made

11  any realistically reasonable offer to settle this case taking into account those costs, the merit of

12  our claims, and District's clear breaches.

13       7.    Once the monies that I had set aside for the litigation were spent, and

14  District had still not acknowledged or offered to cure its breaches of the settlement agreement and

15  to make my father, OPI, OPF, and I whole, I was forced to obtain loans against my residence in

16  the amount of $1,000,000. These are interest only loans at a rate of 7%, which have caused me to

17  pay annual interest of $70,000, and over $100,000 total interest to date.

18       8.    My house is up for sale, I have liquidated my retirement account, I have

19  been under tremendous financial pressure for over two years, and even if the court awards full

20  attorneys fees, it will take me years to get back on my feet and become whole, if ever.

21       9.    Both my father and I have been forced to put our family houses up for sale

22  because of the debt incurred in litigating what should have been essentially a simple and

23  straightforward breach of contract claim, were it not for District's "scorched earth" tactics, bad

24  faith denial of liability, and attempts to fight a war of attrition. We have been financially

25  devastated, and will not come close to being made whole by a cost award of this Court unless all

26  recoverable expenses, costs, and attorneys' fees paid and owing are ultimately included in the

27  Court's award.

28

CRAAM4158\686347.1         -3-

1       10.    I walk and/or drive the Harford Pier daily in order to conduct my business

2   at Olde Fort Inn. I have personally observed no completed work, or serious attempts or actions

3   by District whatsoever to comply with this Court's orders, from the time of the Court's tentative

4   ruling through the final Judgment and up until the present time.

5       I declare the foregoing to be true and correct under penalty of perjury under the

6   laws of the State of California. Executed this ____ day of January, 2007, at Avila Beach, San

7   Luis Obispo County California.

8

9

10                            LEONARD COHEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\44158\686347.1                                        -4-

DECLARATION OF L. COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    10.    I walk and/or drive the Harford Pier daily in order to conduct my business

2    at Olde Port Inn. I have personally observed no completed work, or serious attempts or actions

3    by District whatsoever to comply with this Court's orders, from the time of the Court's tentative

4    ruling through the final Judgment and up until the present time.

5        I declare the foregoing to be true and correct under penalty of perjury under the

6    laws of the State of California.. Executed this 21 day of January, 2007, at Avila Beach, San

7    Luis Obispo County California.

8

9

10                                                    _____

11                                                        LEONARD COHEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA4415\686347.1

-4-

01/22/2007 11:10 FAX 925 933 4126    MILLER STARR    ☒012

**PROOF OF SERVICE**
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

I, Karen Irias, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within documents:

DECLARATION OF LEONARD COHEN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by transmitting via electronic e-mail, to the following e-mail addresses indicated below on this date before 5:00 p.m.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

☐   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Martin P. Moroski<br>Adamski, Moroski, Madden & Green<br>P. O. Box 3835<br>San Luis Obispo, CA 93403-3835<br>Tel: (805) 543-0990<br>Fax: (805) 543-0980<br>e-mail:<br>moroski@adamskimoroski.com | David M. Cumberland<br>Cumberland, Coates & Duenow, LLP<br>550 Dana Street<br>San Luis Obispo, CA 93401-3429<br>Tel: (805) 541-4200<br>Fax: (805) 541-4293<br>e-mail: dmc@ccdlawfirm.com |
| *Overnight/Hand Delivery Only:*<br>6633 Bay Laurel Place<br>Avila Beach, CA 93424 | Co-Counsel for Defendant and Cross-Complainant PORT SAN LUIS HARBOR DISTRICT |
| Attorneys for Defendant and Cross-Complainant **PORT SAN LUIS HARBOR DISTRICT** | |

CRAA\44158\686347.1

-5-

1

*Courtesy Copy:*

2   Hon. Barry T. LaBarbera
   San Luis Obispo Superior Court

3   Department 2
   1035 Palm St., 3rd Fl.

4   San Luis Obispo, CA 93408
   e-mail:

5   Barry.LaBarbera@slo.courts.ca.gov

6       I am readily familiar with the firm's practice of collection and processing
correspondence for mailing. Under that practice it would be deposited with the U.S. Postal

7  Service on that same day with postage thereon fully prepaid in the ordinary course of business. I
am aware that on motion of the party served, service is presumed invalid if postal cancellation

8  date or postage meter date is more than one day after date of deposit for mailing in affidavit.

9       I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

10

11     Executed on January 22, 2007, at Walnut Creek, California.

12

13                         Karen Irias

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\4158\686247.1                              -6-

DECLARATION OF L. COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES