1    **COX, WOOTTON, GRIFFIN,**
     **HANSEN & POULOS LLP**
2    Gregory W. Poulos  (SBN 131428)
     Max L. Kelley (SBN 205943)
3    190 The Embarcadero
     San Francisco, CA  94105
4    Telephone No.:  415-438-4600
     Facsimile No.:  415-438-4601
5
     **McKASSON KLEIN & HOLMES LLP**
6    Mark D. Holmes (SBN 156660)
     600 Anton Boulevard, Suite 650
7    Costa Mesa, CA 92626
     Telephone: (714) 436-1470
8    Facsimile:  (714) 436-1471

9    Attorneys for Plaintiff
     DEL MAR SEAFOODS, INC.
10

11                 UNITED STATES DISTRICT COURT
12
                NORTHERN DISTRICT OF CALIFORNIA
13                  SAN FRANCISCO DIVISION

14
     DEL MAR SEAFOODS, INC.          )   Case No.: CV 07-02952 WHA
15                                   )
               Plaintiff,            )
16                                   )
          vs.                        )   **REQUEST FOR JUDICIAL NOTICE**
17                                   )
     BARRY COHEN, CHRIS COHEN (aka   )
18   CHRISTENE COHEN), *in personam* and )
     F/V POINT LOMA, Official Number )
19   515298, a 1968 steel-hulled, 126-gross ton, )
     70.8- foot long fishing vessel, her engines, )
20   tackle, furniture, apparel, etc., *in rem*, and )
     Does 1-10,                      )
21                                   )
                                     )
22             Defendants.           )
                                     )
23   _____ )   Date:  August 16, 2007
                                     )   Time: 8:00 a.m.
24   And Related Counterclaims       )   Courtroom 9, 19th Floor
                                     )   Hon. William H. Alsup
25   _____ )

26        Plaintiff Del Mar Seafoods, Inc., by and through its attorneys, hereby requests the

27   Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following facts:

28   / / /

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1.    Defendant Barry Cohen was a plaintiff in a prior civil case commenced in San Luis Obispo County Superior Court entitled *Barry A. Cohen; Leonard A. Cohen; Olde Port Inn, Inc; and Olde Port Fisheries, Inc. v. Port San Luis Harbor District*, Case No. CV 040897.

2.    In that case on November 16, 2005 Defendant Barry Cohen was deposed and gave testimony under oath, from which excerpts of the transcript relevant to this case are attached as **Exhibit 1**.

3.    In that case exhibits were attached to Barry Cohen's deposition, of which two relevant to this case are attached as **Exhibit 2**.

Dated: July 26, 2007

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By:  _____
     Max L. Kelley

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

150 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafoods/2504

REQUEST FOR JUDICIAL NOTICE                                        Case No.: CV 07-02952 WHA

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN LUIS OBISPO

BARRY A. COHEN; LEONARD A. COHEN;     )
OLDE PORT INN, INC.; and              )
OLDE PORT FISHERIES, INC.,            )
                                      )
                  Plaintiffs,         )
                                      )
vs.                                   )
                                      )
PORT SAN LUIS HARBOR DISTRICT; and    )
DOES 1 to 50, inclusive,              )
                                      )
                  Defendants.         )
_____)
                                      )
AND RELATED CROSS-ACTION.             )
_____)

**VOLUME III**
Pages 340-523



Case No.  CV 040897

# DEPOSITION OF BARRY A. COHEN

San Luis Obispo, California

Wednesday, November 16, 2005

10:05 a.m. – 5:23 p.m.

Reported By:     Lora L. Shoffstall, RPR, CSR 9271
                 File No. 206759



Jeri Cain, CSRs, Inc.
A Professional Corporation

**Merit Reporting™**
& Video

*Earning Your Trust Since 1974*
San Luis Obispo · Santa Maria · Santa Barbara

1151 Leff Street · San Luis Obispo, CA 93406-1039 **(805) 541-0333**
P.O. Box 1871 · Santa Maria, CA 93465 **(805) 928-7554**
FAX (805) 541-2136 · www.MeritReporting.com   **800-549-3376**

