James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile:  (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10,<br><br>                    Defendants. | No. C-07-2952-WHA<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE ORDER OF ARREST**<br><br>Date: August 16, 2007<br>Time: 8:00 a.m.<br>Place: Courtroom 9, 19th Floor |

Pursuant to Civil Local Rule 7-3, Defendants, Barry A. Cohen and Chris Cohen (the "Cohens"), the vessel F/V POINT LOMA ("Defendants") and Claimant F/V Point Loma Fishing Company, Inc. ("PLFC"), submit this Reply to Plaintiff's ("Del Mar") Opposition to Defendants' Motion to Vacate Order of Arrest.

**INTRODUCTION**

The legal issue for the Court to resolve is whether Plaintiff has established the basis for its claim that an on-going fishing vessel business (the F/V POINT LOMA or "Vessel") has defaulted

1

in loan and/or ship mortgage obligations to Plaintiff, creating a case or controversy that justifies the extraordinary measure of seizing the Vessel and preventing it from producing income.  In its ex parte pleadings that led to the Vessel's arrest, Plaintiff alleged that Defendants had breached the terms of a promissory note (the "Note") and the provisions of a ship mortgage that secured the Note.  However, Plaintiff did not disclose to the Court several critical and material facts relating to the loan obligations, including, inter alia, (1) a large advance payment by Defendants in 2005 ($175,000); (2) its waiver of interest (confirmed by sworn statements in a lawsuit in 2005); (3) a pattern of never requesting in writing any monthly payments after the large advance until this lawsuit was filed; and (4) its failure to undertake in good faith any financial assessment of whether the F/V POINT LOMA was in any financial difficulty prior to having the Vessel seized.

In its Opposition, instead of presenting any evidence as to the financial condition of the Vessel business itself, which is the essential subject of the Note and ship mortgage in the first place, Plaintiff presents irrelevant statements about divorces, corvettes, and unrelated business dealings between Del Mar and Mr. Cohen.  Plaintiff also takes equivocal testimony by Mr. Cohen in an unrelated lawsuit and tries to turn it into confirmation of its limited and incomplete view of the facts in this dispute.

Defendants' position in this motion is precise as to the issue before the Court.  This lawsuit involves the seizure of an ongoing fishing vessel business (and no other dispute that may, or may not, exist between and among the parties) that has been unnecessarily and unlawfully interrupted.  First, the Note is not in default because Defendants made a very large prepayment of the monthly installments in 2005.  Second, the issue of advances is secondary to the question of whether Defendants have made monthly payments as required by the Note, which they have.  If monthly payments of $3,000 have been made into the future, the size of the overall loan is a secondary issue here.[1]  Third, if the basis of the seizure of the Vessel is the "actual or prospective

---

[1] Defendants vehemently deny that either Mr. Cohen or Mrs. Cohen agreed to add any debts not involving the Vessel to the Note and the security of the ship mortgage. Declaration

2
DEF'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ORDER OF ARREST
SFO 370977v1 0084289-000001
Case No. C-07-2952-WHA

impairment" of the Vessel's earning capacity, Plaintiff never inquired in "good faith" with respect to that issue, either orally or in writing, before seizing the Vessel. Therefore, as a matter of law, Plaintiff has failed to show that Defendants are in default under the Note or the ship mortgage and have wrongly used the admiralty powers of this Court to seize the Vessel and prevent it from earning income.

Defendants therefore respectfully request that the Court grant its motion to vacate the order of arrest issued in this case.

