James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile:   (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., <br><br>     Plaintiff, <br><br>     v. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, <br><br>     Defendants. | No. C-07-2952-WHA <br><br> **DECLARATION OF BARRY A. COHEN IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE ORDER OF ARREST** <br><br> **Date: August 16, 2007** <br> **Time: 8:00 a.m.** <br> **Place: Courtroom 9, 19th Floor** |

I, Barry A. Cohen, declare as follows:

1.      I am a resident of the State of California and currently reside in Santa Maria, California. I am a named Defendant in this lawsuit. I make this declaration in support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Vacate Order of Arrest. The facts set forth in this declaration are personally known to me to be true and, if called as a witness, I could and would testify to the following:

2.      Although the Promissory Note (the "Note") I have with Del Mar may be characterized as a "loan," I never directly borrowed these funds from Del Mar. Rather, Del Mar,

1

my wife and I entered into the Note following a decision by Del Mar's president, Joe Cappuccio, not to purchase a one-half interest in the F/V POINT LOMA (the "Vessel") for use in a fishing operations joint venture in Mexico (the "Mexico Joint Venture"). Initially, Joe Cappuccio and I discussed forming the Mexico Joint Venture to use the Vessel to fish off the coast of Mexico and transport the catch by truck to California for processing. Attached as Exhibit 1 is a true and correct copy of an excerpt of the deposition transcript of Joe Cappuccio, taken February 16, 2006, in the case *Cohen et al. v. Port San Luis Harbor District*, Case No. CV 040897 (Superior Court of California, County of San Luis Obispo) addressing this issue. In anticipation of the investment in the Vessel, Del Mar financed some upgrades, maintenance, and new nets for the Vessel. After these upgrades were done, Joe Cappuccio informed me that he changed his mind about investing in the F/V POINT LOMA for the Mexico Joint Venture. At his request, I agreed to convert the funds provided by Del Mar for upgrades to the Vessel into a loan. Del Mar had no accurate accounting for the amount of funds spent for the upgrades, so Del Mar's bookkeeper, corporate officer, and controller, Joe Roggio, and I agreed that amount covered by the Note and subject to the First Preferred Ships Mortgage (the "Mortgage") would be $215,000.

3.    The $215,000 was a low estimate of the amount actually contributed by Del Mar. However, since Del Mar could produce no accurate accounting of the amount spent on the upgrades to the Vessel, I did not want to agree to owe more than Del Mar had actually spent. Thus, Joe Roggio and I agreed on $215,000 which is set forth expressly in the Note. In fact, the purpose of the Note was simply to formalize our agreement. Attached as Exhibit 2 is a true and correct copy of an excerpt of the deposition transcript of Joe Roggio, taken November, 29, 2005, in the case *Cohen et al. v. Port San Luis Harbor District*, Case No. CV 040897 (Superior Court of California, County of San Luis Obispo) addressing this issue.

4.    At all times, the only amount secured by the Mortgage has been $215,000. Although Del Mar now asserts, after negotiation and signing of the Note, that the cost of the upgrades to the Vessel was actually $237,035, it did not raise this at the time we entered into the Note and Mortgage. The Note expressly states that the amount owed is fixed at $215,000. At no

2

DAVIS WRIGHT TREMAINE LLP

time did I agree to amend the Note to cover the additional amount that Del Mar claimed it paid to upgrade the Vessel. In fact, Joe Roggio himself, a certified public accountant and Del Mar's corporate officer and controller, prepared the Note and committed to the $215,000. If Del Mar had reason to believe that the amount to be covered by the Note was greater than $215,000 it should have raised it prior to signing the Note and agreeing that the amount of the Note would be set at $215,000.

5. The Note also does not cover any "advances" or other "debts" that Del Mar alleges that I owe. Contrary to Del Mar's assertions, the Note does not cover a total of $295,439.53 that it alleges includes the amount of money provided to upgrade the Vessel plus other amounts owed from the Avila Fish Processing Joint Venture, amounts I allegedly agreed to pay Del Mar on behalf of my sons, and nearly $21,000 in Del Mar's attorney's fees incurred in representing Del Mar in the litigation against the Port San Luis Harbor District. I never agreed to amend the Note to include any of these amounts. It would make no sense to secure these "advances" or "debts" to the Vessel where they are completely unrelated to the operation of the Vessel.

6. I never stated that the supposed statement of account ("Statement"), attached as Exhibit 2 to Plaintiff's Request for Judicial, provided by Del Mar of my alleged debts was correct. When asked about the Statement during my testimony, I simply described what appeared to be listed on the Statement. The Statement included references to the amounts owed by my sons. When asked about whether the Statement related to the Note, I answered "yes" because the Statement did include a reference to the $215,000 and therefore "related to" the Note. At no time did I say in my testimony, or ever agree with Del Mar, that the Note covered all of the "debts" listed on the Statement. Nor did my wife ever agree to include any of the other "debts" listed on the Statement under the Note.

