Exhibit 1

00001

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                COUNTY OF SAN LUIS OBISPO

3                    --oOo--

4   BARRY A. COHEN; LEONARD A. COHEN; )

5   OLDE PORT INN, INC. And OLDE PORT )

6   FISHERIES, INC.,               )

7          Plaintiffs,      )

8   vs.                    ) Case No. CV 040897

9   PORT SAN LUIS HARBOR DISTRICT;   )

10  and DOES 1 to 50, inclusive,    )

11         Defendants.      )

12  _____)

13  AND RELATED CROSS-ACTION       )

14

15        DEPOSITION OF JOSEPH CAPPUCCIO

16

17    DATE:     THURSDAY, FEBRUARY 16, 2006

18    TIME:           10:00 A.M.

19    LOCATION:            OFFICES OF:

20      MONTEREY PENINSULA COURT REPORTERS

21       2801 MONTEREY-PENINSULA HIGHWAY

22            MONTEREY, CALIFORNIA

23

24

25    REPORTER: KATHERINE E. LAUSTER, CSR 1894

**CAPPUCCIO, Joe 02-16-06**                    **Page 1**

00067

1    A.  The disposition?

2    Q.  Yeah.

3    A.  How it ended up?

4    Q.  Yeah.

5    A.  We won.  They dropped the case.

6    Q.  That's your understanding?

7    A.  Yeah, uh-huh.  Uh-huh.

8    Q.  Productos Pesceros (phonetic) Punta Loma,

9  Inc., what do you recall about that venture?

10      MR. COON:  Overbroad.  Calls for a narrative.

11      THE WITNESS:  It was our -- it was a drag

12  boat.  It was our trawling venture in Mexico, where we

13  had a permit for trawlers to work in Mexican waters.

14    Q.  And what is your recollection as to when it

15  was that this venture was first --

16    A.  I'm awful at this.

17    Q.  -- conceived?

18    A.  When it was first conceived?

19    Q.  Uh-huh.

20    A.  When did we have that breakfast at Golden

21  West pancakes one morning?

22    Q.  Well, actually, you know, if you can --

23    A.  I'm sorry.

24    Q.  I know that Mr. Cohen's helping you out a

25  little bit here, but --

**CAPPUCCIO, Joe 02-16-06**                              **Page 67**

00068

1   A.  I'm sorry.

2   Q.  I'm just looking for your recollection.

3   A.  I don't remember the exact date, I'm sorry,

4 but we thought, wouldn't it be cool if we could have

5 our trawlers working in Mexican waters where there

6 were no individual fishing quotas, there were no other

7 trawlers, so it would be like uncharted territory, and

8 we could explore and create a new fishery, and we

9 thought that would be kind of fun and unique.

10   Q.  The "we" you're referring to is who?

11   A.  Barry Cohen and myself.

12   Q.  So the idea was arrived at as -- as a result

13 of a collaborative effort, you and Mr. Cohen?

14   A.  Yeah.

15   Q.  Yeah?

16   A.  Just kind of having a conversation one day,

17 wouldn't that be cool, and we made it work, made it

18 happen.

19   Q.  And generally what was the concept?

20   A.  We would get fishing permits for our trawling

21 boats, our trawlers, and have them fish in Mexican

22 waters, and take the fish, put them in trucks, and

23 truck them up to the plants, and process them.

24   Q.  I'm showing you now a document that was

25 marked as Exhibit 257 to Mr. Roggio's deposition.

Exhibit 2

00168

1         SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF SAN LUIS OBISPO

3

4

5  BARRY A. COHEN; LEONARD A. COHEN,

6  OLDE PORT INN, INC. and OLDE PORT

7  FISHERIES, INC.,

8              Plaintiffs,

9      vs.              Case No. CV 040897

10  PORT SAN LUIS HARBOR DISTRICT; and

11  DOES 1 to 50, inclusive,

12              Defendants.

13  _____

14

15            DEPOSITION OF JOSEPH ROGGIO

16            VOLUME 2/PAGE 168 - 364

17        Tuesday, November 29, 2005, 10:10 a.m.

18

19

20

21            LOCATION:
    OFFICES OF MONTEREY PENINSULA COURT REPORTERS
        2801 Monterey-Salinas Highway, Suite E
22            Monterey, California

23

24
    REPORTED BY:
25  LISA A. YORK MEESKE, CSR 10617

00197

1    A.  Just -- just curious.

2    Q.  Why was it you were curious?

3    A.  I mean, I don't know if there was a

4 specific reason.  But sometimes I -- you know, one thing

5 that I always liked the bookkeeper down there to provide

6 were the -- you know, I wasn't involved in the day-to-day

7 operations.  So the only thing that, obviously, made Joe

8 comfortable was being able to provide backups to the

9 balance sheet numbers.

