IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEL MAR SEAFOODS INC., | No. C 07-02952 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO VACATE ORDER OF ARREST** |
| BARRY COHEN, CHRIS COHEN (aka CHRISTINE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, | |
| Defendants. | |

## INTRODUCTION

In this maritime action for breach of a promissory note, defendants move to vacate an order of arrest pursuant to Rule E(4)(f) of the Supplementary Admiralty Rules. Plaintiff has failed to establish probable cause for the order of arrest. Accordingly, defendants' motion to vacate the order of arrest is **GRANTED**.

## STATEMENT

Plaintiff Del Mar Seafoods is a California corporation that owns fishing vessels and runs fish processing plants. Defendants Barry Cohen and Chris Cohen are individuals, married to one another, who reside in this district. At all relevant times, the Cohens represented that they

1  were the owners of defendant Vessel, the F/V POINT LOMA (Compl. ¶¶ 4–7; Cappuccio Decl.
2  ¶ 4).

3       In 1999, plaintiff and defendant Barry Cohen formed a joint venture for the purpose of
4  buying, processing, and selling fish from a site that Barry Cohen leased in Avila Beach,
5  California. Plaintiff advanced funds to Cohen as part of this venture. In 2003, following
6  plaintiff's decision not to continue with the partnership, plaintiff and defendants entered into a
7  promissory note secured by a ship mortgage. In the note, the parties agreed on a schedule for
8  defendants' repayment of the amount that had been advanced by plaintiff. Specifically,
9  defendants agreed to pay the following:

> [T]he sum of two hundred fifteen thousand ($215,000) dollars at the rate of seven (7) percent per annum as follows:
>
> Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on January '04 and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

15  (Cappuccio Decl. ¶¶ 8–11, Exh. A at 1; Cohen Decl. ¶¶ 4–5).

16       Plaintiff maintains that the total principal amount owed under the note increased to
17  $295,429.53 by November 2004. The principal amount allegedly increased from $215,000 due
18  to additional amounts owed by Cohen's sons, fuel advances, and additional information on the
19  original amount owed pursuant to an audit. Plaintiff contends that Barry Cohen agreed to
20  include these additional amounts with the amount owed under the note and mortgage.
21  Defendants deny such an agreement (Cappuccio Decl. ¶¶ 18–22; Cohen Decl. ¶ 12).

22       Between November 2004 and November 2005, plaintiff alleges that defendants paid a
23  total of $7,474.75 on the note, all of which was applied to the accrued interest rather than to the
24  principal. During this period, defendants point to only one payment of $5000, paid in
25  December 2004 (Cappuccio Decl. ¶¶ 22–23; Cohen Decl. ¶ 11). Defendants then paid $175,000
26  in November 2005. Defendants made additional payments in January, February, and March of
27  2007 for a total of $8000.

2

1    There is significant dispute between the parties as to the effect of the $175,000 payment
2 in November 2005. Plaintiff maintains that this amount was credited first against the accrued
3 interest of $30,359.83 and then $145,940.17 was applied against the principal amount following
4 an inventory credit of $1300. Plaintiff alleges that the principal balance was then $149,489.36.
5 Defendants allege that the $175,000 settled payments that were overdue at that point and
6 constituted a prepayment of monthly payments due under the note. In exchange for the advance
7 payment, defendants contend that plaintiff agreed to make the loan interest-free. Plaintiff
8 disputes agreeing to an interest-free loan (Cappuccio Decl. ¶¶ 26– 28; Cohen Decl. ¶¶ 11–13).

9    The parties also disagree whether the value of the principal ever changed. Following the
10 $175,000 payment, plaintiff maintains that $30,095.01 was added to the principal on the note
11 due to advances to defendants as well as to cover attorney's fees in separate litigation.
12 Defendants maintain that the principal owed under the loan did not increase above the original
13 $215,000.

14    The parties also dispute the effect of the $8000 paid during January, February, and
15 March of 2007. Plaintiff maintains that these payments were applied to interest only. After
16 these payments, plaintiff contends that the total amount owed on the note as of June 14, 2007,
17 was $189,374.54, including $9,790.17 in accrued interest. Plaintiff thus alleges that defendants
18 continued to owe monthly payments and were in default for failure to make those payments.
19 Defendants maintain that because there was no interest on the loan, and the principal amount
20 never increased above $215,000, the amount owed as of June 14 was $27,000, which meant
21 they were current on the note through February 2009 (Cappuccio Decl. ¶¶ 36–38; Cohen Decl.
22 ¶¶ 14–15).

23    Plaintiff believes that defendants are in default. As a result of the alleged default,
24 plaintiff filed an *ex parte* application for arrest of the vessel on June 6, 2007. A warrant of
25 arrest was issued for the vessel on June 7, 2007, and the vessel was arrested by a United States
26 Marshal. This motion to vacate the order of arrest due to lack of subject-matter jurisdiction and
27 lack of probable cause for the order of arrest was filed on July 9, 2007.

