1  **COX, WOOTTON, GRIFFIN,**
   **HANSEN & POULOS LLP**
2  Gregory W. Poulos  (SBN 131428)
   Max L. Kelley (SBN 205943)
3  190 The Embarcadero
   San Francisco, CA  94105
4  Telephone No.:  415-438-4600
   Facsimile No.:  415-438-4601
5
   **McKASSON KLEIN & HOLMES LLP**
6  Mark D. Holmes (SBN 156660)
   600 Anton Boulevard, Suite 650
7  Costa Mesa, CA 92626
   Telephone: (714) 436-1470
8  Facsimile:  (714) 436-1471
9  Attorneys for Plaintiff
   DEL MAR SEAFOODS, INC.
10
11
                    UNITED STATES DISTRICT COURT
12
                 NORTHERN DISTRICT OF CALIFORNIA
13                   SAN FRANCISCO DIVISION
14

15  DEL MAR SEAFOODS, INC.              )  Case No.: CV 07-02952 WHA
                                        )
16              Plaintiff,              )  **DECLARATION OF MAX L.**
                                        )  **KELLEY IN SUPPORT OF**
17     vs.                              )  **PLAINTIFF'S EMERGENCY**
                                        )  **APPLICATION FOR AN ORDER**
18  BARRY COHEN, CHRIS COHEN (aka       )  **STAYING ORDER VACATING**
    CHRISTENE COHEN),  *in personam* and )  **ARREST**
19  F/V POINT LOMA, Official Number     )
    515298, a 1968 steel-hulled, 126-gross ton, )
20  70.8- foot long fishing vessel, her engines, )
    tackle, furniture, apparel, etc.,  *in rem,* and )
21  Does 1-10,                          )
                                        )
22              Defendants.             )
                                        )
23                                      )
    _____)
24  And Related Counterclaims           )
                                        )
25  _____)

26  COX, WOOTTON,
    GRIFFIN, HANSEN
    & POULOS LLP
27  190 THE EMBARCADERO
    SAN FRANCISCO, CA
    94105
    TEL 415-438-4600
    FAX 415-438-4601
28
    DelMarSeafoods/2504

26  I, Max L. Kelley, hereby declare:

27         1.      I am an associate in the firm of Cox, Wootton, Griffin, Hansen & Poulos,

28  LLP, attorneys of record for Plaintiff Del Mar Seafoods, Inc. ("Del Mar"). I submit this

declaration in support of Plaintiff Del Mar's Emergency Application for an Order Staying this Court's Order Granting Defendants' Motion to Vacate the Arrest of the Vessel F/V POINT LOMA. I have personal knowledge of the facts stated below and if called to testify regarding those facts, I could and would competently testify thereto.

2.    On Monday, August 20, 2007, at approximately 9:15 p.m., right before I e-filed Plaintiff's Emergency Application for a Stay of the Court's Order Vacating the Arrest with this Court, I faxed and e-mailed to defendants' counsel, James P. Walsh, at (415) 276-6599, and budwalsh@dwt.com, a copy of plaintiff's papers (without Exhibit A). Attached to this declaration as **Exhibit A** are true and correct copies of the fax confirmation and my e-mail to Mr. Walsh.

3.    Attached to this declaration as **Exhibit B** is a true and correct copy of the Promissory Note underlying plaintiff's claims.

4.    Attached to this declaration as **Exhibit C** is a true and correct copy of the First Preferred Ship's Mortgage underlying plaintiff's claims.

5.    Attached to this declaration as **Exhibit D** is a true and correct copy of the Declaration of Barry Cohen in Support of Defendants' Motion to Vacate Arrest.

6.    Attached as **Exhibit E** is a true and correct copy of California Civil Code section 1479.

7.    Attached to this declaration as **Exhibit F** is a true and correct copies of an e-mail I received (as a "cc") from Gregory W. Poulos of this law firm, requesting proof of insurance from defendants and of the e-mail I received (as a "cc") from defendants' counsel, Mr. Walsh, in response stating that such proof would be provided "in the near future."

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Signed on August 20, 2007 at San Francisco, California.

Max L. Kelley

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

TRANSMISSION REPORT
* * * * * * * * * * * * * * * * * * * * *

(MON) AUG 20 2007 21:35
COX, WOOTTON, GRIFFIN, HANSEN&POULOS, LLP

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | PAGE(S) | MODE | RESULT |
|---|---|---|---|---|---|---|
| 4861698-841 | 8.20 21:18 | 8.20 21:18 | 17'24" | 50 | G3 | OK |

| DESTINATION | DST. TEL # |
|---|---|
| 2766599-2504 | 2766599-2504 |

## COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP

ATTORNEYS AT LAW
190 THE EMBARCADERO
SAN FRANCISCO, CALIFORNIA 94105

TERENCE S. COX
RICHARD C. WOOTTON*
MITCHELL S. GRIFFIN
RUPERT P. HANSEN
GREGORY W. POULOS
FREDERICK J. CARR
MARC T. CEFALU
MIA C. PERACHIOTTI-
GERMACK
LYNN L. KRIEGER
LAURA A. SCALES
MAX L. KELLEY
* ALSO ADMITTED IN HAWAII

TELEPHONE
(415) 438-4600

FACSIMILE
(415) 438-4601

www.cwghp.com

### FACSIMILE COVER SHEET

Date:              **August 20, 2007**

To:

   **James P. Walsh        Davis Wright Tremaine LLP         415 276-6599**

From:     **Max L. Kelley**

No. of Pages: 50   (including cover sheet)

Re:              Case          *Del Mar Seafoods, Inc. v. Cohen et al.*
                 Our Ref.      **Del Mar Seafoods.Point Loma/2504**

COMMENTS:

Please see the attached documents.

