**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
Gregory W. Poulos  (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA  94105
Telephone No.:  415-438-4600
Facsimile No.:  415-438-4601

**McKASSON KLEIN & HOLMES LLP**
Mark D. Holmes (SBN 156660)
600 Anton Boulevard, Suite 650
Costa Mesa, CA 92626
Telephone: (714) 436-1470
Facsimile:  (714) 436-1471

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. | Case No.: CV 07-02952 WHA |
| Plaintiff, | **DECLARATION OF MAX L. KELLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERTION OF ORDER VACATING ARREST** |
| vs. | |
| BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, | |
| Defendants. | |
| And Related Counterclaims | |

I, Max L. Kelley, hereby declare:

1.    I am an associate in the firm of Cox, Wootton, Griffin, Hansen & Poulos, LLP, attorneys of record for Plaintiff Del Mar Seafoods, Inc. ("Del Mar"). I submit this

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-1-

Case No.: CV 07-02952 WHA

DECLARATION OF MAX L. KELLEY IN SUPPORT OF MOTION FOR LEAVE TO MOVE FOR RECONSIDERATON

1    declaration in support of Plaintiff Del Mar's Motion for Leave to File Motion for

2    Reconsideration of the Court's Order dated August 17, 2007 vacating the arrest of the Vessel

3    F/V POINT LOMA. I have personal knowledge of the facts stated below and if called to

4    testify regarding those facts, I could and would competently testify thereto.

5          2.        Attached to this declaration as **Exhibit A** is a true and correct copy of the

6    Promissory Note underlying plaintiff's claims.

7          3.        Attached to this declaration as **Exhibit B** is a true and correct copy of the

8    Declaration of Barry Cohen in Support of Defendants' Motion to Vacate Arrest without the

9    exhibits, which are on file with the Court.

10         4.        At 11:13 a.m. today, August 21, 2007, I received an e-mail with a link to

11   plaintiff's insurance policy covering the Vessel that was filed with the Court by the

12   defendant. Attached to this declaration as **Exhibit C** is a true and correct copy of that

13   insurance policy marked as Exhibit A to the Declaration of James P. Walsh in Support of

14   Notice of Insurance Coverage.

15         5.        Attached to this declaration as **Exhibit D** is a true and correct copy of the First

16   Preferred Ship's Mortgage underlying plaintiff's claims.

17

18         I declare under penalty of perjury under the laws of the United States of America that

19   the forgoing is true and correct. Signed on August 21, 2007 at San Francisco, California.

20

21                                            _Max L. Kelley_

22                                            Max L. Kelley

23

24

25

26

27

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

# EXHIBIT A



NATIONAL VESSEL DOCUMENTATION CE
USCG
RECEIVED / FILED

**PROMISSORY NOTE**

20 APR '04        10 : 08

RECORDED: BOOK _____ PAGE _____
DOCUMENTATION OFFICER

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on _JANUARY '04_and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

1. This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. _____; dated _10/31/03_.

2. _Incorporation of Terms of First Preferred Mortgage._

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated _10/31/03_, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same effect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

3. _Acceleration of Maturity._

In the event of default, in the payment of any of the installments or interest due as provided in this

EXHIBIT A

note, time being of the essence, holder may, without notice or demand, declare the entire principal sum then unpaid immediately due and payable. Further, if maker should at any time fail in business or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment, attachment, or other legal process is issued against any deposit account or other property of maker, or if any assessment for taxes against maker, other than taxes on real property, is made by the federal or state government, or any department or agency of the federal or state government, or if maker fails to notify holder of any material change in their financial condition, all of the obligations of maker shall, at option of holder, become due and payable immediately without demand or notice.

### 4.   Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any installment in advance, all without affecting the liability of maker.

### 5.   Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all costs.

### 6.   Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to holder until all indebtedness of maker to holder, however arising, shall have been paid; and (c) the right to require holder to proceed against any party to this note, or to pursue any other remedy in holder power. Holder may proceed against maker directly and independently of any other party to this note, and the cessation of the liability of any other party or

any reason other than full payment, or any revision, renewal, extension, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of holder's remedies or rights against any other party, shall not in any way affect the liability of maker.

