James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile:   (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and
Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., | ) |
| | ) |
| Plaintiff, | ) No. C-07-2952-WHA |
| | ) |
| v. | ) **DECLARATION OF CHRISTENE** |
| | ) **COHEN IN SUPPORT OF** |
| BARRY COHEN, CHRIS COHEN (aka | ) **DEFENDANTS' MOTION FOR A** |
| CHRISTENE COHEN), *in personam* and, | ) **PROTECTIVE ORDER LIMITING** |
| F/V POINT LOMA, Official Number | ) **THE DEPOSITION OF CHRISTENE** |
| 515298, a 1968 steel-hulled, 126-gross ton, | ) **COHEN PURSUANT TO FRCP 26(c)** |
| 70.8 foot long fishing vessel, her engines, | ) |
| tackle, furniture apparel, etc., *in rem*, and | ) **Date:  January 24, 2008** |
| Does 1-10, | ) **Time:  8:00 a.m.** |
| | ) **Place:  Courtroom 9, 19th Floor** |
| Defendants. | ) |

I, Christene Cohen, declare as follows:

1.     I am a resident of the State of Arizona and currently reside in Scottsdale, Arizona. I am a named Defendant in this lawsuit.  I make this declaration in support of Defendants' Motion for a Protective Order Limiting Deposition of Christene Cohen Pursuant to FRCP 26(c).  The facts set forth in this declaration are personally known to me to be true and, if called as a witness, I could and would testify to the following:

2.     Barry Cohen and I were married on August 24, 1994.  We are currently still married although we are separated and in divorce proceedings.

*DAVIS WRIGHT TREMAINE LLP*

1

3.    I do not waive any of my privileges with respect to any information sought by Plaintiff in this case, including, but not limited to, the marital communications privilege and attorney-client privilege. I would assert these privileges at any deposition where questions are asked that call for responses protected by these privileges.

4.    A notice was issued scheduling the date of my deposition for Friday, January 11, 2008. I work on Fridays and cannot afford to take any time off work. Moreover, I cannot afford to miss work to travel out of state if required to do so for my deposition.

5.    I understand this lawsuit is about money that Del Mar Seafoods, Inc. ("Del Mar") claims is owed to that company based on a $215,000 Promissory Note that I signed in October 2003. A true and correct copy of the Promissory Note I signed is attached as Exhibit 1. At that same time, I also signed a First Preferred Mortgage on the fishing vessel POINT LOMA, which secured payment of that Note. A true and correct copy of the First Preferred Mortgage is attached as Exhibit 2.

6.    In 2005, I know that Barry and I made a $175,000 to Del Mar as an advance payment on the Note.

7.    I have had no business dealings with Del Mar, or Joe Cappuccio or Joe Roggio of that company, with respect to the issues relating to the Note, the Mortgage, any payments made, or any other aspect of the dispute with Del Mar over any money allegedly owed.

8.    Del Mar has never inquired of me, either orally or in writing, as to the financial status of the fishing vessel business. I have never been contacted by either Joe Cappuccio or Joe Roggio, whom I have known for a long time, regarding the financial status or other matters relating to the vessel or the F/V Point Loma Fishing Company, Inc. or any other business matter.

DATED this 18th day of December, 2007.

_____
Christene Cohen

DECLARATION OF CHRIS COHEN IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER
Case No. C-07-02952 WHA

2

SFO 400574v1 0084289-000001

# Exhibit 1

From: 44361471    Page: 15/15    Date: 6/5/2007 6 : 18 PM
05/15/2007  11:55    5622152960          RICHARD P WAGNER                    PAGE  18/28

COPY

NATIONAL VESSEL DOCUMENTATION CE
USCG
RECEIVED / FILED

**PROMISSORY NOTE**

20 APR '04                    10 : 08 /

RECORDED: BOOK _____ PAGE ____

DOCUMENTATION OFFICER

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on *January '04* and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

1.    This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. ~~551568~~ *C.L.G. 515293 Bcd.* ; dated *10/31/03*

2.    Incorporation of Terms of First Preferred Mortgage.

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated *10/31/03*, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same affect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

3.    Acceleration of Maturity.

In the event of default, in the payment of any of the installments or interest due as provided in this

DMSI 0098

From: 44361471    Page: 2/14    Date: 6/5/2007 6:50:07 PM
05/15/2007 11:55    562216060    RICHARD P WAGNER    PAGE 19/28

note, time being of the essence, holder may, without notice or demand, declare the entire principal sum then unpaid immediately due and payable. Further, if maker should at any time fail in business or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment, attachment, or other legal process is issued against any deposit account or other property of maker, or if any assessment for taxes against maker, other than taxes on real property, is made by the federal or state government, or any department or agency of the federal or state government, or if maker fails to notify holder of any material change in their financial condition, all of the obligations of maker shall, at option of holder, become due and payable immediately without demand or notice.

### 4. Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any installment in advance, all without affecting the liability of maker.

### 5. Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all costs.

### 6. Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to holder until all indebtedness of maker to holder, however arising, shall have been paid; and (c) the right to require holder to proceed against any party to this note, or to pursue any other remedy in holder power. Holder may proceed against maker directly and independently of any other party to this note, and the cessation of the liability of any other party or

DMSI 0099

From: 44361471    Page: 3/14    Date: 6/5/2007 6: J7 PM
06/15/2007 11:55   5622162968     RICHARD P WAGNER        PAGE 28/28

any reason other than full payment, or any revision, renewal, extension, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of holder's remedies or rights against any other party, shall not in any way affect the liability of maker.

