# COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP

| | | |
|---|---|---|
| TERENCE S. COX | | LYNN L. KRIEGER |
| RICHARD C. WOOTTON* | ATTORNEYS AT LAW | MAX LEE KELLEY |
| MITCHELL S. GRIFFIN | 190 THE EMBARCADERO | GALIN G. LUK |
| RUPERT P. HANSEN, JR. | SAN FRANCISCO, CALIFORNIA 94105 | CHRISTOPHER S. KIELIGER |
| GREGORY W. POULOS | | COURTNEY M. CRAWFORD |
| FREDERICK J. CARR | TELEPHONE: (415) 438-4600 | |
| MARC T. CEFALU | FACSIMILE: (415) 438-4601 | |
| *ALSO ADMITTED IN HAWAII | WEBSITE: http://www.cwghp.com | |

January 23, 2008

*By E-Filing and Messenger*
Honorable William H. Alsup
District Court Judge
Courtroom 9, 19th Floor
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Del Mar Seafoods, Inc. v. Cohen*
    Case No.:    U.S.D.C./Northern District 3:07 CV 02952 WHA
    Our Ref:    DMSI.PointLoma/2504
    Our Client:    Plaintiff Del Mar Seafoods, Inc.

Your Honor:

      Pursuant to your Supplemental Order re Civil Case Management Conference, para. 26, and after having met and conferred with defense counsel, plaintiff submits this letter summarizing a discovery dispute between the parties and the relief requested by the plaintiff. At issue is the defendants' failure to produce documents in response to the following Request for Production propounded by the plaintiff **[EXHIBIT A]**:

Request for Production No. 21:
      Defendant Barry Cohen's federal and state tax returns from 2003 until the present, including all schedules relating to business profits and/or loss from any and all fishing related activities.

Response:
      Responding Parties object to this request on the grounds that it seeks disclosure of privileged information under federal and California income tax laws. Responding Parties also object on the grounds that this request is irrelevant and overly broad with respect to the limited issues in this case; namely the amount remaining under the Note and the unlawful arrest of the Vessel.

      This Request was subsequently modified by the plaintiff to seek only the limited "Schedule C" showing the income and loss from the fishing business and for only the years 2004-2007.

Honorable William H. Alsup
January 23, 2008
Page 2

    At the deposition on December 27, 2007 of Mr. Cantrell, defendant Barry Cohen's accountant, the parties discussed the production of Mr. Cohen's profit and loss schedules from his federal tax returns reflecting those amounts for the Claimant F/V Point Loma Fishing Company, and it was agreed that if, after Mr. Cohen's deposition, the plaintiff still believed it was entitled to his tax schedules, that issue could be raised. That agreement was put on the record **[EXHIBIT B]**.

    During Mr. Cohen's deposition on January 9, 2008, he testified as to the various categories of expenses incurred by his fishing business but was unable to state the amount of profit or loss in any specific year. For example, when Mr. Cohen was asked whether his fishing business earned a profit in 2005, Mr. Cohen stated he 'thought' it earned a profit of $55,000 but that he really didn't know and that his accountant, Mr. Cantrell, would have those figures. *Cohen Deposition*, 107:19-108:19, **[EXHIBIT C]**.

    Mr. Cohen also subsequently produced the following documentation evidencing his gross and net figures:

| DOCUMENT | DESCRIPTION |
|---|---|
| COHEN 00016-00055 | Various receipts for ice and fuel, and settlement sheets from Caito Fisheries, Inc. for fish bought from the F/V Point Loma, from 12/30/06 to 06/04/07. |
| COHEN 00676-00677 | Handwritten document entitled "Trips by the Month" for the time period 11/05 through 11/07 listing gross revenues and net profits from fishing business. |
| COHEN 00678-00718 | Backup documentation including handwritten calculations of net profits from fishing business from 11/22/05 through 11/26/07, including settlement sheets from fish buyer. |
| COHEN 843-902 | Various receipts for ice and fuel, and settlement sheets from Caito Fisheries, Inc. for fish bought from the F/V Point Loma, from 08/25/07 to 12/13/07. |
| COHEN 918-926 | Handwritten summary of amounts paid to crew and copies of cancelled checks documenting same. |
| Defendants' Second Supplemental Response to Plaintiff's Set One Interrogatories, Nos. 12, 13 | Vessel's gross receipts and net profits for the years 2003 through 2006; including lists of expenses for those years |

