**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. <br><br> And Related Counterclaims | Case No.: CV 07-02952 WHA <br><br> **DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** <br><br> Date: April 3, 2008 <br> Time: 8:00 a.m. <br> Place: Courtroom 9, 19th Floor <br> Hon. William H. Alsup |

I, Joe Roggio, hereby declare:

1.  I am the Controller for Plaintiff Del Mar Seafoods, Inc. ("Del Mar"). I submit this declaration in support of Plaintiff Del Mar's Motion for Summary Judgment or,

1. Alternatively, for Partial Summary Judgment. I have personal knowledge of the facts stated below and if called to testify regarding those facts, I would and could competently testify thereto.

2. In the four years and four months since the Note was signed, Barry Cohen has made only five payments totaling $188,000.

3. Other than those five payments, the required monthly payments of $3,000 or 15% of the gross landing receipts for each and every catch of the Vessel were not made by the Cohens. Del Mar has never agreed to waive these monthly payments.

4. In December, 2006 after Del Mar had received no further payments from the Cohens for more than a year, I called Barry Cohen on his cell phone to discuss his making further monthly payments on the Note. He didn't answer so I left him a voicemail message.

5. In the spring of 2007 I received a phone call from Chris Cohen during which I got the impression that Barry had been physically abusing her.

6. Shortly after it was filed on March 16, 2007, Del Mar learned of the Superior Court ruling denying Barry's motion for attorneys fees and costs in the Port San Luis Harbor District litigation and ruling that neither party (Barry nor the Harbor District) was entitled to receive its attorneys' fees.

7. Del Mar has not received any further payments on the Note from the Cohens after their payment on April 23, 2007.

8. Because Barry hadn't made any monthly payments on the Note in May or June, 2007, and his admission in his declaration filed in support of his motion for attorneys' fees that he might be forced out of business and file bankruptcy if he was not awarded his attorneys' fees in the Avila Beach litigation, and then the subsequent denial of his motion, plus the fact that Chris Cohen and Barry were involved in a divorce, Del Mar had serious reservations about Barry's financial integrity and his ability to satisfy his obligations under the Note and Mortgage. It was for these reasons, and only for these reasons, that Del Mar sought to protect its security for the Note by arresting the F/V POINT LOMA.

///

9. Del Mar has always respected its business relationship with Barry Cohen and conducted itself in good faith in their business dealings.

10. At the time of the arrest, Del Mar's accounting showed the Cohens still owed approximately $180,653 on the Note, including the $188,000 the Cohens had already paid.

11. For more than a year after Barry made his $175,000 lump sum payment Del Mar in November of 2004, Del Mar never received any additional payments from him. In December, 2006, I called Barry Cohen on his cell phone to discuss his making further monthly payments on the Note. He didn't answer so I left him a voicemail message. On or about January 30, 2007, Del Mar received a letter from Barry enclosing a $2,000 payment, in which he stated, in part: "Please credit my account. With this payment, if your analysis was correct, the new balance should be $139,749.79." He also stated "I will try to send you at least $2,000/month, sometimes $3,000," and that he was sick and unemployed. A true and correct copy of that letter has been produced to the defendants as "DMSI 0078."

12. Around the first week of May, 2007, I contacted Del Mar's general counsel, Richard Wagner, and asked him to advise Del Mar regarding a course of action to protect their security for the Note. Mr. Wagner, in turn referred me to an experienced maritime attorney in Long Beach, California, Mark Holmes. I told Mr. Holmes the situation surrounding Del Mar's concerns over Barry's financial situation and sent him the Note, Mortgage, and loan history to review. After Mr. Holmes had had a chance to consider the situation, he recommended that Del Mar proceed to arrest the Vessel.

13. Leading up to, and at the time of, the arrest, Del Mar was not aware of any specific contractual relationship between the Cohens and any third party.

14. I followed the advice of Del Mar's attorneys and directed the arrest of the Vessel solely to protect Del Mar's rights under the Note and Mortgage.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Dated February 28, 2008 at Watsonville, California.

_____
Joe Roggio

-2-