1 **COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
2 Gregory W. Poulos  (SBN 131428)
Max L. Kelley (SBN 205943)
3 190 The Embarcadero
San Francisco, CA  94105
4 Telephone No.:  415-438-4600
Facsimile No.:  415-438-4601
5
**LAW OFFICES OF RICHARD P. WAGNER**
6 Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
7 Long Beach, CA 90802
Telephone: (562) 216-2946
8 Facsimile:  (562) 216-2960
9 Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.
10

11                    UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13                        SAN FRANCISCO DIVISION

14
DEL MAR SEAFOODS, INC.                )    Case No.: CV 07-02952 WHA
15                                      )
                    Plaintiff,         )    **REQUEST FOR JUDICIAL NOTICE**
16                                      )    **IN SUPPORT OF PLAINTIFF'S**
        vs.                            )    **MOTION FOR SUMMARY**
17                                      )    **JUDGMENT OR, ALTERNATIVELY,**
BARRY COHEN, CHRIS COHEN (aka         )    **PARTIAL SUMMARY JUDGMENT**
18 CHRISTENE COHEN), *in personam* and   )
F/V POINT LOMA, Official Number       )
19 515298, a 1968 steel-hulled, 126-gross ton, )
70.8- foot long fishing vessel, her engines, )
20 tackle, furniture, apparel, etc., *in rem*, and )
Does 1-10,                            )
21                                      )
                    Defendants.        )
22                                      )
                                       )
23 _____     )    Date:  April 3, 2008
                                       )    Time:  8:00 a.m.
24 And Related Counterclaims            )    Place:  Courtroom 9, 19th Floor
                                       )    Hon. William H. Alsup
25 _____     )

26        Plaintiff Del Mar Seafoods, Inc., by and through its attorneys, hereby requests the
27 Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following facts:
28 / / /

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2304

-1-                          Case No.: CV 07-02952 WHA

REQUEST FOR JUDICIAL NOTICE

1      1.     Defendant Barry Cohen was a plaintiff in a prior civil case commenced in San

2    Luis Obispo County Superior Court entitled *Barry A. Cohen; Leonard A. Cohen; Olde Port*

3    *Inn, Inc; and Olde Port Fisheries, Inc. v. Port San Luis Harbor District*, Case No. CV

4    040897.

5      2.     In that case on November 16, 2005 Defendant Barry Cohen swore a

6    declaration under oath that losing his motion for attorneys fees "may actually cause me to be

7    forced out of business and into bankruptcy . . ." (pg. 11, lines 5-6).   A true and correct copy

8    of Cohen's declaration is attached as **Exhibit 1**.

9      3.     In that case on March 16, 2007 the San Luis Obispo County Superior Court

10    issued a Ruling denying attorneys fees to both sides.   A true and correct copy is attached as

11    **Exhibit 2**.

12

13    Dated:  February 28, 2008          COX, WOOTTON, GRIFFIN,
                            HANSEN & POULOS, LLP

14                               Attorneys for Plaintiff
                            DEL MAR SEAFOODS, INC.

15

16

17                     By: _____

18                            Max L. Kelley

19

20

21

22

23

24

25

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

26

27

28

# EXHIBIT 1

01/22/2007 11:11 FAX 925 933 4126     MILLER STARR     ☑014

1   GEORGE B. SPEIR (Bar No. 78276)
    ARTHUR F. COON (Bar No. 124206)
2   CAROLYN E. NELSON (Bar No. 238526)
    MILLER, STARR & REGALIA
3   A Professional Law Corporation
    1331 N. California Blvd., Fifth Floor
4   Post Office Box 8177
    Walnut Creek, California 94596
5   Telephone:     (925) 935-9400

6   Attorneys for Plaintiffs
    BARRY A. COHEN, LEONARD A. COHEN,
7   OLDE PORT INN, INC., and OLDE PORT
    FISHERIES, INC.

**FILED**

JAN 22 2007

SAN LUIS OBISPO SUPERIOR COURT
BY *Nancy G. Gudino*
N. Gudino, Deputy Clerk

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF SAN LUIS OBISPO

11

12   BARRY A. COHEN; LEONARD A.          Case No. CV 040897
     COHEN; OLDE PORT INN, INC.; and
13   OLDE PORT FISHERIES, INC.,          DECLARATION OF BARRY COHEN IN
                                         SUPPORT OF PLAINTIFFS' MOTION FOR
14                Plaintiffs,            ATTORNEYS' FEES

15   v.                                  Date:  February 21, 2007
                                         Time:  9:00 a.m.
16   PORT SAN LUIS HARBOR THE            Judge: Hon. Barry T. LaBarbera
     DISTRICT; and DOES 1 to 50, inclusive,  Location: 801 Grand Avenue
17                                                 San Luis Obispo, CA
                 Defendants.
18                                       Complaint Filed: October 22, 2004
19                                       Trial Date: May 8, 2006

20   AND RELATED CROSS-ACTION.

21

22        I, Barry Cohen, declare:

23        1.     I am an individual currently residing in Aptos, Santa Cruz County,

24   California.  I am a plaintiff in this lawsuit and an owner of plaintiff Olde Port Fisheries, Inc.

25   ("OPF").  The facts stated in this declaration are true as of my own personal knowledge, and if

26   called as a witness I could and would testify competently to those facts.

