**ORIGINAL**

1 | **COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
2 | Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
3 | 190 The Embarcadero
San Francisco, CA 94105
4 | Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601
5 |
**LAW OFFICES OF RICHARD P. WAGNER**
6 | Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
7 | Long Beach, CA 90802
Telephone: (562) 216-2946
8 | Facsimile: (562) 216-2960

9 | Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.
10 |

11 |
UNITED STATES DISTRICT COURT
12 |
NORTHERN DISTRICT OF CALIFORNIA
13 | SAN FRANCISCO DIVISION

14 |
DEL MAR SEAFOODS, INC.                    )  Case No.: CV 07-02952 WHA
15 |                                          )
        Plaintiff,                          )  **PLAINTIFF'S NOTICE OF MOTION**
16 |                                          )  **AND MOTION FOR SUMMARY**
                                            )  **JUDGMENT OR, ALTERNATIVELY,**
17 |   vs.                                    )  **PARTIAL SUMMARY JUDGMENT**
                                            )
18 | BARRY COHEN, CHRIS COHEN (aka            )
CHRISTENE COHEN), *in personam* and        )
19 | F/V POINT LOMA, Official Number          )
515298, a 1968 steel-hulled, 126-gross ton, )
20 | 70.8- foot long fishing vessel, her engines, )
tackle, furniture, apparel, etc., *in rem*, and )
21 | Does 1-10,                                )
                                            )
22 |                                          )
        Defendants.                          )
23 | _____          )  Date:  April 3, 2008
                                            )  Time:  8:00 a.m.
24 | And Related Counterclaims                )  Place: Courtroom 9, 19th Floor
                                            )  Hon. William H. Alsup
25 | _____          )

26 | **TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

27 |    1.    **NOTICE IS HEREBY GIVEN** that on April 3, 2008 at 8:00 a.m. or as soon

28 | thereafter as counsel may be heard by the above-entitled court, plaintiff DEL MAR

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL-415-438-4600
FAX-415-438-4601

DelMarSeafoods/2504

1    SEAFOODS, INC. ("Plaintiff") will and hereby does move the Court for summary judgment

2    or, alternatively, partial summary judgment on the grounds that there are no genuine issues of

3    material fact and that the moving party is entitled to judgment as a matter of law on the

4    plaintiff's Breach of the Promissory Note and Foreclosure of the Preferred Ship Mortgage

5    causes of action.  The Plaintiff's motion is based on the grounds that the defendants failed to

6    make the required payments on the Promissory Note, failed to maintain the vessel, and failed

7    to properly insure it.

8         The Plaintiff will and hereby does also move the Court for partial summary judgment

9    dismissing the defendants' cause of action for wrongful arrest based upon their failure to

10   raise any genuine issue of material fact that Plaintiff acted with bad faith, malice, or gross

11   negligence in arresting defendants vessel.

12        The Plaintiff also will and hereby does move the Court for an order of partial

13   summary judgment precluding the defendants' causes of action for intentional and/or

14   negligent interference with prospective economic advantage, and for breach of the implied

15   covenant of good faith and fair dealing based on the lack of any genuine issues of material

16   fact supporting defendants' causes of action.

17        The Plaintiff will also, and hereby does, move this Court for partial summary

18   judgment on defendants' claim for damages resulting from the alleged wrongful arrest for the

19   value of a lost fishing net.

20        This motion is based upon this Notice of Motion and Motion, the accompanying

21   Memorandum of Points and Authorities, the declarations of Max L. Kelley and Joe Roggio,

22   Plaintiff's Request for Judicial Notice, all pleadings and papers on file in this action, and

23   upon such other matters as may be presented to the Court at the time of the hearing.

24

25   Dated:  February 28, 2008              COX, WOOTTON, GRIFFIN,
                                            HANSEN & POULOS, LLP
26                                          Attorneys for Plaintiff
                                            DEL MAR SEAFOODS, INC.
27

28                                   By: _____
                                            Max L. Kelley

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1

**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**

2   Gregory W. Poulos  (SBN 131428)
Max L. Kelley (SBN 205943)

3   190 The Embarcadero
San Francisco, CA  94105

4   Telephone No.: 415-438-4600
Facsimile No.:  415-438-4601

5

**LAW OFFICES OF RICHARD P. WAGNER**

6   Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700

7   Long Beach, CA 90802
Telephone: (562) 216-2946

8   Facsimile:  (562) 216-2960

9   Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

10

11                       UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14

15  DEL MAR SEAFOODS, INC.            )   Case No.: CV 07-02952 WHA
                                      )
16              Plaintiff,            )   **PLAINTIFF'S MEMORANDUM OF**
                                      )   **POINTS & AUTHORITIES IN**
17       vs.                          )   **SUPPORT OF MOTION FOR**
                                      )   **PARTIAL SUMMARY JUDGMENT**
18  BARRY COHEN, CHRIS COHEN (aka     )
    CHRISTENE COHEN), *in personam* and )
19  F/V POINT LOMA, Official Number   )
    515298, a 1968 steel-hulled, 126-gross ton, )
20  70.8- foot long fishing vessel, her engines, )
    tackle, furniture, apparel, etc., *in rem*, and )
21  Does 1-10,                        )
                                      )
22              Defendants.           )
                                      )   Date: April 3, 2008
23  _____ )   Time: 8:30 a.m.
                                      )   Courtroom 9, 19th Floor
24  And Related Counterclaims         )   Hon. William H. Alsup
    _____ )

25

26

27

28

Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods2504

# TABLE OF CONTENTS

**Page**

I. BASIS FOR THIS MOTION ..................................................................................................2

II. STATEMENT OF RELEVANT FACTS ...........................................................................3

  1. Introduction and The Parties ...............................................................................3

  2. Accumulation Of Debts..........................................................................................3

    a. "Michael Cohen" and "Olde Port Inn" ...........................................4

    b. "Inventory" ............................................................................................4

    c. "Point Loma"..........................................................................................5

    d. "Barry" ..................................................................................................5

  3. Payments to Del Mar...............................................................................................6

  4. *In Rem* Action Against the Vessel .....................................................................9

  5. Counterclaim by the Cohens ...............................................................................9

III. LEGAL ARGUMENTS.......................................................................................................9

  1. Summary Judgment Standard And Partial Summary Judgment...................9

  2. The Cohens Were In Default Under the Promissory Note and Mortgage .................................10

    a. Defendants' Failure to Make Monthly Payments .......................10

    b. Failure to Maintain the Vessel .........................................................12

    c. Failure to Name Del Mar as Loss Payee on Insurance .................13

  3. Federal Maritime Law Applies To Defendant's Counterclaim For Wrongful Arrest.............13

  4. Del Mar's Arrest of the Vessel Was Not Wrongful..........................................13

    a. Defendants Have Failed To Allege That Del Mar Acted With Malice, Bad Faith Or Gross Negligence In Arresting The Vessel ........................................14

    b. Del Mar's Arrest Of The Vessel Was In Good Faith............................17

    c. Del Mar Sought Out And Relied Upon The Advice Of Its Counsel In Arresting The Vessel..............................................18

  5. Del Mar Did Not Intentionally Interfere With Defendants' Prospective Economic Advantage.............................18

  6. Del Mar Did Not Negligently Interfere With Defendants' Prospective Economic Advantage.............................21

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

7. **Del Mar Did Not Breach The Implied Covenant Of Good Faith And Fair Dealing** .................. 21

8. **The Net's Disappearance Was Not Causally Related To The Arrest** ........................................... 22

IV. **CONCLUSION** .......................................................................................................................... 23

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood/2501

# TABLE OF AUTHORITIES

**Page**

### Cases

Beal Bank, SSB v. Pittorino,
  177 F.3d 65, 68 (1st Cir. 1999) .................................................................10

Bennett v. Schmidt,
  153 F.3d 516, 518 (7th Cir. 1998) ............................................................16

