**COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**McKASSON KLEIN & HOLMES LLP**
Mark D. Holmes (SBN 156660
600 Anton Boulevard, Suite 650
Costa Mesa, CA 92626
Telephone: (714) 436-1470
Facsimile: (714) 436-1471

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10,<br><br>Defendants.<br><br>And Related Counterclaims | Case No.: CV 07-02952 WHA<br><br>**REQUEST FOR JUDICIAL NOTICE**<br><br>Date: August 16, 2007<br>Time: 8:00 a.m.<br>Courtroom 9, 19th Floor<br>Hon. William H. Alsup |

Plaintiff Del Mar Seafoods, Inc., by and through its attorneys, hereby requests the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following facts:

/ / /

1. Defendant Barry Cohen was a plaintiff in a prior civil case commenced in San Luis Obispo County Superior Court entitled *Barry A. Cohen; Leonard A. Cohen; Olde Port Inn, Inc; and Olde Port Fisheries, Inc. v. Port San Luis Harbor District*, Case No. CV 040897.

2. In that case on November 16, 2005 Defendant Barry Cohen was deposed and gave testimony under oath, from which excerpts of the transcript relevant to this case are attached as **Exhibit 1**.

3. In that case exhibits were attached to Barry Cohen's deposition, of which two relevant to this case are attached as **Exhibit 2**.

Dated: July 26, 2007

COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: /s/ Max L. Kelley
Max L. Kelley

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN LUIS OBISPO

| | |
|---|---|
| BARRY A. COHEN; LEONARD A. COHEN; OLDE PORT INN, INC.; and OLDE PORT FISHERIES, INC., Plaintiffs, vs. PORT SAN LUIS HARBOR DISTRICT; and DOES 1 to 50, inclusive, Defendants. | **VOLUME III** Pages 340-523 |
| AND RELATED CROSS-ACTION. | Case No. CV 040897 |

# DEPOSITION OF BARRY A. COHEN

San Luis Obispo, California

Wednesday, November 16, 2005

10:05 a.m. – 5:23 p.m.

Reported By: Lora L. Shoffstall, RPR, CSR 9271
File No. 206759

MeritReporting™
& Video

Jeri Cain, CSRs, Inc.
A Professional Corporation
Earning Your Trust Since 1974
San Luis Obispo · Santa Maria · Santa Barbara
1151 Leff Street · San Luis Obispo, CA 93406-1039 (805) 541-0333
P.O. Box 1871 · Santa Maria, CA 93465 (805) 928-7554
FAX (805) 541-2136 · www.MeritReporting.com 800-549-3376

THE DEPOSITION OF BARRY A. COHEN, VOLUME III, was taken at Merit Reporting & Video, 1151 Leff Street, San Luis Obispo, California, before Lora L. Shoffstall, CSR No. 9271 and Registered Professional Reporter, on Wednesday, November 16, 2005, commencing at 10:05 a.m.

APPEARANCES OF COUNSEL:

For Plaintiffs and Cross-Defendants:

MILLER, STARR & REGALIA
Attorneys at Law
BY: ARTHUR F. COON
1331 North California Boulevard, Fifth Floor
Walnut Creek, California 94596
(925) 935-9400

For Defendants and Cross-Complainant:

ADAMSKI, MOROSKI, MADDEN & GREEN, LLP
Attorneys at Law
BY: MARTIN P. MOROSKI
444 Higuera Street, Suite 300
San Luis Obispo, California 93401-3875
(805) 543-0990

Also Present:

JAY ELDER
LEONARD A. COHEN

I N D E X

| WITNESS | EXAMINED BY | PAGE |
|---|---|---|
| BARRY A. COHEN (Volume III) | MR. MOROSKI | 344 |

MARKED TESTIMONY

| PAGE | LINE |
|---|---|
| 488 | 13 |

WITNESS INSTRUCTED NOT TO ANSWER

(None)

EXHIBITS FOR IDENTIFICATION

| DESCRIPTION: | MARKED |
|---|---|
| 385 - Amended Notice of Continued Deposition of Barry A. Cohen as an Individual Plaintiff and Person Most Knowledgeable of Plaintiff Olde Port Fisheries, Inc. and Request for Production of Documents at Deposition Pursuant to Stipulation | 345 |
| 386 - 1994, 1997, 1999, 2002 forms 1099-MISC | 356 |
| 387 - Privilege Log of Documents Withheld from Production of Schimandle and Cantrell, CPA's | 388 |
| 388 - June 27, 1996, letter to Paul A. Geihs from Thomas D. Green, Re: Lease: Port San Luis Harbor District and Barry Cohen | 391 |
| 389 - 1999, 2001, 2002 forms 1099-MISC | 436 |
| 390 - June 12, 1996, letter to Board of Commissioners from Paul A. Geihs, Re: Olde Port Inn Restaurant and Seafood Facility Lease Agreement | 399 |
| 391 - 2003 form 1099-MISC | 466 |

