1  **COX, WOOTTON, GRIFFIN,**
   **HANSEN & POULOS LLP**
2  Gregory W. Poulos  (SBN 131428)
   Max L. Kelley (SBN 205943)
3  190 The Embarcadero
   San Francisco, CA  94105
4  Telephone No.:  415-438-4600
   Facsimile No.:  415-438-4601
5
   **McKASSON KLEIN & HOLMES LLP**
6  Mark D. Holmes (SBN 156660)
   600 Anton Boulevard, Suite 650
7  Costa Mesa, CA 92626
   Telephone: (714) 436-1470
8  Facsimile:  (714) 436-1471
9  Attorneys for Plaintiff
   DEL MAR SEAFOODS, INC.
10

11                   UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13                       SAN FRANCISCO DIVISION
14

15  DEL MAR SEAFOODS, INC.            )   Case No.: CV 07-02952 WHA
                                      )
16           Plaintiff,              )   **DECLARATION OF JOE ROGGIO**
                                      )   **IN SUPPORT OF PLAINTIFF'S**
17       vs.                          )   **OPPOSITION TO MOTION TO**
                                      )   **VACATE ORDER OF ARREST**
18  BARRY COHEN, CHRIS COHEN (aka     )
    CHRISTENE COHEN), *in personam* and )
19  F/V POINT LOMA, Official Number   )
    515298, a 1968 steel-hulled, 126-gross ton, )
20  70.8- foot long fishing vessel, her engines, )
    tackle, furniture, apparel, etc., *in rem*, and )
21  Does 1-10,                        )
                                      )
22           Defendants.             )
                                      )
23  _____    )   Date:  August 16, 2007
                                      )   Time:  8:00 AM
24  And Related Counterclaims        )   Courtroom  19, 19th Floor
    _____    )   Hon. William H. Alsup
25

26  I, Joe Roggio, hereby declare:

27  1.       I am the Controller of Del Mar Seafoods, Inc. ("Del Mar").  I submit this declaration

28  in support of Del Mar's Opposition to Motion To Vacate Arrest of the Vessel.  I have personal

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

1    knowledge of the facts declared herein and if called to testify regarding said facts, I would

2    and could competently testify thereto.

3    **FISHING INDUSTRY EXPERIENCE**

4        2.    I have been involved in the commercial fishing industry for twelve years.

5    During that time, I have become familiar with the kinds of commercial fishing done along

6    and off the California coast, as well as the kinds of vessels that engage in such fishing.

7        3.    I have been licensed as a Certified Public Accountant since 1995. Because I

8    no longer practice as a CPA, I have recently allowed my license to lapse.

9        4.    While working at Del Mar, I have served as the Controller for the last twelve

10   years. At present, I am the Controller of Del Mar. As such, I am the Del Mar officer chiefly

11   responsible for the bookkeeping, recordkeeping and documentation with respect to loans and

12   debts outstanding to Del Mar; payments made by and to Del Mar; accounts payable by Del

13   Mar; and accounts receivable to Del Mar.

14       5.    Del Mar, through affiliate entities, owns three fishing vessels. Del Mar runs a

15   fish processing plant in both Watsonville and Terminal Island, California; an unloading

16   station in Ventura, California and a fish processing plant in Astoria, Oregon.

17       6.    Del Mar's revenues from its fish processing operations exceed $10 million per

18   year.

19       7.    Prior to working at Del Mar, I worked for Spreckels Industries as the Senior

20   Accountant, and prior to that I worked for C.G. Uhlenberg, Certified Public Accountants, for

21   approximately five years.

22       8.    During the last twelve years that I have worked in the fishing industry,  I have

23   become familiar with the customs and practices of fishing companies and fishing vessels,

24   including vessels such as the subject vessel, the F/V POINT LOMA. I am also familiar with

25   the subject vessel, the F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled,

26   126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, (the

27   "Vessel"),  as a result of having dealt with the Cohens and the Vessel since at least October of

28   2003.

COX, WOOTTON,
GRIFFIN, HANSEN
& FOULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2594

1    **BACKGROUND FACTS SURROUNDING THE NOTE, MORTGAGE AND AGREED**

2    **"FUTURE ADVANCES" UNDER THE NOTE AND MORTGAGE; AND THE**

3    **COHENS' DEFAULT UNDER THE NOTE AND MORTGAGE**

4            9.       In 1999, Del Mar and Barry Cohen formed a joint venture for the purpose of

5    buying, processing and selling fish from a site that Barry Cohen leased in Port San Luis in

6    Avila Beach, California.

7            10.      During the course of the joint venture, between 1999 and 2003, Del Mar

8    advanced the Cohens substantial amounts of money.   Because Del Mar became concerned

9    about the amount of money that Del Mar had advanced the Cohens, Del Mar requested that

10   the Cohens provide collateral to secure the advances to the Cohens.