1          THE DEPOSITION OF BARRY A. COHEN, VOLUME III,

2   was taken at Merit Reporting & Video, 1151 Leff Street,

3   San Luis Obispo, California, before Lora L. Shoffstall,

4   CSR No. 9271 and Registered Professional Reporter, on

5   Wednesday, November 16, 2005, commencing at 10:05 a.m.

6

7   APPEARANCES OF COUNSEL:

8
    For Plaintiffs and Cross-Defendants:
9

10          MILLER, STARR & REGALIA
            Attorneys at Law
11          BY:  ARTHUR F. COON
            1331 North California Boulevard, Fifth Floor
12          Walnut Creek, California  94596
            (925) 935-9400
13

14  For Defendants and Cross-Complainant:

15
            ADAMSKI, MOROSKI, MADDEN & GREEN, LLP
16          Attorneys at Law
            BY:  MARTIN P. MOROSKI
17          444 Higuera Street, Suite 300
            San Luis Obispo, California  93401-3875
18          (805) 543-0990

19
    Also Present:
20
            JAY ELDER
21          LEONARD A. COHEN

22

23

24

25

                                                        341

DEPOSITION OF BARRY A. COHEN, VOL. III  11/16/05

1                           I N D E X

2    WITNESS                    EXAMINED BY              PAGE

3    BARRY A. COHEN       MR. MOROSKI                    344
     (Volume III)

4

5                       MARKED TESTIMONY

6                    PAGE      LINE

7                    488       13

8

9            WITNESS INSTRUCTED NOT TO ANSWER

10                      (None)

11           EXHIBITS FOR IDENTIFICATION

12   DESCRIPTION:                              MARKED

13     385 - Amended Notice of Continued Deposition      345
             of Barry A. Cohen as an Individual
14           Plaintiff and Person Most Knowledgeable
             of Plaintiff Olde Port Fisheries, Inc. and
15           Request for Production of Documents at
             Deposition Pursuant to Stipulation
16
     386 - 1994, 1997, 1999, 2002 forms 1099-MISC        356
17
     387 - Privilege Log of Documents Withheld           388
18           from Production of Schimandle and
             Cantrell, CPA's
19
     388 - June 27, 1996, letter to Paul A. Geihs        391
20           from Thomas D. Green, Re:  Lease:  Port
             San Luis Harbor District and Barry Cohen
21
     389 - 1999, 2001, 2002 forms 1099-MISC              436
22
     390 - June 12, 1996, letter to Board of             399
23           Commissioners from Paul A. Geihs,
             Re:  Olde Port Inn Restaurant and
24           Seafood Facility Lease Agreement

25   391 - 2003 form 1099-MISC                           466

                                                         342

MERIT REPORTING & VIDEO  (800) 549-3376

DEPOSITION OF BARRY A. COHEN, VOL. III   11/16/05

I N D E X (Continued)

EXHIBITS FOR IDENTIFICATION (Continued)

| DESCRIPTION: | MARKED |
|---|---|
| 392 - 2004 form 1099-MISC | 466 |
| 393 - Six pages; documents re Global Marine Systems (Federal) Inc. | 468 |
| 394 - Uniform Residential Loan Application | 471 |
| 395 - November 8, 2005, letter to Barry and Chris from John Husten, Loan Officer, on Weger Mortgage letterhead | 479 |
| 396 - Uniform Residential Loan Application | 485 |
| 397 - Promissory Note | 509 |
| 398 - Del Mar Seafoods, Inc. Schedule of Payments | 509 |
| 399 - Olde Port Fisheries, Division Income Statement for the 1 Period Ended January 31, 2003, et al. | 517 |
| 400 - Privilege Log of Documents Withheld From Production of Schimandle and Cantrell (Olde Port Fisheries, Inc.) | 452 |
| 401 - Year-to-Date Report, Del Mar Seafoods, Inc. | 509 |

1                        BARRY A. COHEN,

2        Plaintiff herein, having first been duly sworn,

3            was examined and testified as follows:

4

5                   EXAMINATION (Resumed)

6    BY MR. MOROSKI:

7        Q.    Mr. Cohen, you understand that you're under

8    oath.

9        A.    Yes.

10       Q.    You understand that the admonitions which I

11   gave you before the last two sessions of your

12   deposition apply to today's deposition as well?

13       A.    Yes.

14       Q.    Specifically, you understand that if I ask a

15   question that you don't understand for any reason, that

16   you let me know that you don't understand my question.

17   Is that acceptable to you?

18       A.    Yes.

19       Q.    You also understand that to the extent you

20   answer any question I pose to you today, that the

21   transcript, once ultimately prepared, is going to read

22   as though you understood my question.  Do you

23   understand that?