## FACTS

### A. The Agreement

Contrary to Plaintiff's assertions, the Cohens and Plaintiff entered into the Note following a decision by Plaintiff not to purchase a 50 percent interest in the F/V POINT LOMA for a joint venture with the Cohens for fishing operations in Mexico. Initially, Plaintiff and Defendants had contemplated a joint venture for which they would upgrade the F/V POINT LOMA, obtain fishing permits to fish in Mexico and transport the fish by truck to California for processing. Declaration of Barry Cohen A. Cohen in Support of Defendant Reply to Plaintiff's Opposition to Defendants' Motion to Vacate Order of Arrest ("Cohen Reply Dec."), Ex. 1, 68: 19-23. After Plaintiff provided funds for upgrades to the F/V POINT LOMA, it decided not to purchase a half interest in the Vessel. Plaintiff and the Defendants agreed to convert the money already spent on the Vessel into a loan under the Note and secured by a First Preferred Ship Mortgage (the "Mortgage") on the F/V POINT LOMA. Cohen Reply Dec. ¶2. The parties agreed that the amount to be secured would be $215,000 since Plaintiff did not have an accurate accounting of the actual amount spent. *Id*. At all times, the only amount secured by the Mortgage has been $215,000. Cohen Reply Dec. ¶4.

When Plaintiff and the Cohens entered into the Note, they had a long history of working together. In fact, Plaintiff and Mr. Cohen have known each other at least ten years and Plaintiff

---

of Barry Cohen A. Cohen in Support of Defendant Reply to Plaintiff's Opposition to Defendants' Motion to Vacate Order of Arrest ("Cohen Reply Dec."), ¶¶ 5-7.

1 itself acknowledges that Mr. Cohen has "always proved to [be] a very trustworthy and honest
2 guy." Cohen Reply Dec. Ex. 3, 151: 1-8. The purpose of the Note was to simply formalize the
3 provision of funds to the F/V POINT LOMA for upgrades. Cohen Reply Dec. ¶3, Ex. 2, 200: 4-
4 8. Following the signing of the Note in October 2003, Plaintiff requested a large advance
5 payment from the Cohens under the Note. Cohen Reply Dec. ¶8. Mr. Cohen complied and made
6 a substantial payment on the Note in the amount of $175,000 with a check dated November 10,
7 2005. Declaration of Barry A. Cohen in Support of Defendants' Motion to Vacate Order of
8 Arrest ("Cohen Dec.") ¶11.

9 The original terms of the Note required that Mr. Cohen would make monthly payments in
10 the amount of $3,000 or fifteen percent of the gross landing receipts of the F/V POINT LOMA's
11 seafood production. Declaration of Joe Cappuccio in Support of Plaintiff's Opposition to Motion
12 to Vacate Order of Arrest ("Cappuccio Dec."), Ex. A. However, the parties modified the Note
13 subsequent to the substantial advance payment of $175,000 by Mr. Cohen. Following the
14 $175,000 payment by Mr. Cohen, Mr. Cohen believed that this payment would cover future
15 monthly payments under the Note based on Plaintiff's representations. Cohen Reply Dec. ¶8. As
16 Mr. Roggio stated, Mr. Cohen was never asked to pay any interest on the Note, nor was he
17 invoiced for any outstanding payments. Cohen Reply Dec. Ex. 2, 199:15-23. In Mr. Roggio's
18 deposition, he explained that the Note was simply a formality:

19     Q. Was Barry Cohen, to your knowledge, assessed interest under the terms of the
20     promissory note he signed in favor of Del Mar Seafoods, Inc?
21     A. The promissory note does state an interest rate.
22     Q. Was he ever asked to pay it?
23     A. No.
24     Q. Was he ever invoiced?
25     A. No.
26     Q. Why?
27     A. We just didn't do that. It was just, basically, just to have something on paper just in

28

4

DAVIS WRIGHT TREMAINE LLP

1 case. You never know. You know, something may happen to poor little Barry, but it's just
2 to formalize it.
3 Q. Okay. And was Barry Cohen ever asked to sign any other promissory note in favor of
4 Del Mar Seafoods, Inc.?
5 A. No. They—the purpose of the promissory note was just to formalize it and that was it.
6 Cohen Reply Dec. Ex. 2, 199-200: 15-23, 1-3.

Consistent with this testimony, Barry Cohen never received any request for additional payments under the Note for nearly two years since he made the $175,000 payment on the Note. Cohen Reply Dec. Ex. 9. Through 2007, Mr. Cohen made additional payments totaling $188,000 on the Note, which Plaintiff does not dispute. *See* Defendants' Answer to Verified Admiralty and Maritime Complaint; Verified Counterclaim ¶39; Cohen Reply Dec. ¶9. He believed the amount outstanding under the Note was only $27,000 and no additional payments were owed having never heard anything to the contrary from Plaintiff. Cohen Reply Dec. ¶9.