7. Other than the $215,000, none of the debts listed on the Statement related to the F/V POINT LOMA. My testimony, attached as Exhibit 1 to Plaintiff's Request for Judicial Notice, does not confirm that I agreed that the debts in the Statement were all covered by the Note. I simply identified what each debt listed on the Statement related to. In fact, the only things that

3

DECLARATION OF BARRY A. COHEN IN SUPPORT OF
DEF'S REPLY TO P'S OPP. TO DEF'S MOTION TO VACATE ORDER OF ARREST                SFO 371033v1 0084289-000001
Case No. C-05-3927-CW

the Statement show conclusively was that we made a substantial payment of $175,000 on the Note and that no interest was listed as due and owing.

8. The only modification to the Note related to a change in the timing of the monthly payments. The original terms of the Note required me to make monthly payments in the amount of $3,000 or fifteen percent of the gross landing receipts of the F/V POINT LOMA seafood production. However, the Note was subsequently modified when Joe Cappuccio asked me to make a large advance payment on the loan. Later Joe Roggio told me at another meeting that, if I made the advance payment, he would see to it that the vessel loan with Del Mar would be interest free. Because of this promise and understanding, my wife, Chris Cohen and I took out a home equity loan on our house and paid Del Mar $175,000, with the expectation that no interest would be due on the Note and that the payment comprised advance monthly payments into the future.

9. For nearly two years after we paid the lump sum advance payment, we never received any inquiries or demands for monthly payments from Del Mar. The lack of demand for any monthly payments in addition to representations made by Del Mar, supported our expectation that the lump sum payment made us current under the Note well into the future. In 2007, we made payments on the Note in January ($2,000), February ($3,000), and March ($3,000) after an oral request from Joe Roggio to make some payments on what we owed. Other than these three payments, Del Mar never requested payment under the Note since we paid them $175,000 in advance. I believe that $27,000 remains on the Note since I have paid $188,000 on the Note to date.

10. Del Mar never inquired of me, either orally or in writing, as to the financial status of our fishing vessel business or expressed a perceived risk of loss of value to the Vessel. I have known Joe Cappuccio for a long time, at least ten years, and yet he made no effort to contact me before having the Vessel arrested without any notice. Attached as Exhibit 3 is a true and correct copy of an excerpt of the deposition transcript of Joe Cappuccio, taken February 16, 2006, in the case *Cohen et al. v. Port San Luis Harbor District*, Case No. CV 040897 (Superior Court of California, County of San Luis Obispo) addressing this issue. Had Del Mar contacted me, I would

4

1  have showed them that the Vessel was not at risk and that the Vessel was fully operational and
2  making at least $20,000 per month. Del Mar was aware that we transferred ownership of the
3  Vessel to Subchapter S corporation and never expressed any concern.

4  11. At no point has PLFC been non-operational. I recently applied for and received a
5  Certificate of Revivor for PLFC's corporate status with the state of California after its status had
6  been suspended on a technicality for failure to complete the Statement of Information Form SI 200
7  required by the Secretary of State. PLFC's corporate status has been revived and it is currently in
8  good standing with the state of California. Attached as Exhibit 4 is a true and correct copy of the
9  Certificate of Revivor from the California Franchise Tax Board showing that PLFC is in good
10 standing.

11 12. Instead of undertaking a reasonable inquiry into the financial condition of PLFC
12 and the Vessel, Del Mar based its Complaint for Arrest of the Vessel on irrelevant and incorrect
13 conclusions about my own financial status. It does not follow that the Vessel itself was in danger
14 of losing its value or ability to operate successfully from the fact that I am in the midst of divorce
15 proceedings as well as other litigation. The fact that I consulted a bankruptcy attorney *after* the
16 Vessel was arrested does not support Del Mar's argument that it had reason to believe at the time
17 of the arrest that the Vessel was at risk. Lastly, my inability to post a bond to secure the release of
18 the Vessel for $150,000 on a Note on which we have already paid nearly $188,000, does not
19 support Del Mar's argument that it had reason to believe that the Vessel was at risk at the time of
20 the arrest.

21 13. The Vessel was never at risk of leaving the district. I have been engaged in the
22 fisheries business in California for over 40 years. In addition, the fishing licenses I have would
23 not allow me to fish anywhere other than California. Del Mar's assertions that the Vessel would
24 leave the district, let alone the United States in a matter of hours, is completely unfounded.
25 DATED this 1st day of August, 2007.

/s/ *Barry A. Cohen*
Barry A. Cohen

5

DECLARATION OF BARRY A. COHEN IN SUPPORT OF
DEF'S REPLY TO P'S OPP. TO DEF'S MOTION TO VACATE ORDER OF ARREST                SFO 371033v1 0084289-000001
Case No. C-05-3927-CW