10    Q.  Was Joe Cappuccio getting concerned during

11 the last quarter of 2003 about the amount of money he was

12 losing through the operation in Avila?

13    MR. SPEIR:  Objection; calls for speculation.

14    THE WITNESS:  Yeah.  I don't know that.  These

15 advances have nothing to do with that, though.

16 BY MR. MOROSKI:

17    Q.  But they were reflected in the books of

18 Olde Port Fisheries Division of Del Mar Seafoods, Inc.;

19 correct?

20    A.  Yeah.  That operation is the one who did

21 the advances.

22    Q.  To Barry Cohen, Point Loma?

23    A.  To both.

24    Q.  Why was it that Barry Cohen was asked to

25 sign a promissory note in favor of Del Mar Seafoods, Inc.

00198

1  in October of 2003?

2      A.  Well, just to formalize it.

3      Q.  Why?

4      A.  I don't think any particular reason except

5  for just to formalize it.

6      Q.  Did you receive instructions from Joe

7  Cappuccio to formalize the amount of money that Barry

8  Cohen owed Del Mar Seafoods, Inc.?

9      A.  My guess it's probably something Joe and

10  Barry talked about, but you'd have to ask him to be sure.

11      Q.  I'm just asking -- I'm taking your

12  deposition today.

13      A.  Okay.  Yeah, no, I don't know.

14      Q.  You don't recall --

15      A.  Joe was, obviously, aware of us preparing

16  the promissory note, but I can't recall if it's something

17  he had instructed me to do.  It's something Barry had

18  instructed me to do, but it's something that we did.  And

19  the only thing behind it is just to formalize it.  There's

20  no -- we're not out to get him.  He's not out to get us.

21      Q.  My question is whether you have any

22  recollection of receiving an instruction from Joe

23  Cappuccio some time in or around the last quarter of 2003

24  to figure out how much money Barry Cohen owes Del Mar

25  Seafoods, Inc. and reduce it to a promissory note.

**ROGGIO, Joseph (vol. 2) 11-29-05**          **Page 198**

00199

1    A.  I don't know that.

2    Q.  You don't have that recollection?

3    Again, what I'm looking for is, either --

4    whether you have a recollection or whether you're saying

5    categorically, no, that did not happen?

6    A.  I mean, Joe -- this -- Joe would be well

7    aware of this from the start.  Now, how it started, you'd

8    have to ask him.

9    Q.  What I'm trying to get --

10    A.  I mean, you're asking me if I -- you know,

11   if he instructed me to do it.  I mean, he is aware of it.

12   It's probably something we had talked about.  I mean, I

13   don't know exactly how it came about, but there's no

14   substance behind it except for just to formalize it.

15    Q.  Was Barry Cohen, to your knowledge,

16   assessed interest under the terms of the promissory note

17   he signed in favor of Del Mar Seafoods, Inc.?

18    A.  The promissory note does state an interest

19   rate.

20    Q.  Was he ever asked to pay it?

21    A.  No.

22    Q.  Was he ever invoiced?

23    A.  No.

24    Q.  Why?

25    A.  We just didn't do that.  It was just,

00200

1  basically, just to have something on paper just in case.

2  You never know.  You know, something may happen to poor

3  little Barry, but it's just to formalize it.

4      Q.  Okay.  And was Barry Cohen ever asked to

5  sign any other promissory note in favor of Del Mar

6  Seafoods, Inc.?

7      A.  No.  They -- the purpose of the promissory

8  note was just to formalize it, and that was it.