3

# ANALYSIS

## 1. LACK OF SUBJECT-MATTER JURISDICTION.

Defendants allege that this Court does not have subject-matter jurisdiction over the case under maritime law. Defendants maintain that because, in their view, there was no breach of the promissory note, plaintiff has no maritime cause of action and thus no basis for the order of arrest. Defendants' contention is without merit. "Article III, § 2, cl.3 of the United States Constitution extends the judicial power of the federal sovereign to 'all cases of admiralty and maritime jurisdiction.'" *World Tanker Carriers Corp. v. M/V Ya Mawlayav*, 99 F.3d 717, 722 (5th Cir. 1997). Under 28 U.S.C. 1333, federal courts have authority over civil admiralty disputes, "regardless of the existence of a federal statute creating the maritime right, diversity of citizenship, or the minimum amount in controversy." *Id.* at 723. At issue here is the ship's mortgage, which is a maritime contract over which the district courts of the United States have original jurisdiction. Accordingly, this Court does have subject-matter jurisdiction.

## 2. PROBABLE CAUSE FOR ARREST.

Defendants contend that the order of arrest was improperly issued pursuant to Rule E(4)(f), which states as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

The purpose of this hearing is not "to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." *Lion de Mer v. M/V Loretta V*, 1998 WL 307077 at *2 (D. Md. Apr. 3, 1998) (Legg, J.). "At this stage in the proceedings, plaintiff merely needs to show 'probable cause' for the issuance of the warrant and writ*." Continental v. Adriatic Tankers Shipping Co.*, 1995 WL 649942 (E.D. La. 1995) (McNamara, J.); *see also Greger Leasing Corp. v. Barge PT. Potrero*, 2006 WL 889537, at *1 (N.D. Cal. Apr. 5, 2006) (Conti, J.). This "probable cause"

4

requirement "translates roughly to requiring that plaintiff show entitlement to a maritime lien." *Newport News Shipbuilding and Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265 (E.D.Va.1994) (Doumar, J.).

A number of factual disputes exist, such as whether the principal amount owed pursuant to the note increased above the original $215,000 and whether plaintiff agreed to an interest-free loan as a result of the $175,000 payment in November 2005. The purpose of a Rule E(4)(f) hearing, however, is not to resolve these factual disputes, but rather to assess whether plaintiff's showing rises to the level of probable cause.

Plaintiff has failed to meet its burden of establishing probable cause because there is not sufficient evidence that defendants were in default at the time the order of arrest was issued. Under the note, defendants were to make monthly payments of the greater of "$3,000.00 or fifteen (15) percent of the gross landing receipts" (Cappuccio Decl. Exh. A). From January 2004 through May 15, 2007, the last payment date prior to the order of arrest, 41 monthly payments should have been made on the note. At a rate of $3000 per month, defendants should have paid a total of $123,000. From the time the promissory note went into effect in January 2004 until the time the boat was seized in June 2007, it is undisputed that defendants paid at least $188,000 to plaintiff. It is true that most of this amount — $175,000 — was paid in a lump sum in November 2005. But paying via lump sum prepayment rather than by monthly payments does not mean defendants are in default.

Plaintiff fails to demonstrate that defendant at any point owed *more* than $3000 per month. Plaintiff makes no assertion that more is owed, for example, due to fifteen percent of gross landing receipts being greater than the $3000 for any month. Even if additional amounts were due because of other advances or interest, the promissory note has no provision indicating that payments would ever exceed the $3000 or fifteen percent. Rather, the note indicates that the payments are to continue according to the payment schedule "until principal and interest are fully paid" (*ibid.*).

5

Plaintiff also fails to show that defendants were behind on the payment schedule at the time of the arrest or that they were obligated to make monthly payments when defendants' payments were actually *ahead* of schedule. Plaintiff asserts that the $175,000 payment was applied first to interest and then $145,940.17 of it was applied to reduce the principal balance on the note (Cappuccio Decl. ¶ 28). Even if only this $145,940.17 had been paid toward the note at the time of the order of arrest, this is more than would have been due at that time under a $3000 per month payment schedule. Plaintiff's mere assertion that monthly payments were still owed at that point is not sufficient to establish probable cause. Defendants allege that they understood the payment to be an advance on future payments. Common sense also suggests that if a debtor pays more than is owed on a payment schedule, monthly payments should not be required until there is no longer an excess.

Plaintiff has not presented any evidence that defendants owed more than $3000 per month pursuant to the note. They have also failed to establish that defendants were behind on that $3000 per month schedule or that they were obligated to make payments ahead of schedule. Accordingly, while factual disputes remain, this order finds that plaintiff has not met its burden of showing probable cause for the order of arrest. This order is without prejudice to plaintiff proving its case at trial or on summary judgment.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to vacate the order of arrest is **GRANTED**. Defendants are **ORDERED** not to sell, pledge, hypothecate, diminish the value of, or take the vessel outside the jurisdiction. Defendants must also keep the vessel fully insured.

6

Defendants' counsel agreed to these conditions at the hearing. Mr. Cohen was also present at the hearing and agreed to these conditions.

**IT IS SO ORDERED.**

Dated: August 16, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7