*EXHIBIT A*

**Max L Kelley**

08/20/2007 09:24 PM

To: budwalsh@dwt.com
Subject: Del Mar Seafoods v. Cohen

Mr. Walsh,

Please see the attached documents we are filing with the Court:



Emergency Application for Stay.pdf



MLK Dec. ISO App. for Stay.pdf



[Proposed] Order Granting Stay.pdf

Max L. Kelley
Attorney
Cox, Wootton, Griffin, Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, CA 94105
Voice: (415) 438-4600 x214
Fax: (415) 438-4601
E-Mail: mailto:mkelley@cwghp.com
Website: http://www.cwghp.com

****************************************************

PRIVILEGE AND CONFIDENTIALITY NOTICE
The information in this electronic mail is intended for named
recipients only. It may contain privileged or confidential matter.
If you received this electronic mail in error, please notify the
sender immediately by replying to this electronic mail or by
collect telephone call to (415) 438-4600. Do not disclose
the contents of this electronic mail to anyone.

****************************************************

05/15/2007  11:55    5622162960    From  44361471    Page: 15/15    Date: 6/6/2007 6    18 PM
RICHARD P WAGNER    PAGE  15/28

COPY

**PROMISSORY NOTE**

NATIONAL VESSEL DOCUMENTATION CE
USCG
RECEIVED / FILED

20 APR '04    10 : 08 ;

RECORDED: BOOK _____ PAGE ____
DOCUMENTATION OFFICER

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on _January 04_ and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

1.  This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. _C.L.A. 575293 Reg._, dated _10/31/03_.

2.  Incorporation of Terms of First Preferred Mortgage.

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated _10/31/03_, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same effect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

3.  Acceleration of Maturity.

In the event of default, in the payment of any of the installments or interest due as provided in this

EXHIBIT B

From: 44361471     Page: 2/14     Date: 6/5/2007 6:50:07 PM
05/16/2007  11:55     56221    60                    RICHARD F WAGNER                           PAGE  19/20

note, time being of the essence, holder may, without notice or demand, declare the entire principal sum then unpaid immediately due and payable. Further, if maker should at any time fail in business or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment, attachment, or other legal process is issued against any deposit account or other property of maker, or if any assessment for taxes against maker, other than taxes on real property, is made by the federal or state government, or any department or agency of the federal or state government, or if maker fails to notify holder of any material change in their financial condition, all of the obligations of maker shall, at option of holder, become due and payable immediately without demand or notice.

4.   Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any installment in advance, all without affecting the liability of maker.

5.   Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all costs.

6.   Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to holder until all indebtedness of maker to holder, however arising, shall have been paid; and (c) the right to require holder to proceed against any party to this note, or to pursue any other remedy in holder power. Holder may proceed against maker directly and independently of any other party to this note, and the cessation of the liability of any other party or

any reason other than full payment, or any revision, renewal, extension, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of holder's remedies or rights against any other party, shall not in any way affect the liability of maker.

DATED:  10/31/03

_____
Barry Cohen

_____
Chris Cohen

From: 381471    Page: 4/14    Date: 6/5/2007 6:53 PM
05/15/2007  11:55    6622162960    RICHARD P WAGNER    PAGE 08/20

COPY

## FIRST PREFERRED MORTGAGE

NATIONAL VESSEL DOCUMENTATION CENTER
RECEIVED/FILED

Official No: _575 295_

20 APR '04    10 : 08 AM

On the vessel:
POINT LOMA

RECORDED: BOOK _04.70_ PAGE _487_

DOCUMENTATION OFFICER

Dated: _10/31/03_

Amount of Mortgage $215,000,000

and made by BARRY COHEN And CHRIS COHEN a married couple

(Hereinafter called "Owner")

### WITNESSETH

      Whereas, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term vessel means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by the promissory note dated _10/31/03_ in the principal amount of $215,000.00, payable to the order of Mortgagee as follows:

      Per the Attached Promissory Note which shall become a part of this mortgage.

THE TOTAL AMOUNT OF THIS MORTGAGE IS TWO HUNDRED FIFTEEN THOUSAND

DOLLARS AND PERFORMANCE OF MORTGAGE COVENANTS.

      And has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

      NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof. Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the Vessel named below and further described in her (their) last marine document(s) issued and identified as follows:

EXHIBIT C

Name:   POINT LOMA

Home Port; Avila Beach, California. ------------

Official Number: 575298

Together, with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all singular the above described vessel unto Mortgagee, it's successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject the lien hereof any property other than a vessel as the term issued in Title 46, Chapter 313, and Section 31322 of the United States Code, Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I - PARTICULAR COVENANTS OF OWNER

Owner Covenants as follows:

1.        Owner is and shall continue to be a citizen of the United States entitled to own and operate said vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the

good faith affidavit filed herewith and of said note has been taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of NOT APPLICABLE and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2.    Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee of this mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3.    Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, towers liability risks if the vessel performs towage, employees compensation and other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgage for account of Mortgage and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefore have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach or warranty or otherwise.

4.    Owner shall comply with and not permit the vessel to be operated contrary to any provision of the law, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof,

nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as First Preferred Mortgage on said vessel.

5.   Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6.   Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7.   Owner shall pay when due all taxes, assessments, government charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8.   If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel there from and in any event within fifteen (15) days after such attachment, detention, seizure, levy or taking into custody.

9.   Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owners related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10.   Owner shall not, without prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor,

if a corporation, to merge or consolidate with any other person, firm or corporation, or dissolve.

11.    From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject to vessel more effectual to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article 11.

<u>ARTICLE II - DEFAULT</u>

1.    In any one or more of the following events, herein termed events of default:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 or Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in performance of any other covenant herein; or

(b) Commission of any act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or to appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earning, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collecting thereof until the time above limited for the payment thereof, then, and in every such case, Mortgagee may:

(a)    Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(b)    Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(c)    Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at the Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by the law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2.    In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of the Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.       Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power, or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.       The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:       To the payment of all attorneys fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:  To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment of next of any or all matured installments of principal and then of any or all un-matured installments of principal in the inverse order of this maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

S.        All advances and expenditures which Mortgagee in its discretion may make any repairs, insurance, payment of liens or other claims, defense of suit, or for any other purpose whatsoever related hereto or said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien thereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto:

## ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to obtain actual possession and use of the vessel.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignments hereof, any reference herein of "Mortgagee" shall be deemed to refer to the assignee. If one or more person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES. This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITHNESS WHEREOF, on the day and year above written, Owner has executed this Mortgage, or if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized or as required by State law.