DATED: _____

_____
Barry Cohen

_____
Chris Cohen

# EXHIBIT B

1  James P. Walsh, CSB. No. 184620
2  Gwen Fanger, CSB No. 191161
   DAVIS WRIGHT TREMAINE LLP
3  505 Montgomery Street, Suite 800
   San Francisco, California 94111-3611
4  Telephone: (415) 276-6500
   Facsimile:  (415) 276-6599
5  budwalsh@dwt.com

6  Attorneys for Defendants and Claimant
   BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and
7  Claimant, F/V POINT LOMA Fishing Company, Inc.

8

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  DEL MAR SEAFOODS, INC.,                    )
                                               )
13                    Plaintiff,               )   No. C-07-2952-WHA
                                               )
14        v.                                   )   DECLARATION OF BARRY A.
                                               )   COHEN IN SUPPORT OF
15  BARRY COHEN, CHRIS COHEN (aka              )   DEFENDANTS' MOTION TO
    CHRISTENE COHEN), in personam and,         )   VACATE ORDER OF ARREST
16  F/V POINT LOMA, Official Number            )
    515298, a 1968 steel-hulled, 126-gross ton,)   Date:  August 16, 2007
17  70.8 foot long fishing vessel, her engines,)   Time:  8:00 a.m.
    tackle, furniture apparel, etc., in rem, and)  Place: Courtroom 9, 19th Floor
18  Does 1-10,                                 )
                                               )
19                    Defendants.              )
                                               )

20

21      I, Barry A. Cohen, declare as follows:

22      1.     I am a resident of the State of California and currently reside in Santa Maria,

23  California. I am a named Defendant in this lawsuit. I make this declaration in support of

24  Defendant's Motion to Vacate Order of Arrest. The facts set forth in this declaration are

25  personally known to me to be true and, if called as a witness, I could and would testify to the

26  following:

27      2.     For most of my adult life, I have been engaged in various aspects of the fishing

28

1

EXHIBIT B

DAVIS WRIGHT TREMAINE LLP

1  industry in California, including in the processing sector and in owning and operating fishing

2  vessels. I have been engaged in the fisheries business in California for over 40 years.

3      3.    For at least 10 years, I have done business with the Plaintiff in this case, Del Mar

4  Seafoods, Inc. ("Del Mar"). In fact, from 2004 until 2006, I was employed by Del Mar in its

5  processing plant at Watsonville, California and was paid $2,000 a week. The company also

6  asked me to help deal with issues at its processing plant in Astoria, Oregon in 2006, which I did.

7  Upon my return from Oregon, I was let go in October 2006 because I was told by Joe Cappuccio

8  that the company no longer wished to be in the groundfish business. I had been told by Joe

9  Roggio, prior to moving from Cambria, California to Aptos, California in 2004, that I could have

10  a job with Del Mar as long as I wanted if I moved up there to work for them.

11      4.    In February 1999, Del Mar and I formed a joint venture, the purpose of which was

12  to buy, process, and sell fish from a site I leased at the Port San Luis Pier in Avila Beach,

13  California. Del Mar agreed to fund the joint venture and I supplied a processing crew, access to

14  fishing vessel production, and sales relationships. In 2001, or thereabouts, Del Mar and I began

15  planning for a new joint venture in Mexico, using the F/V POINT LOMA. In this context, I was

16  dealing with Joe Cappuccio, the President of Del Mar. Del Mar had advanced funds to me to

17  upgrade the F/V POINT LOMA as part of an anticipated 50/50 partnership in the Vessel. The

18  agreement for this 50/50 partnership was oral. Later that year, because Del Mar did not want to

19  continue the 50/50 partnership, but had provided funds to upgrade the vessel, we agreed to turn

20  Del Mar's contributed funds into a loan.

21      5.    About two years later, in 2003, Del Mar requested that we provide security for this

22  prior loan. We then entered into a Promissory Note with Del Mar to make arrangements to repay

23  the company over an extended period of time. We also entered into a Ship Mortgage with Del

24  Mar as security for repayment of the loan amount of $215,000. In the transaction, we were not

25  represented by counsel. Del Mar's attorneys drafted the Promissory Note and Ship Mortgage.

26  The entire purpose of the financing arrangement was to provide security for repayment of the

27  funds used to upgrade the vessel, and no other.

28

DAVIS WRIGHT TREMAINE LLP

2

1    6.     Chris Cohen and I are still married and I am acting in this case as agent for the

2    interests of the marital community. My wife currently resides in Arizona.