DATED: 10/31/03

_Barry Cohen_
Barry Cohen

_Chris Cohen_
Chris Cohen

DMSI 0100

Exhibit 2

From: 361471          Page: 4/14   Date: 6/5/2007 6:53  PM
05/15/2007  11:55   5522162960              RICHARD P WAGNER                     PAGE  08/28



## FIRST PREFERRED MORTGAGE

NATIONAL VESSEL DOCUMENTATION CENTER

Official No: _515-298_

On the vessel:
POINT LOMA

Dated: _10/31/03_

ENTATION CENTER
ILED

10 : 08 AM.

2 PAGE _497_

EX 2.

Amount of Mortgage $215,000,000

and made by BARRY COHEN And CHRIS C

(Hereinafter called "Owner")

### WII

Whereas, the maker, Mortgagor h                ) of the vessel
(if more than one vessel is mortgaged hereunder, the term vessel means each such vessel)
hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by the
promissory note dated _10/31/03_ in the principal amount of $215,000.00, payable to the order
of Mortgagee as follows:

Per the Attached Promissory Note which shall become a part of this mortgage.

THE TOTAL AMOUNT OF THIS MORTGAGE IS TWO HUNDRED FIFTEEN THOUSAND

DOLLARS AND PERFORMANCE OF MORTGAGE COVENANTS.

And has agreed to give this Mortgage as security, and has authorized and directed the
execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and
valuable considerations, receipt of all of which is hereby acknowledged and to secure payment of
said indebtedness and interest and other sums that hereafter may become due pursuant hereto and
the performance of all covenants hereof. Owner by these presents mortgages and conveys unto
Mortgagee, its successors and assigns, the whole of the Vessel named below and further
described in her (their) last marine document(s) issued and identified as follows:

DMSI 0101

Name:    POINT LOMA

Home Port: Avila Beach, California. _____

Official Number: _575 2 9 8__

Together, with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all singular the above described vessel unto Mortgagee, it's successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject the lien hereof any property other than a vessel as the term issued in Title 46, Chapter 313, and Section 31322 of the United States Code. Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I - PARTICULAR COVENANTS OF OWNER

Owner Covenants as follows:

1.        Owner is and shall continue to be a citizen of the United States entitled to own and operate said vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the

DMSI 0102

good faith affidavit filed herewith and of said note has been taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of NOT APPLICABLE and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2.       Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee of this mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3.       Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, towers liability risks if the vessel performs towage, employees compensation and other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgage for account of Mortgage and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefore have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach or warranty or otherwise.

4.       Owner shall comply with and not permit the vessel to be operated contrary to any provision of the law, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof,

DMSI 0103

nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to, establish and maintain this Mortgage as First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, government charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel there from and in any event within fifteen (15) days after such attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owners related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor,

DMSI 0104

if a corporation, to merge or consolidate with any other person, firm or corporation, or dissolve.

11.　　From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject to vessel more effectual to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article 11.

### ARTICLE II - DEFAULT

1.　　In any one or more of the following events, herein termed events of default:

　　(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 or Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in performance of any other covenant herein; or

　　(b) Commission of any act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or to appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earning, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collecting thereof until the time above limited for the payment thereof, then, and in every such case, Mortgagee may:

DMSI 0105

(a)    Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(b)    Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(c)    Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at the Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by the law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2.    In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of the Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

DMSI 0106

3.     Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power, or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.     The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST:     To the payment of all attorneys fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND:     To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment of next of any or all matured installments of principal and then of any or all un-matured installments of principal in the inverse order of this maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

DMSI 0107

5.        All advances and expenditures which Mortgagee in its discretion may make any repairs, insurance, payment of liens or other claims, defense of suit, or for any other purpose whatsoever related hereto or said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien thereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

### ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to obtain actual possession and use of the vessel.

### ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignments hereof, any reference herein of "Mortgagee" shall be deemed to refer to the assignee. If one or more person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES. This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

DMSI 0108

IN WITHNESS WHEREOF, on the day and year above written, Owner has executed this Mortgage, or if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized or as required by State law.

DMSI 0109



## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Luis Obispo

On 10-31-03 before me, Nancy E. Martin, Notary Public, personally appeared Christene Layne Cohen and Barry A. Cohen,

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Nancy E. Martin*
_____
_Signature of Notary_

[Notary Seal: NANCY E. MARTIN, COMM. #1428488, NOTARY PUBLIC-CALIFORNIA, SAN LUIS OBISPO COUNTY, My Comm. Expires August 8, 2007]

---

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ Individual
☐ Corporate Officer

Title

☐ Partner(s)    ☐ Limited
                ☐ General

☐ Attorney-in-Fact
☐ Trustee(s)
☐ Guardian/Conservator
☐ Other:

Absent Signer (Principal) is Representing:

DESCRIPTION OF ATTACHED DOCUMENT

First Preferred Mortgage

_Title or Type of Document_

11 plus attached acknowledgment

_Number of Pages_

10-31-03

_Date of Document_

None

_Signer(s) Other Than Name(s) Above_

ADM-005 (07/01)

DMSI 0110