    These documents and Mr. Cohen's deposition testimony, however, are incomplete, inconsistent, and fail to provide the complete picture of the F/V Point Loma Fishing Company's profits (or losses) over the past four years, which is the period of time the plaintiff believes is a relevant and an appropriate basis for determining any lost profits due to an alleged wrongful arrest of the Vessel, as defendants have alleged. For example, COHEN 00676-00677 lists the Vessel's *gross* revenue for 2006 as $322,520.76 **[EXHIBIT D]**, yet defendants' Second Supplemental Response to Plaintiff's Interrogatory No. 12 lists the Vessel's *gross* revenue for 2006 as $330,804. As for 2006 *net* income, COHEN 00676-00677 lists that amount

Honorable William H. Alsup
January 23, 2008
Page 3

as $249,650.62 while the amount stated in defendants' Second Supplemental Response to Plaintiff's Interrogatory No. 13 is $49,925.00. This amount is stated as being net of "operating expenses" that total $280,879. Importantly, there is no information regarding the source of the amounts stated in the response. **[EXHIBIT E.]**

Furthermore, the categories of operating expenses listed in defendants' Response to Interrogatory No. 13 differ from year to year. For example, expenses for "crew costs," "fuel and ice," "supplies," "insurance," and "other operating expenses" are listed for 2004-2006, but not for 2003; and expenses for "permits and fees" are listed for 2005-2006, but not for 2004.

*Most importantly, Ms. Cohen, the other 50% owner of the F/V Point Loma Fishing Company, testified in her deposition on January 11, 2008, that her understanding was that the company was operating at a loss.* (Ms. Cohen's deposition transcript is not yet available, but should be within a few days.) Taking defendants' own figures, the net profit for 2005 listed on COHEN 00676, $249,650.62 and subtracting the operating expense for 2006 stated in defendant's Response to Interrogatory No. 13, $280,879, results in a loss of $31,228.38. Clearly, in the face of Ms. Cohen's contradictory admission, and the inconsistent and incomplete information produced by the defendants, plaintiff should be entitled to examine Mr. Cohen's profit and loss tax statements regarding his fishing business so it can determine exactly what those figures are.

*Plaintiff requests that the defendant be order to produce only the profit and loss statements (Schedule C) he filed for the F/V Point Loma Fishing Company and/or for the F/V Point Loma's fishing operations for the years 2004-2006 and, to the extent the information exists, 2007.* Plaintiff believes that narrowing the request to obtain only the F/V Point Loma Fishing Company, Inc.'s federal tax Schedules Cs for the past four years is both fair and reasonable in light of the issues surrounding defendants' claims for lost fishing profits. Those schedules will contain the relevant information in a readily discernable and accurate manner. *See, Aliotti v. F/V Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (tax returns discoverable where less intrusive means do not yield the relevant information sought).

Discovery has closed. It is clear that the plaintiff has not received the necessary documents that would enable us to accurately determine Mr. Cohen's profits and losses, if any, from his fishing business over at least the past four years. Since that historical information is essential to the plaintiff's evaluation of defendants' claims for lost profits due to the alleged wrongful arrest of the Vessel, we respectfully request that the Court order defendants to produce the requested tax schedules.

Thank you for your time and attention to this matter.

Sincerely,

Gregory W. Poulos
COX, WOOTTON, GRIFFIN,
HANSEN & POULOS LLP
Attorneys for Plaintiff Del Mar Seafoods, Inc.

James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. | No. C-07-2952-WHA <br><br> **DEFENDANTS BARRY COHEN, CHRIS COHEN's (aka CHRISTENE COHEN) RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND INSPECTION OF THINGS** |

PROPOUNDING PARTY:   PLAINTIFF DEL MAR SEAFOODS, INC.

RESPONDING PARTY:   DEFENDANTS BARRY, CHRISTINE COHEN and CLAIMANT, F/V POINT LOMA FISHING COMPANY, INC.

SET NO.:   ONE

Barry and Chris Cohen (the "Cohens") and Claimant F/V Point Loma Fishing Company, Inc. (collectively "Responding Parties" or "Defendants") hereby respond to Plaintiff Del Mar Seafoods, Inc.'s Requests for Production of Documents and Inspection of Things (Set One) ("Requests for Production of Documents").