27        2.     I am a fisherman and have been for most of my adult life.  I built the Olde

28   Port Inn restaurant and OPF facilities on the Harford Pier (the "Pier") starting in approximately

CRAA\44158\683417.3                    -1-

DECL OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   1964. I had operated a wholesale/processing fish busi .   on the Pier for over 40 years, until the

2   actions of Defendant Port San Luis Harbor District ("the District") in mid-to-late 2004

3   drastically and fatally prevented me from operating my business on the Pier. Without the

4   necessary, reasonable truck access, I was virtually "kicked off the Pier." These actions of the

5   District, among others, breached the settlement and lease agreements I made over ten years ago

6   with the District and resulted in the filing of this lawsuit.

7           3.      The District has been found by the jury and the Court to have breached

8   several contracts it has with me and the other plaintiffs. The 1994 Lease that the District

9   breached was required by and incorporates the 1993 Settlement Agreement. The 1993

10  Settlement Agreement and 1994 Lease embody the settlement of my previous lawsuit against the

11  District in the early-1990s. That lawsuit concerned the District's plan to demolish the historic

12  warehouse canopy on the terminus of the Pier. This historic structure serves as the supporting

13  structure for the OPI restaurant and OPF buildings, as well as the restaurant roof.

14          4.      I hired the law firm of Miller Starr Regalia ("MSR") to represent me in

15  that lawsuit. Before hiring MSR, I sought the advice of my local counsel. Richard Carsel, my

16  attorney in the San Luis Obispo area, informed me that I would need an attorney with special

17  experience with CEQA issues. He suggested MSR, which then had offices in Oakland and

18  Walnut Creek, California. Following Mr. Carsel's recommendation, I met with George Speir

19  and Arthur F. Coon of MSR, and I hired MSR because they seemed most qualified to handle my

20  case and there were no comparable alternative firms in the San Luis Obispo area that I knew of

21  to handle issues of this nature, complexity and importance.

22          5.      MSR instituted litigation on my behalf in which I was successful in

23  obtaining a preliminary injunction against the District's threatened unlawful demolition of the

24  canopy. After substantial additional litigation, but before trial and as an alternative to continuing

25  that lawsuit, the District and I made an agreement that I would dismiss the lawsuit in return for

26  the District's agreement to, among other things, the following material conditions:

27          a.      The District would not demolish the canopy;

28

CRAAW4158\683417.3                              -2-

1          b.      The District would perform certain duties, such as enforcement of

2    parking regulations on the Pier, repair and maintenance of the Pier, etc.;

3          c.      The District would grant certain rights to me, my businesses and

4    my customers, such as guaranteed fish semi-truck access, a specific minimum number of public

5    parking spaces on the Pier, and non-exclusive parking rights on all other the District property;

6    and

7          d.      The District would construct an additional building, and the

8    District and I would enter into a lease for the additional site and building on certain terms and for

9    which I would pay fair rent.

10         6.      In return for a dismissal of the lawsuit, the District agreed to these

11   conditions and we memorialized them in the 1993 Settlement Agreement, and later the 1994

12   Lease. Accordingly, I dismissed the lawsuit. However, the District has now breached the

13   material terms and conditions of our settlement contained in both the 1993 Settlement

14   Agreement and the 1994 Lease.

15         7.      I fulfilled my obligation to the District by dismissing the lawsuit in 1993.

16   On the other hand the District, after receiving the benefits of this dismissal, chose not to fulfill its

17   obligation to honor the terms and conditions of our underlying settlement agreement, namely, the

18   terms and conditions of the 1993 Settlement Agreement and the 1994 Lease.

19         8.      As a result of my initial lawsuit against the District, I first considered the

20   issue of an attorneys' fees clause because the 1976 Lease did not have one. I had to pay my

21   attorneys' fees out-of-pocket even though I did nothing to bring about the circumstances giving

22   rise to the District's illegal decision to demolish the canopy. I decided I had to protect myself in

23   the event that the District might again take unlawful action and/or breach some aspect of the

24   1976 Lease and/or the settlement agreement. An attorneys' fees clause, I hoped and believed,

25   would act as a deterrent and afford me some protection. If the District still persisted and

26   deprived me of my legal rights, and if I prevailed in a legal and/or equitable action, then the

27   District would be held accountable and responsible to pay my expenses, costs and attorneys'

28

CRAA\4158\683417.3                          -3-

1  fees. This is exactly what the District agreed to do on page 14 of the 1993 Settlement

2  Agreement, at paragraph 11 ("Attorneys' Fees")

> If any litigation be commenced between the parties hereto concerning this
> agreement or the rights and duties of either Cohen or The District hereunder,
> whether it be an action for damages, equitable or declaratory relief, the prevailing
> party in such litigation, in addition to such other relief as may be granted by the
> court, shall be entitled to recover from the other party reasonable expenses,
> attorneys' fees and costs.