Conley v. Gibson,
  (1957) 355 U.S. 41, 47-48 ........................................................................16

Della Penna v. Toyota Motor Sales,
  (1995) 11 Cal.4th 376 ...............................................................................19

Frontera Fruit Co., Inc. v. Dowling,
  91 F.2d 293, 297 (5th Cir. 1937) ..........................................................13,18

Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,
  959 F.2d 49, 53 (5th Cir. 1992) ................................................................13

Matoil Serv. & Transp. Co. v. Scheinder,
  129 F.2d 392, 394 (3rd Cir.1942) .............................................................23

Matsushita Elec. Indus. V. Zenith Radio Corp,
  (1986) 475 U.S. 574 ..................................................................................10

Mendelson v. Country Coach, Inc.,
  2007 U.S. Dist. LEXIS 96148, *6 (C.D.Cal. 2007) ..................................10

Myers v. Loaiza,
  2007 U.S.Dist. LEXIS 93774 (E.D. Cal. 2007) .......................................10

OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.,
  2007 U.S.Dist.LEXIS 74180, *8-9 (S.D.N.Y. 2007) ...............................13

Robinson v. Prior,
  2005 U.S. Dist. LEXIS 28596, *18 (D.Me.2005) .....................................23

Scotiabank de Puerto Rico v. M/V ATUTI,
  326 F.Supp. 2d 282 (D.P.R. 2004) ...........................................................23

Seaman's Direct Buying Serv. v. Std. Oil Co.,
  (1984) 36 Cal. 3d 752 ...........................................................................20,22

State of Maryland Dept. of Nat. Resources v. Kellum,
  51 F.3d 1220, 1224 (4th Cir.1995) ...........................................................22

Stevens v. F/V BONNIEDOON,
  655 F.2d 206, 209 (9th Cir. 1981) ............................................................13

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/SeaSeal/2501

Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

*Stewart v. Sonneborn,*
(1878) 88 U.S. 187, 196-197 ...............................................................................................18

*Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,*
860 F.Supp. 1448, 1450 (C.D. Cal. 1993) ...........................................................................10

**Statutes**

Fed. R. Civ. P. 56(a),(b)..........................................................................................................9

Fed. R. Civ. Proc. 8................................................................................................................16

**Other Authorities**

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 801, p. 895 ..............................15

Michael L. Bono, Remedies for Wrongful Seizure in Admiralty – *Marastro Compania
Naviera S.A. v. Canadian Maritime Carriers*, 17 Tul.Mar.L.J. 317, 318-319 (1993).............18

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSea6634/2504

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    RELATED PLEADINGS:

2    1.  Notice of Motion and Motion for Summary Judgment/Partial Summary Judgment

3    2.  Declaration of Max L. Kelley

4    3.  Declaration of Joe Roggio

5    4.  Request for Judicial Notice

6    5.  [Proposed] Order

7    **I.      BASIS FOR THIS MOTION**

8         This action arises out of a Promissory Note ("Note") and Preferred Ship Mortgage

9    ("Mortgage") entered into between the plaintiff Del Mar Seafoods, Inc. ("Del Mar"), as

10   creditor and mortgagee, and defendants Barry and Christene Cohen (collectively, the

11   "Cohens"), as debtors and mortgagors, in October 2003. Del Mar has alleged that the Cohens

12   breached the Note and defaulted on the Mortgage. The Cohens have counter-claimed for

13   wrongful arrest of their fishing vessel, the F/V POINT LOMA ("Vessel"). The counter-claim

14   alleges rights of recovery against Del Mar predicated on four legal theories: 1) wrongful

15   arrest; 2) intentional interference with prospective economic advantage; 3) negligent

16   interference with prospective economic advantage, and 4) breach of the implied covenant of

17   good faith and fair dealing.

18        By this motion Del Mar is moving for partial summary judgment against the Cohens

19   on Del Mar's cause of action for breach of the promissory note and mortgage and on each of

20   the above causes of action asserted in the Cohens' counterclaim. If granted, the motion

21   would still leave to be decided the issue of the balance due under the promissory note.

22        In addition, and in the alternative, Del Mar moves for partial summary judgment on

23   one item of damages claimed by the Cohens in their counterclaim. The Cohens have

24   included in their alleged damages, a claim that as a result of the vessel's arrest they lost a

25   fishing net valued at between $13,000 and $15,000 together with lost profits arising from

26   their anticipated use of the net. The Cohens have admitted that the fishing net was not on

27   board the vessel (or even at the same pier as the vessel) at the time of the arrest, and in fact

28   the net remained under their control for some five weeks *after* the vessel's arrest when it was

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-2-                    Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   stolen from the location where the Cohens were storing it. Del Mar moves for partial

2   summary judgment that under the facts and law it cannot be liable for this portion of the

3   damages asserted in the counterclaim.

4   **II.    STATEMENT OF RELEVANT FACTS**

5   **1.    Introduction and The Parties**

6       This action arises out of a commercial relationship between Del Mar and the Cohens.

7   At the heart of this case are debts that Barry Cohen incurred to Del Mar, the parties'

8   documentation of those debts and the payments made on the debts.

9       Del Mar is a fish processing company that buys, processes and sells seafood. Barry

10  Cohen, despite assertions to the contrary, is not a simple fisherman but is rather a

11  sophisticated businessman with multiple companies and joint ventures and more than thirty

12  years of business experience. Over the past thirty years he has started three California

13  corporations and been part of four joint ventures. (Deposition of Barry Cohen ("Cohen

14  Depo") at 15:11 – 17; 20:6 – 17, attached as Exhibit 1 to Declaration of Max L. Kelley

15  ("Kelley Dec.").)

16      One of Barry Cohen's corporations leased property on the pier at Port San Luis, in

17  Avila Beach, California. (Cohen Depo at 18:20 – 19:5.) Another of his joint ventures was

18  with Del Mar for the purchase, processing and sale of fish from the leased property in Port

19  San Luis. (*Id.* at 20:23 – 21:1.) Yet another of Barry Cohen's businesses was a joint venture

20  with Joe Cappuccio (the President of Del Mar) and Victor Segura to operate a fishing vessel

21  in Mexico through a jointly established Mexican corporation. (*Id.* at 20: 6 – 11.) For ease of

22  reference the first joint venture above is referred to as the "Avila Beach Joint Venture" and

23  the second as the "Mexico joint venture."

24  **2.    Accumulation Of Debts**

25      Although the debts that are the subject of this lawsuit (and the Note and Mortgage)

26  are all encompassed within the Note and Mortgage, they did not all begin as such. The debts

27  that formed the principal under the Note are detailed on the spreadsheet produced as "DMSI

28  0269" (*see,* Kelley Dec., Exhibit 2) and are explained both in the declaration of Joe Roggio in

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods\2504

Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    support of this motion and in the deposition testimony of Barry Cohen. They fall into six

2    categories that appear as the column titles on the attached spreadsheet: "Michael Cohen,"

3    "Olde Port Fisheries," "Olde Port Inn," "Inventory," "Point Loma" and "Barry."