I N D E X (Continued)

EXHIBITS FOR IDENTIFICATION (Continued)

| DESCRIPTION: | MARKED |
|---|---|
| 392 - 2004 form 1099-MISC | 466 |
| 393 - Six pages; documents re Global Marine Systems (Federal) Inc. | 468 |
| 394 - Uniform Residential Loan Application | 471 |
| 395 - November 8, 2005, letter to Barry and Chris from John Husten, Loan Officer, on Weger Mortgage letterhead | 479 |
| 396 - Uniform Residential Loan Application | 485 |
| 397 - Promissory Note | 509 |
| 398 - Del Mar Seafoods, Inc. Schedule of Payments | 509 |
| 399 - Olde Port Fisheries, Division Income Statement for the 1 Period Ended January 31, 2003, et al. | 517 |
| 400 - Privilege Log of Documents Withheld From Production of Schimandle and Cantrell (Olde Port Fisheries, Inc.) | 452 |
| 401 - Year-to-Date Report, Del Mar Seafoods, Inc. | 509 |

BARRY A. COHEN,

Plaintiff herein, having first been duly sworn,

was examined and testified as follows:

EXAMINATION (Resumed)

BY MR. MOROSKI:

**Q.** Mr. Cohen, you understand that you're under oath.

**A.** Yes.

**Q.** You understand that the admonitions which I gave you before the last two sessions of your deposition apply to today's deposition as well?

**A.** Yes.

**Q.** Specifically, you understand that if I ask a question that you don't understand for any reason, that you let me know that you don't understand my question. Is that acceptable to you?

**A.** Yes.

**Q.** You also understand that to the extent you answer any question I pose to you today, that the transcript, once ultimately prepared, is going to read as though you understood my question. Do you understand that?

**A.** Yes.

**Q.** And for that reason, it's extremely important

that's currently operating the Point Loma. Correct?

A. Correct. And it would be last year's income.

Q. Who keeps the books for the Point Loma?

A. I do.

Q. With assistance from anyone?

A. For the end of the year? The end-of-the-year tax returns I don't do.

Q. That's Mr. Cantrell?

A. Yes.

Q. Mr. Coon has shown you a document. Do you want to --

A. He wants --

MR. COON: This was that document that was faxed by Joe Roggio during the break that Mr. Cohen requested. I think we should make some copies of it and give you a copy.

MR. MOROSKI: Sure. Can I take a look at it, please?

Why don't we make a copy of this real quick. Thanks, Jay.

MR. COON: Can we make two of those, Jay, so we can have one for us, one for the court reporter and one for you guys?

MR. ELDER: Okay.

MR. MOROSKI: Exhibits 397 and 398. Thanks,

Jay. Do you want to mark this next? That's 401.

THE WITNESS: Do you want --

MR. MOROSKI: Not yet. That --

THE WITNESS: Okay.

MR. MOROSKI: We'll get to that in a second.

(Exhibits 397-398 and 401 were marked for identification.)

BY MR. MOROSKI:

Q. Can you identify Exhibit 397 for the record, please?

A. A copy of the promissory note payable to Del Mar Seafoods that I had sent to you a couple days ago. I received this from requesting it from Joe Roggio.

Q. And the date or the effective date, I should say, of this note is what?

A. You mean the preferred mortgage date or the date signed we it?

Q. What is the effective date of --

A. It's the same date.

Q. Which is what?

A. 10/31/03.

Q. And directing your attention to the last page, the third page of the note. Is that your signature above the line "Barry Cohen"?

A. Yes.

Q. And is that Chris Cohen's signature?

A. Yes.

Q. Okay. Why was it that you were being asked to sign a promissory note on October 31, 2003?

A. I don't know.

Q. Were you assessed interest under the terms of this promissory note?

A. No.

Q. Why not?

A. I don't know.

Q. And with respect to the balance, principal balance recited in the first paragraph of the notice, $215,000, how was that figure arrived at?

A. I think it was a low guess.

Q. A low guess?

A. A guess.

Q. Of what?

A. Of the money that I borrowed for the boat from Del Mar. But I don't think they knew exactly how much everything was.

Q. Directing your attention to Exhibit 398. Can you identify that document for the record?

A. Yes.

Q. Would you do so?

A. It's a Del Mar Seafoods, Inc. schedule of

Q. And is that Chris Cohen's signature?

A. Yes.

Q. Okay. Why was it that you were being asked to sign a promissory note on October 31, 2003?

A. I don't know.

Q. Were you assessed interest under the terms of this promissory note?

A. No.

Q. Why not?

A. I don't know.

Q. And with respect to the balance, principal balance recited in the first paragraph of the notice, $215,000, how was that figure arrived at?