11           11.      The Cohens originally entered into the Note and Mortgage at the end of

12   October of 2003 in the amount of $215,000.   The Note provides that the Cohens were to

13   make:

14           monthly payments of $3,000.00 or fifteen (15) percent of the gross landing receipts of
             each and every landing of seafood product made by the fishing vessel POINT LOMA,
15           whichever is greater, commencing on January '04 and on the 15th day of each succeeding
             month until principal and interest are fully paid.  Payments are to be applied to interest
16           first.

17   Note, at page 1, a true and correct copy of which is attached to Mr. Joe Cappucio's Declaration

18   ("Cappuccio's Dec.") as Exhibit A. As the following discussion will demonstrate, the Cohens

19   have repeatedly failed to adhere to the terms of the Note, as they have repeatedly failed to make

20   monthly payments, and failed to make payments in the proper amounts since they executed the

21   Note and Mortgage.

22           12.      The Note incorporates the terms of the First Preferred Ship Mortgage and

23   specifically provides that it will "secure payment of said indebtedness [$215,000] and interest and

24   all other sums that hereafter may become due to the performance of all covenants hereof."

25   Cappuccio's Dec., Exhibit A, Note, at page 1.

26           13.      In addition, the collateral that secures the Mortgage includes not just the vessel,

27   but also:

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S OPPOSITION

1    . . .all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and
2    fishing and all other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed there from, all
3    of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by this reference . . .
4
5    Mortgage, a true and correct copy of which is attached as Exhibit B to Cappuccio's Dec., at
6    page 2.
7            14.    I have recently been advised by counsel that courts have held that the term
8    "appurtenances" includes the Vessel's fishing permit.
9            15.    The Mortgage also includes a provision for "FUTURE ADVANCES" that
10   provides:
11           This mortgage is executed for the purpose of securing not only payment of the above-described noted but also to secure all future advances made by the holder of said note to
12           the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and renewals of the above described note.
13
14   Exhibit B, Cappuccio's Dec., Mortgage, Article IV, page 8.
15           16.    In 2003, all of the books and records for the Olde Port joint venture, as well as
16   one of the Old Porte checking accounts, were in the control of Mr. Cohen. At the time, Barry
17   Cohen was receiving personal advances, with those funds being advanced by Del Mar. The
18   advances were recorded the advances on the books of the Old Port Fishery as advances to
19   Barry Cohen and the fishing vessel POINT LOMA.
20           17.    In the Summer of 2003, I and Mr. Cappuccio became very concerned that
21   Cohen had taken these advances because Del Mar did not have any security for the advances.
22           18.    Therefore, Del Mar requested, and Cohens agreed, to provide the Note and
23   Mortgage so that the Vessel and its appurtenances would stand as security for repayment of
24   these amounts.
25           19.    Although the Note states the balance is $215,000, the actual balance, by the
26   time the Note and Mortgage were finalized and Del Mar had the proper opportunity to audit
27   the Old Port books to determine the extent of the advances, the amount owed was actually
28   $237,035.48.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

**November 2004 Advances In Connection With Del Mar pulling out of Avila Beach**

20.     By November 1, 2004, Del Mar had pulled out of Avila Beach and there were still significant sums owed to Del Mar by the Cohens, Michael Cohen, Leonard Cohen, and other sums. **At Mr. Cohen's request, these amounts were all added to the Note and Mortgage balance.**

21.     The amount with respect to Barry Cohen's son, Michael Cohen, was $13,920.00. The amount  with respect to Barry Cohen's son, Leonard (Olde Port Inn) was $18,069.10. The Cohens also agreed to add an inventory debt to the Note and Mortgage in the amount of $10,383.24.

22.     Del Mar agreed to add the foregoing amounts to the Note and Mortgage balance pursuant to Barry Cohen's request because Barry's sons, Michael and Leonard Cohen (Olde Port Inn), were not able to pay the balances then owing to Del Mar.  Barry Cohen agreed to have these balances added to the Note and Mortgage balance so the Del Mar would not go after Michael and Leonard for payment of these debts.

23.     Further, at the time Del Mar pulled out of Avila Beach, the Cohens also owed Del Mar $16,021.31 for fuel advances. The total amount of the Avila Beach Advances added to the balance owing under the Note and Mortgage was **$58,394.05**, resulting in total principal amount due and owing of **$295,429.53.**  At that time, interest had accrued in the amount of $16,638.11.