24       A.    Yes.

25       Q.    And for that reason, it's extremely important

                                                            344

1    that's currently operating the Point Loma.  Correct?

2        A.    Correct.  And it would be last year's income.

3        Q.    Who keeps the books for the Point Loma?

4        A.    I do.

5        Q.    With assistance from anyone?

6        A.    For the end of the year?  The end-of-the-year

7    tax returns I don't do.

8        Q.    That's Mr. Cantrell?

9        A.    Yes.

10       Q.    Mr. Coon has shown you a document.  Do you

11   want to --

12       A.    He wants --

13            MR. COON:  This was that document that was

14   faxed by Joe Roggio during the break that Mr. Cohen

15   requested.  I think we should make some copies of it

16   and give you a copy.

17            MR. MOROSKI:  Sure.  Can I take a look at it,

18   please?

19            Why don't we make a copy of this real quick.

20   Thanks, Jay.

21            MR. COON:  Can we make two of those, Jay, so

22   we can have one for us, one for the court reporter and

23   one for you guys?

24            MR. ELDER:  Okay.

25            MR. MOROSKI:  Exhibits 397 and 398.  Thanks,

DEPOSITION OF BARRY A. COHEN, VOL. III   11/16/05

 1   Jay.  Do you want to mark this next?  That's 401.

 2            THE WITNESS:  Do you want --

 3            MR. MOROSKI:  Not yet.  That --

 4            THE WITNESS:  Okay.

 5            MR. MOROSKI:  We'll get to that in a second.

 6            (Exhibits 397-398 and 401 were marked for

 7            identification.)

 8   BY MR. MOROSKI:

 9       Q.   Can you identify Exhibit 397 for the record,

10   please?

11       A.   A copy of the promissory note payable to Del

12   Mar Seafoods that I had sent to you a couple days ago.

13   I received this from requesting it from Joe Roggio.

14       Q.   And the date or the effective date, I should

15   say, of this note is what?

16       A.   You mean the preferred mortgage date or the

17   date signed we it?

18       Q.   What is the effective date of --

19       A.   It's the same date.

20       Q.   Which is what?

21       A.   10/31/03.

22       Q.   And directing your attention to the last page,

23   the third page of the note.  Is that your signature

24   above the line "Barry Cohen"?

25       A.   Yes.

1    Q.   And is that Chris Cohen's signature?

2    A.   Yes.

3    Q.   Okay.  Why was it that you were being asked to

4    sign a promissory note on October 31, 2003?

5    A.   I don't know.

6    Q.   Were you assessed interest under the terms of

7    this promissory note?

8    A.   No.

9    Q.   Why not?

10   A.   I don't know.

11   Q.   And with respect to the balance, principal

12   balance recited in the first paragraph of the notice,

13   $215,000, how was that figure arrived at?

14   A.   I think it was a low guess.

15   Q.   A low guess?

16   A.   A guess.

17   Q.   Of what?

18   A.   Of the money that I borrowed for the boat from

19   Del Mar.  But I don't think they knew exactly how much

20   everything was.

21   Q.   Directing your attention to Exhibit 398.  Can

22   you identify that document for the record?

23   A.   Yes.

24   Q.   Would you do so?

25   A.   It's a Del Mar Seafoods, Inc. schedule of

1    Q.    And is that Chris Cohen's signature?

2    A.    Yes.

3    Q.    Okay.  Why was it that you were being asked to

4    sign a promissory note on October 31, 2003?

5    A.    I don't know.

6    Q.    Were you assessed interest under the terms of

7    this promissory note?

8    A.    No.

9    Q.    Why not?

10    A.    I don't know.

11    Q.    And with respect to the balance, principal

12    balance recited in the first paragraph of the notice,

13    $215,000, how was that figure arrived at?

14    A.    I think it was a low guess.

15    Q.    A low guess?

16    A.    A guess.

17    Q.    Of what?

18    A.    Of the money that I borrowed for the boat from

19    Del Mar.  But I don't think they knew exactly how much

20    everything was.

21    Q.    Directing your attention to Exhibit 398.  Can

22    you identify that document for the record?

23    A.    Yes.

24    Q.    Would you do so?

25    A.    It's a Del Mar Seafoods, Inc. schedule of

1    payments.

2        Q.    And what does the schedule of payments relate

3    to?

4        A.    What I paid, what the boat owed, what

5    inventory was owed for Avila, receivable on Olde Port

6    Inn and on Michael Cohen.

7        Q.    So this document, Exhibit 398, does not relate

8    to the promissory note?