B.  The So-Called "Advances"

Plaintiff claims that the Note covers additional advances and debts allegedly owed by Mr. Cohen. It claims that amount for upgrades to the F/V POINT LOMA for the Mexican joint venture was nearly $237,035 although this is expressly contradicted by the terms of the Note which reduced the agreement of the parties as to the amount of the loan to writing. Plaintiff also claims that the Note subsequently included money owed to Plaintiff by Mr. Cohen, his sons, and for Plaintiff's attorney's fees for litigation unrelated to the F/V POINT LOMA. Plaintiff thus claims that the total amount owed under the Note is $295,439. Mr. Cohen and Mrs. Cohen, the original parties to the Note, never agreed either orally or in writing to include anything other than the $215,000 under the Note and the Note was never amended to cover any other "advances." Cohen Reply Dec. ¶¶4-5. The unrelated amounts claimed by Plaintiff do not involve the F/V POINT LOMA Mexico joint venture that was the sole reason the parties entered into the Note and Mortgage in the first place. Other business ventures had nothing to do with the business of the F/V POINT LOMA and would therefore not be included in a Note arising from upgrades

5

made to the F/V POINT LOMA for the Mexico joint venture. Cohen Reply Dec. ¶5. The only amount ever secured by the Mortgage was the $215,000 expressly stated in the Note that relate directly to the F/V POINT LOMA.

### C.  PLFC's Operations

In 2004, Mr. Cohen transferred ownership of the F/V POINT LOMA to PLFC, a sub-chapter S corporation. Cohen Dec. ¶7; Cohen Reply Dec. ¶10. Plaintiff knew of this transfer and raised no objection. As a result of the transfer, the Vessel is still subject to the Mortgage and PLFC is responsible for the continued operation of the F/V POINT LOMA.

PLFC is in good standing with the State of California and is current on its taxes. Cohen Reply Dec. ¶11, Ex. 4. As owner of the F/V POINT LOMA, PLFC operated the Vessel prior to the arrest. At no time was PLFC or the Vessel itself in danger of being unable to operate and at risk of losing value in the Vessel. Up until Plaintiff had the F/V POINT LOMA arrested, PLFC was making approximately $20,000 per month. Cohen Reply Dec. ¶10. Had Plaintiff inquired, PLFC and Mr. Cohen could have shown that there was no danger to the Plaintiff's interest in the Vessel under the Mortgage.

## ARGUMENT

### A.  There is No Breach of the Note and Mortgage.

Defendants have not defaulted on their obligations under the Note and Mortgage. The parties significantly modified the terms of the Note by their oral representations and conduct following the payment of the $175,000. Written agreements may be modified by subsequent oral agreements executed by the parties. Cal. Civ. Code §1698(b). "When one party has, through oral representations and conduct or custom, subsequently behaved in a manner antithetical to one or more terms of an express written contract, he or she has induced the other party to rely on the representations and conduct or custom. In that circumstance, it would be equally inequitable to deny the relying party the benefit for the other party's apparent modification of the written contract." *Wagner v. Glendale Adventist Medical Center*, 216 Cal. App. 3d 1379, 1388 (1989).

Here, the parties do not dispute that Mr. Cohen made a substantial payment of $175,000 on

6

the $215,000 Note. At Plaintiff's request, Mr. Cohen made this payment and he intended this payment to cover his monthly payments well into the future. Plaintiff accepted this payment and for nearly two years following the large advance payment, Mr. Cohen never received any notice or invoice from Plaintiff that he was behind on his monthly payments. Cohen Reply Dec. ¶9. Moreover, subsequent to the lump sum payment, in November 2005, when Plaintiff asked, Mr. Cohen made additional payments in the amount of nearly $8,000. *Id*. To date, Mr. Cohen has paid a total of $188,000 and thus payments are current under the Note through February 2009. Cohen Dec. ¶15; Defendants' Verified Counterclaim ¶40.