9      Q.  Can I see the Chris Cohen W-2s.

10      When did Chris Cohen cease being an employee of

11  Del Mar Seafoods, Inc.?

12      A.  Well, when Barry had completed the -- I

13  don't know the exact dates.  But, obviously, when Barry

14  chose it was time to let her go.

15      Q.  When Barry chose to let her go?

16      A.  Correct.  Barry -- you know, who laid off

17  the people when he felt it was appropriate.

18      Q.  Are you talking about the people who were

19  employed by Del Mar in Avila?

20      A.  The people he employed in the Avila Beach

21  operation; correct.

22      Q.  Who were on Del Mar Seafoods Inc.'s

23  payroll?

24      A.  Well, we just prepare the checks for him.

25      Q.  Okay.  They were, technically, Del Mar

Exhibit 3

00001

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                COUNTY OF SAN LUIS OBISPO

3                    --o0o--

4  BARRY A. COHEN; LEONARD A. COHEN; )

5  OLDE PORT INN, INC. And OLDE PORT )

6  FISHERIES, INC.,              )

7          Plaintiffs,      )

8    vs.              ) Case No. CV 040897

9  PORT SAN LUIS HARBOR DISTRICT;   )

10  and DOES 1 to 50, inclusive,    )

11          Defendants.     )

12  _____)

13  AND RELATED CROSS-ACTION        )

14

15          DEPOSITION OF JOSEPH CAPPUCCIO

16

17     DATE:     THURSDAY, FEBRUARY 16, 2006

18     TIME:            10:00 A.M.

19     LOCATION:          OFFICES OF:

20        MONTEREY PENINSULA COURT REPORTERS

21          2801 MONTEREY-PENINSULA HIGHWAY

22              MONTEREY, CALIFORNIA

23

24

25     REPORTER:  KATHERINE E. LAUSTER, CSR 1894

00151

1    How long have you known Barry Cohen?

2    A.  Many years, I couldn't even tell you exactly

3  how long, but it's been quite a while.  At least ten

4  years.

5    Q.  Do you have any opinion as to his integrity,

6  honesty, and truthfulness?

7    A.  He's always proved to me to be a very

8  trustworthy and honest guy.

9    Q.  Have I met you at any time or talked to you

10  before today, sir?

11    A.  No.  Met you this morning.

12    Q.  Earlier you testified a little about your

13  relationship with a Cheryl Pruitt.  Do you recall that

14  testimony?

15    A.  Uh-huh.

16    Q.  Okay.  Do you know whether Cheryl Pruitt had

17  any interest in a lease site on the Hartford pier?

18    A.  Huh-uh, no, I have no idea what her lease

19  situation was.

20    Q.  Do you know how she operated whatever

21  business she operated, through a corporate form, or

22  sole proprietorship, or the details of that?

23    A.  No.

24    Q.  Do you know whether there was any assignment

25  of any lease by Barry Cohen to Cheryl Pruitt?

**CAPPUCCIO, Joe 02-16-06**                    **Page 151**

Exhibit 4



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
PO BOX 942857
SACRAMENTO CA 94257

Notice Date: 07/20/07

## CERTIFICATE OF REVIVOR

F/V POINT LOMA FISHING COMPANY, INC
BARRY A COHEN
874 W GRAND AVE
GROVER BEACH CA 93433-2134
USA

Corporation Name   : F/V POINT LOMA FISHING COMPANY

Corporation Number: 2713874000

Effective Date      : 07/19/2007

This corporation has been relieved of suspension or forfeiture and is now in good standing with the Franchise Tax Board.

Business Entity and Field Collection Bureau

---

### ASSISTANCE

Telephone assistance is available year round from 7 a.m. until 8 p.m. Monday through Friday. From January through June, assistance is also available from 8 a.m. until 5 p.m. on Saturdays. We may modify these hours without notice to meet operational needs.

From within the United States, call ...................................................... (800) 852-5711
From outside the United States, call (not toll-free) ...................................... (916) 845-6500

Website at: www.ftb.ca.gov

**Assistance for persons with disabilities:** We comply with the Americans with Disabilities Act. Persons with hearing or speech impairments please call TTY/TDD (800) 822-6268.

FTB 2557 BC ARCS (REV 12-2002)