**MIDSTATE** BANK & TRUST

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo

On 10-31-03 before me, Nancy E. Martin, Notary Public, personally appeared Christene Layne Cohen and Barry A. Cohen,

☐ personally known to me - **OR** - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*[notary seal: NANCY E. MARTIN, COMM. #1428488, NOTARY PUBLIC-CALIFORNIA, SAN LUIS OBISPO COUNTY, My Comm. Expires August 8, 2007]*

*Nancy E. Martin*
_____
Signature of Notary

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER (PRINCIPAL)**

☐ Individual
☐ Corporate Officer

Title

☐ Partner(s)     ☐ Limited
                 ☐ General

☐ Attorney-in-Fact
☐ Trustee(s)
☐ Guardian/Conservator
☐ Other:

Absent Signer (Principal) is Representing:

**DESCRIPTION OF ATTACHED DOCUMENT**

First Preferred Mortgage

*Title or Type of Document*

11 plus attached acknowledgment

*Number of Pages*

10-31-03

*Date of Document*

None

*Signer(s) Other Than Name(s) Above*

ADM-005 (07/01)

1  · James P. Walsh, CSB. No. 184620
2  Gwen Fanger, CSB No. 191161
   DAVIS WRIGHT TREMAINE LLP
3  505 Montgomery Street, Suite 800
   San Francisco, California 94111-3611
4  Telephone:  (415) 276-6500
   Facsimile:   (415) 276-6599
5  budwalsh@dwt.com

6  Attorneys for Defendants and Claimant
   BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and
7  Claimant, F/V POINT LOMA Fishing Company, Inc.

8

9              UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  DEL MAR SEAFOODS, INC.,                    )
                                              )
13              Plaintiff,                     )   No. C-07-2952-WHA
                                              )
14      v.                                     )   **DECLARATION OF BARRY A.**
                                              )   **COHEN IN SUPPORT OF**
15  BARRY COHEN, CHRIS COHEN (aka             )   **DEFENDANTS' MOTION TO**
    CHRISTENE COHEN),** *in personam* and,     )   **VACATE ORDER OF ARREST**
16  F/V POINT LOMA, Official Number           )
    515298, a 1968 steel-hulled, 126-gross ton, )  **Date:  August 16, 2007**
17  70.8 foot long fishing vessel, her engines, )  **Time:  8:00 a.m.**
    tackle, furniture apparel, etc.,** *in rem*, and )  **Place:  Courtroom 9, 19th Floor**
18  Does 1-10,                                 )
                                              )
19              Defendants.                    )
    _____  )

20

21      I, Barry A. Cohen, declare as follows:

22      1.      I am a resident of the State of California and currently reside in Santa Maria,

23  California.  I am a named Defendant in this lawsuit.  I make this declaration in support of

24  Defendant's Motion to Vacate Order of Arrest.  The facts set forth in this declaration are

25  personally known to me to be true and, if called as a witness, I could and would testify to the

26  following:

27      2.      For most of my adult life, I have been engaged in various aspects of the fishing

28

DAVIS WRIGHT TREMAINE LLP

*EXHIBIT D*

1   industry in California, including in the processing sector and in owning and operating fishing

2   vessels. I have been engaged in the fisheries business in California for over 40 years.

3      3.      For at least 10 years, I have done business with the Plaintiff in this case, Del Mar

4   Seafoods, Inc. ("Del Mar"). In fact, from 2004 until 2006, I was employed by Del Mar in its

5   processing plant at Watsonville, California and was paid $2,000 a week. The company also

6   asked me to help deal with issues at its processing plant in Astoria, Oregon in 2006, which I did.

7   Upon my return from Oregon, I was let go in October 2006 because I was told by Joe Cappuccio

8   that the company no longer wished to be in the groundfish business. I had been told by Joe

9   Roggio, prior to moving from Cambria, California to Aptos, California in 2004, that I could have

10   a job with Del Mar as long as I wanted if I moved up there to work for them.

11      4.      In February 1999, Del Mar and I formed a joint venture, the purpose of which was

12   to buy, process, and sell fish from a site I leased at the Port San Luis Pier in Avila Beach,

13   California. Del Mar agreed to fund the joint venture and I supplied a processing crew, access to

14   fishing vessel production, and sales relationships. In 2001, or thereabouts, Del Mar and I began

15   planning for a new joint venture in Mexico, using the F/V POINT LOMA. In this context, I was

16   dealing with Joe Cappuccio, the President of Del Mar. Del Mar had advanced funds to me to

17   upgrade the F/V POINT LOMA as part of an anticipated 50/50 partnership in the Vessel. The

18   agreement for this 50/50 partnership was oral. Later that year, because Del Mar did not want to

19   continue the 50/50 partnership, but had provided funds to upgrade the vessel, we agreed to turn

20   Del Mar's contributed funds into a loan.

21      5.      About two years later, in 2003, Del Mar requested that we provide security for this

22   prior loan. We then entered into a Promissory Note with Del Mar to make arrangements to repay

23   the company over an extended period of time. We also entered into a Ship Mortgage with Del

24   Mar as security for repayment of the loan amount of $215,000. In the transaction, we were not

25   represented by counsel. Del Mar's attorneys drafted the Promissory Note and Ship Mortgage.

26   The entire purpose of the financing arrangement was to provide security for repayment of the

27   funds used to upgrade the vessel, and no other.