3    7.     In 2004, we transferred, the ownership of the F/V POINT LOMA to a Subchapter S

4    corporation, the F/V Point Loma Fishing Company, Inc., of which I am the President and

5    manager and in which my wife and I own the stock 50/50. The F/V POINT LOMA remains

6    subject to Del Mar's Ship Mortgage. Attached as Exhibit A to this declaration is a true copy of

7    the vessel's current documentation certificate issued by the U.S. Coast Guard. I am acting in this

8    case as the agent for the owner of the vessel, the F/V Point Loma Fishing Company, Inc.

9    8.     The F/V POINT LOMA engages in the groundfish fisheries located outside the

10    State of California and in the U.S. Exclusive Economic Zone ("EEZ")(from three to 200 nautical

11    miles) and is licensed to land its catch only in the State of California. The vessel's home port is

12    Port San Luis, California. I have never used the vessel to fish anywhere except in the EEZ off

13    California. At no time have I ever threatened to move the vessel to another state or another part

14    of California, nor could I do so very easily without obtaining new licenses and new markets.

15    9.     A special limited entry permit is required to engage in the Pacific Groundfish

16    Fisheries off California regulated by the National Oceanic and Atmospheric Administration

17    ("NOAA") in the U.S. EEZ. However, unlike most other such permits, the NOAA permit is

18    issued not to the vessel but to a person qualifying as the owner of the permit. The NOAA permit

19    has been issued to, and is owned by, the F/V Point Loma Fishing Company, Inc. Attached as

20    Exhibit B is a copy of the NOAA permit held by the company. The permit may be used on the

21    F/V POINT LOMA or it may be transferred to another vessel of similar length.

22    10.     The Promissory Note and Ship Mortgage do not cover the NOAA permit for at

23    least two reasons. First, neither the Promissory Note nor the Ship Mortgage contains language

24    that includes the NOAA permit as security. Second, and more importantly, NOAA does not

25    recognize the existence of liens against such permits. Attached as Exhibit C is a copy of a letter

26    from NOAA confirming this position. Thus, I have never agreed to provide Del Mar a security

27    interest in this NOAA permit.

28

3

11.    In December of 2004, while I was working for Del Mar, I made a $5,000 payment on the Promissory Note. Attached as Exhibit D is the check representing this payment. At the end of 2005, Joe Cappuccio and Joe Roggio, in a meeting, told me that Del Mar's bank, which provided a credit line to the company, had expressed concern about the size of the loan for the F/V POINT LOMA. Joe Cappuccio asked me to make a large advance payment on the loan. Later, Joe Roggio told me at another meeting that, if I made the advance payment, he would see to it that the vessel loan with Del Mar would be interest free. Because of this promise and understanding, we took out a home equity loan on our house and paid Del Mar $175,000, with the expectation that no interest would be due on the Promissory Note and that the payment comprised advance monthly payments into the future. The payment date was November 10, 2005. Attached as Exhibit E is the check for this advance payment on the Promissory Note. It was my understanding that this payment (and the earlier one) reduced the total amount of the debt from $215,000 to $35,000; that monthly payments were covered well into the future; and that no interest would be due on payment of the remaining amount. When I delivered the check to Joe Cappuccio, I told him I would pay the rest as soon as I can. In response, he said it was now such a small amount that he was not concerned about it any more, which reinforced by understanding that I had made advance payments on the Note.

12. ·    Within a month or so after this advance payment, I recall receiving a piece of paper which purported to be a Schedule of Payments from Joe Roggio. Attached as Exhibit F is the copy of the document I received from Joe Roggio. The Schedule contains references to various debts not related to the Promissory Note. I looked it over and told him this does not look right to me. He said he was just "cleaning up the books." I didn't want to tell him how to keep his books but I did not tell him that the $175,000 payment could be applied to anything other than the Promissory Note, nor did I agree with any of the amounts listed in his Schedule of Payments. For certain, he did not expressly ask if I was agreeable to applying the $175,000 to these other debts or to treating the other debts as "advances" under the Promissory Note, which would then be secured by the Ship Mortgage.