EXHIBIT A
PAGE 1 OF 2

1

waiving these objections, Responding Parties respond that all documents responsive to this request have been produced.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that relate to the Assignment of Joint Venture Interest executed by defendant Barry Cohen on October 22, 2004.

**RESPONSE TO REQUEST NO. 19:**

Responding Parties object to this request on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Without waiving this objection, Responding Parties respond that all such non-privileged documents have been produced.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that relate to the Assignment of Joint Venture Interest executed by defendant Barry Cohen in 2005.

**RESPONSE TO REQUEST NO. 20:**

Responding Parties object to this request on the grounds that it seeks information protected from disclosure by the attorney-client privilege and attorney-work product doctrine. Without waiving this objection, Responding Parties respond that all non-privileged responsive documents have been produced.

**REQUEST FOR PRODUCTION NO. 21:**

Defendant Barry Cohen's federal and state tax returns from 2003 until the present, including all schedules relating to business profit and/or loss from any and all fishing-related activities.

**RESPONSE TO REQUEST NO. 21:**

Responding Parties object to this request on the grounds that it seeks disclosure of privileged information under federal and California income tax laws. Responding Parties also object on the grounds that this request is irrelevant and overly broad with respect to the limited issues in this case; namely the amount remaining under the Note and the unlawful arrest of the Vessel.

EXHIBIT A
PAGE 2 OF 2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

\* \* \*

DEL MAR SEAFOODS, INC.,
    PLAINTIFF,
VS.     NO. C-0702952-WHA
BARRY COHEN, CHRIS COHEN (CHRISTENE COHEN) IN PERSONAM AND, F/V POINT LOMA, OFFICIAL NUMBER 515298, A 1968 STEEL-HULLED, 126-GROSS TON, 70.8 FOOT LONG FISHING VESSEL, HER ENGINES, TACKLE, FURNITURE APPAREL, ETC., IN REM, AND DOES 1-10,
    DEFENDANTS.

DEPOSITION OF DAVID PAUL CANTRELL

SAN LUIS OBISPO, CALIFORNIA

THURSDAY, DECEMBER 27, 2007

12:55 P.M. - 3:36 P.M.

REPORTED BY KAREN L. GRENCIK

CSR NO. 7038, RPR

**McDaniel**
SHORTHAND REPORTERS
A Professional Corporation

1302 Osos Street, San Luis Obispo, CA 93401
106 E. Boone, Suite D, Santa Maria, CA 93454
E-mail: mcdanielslo@charter.net   805-544-3363   FAX 805-544-7427   www.mcdanielreporting.com

---

Page 5

```
 1   ME WITH A CASE, PARTICULARLY ALIOTTI, A-L-I-O-T-T-I,
 2   VERSUS THE VESSEL SENORA, S-E-N-O-R-A, 217FRD496, DECIDED
 3   IN SEPTEMBER OF 2003.  IT'S A CASE THAT DOES SET FORTH MY
 4   UNDERSTANDING, AS WELL, OF THE BASIC LAW ON PRODUCTION OF
 5   TAX RETURN INFORMATION, AND THE STANDARDS THAT NEED TO BE
 6   MET.
 7        MR. COHEN HAS ALSO BROUGHT TO THE DEPOSITION,
 8   ALTHOUGH NOT YET BATES NUMBERED, A STACK OF DOCUMENTATION
 9   THAT IS APPARENTLY THE FINANCIAL -- SOME FINANCIAL
10   BACK-UP FOR EARNINGS FROM HIS FISHING OPERATIONS, GOING
11   BACK TO NOVEMBER OF 2005, AND CONTINUING TO NOVEMBER OF
12   2007.  I HAVE NOT YET HAD A CHANCE TO REVIEW THIS.
13        THE PARTIES RECOGNIZE, I THINK, THAT THE --
14   MR. COHEN'S CLAIMS FOR DAMAGES ARISING FROM AN ALLEGATION
15   OF WRONGFUL ARREST RAISE ISSUES RELATED TO THE VESSEL'S
16   EARNINGS, AND THAT, UNDER THOSE CIRCUMSTANCES, THE TAX
17   INFORMATION REGARDING THE EARNINGS IS RELEVANT IN THIS
18   CASE.  THE QUESTION SEEMS TO BE WHETHER WE CAN ESTABLISH
19   A COMPELLING NEED FOR THAT INFORMATION FROM THE TAX
20   RETURNS AND SCHEDULES AS OPPOSED TO FROM SOME OTHER
21   SOURCE.
22        WHAT THE PARTIES HAVE AGREED IS THAT MR. COHEN'S
23   DEPOSITION IS GOING TO TAKE PLACE NEXT WEEK, AND AT THAT
24   TIME I'LL HAVE THE OPPORTUNITY TO QUESTION HIM ABOUT HIS
25   INCOME AND EARNINGS FROM HIS DIFFERENT OPERATIONS.
```