9.      The District agreed to have "Attorneys' Fees" clauses in the 1993

Settlement Agreement and the 1994 Lease, and to "tie" an attorneys' fees clause to the 1976

Lease. The "tie" for attorneys' fees to the 1976 Lease comes from the 1993 Settlement

Agreement, page 16, paragraph, 15 ("Good Faith"): "The parties acknowledge and agree that

each party hereto has an obligation of good faith and fair dealing, to conduct himself or itself in

such a fashion so as not to deprive any other party of the benefits to be derived from this

Agreement *or from the Lease.*" (Italics added.) The "Lease" referred to was defined in the 1993

Settlement Agreement on page 1 in the recitals: "WHEREAS, Cohen and The District are

parties to a lease agreement dated January 1, 1976 ('Lease'), pursuant to which Cohen leases

certain property from the District." So a violation of the 1976 Lease is also a violation of the

"Good Faith" clause of the 1993 Settlement Agreement, which includes an attorneys' fees

clause.

10.     Although over the years the District did not live up to all of its continuing

contract obligations, as shown by its lack of parking enforcement, allowance of exclusive RV

parking, failure to maintain the Pier, etc., I did not take any legal action against the District. I

complained to the District about its failures to uphold its end of the agreements, but I did not

want another legal battle with the District. A lawsuit would be my absolute last recourse.

11.     When it became clear that the District's threat of breaches regarding

guaranteed truck access and parking were real and imminent, my son, Leonard, and I, again

following Richard Carsel's advice, retained MSR to try to resolve the dispute. We retained the

firm again because of its affiliation with the prior lawsuit, and its qualifications, capability, and

familiarity with the facts and issues. MSR was uniquely acquainted with the parties and

CRAA\4158\683417.3                              -4-

1  contracts at issue, as it had handled the prior litigation and participated in negotiating and

2  drafting the 1993 Settlement Agreement and 1994 Lease. No local firm shared this familiarity

3  with the issues, parties, documents and evidence, and we felt MSR was really our only wise

4  choice.

5        12.    Unfortunately, at the June 2004 the District Commissioners' Meeting, the

6  District took action that I could not live with. The District reconfigured the parking areas on the

7  Pier terminus in such a manner as to deprive me of the settlement agreement's guaranteed

8  twenty, but in no event less than seventeen, public parking spaces. I was also deprived of the

9  reasonable fish truck access guaranteed by the 1994 Lease. Either way, at any given time, I

10  could only have one or the other, but not both.

11        13.    At that meeting I pleaded with the District's Commissioners to reconsider.

12  I explained that the action the District was about to take would be in direct violation of our 1993

13  Settlement Agreement and our 1994 Lease. I reminded Commissioner Carolyn Moffat that she

14  was the Commissioner who signed the 1993 Settlement Agreement on behalf of the District. I

15  explained there were other viable options that would accomplish the same goals the District said

16  it wanted to achieve – primarily an open 18-foot fire lane the length of the Pier – without

17  violating the agreements the District had with me. Commissioner Moffat said she was sorry that

18  this would hurt our customers, and in turn hurt me, but she voted for the new parking

19  configuration anyway. All but one of the Commissioners voted in favor of the new

20  configuration, without even looking at the 1993 Settlement Agreement or the 1994 Lease, even

21  though copies of the agreements were available in the same building as the meeting. The

22  Commissioners apparently did not care enough about their obligations to even review the

23  agreements to confirm what their obligations were under those agreements, prior to voting on an

24  action that would clearly breach them.

25        14.    Still, I wanted to avoid any legal action if at all possible. I had Arthur

26  Coon, our attorney from MSR, come to the next meeting of the Harbor The District Commission

27  to speak with the Commissioners in an effort to avoid any legal action. He explained in detail

28  how the District could comply with its contracts with the Cohens and its own Master Plan and

CRAA\4415R\683417.3                    -5-

1   Coastal Act obligations in a way that would be a "win-win." The Commissioners simply

2   thanked Mr. Coon for his concerns and moved on to the next agenda item without further

3   comment or acknowledgement. Nothing changed. Next, my son Leonard and I offered the

4   District up to a $20,000 loan to help cover the cost to use another parking/truck access option

5   that both the District and I could live with. The District rejected the offer, which was formally

6   made in a July 2, 2004, letter to the District. We tried to meet with CDF to explain and resolve

7   the problem, but CDF, which is the District's designated fire protection agent, would only meet

8   with the District. I tried very hard to find a compromise that would avoid litigation, but the

9   District would not budge one inch off their position. It did not even try to honor its contracts.

10          15.     Eventually, the District started placing "warning" tickets on "illegally"

11  stopped vehicles (mostly the semi fish trucks). Finally, the District had the CDF Fire Marshall

12  issue an actual citation to a semi fish truck. Once that happened, I had no choice but to seek

13  legal redress. I notified Art Coon who filed a complaint. We attempted mediation with Judge

14  Conklin, and CDF's Mike Harkness even attended a session at the Judge's request to see if a

15  solution to the pier configuration problem could be reached, but the District would still not agree

16  to honor its contract obligations.

17          16.     The District put me in an impossible position that left me no choices or

18  options. I did nothing to provoke this lawsuit and in fact made great efforts to avoid it. In spite

19  of my repeated pleas, the leases, the settlement agreement, our attorney's public explanation to

20  the Commissioners, and our monetary offer, the District knowingly chose to breach its

21  settlement agreement. If I wanted to maintain and protect my bargained-for rights, then I was

22  forced to seek this Court's assistance.