4          a.  "Michael Cohen" and "Olde Port Inn"

5          Part of Barry Cohen's responsibility as manager of the Avila Beach joint venture was

6    oversight of sales to customers of the joint venture. (Cohen Depo at 22:13 – 17). Some

7    inventory was sold to Barry Cohen's son Michael, and some was sold to his other son,

8    Leonard. (*Id.* at 22:18 – 23:21; 35:13 – 36:13). Leonard owned the Olde Port Inn. When the

9    Avila Beach joint venture ended, Michael Cohen still owed the joint venture money and,

10   *after the books of the joint venture were closed*, Barry Cohen told Joe Roggio that he (Barry)

11   would "be responsible for" paying Michael Cohen's debts and Leonard Cohen's debts. (*Id.* at

12   25:20 – 26:18; 35:13 – 36:13). By making this statement Barry Cohen meant that he "would

13   see that *Del Mar* got paid that money."[1]  (*Id.* at 33: 21 – 34:4 (emphasis added)). Del Mar

14   contends that Barry Cohen told Del Mar to "add them [the debts] to my balance." (Depo of

15   Joe Roggio ("Roggio Depo") at 30:24 – 32:10, Exhibit 3 to Kelley Dec.). Regardless of the

16   phrasing ("I'll be responsible" or "add them to my balance"), Barry Cohen has admitted that

17   he has not paid those debts. (Cohen Depo at 26:24 – 27:4). He contends, however, that it

18   might have been paid through application of the $175,000 payment that he made to Del Mar.

19   (*Id.* at 28:8 – 31:5; 31:17 – 20). He also contends that the debt might have been assigned to

20   him or, alternatively, that he should not be required to repay it because Del Mar did not

21   continue his employment. (*Id.*)

22          b.  "Inventory"

23          When the Avila Beach joint venture ended, the joint venture still had some fish on

24   hand. This inventory was taken by Barry Cohen and used by his other corporation, Olde Port

25   Fisheries, Inc. (Cohen Depo at 41:24 – 42:21). Barry Cohen did not know the exact value of

26   that fish inventory but agreed that it is "close" to the number listed on the spreadsheet by Del

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

150 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2501

---

[1] It is noteworthy that Barry Cohen testified that he would see to it that Del Mar (not the joint venture) got paid. This was because the promise was made *after* the joint venture's books were closed and so the debt no longer was the joint venture's but now belonged to Del Mar. This is consistent with the testimony and declaration of Joe Roggio.

Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  Mar. (*Id.* at 42:22 – 44:4, referencing Ex. 1 to Cohen Depo, see Kelley Dec., Exhibit 4.)

2       c.  "Point Loma"

3       During his deposition, Barry Cohen was not certain what items were included in this

4  category, but he believed that it represented the advances made by the joint venture to the

5  Vessel for fuel and ice. (Cohen Depo at 44:5 – 24).  Barry Cohen agreed that "I could have

6  owed the joint venture that [amount].  Close." ( *Id.* at 45:11 – 20

7       d.  "Barry"

8       The debts listed under the column titled "Barry" were "a combination of the note to

9  the boat plus some additional charges someplace, some additional monies owed."  (Cohen

10  Depo at 45:21 – 25).  He has "no idea" what other monies might be owed and included in

11  that column.  (*Id.* at 48:9 – 11).  Barry's reference to the "note" is to the promissory note with

12  the original principal of $215,000.  (*Id.* at 48:19 – 49:17).  So as not to add words or

13  confusion, Barry Cohen's deposition testimony was:

14      Q.  Where did it (the $215,000 debt) come from?
    A.  It came from when Joe Cappuccio was going to buy a 50 percent interest

15         in the Point Loma so we could go a 50 – 50 joint venture in Mexico.
       Initially, he wanted to buy a 50 percent interest in the Point Loma.  I had

16         to get the Point Loma ready to go to Mexico, and had a lot of upgrades to
       do on it.  Going to --- Mexico is like a third world country – no

17         infrastructure – so there was a lot of things we had to do to make the boat
       self-sufficient.  So a lot of the money that I used was to upgrade the boat.

18         While the boat was being upgraded then there were expenses on the boat.
       And all of the money that was on that note, at the time we did it, was to

19         be applied to the purchase price of one half interest in the boat.  That's
       where the amounts of money came from.

20      Q.  That added up to what you say was the original 215 balance?
    A.  I think I always said that was an approximate number.  But that's not why

21         the note was made.  That's a different answer – different question.

22  *Id.*

23       Eventually, however, Joe Cappuccio ended up not buying half of the Vessel and the

24  amounts he had advanced to Barry were converted into the Note and Mortgage on the Vessel.

25  (Cohen Depo at 51:20 – 52:1).

26       The amounts that were included in the Note were not solely for improvements to the

27  Vessel.  (*Id.* at 52:2 – 16).  Barry Cohen admits that, in fact, the parties included boat

28  improvements, fishing loans, and personal loans Del Mar made to him in the Note secured by

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

199 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood/2504

-5-        Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    the Mortgage. (Cohen Depo. at 52:19 – 53:24; 60:2 – 10; Memorandum by Cohen's

2    accountant David Cantrell, Exhibit 2 to Cohen deposition, attached as Exhibit 5 to Kelley

3    Dec.)[2]

4    **3.    Payments to Del Mar**

5    The Note and Mortgage were dated October 31, 2003 with an original balance of

6    $215,000. (Kelley Dec., Exhibits 6, 7.)  The parties dispute whether this balance was

7    increased over time through the addition of other debts and the accrual of interest.  The

8    parties do not dispute, however, that as of April, 2007 when the last payment was made by

9    the Cohens, there was still a balance due under the note.  Del Mar contends that the balance

10   was approximately $130,000 (Kelley Dec., Ex. 2), while the Cohens contend that the balance

11   was, and is, $27,000.  (Defendants' Responses to Plaintiff's Requests for Admissions, No.

12   28, Kelley Dec., Exhibit 8.)

13   The terms of the Note are clear and unequivocal.  They require monthly payments to

14   be made in the amount of either $3,000 or 15% of the gross landing receipts for each and

15   every landing of seafood product made by the Vessel.  Interest accrues at 7% per annum.

16   (Kelley Dec., Ex. 6, pg. 1, ¶ 1).

17   In the four years and four months since the promissory note was signed, the Cohens

18   have made only five payments totaling $188,000.  (Declaration of Joe Roggio ("Roggio

19   Dec."), ¶ 2); cancelled checks, Kelley Dec., Exhibit 9).  The required monthly payments were

20   not made, and Del Mar never agreed to waive these payments.  (Roggio Dec. at ¶ 3)

21   The Cohens have asserted that in November, 2005 they made a single lump sum

22   payment of $175,000 when Barry Cohen personally delivered a check to Del Mar.  (Cohen

23   Depo at 135:24 – 136:13.)  Barry Cohen testified in his deposition about how the lump sum

24   payment came about and what was said at the time.  His testimony was that Joe Cappuccio

25   asked him to make the payment to pay down the note because of concerns raised by Del

26   Mar's bank. (*Id.* at 139:21 – 141:20).  According to Barry Cohen the payment was

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

199 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoodv2501

27

28   _____

     [2] The fact that the parties had a history of including personal loans and other advances within the note is relevant.  It explains why Del Mar believed (and still believes) that all of the debts that Barry agreed to be responsible for are covered by the note when he directed Joe Roggio to "add them to my balance."

1   specifically made to "pay down that note that much." (*Id.* at 141:11 – 12). Barry Cohen

2   testified that when he personally delivered the $175,000 check to Joe Cappuccio on or

3   around November 10, 2005 the following exchange took place:

4          A.  I gave it [the check] to Joe Cappuccio. He looked at it and said
5              – I said, "Here's the check that I said I would give." He said,
               "Thank you very much." And I said, "I'll pay you the rest as
6              soon as I can." And he said, "Well, I'm not worried about"
               "I'm not concerned" or "not worried about it; it's such a small
7              amount now."

8   (*Id.* at 137:9 – 15). Barry testified at his deposition that this was "the whole conversation."

9   (*Id.* at 138:4 – 8).