A. I think it was a low guess.

Q. A low guess?

A. A guess.

Q. Of what?

A. Of the money that I borrowed for the boat from Del Mar. But I don't think they knew exactly how much everything was.

Q. Directing your attention to Exhibit 398. Can you identify that document for the record?

A. Yes.

Q. Would you do so?

A. It's a Del Mar Seafoods, Inc. schedule of

payments.

Q. And what does the schedule of payments relate to?

A. What I paid, what the boat owed, what inventory was owed for Avila, receivable on Olde Port Inn and on Michael Cohen.

Q. So this document, Exhibit 398, does not relate to the promissory note?

A. Yes.

Q. It does?

A. Yes.

Q. Okay. How do you account for the different balances?

A. We don't account for it.

Q. Okay. Can you explain to me why the principal balance owed under the terms of the promissory note, Exhibit 397, dated effective October 31, 2003, is $215,000, and the beginning balance reflected on this schedule of payments documents is $295,429?

A. Because I took the responsibility for these amounts owed and just put it on mine.

Q. Okay. So the beginning balance does not relate to the promissory note balance. Correct?

A. No, but it -- it relates to the promissory note.

payments.

Q. And what does the schedule of payments relate to?

A. What I paid, what the boat owed, what inventory was owed for Avila, receivable on Olde Port Inn and on Michael Cohen.

Q. So this document, Exhibit 398, does not relate to the promissory note?

A. Yes.

Q. It does?

A. Yes.

Q. Okay. How do you account for the different balances?

A. We don't account for it.

Q. Okay. Can you explain to me why the principal balance owed under the terms of the promissory note, Exhibit 397, dated effective October 31, 2003, is $215,000, and the beginning balance reflected on this schedule of payments documents is $295,429?

A. Because I took the responsibility for these amounts owed and just put it on mine.

Q. Okay. So the beginning balance does not relate to the promissory note balance. Correct?

A. No, but it -- it relates to the promissory note.

Q. Well, I'm looking at all of these figures, Mr. Cohen, and let's start with Barry, the column Barry, $237,035.48. That's the beginning balance. That doesn't tie with the $215,000 principal balance owed pursuant to the terms of the promissory note.

A. Right.

Q. Okay. How does it -- how does that total relate to the promissory note obligation?

A. I just told you that the $215,000 was a low estimate.

Q. Okay.

A. So --

Q. You owed money over and above the $215,000?

A. Right. But we didn't know how much. This was just prepared a few days ago. This -- a lot of this was not known until a few days ago.

Q. And "this," you're referring to Exhibit 398?

A. Yes.

Q. The Michael Cohen beginning balance, what does that relate to?

A. Money that Michael Cohen owes.

Q. For what?

A. For purchases that he made.

Q. Purchases of what?

A. Of seafood from Del Mar.

Q. Well, I'm looking at all of these figures, Mr. Cohen, and let's start with Barry, the column Barry, $237,035.48. That's the beginning balance. That doesn't tie with the $215,000 principal balance owed pursuant to the terms of the promissory note.

A. Right.

Q. Okay. How does it -- how does that total relate to the promissory note obligation?

A. I just told you that the $215,000 was a low estimate.

Q. Okay.

A. So --

Q. You owed money over and above the $215,000?

A. Right. But we didn't know how much. This was just prepared a few days ago. This -- a lot of this was not known until a few days ago.

Q. And "this," you're referring to Exhibit 398?

A. Yes.

Q. The Michael Cohen beginning balance, what does that relate to?

A. Money that Michael Cohen owes.

Q. For what?

A. For purchases that he made.

Q. Purchases of what?

A. Of seafood from Del Mar.

Q. Okay. Olde Port Inn, what does that --

A. Purchases.

Q. Of fish?

A. Yes.

Q. Okay. Inventory, what does that relate to?

A. Fish and supplies.

Q. Point Loma, what does that refer to?

A. I think that was an advance or advances.

Q. And the Barry column, what does that beginning balance number refer to?

A. That was probably the beginning balance of where I was at the time of this promissory note.

Q. And the total amount, $237,035, what does that total include?

A. I couldn't tell you offhand.

Q. Advances?

A. At the time they were not advances, but they turned into advances. This is what Joe Roggio was talking about when we were going to go partners in the boat, and we did a lot of work on the boat to get ready for Mexico. That was going to be Joe's contribution to the 50/50.

Q. Joe Cappuccio?

A. Yes.

Q. Okay. Now, regarding the schedule of

STATE OF CALIFORNIA ) ss.
COUNTY OF SAN LUIS OBISPO )

I, LORA L. SHOFFSTALL, CSR #9271, RPR, State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me sworn to testify the truth, the whole truth and nothing but the truth;

That said deposition was taken down by me by stenotype at the time and place therein stated and thereafter transcribed under my direction into computerized transcription.