24.     Between November of 2004 and November of 2005, the Cohens made only three payments against the indebtedness to Del Mar – a payment of $5,000 in December of 2004; $1474.75 in June of 2005; and $1,000 in September of 2005.  These payments were applied to interest only, leaving the principal balance the same, and reducing accrued interest to $27,143.02. Clearly, the Cohens repeatedly failed to make timely payments under the Note and Mortgage between November of 2003 and November of 2005.

**Barry Cohen's Payment of $175,000 In November of 2005**

25.     Apparently, Barry Cohen took out a loan against his home to make a payment against various debts, including his large attorneys fees owed to Miller, Starr & Regalia for

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-02952 WHA

DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S OPPOSITION

1    the Avila Beach litigation, and the indebtedness to Del Mar.

2        26.    Contrary to Mr. Cohen's assertion at page 4, paragraph 11, lines 2-6, of his

3    Declaration in support of Motion to Vacate Arrest ("Cohen Declaration"), I did not attend

4    any meeting with Joe Cappuccio at the end of 2005, at which Joe Cappuccio asked Barry

5    Cohen to make a large payment on the Note and Mortgage.

6        27.    Contrary to Mr. Cohen's assertion at page 4, paragraph 11, lines 6-7, of the

7    Cohen Declaration, I attended a meeting at which Barry Cohen asked me to agree to make the

8    loan subject to the Note and Mortgage interest free. I did not agree, however, that the loan

9    would be interest free under any circumstances. I certainly did not agree on behalf of Del Mar

10   to make the loan interest free if Cohen made a large payment. At all times, when and how

11   much Cohen decided to pay was Cohen's decision, and any decision he made to make the

12   $175,000 payment was not tied to Del Mar agreeing to make the loan subject to the Note and

13   Mortgage interest free.

14       28.    Mr. Cohen's assertions at page 4, paragraph 11, lines 11-17, of the Cohen

15   Declaration are directly contradicted by the Note and Mortgage, other relevant documentation

16   discussed below, and Mr. Cohen's behavior since November or 2005. I am unaware that Mr.

17   Cappuccio ever made any statement to Cohen when he delivered the $175,000 check to Del

18   Mar that Mr. Cappuccio was no longer concerned about the amounts that Mr. Cohen owed

19   Del Mar.

20       29.    I understand that a portion of the loan that Barry Cohen took against his

21   house, $175,000, was paid to Del Mar. At the time of payment, additional interest accrued in

22   the amount of $3,216.81, resulting in total accrued interest of $30,359.83. There was also an

23   inventory adjustment at this time in the amount of $1300 which was applied to reduce the

24   debt. After application of the $176,300, all interest had been paid current, and the balance of

25   $145,940.17 was applied to reduce the principal balance. The new principal balance was

26   $149,489.36.

27       30.    The foregoing is evidenced by documentation that I sent to Mr. Cohen, which

28   Mr. Cohen received and did not question or object to. Shortly after Mr. Cohen made the

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

198 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

$175,000 on November 10, 2005, Mr. Cohen requested that I provide a written explanation of the various advances which had been added to his debt, so that he could have specific numbers for the portions attributable to the debts of his sons. Mr. Cohen explained that he was going to ask his sons to pay those sums to Mr. Cohen. In order to assist Mr. Cohen, I created a statement showing the various advance balances, and forwarded the same to Mr. Cohen. A true and correct copy of that Statement is attached Exhibit C to Cappuccio's Dec..

31.    The Statement that I gave to Mr. Cohen personally shortly after the November 10, 2005 payment showed the payments made under the Note and Mortgage as of that date ("Statement"). See the top left corner of the Statement.

32.    The Statement shows the list of debts subject to the Note and Mortgage going across the top of the page described as – Michael Cohen; Olde Port Inn; Inventory; Point Loma; Barry and Total. See the top of Statement.