9        A.    Yes.

10       Q.    It does?

11       A.    Yes.

12       Q.    Okay.  How do you account for the different

13   balances?

14       A.    We don't account for it.

15       Q.    Okay.  Can you explain to me why the principal

16   balance owed under the terms of the promissory note,

17   Exhibit 397, dated effective October 31, 2003, is

18   $215,000, and the beginning balance reflected on this

19   schedule of payments documents is $295,429?

20       A.    Because I took the responsibility for these

21   amounts owed and just put it on mine.

22       Q.    Okay.  So the beginning balance does not

23   relate to the promissory note balance.  Correct?

24       A.    No, but it -- it relates to the promissory

25   note.

1  payments.

2      Q.  And what does the schedule of payments relate

3  to?

4      A.  What I paid, what the boat owed, what

5  inventory was owed for Avila, receivable on Olde Port

6  Inn and on Michael Cohen.

7      Q.  So this document, Exhibit 398, does not relate

8  to the promissory note?

9      A.  Yes.

10      Q.  It does?

11      A.  Yes.

12      Q.  Okay.  How do you account for the different

13  balances?

14      A.  We don't account for it.

15      Q.  Okay.  Can you explain to me why the principal

16  balance owed under the terms of the promissory note,

17  Exhibit 397, dated effective October 31, 2003, is

18  $215,000, and the beginning balance reflected on this

19  schedule of payments documents is $295,429?

20      A.  Because I took the responsibility for these

21  amounts owed and just put it on mine.

22      Q.  Okay.  So the beginning balance does not

23  relate to the promissory note balance.  Correct?

24      A.  No, but it -- it relates to the promissory

25  note.

511

1    Q.    Well, I'm looking at all of these figures,

2  Mr. Cohen, and let's start with Barry, the column

3  Barry, $237,035.48.  That's the beginning balance.

4  That doesn't tie with the $215,000 principal balance

5  owed pursuant to the terms of the promissory note.

6    A.    Right.

7    Q.    Okay.  How does it -- how does that total

8  relate to the promissory note obligation?

9    A.    I just told you that the $215,000 was a low

10  estimate.

11    Q.    Okay.

12    A.    So --

13    Q.    You owed money over and above the $215,000?

14    A.    Right.  But we didn't know how much.  This was

15  just prepared a few days ago.  This -- a lot of this

16  was not known until a few days ago.

17    Q.    And "this," you're referring to Exhibit 398?

18    A.    Yes.

19    Q.    The Michael Cohen beginning balance, what does

20  that relate to?

21    A.    Money that Michael Cohen owes.

22    Q.    For what?

23    A.    For purchases that he made.

24    Q.    Purchases of what?

25    A.    Of seafood from Del Mar.

1      Q.    Well, I'm looking at all of these figures,

2    Mr. Cohen, and let's start with Barry, the column

3    Barry, $237,035.48.  That's the beginning balance.

4    That doesn't tie with the $215,000 principal balance

5    owed pursuant to the terms of the promissory note.

6      A.    Right.

7      Q.    Okay.  How does it -- how does that total

8    relate to the promissory note obligation?

9      A.    I just told you that the $215,000 was a low

10   estimate.

11     Q.    Okay.

12     A.    So --

13     Q.    You owed money over and above the $215,000?

14     A.    Right.  But we didn't know how much.  This was

15   just prepared a few days ago.  This -- a lot of this

16   was not known until a few days ago.

17     Q.    And "this," you're referring to Exhibit 398?

18     A.    Yes.

19     Q.    The Michael Cohen beginning balance, what does

20   that relate to?

21     A.    Money that Michael Cohen owes.

22     Q.    For what?

23     A.    For purchases that he made.

24     Q.    Purchases of what?

25     A.    Of seafood from Del Mar.

1   Q.   Okay.  Olde Port Inn, what does that --

2   A.   Purchases.

3   Q.   Of fish?

4   A.   Yes.

5   Q.   Okay.  Inventory, what does that relate to?

6   A.   Fish and supplies.

7   Q.   Point Loma, what does that refer to?

8   A.   I think that was an advance or advances.

9   Q.   And the Barry column, what does that beginning

10  balance number refer to?

11  A.   That was probably the beginning balance of

12  where I was at the time of this promissory note.

13  Q.   And the total amount, $237,035, what does that

14  total include?