Plaintiff now attempts to argue that the Cohens were in breach of the original Note. Nevertheless, Plaintiff took no action prior to the drastic step of seizing the Vessel to demand additional payment under the Note. Based on conversations with Plaintiff, Mr. Cohen understood that the lump sum payment would cover future payments. Cohen Reply Dec. ¶8. Mr. Cohen relied on Plaintiff's oral representations and the lack of additional requests for payments and believed that no payments were currently due under the Note. Cohen Reply Dec. ¶¶8-9. Plaintiff never took any action to suggest otherwise. As a result, the conduct of the parties served to modify the Note and no additional payments were currently due under the new terms of the Note.

Even if no modification was executed by the parties, Plaintiff should be estopped from asserting that Defendants defaulted under the terms of the Note and Mortgage. Cal. Civ. Code §1698(d) ("Nothing in this section [governing modification of contracts] precludes in an appropriate case the application of rules of law concerning estoppel…."). Mr. Cohen believed that he was current under the Note based on representations by Plaintiff and by virtue of its failure to demand regular, monthly payments from him after receiving the $175,000 advance payment for nearly two years following the lump sum payment. Thus, he relied on Plaintiff's representations and subsequent behavior in not making further regular monthly payments after the payment of the lump sum. Plaintiff benefited from the receipt of a $175,000 payment on a $215,000 note and should not be allowed to assert that the Cohens breached the terms of the Note while retaining this benefit.

7
DEF'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ORDER OF ARREST
SFO 370977v1 0084289-000001
Case No. C-07-2952-WHA

1   B.   <u>Plaintiff Lacked Probable Cause for Arresting F/V POINT LOMA</u>

The Plaintiff has not established that it has probable cause for the arrest of the F/V POINT LOMA.  First, as explained above, Plaintiff has not shown that there has in fact been a breach of the Note.  *See e.g, Marubeni America Corp. v. M/V Unity*, 802 F. Supp. 1353, 1356 (D. Md. 1992 (after reviewing charter agreement, court not persuaded that breach had occurred and thus had not been persuaded that arrest should not be vacated); *Board of Commissioners of the Orleans Levee District v. M/V Belle of Orleans*, 439 F. Supp. 2d 1178, 1189 (S.D. Ala 2006), *quoting Bay Casino, LLC v. M/V Royal Empress*, 20 F. Supp. 2d 440, 448 (E.D. N.Y. 1998) (there must be an underlying cause of action supporting a maritime lien in the property arrested).  Since Defendants have not breached the Note, there is no cause of action for which Plaintiff can justify the extreme step of arresting the Vessel.

Second, Plaintiff failed to undertake any reasonable inquiry into whether the fishing operations and the Vessel were at risk.  Under the terms of the Mortgage, Plaintiff had an obligation to determine in good faith if the Vessel was in danger of failed operations prior to having it arrested.  The Mortgage provides that the Mortgagee may take action if it concludes "in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earning…[that] Mortgagee is in danger of losing said debt…."  Cappuccio Dec. Ex. B.  Thus, Plaintiff should have at minimum inquired as to the financial condition of PLFC, the owner of the Vessel.  Had it done so, it would have discovered that there was no risk to its interest in the F/V POINT LOMA secured by the Mortgage.

The Cohens' personal financial situation is irrelevant to Plaintiff's secured interest in the Vessel.  Here, PLFC and not the Cohens own the F/V POINT LOMA and thus PLFC is responsible for its operations and can account for its financial status.  Since the Vessel is subject to the Mortgage, only its financial status is relevant to whether there is risk of a default under the Note and Mortgage.

Plaintiff failed to honor its duty of fair dealing under the Note and Mortgage and make a good faith inquiry into the financial condition of PLFC and the Vessel before having it arrested.