28

DAVIS WRIGHT TREMAINE LLP

DECLARATION OF BARRY A. COHEN IN SUPPORT OF
DEF'S MOTION TO VACATE ORDER OF ARREST
Case No. C-05-3927-CW

SFO 367679v1 0084289-000001

6.    Chris Cohen and I are still married and I am acting in this case as agent for the interests of the marital community. My wife currently resides in Arizona.

7.    In 2004, we transferred, the ownership of the F/V POINT LOMA to a Subchapter S corporation, the F/V Point Loma Fishing Company, Inc., of which I am the President and manager and in which my wife and I own the stock 50/50. The F/V POINT LOMA remains subject to Del Mar's Ship Mortgage. Attached as Exhibit A to this declaration is a true copy of the vessel's current documentation certificate issued by the U.S. Coast Guard. I am acting in this case as the agent for the owner of the vessel, the F/V Point Loma Fishing Company, Inc.

8.    The F/V POINT LOMA engages in the groundfish fisheries located outside the State of California and in the U.S. Exclusive Economic Zone ("EEZ")(from three to 200 nautical miles) and is licensed to land its catch only in the State of California. The vessel's home port is Port San Luis, California. I have never used the vessel to fish anywhere except in the EEZ off California. At no time have I ever threatened to move the vessel to another state or another part of California, nor could I do so very easily without obtaining new licenses and new markets.

9.    A special limited entry permit is required to engage in the Pacific Groundfish Fisheries off California regulated by the National Oceanic and Atmospheric Administration ("NOAA") in the U.S. EEZ. However, unlike most other such permits, the NOAA permit is issued not to the vessel but to a person qualifying as the owner of the permit. The NOAA permit has been issued to, and is owned by, the F/V Point Loma Fishing Company, Inc. Attached as Exhibit B is a copy of the NOAA permit held by the company. The permit may be used on the F/V POINT LOMA or it may be transferred to another vessel of similar length.

10.    The Promissory Note and Ship Mortgage do not cover the NOAA permit for at least two reasons. First, neither the Promissory Note nor the Ship Mortgage contains language that includes the NOAA permit as security. Second, and more importantly, NOAA does not recognize the existence of liens against such permits. Attached as Exhibit C is a copy of a letter from NOAA confirming this position. Thus, I have never agreed to provide Del Mar a security interest in this NOAA permit.

3

11.     In December of 2004, while I was working for Del Mar, I made a $5,000 payment on the Promissory Note. Attached as Exhibit D is the check representing this payment. At the end of 2005, Joe Cappuccio and Joe Roggio, in a meeting, told me that Del Mar's bank, which provided a credit line to the company, had expressed concern about the size of the loan for the F/V POINT LOMA. Joe Cappuccio asked me to make a large advance payment on the loan. Later, Joe Roggio told me at another meeting that, if I made the advance payment, he would see to it that the vessel loan with Del Mar would be interest free. Because of this promise and understanding, we took out a home equity loan on our house and paid Del Mar $175,000, with the expectation that no interest would be due on the Promissory Note and that the payment comprised advance monthly payments into the future. The payment date was November 10, 2005. Attached as Exhibit E is the check for this advance payment on the Promissory Note. It was my understanding that this payment (and the earlier one) reduced the total amount of the debt from $215,000 to $35,000; that monthly payments were covered well into the future; and that no interest would be due on payment of the remaining amount. When I delivered the check to Joe Cappuccio, I told him I would pay the rest as soon as I can. In response, he said it was now such a small amount that he was not concerned about it any more, which reinforced by understanding that I had made advance payments on the Note.

12.     Within a month or so after this advance payment, I recall receiving a piece of paper which purported to be a Schedule of Payments from Joe Roggio. Attached as Exhibit F is the copy of the document I received from Joe Roggio. The Schedule contains references to various debts not related to the Promissory Note. I looked it over and told him this does not look right to me. He said he was just "cleaning up the books." I didn't want to tell him how to keep his books but I did not tell him that the $175,000 payment could be applied to anything other than the Promissory Note, nor did I agree with any of the amounts listed in his Schedule of Payments. For certain, he did not expressly ask if I was agreeable to applying the $175,000 to these other debts or to treating the other debts as "advances" under the Promissory Note, which would then be secured by the Ship Mortgage.

DECLARATION OF BARRY A. COHEN IN SUPPORT OF
DEF'S MOTION TO VACATE ORDER OF ARREST
Case No. C-05-3927-CW

SFO 367679v1 0084289-000001

13.    After I was let go by the company in October 2006, I asked Joe Roggio to let me know where I stood with the company. He then gave me a newer revised version of the Schedule of Payments, probably in December 2006. That new Schedule showed new debts called "Olde Port Balance, Point Loma Balance, and Fees for Olde Port Case." I, again, never agreed that these amounts would be treated as "advances" under the Promissory Note, to be secured by the Ship Mortgage, nor did I ever agree that they were correct in any way.

14.    I made additional payments on the Promissory Note in January ($2,000), February ($3,000) and March ($3,000), 2007. Attached as Exhibit G are the checks that represent those payments. I did so after being asked by Joe Roggio to make payments on what I owed, but did not specify any amount or for what.

15.    The seizure of the F/V POINT LOMA on June 7, 2007 came as a complete shock to me. I never received any prior notice, orally or written, from Del Mar that I had to make any monthly payments or owed any interest after the advance payment was made in November 2005 or the vessel would be seized. It has always been my understanding that the advance payments made me current on the Note through February 2009.

16.    The seizure of the vessel has completely disrupted its operations. At present, I am losing at least $20,000 a month in gross sales for the vessel. I have been trying to keep the captain, Dave Kobak, and the two crew members available so that I can take the vessel fishing as soon as possible, paying about $2,000 a week to date. The vessel is my only source of income at present, other than my Social Security payments.

17.    I believe that the seizure of the Vessel is unfair and unnecessary and not consistent at all with my agreements with Del Mar.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED this 9th day of July, 2007.