DAVIS WRIGHT TREMAINE LLP

4

13.     After I was let go by the company in October 2006, I asked Joe Roggio to let me know where I stood with the company. He then gave me a newer revised version of the Schedule of Payments, probably in December 2006. That new Schedule showed new debts called "Olde Port Balance, Point Loma Balance, and Fees for Olde Port Case." I, again, never agreed that these amounts would be treated as "advances" under the Promissory Note, to be secured by the Ship Mortgage, nor did I ever agree that they were correct in any way.

14.     I made additional payments on the Promissory Note in January ($2,000), February ($3,000) and March ($3,000), 2007. Attached as Exhibit G are the checks that represent those payments. I did so after being asked by Joe Roggio to make payments on what I owed, but did not specify any amount or for what.

15.     The seizure of the F/V POINT LOMA on June 7, 2007 came as a complete shock to me. I never received any prior notice, orally or written, from Del Mar that I had to make any monthly payments or owed any interest after the advance payment was made in November 2005 or the vessel would be seized. It has always been my understanding that the advance payments made me current on the Note through February 2009.

16.     The seizure of the vessel has completely disrupted its operations. At present, I am losing at least $20,000 a month in gross sales for the vessel. I have been trying to keep the captain, Dave Kobak, and the two crew members available so that I can take the vessel fishing as soon as possible, paying about $2,000 a week to date. The vessel is my only source of income at present, other than my Social Security payments.

17.     I believe that the seizure of the Vessel is unfair and unnecessary and not consistent at all with my agreements with Del Mar.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED this 9th day of July, 2007.

/s/ *Barry A. Cohen*
Barry A. Cohen

DAVIS WRIGHT TREMAINE LLP

# EXHIBIT C

# Exhibit A





Wells Fargo Insurance Services of Oregon, Inc.

# Fax Transmittal Sheet

1231-A SE Bay Boulevard
P.O. Box 1610
Newport, OR 97365
541.265.4500 / 800.451.9850
541.265.4262 Fax

| | | | |
|---|---|---|---|
| **To:** | BUD WALSH | **From:** | SUE KEESEE |
| **Date:** | August 21, 2007 | **Time:** | 8:31 AM |
| **Location:** | | **RE:** | F/V POINT LOMA FISHING CO. INC F/V "POINT LOMA" |
| **Fax Number:** | 415 276 6599 | **Number of Pages:** | 3 (Including Cover Page) |

**Comments:** DEAR MR. WALSH:

TO FOLLOW ARE COPIES OF THE DEC SHEETS FOR THE INSURANCE ON THE F/V "POINT LOMA". THE ACCOUNT IS PAID IN FULL.

PLEASE LET ME KNOW IF YOU NEED ANYTHING MORE.

SINCERELY,

*Sue Keesee*

SUE KEESEE

**Confidentiality Notice:** The information contained in this facsimile message, and in any accompanying documents, constitutes confidential information belonging to Wells Fargo Insurance Services and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this communication, you are hereby notified that any dissemination, disclosure, copying, or the taking of any action in reliance on this communication, is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the address above via the U.S. Postal Service.

If you do not receive the entire fax, please contact the sender immediately.

# Acordia of Oregon, Inc.

P.O. Box 1610 * Newport, Oregon 97365 * 1-800-451-9850 * Fax (541) 265-4262
1218-A S.E. Bay Boulevard, Newport, Oregon 97365

### POLICY NO. YA-06260

# POLICY OF INSURANCE

(Combined Companies Form)

In consideration of the premium as hereinafter stated, the various companies named herein, severally but not jointly, do hereby insure the assured named herein, for the amounts and proportions, set opposite their respective names. All subject to the terms and conditions of the forms and endorsements attached herein:

**Assured:**            **F/V POINT LOMA FISHING CO., INC.**
                        **C/O OLD POINT FISHERIES**
                        **P.O. BOX 40**
                        **AVILA BEACH, CA. 93242**

For account of:         **THEMSELVES**

Loss, if any, payable to:    ASSURED OR ORDER

Total amount insured: (100%)    $250,000 H&M/$1,000,000 P&I

Interest: .              HULL & MACHINERY AND PROTECTION & INDEMNITY

Vessel(s):              **"POINT LOMA"**

At and From:            **DECEMBER 23, 2006  Noon, Local Time to**
                        **DECEMBER 23, 2007, Noon, Local Time**