---

DAVID PAUL CANTRELL     December 27, 2007

Page 4

```
 1              DAVID PAUL CANTRELL,
 2        HAVING BEEN FIRST DULY SWORN, WAS
 3        EXAMINED AND TESTIFIED AS FOLLOWS:
 4
 5                  EXAMINATION
 6
 7   BY MR. POULOS:
 8        Q   COULD YOU STATE YOUR FULL NAME FOR THE RECORD,
 9   PLEASE?
10        A   DAVID PAUL CANTRELL.
11        Q   ALL RIGHT.  MR. CANTRELL, BEFORE WE GET STARTED
12   WITH YOUR DEPOSITION, I'D LIKE TO GO AHEAD AND PUT A
13   COUPLE OF ITEMS ON THE RECORD.
14            YOU'RE THE ACCOUNTANT FOR BARRY COHEN; IS THAT
15   CORRECT?
16        A   CORRECT.
17        Q   AND SOME OF HIS BUSINESS DEALINGS?
18        A   CORRECT.
19        Q   OKAY.  WITH THAT, COUNSEL FOR MR. COHEN AND I
20   HAVE HAD A DISCUSSION OFF THE RECORD REGARDING OUR
21   REQUEST FOR CERTAIN TAX RETURN INFORMATION.  NOT THE FULL
22   RETURNS THEMSELVES, BUT INFORMATION RELATING TO THE
23   PROFITS AND LOSSES FROM DIFFERENT -- FROM MR. COHEN'S
24   FISHING OPERATIONS.
25            THERE IS AN UNDERSTANDING, COUNSEL HAS PROVIDED
```

---

DAVID PAUL CANTRELL     December 27, 2007

Page 6

```
 1        MR. WALSH:  IS IT NEXT WEEK?  I THOUGHT IT WAS --
 2        MR. POULOS:  OR THE WEEK AFTER.  I DON'T RECALL THE
 3   DATE OFFHAND.  IT MAY BE --
 4        MR. WALSH:  I THINK IT'S THE 7TH.
 5        MR. POULOS:  I THINK THE 7TH -- I THINK IT'S THE
 6   8TH.
 7        MR. WALSH:  NO, I THINK THAT'S THE CAPTAIN'S.  THE
 8   CAPTAIN IS COMING IN ON THE 8TH.
 9        MR. POULOS:  8TH OR 9TH.  SO, ANYWAY, HIS DEPOSITION
10   IS COMING UP.  AT THAT TIME, I'LL TRY TO DETERMINE WHAT
11   INFORMATION WE CAN OBTAIN ABOUT FINANCIAL AFFAIRS THAT IS
12   RELEVANT TO THESE PROCEEDINGS.
13        IF, AT THAT TIME, AFTER COMPLETING THAT, I STILL
14   FEEL THAT THERE'S A NEED FOR THE FINANCIAL INFORMATION,
15   WE CAN RAISE THAT THEN, WITHOUT OBJECTION ON TIMELINESS
16   OF THE DISCOVERY, SO THAT IF WE HAVE TO COME BACK AND GET
17   THOSE ADDITIONAL RECORDS, OR -- OR CONTINUE THE
18   DEPOSITION OF MR. CANTRELL, AFTER APPROPRIATE SHOWING TO
19   THE COURT, THEN WE WILL HAVE THE OPPORTUNITY TO DO THAT.
20        IS THAT A FAIR RECITATION?
21        MR. WALSH:  THAT'S A FAIR RECITATION.
22        MR. POULOS:  OKAY.  SO, WITH THAT, HOPEFULLY --
23   THERE MAY BE A FEW OTHER ISSUES THAT COME UP.  I'LL GIVE
24   YOU A HEADS UP.  FOR EXAMPLE, I WAS GOING TO ASK
25   MR. CANTRELL ABOUT WHAT KNOWLEDGE HE HAS OF OTHER
```