23          17.     Since the District chose to deprive me of the full advantage of the leases

24  and settlement agreement and drove my wholesale fish processing operation out of business, I

25  stopped paying rent under the 1994 Lease and wanted to renegotiate a new "fair" rental value for

26  the 1994 Lease. But the District chose, instead, to send me a 15-day "notice of eviction" to evict

27  me for nonpayment of rent. I responded in good faith by tendering a $6,000 adjusted rent check

28  with an explanation that this was a good faith effort toward payment of a reasonably reduced

CRAA\415B\683417.3                                  -6-

1   rent. If the District and I could not agree on what a "fair" rent should be, as required in the 1993

2   Settlement Agreement, I felt that the only option was to make a good faith tender and let a court

3   of law make the decision as to the fair amount for us given the District's material breaches of our

4   Settlement Agreement.

5          18.     The District rejected my good faith offer, returned the check and notified

6   me that only the full rent amount would be acceptable. The District then sued me in a cross-

7   complaint, asking for full rent and seeking to evict me for not paying such rent. My position,

8   going into court, remained the same. I should pay whatever the judge or jury decided to be a fair

9   reduced rent for the premises due to the District's breach of the leases and settlement agreement.

10  For its part, the District went into court asking for full rent only, plus late fees and interest, and

11  my eviction from the premises.

12         19.     I am a prevailing party in this action because I received the "greater relief"

13  on the contract claims. From the beginning of this dispute, when the District announced its

14  intention to implement the interim shared-use plan, my main objective was to stop the District's

15  breaches and force the District to comply with its settlement agreement obligations. To try to

16  achieve this objective, my attorney drafted a public entity claim letter demanding that the

17  District "do whatever needs to be done to comply with its legal obligations." When it became

18  clear that the District would not comply with its obligations, my attorney filed a Complaint

19  seeking to remedy the District's stubborn refusal to honor its agreements to provide the required

20  public parking and truck access, and to adequately repair and maintain the Pier. Throughout the

21  litigation, my primary concern remained the District's breaches of the contracts at issue, i.e., the

22  settlement agreement. After more than 2 years of litigation during which the District refused to

23  acknowledge its breaches or offer to perform, I finally achieved my goal of proving those

24  breaches and compelling the District to comply with its obligations when the Court issued its

25  Statement of Decision and entered Judgment granting me $50,000 in past damages (as awarded

26  by the jury) and significant equitable relief, and setting a fair reduced rent. The declaratory

27  judgment and specific performance decree granted me substantially all redress I sought to

28  achieve by this law suit.

CRAA\44158\683417.3                                        -7-

20.    In addition to achieving my primary litigation objectives, this relief far
outweighs any relief granted to the District. From the outset, the District's contentions have
been that it did breach the contracts and did not have to comply with what we contended were its
obligations under the contracts. The District also made a claim against me for indemnity,
ejectment, and full back rent under the agreements. The Court's Judgment—which found that
the District had and breached contract obligations to the plaintiffs, that the District must comply
with those obligations, that I need not indemnify the District, that the District's claim for
ejectment was rejected, and that I owe only partial back rent because of the District's breaches—
is therefore a complete failure for the District. It was not the District's primary litigation
objective to be declared and found liable for breach of all the contracts, to pay my damages, to
be forced to reduce my rent to half and allow me to remain in possession of the premises, and to
be ordered to permit parking truck access, remove RVs from Herford landing and require the
pier walkway as we had requested. While the Court ordered that I pay the District $44,808.98 in
back rent on the cross-complaint, *this actually represented a success for me on Defendant's
breach of contract claim.* The new "fair" amount of "back rent due" awarded to the District was
actually a net loss to the District of one-half of the original "fair" amount of "rent due" under the
1994 Lease (before the District's breach). Therefore, the District suffered a net loss of rent
income under the 1994 Lease by one-half of the rent otherwise due because of their breach of the
1994 Lease. Moreover, the District will suffer further loss of rent income under the 1994 Lease
by one-half until they comply with the 1993 Settlement Agreement and the 1994 Lease, which
again, will be a monetary gain to me. The amount awarded by the Court to the District was less
than my $50,000 damages award, and less than half of what the District demanded and excludes
late fees. Essentially, the Court found that I was substantially justified in not paying rent due to
the District's material breaches, ruling in favor of my request for an adjusted "fair" rent and at
the same time verifying that the District was in breach of the leases and settlement agreement
and could not expect payment of full rent, just like I had said. At the outset, I had offered partial
rent – which the District rejected, insisting on full rent – so this partial rent award is no victory at
all for the District. When the District's minimal, partial relief, and failure to achieve its primary

CRAA\4415\683417.3                           -8-

1  litigation objectives, is compared with my substantial equitable and monetary awards, and

2  achievement of our primary litigation objectives, it is clear that we obtained the greater relief in

3  this action.

4          21.    The District never made any sincere effort to reach an agreement with me

5  or any of us to settle our dispute or this lawsuit. It is also a fact that the District, at its sole

6  discretion, could have corrected and cured its breaches and fulfilled its obligations at any time,

7  before the trial, during the trial and now. The District is the only one, between us, that has the

8  authority and ability to make things right. However, the District has chosen not to do so.