10          In December, 2006 after Del Mar had received no further payments from the Cohens

11  for more than a year, Joe Roggio called Barry Cohen on his cell phone to discuss his making

12  further monthly payments on the Note. Barry didn't answer, so Roggio left him a voicemail

13  message. (Roggio Dec., ¶ 4). On January 30, 2007 (a little more than a month after that

14  phone call), Barry Cohen made a payment of $2,000. (Cancelled check no. 4008, Ex. 9 to

15  Kelley Dec.). The payment on January 30, 2007 was sent together with a note from Barry

16  Cohen reading:

17          Joe,
            Please credit my account. With this payment, if your analysis
18          was correct, the new balance should be $139,749.79.
            I will try to send you at least $2,000/month, sometimes $3,000.
19          I'm sick right now and if I try to talk I start coughing, so
            instead, you get this note.
20          I'm still unemployed, but this gives me a chance to help
            Michael make Olde Port better.
21          I hope things are going good for you and your family. Please
            give Yvonne my regards. Too bad our families never got the
22          chance to become better friends. Oh, well things usually
            happen for a reason. Well, take care of yourself.
23          Barry

24  (Correspondence from Barry Cohen, Exhibit 10 to Kelley Dec.; Roggio Dec., ¶ 11).

25          In January, 2007 Del Mar also began receiving other disturbing news regarding the

26  Cohens' financial condition. (Declaration of Joe Cappuccio ("Cappuccio Depo"), relevant

27  excerpts attached as Exhibit 11 to Kelley Dec., at 26:2 – 21). On January 22, 2007 Barry

28  Cohen filed a Declaration in a lawsuit that he was pursuing against the Port San Luis Harbor

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar:Scaffoods2504

-7-

Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    District relating to his lease of the property that was used by the joint venture with Del Mar.

2    Barry Cohen's declaration was filed in support of his motion for attorneys' fees, and it

3    included a statement from Barry Cohen, under penalty of perjury, that if he did not recover

4    his attorneys' fees and costs (which were over two million dollars) he "may be forced out of

5    business totally and into bankruptcy." (Request for Judicial Notice, Exhibit 1, Declaration of

6    Barry Cohen at ¶ 22).

7         In the spring of 2007 Del Mar's Controller, Joe Roggio, also received a phone call

8    from Chris Cohen during which he got the impression that Barry had been physically abusing

9    her. (Roggio Dec., ¶ 5.)  In her deposition, Chris Cohen recalled telling Roggio that her and

10   Barry's divorce would be "difficult," "expensive and messy," and that Barry had either beat

11   or pushed her around. (Deposition of Chris Cohen ("Chris Cohen Depo"), Exhibit 12 to

12   Declaration of Max L. Kelley, at 57:8 – 19 and errata sheet;).

13        An additional payment of $3,000 was then made on February 15, 2007. (Cancelled

14   check no. 4020, Kelley Dec., Ex. 9).

15        On March 16, 2007 the Superior Court hearing the motion for attorneys fees and costs

16   in the Cohen's litigation against the Port San Luis Harbor District ruled that neither party was

17   entitled to receive its attorneys' fees. (Ruling on Attorneys' Fees, Request for Judicial

18   Notice, Exhibit 2). Del Mar learned of this decision shortly after it was filed. (Roggio Dec.,

19   ¶ 6).

20        On April 23, 2007 the Cohens made a payment of $3,000. (Cancelled check no.

21   4063, Kelley Dec., Ex. 9).  No further payments have been made by the Cohens after April

22   23, 2007. (Roggio Dec., ¶ 7).

23        In light of Barry Cohen's failure to make the May or June payments, the fact that his

24   financial condition was by then of obvious concern (based on his own admission that he

25   might be forced out of business and file bankruptcy if he was not awarded his attorneys' fees

26   in the Avila Beach litigation), and the fact that even his wife was telling Del Mar that they

27   were involved in a messy and expensive divorce, and coupled with his admission that he was

28   unemployed, Del Mar sought to protect its security in the vessel by proceeding against it *in*

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood/2504

-8-                        Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  *rem.* (Roggio Dec., ¶ 8, Cappuccio Depo at 26:2 – 27:19; Chris Cohen Depo at 57:16-19 and

2  errata sheet).

3  **4.      *In Rem* Action Against the Vessel**

4          Del Mar's decision to proceed with an *in rem* action against the vessel was taken to

5  secure the asset which was in default under the terms of the Note and Mortgage. On June 8,

6  2007, the verified complaint was filed alleging that the Cohens were in default as of May 1,

7  2007. The vessel was subsequently arrested at the Hyde Street Pier in San Francisco by the

8  U.S. Marshal. The Marshal turned custody of the Vessel over to the court-appointed

9  substitute custodian, National Maritime Services ("NMS"). On or about June 21, 2007, NMS

10  moved the Vessel to Point Richmond and turned custody over to Sugar Dock, LLC. Kelley

11  Dec., ¶ 14.

12  **5.      Counterclaim by the Cohens**

13          The Cohens answered the Complaint on June 25, 2007. Their Answer also contained

14  a Counterclaim against Del Mar alleging the wrongful arrest of the Vessel. (Defendants'

15  Verified Answer and Counterclaim, Kelley Dec., Exhibit 13.) The counterclaim alleges

16  causes of action for wrongful arrest, intentional and/or negligent interference with

17  prospective economic, as well as a breach of the covenant of good faith and fair dealing. (*Id.*

18  at pgs. 4-5, ¶¶ 41-42.) There are no allegations of bad faith, malice, or gross negligence in

19  the counterclaim and it contains no reference to any contracts between the Cohens and any

20  third parties. Although the counterclaim does not itemize the defendants' alleged damages,

21  the Cohens' Rule 26 disclosures and their discovery responses reveal that they are claiming

22  damages arising from the loss of a fishing net valued between $13,000 - $16,000. (Cohen

23  Depo at 115:4- 6; Response to Plaintiff's Interrogatories, Set One, pg. 5, line 18, and Cohens'

24  Supplemental FRCP Rule 26 Disclosures, pg. 2, line 11, Kelley Dec., Exhibit 14).[3]

25  **III.    LEGAL ARGUMENTS**

26  **1.      Summary Judgment Standard And Partial Summary Judgment**

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSanSealsvl/2504

27

28

_____

[3] In addition to asserting a claim against Del Mar for loss of this net, the Cohens also submitted a claim to the United States Marshal's service for the same loss.

1    The Court may grant summary judgment in favor of a party on all claims or any part

2    thereof. Fed. R. Civ. P. 56(a),(b); *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir.

3    1999); *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.* 860 F.Supp. 1448,

4    1450 (C.D. Cal. 1993) (citations omitted).  Partial summary judgment is proper upon a

5    showing that there is no genuine issue of material fact as to a particular claim.

6    A motion for summary judgment is the "put up or shut up" moment in a lawsuit when

7    the nonmoving party must show what evidence it has that would convince a trier of fact to

8    accept its version of events. *Mendelson v. Country Coach, Inc.*, 2007 U.S. Dist. LEXIS

9    96148, *6 (C.D.Cal. 2007).

10    "When a motion for summary judgment is made and supported as provided in this

11    rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's

12    pleading, but the adverse party's response . . . must set forth specific facts showing that there

13    is a genuine issue for trial." Fed. Rule Civ. Proc. 56(e).  The non-moving party may not

14    merely rest on bare assertions, conclusory allegations or suspicions but "is required to tender

15    evidence of specific facts in the form of affidavits and / or admissible discovery material in

16    support of its contention that the dispute exists. *Myers v. Loaiza*, 2007 U.S.Dist. LEXIS

17    93774 (E.D. Cal. 2007), citing *Matsushita Elec. Indus. V. Zenith Radio Corp* (1986) 475 U.S.

18    574.`

19    **2.    The Cohens Were In Default Under the Promissory Note and Mortgage**

20    Del Mar moves for partial summary judgment that the Cohens are in default under the

21    terms of the Note and Mortgage.  This issue is distinct from the *amount* due under the note,

22    which is an issue reserved for trial.  There are three acts of default on which Del Mar relies:

23    defendants' failure to a) make monthly payments; b) maintain the vessel; and c) name Del

24    Mar as a loss payee under the insurance policies.

25    a.    Defendants' Failure to Make Monthly Payments

26    As set forth above and as shown on the Note, the Cohens were required to make

27    monthly payments of $3,000 or 15% of the gross landing receipts for each and every landing

28    of seafood products.  The Note provides that the monthly payments were to be made on the

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSsofsofv2104

-10-    Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    15th of each month beginning in January 2004. Since that time only five payments have been

2    made.