I further certify that I am not of counsel nor attorney for nor related to the parties hereto, nor am I in any way interested in the outcome of this action.

In compliance with section 8016 of the Business and Professions Code, I certify under penalty of perjury that I am a certified shorthand reporter with license number 9271 in full force and effect.

Witness my hand this ~~21st~~ 10th day of ~~November~~ July, ~~2005~~ 2007.

*Lora L. Shoffstall*
LORA L. SHOFFSTALL, CSR #9271

# EXHIBIT 2

# PROMISSORY NOTE

For the value received, BARRY COHEN and CHRIS COHEN, an individual of 2028 Draydon Avenue, Cambria, California 93428, hereinafter referred to as maker, promises to pay to the order of DEL MAR SEAFOODS, INC., 331 Ford Street, Watsonville, California 95076, its successors and assigns, hereinafter referred to as holder, the sum of two hundred fifteen thousand ($215,000.00) dollars at the rate of seven (7) percent per annum, as follows:

Monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of each and every landing of seafood product made by the fishing vessel POINT LOMA, whichever is greater, commencing on January '04 and on the 15th day of each succeeding month until principal and interest are fully paid. Payments are to be applied to interest first.

1. This promissory note is secured by a First Preferred Ship Mortgage on the vessel POINT LOMA, Official No. ~~55198~~ CLC 515298 BZA; dated 10/31/03.

2. Incorporation of Terms of First Preferred Mortgage.

This note is secured by a continuing security interest in the vessel described in a Preferred Mortgage, dated 10/31/03, executed by maker in favor of holder. The terms of that Preferred Mortgage are incorporated into this note by reference to the same effect as if set forth in this note in their entirety. On default, under Preferred Mortgage or under this note, holder may exercise any of the remedies granted by the Preferred Mortgage. Maker acknowledges that holder rights are cumulative.

3. Acceleration of Maturity.

In the event of default, in the payment of any of the installments or interest due as provided in this.

(3 pgs.) EXHIBIT 397
Deponent B. Cohen
Date 11/16/05 Rptr. JS
WWW.DEPOBOOK.COM

note, time being of the essence, holder may, without notice or demand, declare the entire principal sum then unpaid immediately due and payable. Further, if maker should at any time fail in business or become insolvent, or commit an act of bankruptcy, or if any writ of execution, garnishment, attachment, or other legal process is issued against any deposit account or other property of maker, or if any assessment for taxes against maker, other than taxes on real property, is made by the federal or state government, or any department or agency of the federal or state government, or if maker fails to notify holder of any material change in their financial condition, all of the obligations of maker shall, at option of holder, become due and payable immediately without demand or notice.

4. Modification of Terms.

Holder may, with or without notice to maker, cause additional parties to be added to this note, or release any party, or revise, extend, or renew the note, or extend the time for making any installment provided for in this note, or accept any installment in advance, all without affecting the liability of maker.

5. Attorney's Fees.

If suit is commenced on this note, maker shall pay to holder a reasonable attorney's fee and all costs.

6. Waiver of Rights by Maker.

Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to holder until all indebtedness of maker to holder, however arising, shall have been paid; and (c) the right to require holder to proceed against any party to this note, or to pursue any other remedy in holder power. Holder may proceed against maker directly and independently of any other party to this note, and the cessation of the liability of any other party or

any reason other than full payment, or any revision, renewal, extension, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of holder's remedies or rights against any other party, shall not in any way affect the liability of maker.

DATED: 12/31/03

Barry Cohen

Chris Cohen

Ex 397-3

Del Mar Seafoods, Inc.
Schedule of Payments

| | Michael Cohen | Olde Port Inn | Inventory | Point Loma | Barry | Total |
|---|---|---|---|---|---|---|
| Beginning Balance | 13,820.40 | 16,050.10 | 10,383.24 | 16,021.51 | 237,035.48 | 293,420.63 |
| 12/22/2004 Barry Paymt | | | | | (5,000.00) | (5,000.00) |
| 6/24/2005 American Payment | | | (1,474.75) | | | (1,474.75) |
| 9/14/2005 Olde Port PYMT | | | (1,000.00) | | | (1,000.00) |
| 11/10/2005 Inv. Adj | | | (1,300.00) | | | (1,300.00) |
| 11/10/2005 Payment from Barry | (13,820.40) | (16,050.10) | (6,608.49) | (16,021.51) | (120,380.70) | (176,000.00) |
| Ending Balance | - | - | - | - | 111,654.78 | 111,654.78 |

Δ EXHIBIT 398 (1 pg.)
Deponent B. Cohen
Date 11/16/05 Rptr. JS
WWW.DEPOBOOK.COM