33.    The beginning balances for each debt under the Note and Mortgage are listed underneath the description of the debt on the Statement. On the bottom of the Statement is the application of the $175,000 payment that Cohen made on 11-10-2005. As it appears on the Statement, the Michael Cohen, Olde Port Inn; Inventory; and Point Loma debts were completely paid off, **the Barry debt was only reduced.**

34.    Mr. Cohen received and accepted the Statement without any objection to me; and the documentation Mr. Cohen attached as Exhibits D-G to the Cohen Declaration clearly show **the Cohens continued to make payments despite Del Mar advising Barry Cohen as to how Del Mar had applied the $175,000 payment.** Consequently, I specifically deny Mr. Cohen's assertions in the Cohen Declaration at page 4, paragraph 12, lines 18-27, where Mr. Cohen asserts:

> 12.    Within a month or so after this advance payment, I recall receiving a piece of paper which purported to be a Schedule of Payments from Joe Roggio. Attached as Exhibit F is the copy of the document I received from Joe Roggio. The Schedule contains references to various debts not related to the Promissory Note. I looked it over and told him this does not look right to me. He said he was just "cleaning up the books." I didn't want to tell him how to keep his books but I did not tell him that the $175,000 payment could be applied to anything other than the Promissory Note, nor did I agree with any of the amounts listed in his Schedule of Payments. For certain, he did

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2594

not expressly ask if I was agreeable to applying the $175,000 to these other debts or to treating the other debts as "advances" under the Promissory Note, which would then be secured by the Ship Mortgage.

It is puzzling that Mr. Cohen relies on the same Statement that I do in making the above assertions, but fails to note that the date the Statement was given to him right after he made the payment, not "within a month or two" after the November 10, 2005 payment.

35. Contrary to Mr. Cohen's present assertions, therefore, after I sent Mr. Cohen the Statement, Mr. Cohen never objected to me to the information on the Statement. Rather, he continued to make payments under the Note and Mortgage.

**Further Advances To The Cohens In December of 2006**

36. After November of 2005, the Cohens continued their repeated failure to make payments, which caused interest to continue to accrue on the amount of the unpaid indebtedness.

37. In addition, in December of 2006, Barry Cohen agreed to add the amount of $7,417.67, which was the amount that Olde Port Fisheries was indebted to Del Mar after Del Mar pulled out of Avila Beach. Since Old Port Fisheries could not pay, Barry Cohen requested that Joe Roggio add this amount to the Note and Mortgage balance, which was done. Barry Cohen also agreed to add another $1,368.82 for fuel advances.

38. Further, Barry Cohen agreed that he would reimburse Del Mar for Del Mar's attorney's fees and costs incurred in connection with the Avila Beach litigation. By the time Del Mar's involvement in the matter concluded, the total fees and costs were $21,308.52. Mr. Cohen agreed that this sum would be added to the principal balance. As of December of 2006, therefore, the amount owing under the Note and Mortgage rose to the principal sum of **$179,584.37**, with accrued interest of $11,190.63.

**The Three Payments In 2007**

39. The Cohens made a payment in the amount of $2,000 in February of 2007; $3,000 later in February; and $3,000 in April of 2007. These were all applied to interest only, and did not reduce the principal. As a result, the amount of principal and interest due and owing under the Note and Mortgage was **$189,374.54 ($179,584.37 principal and $9,790.17**

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601
DelMarSeafoods/2504

Case No.: CV 07-02952 WHA
DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S OPPOSITION

1    **accrued interest as of June 14, 2007.)**  Interest continues to accrue at $34.92 per day.  A

2    true and correct copy of a Spreadsheet showing the amounts, payments, and interest accrual

3    is attached as Exhibit D to Cappuccio's Dec.

4         40.    Moreover, as the spreadsheet demonstrates, the Cohens were indeed

5    repeatedly in default prior to Del Mar bringing its action.

6    **WHY DEL MAR FELT IS WAS NECESSARY TO ARREST THE VESSEL AND**

7    **FORECLOSE ON THE NOTE AND MORTGAGE**

8         41.    Finally, the foregoing amounts are not the only debts that Mr. Cohen owes to

9    Del Mar.  As a result of the joint venture between Del Mar and the Cohens, Del Mar was

10    able in 2006 to fully reconcile the profits and losses from the Avila Beach joint venture.  As a

11    result, Del Mar discovered the Cohens also owe Del Mar $72,546 for losses that the joint

12    venture sustained but which the Cohens did not cover.  A true and correct Statement of

13    Account showing Del Mar's and Barry Cohen's debt to Del Mar from the joint venture is

14    attached as Exhibit E to Cappuccio's Dec.  I understand that Del Mar will amend its

15    Complaint against Barry Cohen to add this claim for monies owed from the joint venture.

16         42.    In addition, prior to the Vessel being arrested, I learned that the Cohens were

17    involved in a divorce proceeding to end their marriage.   A true and correct copy of the court

18    documents relating to the Dissolution of Marriage for the Cohens is attached to Cappuccio's

19    Dec. as Exhibit F.

20         43.    Further, prior to the Vessel being arrested, I learned that Barry Cohen owes

21    his attorneys (and may not recover) $1 million as a result of his ill-considered litigation

22    against the Port San Luis Harbor District regarding his lease on the facility in Avila Beach.