15  A.   I couldn't tell you offhand.

16  Q.   Advances?

17  A.   At the time they were not advances, but they

18  turned into advances.  This is what Joe Roggio was

19  talking about when we were going to go partners in the

20  boat, and we did a lot of work on the boat to get ready

21  for Mexico.  That was going to be Joe's contribution to

22  the 50/50.

23  Q.   Joe Cappuccio?

24  A.   Yes.

25  Q.   Okay.  Now, regarding the schedule of

1  STATE OF CALIFORNIA          )   ss.
   COUNTY OF SAN LUIS OBISPO     )

2

3       I, LORA L. SHOFFSTALL, CSR #9271, RPR, State

4  of California, do hereby certify:

5       That prior to being examined, the witness

6  named in the foregoing deposition was by me sworn to

7  testify the truth, the whole truth and nothing but the

8  truth;

9       That said deposition was taken down by me by

10  stenotype at the time and place therein stated and

11  thereafter transcribed under my direction into

12  computerized transcription.

13       I further certify that I am not of counsel nor

14  attorney for nor related to the parties hereto, nor am

15  I in any way interested in the outcome of this action.

16       In compliance with section 8016 of the

17  Business and Professions Code, I certify under penalty

18  of perjury that I am a certified shorthand reporter

19  with license number 9271 in full force and effect.

20       Witness my hand this 10th day of July, 2007
   2005.

21

22

23  _____
   LORA L. SHOFFSTALL, CSR #9271

24

25

# EXHIBIT 2

# PROMISSORY NOTE

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on _January '04_ and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

    1.    This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. _C.L.C. 515 298 Baa._; dated _10/31/03_.

    2.    <u>Incorporation of Terms of First Preferred Mortgage.</u>

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated _10/31/03_, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same effect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

    3.    <u>Acceleration of Maturity.</u>

In the event of default, in the payment of any of the installments or interest due as provided in this.

(3 pp.)
Δ or EXHIBIT 397
Deponent B. Cohen
Date 11/16/05 Rptr.
WWW.DEPOBOOK.COM

note, time being of the essence, holder may, without notice or demand, declare the entire principal
sum then unpaid immediately due and payable. Further, if maker should at any time fail in business
or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment,
attachment, or other legal process is issued against any deposit account or other property of maker,
or if any assessment for taxes against maker, other than taxes on real property, is made by the
federal or state government, or any department or agency of the federal or state government, or if
maker fails to notify holder of any material change in their financial condition, all of the
obligations of maker shall, at option of holder, become due and payable immediately without
demand or notice.

### 4.   Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or
revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any
installment in advance, all without affecting the liability of maker.

### 5.   Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all
costs.

### 6.   Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and
notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any
security hypothecated to holder until all indebtedness of maker to holder, however arising, shall
have been paid; and (c) the right to require holder to proceed against any party to this note, or to
pursue any other remedy in holder power. Holder may proceed against maker directly and
independently of any other party to this note, and the cessation of the liability of any other party or

Ex 397-2

any reason other than full payment, or any revision, renewal, extension, forbearance, change of
rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension
of holder's remedies or rights against any other party, shall not in any way affect the liability of
maker.

DATED: _10/31/03_

_____
Barry Cohen

_____
Chris Cohen

Ex 397-3

Del Mar Seafoods, Inc.
Schedule of Payments

| | Michael Cohen | Olde Port Inn | Inventory | Point Loma | Barry | Total |
|---|---|---|---|---|---|---|
| Beginning Balance | 13,820.40 | 18,050.10 | 10,383.24 | 16,021.61 | 257,035.48 | 205,420.83 |
| 12/22/2004 Barry Paymt | | | | | (5,000.00) | (5,000.00) |
| 6/24/2005 American Payment | | | (1,474.75) | | | (1,474.75) |
| 9/14/2005 Olde Port PYMT | | | (1,000.00) | | | (1,000.00) |
| 11/10/2005 Inv. Adj | | | (1,200.00) | | | (1,200.00) |
| 11/10/2005 Payment from Barry | (13,820.40) | (18,050.10) | (6,508.49) | (16,021.61) | (120,480.70) | (175,000.00) |
| Ending Balance | | | | | 111,854.78 | 111,854.78 |

△ 76 EXHIBIT 398
Deponent B. Cohen
Date 4/16/05 Rptr. 76
WWW.DEPOBOOK.COM