8

DEF'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ORDER OF ARREST
SFO 370977v1 0084289-000001
Case No. C-07-2952-WHA

*Storek & Storek, Inc. v. Citicorp Real Estate*, 100 Cal. App. 4th 44, 55 (2002) (every contract imposes on each party a duty of good faith and fair dealing the performance of the contract). At no point did Plaintiff inquire of Mr. Cohen, with whom it had a long standing business relationship, whether the Vessel was in any danger of losing its value. Plaintiff made no investigation into the status of the Vessel's operations and whether Defendants would be unable to make payments under the Note as a result of the financial condition of the business. Had Plaintiff made a simple, reasonable inquiry, it would have discovered that the Vessel's operations were not at risk and there was no danger that payments when owed could not have been made. Cohen Reply Dec. ¶10.

Plaintiff must have "reasonable grounds" to have a vessel arrested and it fails to meet that burden here. *See e.g., M/V Belle of Orleans*, 439 F. Supp. at 1189, n.5, *quoting Salazar v. Atlantic Sun*, 881 F. 2d 73, 79 (3d Cir. 1989) (post arrest hearing intended to make preliminary determination whether there were "reasonable grounds" for issuing the arrest warrant). Plaintiff never inquired as to the financial condition of the PLFC, the owner of the F/V POINT LOMA secured by the Mortgage. Plaintiff declined to inquire as to the financial condition of the one entity that is relevant to its secured interest under the mortgage, the F/V POINT LOMA. It never asked Mr. Cohen whether PLFC was in any financial trouble. It never sent him any notice that it believed its interest in the F/V POINT LOMA to be in any danger. It failed to undertake a simple, reasonable inquiry of Mr. Cohen into the financial condition of the Vessel. Had it done so, it would have discovered that its interest in the Vessel was not at risk and there was no default under the terms of the Note and Mortgage. Cohen Reply Dec. ¶¶9-10. Thus, Plaintiff had no reasonable grounds to believe that its interest in the Vessel was at risk.

Plaintiff took the rash step of having the Vessel arrested based on irrelevant information and incorrect conclusions about Mr. Cohen's financial concerns. Under the Mortgage, the focus and proper inquiry are whether the Vessel's operations are at risk. Nevertheless, Plaintiff argues that Mr. Cohen's divorce, failure to collect attorney fees for unrelated litigation, and additional losses from other joint ventures is evidence of a risk of default. Plaintiff also asserts that Mr.

DAVIS WRIGHT TREMAINE LLP

Cohen's inability to post a bond to secure the release of the Vessel is evidence of default under the terms of the Note and Mortgage. However, it does not follow that the Vessel was at risk or additional payments could not be made simply because Mr. Cohen could not put up the cash in an amount equivalent to the entire value of the Vessel. Cohen Reply Dec. ¶¶12-13. These concerns are all unrelated to the business operations of the F/V POINT LOMA which are the subject of the Mortgage.

Plaintiff had no reason to not ask Mr. Cohen about the financial condition of the PLFC. Plaintiff itself acknowledges Mr. Cohen's honesty and trustworthiness based on their history as business partners. Moreover, when requested by Plaintiff, Mr. Cohen took out a mortgage on his home and made a substantial advance payment in the amount of $175,000. There was no reason for Plaintiff to think Mr. Cohen was not honoring his obligations under the Note or that the Vessel was at risk of losing its value. Rather than raise the issue with Defendant, Plaintiff relied on irrelevant and rash conclusions about Mr. Cohen's own financial status and erroneously had the Vessel arrested.

## CONCLUSION

Defendants have not breached the Note and no default has occurred with respect to the Mortgage. Thus, the arrest of the Vessel is improper and should be vacated. Defendants therefore respectfully request that the Court grant their Motion to Vacate the Order of Arrest and release the Vessel.

DATED this 1st day of August, 2007.

Respectfully submitted,

  /s/ *James P. Walsh*
James P. Walsh (CSB No. 184620)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery St., Suite 800
San Francisco, CA 94111-3727
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for BARRY COHEN, CHRIS COHEN, F/V POINT LOMA and the F/V POINT LOMA FISHING COMPANY, INC.

10
DEF'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ORDER OF ARREST
SFO 370977v1 0084289-000001
Case No. C-07-2952-WHA