/s/ Barry A. Cohen
Barry A. Cohen

DECLARATION OF BARRY A. COHEN IN SUPPORT OF
DEF'S MOTION TO VACATE ORDER OF ARREST
Case No. C-05-3927-CW

SFO 367679v1 0084289-000001

DAVIS WRIGHT TREMAINE LLP

5

# Exhibit A

ov 25 05 01:...

DHS, USCG, CG-1270 (REV. 06-03)

OMB APPROVED
2115-0110

# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY
## UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

# *CERTIFICATE OF DOCUMENTATION*

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| POINT LOMA | 515298 | 7049354 | 1968 |

| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
|---|---|---|---|
| PORT SAN LUIS, CA | STEEL | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 126 GRT | 86 NRT | 70.8 | 21.5 | 11.7 |

PLACE BUILT
SIRACUSAVILLE, LA

OWNERS
F/V POINT LOMA FISHING COMPANY INC

OPERATIONAL ENDORSEMENTS
FISHERY

MANAGING OWNER
F/V POINT LOMA FISHING COMPANY INC
7121 FERN FLAT ROAD
APTOS, CA 95003

RESTRICTIONS
NONE

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
DECEMBER 15, 2006

THIS CERTIFICATE EXPIRES
JANUARY 31, 2008

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

VDS:
04500924

PREVIOUS EDITION OBSOLETE.  THIS CERTIFICATE MAY NOT BE ALTERED.

# Exhibit B

NOAA #88-156a (Sept. 2003)



**U.S. DEPARTMENT OF COMMERCE**
National Oceanic and Atmospheric Administration
National Marine Fisheries Service
7600 Sand Point Way NE Building #1
Seattle, WA 98116-0070
Telephone: (206) 526-4353



## 2007 FEDERAL PACIFIC COAST GROUNDFISH PERMIT

Issued Pursuant to: 50 CFR Part 320 Subpart G 16 U.S.C. 1801

| Vessel No. | 515298 | Name | POINT LOMA | Actual Length | 70.66 feet |
|---|---|---|---|---|---|

| Permit No. | Valid From/Through | Permit Holder and Address |
|---|---|---|

**GF0023     01-Jan-07     31-Dec-07**

ENDORSEMENTS:
TRAWL GEAR
ENDORSED LENGTH: 70.80 FEET

**PERMIT OWNER**

F/V POINT LOMA FISHING COMPANY, INC

7121 FERN FLAT ROAD
APTOS, CA 95003

**PERMIT HOLDER  (vessel owner)**

**F/V POINT LOMA FISHING COMPANY, INC**
7121 FERN FLAT ROAD
APTOS, CA 95003

### PERMIT CONDITIONS AND INFORMATION

Groundfish permits and associated endorsements confer a privilege to participate in the groundfish fishery off the coasts of Washington, Oregon and California with limited entry gear, in accordance with the limited entry system established under the Groundfish Fishery Management Plan (FMP) as amended. Future amendments to the FMP or implementing regulations may modify privileges associated with this permit, or may abolish the limited entry system.

1. This permit is for the vessel as named and described above and such vessel owner(s) as named. This permit must be kept on such vessel at all times. 2. This permit authorizes fishing operations to be conducted by the vessel registered as noted above.

3. This permit is effective on the date indicated above. It continues in effect until the expiration date printed above. Any change in ownership information (including address, vessel name, or vessel length) must be reported to the Regional Administrator. Application permit must be made if the permit expires or if ownership changes.

4. This permit may be cancelled (including suspension or revocation) if the vessel is not operated in accordance with the laws and for a new regulations pertaining to fisheries for which the vessel is permitted.

5. Loss or theft of this permit should be reported to the Special Agent in Charge, NMFS Law Enforcement (206-526-6133) or the Fisheries Permit Office (206-526-4353).

6. This permit may not be registered for use with a different vessel more than once every calendar year except in the case of death of permit holder, or if the permitted vessel is totally lost.

7. Annual renewal of the permit is required by November 30 of each year.

[Euagkbgkditb]

# Exhibit C

ov 28 05 06:18p
Case 3:07-cv-02952-WHA    Document 59    Filed 08/20/2007    Page 28 of 43
Case 3:07-cv-02952-WHA    Document 32-2    Filed 07/09/2007    Page 6 of 16

UNITED STATES DEPARTMENT OF COMMERCE
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE
Sustainable Fisheries Division F/NWR2
7600 Sand Point Way N.E., Bldg. 1
Seattle, WA 98115-0070

July 3, 2007

Mr. Barry Cohen
P.O. Box 40
Avila Beach, CA  93424

Dear Mr. Cohen

As we discussed today, the National Marine Fisheries Service (NMFS), Northwest
Region does not accept requests to place liens on Pacific Coast Groundfish Limited Entry
Permits ("A" endorsed). As I noted, the Sustainable Fisheries Act (Public Law 104-297)
contained a provision that directed NMFS to implement a central lien registry system for
all NMFS fishing permits. However, NMFS has not implemented a central lien registry
system. The Northwest Region policy has been not to implement a regional lien registry
system and feels it best that such a system should be national in scope.

We have advised other permit owners that a financial entity may become an owner or co-
owner of a trawl permit to insure their interests.

If you have any further questions regarding this matter, please call me at 206-526-4353.