Conditions: (as per form and endorsement attached)TRADING & LAY UP WARRANTY;FISHING VESSEL CLAUSES; BROKERS &/OR AGENTS CANCELLATION CLAUSE;SERVICE OF SUIT CLAUSE; LIEN CLAUSE;CL 380;CL 370;ASBESTOS EXCLUSION; TRIA EXCLUSION;POLLUTION EXCLUSION CLAUSE;AMERICAN INSTITUTE HULL CLAUSES;P&I FISHING VESSEL CLAUSES;SP-38 P&I CLAUSES;U.S. ECONOMIC & TRADE SANCTIONS CLAUSE;EXCESS COLLISION END;PREMIUM FINANCE END.

| Amount Insured Hereunder: | $250,000.00 H&M $1,000,000.00 P&I | **RATE:** | 3.45% **AGREED** |
| --- | --- | --- | --- |
| PREMIUM | $8,625.00 H&M $15,900.00  P&I | DEDUCTIBLE: | $10,000 H&M $5,000 P&I |

Any provisions required by law to be stated in policies issued by any company subscribing hereto, shall be deemed to have been stated herein. It is further agreed that each of the companies will issue their individual policies in accord with the terms described herein, upon demand by the Assured.

In witness whereof, the companies hereinafter named have caused this policy to be issued and signed by a duly authorized officer, attorney, or agent at **Newport, Oregon** this 23RD day of DECEMBER, 2006.

# CERTIFICATE OF INSURANCE

Salvus Bain Management (USA) LLC

*Seattle*

**RENEWAL OF:**
OP05 4146

**CERTIFICATE NO.**

**OP06 5158**

**THIS IS TO CERTIFY THAT** Salvus Bain Management (USA) LLC in accordance with authorization granted them have procured insurance as hereinafter from:    **Underwriters at Lloyd's, London - 100%**

**ASSURED:**  F/V Point Loma Fishing Company, Inc.
c/o Old Point Fisheries

**ADDRESS:**  P O Box 40 ,
Avila Beach, CA 93424

| | |
|---|---|
| **PREMIUM:** | $646.00 |
| **POLICY FEE:** | $125.00 |
| **TOTAL:** | $771.00 |

**POLICY PERIOD:**    From: December 23, 2006    To: December 23, 2007
Both days at 12:00 NOON P.S.T. (Pacific Standard Time)

**INTEREST COVERED:  AS PER ATTACHED FORMS**

1. It is expressly understood and agreed by the Assured by accepting this instrument that Salvus Bain Management (USA) LLC in not one of the Insurers hereunder and neither is nor shall be in any way or to any extent liable for any loss or claim whatever, as an Insurer, but the Insurers hereunder are only those whose names are on file as hereinbefore set forth.

2. If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Certificate shall become void and all claims hereunder shall be forfeited.

3. Unless otherwise provided herein, this Certificate may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Certificate to Salvus Bain Management (USA) LLC. This Certificate may also be cancelled, with or without the return or tender of the unearned premium, by Insurers, or by Salvus Bain Management (USA) LLC in their behalf by delivering to the Assured or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

4. This Certificate of Insurance shall not be assigned either in whole or in part, without the written consent of Salvus Bain Management (USA) LLC endorsed hereon.

5. This insurance is made and accepted subject to all the provisions, conditions and warranties set forth herein and in any forms or endorsements attached hereto, all of which are to be considered as incorporated herein, and any provisions or conditions appearing in any forms or endorsements attached hereto which alter the Certificate provisions stated above shall supercede such Certificate provisions insofar as they are inconsistent therewith.

6. This document is intended for use as evidence that insurance described herein has been effected against which Insurers' policy(ies) may be issued, and conditions of such policy(ies) when received by the Assured shall supercede conditions of this Certificate. Immediate advice must be given of any discrepancies or necessary changes.

This Certificate shall not be valid unless signed by Salvus Bain Managment (USA) LLC

Dated at Seattle, WA this  December 13, 2006

By _____

Salvus Bain Management (USA) LLC

AES-CERT 5/02



# EXHIBIT D

COPY

## FIRST PREFERRED MORTGAGE

NATIONAL VESSEL DOCUMENTATION CENTER
RECEIVED/FILED

Official No: _575 298_

20 APR '04        '10 : 08 AM

On the vessel:
POINT LOMA

RECORDED: BOOK _04.70_ PAGE _497_

Dated: _10/31/03_

Amount of Mortgage $215,000.00

and made by BARRY COHEN And CHRIS COHEN a married couple

(Hereinafter called "Owner")

### WITNESSETH

Whereas, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term vessel means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by the promissory note dated _10/31/03_ in the principal amount of $215,000.00, payable to the order of Mortgagee as follows:

For the Attached Promissory Note which shall become a part of this mortgage.