EXHIBIT B
PAGE 1 OF 2

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

| | |
|---|---|
| DEL MAR SEAFOODS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. C-07-2952-WHA |
| | ) |
| BARRY COHEN, CHRIS COHEN (aka | ) |
| CHRISTENE COHEN), in personam | ) |
| and, F/V POINT LOMA, Official | ) |
| Number 515298, a 1968 | ) |
| steel-hulled, 126-gross ton, | ) |
| 70.8 foot long fishing vessel, | ) |
| her engines, tackle, furniture | ) |
| apparel, etc., in rem, and | ) |
| Does 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEPOSITION OF

BARRY ALLEN COHEN

January 9, 2008

REPORTED BY: RITA R. LERNER, CSR #3179        (2001-404170)

1

Merrill Legal Solutions
(800) 869-9132

EXHIBIT B
PAGE 2 OF 2

**Page 106**

1 establish before the court a compelling need to see the
2 tax returns, then I have no objection with you
3 attempting to do that. That's correct. If you can
4 establish a compelling need under the statute, under the
5 precedent, I agree they're relevant.
6     We're going to try to find the alternative
7 information for you so that you don't have that
8 compelling need.
9     MR. POULOS: The problem is with -- and I
10 understand you're going to give me some documents now
11 and maybe a compilation, which is what it sounds like.
12    MR. WALSH: We're going to have him verify it.
13    MR. POULOS: Well, I know. But that's not
14 subject to my being able to ask him questions about it
15 on documents that I think should have been produced with
16 the document production that was due a couple of weeks
17 ago. So, you know, I'm going to reserve all rights with
18 respect to --
19    MR. WALSH: I understand. We're going to try
20 to get you those numbers, as you requested. And it
21 turns out that Barry's books with regard to the boat are
22 all in that cabinet.
23    MR. KELLEY: I can't wait.
24    MR. WALSH: In other words, whatever he's
25 talking about is in those records.

**Page 107**

1     MR. KELLEY: I understand.
2     MR. WALSH: There may even be compilations in
3 there, in the records.
4     MR. KELLEY: How big is the filing cabinet?
5     THE WITNESS: Filing cabinet for the boat?
6     MR. KELLEY: Normal filing cabinet size? One
7 drawer?
8     THE WITNESS: Not even a full drawer. You'll
9 be able to look through it. That's no problem.
10    MR. KELLEY: Are there labeled manila folders
11 in there, or loose?
12    THE WITNESS: It's loose.
13    MR. WALSH: He's in the fish business.
14    THE WITNESS: I don't know if that means
15 anything.
16    MR. KELLEY: Are you saying they stink?
17    THE WITNESS: They're loose, but it's the
18 normal way I file them: By paid, not paid, and year.
19    MR. POULOS: Q. On the Point Loma for 2005,
20 the profit and loss from Point Loma Fishing Company,
21 Inc., did the company show a profit or loss for 2005?
22    A. I don't know.
23    Q. What is your best recollection?
24    A. I think the last statement that I made before
25 Dave did anything with it or looked at it or anything --

**Page 108**

1 this is just what I did -- it showed a $55,000 profit, I
2 think.
3     Q. What year was that?
4     A. I don't know. The last one I did, I said. I
5 don't know. I'm telling what I know. That's what I can
6 tell you. I don't know.
7         I did not do '07. It might have been '06 or
8 '05, because I make them and I give them to Dave.
9     Q. When you say you make them, what do you make?
10    A. I make a piece of paper that I put on what the
11 gross is, what the fuel, the ice, dah-dah-dah. I put
12 down all the things that we spend money on and I give it
13 to him.
14    Q. Do you also depreciate the vessel?
15    A. You'd have to ask him that.
16    Q. You don't know?
17    A. I'm not going to assume -- that's the only
18 answer I can give you -- assume one way or the other.
19 I don't know what he does with that.
20    Q. Do you have an idea how much the licenses are
21 that you referred to in terms of things that you have to
22 supply each year?
23    A. Maybe $1,000, $2,000.
24    Q. Do you have an idea how much the permits are
25 that you purchase every year or obtain every year?