9          22.    I believe, and with good cause, that one of the District's strategies was to

10 spend its insurance company's money to multiply and expand this litigation so as to force

11 Leonard and I to expend all their personal resources until none were left and the District could

12 win by default. Why else would such a basic decision-making process over parking, truck

13 access and a fire lane be turned into a multi-million dollar lawsuit, especially when there were

14 attorneys' fees clauses benefiting the prevailing party who obtained either damages or equitable

15 relief? At this point, this lawsuit has cost me so much in time, money and personal hardship,

16 that even if I were awarded all of the expenses, costs and attorneys' fees, it would still take me

17 years, if ever, to be made whole. I have been forced to take out loans on and finally to put my

18 house up for sale to finance this lawsuit in an effort to enforce the contracts with the District. I

19 ask the Court to consider the overall fairness and justice of the outcome of the jury trial and the

20 Court's rulings on plaintiffs' equitable claims. With their eyes wide open, the District

21 knowingly and in bad faith has purposely deprived me, my son and our family businesses of the

22 material benefits under their current agreements with me, which they promised me in 1993, if I

23 would dismiss the lawsuit against them.

24          I find it ludicrous that the District would even think to ask this Court or me for

25 anything other than forgiveness. Again, the District, with their eyes open, knowingly and in bad

26 faith "broke" their word to me. They "breached" all our leases between us. They violated the

27 1993 Settlement Agreement after they enjoyed a dismissal of the previous lawsuit. They deprived

28 Leonard and I of our Lease rights. They have hurt and are still hurting our businesses and even

CRAA\41158\683417.3                                      -9-

1   "ran" the major commercial fishing activities (which is in violation of the California Coastal Act)

2   out of the Harbor. They let the Pier deteriorate and fall into neglect. They knowingly allowed our

3   customers to get hurt walking the Pier because of their neglect. They displaced our customers'

4   parking spaces with RVs. They used "scorched earth" tactics during this lawsuit to drain all of our

5   resources. They attacked Leonard and I personally. They invaded our privacy. They knowingly

6   lied about me. They were found by the judge and jury to have "breached" our leases and

7   Settlement Agreement, yet they continue on. Threatening me with an appeal of this Court's

8   decision, I know now without a doubt their motives and actions. They feel no remorse for acting

9   like a bully throughout this litigation, forcing us to trial, forcing us to establish liability and

10   breaches, but still failing to comply with this Court's order. Even today, they still have not made

11   any effort to do the "right thing."

12       The District has acted in bad faith with me and now with this Court, also. In my

13   opinion the District has not made a sincere effort to comply with this Court's orders. The District

14   has tried again and again to mislead this Court. Today they stand in defiance of this Court's

15   orders. The District seems to think they are above the law, but that is not how I understand

16   the legal system to work. I have also personally watched and listened to them mislead and be less

17   than truthful to the Coastal Commission.

18       It is incredible that they have the temerity to come into this Court, claiming to be

19   the prevailing party. They are also asking this same Court, that they defy, to order Leonard and I

20   to pay their costs and their attorneys' fees, even though they acted in such bad faith and caused

21   such harm. Have these people absolutely no conscience at all? Here are the facts: These are the

22   **people that promised in 1993 to pay our reasonable expenses, attorneys' fees, and costs if**

23   **they acted in such a fashion as to deprive us of the benefits of our leases and settlement**

24   **agreement.** Well, here we are today and that's exactly what they did: "**deprive us of the benefits**

25   **of our leases and settlement agreement,**" with their eyes wide open. I am astonished that the

26   District can stand before you and with a straight face say they deserve anything other than

27   punishment for their behavior, acting as if they did nothing wrong, caught "red

28   handed," and yet not be embarrassed for their defiance of this Court's orders, for their disregard of

CRA\M4158\683417.3       -10-

1   other's rights, and their total lack of good faith and fair dealing. The District badly hurt my son

2   and I, our families, and our businesses.

3        In my humble opinion, it would not be fair to my son and I if we were denied

4   an award of expenses, attorneys' fees, and costs. After all, that is what the District promised us in

5   1993. Denial of our total lawsuit expenses may actually cause me to be forced out of business

6   totally and into bankruptcy, only because I stood up for my clear legal rights when they were

7   being knowingly and intentionally violated by the District.

8        23.   In summary:

9             a.   The District made an agreement with me in 1993, from which they

10  have already enjoyed the benefits and are now depriving me of my benefits.

11            b.   The District was found by the judge and the jury to have breached

12  our leases and settlement agreement.

13            c.   The District agreed to an "Expenses, Attorneys' Fees, and Costs"

14  clause as part of our 1993 Settlement Agreement.

15            d.   The District agreed to a "Good Faith" provision in our 1993

16  Settlement Agreement.

17            e.   The District voted to hurt our businesses before even reviewing our

18  agreements.

19            f.   We offered The District up to a $20,000 loan to help fund a

20  mutually agreeable option.

21            g.   The District made this lawsuit as expensive as they possibly could to

22  "clean us out," hoping to "win" by default.