3        Barry Cohen has admitted that when he made the lump sum payment of $175,000 the

4    payment was made to "pay down the balance" due on the note. It was thus a payment against

5    principle and not a pre-payment of future monthly obligations. This application is also

6    consistent with his understanding that the payment was required because Del Mar's bank did

7    not want to see a large note carried on Del Mar's books. (Cohen Depo at 28:16 – 31:5.) Del

8    Mar was required by law to follow Barry Cohen's instructions on the application of this

9    payment by applying it to the principle balance due under the note. California Civil Code

10   §1479 (1).[4]

11       Barry Cohen admits that even after this payment was made there was still a balance

12   due under the note. In fact, the Cohens made three additional payments after the payment of

13   $175,000 and still have, by their calculation, a balance due of $27,000. (Defendants'

14   Responses to Request for Admissions, No. 28, Kelley Dec., Ex. 8).

15       The Cohens contend that the Court should treat the lump sum payment in two

16   conflicting ways. On the one hand, Barry Cohen has testified that he made the payment

17   because Del Mar's bank was concerned about the large debt evidenced by the Note and

18   wanted it off Del Mar's books. In this regard Barry Cohen testified that the payment was

19   made to "pay down that note that much." (Cohen Depo at 141:11 – 12). On the other hand,

20   they are asking the Court to find that the lump sum payment applies to future payments. As

21   quoted above, however, the "whole conversation" contained no discussion of any request or

22   agreement to apply the lump sum payment to future monthly payment. (Cohen Depo at 137:9

23   – 15; 138:4 – 8).

24       If the payment was applied as directed by Barry Cohen to "pay down the balance"

25   then the Cohens were still obligated to make monthly payments. They in fact acknowledged

26   this obligation when Barry Cohen sent the note of January 30, 2007 stating that he would try

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

199 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

27
28   _____
     [4] If the Cohens contend that they did not expressly require the $175,000 payment to be used to pay down the principal balance due under the Note, then Civ. Code § 1470 (2) allows Del Mar to "apply it toward the extinction of any obligation, performance of which was due to [Del Mar] from the debtor at the time of such performance."

1    to make those monthly payments. (Kelley Dec., Ex. 10).

2         The undisputed evidence is that the Cohens owed a debt to Del Mar and that the debt

3    required monthly payments of either $3,000 or 15% of the gross landing receipts for each and

4    every landing. It is equally undisputed that the mortgage provides that "Default in the

5    punctual payment of the principal of the note …or any installment thereof" is a default under

6    the note. The Court should find that by failing to make a payment in May or June 2007 the

7    Cohens were in default.

8         b.    Failure to Maintain the Vessel

9         The mortgage requires that the vessel owner "at all times maintain the vessel in

10   thorough repair and working order and shall make all proper renewals and replacements."

11   (Kelley Dec., Ex.7, Art. I, ¶7). Captain Kobak, the current Captain of the Vessel and the

12   person charged by the Cohens with maintaining the Vessel, has testified that the vessel is "a

13   mess." He testified:

Q.  How would you describe the condition of the Point Loma now?
A.  What do you think? It's a mess. It's been that way since I've been on it. It's
    too much for me to want to fix up. If it was my boat, I might have attacked it,
    but you can't expect me to get my crew to do that kind of work on that boat five
    or six days a week just to get it cleaned up It would take a long time. It's sad
    that it's gotten in that shape.
Q.  Would you agree with me that it is in an advanced state of deterioration?
A.  Pretty much so, yes, sir. It still works – is what my comment would be. It still
    works and everything works on it, and it's productive when we go fishing.
Q.  Is it true that there is no routine maintenance, but if something breaks, you fix
    it?
A.  We do a certain amount of routine maintenance to keep stuff from falling apart,
    to a point. Like the rust you see and the damage that has already been done, and
    there's not much you can do about a lot of it. You work around it, and if stuff
    breaks, you have to fix it.

22   (Depo of Capt. Kobak at 40:10 – 41:5, relevant excerpts attached as Exhibit 15 to

23   Kelley Dec.)

24        These admissions by the Captain charged with maintaining the Vessel are an

25   unambiguous admission that the Mortgage has been breached. In addition, Del Mar has had

26   the Vessel surveyed by an expert marine surveyor. (The survey report is attached as Exhibit

27   16 to the Declaration of Max L. Kelley). The surveyor concluded that "the maintenance

28   condition was very poor." He also determined that "there was no preventive maintenance"

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood/s2204

-12-                    Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    and that "the interior below deck surfaces are in exceptionally poor condition with heavy

2    rust." He also found that "the exterior coastings are rusting and do not appear to have been

3    painted for some years" and the "bulwark rails are rusted through." He also found that "the

4    hydraulic hoses on all equipment are leaking and in need of replacement." Ultimately, he

5    concluded that "[T]his surveyor observed no evidence of preventive maintenance for several

6    years."[5]

7         The Court should find that the Cohens are in default of the Mortgage for failing to

8    maintain the Vessel.

9         c.    Failure to Name Del Mar as Loss Payee on Insurance

10         The Mortgage requires that the insurance policies name Del Mar (Mortgagee) as a

11    loss payee. (Kelley Dec., Ex. 7, Art. I, ¶3). Barry Cohen has admitted that Del Mar has not

12    been listed even as an additional insured, and the policies themselves show that Del Mar is

13    not listed as a loss payee on any of the policies, including the policy currently in effect.

14    (Cohen Depo at 98:19 – 23; insurance documents, Kelley Dec., Exhibit 17). The Court

15    should find that the Cohens are in default of the Mortgage's insurance provisions.

16    **3.    Federal Maritime Law Applies To Defendant's Counterclaim For Wrongful**
17    **Arrest**

18         Del Mar's rights to arrest the Vessel are governed by Federal Maritime Law and the

19    Ship Mortgage Act (46 U.S.C. §§ 31301-31343). The counterclaim for the alleged wrongful

20    arrest of the Vessel is similarly governed by federal maritime law. *Marastro Compania*

21    *Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) (maritime

22    law controls the substantive law of maritime seizures).

23    **4.    Del Mar's Arrest of the Vessel Was Not Wrongful**:

24         In order prevail on their counterclaim for wrongful arrest, defendants must plead and

25    prove that Del Mar acted with malice, bad faith, or gross negligence. *Stevens v. F/V*

26    *BONNIEDOON*, 655 F.2d 206, 209 (9th Cir. 1981); *Frontera Fruit Co., Inc. v. Dowling*, 91

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafoods/2591

---

[5] Del Mar contends that the Cohens' failure to maintain the Vessel is a violation of the Court's Order dated 8/17/2007, Docket No. 57, requiring defendants not to "diminish the value" of the Vessel.

1    F.2d 293, 297 (5th Cir. 1937). The counterclaim contains no allegation of malice, bad faith or

2    gross-negligence and should be dismissed. *See, e.g., OGI Oceangate Transp. Co. Ltd. v. RP*

3    *Logistics Pvt. Ltd.*, 2007 U.S.Dist.LEXIS 74180, *8-9 (S.D.N.Y. 2007) (failure to state prima

4    facie claim for wrongful arrest where complaint fails to allege bad faith, malice, or gross

5    negligence).