23    A true and correct copy of the papers showing the monies that  Barry Cohen owes from that

24    litigation is attached to Cappuccio's Dec. as Exhibit G.

25         44.    I also understand that the Cohens' initial response to the arrest was to hire a

26    bankruptcy lawyer, who advised Del Mar's counsel that he intended to file bankruptcy to stop

27    the litigation against the Vessel and the Cohens from going forward.

28    / / /

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafoods/2504

45.    I also understand that in response to the Cohens counsel's request to have Del Mar release the Vessel from arrest, Del Mar's counsel has repeatedly suggested that the Vessel could easily be released from arrest if the Cohens posted a bond to obtain its release; and even directed the Cohens' counsel to bonding companies who routinely provide bonds for such purposes.  The Cohens' counsel, however, has repeatedly stated that the Cohens are in no position to post a bond, pointing out that the Cohens do not have any unencumbered assets to provide as collateral.  The lack of any unencumbered assets is extremely disturbing, as it suggests the Cohens are drowning in debt.

46.    In this regard, the Note provides that, in addition to the Cohens failing to make timely or sufficient payments, the Note may become due and payable immediately if: the maker fails to notify holder or any material change in their financial condition." Exhibit A to Cappuccio's Dec., Note, page 2.

47.    The Mortgage also provides, in addition to the Cohens failing to make timely or sufficient payments, that the Note and the Mortgage are immediately due and payable if Del Mar reaches the conclusion "in good faith at any time that, through actual or prospective net current asset position, net worth, asset-liability ratio, or earning, . . Mortgagee is in danger of losing said debt, or any part thereof . . .." Exhibit B to Cappuccio's Dec., Mortgage, page 5.

48.    Repeated non-payment and/or insufficient payment on a secure debt, and liability for $1 million in attorney's fees from a litigation, would normally be enough by itself for any creditor to declare a default. The combination of all of the circumstances outlined above, however, should remove any doubt that there was and is ample cause for Del Mar to declare a default under the Note and Mortgage.

49.    Nevertheless, if Barry Cohen really wants to release the Vessel from arrest, he can do so. For example, I understand Mr. Cohen owns a vintage Corvette, which I understand is worth at least $200,000 and unencumbered by debt.  Mr. Cohen could sell the Corvette and use the money from the sale to post a bond to release the Vessel.  Of course, if Mr. Cohen no longer owns the Corvette, or the Corvette is no longer unencumbered, this may

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-
02952 WHA
DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S OPPOSITION

1  not be possible, which is cause for even greater concern by Del Mar regarding the Cohens'

2  financial condition.

3      50.     In summary, I believe that Del Mar has arrested the Vessel in good faith

4  because the Cohens' finances are in an utter shambles and the Cohens appear to be

5  contemplating bankruptcy; their corporation has been suspended for failure to pay taxes; the

6  Cohens have repeatedly failed to make payments as required by the Note and Mortgage; were

7  and are in default under the Note and Mortgage; and now, with expense of arrest and

8  attorney's fees incurred in this litigation, the Cohens now owe Del Mar more than $200,000

9  under the Note and Mortgage, not including the more than $72,000 they owe Del Mar from

10  the Avila Beach joint venture,  or the $1 million they owed on a judgment to the Port of San

11  Luis. At present, I am unaware that the Cohens have anywhere near sufficient assets to pay

12  off their presently outstanding debts.

13      51.     With the foregoing in mind, it is important to point out that if the Court

14  releases the Vessel from arrest, without requiring a bond be posted, the Vessel, because it is

15  highly mobile, can leave this district in a matter of hours; and can leave the United States in

16  less than twenty-four hours; thereby depriving Del Mar of a prime source of collateral that

17  secures any judgment Del Mar obtains under the Note and Mortgage. Del Mar, at this

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/SeaSouls/2504

-11-

Case No.: CV 07-

02952 WHA

DECLARATION OF JOE ROGGIO IN SUPPORT OF PLAINTIFF'S OPPOSITION

1   point, has little hope of recovering on a judgment against the Cohens, as the Cohens may

2   well carry through on their threats and file personal bankruptcy at any stage of this litigation

3   prior to or after Del Mar obtains a judgment against them.

4       I declare under penalty of perjury under the laws of the United States of America that

5   the forgoing is true and correct. Dated July 11, 2007 at Watsonville, California.

6

7                           Joe Roggio

8                           Controller, Del Mar Seafoods, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROGGIO DEC. IN SUPPORT OF OPPOSITION TO MOTION TO VACATE ARREST