Sincerely,

Kevin Ford
Fisheries Permit Office



# Exhibit D

Nov 16 05 04:58p Case 3:07-cv-02952-WHA Document 59 Filed 08/20/2007 Page 30 of 43
JUN-27-2007 11:23 From: I Martin-Luh Case 3:07-cv-02952-WHA Document 32-2 Filed 07/09/2007 Page 8 of 8 Page:2/2
805 541 5758; Jun-27-07 11:23AM; Page 2/2

Bill of Arroyo NATIONAL BANK;

Account: 102500290
Check: 9146
Amount: 5000.00
Date Cleared: 12/31/04

F/V POINT LOMA
UC M0249595
PH 805-474-8719
899 N 2ND STREET
GROVER BEACH, CA 03433

90-4252/1222
102500290

9146

DATE 12/23/04

PAY TO THE
ORDER OF  Del Mar Seafoods        $ 5,000 00/100

Five Thousand +                              00/100 DOLLARS

1199 Grand Avenue
Arroyo Grande, CA 93430

MEMO  On Account

⑆1222⑆252⑈9146 ⑈02 500 20⑈  ⑈0000500000⑈

PAY TO THE ORDER OF
WELLS FARGO BANK N.A.
FOR DEPOSIT ONLY
DEL MAR SEAFOODS, INC.
4427567053

UFB NA FREM 12302004
3877 03710117700 4
7122 1-0527-86
1411 14 ESU 47
10740074490C

# Exhibit E

Web Client-Redwood Coast National Bank

| | |
|---|---|
| **Find** | |
| **Clear** | |
| **Print** | |
| **Log Off** | |

| | | |
|---|---|---|
| **Account Number** | 102000579 | **Tracer Number** R:1 B:7 S:15 |
| **Amount** | 175,000.00 | |
| **Posting Date** | 11/14/2005 | |
| **Check Number** | 7689 | |
| **TranCode** | 7689 | |
| **Routing Number** | | |

View Query Results  View Front  View Back  View Front AND Back



BARRY A. COHEN  LIC.  M0249695  90-4252/1222    7689
CHRIS L. COHEN  LIC.  B6943892  102000579
PH.  831-661-0867
7121 FERN FLAT RD.    DATE 11/9/05
APTOS, CA  95003

PAY TO THE
ORDER OF  Del Mar Seafoods    $ 175,000.00/100

One Hundred & Seventy-Five Thousand & 00/100 DOLLARS

1199 Grand Avenue
Arroyo Grande, CA 93420
805-473-6540

REDWOOD COAST NATIONAL BANK

MEMO    Barry A Cohen

⑈122242526⑈ 7689 ⑈02 000579⑈    ⑈0017500000⑈

ENDORSE HERE

CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
ABSENCE OF ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A. AU 00592

Exhibit F

11-15-2005   00:55AM   FROM-DEL MAR SEAFOODS INC Oxo

Del Mar Seafoods, Inc.
Schedule of Payments

| | Michael Coffey | Chris Keeling | Inventory | Front Load | Ferry | Total |
|---|---|---|---|---|---|---|
| Beginning Balance | 15,800.40 | 16,082.40 | 10,501.21 | 15,021.21 | 237,785.49 | 226,420.52 |
| | | | | | 61,000.00 | (61,000.00) |
| 12/22/2003 Daily Fexus | | | | | | (1,434.75) |
| 09/12/2005 Amends Payment | | | 61,434.75 | | | (61,000.00) |
| 09/12/2005 Clms Pact FYX7 | | | 1,000.00 | | | (1,000.00) |
| 11/10/2005 Inv. Adj | | | 1,000.00 | | | (1,000.00) |
| 11/10/2005 Payment from Ferry | (15,800.40) | (16,082.70) | 51,807.40 | (16,021.21) | (157,785.70) | (176,004.00) |
| Ending Balance | | | | | 171,081.70 | 171,081.70 |

# Exhibit G

Web Client-Netimage Coast National Bank

| Find | | | |
|------|---|---|---|
| Clear | **Account Number** | 102509277 | **Tracer Number** R:1 B:6 S:1370 |
| Print | **Amount** | 3,000.00 | |
| Log Off | **Posting Date** | 02/23/2007 | |
| | **Check Number** | 4020 | |
| | **TranCode** | 4020 | |
| | **Routing Number** | | |

○ View Query Results  ○ View Front  ○ View Back  ● View Front AND Back



F/V POINT LOMA
PO BOX 40
AVILA BEACH CA 93424

4020
90-4252/1222

DATE 2/15/07

PAY TO THE ORDER OF   Del Mar Seafoods           $ 3,000 00/100

Three Thousand 00/100 DOLLARS

1199 Grand Avenue
Arroyo Grande, CA 93420
888-746-2530

MEMO  On Account

Benny A. Cohen

⑈122242526⑈4020  102  50927⑈⑈  ⑈0000300000⑈

FEDERAL RESERVE BOARD FORM

WFB NA FREN 02212007
3825   03610558039 4
>1221-8527-8<
664:    14 ESU 53

ENDORSE HERE

Received  06-27-07  10:31am    From-        To-DWT SF        Page  004

Web Client-Northwest Coast National Bank

| | | | |
|---|---|---|---|
| Find | **Account Number** | 102509277 | **Tracer Number** R:1 B:4 S:330 |
| Clear | **Amount** | 2,000.00 | |
| Print | **Posting Date** | 02/12/2007 | |
| Log Off | **Check Number** | 4008 | |
| | **TranCode** | 4008 | |
| | **Routing Number** | | |

○ View Query Results  ○ View Front  ○ View Back  ◉ View Front AND Back

**F/V POINT LOMA**
PO BOX 40
AVILA BEACH CA 93424

4008

90-4252/1222

DATE 1/30/07

PAY TO THE ORDER OF _Del Mar Seafoods_    $ 2,000 00/100

_Two Thousand_ 00/100 DOLLARS

1199 Grand Avenue
Arroyo Grande, CA 93420
888-746-2530

NATIONAL BANK

MEMO _On Account_    _Barry A. Cohen_

⑆122425264008 102 509277⑈ ⑆0000200000⑈

ENDORSE HERE

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
FOR DEPOSIT ONLY
DEL MAR SEAFOODS, INC.
4427067053