THE TOTAL AMOUNT OF THIS MORTGAGE IS TWO HUNDRED FIFTEEN THOUSAND DOLLARS AND PERFORMANCE OF MORTGAGE COVENANTS.

And has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof. Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the Vessel named below and further described in her (their) last marine document(s) issued and identified as follows:

EXHIBIT D

Name:   POINT LOMA

Home Port; Avila Beach, California. ............

Official Number: 575298

Together, with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

      TO HAVE AND TO HOLD all singular the above described vessel unto Mortgagee, it's successors and assigns, forever;

      PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

      . Nothing herein shall be deemed or construed to subject the lien hereof any property other than a vessel as the term issued in Title 46, Chapter 313, and Section 31322 of the United States Code. Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

### ARTICLE I : PARTICULAR COVENANTS OF OWNER

      Owner Covenants as follows:

1.       Owner is and shall continue to be a citizen of the United States entitled to own and operate said vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the

good faith affidavit filed herewith and of said note has been taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of NOT APPLICABLE and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2.     Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee of this mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3.     Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, towers liability risks if the vessel performs towage, employees compensation and other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgage for account of Mortgage and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefore have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach or warranty or otherwise.

4.     Owner shall comply with and not permit the vessel to be operated contrary to any provision of the law, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof,

nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to, establish and maintain this Mortgage as First Preferred Mortgage on said vessel.

5.  Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6.  Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7.  Owner shall pay when due all taxes, assessments, government charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8.  If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel there from and in any event within fifteen (15) days after such attachment, detention, seizure, levy or taking into custody.

9.  Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owners related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10.  Owner shall not, without prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor,

if a corporation, to merge or consolidate with any other person, firm or corporation, or dissolve.

11.    From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject to vessel more effectual to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article 11.

### ARTICLE II - DEFAULT

1.    In any one or more of the following events, herein termed events of default:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 or Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in performance of any other covenant herein; or

(b) Commission of any act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or to appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earning, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collecting thereof until the time above limited for the payment thereof, then, and in every such case, Mortgagee may:

(a)    Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(b)    Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(c)    Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at the Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by the law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2,    In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of the Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3.    Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power, or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.    The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:    To the payment of all attorneys fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:    To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment of next of any or all matured installments of principal and then of any or all un-matured installments of principal in the inverse order of this maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

S.        All advances and expenditures which Mortgagee in its discretion may make any repairs, insurance, payment of liens or other claims, defense of suit, or for any other purpose whatsoever related hereto or said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien thereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

## ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to obtain actual possession and use of the vessel.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignments hereof, any reference herein of "Mortgagee" shall be deemed to refer to the assignee. If one or more person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES. This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year above written, Owner has executed this Mortgage, or if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized or as required by State law.

From: 7:  .61471    Page: 13/14   Date: 8/6/2007 6:63  PM
06/18/2007  11:55    5622162980    RICHARD F WAGNER    PAGE 17/28

# MIDSTATE BANK & TRUST    CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo .

On 10-31-03 before me, Nancy E. Martin, Notary Public, personally appeared Christene Layne Cohen and Barry A. Cohen,

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Nancy E. Martin*

Signature of Notary

NANCY E. MARTIN
COMM. #1426485
NOTARY PUBLIC-CALIFORNIA
SAN LUIS OBISPO COUNTY
My Comm. Expires August 9, 2007

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ Individual
☐ Corporate Officer

Title

☐ Partner(s)    ☐ Limited
                 ☐ General

☐ Attorney-In-Fact
☐ Trustee(s)
☐ Guardian/Conservator
☐ Other:

Absent Signer (Principal) is Representing:

DESCRIPTION OF ATTACHED DOCUMENT

First Preferred Mortgage

Title or Type of Document

11 plus attached acknowledgment

Number of Pages

10-31-03

Date of Document

None

Signer(s) Other Than Name(s) Above

ADM-003 (07/01)