**Page 109**

1     A. Not much. Under $200. That's just a renewal
2 fee.
3     Q. What about the documents; how much do you spend
4 on documents?
5     A. Well, the boat document -- under $200. I don't
6 know for sure.
7     Q. So the big item falls under that supplies
8 category. Yes?
9     A. Yes.
10    Q. And, then, the insurance?
11    A. And this year, legal and accounting -- last
12 year.
13    Q. Were there legal expenses separate from this
14 lawsuit, or are you just referring to this lawsuit?
15    A. Well, I'll say -- no, there was some. There's
16 always a little bit for corporation stuff, doing the
17 minutes, you know, the little stuff. It's not a big
18 amount. The only thing that is a substantial amount of
19 money was when the boat was arrested. Even trying to
20 find out who did it cost money, and --
21    MR. WALSH: We'll produce our legal bills
22 tomorrow.
23    MR. POULOS: Q. Property taxes. How much do
24 you pay in property taxes on the boat?
25    A. Under $500.

28 (Pages 106 to 109)

## TRIPS BY THE MONTH

| MONTH/YR. | GROSS | NET | NOTES |
|---|---|---|---|
| 11/05 | 9,939.96 | 8,314.12 | PARTIAL MONTH |
| 12/05 | 11,172.89 | 6,794.21 | |
| 1/06 | 15,323.89 | 8,662.42 | |
| 2/06 | 13,879.91 | 9,332.91 + 1,835.54 = 11,168.45 | |
| 3/06 | 8,534.61 | 6,036.65 | |
| 4/06 | 30,398.60 | 24,086.42 | NEW CAPTAIN |
| 5/06 | 33,312.88 | 23,555.18 | |
| 6/06 | 17,846.99 | 10,246.62 | |
| 7/06 | 27,572.37 | 15,673.20 | |
| 8/06 | 12,142.75 | 8,230.51 | |
| 9/06 | 43,148.76 | 35,031.22 | |
| 10/06 | 23,697.28 | 22,296.22 | |
| 11/06 | 73,184.03 | 69,525.31 | |
| 12/06 | 19,278.69 | 15,138.42 | |
| 1/07 | 19,971.04 | 16,686.00 | |
| 2/07 | 35,233.11 | 23,001.52 | |
| 3/07 | 27,136.59 | 22,153.67 | |
| 4/07 | 37,969.01 | 23,138.57 | |
| 5/07 | 32,745.85 | 25,539.66 | |
| 6/07 ① TRIP | 11,790.84 | 9,160.60 | BOAT "ARRESTED" |
| 7/07 | 0 | 0 | UNDER "ARREST" |
| 8/07 | 0 | 0 | UNDER "ARREST" |
| | 49,494.83 | 35,534.02 | BOAT RELEASED |

EXHIBIT D PAGE 1 OF 2

COHEN 00676

## TRIPS BY THE MONTH

| MONTH/YR. | GROSS | NET | NOTES |
|---|---|---|---|
| 10/07 | 36,523.05 | 27,228.31 | |
| 11/07 | 40,900.71 | 36,288.31 | |

EXHIBIT D
PAGE 2 OF 2

COHEN 00677

James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. | No. C-07-2952-WHA <br><br> **DEFENDANTS BARRY COHEN, CHRIS COHEN'S (aka CHRISTENE COHEN) SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:   PLAINTIFF DEL MAR SEAFOODS, INC.

RESPONDING PARTY:    DEFENDANTS BARRY and CHRISTENE COHEN

SET NO.:             ONE

Barry and Christene Cohen ("Responding Parties") hereby submit the following Second Supplemental Response to Plaintiff's First Set of Interrogatories (the "Interrogatories"), propounded by Plaintiff, Del Mar Seafoods, Inc. ("Del Mar").


EXHIBIT E
PAGE 1 OF 5

## GENERAL LIMITATIONS AND OBJECTIONS

1. Responding Parties have not completed their investigation of the facts relating to the case and have not completed its discovery. The following responses, therefore, are provided without prejudice to the production or use of additional information not set forth in the responses. Furthermore, Responding Parties do not waive their right to object to the use at trial of any information identified by the responses.

2. Responding Parties object to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, constitutional or statutory rights of privacy, the trade secrets privilege or any other applicable privilege, or documents containing commercially sensitive information.

3. Responding Parties further object to the Interrogatories to the extent they seek to impose obligations on Responding Parties beyond those established by the Federal Rules of Civil Procedure.

4. Specific objections to each Interrogatory are made on an individual basis in the responses below. The General Responses and Objections are hereby incorporated into the response to each separate interrogatory as though set forth in full therein.