             (i)    The District used insurance money to finance this litigation.
23           (ii)   We used our money to enforce our rights and stand up to The

24  District's tactics.

            h.   The District has not complied with the judge's order.
25
             i.   The District did not use "good faith" and "fair dealings" in their
26
    agreements with me.
27

28

1              j.      We had to pay and owe over two million dollars just to protect our

2        rights from the same people that "gave" them to us.

3              k.      We did all we could to avoid this lawsuit, but the District was the

4        one that had the "power" to make things right. They chose not to avoid the lawsuit.

5              24.     For all the reasons previously stated, and the Court's orders and the jury's

6        findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who

7        obtained the greater relief under the contracts. Furthermore, I ask the Court to enforce those

8        contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of

9        our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact

10       circumstances, in exchange for me dismissing my worthy lawsuit against the District.

11       Furthermore, I ask for any other award this Court deems appropriate.

12             I declare under penalty of perjury under the laws of the State of California that the

13       foregoing is true and correct. Executed this _____ day of January, 2007, at Aptos, California.

14

15

16                                                              _____

                                                                BARRY A. COHEN

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\4415\683417.\                           -12-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    j.    We had to pay and owe over two million dollars just to protect our

2    rights from the same people that "gave" them to us.

3          k.    We did all we could to avoid this lawsuit, but the District was the

4    one that had the "power" to make things right. They chose not to avoid the lawsuit.

5          24.    For all the reasons previously stated, and the Court's orders and the jury's

6    findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who

7    obtained the greater relief under the contracts. Furthermore, I ask the Court to enforce those

8    contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of

9    our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact

10   circumstances, in exchange for me dismissing my worthy lawsuit against the District.

11   Furthermore, I ask for any other award this Court deems appropriate.

12         I declare under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct. Executed this _21st_ day of January, 2007, at Aptos, California.

14

15

16                                              BARRY A. COHEN

17

18

19

20

21

22

23

24

25

26

27

28

CRAAWA1513683417.3                         -12-

01/22/2007 11:13 FAX 925 933 4126     MILLER STARR          ☑027

1

## PROOF OF SERVICE
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
2      San Luis Obispo Superior Court, Case No. CV 040897)

3      I, Karen Irias, declare:

4      I am a resident of the State of California and over the age of eighteen years, and not
a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post
5   Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within
documents:
6

DECLARATION OF BARRY COHEN IN SUPPORT OF PLAINTIFFS'
7   MOTION FOR ATTORNEYS' FEES

8    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.
9

10   ☐    by transmitting via electronic e-mail, to the following e-mail addresses indicated
below on this date before 5:00 p.m.

11   ☒    by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Walnut Creek, California addressed as
12         set forth below.

13   ☐    by placing the document(s) listed above in a sealed _____ envelope
and affixing a pre-paid air bill, and causing the envelope to be delivered to a
14         _____ agent for delivery.

15   ☐    by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.
16

17   Martin P. Moroski                  David M. Cumberland
Adamski, Moroski, Madden & Green     Cumberland, Contes & Duenow, LLP
18   P. O. Box 3835                        550 Dana Street
San Luis Obispo, CA 93403-3835        San Luis Obispo, CA 93401-3429
19   Tel: (805) 543-0990                   Tel: (805) 541-4200
Fax: (805) 543-0980                   Fax: (805) 541-4293
20   e-mail:                             e-mail: dmc@ccdlawfirm.com
moroski@adamskimoroski.com
21                                   Co-Counsel for Defendant and Cross-
*Overnight/Hand Delivery Only:*       Complainant PORT SAN LUIS
22   6633 Bay Laurel Place                 HARBOR DISTRICT
Avila Beach, CA 93424

23   Attorneys for Defendant and Cross-
Complainant PORT SAN LUIS
24   HARBOR DISTRICT

25

26

27

28

CRAAM\415B\683417.3                -13-

01/22/2007 11:13 FAX 925 933 4126        MILLER STARR                    ☒028

1    *Courtesy Copy:*

2    Hon. Barry T. LaBarbera
     San Luis Obispo Superior Court
3    Department 2
     1035 Palm St., 3rd Fl.
4    San Luis Obispo, CA  93408
     e-mail:
5    Barry.LaBarbera@slo.courts.ca.gov

6        I am readily familiar with the firm's practice of collection and processing
     correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal
7    Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I
     am aware that on motion of the party served, service is presumed invalid if postal cancellation date
8    or postage meter date is more than one day after date of deposit for mailing in affidavit.

9        I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.
10

11       Executed on January 22, 2007, at Walnut Creek, California.

12

13                                        _____
                                                   Karen Irias
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CRAA\4415S\683417.3                          -14-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

# EXHIBIT 2



FILED
SAN LUIS OBISPO
SUPERIOR COURT

MAR 1 6 2007

COURT EXECUTIVE ....... ........

_____
BY _____ DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

BARRY A. COHEN; LEONARD A. COHEN; OLDE PORT INN, INC., and OLDE PORT FISHERIES, INC.,

               Plaintiffs,

v.

PORT SAN LUIS HARBOR DISTRICT; and DOES 1-50, inclusive,

               Defendants.