6    　　　Del Mar moves for partial summary judgment on plaintiff's counterclaim for

7    wrongful arrest based on the complete absence of any allegation or issues of material fact that

8    Del Mar acted with malice, bad faith or gross negligence in arresting the Vessel.

9    　　　As pled in their counterclaim, the Cohens allege the arrest was wrongful because:

10    　　1)  plaintiff "refused, without cause, to admit that Defendants have paid $188,000 on

11    　　　　the Promissory Note, including an advance payment of $175,000;"

12    　　2)  defendants were "not in default under the Promissory Note;"

13    　　3)  plaintiff has improperly alleged "that the total amount of the loan was greater than

14    　　　　$215,000 because of advances under the Promissory Note that Defendants never

15    　　　　agreed were subject to the Promissory Note and Ship Mortgage;" and

16    　　4)  "none of these relevant material facts were disclosed to the Court when Plaintiff

17    　　　　sought the arrest warrant in this case."[6]

18    In addition, Barry Cohen has averred that:

19    　　5)  the Vessel's arrest "came as a complete shock" to him and he "never received any

20    　　　　notice" from Del Mar that he had to make any payments or owed interest after his

21    　　　　lump-sum payment in November, 2005, or the Vessel would be arrested;[7] and

22    　　6)  that Del Mar never contacted him to inquire what his financial condition was

23    　　　　before arresting the Vessel;[8]

24    　　**a.    Defendants Have Failed To Allege That Del Mar Acted With Malice, Bad**

25    　　　　　**Faith Or Gross Negligence In Arresting The Vessel**

26    　　　Initially, Del Mar points out that the counterclaim, discovery, or other pleadings in

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-1600
FAX 415-438-4601

DelMarSeafoods/2504

---

[6] Answer and Counterclaim, Kelley Dec., Ex. 13, at pg. 4.
[7] Cohen Declaration in Support of Motion to Vacate Arrest, Kelley Dec., Exhibit 18, pg. 5, ¶ 14.
[8] Cohen Declaration in Reply to Opposition to Motion to Vacate Arrest, Kelley Dec., Exhibit 19, pg. 4, ¶ 15.

-14-                                        Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  this matter, do not contain a single allegation, much less facts supporting such an allegation,

2  that plaintiff acted with malice, bad faith, or gross negligence towards defendants in arresting

3  the Vessel.  The counterclaim only contains the allegation that the arrest was "wrongful"

4  based on a few erroneous contentions.  (See Answer to Verified Admiralty and Maritime

5  Complaint; Verified Counterclaim, Kelley Dec., Ex. 13, Docket No. 26, ¶39)

6       Addressing seriatim the Cohens' allegations of fact in support of the claim for

7  wrongful arrest, none of these "facts" are either true or, if true, are evidence of "malice, bad

8  faith or gross-negligence."

9       The Cohens first allege that Del Mar "has refused to admit, without cause the

10  Defendants have paid $188,000 on the Promissory Note, including an advance payment of

11  $175,000."  This allegation is both false.  Del Mar has repeatedly admitted receiving

12  payments totaling $188,000 but disputes that those payments reduce the note to the balance

13  claimed by the Cohens. (*See, e.g.,* Declaration of Joe Roggio in Support of Opposition to

14  Motion to Vacate Arrest, at pg. 7, ¶ 33, pg. 8, ¶ 39, Docket No. 45; Opposition to Motion to

15  Vacate, pgs. 3-4, Docket No. 43; Roggio Dec., ¶¶ 2, 10).  Even if true, however, there is no

16  evidence that Del Mar's contentions regarding the receipt and application of payments are

17  taken with "malice, bad faith or gross negligence."

18       The Cohens' next assertion is that because they made a $175,000 lump-sum payment

19  they were not in default does not raise an issue of material fact of plaintiff's malice, bad faith

20  or gross negligence.  As set forth above, the Cohens have admitted in writing that there is a

21  balance due on the Note (Response to RFA No. 28, Kelley Dec., Ex. 8) and their obligation

22  to make monthly payments even after the application of the check for $175,000.  (Letter and

23  payment to Del Mar. (Kelley Dec, Ex. 10).  Moreover, even if defendants ultimately prove at

24  trial that they were not in default at the time of the arrest, at the time Del Mar filed its

25  Verified Complaint, as discussed below, Del Mar had probable cause and objectively

26  reasonable bases for believing that the Cohens were in default given their acknowledgement

27  of the obligation to make continuing payments.  *See, e.g.*, 1 Witkin, Summary of Cal. Law

28  (10th ed. 2005) Contracts, § 801, p. 895 ("The essence of the good faith covenant is

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

100 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSsorbols2504

-15-               Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    *objectively reasonable conduct.*" (emphasis original)).

2          The Cohens' third contention is that the arrest was wrongful because Del Mar

3    "improperly alleges that the total amount of principal due under the Note and Mortgage was

4    greater than $215,000 because of advances under the Promissory Note that Defendants never

5    agreed were subject to the Promissory Note and Ship Mortgage." The issue of what debts the

6    parties agreed to include under the promissory note and mortgage is something that will have

7    to be decided at trial. There is conflicting evidence on this. Barry Cohen testified that he

8    agreed to "be responsible for" at least some of those debts but he contends that he never

9    agreed that they would be added to the note and subject to the mortgage. Del Mar contends

10   that the parties had a history of including all of Barry Cohen's personal debts under the note

11   and mortgage and that this is what Barry meant when he told Joe Roggio to "add it to my

12   balance." Regardless of how this issue is ultimately resolved at trial, however, the existence

13   of a genuine dispute and a parties' right to seek redress in the Court cannot be found to be

14   malicious or taken with bad faith or gross negligence.

15         Finally, the Cohens allege that the facts of relating to the payment history were not

16   disclosed to the Court when Plaintiff sought the arrest warrant in this case." It is well

17   established that under the Federal Rules a complaint need not allege any, much less all, of the

18   facts supporting plaintiff's claims for relief. Fed. R. Civ. Proc. 8; *Conley v. Gibson* (1957)

19   355 U.S. 41, 47-48; *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("A complaint is

20   not required to allege all, or *any*, of the facts entailed by the claim."). Even under the

21   Supplemental Federal Rules for Certain Admiralty and Maritime Claims' heightened

22   pleadings standard, plaintiff's Complaint states sufficient facts regarding how Del Mar's

23   claims arose to allow defendants to begin their investigation and frame a responsive pleading.

24   Supp. Fed. R.Civ. P. E(2)(a). Because Del Mar was not required to plead a specific

25   accounting of the changing principal balance in its complaint, and the complaint gave fair

26   notice of the bases for Del Mar's claims, there should be no inference that Del Mar's

27   allegation in its complaint that the balance was in excess of $215,000 was in bad faith, or

28   done with malice, or gross negligence towards defendants.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoodv2304

1        The Cohens have not, and cannot, raise any issue of material fact supporting an

2    inference that Del Mar's filing of the complaint and pursuit of its legal rights was motivated

3    by any malice, bad faith or gross negligence.  To the contrary, Del Mar has always respected

4    its business relationship with Barry Cohen and conducted itself in good faith in their business

5    dealings.  Roggio Dec., ¶ 9.  Christene Cohen testified in her deposition that she liked Joe

6    Roggio "a lot," and that she had no reason to believe he or Joe Cappuccio has any malice or

7    ill-will towards her.  (Chris Cohen Depo at 45:10 – 14; 47:8 – 13.)