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

WFB MA FREM 02092007
3720  04010287695    4
>1221-0527-8<
3412:    14 ESU 52

Received    06-27-07    10:31am    From-    To-DWT SF    Page 002

Nov 16 05 01:48p

Case 3:07-cv-02952-WHA     Document 59     Filed 08/20/2007     Page 38 of 43
Item Viewer Results     Case 3:07-cv-02952-WHA     Document 32-2     Filed 07/09/2007     Page 16 of 16     Page 1 of 1

Web Client-NetImage Coast National Bank

| | |
|---|---|
| Find | |
| Clear | |
| Print | |
| Log Off | |

| | | | |
|---|---|---|---|
| **Account Number** | 102509277 | **Tracer Number** | R:1 B:5 S:1290 |
| **Amount** | 3,000.00 | | |
| **Posting Date** | 04/27/2007 | | |
| **Check Number** | 4063 | | |
| **TranCode** | 4063 | | |
| **Routing Number** | | | |

○ View Query Results   ○ View Front   ○ View Back   ◉ View Front AND Back

F/V POINT LOMA                                    **4063**
PO BOX 40
AVILA BEACH CA 93424                              90-4252/1222

                                    DATE  4/23/07

PAY TO THE
ORDER OF   Del Mar Seafoods                    $ 3000 00

  Three Thousand                          00/100 DOLLARS

        1199 Grand Avenue
        Arroyo Grande, CA 93420
NATIONAL BANK   888-746-2530

MEMO  Gift on Account              Barry A. Cohen

⑈122242526⑈4063 102 509279⑈     ⑈0000300000⑈

ENDORSE HERE
X
CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE
LACK OF ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A.
AU 00592
AU 00592

IONS

Section
· · · · · · · · · · 1473
· · · · · · · · 1485
· · · · · · · · 1511
· · · · · · · · 1521
· · · · · · · · 1530
· · · · · · · · 1541

NCE

ligors.
exception.
ditors.

o or more obli-
ation.

Full performance
perform it, or by
nt, if accepted by

Discharge by Per-

oligors

RS. Performance
are jointly liable
(Enacted 1872.)

exception

An obligation in
rmance rendered
ade by owners in
d by the Title on

---

benefit of such performance is voluntarily retained by the creditor, but not otherwise. If such partial performance is of such a nature that the creditor cannot avoid retaining it without injuring his own property, his retention thereof is not presumed to be voluntary. (Enacted 1872.)

### Research References

California Jury Instructions-Civil, 8th Edition 10.83, Discharge by Performance.

### § 1478. Payment defined

PAYMENT, WHAT. Performance of an obligation for the delivery of money only, is called payment. (Enacted 1872.)

### § 1479. Act of performance applicable to two or more obligations; application to specific obligation

Where a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

One—If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied.

Two—If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; except that if similar obligations were due to him both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of all such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of [the] debtor.

Three—If neither party makes such application within the time prescribed herein, the performance must be applied to the extinction of obligations in the following order; and, if there be more than one obligation of a particular class, to the extinction of all in that class, ratably:

1. Of interest due at the time of the performance.

2. Of principal due at that time.

3. Of the obligation earliest in date of maturity.

4. Of an obligation not secured by a lien or collateral undertaking.

5. Of an obligation secured by a lien or collateral undertaking. (Enacted 1872. Amended by Code 1873–74, c. 612, p. 239, § 182.)

---

1492. Offer
1493. Good
1494. Cond
1495. Abili
1496. Prod
1497. Sepa
1498. Offe
1499. Rece
1500. Offe
1501. Tim
1502. Titl
1503. Dep
1504. Effe
1505. Refu

§ 1485. Ex

OBLIGATIC
obligation is
conformity
extinguish th

California Ju
Rutter, Cal. J
Insurers

§ 1486. P

OFFER ol
ance is of n

§ 1487. F

BY WHOM
by the del
assent. (E

§ 1488. I

An offe
any one of
by one or
the obliga
the place
creditor 1
Am.1873–

§ 1489.

WHERE
provision
at the opt

1. At

2. Wl
can be fo

---

EXHIBIT E

**Gregory W Poulos**              To: "Fanger, Gwen" <GwenFanger@dwt.com>

08/20/2007 11:38 AM         Subject: RE: Release of the Point Loma

Dear Ms. Fanger:

    I have your below message, and I have also seen another email that you sent to my associate Max Kelley this morning regarding having the vessel's Captain present for a survey today. Please continue to coordinate the scheduling of the survey with Mr. Kelley.

    As regards release of the vessel, we believe that the Court's order is clearly in error, and we intend to seek all available remedies including a motion to stay the release of the vessel pending re-hearing and / or to file an appeal with the Ninth Circuit Court of Appeals. As you know, filing a notice of appeal would result in an automatic stay of the order. In order to avoid this, and the incurring of additional costs for both parties, we are willing to discuss with you the posting of adequate security for the release of the vessel. During the hearing Mr. Walsh mentioned a letter of undertaking which we can most likely accept as security provided, of course, that it is issued by the vessel's insurer or P&I carrier or other adequate security. The amount will of course need to be agreed and is typically about 1.5 times the amount of the claim.

    We also note that the Court's order specifically requires your client to maintain insurance on the vessel, as does the mortgage. We have asked for proof of insurance but as of this morning it has not been forthcoming. Can you please fax or email to me immediately the proof of insurance which, again per the mortgage, must name our client as the loss payee. Since under the Mortgage the insurance is "subject to Mortgagee's approval" we need to immediately see the insurance. We also require that you provide "evidence...that all premiums and other charges therefore have been fully paid."

    We look forward to you response by return.

    Thank you.