5. Responding Parties renew their objections to Interrogatories numbers 26-30 as they exceed 25, the maximum number of interrogatories allowed under Fed. R. Civ. P. 33.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Responding Parties provide the supplemental responses to Plaintiff's Interrogatories and renew their objections set forth in their Responses to the Interrogatories to the instructions, definitions, and Interrogatories to the extent that they purport to require Responding Parties to locate or produce information not known to them or not in their possession, custody or control. Responding Parties also object to the extent that they purport to impose on Responding Parties any obligations greater than those provided by the Federal Rules of Civil Procedure, case law and other law governing the proper scope and extent of discovery. Responding Parties further object

EXHIBIT E
PAGE 2 OF 5

on the grounds that the definitions of "YOU," "YOUR," "defendants," and "YOURSELF" are overbroad, unduly burdensome and oppressive.

Responding Parties adopt the terms defined by the Plaintiff solely for convenience in responding to the requests herein. Responding Parties do not accept or concede that any of the terms or definitions is appropriate, descriptive or accurate. The above general objections are incorporated into each response below.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 12:

State what YOUR gross earnings were for each voyage of the Vessel between October 31, 2001 and the present.

### RESPONSE TO INTERROGATORY NO. 12:

Responding Parties renew their object to this interrogatory on the grounds that it is overly broad and unduly burdensome as it requests gross earnings for *each* voyage of the Vessel back to 2001, well before the timing of the underlying issues in this case. Responding Parties further object on the grounds that it requests confidential, competitive information and is irrelevant to the underlying issues in this case, namely the amount of the debt remaining under the Note (signed in 2003) and the wrongful arrest of the Vessel. Without waiving these objections, Responding Parties respond as follows with respect to the gross receipts of the Vessel's fishing operations:

| Year | Amount |
|---|---|
| 2003: | $33,750 |
| 2004: | $291,882 |
| 2005: | $222,875 |
| 2006: | $330,804 |
| 2007: | Not yet determined |

### INTERROGATORY NO. 13:

State what YOUR net earnings (gross earnings less expenses) were for each voyage of the Vessel between October 31, 2001 and the present.

EXHIBIT E
PAGE 3 OF 5

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Parties renew their objections to this interrogatory on the grounds that it is overly broad and unduly burdensome as it requests gross earnings for *each* voyage of the Vessel back to 2001, well before the timing of the underlying issues in this case. Responding Parties further object on the grounds that it requests confidential, competitive information and is irrelevant to the underlying issues in this case, namely the amount of the debt remaining under the Note (signed in 2003) and the wrongful arrest of the Vessel. Without waiving these objections, Responding Parties respond as follows with respect to the annual operating income of the vessel (gross receipts minus operating expenses, together with a listing of expenses for each year):

    2003:    $22,154

        Expenses:    $898 (supplies); $8,959 (interest expense); $96 (permits and fees); $621 (taxes and licenses); $1,022 (port fees and similar items). Total operating expenses: $11,596.

    2004:    $24,109

        Expenses:    $100,732 (crew costs); $76,501 (fuel & ice); $24,203 (repairs); $18,542 (supplies); $31,265 (insurance); $8,491 (interest expense); $2,020 (legal and professional fees); $2,193 (taxes and licenses); $3,172 (port fees and similar items); $654 (other operating expenses). Total operating expenses: $267,773.

    2005:    $5,978

        Expenses:    $81,926 (crew costs); $58,222 (fuel & ice); $28,574 (repairs); $13,226 (supplies); $18,566 (insurance); $7,716 (interest expense); $478 (permits and fees); $1,966 (taxes and licenses); $3,490 (port fees and similar items); $2,733 (other operating expenses). Total operating expenses: $216,897.

    2006:    $49,925

EXHIBIT E
PAGE 4 OF 5

Expenses: $124,925 (crew costs); $83,963 (fuel & ice); $24,349 (repairs); $3,499 (supplies); $31,168 (insurance); $4,500 (interest expense(est.)); $2,444 (legal and professional fees); $565 (permits and fees); $1,230 (taxes and licenses); $2,441 (port fees and similar items); $1,795 (other operating expenses). Total operating expenses: $280,879.

2007: Not yet determined

Dated: January 11th, 2008.

DAVIS WRIGHT TREMAINE LLP

By: /s/ James P. Walsh
James P. Walsh
Gwen Fanger
Attorneys for DEFENDANTS and CLAIMANT BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA FISHING COMPANY, INC.

EXHIBIT E
PAGE 5 OF 5