AND RELATED CROSS-ACTION

Case No.: CV040897

RULING ON THE PARTIES' MOTIONS FOR ATTORNEYS' FEES AND COSTS AND THE RESPECTIVE PARTIES' MOTIONS TO TAX COSTS (AND PLAINTIFFS' MOTION TO STRIKE DISTRICT'S MEMORANDUM OF COSTS)

      Defendants request that the court take judicial notice of certain trial court rulings and declarations of counsel filed in other local cases. The requests are denied because such documents are not relevant to the court's decision on the pending matters. Both parties object to certain declarations of counsel and various parties or other persons. Those objections are sustained as those declarations are not relevant to the issues presented herein.

      The threshold question presented is whether any party actually prevailed in this lawsuit. As they did throughout the pendency of this case, both sides vigorously

1

1    contend directly opposite positions.

2        At the outset, Plaintiffs contend that, at least, Barry Cohen should be awarded

3    costs as the prevailing party because he obtained a net monetary award. (*Pirkig v.*

4    *Dennis* (1989) 215 Cal.App.3rd 1560, 1566). The Plaintiffs' position is simply not

5    supported by the judgment. It is clear that Barry Cohen was awarded $50,000 but the

6    Defendant also was awarded approximately $45,000 in back rent and additional money

7    in future rents. Barry Cohen argues that he should be credited with the court-imposed

8    fifty percent rent reduction as a part of his successful litigation. In order to recognize

9    such an argument, the court would have to ignore the actual dollars encompassed in the

10   judgment which by its terms includes future rent to the date of the lease termination.

11   This case was not a clear victory in this respect for Barry Cohen such that the asserted

12   net $5,000 recovery would require his designation as the prevailing party on the 1994

13   lease. Moreover, Plaintiffs' contention in this regard only relates to costs (CCP §1032)

14   and not to attorneys' fees (CCP §1717). Plaintiffs cite no authority to support this

15   contention in the context of attorneys' fees. On the other hand, Defendant argues that it

16   prevailed in this cause against Barry Cohen because the court awarded some back and

17   future rent. However, the court also denied Defendant's ejectment claim which would

18   have terminated the lease, certainly a goal of Defendant. Thus the court finds no

19   prevailing party on the causes which related to the 1994 lease.

20       The parties' arguments on the remaining causes again claim victory for each.

21   The court has reviewed the complaint as a starting point. (*Hru v. Abbara* (1995) 9

22   Cal.4th 863, 876) Defendant is correct that the complaint is drawn largely to request a

23   prayer for money damages. Defendant is also correct that while equity causes and

24   prayers were included, they did not comprise a significant portion of the allegations.

25   Further, Defendant is correct that Plaintiffs never requested early rulings on the equity

26   causes either by pretrial motion or by requests to proceed in equity at trial before the

27   legal causes for damages. Last, Defendant is correct that Defendant prevailed on all the

28   legal claims except one. The court has reviewed the pleadings upon motion practice,

2

the excerpts of various opening statements and arguments, and the parties' settlement

conference briefs. (Ibid.)

Plaintiffs' settlement brief does not support their contention that they were

successful on the legal claims in any respect, even as to Barry Cohen. The court could

certainly attempt to address each of the legal causes and prepare findings as to each

beyond those contained in the Statement of Decision and Judgment. The court declines

to do so. The court finds that Defendant prevailed on the legal claims.

However, the court recognizes that the jury and the court found that Defendant

breached every contract.  It is for that reason that the court was unwilling to simply

allow Defendant to continue the breaches with impunity. The court made a concerted

attempt to separate those breaches which could be rectified through equity from those

breaches upon which Plaintiffs' proof failed or upon which fairness would not allow

equity, such as the pier repairs assertions made by Plaintiffs.

Defendant argues that the equity causes wherein Plaintiff's prevailed were minor

matters. However, Plaintiffs are correct that Plaintiff's settlement agreement and their

attempts prior to the lawsuit to secure Defendant's cooperation at least with parking

availability, truck stoppage, and pedestrian safety indicates that these obligations were a

goal Plaintiffs sought to achieve for years. They sought damages eventually, but it is

not tenable to minimize the importance to all Plaintiffs of these failures by Defendants.

Defendant continues to argue that the parking spaces are and have been provided.

Defendant continues to ignore the jury and court findings to the contrary. Defendant

continues to this day to assert that it did not breach its specifically delineated obligation

to allow pier access for trucks which was critical to Plaintiffs' fish business. It is clear

to this court that if Defendant complies with the court's order in equity, Plaintiffs would

be able to operate their businesses in the manner contemplated by the parties to the

contract: the goal was to maximize business profits so both parties would achieve the

maximum benefits from the contracts. Plaintiffs were successful on their equity claims.

The claims on the 1998 lease were denied as unnecessary to achieve a fair result. The

3

1   equity claims on the pier repairs were denied because Plaintiffs failed to prove that the
2   pier was unable to support the trucks. In addition the pier repair claims would not have
3   directly benefited Plaintiffs even if ordered. Defendant never attempted to prove that
4   the pier could not support the fish trucks and Plaintiffs never proved that the pier
5   actually needed repairs in order to allow Plaintiffs to operate their businesses (except
6   the walkway). The Defendant's equity successes were certainly not part of its litigation
7   objectives. The lack of declaratory relief in some respects and the lack of an order for
8   specific performance of repairs has never been a goal of the Defendant. The court did
9   not order any injunctions for reasons which had little, if anything, to do with the
10  Defendant's arguments or evidence or any other presentation.