8        **b.    Del Mar's Arrest Of The Vessel Was In Good Faith**

9        At the time of the arrest, Del Mar's accounting showed the Cohens still owed

10   approximately $180,653 on the Note even after applying the payments that the Cohens had

11   already made.  (Roggio Dec., ¶ 10).  For more than a year after Barry made his $175,000

12   lump sum payment Del Mar never received any additional payments from him.  In December,

13   2006, Joe Roggio called Barry Cohen on his cell phone to discuss his making further monthly

14   payments on the Note.  He didn't answer so Roggio left him a voicemail message.  On or

15   about January 30, 2007, Del Mar received a letter from Cohen enclosing a $2,000 payment,

16   in which he stated "Please credit my account.  With this payment, if your analysis was

17   correct, the new balance should be $139,749.79."  He also stated "I will try to send you at

18   least $2,000/month, sometimes $3,000," and that he was sick and unemployed.  (*Id.*, ¶ 11;

19   Cohen e-mail, Kelley Dec., Ex. 10 (DMSI 0078).)

20       Barry Cohen's statement that, after his $2,000 payment, his balance was $139,749.79

21   and that he would make additional monthly payments going forward, completely contradicts

22   his assertion that he was not in default under the Note at the time of the arrest because his

23   lump-sum $175,000 payment pre-paid his monthly installments through February 2009.  It

24   also contradicts his contentions that he only ever owed the original principal amount of

25   $215,000 and owed no interest on the Note.  His statement is entirely consistent, however,

26   with Del Mar's spreadsheet dated June 26, 2007 showing a balance owed of 133,749.79.

27

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seabook/2504

1    (Schedule of Payments, Kelley Dec., Exhibit 20 (DMSI 0001.))[9]

2        Given the Cohens' admissions regarding the amount of the debt, their admissions

3    regarding their financial condition and their failure to make payments in May or June, 2007,

4    and the terms of the note and mortgage, Del Mar was within its rights and acting with good

5    faith in a commercially reasonable manner when it filed its action for default, including

6    proceeding *in rem* against the Vessel.

7        **c.**    **Del Mar Sought Out And Relied Upon The Advice Of Its Counsel In**
8            **Arresting The Vessel**

9        Around the first week of May, 2007, Joe Roggio contacted Del Mar's general

10   counsel, Richard Wagner, and asked him to advise Del Mar regarding a course of action to

11   protect their security for the Note. Mr. Wagner, in turn referred them to an experienced

12   maritime attorney in Long Beach, California, Mark Holmes, who, after being apprised of the

13   facts and circumstances surrounding the Note, Mortgage, and Cohen's financial situation,

14   advised them and recommended they arrest the Vessel. (Roggio Dec., ¶ 12).

15       By seeking the advice of competent counsel and acting to arrest the Vessel based on

16   that advice, Del Mar is afforded a complete defense against defendants' claims for wrongful

17   arrest. *Frontera Fruit Co., Inc. v. Dowling*, 91 F.2d 293, 297 (5[th]Cir.1937); ("the advice of

18   competent counsel, honestly sought and acted upon in good faith is alone a complete defense

19   to an action for malicious prosecution."); *accord, Marastro Compania Naviera, S.A. v.*

20   *Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir.1992); *see also, Stewart v.*

21   *Sonneborn* (1878) 88 U.S. 187, 196-197.[10]

22       The Cohens have failed to plead that Del Mar acted with malice, bad faith or gross

23   negligence. This alone is a basis for granting summary judgment on this cause of action.

24   Moreover, even if the Court allows them to now amend and to plead such allegations, the

25   facts as alleged cannot establish those essential elements. In addition, Del Mar relied on the

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar.Seafoods2304

26
27
28

---

[9] The balance shown on the spreadsheet is $6,000 greater than the balance acknowledged by Cohen because, at the time of Cohen's e-mail, the last two payments of $3,000 reflected on the spreadsheet had not yet occurred.
[10] The underlying claim in *Stewart* was for malicious prosecution. At least one commentator has traced the origin of maritime wrongful arrest actions to *Stewart*. Michael L. Bono, Remedies for Wrongful Seizure in Admiralty – *Marastro Compania Naviera S.A. v. Canadian Maritime Carriers*, 17 Tul.Mar.L.J. 317, 318-319 (1993).

1   advice of counsel and cannot be liable for wrongful arrest where it has done so.  The Court

2   should grant summary judgment against the Cohens on the cause of action for wrongful

3   arrest.

4   **5.    Del Mar Did Not Intentionally Interfere With Defendants' Prospective
        Economic Advantage**

5

6          If the Court does not grant summary judgment on the Cohen's counterclaim for

7   wrongful arrest, plaintiff respectfully requests that it address and rule on specific aspects of

8   that claim, namely the individual claims for intentional and negligent interference with

9   prospective economic advantage (PEA) and for breach of the implied covenant of good faith

10  and fair dealing.  Finally, plaintiff respectfully asks the Court to find that one element of the

11  damages claimed by the Cohens (damages for loss of a fishing net) cannot be recovered in

12  this action.

13         The elements for an action based on intentional interference with prospective

14  economic advantage are set forth in California Jury Instructions, BAJI 7.82.  Applied to this

15  case, those elements are:

16     1.  An economic relationship existed between the [Cohens] and [a third party]
            containing a probable future economic benefit or advantage to plaintiff;
17     2.  The defendant [Del Mar] knew of the existence of the relationship;
        3.  The defendant [Del Mar] intentionally engaged in wrongful conduct *designed to*
18         *interfere with or disrupt this relationship*;
        4.  The economic relationship was actually interfered with or disrupted; and
19     5.  The wrongful conduct of the defendant [Del Mar] which was *designed to interfere*
            *with or disrupt this relationship* caused damage to the plaintiff.
20

21  (Emphasis added)

22         Summary judgment on this cause of action is appropriate if the Cohens [as counter-

23  claimants] cannot establish one or more elements of the cause of action or if counter-

24  defendant [Del Mar] can establish an absolute defense.  *Della Penna v. Toyota Motor Sales,*

25  (1995) 11 Cal.4th 376.

26         Reviewing the elements of the cause of action, in seeking to recover on a theory of

27  intentional interference with prospective economic advantage the Cohens must plead and

28  prove the existence of a contractual relationship with a third party, that Del Mar was aware of

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

199 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoodv2504

1   the contractual relationship and "*intentional* acts" by Del Mar *designed* to disrupt the

2   relationship.  BAJI 7.82; *see, Della Pena, supra*, 11 Cal.4th 376.

3       The Cohens' counterclaim does not allege that they had any contractual relationship

4   with any third party and they failed to disclose any such third parties in their initial

5   disclosures or in any discovery responses.  In addition, the Cohens have never produced a

6.  copy of any contract with any third party that they contend was interrupted or interfered with.

7   (Kelley Dec., ¶ 24).  As a result of these omissions, the Cohens cannot satisfy the very first

8   element of this cause of action.

9       The Cohens have also failed to plead that Del Mar was aware of their contractual

10  relationship with any third party.  As noted above, in order to recover on a cause of action for

11  intentional interference with PEA, the plaintiff must plead and prove that the defendant was

12  aware of the relationship. *See, e.g.*, BAJI 7.82.  Not only does the counterclaim fail to make

13  such an allegation, but, in fact, Del Mar was not aware of any specific contractual

14  relationship between the Cohens and a third party.  (Roggio Dec., ¶ 13).  The Cohens'

15  defective pleadings, lack of disclosures, and lack of substantive evidence is fatal to their

16  cause of action.

17      The Cohens also cannot satisfy the third element of a cause of action for intentional

18  interference with PEA.  The third element of the cause of action is that the defendant's

19  actions must be *designed to interfere with or disrupt* a relationship between the plaintiff

20  [Cohens] and a third party. *See, e.g.*, BAJI 7.82.  If the defendant's actions are not *designed*

21  *to induce a breach* but for some other purpose, then there is no basis for imposing liability.

22  *Id.*  The requirement for the defendant to have the specific intent of interference was

23  explained by the California Supreme Court in *Seaman's Direct Buying Serv. v. Std. Oil Co.*,

24  (1984) 36 Cal. 3d 752, as follows:

25      The act of inducing the breach must be an intentional one. If the actor had no
        knowledge of the existence of the contract or *his actions were not intended to*
26      *induce a breach*, he cannot be held liable though an actual breach results
        from lawful and proper acts. (Internal citations omitted.)