Gregory W. Poulos
Partner
Cox, Wootton, Griffin, Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, CA 94105
Voice: (415) 438-4600 x201
Fax: (415) 438-4601
E-mail: mailto:gpoulos@cwghp.com
Website: http://www.cwghp.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
PRIVILEGE AND CONFIDENTIALITY NOTICE
The information in this electronic mail is intended for named recipients only. It may contain privileged or confidential matter. If you received this electronic mail in error, please notify the sender immediately by replying to this electronic mail or by collect telephone call to (415) 438-4600 x201. Do not disclose the contents of this electronic mail to anyone.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

"Fanger, Gwen" <GwenFanger@dwt.com>

**"Fanger, Gwen"**              To: <mkelley@cwghp.com>, "Walsh, James" <budwalsh@dwt.com>





"Walsh, James"          To: <gpoulos@cwghp.com>, "Fanger, Gwen" <GwenFanger@dwt.com>
<budwalsh@dwt.com>    Subject: RE: Release of the Point Loma

08/20/2007 12:01 PM

Mr. Poulos:

Once again, you are overreaching in this case.  First, our client will
send a fax copy of the insurance policy in the near future.  Second, the
court order is not in error.  Third, we will not provide additional
security, and the court did not order any after we.discussed the issue.
Fourth, an appeal is a waste of time, as you well know.  Finally, you
and your client, or your surveyor, may not visit our client's vessel
without permission after it is released to our client by the U.S.
Marshall.

Your failure to disclose material facts to the judge, which he noted on
the record, is grounds for wrongful arrest.  You may want to advise your
client to cut their losses.

James Walsh | Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800 | San Francisco, CA 94111
Tel: (415) 276-6556 | Fax: (415) 276-6599
Email: budwalsh@dwt.com | Website: www.dwt.com
Bio: www.dwt.com/lawdir/attorneys/WalshJames.cfm

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco
| Seattle | Shanghai | Washington, D.C.



-----Original Message-----
From: gpoulos@cwghp.com [mailto:gpoulos@cwghp.com]
Sent: Monday, August 20, 2007 11:39 AM
To: Fanger, Gwen
Cc: Walsh, James; Mark Holmes; mkelley@cwghp.com; amuzingo@cwghp.com
Subject: RE: Release of the Point Loma


Dear Ms. Fanger:

      I have your below message, and I have also seen another email that
you sent to my associate Max Kelley this morning regarding having the
vessel's Captain present for a survey today.  Please continue to
coordinate
the scheduling of the survey with Mr. Kelley.

      As regards release of the vessel, we believe that the Court's
order
is clearly in error, and we intend to seek all available remedies
including
a motion to stay the release of the vessel pending re-hearing and / or
to
file an appeal with the Ninth Circuit Court of Appeals.  As you know,
filing a notice of appeal would result in an automatic stay of the
order.
In order to avoid this, and the incurring of additional costs for both
parties, we are willing to discuss with you the posting of adequate
security for the release of the vessel.  During the hearing Mr. Walsh

mentioned a letter of undertaking which we can most likely accept as security provided, of course, that it is issued by the vessel's insurer or
P&I carrier or other adequate surety.  The amount will of course need to be
agreed and is typically about 1.5 times the amount of the claim.

    We also note that the Court's order specifically requires your client
to maintain insurance on the vessel, as does the mortgage.  We have asked
for proof of insurance but as of this morning it has not been forthcoming.
Can you please fax or email to me immediately the proof of insurance which,
again per the mortgage, must name our client as the loss payee.  Since
under the Mortgage the insurance is "subject to Mortgagee's approval" we
need to immediately see the insurance.  We also require that you provide
"evidence...that all premiums and other charges therefore have been fully
paid."

    We look forward to you response by return.

    Thank you.

Gregory W. Poulos
Partner
Cox, Wootton, Griffin, Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, CA 94105
Voice: (415) 438-4600 x201
Fax: (415) 438-4601
E-mail: mailto:gpoulos@cwghp.com
Website: http://www.cwghp.com

*******************************************************
PRIVILEGE AND CONFIDENTIALITY NOTICE
The information in this electronic mail is intended for named
recipients only. It may contain privileged or confidential matter.
If you received this electronic mail in error, please notify the
sender immediately by replying to this electronic mail or by
collect telephone call to (415) 438-4600 x201. Do not disclose
the contents of this electronic mail to anyone.

*******************************************************

```
|----------+--------------------------->
|          |        "Fanger, Gwen"    |
|          |        <GwenFanger@dwt.c|
|          |        om>               |
|          |                          |
|          |        08/20/2007 09:38 |
|          |        AM                |
|          |                          |
|----------+--------------------------->

>------------------------------------------------------------------
```

```
----------------------------------------------------|
   |
 |
 |       To:          <mkelley@cwghp.com>, "Walsh, James"
<budwalsh@dwt.com>
 |
 |       cc:          "Mark Holmes" <MHolmes@mckassonklein.com>,
<gpoulos@cwghp.com>                                                |
 |       Subject:     RE: Release of the Point Loma
 |


>-------------------------------------------------------------------
----------------------------------------------------|
```

Mr. Kelly,

Could you please let us know when your surveyor plans to be at SugarDock
to inspect the vessel today.  We would like to arrange to have someone
be there as well.

Thank you.
Gwen

-----Original Message-----
From: mkelley@cwghp.com [mailto:mkelley@cwghp.com]
Sent: Friday, August 17, 2007 7:10 PM
To: Fanger, Gwen; Walsh, James
Cc: Mark Holmes; gpoulos@cwghp.com
Subject: Release of the Point Loma

Please see the attached correspondence.

(See attached file: Walsh re release of vessel 081707.doc)

Max L. Kelley
Attorney
Cox, Wootton, Griffin, Hansen & Poulos, LLP 190 The Embarcadero San
Francisco, CA 94105
Voice: (415) 438-4600 x214
Fax: (415) 438-4601
E-Mail: mailto:mkelley@cwghp.com
Website: http://www.cwghp.com

***************************************************
PRIVILEGE AND CONFIDENTIALITY NOTICE
The information in this electronic mail is intended for named recipients
only. It may contain privileged or confidential matter.
If you received this electronic mail in error, please notify the sender
immediately by replying to this electronic mail or by collect telephone
call to (415) 438-4600. Do not disclose the contents of this electronic
mail to anyone.

***************************************************