11       Although the court had little trouble discerning that Plaintiffs were not
12  prevailing parties in any respect, the question of Defendant's status as such was
13  problematic and turned on the court's assessment of the effects of the equity claims. As
14  a starting point, Defendant's settlement brief contains a summary of its contentions on
15  page 4. Of the six contentions, Defendants prevailed on one (except as to Plaintiff
16  Barry Cohen where a small damage award was ordered). While Defendant continues to
17  argue that equitable relief should not be available to Plaintiffs, this court ordered such
18  relief, albeit on a limited basis. In the final analysis, the Defendant did not achieve a
19  "simple, unqualified win." (Id. at p. 876 citing *Deane Gardenhome Association v.*
20  *Denktas, et al.* (1993) 13 Cal. App.4[th] 1394, 1398). The contract attorney fees clause in
21  the settlement agreement, upon which most of the equitable relief was granted, includes
22  equitable causes of action. The results are mixed. (Ibid.) The court finds that Plaintiffs
23  prevailed on their equity causes, one legal cause, and on the liability element of each
24  legal cause. Thus, the court finds that neither side prevailed. (CCP §§1032, 1717; *Scott*
25  *Co. v. Blount, Inc.* (1999) 20 Cal.4[th] 1103).

26       Defendant served settlement offers on each Plaintiff which is a basis for
27  Defendant to claim post offer costs. (CCP §998) The offer to Barry Cohen would have
28  provided zero dollars to him; Barry Cohen received an award. Defendants cannot be

4

1   awarded costs pursuant to CCP 998 as to Barry Cohen. The offer to Leonard Cohen

2   would have provided payment to him of $101,000. Defendant argues that Leonard

3   Cohen received nothing as a result of his lawsuit. It is true that Leonard Cohen received

4   zero dollars from the jury. However, Leonard Cohen did receive equity relief from the

5   court in two respects. First, the court ordered Defendants to actually provide the

6   parking spaces required by the contracts. While Defendants continue to argue that the

7   defined spaces provide that parking, the jury and the court disagreed with the contention

8   because of the truck blockage and the Defendant's failure to effectively and consistently

9   enforce parking restrictions. Second, the truck stoppage space ordered by the court

10  would inure to the benefit of Leonard Cohen because parking space availability would

11  be increased. Plaintiffs and Leonard argue that since the cost to Defendant to perform

12  their obligations under the equity order would be in excess of the CCP 998 offer to

13  Leonard Cohen, Leonard achieved a result valued in excess of the offer. Although there

14  is no direct case authority for that proposition, the court finds Leonard's argument

15  persuasive. The lawsuit began and ended with a contention by Plaintiffs that parking

16  and truck access were critical to their expectations under the contracts. They obtained

17  orders from the court in equity which will require Defendants to perform these

18  obligations. Defendants have appealed those orders on grounds, inter alia, that

19  Plaintiffs failed to prove causation and damages so that equity is unavailable. This

20  court disagreed with Defendant and Leonard did obtain a result which had a value on

21  the basis of probable costs of repair or construction in excess of the offer to settle.

22  Defendant is not entitled to costs from Leonard pursuant to CCP 998.

23       Plaintiffs have filed a motion for prejudgment interest. The court has

24  insufficient information on what money is owed and awaits further information on that

25  issue. Plaintiffs also filed pleadings regarding an allegation that Defendant has not

26  ///

27  ///

28

5

03/16/2007 FRI 10:49 [TX/RX NO 9024]

1   performed as ordered by the court. Again, there is insufficient information to rule at

2   this time. The motions to tax costs and to strike the Defendants Memorandum of Costs

3   are rendered moot by this ruling.

4

5   DATED: March /6 2007

6                                                    BARRY T. LABARBERA

7                                                    Judge of the Superior Court

8

9

10  BTL:sv

11

12  w:\courtops\svuladez\labarbera\bv040897.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

03/16/2007 FRI 10:49  [TX/RX NO 9024]

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN LUIS OBISPO
### Civil Division

## CERTIFICATE OF MAILING

| | |
|---|---|
| BARRY COHEN<br><br>        VS.<br><br>PORT SAN LUIS | CV040897 |

Speir, George B.
        Attorney for Plaintiff
MILLER, STARR & REGALIA
1331 N. California Blvd., 5th Floor
Walnut Creek          CA 94596

FAX: 925-933-4126

Kingery, Carol A.
        Attorney for Defendant
ADAMSKI MOROSKI MADDEN & GREEN
P.O. Box 3835
San Luis Obispo      CA 93403 3835

Cumberland, David M.
        Attorney for Defendant
CUMBERLAND, COATES & DUENOW
P.O. Box 749
San Luis Obispo      CA 93406 0000

Wagner, Richard P.
        Attorney for Respondent
400 Oceangate, STe. 700
Long Beach           CA 90802 0000

Fox, Herb
        Attorney for Plaintiff

15 West Carrillo Street, Suite 211
Santa Barbara        CA 93101

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                              OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

WAYNE HALL, Court Executive Officer

by _____, Deputy      Dated: 3/16/07