27

28      The Restatement section cited by the court explains, "The essential thing is
        the *purpose to cause the result*. If the actor does not have this purpose, his

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSanSnoSv2501

-20-                Case No.: CV 07-02952 WHA

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

conduct does not subject him to liability under this rule *even if it has the unintended effect of deterring the third person from dealing with the other*." (Rest., Torts, § 766, com. d, italics added.) It is not enough that the actor intended to perform the acts which caused the result -- he or she must have intended to cause the result itself.

*Seaman's,* 36 Cal.3d at 765. (Emphasis in original) (disapproved in part on other grounds by *Della Penna, supra*).

Del Mar's actions were not taken with the *intent* to cause disruption of any contract but only to protect Del Mar's rights under the promissory note and mortgage. (Roggio Dec., ¶ 8, 14). Joe Cappuccio, the President of Del Mar has testified as to why he approved the actions. (Cappuccio Depo at 21:17 – 27:19). Both men testified that there actions were taken to secure Del Mar's debts against the Cohens and the vessel. There is no evidence that they had any other motive.

Moreover, the counterclaim asserted by the Cohens contains no allegations that Del mar's actions were *intended* to disrupt a relationship between the Cohens and a third party. Under these facts, there is no basis for any claim that Del Mar *intended* to interfere with or disrupt any contractual relationship between the Cohens and a third party.

The Cohens have also failed to allege or to present any evidence that they had a contract that was actually interfered with and which resulted in damages to them because of the interference.

For all of the above reasons, the Cohens cannot meet their burden of proof to establish the necessary elements of a cause of action for intentional interference with PEA. The motion for summary judgment on this cause of action should be granted.

### 6. Del Mar Did Not Negligently Interfere With Defendants' Prospective Economic Advantage

Del Mar moves for partial summary judgment on this claim. The elements of a cause of action for negligent interference with PEA are very similar to the elements on the cause of action for intentional interference, and those elements will therefore not be discussed again in any detail. It is sufficient to note that, again, there is no pleading or evidence of any contract

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-1600
FAX 415-438-4601

DelMarSacSsolv2501

DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    that was actually interfered with and therefore there can be no recovery for either intentional

2    or negligent interference with contract.

3    **7.    Del Mar Did Not Breach The Implied Covenant Of Good Faith And Fair**
     **Dealing**
4

5        The Cohens have also brought a cause of action for breach of the covenant of good

6    faith and fair dealing. This is a tort theory that the Cohens are improperly grafting to what is

7    otherwise a simple breach of contract action. Del Mar moves for partial summary judgment

8    on this claim.

9        "The law implies a covenant of good faith and fair dealing in all contracts. "

10   *Seaman's*, 36 Cal.3d at 768. Tort liability is normally found only where there is a special

11   fiduciary relationship between the parties such as between an insurer and insured or possibly

12   between an employer and employee. In the normal commercial relationship "parties of

13   roughly equal bargaining power are free to shape the contours of their agreement and to

14   include provisions for attorney fees and liquidated damages in the event of breach." *Id.* at

15   768. In such cases, the Courts must be cautious about grafting tort remedies into the

16   commercial context.

17       In this case the Cohens have failed to plead the existence of any special relationship

18   that would impose tort remedies on what is a simple action for breach of contract.

19   **8.    The Net's Disappearance Was Not Causally Related To The Arrest**

20       The Court should only reach this issue if it does not grant summary judgment on the

21   Cohens' claims for wrongful arrest. If the Court does reach this issue, it should hold that the

22   Cohens cannot recover any damages related to the loss of the fishing net.

23       Maritime law governing general maritime torts requires, among other things, findings

24   of fault and causation as predicates to liability. *State of Maryland Dept. of Nat. Resources v.*

25   *Kellum*, 51 F.3d 1220, 1224 (4th Cir.1995). Defendants' counterclaim for the value of the

26   missing net must fail because there is no causal relationship between the arrest of the Vessel

27   and the disappearance of the net. Captain Kobak admitted that the net was not on board the

28   vessel or even in the vicinity of the vessel at the time of the arrest. In fact the net was stored

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeaSnds/2504

-22-                                              Case No.: CV 07-02952 WHA
DEL MAR'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    at Pier 45 which was across the water from where the vessel was at the Hyde Street pier.

2    (Kobak Depo at 31:16-33:1, 33:12-25, 34:11-35:4)  This was also confirmed by the police

3    report filed by Captain Kobak which states on page 3 that the last time he saw the net was on

4    July 4, 2007, and that he noticed it was missing on July 16, 2007 at 10:30 a.m., more than

5    five weeks after the arrest.  (Kelley Dec., Exhibit 21.)

6         The maritime law of the United States holds that a substitute custodian's "duty of care

7    extends only to property actually in its custody." *Scotiabank de Puerto*, 326 F.Supp. 2d at

8    285, citing *Matoil Serv. & Transp. Co.*, 129 F.2d at 394.  Here, the missing net was not on or

9    even near the Vessel at the time of the arrest and was, therefore, not taken into the Marshal's

10   custody during the arrest process.  Therefore, neither Del Mar nor any of the substitute

11   custodians can be liable for its eventual disappearance from Pier 45.

12        Even if such liability could exist, however, it would rest only against the substitute

13   custodian or US Marshall and not against Del Mar. *Scotiabank de Puerto Rico v. M/V*

14   *ATUTI*, 326 F.Supp. 2d 282 (D.P.R. 2004); *Matoil Serv. & Transp. Co. v. Scheinder*, 129

15   F.2d 392, 394 (3rd Cir.1942); *Robinson v. Prior*, 2005 U.S. Dist. LEXIS 28596, *18

16   (D.Me.2005).

17   **IV.    CONCLUSION**

18        Del Mar moves for summary judgment on its cause of action for default under the

19   promissory note and mortgage.  The evidence, viewed in the light most favorable to the

20   Cohens, establishes that there was no agreement to waive monthly payments and, in fact, the

21   Cohens admitted the obligation to make those payments even after application of their lump

22   sum payment of $175,000 in November, 2005.  In addition, the Cohens have breached the

23   mortgage by failing to maintain the vessel and failing to have Del Mar named as a loss payee

24   under the insurance policies.

25        Del Mar also moves for summary judgment on the Cohen's counterclaim for

26   wrongful arrest.  The counterclaim fails to allege (as it must) that Del Mar acted with malice,

27   bad faith or gross negligence.  Further, neither the specific acts alleged nor the evidence in

28   this case supports a finding of malice, bad faith or gross negligence.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar.SraDrafs92104

-23-                                  Case No.: CV 07-02952 WHA

1    Del Mar also moves for summary judgment on the claims for intentional and

2    negligent interference with prospective economic advantage and for alleged breach of the

3    covenant of good faith and fair dealing. As set forth above, the essential elements of these

4    causes of action have not been pleaded and they cannot be proved. In addition, Del Mar

5    acted on the advice of counsel which is a complete defense.

6    Finally, and in the alternative, Del Mar moves for summary adjudication that the

7    Cohen's damages cannot include the value of a fishing net that was not on the vessel (or even

8    in the vicinity of the vessel) at the time of the arrest. The undisputed evidence is that the

9    fishing net remained under the Cohens' control at Pier 45 for approximately five weeks after

10   the vessel was arrested and that it was then taken by some other party. There is simply no

11   causal relationship between the loss of the fishing net and the arrest of the vessel.

12   Respectfully submitted.

13

Dated: February 28, 2008                        COX, WOOTTON, GRIFFIN,
14                                                HANSEN & POULOS, LLP
                                                  Attorneys for Plaintiff
15                                                DEL MAR SEAFOODS, INC.

16

17

18                                        By: _____
                                                 Gregory W. Poulos
19                                               Max L. Kelley

20

21

22

23

24

25

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504
26

27

28