James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone:  (415) 276-6500
Facsimile:   (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and
Claimant, F/V POINT LOMA Fishing Company, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., | No. C-07-2952-WHA |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, | |
| Defendants. | **Hearing Date:  April 10, 2008**<br>**Time:            8:00 a.m.**<br>**Place:          Courtroom 9, 19th Floor** |

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    OVERVIEW OF APPLICABLE LAW .............................................. 2

III.   STATEMENT OF FACTS ................................................................... 3

      A.     The Parties ........................................................................... 4

      B.     The Promissory Note and Mortgage ................................... 4

      C.     Payments by Defendants ...................................................... 5

      D.     Prior Dealings between Plaintiff and Defendants ............... 6

      E.     Plaintiff's Wrongful Arrest of the Vessel ........................... 7

IV.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED .......................................... 9

      A.     The Legal Standards for Summary Judgment Demonstrate That This Motion Should Be Denied. ................................................................. 9

      B.     Material Facts Are In Dispute Regarding Plaintiff's Claim for Default Under The Promissory Note and Mortgage. ........................................... 9

            1.     Defendants Have Not Breached The Payment Terms ................ 10

            2.     Defendants Have Not Breached The Promissory Note By Failing To Maintain The Vessel. ......................................................... 13

            3.     Defendants Have Not Breached The Promissory Note By Failing To Name Del Mar As A Loss Payee Under The Insurance Policies. ....................................................................................... 15

      C.     Material Facts Are In Dispute Regarding Defendants' Claim For Wrongful Arrest. ......................................................................................... 16

            1.     Plaintiff Breached the Express Terms of the Loan Agreement by Arresting the Vessel. ........................................................... 16

            2.     Plaintiff Breached the Implied Covenant of Good Faith and Fair Dealing. .................................................................................... 17

            3.     Plaintiff's Conduct Constitutes Bad Faith and/or Gross Negligence ................................................................................. 18

      D.     Material Facts Are In Dispute Regarding Defendants' Claim For Intentional and Negligent Interference With Prospective Economic Advantage ................................................................................................... 20

            1.     Plaintiff Intentionally Interfered with Defendants' Prospective Economic Advantage by Seizing the Vessel without Cause ....................... 21

DAVIS WRIGHT TREMAINE LLP

i

2.    Plaintiff Negligently Interfered with Defendants' Prospective Economic Advantage by Seizing the Vessel.................................23

E.    Whether Or Not Defendants Should Recover Any Damages Related To The Loss Of The Fishing Net Is An Issue Of Damages And Not Appropriate For Summary Judgment.................................24

V.    CONCLUSION .................................25

DAVIS WRIGHT TREMAINE LLP

SFO 404371v2 0084289-000001

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aydin Corp. v. Loral Corp.,*
  718 F. 2d 897 (9th Cir. 1983) ................................................................................................ 9

*Badie v. Bank of America*
  (1998) 67 Cal. App. 4th 779 .......................................................................................... 9, 18

*Coastal Barge Corp. v. M/V Maritime Prosperity,*
  901 F. Supp. 325 (M.D. Fla. 1994) .............................................................................. 19, 20

*Cohen v. Port San Luis Harbor District,*
  No. CV 040897 ................................................................................................................ 4, 5

*Essex Insur. Co. v. Five Star Dye House, Inc.*
  (2006) 38 Cal. 4th 1252 .................................................................................................... 13

*Floystrup v. City of Berkeley*
  (1990) 219 Cal. App. 3d 1309 .......................................................................................... 17

*Frontera Fruit Co. Inc. v. Dowling,*
  91 F.2d 293 (5th Cir. 1937) .............................................................................................. 19

*Ham Marine, Inc. v. Dresser Industries, Inc.,*
  72 F.3d 454 (5th Cir. 1995) ................................................................................................ 3

*Korea Supply Co. v. Lockheed Martin Corp.*
  (2003), 29 Cal. 4th 1134 ............................................................................................ 21, 22

*M/V Belle of Orleans,* 439 F. Supp. at 1189, n.5 .................................................................. 19

*North American Chemical Co. v. Superior Court*
  (1997) 59 Cal. App. 4th 764 ........................................................................................ 23, 24

*Ocean Services Corp. v. Ventura Port District*
  (1993) 15 Cal. App. 4th 1762 ............................................................................................ 17

*Salaman v. Bolt*
  (1977) 74 Cal App. 3d 907 ................................................................................................ 13

*Salazar v. Atlantic Sun,*
  881 F. 2d 73 (3d Cir. 1989) ............................................................................................... 19

*Schumm v. Berg,*
  37 Cal. 2d 174 (1951) ........................................................................................................ 12

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

*SEC v. Koracorp Indust., Inc.,*
    575 F.2d 692 (1978) ................................................................................................. 9

2

3

*Self Directed Placement Corp. v. Control Data Corp.,*
    908 F.2d 462, 466 (9th Cir. 1990) ............................................................................ 21

4

*South LaFourche Bank & Trust Company v. M/V Southern Star,*
    582 F.Supp. 584 (E.D.La. 1984) ............................................................................... 2

5

6

*Southland Financial Corp. v. Oil Screw Mary Evelyn,*
    248 F. Supp. 520 (E.D. La. 1965) ............................................................................. 2

7

*State Bank & Trust Company of Golden Meadow v. Boat D J Griffin,*
    755 F. Supp. 1389 (E.D. La. 1991) ........................................................................... 2

8

9

*Storek & Storek, Inc. v. Citicorp Real Estate*
    (2002) 100 Cal. App. 4th 44 .................................................................................... 17

10

11

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*
    (1987) 195 Cal. App. 3d 1032 .................................................................................. 15

12

**STATUTES**

13

46 U.S.C. § 31321(b)(3) ................................................................................................. 2

14

46 U.S.C. §§ 31322, 31325, and 31329 ........................................................................ 2

15

46 U.S.C. § 31325(b) ...................................................................................................... 2

16

Cal. Civ. Code § 954 .................................................................................................... 13

17

Cal. Civ. Code § 1473 .................................................................................................. 11

18

Cal. Civ. Code § 1477 .................................................................................................. 11

19

Cal. Civ. Code § 1622 .................................................................................................. 12

20

Cal. Civ. Code §1624 (2) ............................................................................................. 12

21

22

Cal. Civ. Code §1638 .................................................................................................. 14

23

Cal. Civ. Code §1646 .................................................................................................. 10

24

Cal. Civ. Code §1647 .................................................................................................. 11

25

Cal. Civ. Code §1661 .................................................................................................. 11

26

Cal. Civ. Code §1698 .................................................................................................. 12

27

Cal. Civ. Code §1698(a) .............................................................................................. 10

28

Cal. Civ. Code §1698(b) .............................................................................................. 10

DAVIS WRIGHT TREMAINE LLP

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          SFO 404371v2 0084289-000001
Case No. C-07-2952-WHA

Cal. Civ. Code §1698(c) ........................................................................................... 10

Cal. Civ. Code §1714 ................................................................................................ 21

Fed. R. Civ. P. 56(c) ............................................................................................. 9, 25

**OTHER AUTHORITIES**

Contracts § 241(a)-(b) .............................................................................................. 15

Federal Ship Mortgage Act. ........................................................................................ 2

Schoenbaum, Admiralty and Maritime Law, 4th Ed.,
    Vol. 1, § 3-10, 130-139 ...................................................................................... 2, 3

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

This case was precipitated by Plaintiff Del Mar Seafoods, Inc.'s ("Plaintiff" or "Del Mar") unreasonable refusal to pick up the phone and contact Defendant Barry Cohen, a former employee and business partner in two recent joint ventures, to sort out unresolved issues relating to their past business dealings. Instead, based on an erroneous interpretation of these past dealings and without any due diligence with regard to either the debt owed or the F/V POINT LOMA (the "Vessel"), Plaintiff had this Court order the Vessel seized without disclosing the fact that Defendants had in fact made a substantial pre-payment in the amount of $175,000. Plaintiff's actions caused Defendants to miss at least 13 fishing trips during the period of arrest. The only written agreements entered into by the parties are a promissory note for $215,000 ("Promissory Note") and mortgage on the Vessel securing the debt ("Mortgage"). Both were drafted by Plaintiff and provided security in the Vessel for only $215,000. It is undisputed that Defendants have paid $188,000 on the Promissory Note, with an advance payment of $175,000 on November 10, 2005. Because of this advance payment, the Promissory Note was amended by actual performance regarding monthly payments. Despite this rather significant pre-payment, Plaintiff had the Vessel seized without first talking to the Defendants or sending notice to Mr. Cohen, with whom Plaintiff's officers were intimately familiar. This case, and significant legal expenses by both parties, then ensued.

On the basis of these facts, this Court quashed its *ex parte* order to arrest the Vessel and returned it to fishing, ruling that it did not appear that a breach of the Promissory Note had occurred. Discovery is now completed and trial of this matter is set for May 19, 2008.

Plaintiff has now filed a Motion for Summary Judgment, or Alternatively, Partial Summary Judgment ("Motion for Summary Judgment" or "MSJ"), on several issues in the case. Plaintiff asserts that Del Mar is entitled to judgment as a matter of law on its basic claim, i.e. breach of the terms of payment under the Promissory Note. Plaintiff also throws in two other claims of breach: failure to maintain the fishing vessel and failure to properly insure it – both of which were neither investigated nor raised *prior* to the arrest. Plaintiff also seeks partial summary judgment on Defendants' counterclaims for breach of the Promissory Note (i.e. arrest of the

DAVIS WRIGHT TREMAINE LLP

1    Vessel even though no breach had occurred) and for intentional and/or negligent interference with

2    Defendants' prospective economic advantage (i.e. by improperly seizing the Vessel) and breach of

3    the Promissory Note's implied covenant of good faith and fair dealing.  As to each issue for which

4    summary judgment is sought, Plaintiff implies that applicable law is not in dispute and that there

5    are no genuine issues of material fact, under the applicable law, as to these particular issues.

6    However, none of Plaintiff's arguments hold water and summary judgment is not appropriate on

7    any of the issues addressed in their Motion for Summary Judgment.

8    **II.    OVERVIEW OF APPLICABLE LAW**

9         Plaintiff has not provided the Court with a meaningful discussion of the law that is to be

10    applied to their claims, an essential predicate to an analysis of what constitutes the material facts

11    in a summary judgment motion.  First of all, the Vessel Mortgage is clearly a maritime contract

12    that provides this Court with admiralty jurisdiction, based on the Federal Ship Mortgage Act.

13    *The Thomas Barlum*, 293 U.S. 21, 33 (1934) (prior to enactment of Ship Mortgage Act 1920, the

14    admiralty had no jurisdiction of a suit to foreclose a mortgage on a ship); 46 U.S.C. §§ 31322,

15    31325, and 31329; Schoenbaum, Admiralty and Maritime Law, 4th Ed., Vol. 1, § 3-10, 130-139

16    (2007).  This Court therefore has admiralty jurisdiction.  However, there is nothing especially

17    maritime about a promissory note, although it contains the obligations Plaintiff seeks to enforce.[1]

18    Under 46 U.S.C. § 31325(b), Plaintiff may bring an action in this court to enforce a claim for an

19    outstanding indebtedness secured by a mortgaged vessel if there is a "default."

20         In deciding whether a "default" has occurred and the issues presented by Plaintiff's Motion

21

22    _____

[1] In this regard, Plaintiff has made claims that Defendants agreed to secure future "advances" under the Vessel
23    Mortgage.  However, while the Vessel Mortgage has a provision that provides for security in "advances," the
      Promissory Note has no provision that provides for such advances.  Indeed, the Promissory Note provides a fixed
24    amount to be secured, $215,000, plus interest and attorney's fees, if any, but does not have a provision for future
      loans.  The Vessel Mortgage itself only secures the underlying loan transaction but does not contain any substantive
25    agreement by the parties either to make or accept future advances, thus no such advances are secured under the Vessel
      Mortgage in this case unless the Court finds that the Promissory Note has been amended in writing.  *See generally*,
26    *State Bank & Trust Company of Golden Meadow v. Boat D J Griffin*, 755 F. Supp. 1389 (E.D. La. 1991) (agreements
      did not cover future advances); *South LaFourche Bank & Trust Company v. M/V Southern Star*, 582 F.Supp. 584
27    (E.D.La. 1984) and *Southland Financial Corp. v. Oil Screw Mary Evelyn*, 248 F. Supp. 520 (E.D. La. 1965) (applying
      Louisiana law to uphold a vessel mortgage that secures an instrument that provides for future advances).  *See also* 46
28    U.S.C. § 31321(b)(3) (providing for amounts that may be secured by a mortgage and an underlying instrument).
      Defendants' submit that the Promissory Note contains no obligations on either party to make or accept future
      advances and was never amended to provide for additional loan amounts.

2

DAVIS WRIGHT TREMAINE LLP

1  for Summary Judgment, this Court must determine what law should be applied. In its Motion for

2  Summary Judgment (at p. 13), Plaintiff has only one very short and significantly incomplete

3  statement as to the law to be applied in this case. Nothing in Plaintiff's statement addresses what

4  law is to be applied to the issues of default under the Promissory Note or to how it can be

5  amended.

6      The central issues in the case and, indeed, in Plaintiff's Motion for Summary Judgment

7  must be decided on the appropriate applicable rules under admiralty law. Generally speaking,

8  admiralty jurisdiction requires the application of substantive admiralty law. Schoenbaum,

9  Admiralty and Maritime Law, 4th Ed., Vol. 1, § 4-1, 157 (2007). However, one of the sources of

10  admiralty law is state law, "insofar as appropriate in the admiralty context." *Id.*, at 158. Because

11  admiralty law is not all-encompassing, this Court may fashion a rule by looking to various

12  appropriate sources, including state statutory law and common law which is then borrowed and

13  applied as the applicable federal rule.

14      Therefore, in this Opposition, Defendants will identify state rules that can be borrowed and

15  applied to the issues in this case and this Motion for Summary Judgment. With respect to the

16  Promissory Note, Plaintiff cites no overriding admiralty rule; local concerns predominate with

17  respect to its construction and purported amendment; and the uniformity principle is not critical as

18  to these issues. *Ham Marine, Inc. v. Dresser Industries, Inc.*, 72 F.3d 454, 459 (5th Cir. 1995) (to

19  the extent not inconsistent with admiralty principles, state contract law may be applied to maritime

20  contracts). Accordingly, with regard to the Promissory Note and associated issues, such as

21  amendment of the Promissory Note and default, Defendants make reference below to California

22  law on contracts as appropriate to the issues at hand.

23  **III.    STATEMENT OF FACTS**

24      The following Statement of Facts sets forth facts that, contrary to Plaintiff's assertions,

25  raise genuine issues of material fact as to the issues raised in the Motion for Summary Judgment.

26  On June 7, 2007, Plaintiff filed a verified complaint against Defendants alleging breach of the

27  Promissory Note and Mortgage on Defendant's fishing vessel, the F/V Point Loma (the "Vessel")

28  and a right to foreclosure of the Mortgage. Declaration of Gwen Fanger in Support of Defendants'

*DAVIS WRIGHT TREMAINE LLP*

1  Opposition to Motion for Summary Judgment ("Fanger Dec."), Ex. 1 (Verified Complaint, e.g.,

2  ¶20). Plaintiff failed to disclose Defendants' $175,000 pre-payment on the Promissory Note to the

3  Court and thus obtained an *ex parte* order of arrest of the Vessel that same day. *Id.*; Fanger Dec.,

4  Ex. 2 (Order of Arrest). The Vessel and all of its appurtenances, including fishing gear and a

5  fishing net, was held, and prevented from engaging in its fishing activities, for over two months

6  before the Court ordered its release on August 17, 2007 for Plaintiff's failure to show probable

7  cause for the arrest after a Supplemental Admiralty Rule 4(E) hearing. Fanger Dec., Ex. 2; Ex. 3.

8  **A.    The Parties**

9      The Plaintiff, Del Mar Seafoods, Inc., is engaged in the fish processing business. Fanger

10 Dec., Ex. 15 (Excerpts of Deposition of Joe Cappuccio, dated December 14, 2007 ("Cappuccio

11 Depo."), 8:12-17).

12     Barry and Christene Cohen are a marital community although they are currently separated,

13 and still legally married. Fanger Dec., Ex. 12 (Defendants' Responses to Requests for Admissions

14 ("RFA Responses") No. 1; Ex. 21 (Excerpts of Deposition of Christene Cohen, January 11, 2008

15 ("Chris Cohen Depo"), 5:19-21); Ex. 24 at ¶6.

16     The F/V Point Loma Fishing Company, Inc. ("PLFC") is the current owner of the Vessel.

17 Fanger Dec., Ex. 23. In 2004, Mr. Cohen transferred ownership of the Vessel to PLFC, a

18 California subchapter S corporation. Fanger Dec. Ex. 24 at ¶7. Defendants allege that Plaintiff

19 knew of this transfer and raised no objection. As a result of the transfer, the Vessel is still subject

20 to the Mortgage and PLFC is responsible for the continued operation of the Vessel. (Excerpts of

21 Deposition of Barry Cohen, January 9, 2008 ("Cohen Depo.") 14:9-18).

22 **B.    The Promissory Note and Mortgage**

23     Plaintiff and Barry and Christene Cohen entered into the Promissory Note with Plaintiff on

24 October 31, 2003. Fanger Dec., Ex. 4. The amount of loan specified in the Promissory Note is

25 $215,000. *Id.* The Promissory Note is secured by a Mortgage on the Vessel. Fanger Dec., Ex. 5.

26 Plaintiff and Mr. Cohen had contemplated forming a joint venture to fish in Mexico (the "Mexico

27 Joint Venture") and Joe Cappuccio intended to purchase a 50% interest in the Vessel related to this

28 venture. Fanger Dec., Ex. 6 (Cohen Depo. 48:19-49:12). However, Joe Cappuccio decided not to

DAVIS WRIGHT TREMAINE LLP

4

1  purchase a half interest in the Vessel and the parties agreed to convert the money already spent on

2  the Vessel into a loan under the Promissory Note, secured by the Mortgage on the Vessel. *Id.* at

3  51:20-52:1. Plaintiff prepared the Promissory Note which clearly sets forth in writing the amount

4  owed: $215,000.[2] Fanger Dec., Ex. 7 (Excerpts of Deposition of Joe Roggio, December 13, 2007

5  ("Roggio Depo"), 64:14-25); Fanger Dec., Ex. 4 (Promissory Note, Introduction). The only

6  purpose of the Promissory Note was to memorialize a loan associated with Joe Cappuccio's

7  contemplated purchase. Fanger Dec., Ex. 6 (Cohen Depo. 76:24-78:4); Ex. 22 (Excerpts of

8  Deposition of Joe Roggio taken in *Cohen v. Port San Luis Harbor District*, No. CV 040897,

9  November 29, 2005 ("Roggio Avila Beach Depo."), 197:24-198:5). Defendants contend that at all

10 times, the only amount secured by the Mortgage and owed under the Promissory Note has been

11 $215,000.

12     **C.    Payments by Defendants**

13         The original terms of the Promissory Note required that Mr. Cohen would make monthly

14 payments in the amount of $3,000 or fifteen percent of the gross landing receipts of the Vessel's

15 seafood production. Fanger Dec., Ex. 4 (Promissory Note, Introduction). However, the parties

16 modified the payment terms of the Promissory Note by actual performance when the Cohens made

17 an advance payment on the Promissory Note in the amount of $175,000 by check dated November

18 9, 2005. Fanger Dec., Ex. 8 at COHEN 00005; Ex. 6 (Cohen Depo. 33:25-35:3 at 34:25-35:3;

19 136:3-10). The Promissory Note did not require such a payment. Fanger Dec., Ex. 7 (Roggio

20 Depo. 138:14-20); *see also* Ex. 4 (express terms of Promissory Note do not require such a

21 payment). Nevertheless, in late 2005, Joe Cappuccio, the Plaintiff's President, asked the Cohens

22 to reduce the size of the debt on the Vessel because of concerns expressed by Plaintiff's bank.

23 Fanger Dec., Ex. 6 (Cohen Depo. 139:21-141:12). The Cohens complied with the request,

24 borrowed $175,000 from the equity in their home, and provided a check for that amount to Joe

25 Cappuccio on or around the date of the check. Fanger Dec., Ex. 21 (Chris Cohen Depo. 48:20-

26 22); Ex. 8 at COHEN 00005.

27 ――――――――――――――――

[2] Notably, the Note and Mortgage do not specifically include any fishing permits. NOAA does not allow this

28 particular permit to be the subject of a lien.

5

DAVIS WRIGHT TREMAINE LLP

1    Mr. Cohen made additional payments on the Promissory Note in January ($2,000),

2    February ($3,000), and March ($3,000) of 2007.  Fanger Dec., Ex. 8 (COHEN 00006-8).

3    Defendants' payments on the Promissory Note to date total $188,000, including the $175,000 pre-

4    payment.  *Id.* at COHEN 00004-8.

5    Mr. Cohen understood that the Promissory Note did not include interest based on his

6    discussions with Mr. Roggio and the fact that he had borrowed money from the equity in his house

7    to make the $175,000 lump sum pre-payment.  Fanger Dec., Ex. 6 (Cohen Depo. 143:1-144:7); *see*

8    *also* Fanger Dec., Ex. 22 (Roggio Avila Beach Depo. 199:15-21).  Joe Cappuccio also told him

9    that he could pay off the remainder of the Promissory Note whenever he liked.  Fanger Dec., Ex. 6

10    (Cohen Depo. 137:2-138:3).

11    Defendants' contention that the only amount outstanding under the Promissory Note is

12    $27,000 and no additional payments were owed at the time of the arrest is consistent with the

13    express terms of the agreement, the relationship of the parties, the circumstances surrounding the

14    payment, and the subsequent conduct of Plaintiff.  First and foremost, there is no written

15    amendment modifying the amount of the debt under the Promissory Note and neither Mr. or Mrs.

16    Cohen, who both signed the Promissory Note, ever agreed to such an amendment.  Fanger Dec.,

17    Ex. 7 (Roggio Depo. 38:22-39:1; 65:5-7; 121:1-4).  Second, Mr. Cappuccio and Mr. Cohen have

18    known each other for a long time and had a history of business dealings together.  Fanger Dec.,

19    Ex. 15 (Cappuccio Depo. 12:17-13:4).  In addition, Mr. Cohen was an employee of Del Mar at one

20    time.  *Id.* at 16:14-17.  Third, Defendants made a substantial pre-payment on the Promissory Note

21    that they were not otherwise required to make.  Fanger Dec., Ex. 7 (Roggio Depo. 138:14-20); *see*

22    *also* Ex. 4 (express terms of Promissory Note do not require such a payment).  Fourth, Plaintiff

23    never sent Defendants any written notice that they were behind in payments or owed any interest.

24    *See e.g.*, Fanger Dec., Ex. 7 (*See e.g.*, Roggio Depo. 43:16-44:6; 126:24-127:7; 139:19-140:3); Ex.

25    22 (Roggio Avila Beach Depo. 199:22-200:3).  Fifth, Plaintiff never requested payment under the

26    15% gross landing provision.  *Id.* Ex. 7, Roggio Depo. at 139:4-18.

27    **D.    Prior Dealings between Plaintiff and Defendants**

28    In addition to the Mexico Joint Venture, Plaintiff and Mr. Cohen engaged in a 50/50 joint

DAVIS WRIGHT TREMAINE LLP

6

1    venture together related to fish processing at the Port San Luis Pier in California through 2004

2    involving Mr. Cohen's other business, Olde Port Fisheries (the "<u>Avila Beach Joint Venture</u>").

3    Fanger Dec., Ex. 6 (Cohen Depo. 20:23-21:25; 25:13-19); Ex. 15 (Cappuccio Depo. 14:15-15:3).

4    Plaintiff and Mr. Cohen each held a 50% interest in the Avila Beach Joint Venture. *Id.* Ex. 15

5    (Cappuccio Depo. 15:7-11). Mr. Cohen and his son Leonard Cohen initiated litigation against the

6    Port San Luis Harbor District related to the Avila Beach Joint Venture. Fanger Dec., Ex. 25

7    (Excerpt of deposition of Leonard Cohen, January 10, 2008, 10:8-14). When Plaintiff pulled out

8    of the Avila Beach Joint Venture, it signed an Assignment of Joint Venture Interest (the

9    "<u>Assignment</u>") with Mr. Cohen where it transferred all of its rights in the Avila Beach Joint

10   Venture, including any claims or causes of action on behalf of the joint venture, to Mr. Cohen.

11   Fanger Dec., Ex. 9 (COHEN 00014 at ¶2); Ex. 7 (Roggio Depo. 129:1-13).

12       **E.**    **<u>Plaintiff's Wrongful Arrest of the Vessel</u>**

13       Plaintiff's arrest of the Vessel was wrongful for several reasons. First, Plaintiff had no

14   basis for arresting the Vessel. *See generally*, Fanger Dec., Ex. 3. The payment terms of the

15   Promissory Note had been amended by the actual performance of the parties when Defendants

16   made the substantial, $175,000 pre-payment and thus, were (and are) current on their payments at

17   the time of the arrest. *See* Section III.C. above. Moreover, Defendants have paid a total of

18   $188,000 on the $215,000 Promissory Note to date; a fact that was not disclosed to the Court at

19   the time Plaintiff sought to arrest the Vessel. *Id;* Ex. 1. In addition, despite Plaintiff's allegations

20   that the Vessel was not kept in good condition in violation of the terms of the Mortgage, the

21   condition of the Vessel is not a term of default under the Mortgage. Fanger Dec., Ex. 5

22   (Mortgage, Art. II(1)(a) (Section 7 of Article 1 setting forth owner's obligation to maintain Vessel

23   not identified as event of default among other terms of default)). Nor did the condition of the

24   Vessel violate the provisions of the Mortgage that it be kept in "working order." *See e.g.*, Fanger

25   Dec., Ex. 11 (Excerpt of deposition of David Kobak, January 8, 2008 ("<u>Kobak Depo.</u>") 40:19-

26   41:5). In addition, Plaintiff's security in the Vessel was never at risk from loss because the Vessel

27   was and has been fully insured since the Mortgage was signed. Fanger Dec., Ex. 18.

28       Second, Plaintiff's arrest was wrongful in light of the totality of the circumstances that

DAVIS WRIGHT TREMAINE LLP

7

1  existed at the time of the arrest.  First and foremost, Defendants paid, at Plaintiff's request, a

2  $175,000 pre-payment on the Promissory Note – a fact conspicuously absent from Plaintiff's

3  Verified Complaint.  Fanger Dec., Ex. 1; Ex. 8 (COHEN 00006); Ex. 6 (Cohen Depo. 139:21-

4  141:12).  Second, Plaintiff admits that it based its decision to have the Vessel seized on

5  unsubstantiated assumptions about the loss of a motion for attorneys' fees against Mr. Cohen in

6  the Avila Beach litigation, his personal financial status (not the condition of PLFC, the owner of

7  the Vessel) and that he was involved in a "nasty" divorce.  Fanger Dec., Ex. 15 (Cappuccio Depo.

8  26:2-27:19).  Notably, Plaintiff admits that it knew the Vessel was in fact fishing at the time of the

9  arrest  Fanger Dec., Ex. 15 (Cappuccio Depo. 23:4-9).  Defendants contend that Plaintiff cannot

10  show it made any inquiry into whether its assumptions were remotely accurate.  *Id.* at 21:17-

11  23:24).  Had it done so it would have discovered that the attorneys in the Avila Beach litigation

12  have made no attempt to collect any fees from Mr. Cohen.  Fanger Dec., Ex. 6 (Cohen 123:20-

13  124:8).  It would also have discovered that Mr. Cohen has never declared bankruptcy.  *Id.* at

14  152:16-17.  Nor did Plaintiff inquire as to the financial condition of PLFC, the owner of the

15  Vessel, prior to the arrest.  Fanger Dec., Ex. 15 (Cappuccio Depo. 26:2-27:19).

16        The wrongful arrest of the Vessel caused Defendants to miss at least 13 fishing trips and

17  deprived them of their regular income from their fishing operations for more than two months.

18  Fanger Dec., Ex. 11 (Kobak Depo. 19:2-4); Ex. 13 (COHEN 00056-57); *compare* dates, Ex. 1 and

19  Ex. 2.  Prior to the arrest, the Vessel regularly engaged in fishing operations in the EEZ off

20  California and typically grossed an average of more than $ 9,000 a trip.  *See e.g.*, Fanger Dec., Ex.

21  10 (Defendants First Supplemental Interrogatory Response No. 12).  During the time of the arrest,

22  Defendants continued to pay the Vessel's regular captain and crew to remain available for when

23  the Vessel was allowed to resume fishing.  Fanger Dec., Ex. 11 (Kobak Depo. 26:1-22).  For Mr.

24  Cohen, the Vessel represented his only income other than Social Security.  Fanger Dec., Ex. 12

25  (Defendants' RFA Responses No. 29).  The arrest directly cost Defendants opportunities for

26  income from using the Vessel in the local fisheries.  *See e.g.*, Fanger Dec., Ex. 10 (Defendants

27  First Supplemental Interrogatory Response No. 12) (analysis of income from trips immediately

28  preceding arrest); Ex. 14 (Settlement sheets from wholesalers for trips immediately preceding

8

1   arrest).

2   **IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED**

3

4   **A.    The Legal Standards for Summary Judgment Demonstrate That This Motion Should Be Denied.**

5         Summary judgment may only be granted when "there is no genuine issue as to any

6   material fact." Fed. R. Civ. P. 56(c). Summary judgment is inappropriate where there is a dispute

7   over facts that may affect the outcome of the case under the applicable substantive law. Summary

8   judgment may not be granted where there are differing versions of the evidence to be resolved at

9   trial. *Aydin Corp. v. Loral Corp.*, 718 F. 2d 897, 902 (9th Cir. 1983). In deciding a motion for

10  summary judgment, a Court must examine the evidence in the light most favorable to the non-

11  moving party and draw reasonable inferences in that party's favor. *Id.* Moreover, when the

12  credibility of the witnesses is at issue to evaluate contradictory or self serving statement, summary

13  judgment is not appropriate. *See e.g, SEC v. Koracorp Indust., Inc.,* 575 F.2d 692, 699 (1978)

14  (summary judgment should not be granted where issues of material fact cannot be resolved

15  without observation of demeanor of witness to evaluate credibility). As illustrated below,

16  contradictory testimony in this case requires an analysis of the witnesses' state of mind which

17  must be evaluated at trial. *Id.* These standards demonstrate that summary judgment and partial

18  summary judgment are not appropriate.

19  **B.    Material Facts Are In Dispute Regarding Plaintiff's Claim for Default Under The Promissory Note and Mortgage.**

20

21        Plaintiff alleges that it is entitled to summary judgment as to the issue of default under the

22  Promissory Note and Mortgage because Defendants allegedly breached the terms of the loan

23  agreement as set forth in the Promissory Note by failing to:  1) make monthly payments, 2)

24  maintain the Vessel, and 3) name Del Mar as a loss payee under the insurance policy. *See* MSJ

25  Section III.2.a at p. 10. The Promissory Note is the instrument formalizing the loan agreement

26  between the parties and therefore California contracts law applies when analyzing the terms and

27  any modifications of the agreement. Ultimately, any question of interpretation of the Promissory

28  Note must be resolved against the drafter, in this case, Plaintiff. *See e.g., Badie v. Bank of*

DAVIS WRIGHT TREMAINE LLP

1   *America* (1998) 67 Cal. App. 4th 779, 798. Thus, despite Plaintiff's allegations, Defendants have

2   presented evidence that they have not breached the terms of their loan agreement with Plaintiff

3   and therefore Plaintiff is not entitled to summary judgment as a matter of law.

4              1.    Defendants Have Not Breached The Payment Terms.

5        The underlying dispute in this litigation is whether Defendants have breached the terms of

6   their loan agreement under the Promissory Note secured by the Mortgage. MSJ Section III.2 at p.

7   10. Accordingly, California law regarding written contracts applies to the analysis of the payment

8   terms of the Promissory Note and any subsequent modifications of such terms. Cal. Civ. Code

9   §1646. The threshold issue is whether the parties modified the written payment terms of the

10  Promissory Note. A written contract may be amended by a contract in writing. Cal. Civ. Code

11  §1698(a). Alternatively, a written contract may be amended by an oral agreement to the extent the

12  oral agreement has been executed or performed by the parties. Cal. Civ. Code §1698(b).

13  Furthermore, a contract in writing may be amended by an oral agreement provided it is supported

14  by new consideration. Cal. Civ. Code §1698(c).

15       Under this framework, the facts presented by both parties raise significant, material

16  questions that cannot be resolved as a matter of law. Plaintiff argues that Defendants failed to

17  make monthly payments and therefore breached the Promissory Note. MSJ III.2.a. at p. 10.

18  However, Defendants contend that they did not breach the terms of the agreement because the

19  monthly payment terms of the Promissory Note were amended by the parties by actual

20  performance when Defendants paid to Plaintiff, upon its request, a lump sum, advance payment in

21  the amount of $175,000. Fanger Dec., Ex. 6 (Cohen Depo. 139:21-141:12). Plaintiff admits there

22  is no provision in the Promissory Note requiring Defendants to make such a payment. Fanger

23  Dec., Ex. 7 (Roggio Depo. 138:14-20). Rather, Plaintiff's bank had become concerned about the

24  size of the loan on its books and Plaintiff asked Defendants to make a substantial pre-payment on

25  the Promissory Note. Fanger Dec., Ex. 6 (Cohen Depo. 139:21-141:12). Defendants believed that

26  the advance payment applied to the $215,000 owed under the Promissory Note. *Id*. at 136:3-10.

27  In addition, in exchange for the lump sum payment, Plaintiff would not charge Defendants any

28  interest on the loan. *Id*. at 143:1-144:7; 145:1-147:5.

DAVIS WRIGHT TREMAINE LLP

10

1    The monthly payment terms were modified upon execution and performance of the parties.

2    *See e.g.*, Cal. Civ. Code §1661 (executed contract is one which is fully performed); Cal. Civ. Code

3    § 1473 ("Full performance of an obligation, by the party whose duty it is to perform it…if

4    accepted by the creditor, extinguishes it"); Cal. Civ. Code § 1477 ("A partial performance of an

5    indivisible obligation extinguishes a corresponding proportion thereof, if the benefit of such

6    performance is voluntarily retained by the creditor…"). Thus, the terms were effectively modified

7    when Defendants gave a check to Mr. Cappuccio for $175,000 and Plaintiff, specifically Mr.

8    Cappuccio, accepted it. Fanger Dec., Ex. 15 (Cappuccio Depo. 20:16-21:9; Fanger Dec., Ex. 6

9    (Cohen Depo. 136:3-138:8); and Fanger Dec. Ex. 8 (COHEN 00005). In addition, the amendment

10   of the payment terms was supported by new consideration when Plaintiff received a lump sum

11   pre-payment that it was not otherwise entitled to receive under the existing terms of the

12   Promissory Note. Fanger Dec., Ex. 7 (Roggio Depo. 138:14-20). In exchange, Defendants assert

13   they were not required to pay interest on the loan and Mr. Cohen could pay off the remainder of

14   the loan when he chose. Fanger Dec., Ex. 6 (Cohen Depo. 137:2-138:3 (no concern about

15   remaining amount of debt) after payment of $175,000); 143:1-144:7 (no interest owed)).

16   This interpretation of the amended agreement between the parties is consistent with the

17   circumstances surrounding the making of the Promissory Note and the subsequent modification.

18   *See e.g.*, Cal. Civ. Code §1647 (a contract may be explained by reference to circumstances under

19   which it was made and the matter to which it relates). The conduct of the parties following the

20   payment of the $175,000 supports Mr. Cohen's understanding of the amended payment terms.

21   First, he made the substantial payment at the request of Joe Cappuccio that Defendants were not

22   otherwise required to make. Fanger Dec., Ex. 7 (Roggio Depo. 138:14-20). Second, following

23   the advance, lump sum payment and prior to the arrest, Plaintiff never sent any notice to

24   Defendants that they owed anything under the 15% of gross landing receipts provision of the

25   Promissory Note. Fanger Dec., Ex. 7 (Roggio Depo. 139:4-18). Third, Plaintiff did not send any

26   notice to Defendants that they were late on any payments. *Id.* at 139:19-21; Fanger Dec., Ex. 22

27   (Roggio Avila Beach Depo. 199:22-200:3. Nor did Plaintiff ever send a notice that a payment of

28   interest was due prior the arrest. *Id.* Ex. 7, Roggio Depo. at 139:22-25; 140:1-3. In fact,

DAVIS WRIGHT TREMAINE LLP

11

1   statements made by Plaintiff call into question that it ever intended to charge Defendants interest

2   on the loan. *Id*. Ex. 7, Roggio Depo. at 111:24-112:8; Ex. 22 (Roggio Avila Beach Depo. 199:15-

3   21). Moreover, Defendants took out a second mortgage on their home to make the pre-payment so

4   it is questionable that they would have done so if they were still required to pay $3,000 per month

5   and the interest would not be charged on the loan made to them in connection with the

6   contemplated purchase of a half interest in the Vessel by Joe Cappuccio. Fanger Dec., Ex. 6

7   (Cohen Depo. 28:16-31:5 at 30:21-31:5). Thus, material questions of fact are raised as to what the

8   payment terms of the loan agreement required and whether in fact there was any breach that

9   cannot be resolved by summary judgment.

10      Moreover, the issue of breach cannot be decided at summary judgment because existing

11  questions of the amount of the debt allegedly owed under the Promissory Note are at issue and

12  notably not subject to the Motion for Summary Judgment. California law again applies to the

13  analysis of whether or not the Promissory Note was modified to include money owed by Mr.

14  Cohen's sons and other so-called advances paid to Mr. Cohen. In order to modify the amount of

15  the debt owed under the Promissory Note to include the debts of Mr. Cohen's sons, there must be

16  a writing. *See e.g.*, Cal. Civ. Code §1698 (written agreement modified in writing unless oral

17  agreement supported by new consideration); Cal. Civ. Code § 1622 (contracts may be oral except

18  where specially required by statute to be in writing); Cal. Civ. Code §1624 (2) (promise to answer

19  for the debts of another must be in writing); *Schumm v. Berg*, 37 Cal. 2d 174, 187-188 (1951)

20  (whenever "the leading and main object of the promissor is not to become surety or guarantor of

21  another, but to subserve some purpose or interest of his own, his promise is not within the statute,

22  although the effect of the promise may be to pay the debt or discharge the obligation of

23  another")(internal quotations omitted). The express terms of the Promissory Note set forth the

24  amount owed and the parties did not agree orally or in writing to modify this amount to include

25  any other debts incurred after it was signed. Fanger Dec., Ex. 7 (Roggio Depo. 65:5-7; 121:1-4).

26      The factual disputes regarding whether Defendants breached the payment terms and

27  whether the $175,000 pre-payment applied to the $215,000 set forth in the Promissory Note must

28  be resolved at trial along with the underlying question of the amount of the debt covered by the

DAVIS WRIGHT TREMAINE LLP

12

1  Promissory Note. Plaintiff argues that the lump sum payment did not cover Defendants' monthly

2  payments because it was entitled to apply the payment as it chose to "other debts" incurred by Mr.

3  Cohen that were rolled into the Promissory Note. MSJ III.2.a at p. 11. Plaintiff chose to apply

4  Defendants' pre-payment to debts allegedly incurred by Defendants after the Promissory Note had

5  been signed. *Id*. Defendants submit that they intended the lump sum pre-payment to be applied

6  only to the Promissory Note. Fanger Dec., Ex. 6 (Cohen Depo. 28:16-31:5 at 30:21-31:5; 33:25-

7  35:3 at 34:25-35:3). Contrary to Plaintiff's assertions, the Promissory Note was never amended to

8  cover anything other than the $215,000 set forth expressly in its terms. Fanger Dec., Ex. 7

9  (Roggio Depo. 65:5-7; 121:1-4). The direct contradiction of whether Defendants defaulted on the

10  payment terms and the $175,000 was paid to the Promissory Note are material facts that

11  necessarily require resolution of the issue of the amount owed under the Promissory Note.[3]

12      Furthermore, Plaintiff waived its right to assert any claims related to the Avila Beach Joint

13  Venture when it signed all of its interest, including any claims and causes of action of the Avila

14  Beach Joint Venture, to Mr. Cohen in the Assignment. *See* Fanger Dec., Ex. 9 (COHEN 00014,

15  ¶2; Ex. 16 (Plaintiff's RFA Responses No. 3). The Assignment effectively transferred to Mr.

16  Cohen "…all of [Plaintiff's] entire interest in the Joint Venture…including and without limitation

17  all rights, entitlements and/or interests in and to any claims, rights of actions, causes of action,

18  recoveries, damages or other legal recourse owned or held by the Joint Venture."[4] *Id*.

19          2.    Defendants Have Not Breached The Promissory Note By Failing To
                  Maintain The Vessel.
20
21      Plaintiff also alleges that Defendants are in breach of their obligations under the

DAVIS WRIGHT TREMAINE LLP

[3] Regardless of the amount allegedly owed under the Promissory Note, the $175,000 pre-payment would have covered the monthly payments allegedly owed by Defendants' under the Promissory Note well into the future such that they were current in their payments at the time of the arrest.

[4] As a general matter, the Assignment between Plaintiff and Mr. Cohen is a valid transfer of all of Plaintiff's interests in the Avila Beach Joint Venture. All rights, claims, and causes of action, other than those of a personal nature, are freely transferable. *See e.g.*, *Essex Insur. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal. 4th 1252, 1263 (under Cal. Civ. Code § 954, "assignability is the rule"). When a cause of action is transferred to an assignee by assignment, the assignee stands in the shoes of the assignor "taking his rights and remedies." *Id*. at 1264 (*quoting Salaman v. Bolt* (1977) 74 Cal App. 3d 907, 919). As a result, Plaintiff waived its rights to make claims against Mr. Cohen for alleged debts arising out of the Avila Beach Joint Venture when it assigned and transferred to Barry Cohen "to the fullest extent possible and without restriction" its entire interest, including any claims against the Cohens, their sons, or any other related business entity arising out of the Avila Beach Joint Venture. Fanger Dec., Ex. 9, (COHEN 00014, ¶ 2).

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT                    SFO 404371v2 0084289-000001
Case No. C-07-2952-WHA

1   Promissory Note and Mortgage for failure to maintain the Vessel. MSJ III.2.b at p. 12. The

2   express terms of the Promissory Note will govern. Cal. Civ. Code §1638 (language of contract is

3   to govern its interpretation if language is clear and explicit). Defendants submit they have not

4   breached the express terms of the agreement because under the express terms of the Mortgage, a

5   failure to maintain the Vessel is not termed an event of default. Fanger Dec., Ex. 5 (Art. II(1)(a)

6   (Section 7 of Article I setting forth owner's obligation to maintain Vessel not identified as event of

7   default under Article II outlining terms of default)).

8       Defendants submit further that they have nevertheless fulfilled their obligations under the

9   express terms of their agreement. The Mortgage provides that the Defendants are to "maintain the

10  Vessel in thorough repair and *working order* and shall make all proper renewals and

11  replacements." Fanger Dec., Ex. 5 (Mortgage, Article I(7)(emphasis added)). The Mortgage does

12  not require any "preventative maintenance." *See id*. A reasonable person could conclude that the

13  obligation to "maintain the vessel" and keep it in "working order" requires that the Defendants to

14  maintain the Vessel at a level to successfully conduct fishing expeditions.

15      The captain of the Vessel, who is responsible for upkeep on the Vessel, specifically stated

16  in his deposition that despite the apparent condition of the Vessel, "…it still works and everything

17  works on it, and it's productive when [he and the crew] go fishing." Fanger Dec., Ex. 11 (Kobak

18  Depo. 40:19-23). In addition, when something breaks, the captain fixes it as is needed. *Id*. at

19  40:24-41:5. The express terms of the Mortgage say nothing about performing any "preventative

20  maintenance" on the Vessel. *See generally*, Fanger Dec., Ex. 5 (Mortgage, Art. I(7)). Moreover,

21  Plaintiff's own expert submitted a report after conducting a survey[5] stating that "the Vessel was

22  found to be functional." Fanger Dec., Ex. 17 (Ex. 2 to Plaintiff's Disclosure of Expert Witness,

23  Survey Report, dated January 11, 2008, at page 4). The report specifically covers only the

24  "apparent condition" of the Vessel and does not include any evaluation of the ability of the Vessel

25  to operate or its stability. *Id*. at page 5. The condition of the Vessel is fully consistent with the

26  requirement under the Mortgage that it be maintained in "working order." Thus, Defendants did

27  not breach their agreement with Plaintiff.

28

---

[5] Notably, the survey was conducted *after* the arrest.

14

3.   Defendants Have Not Breached The Promissory Note By Failing To Name
Del Mar As A Loss Payee Under The Insurance Policies.

Plaintiff also alleges that Defendants breached their loan agreement by failing to name Del

Mar as a loss payee on the insurance policies for the Vessel.  Defendants submit that they did not

breach the agreement because the Vessel has been fully insured since the signing of the

Promissory Note.  Fanger Dec., Ex. 18 (COHEN 751-763).  Failing to name Del Mar as a loss

payee is not a material breach of the parties' loan agreement.  *See e.g, Superior Motels, Inc. v.

Rinn Motor Hotels, Inc*. (1987) 195 Cal. App. 3d 1032, 1051 (not every instance of

noncompliance with a contract's terms constitutes a breach).  Moreover, the Court may consider

factors including whether Plaintiff was deprived of the benefit that it reasonably expected or the

extent to which Plaintiff could be adequately compensated for the part of that benefit for which it

was allegedly deprived by not being named as a loss payee on the insurance policies.  *See e.g.*,

Rest. 2d Contracts § 241(a)-(b).

Defendants did not breach their obligation under the Mortgage because they kept the

Vessel fully insured.  Fanger Dec., Ex. 18; Ex. 6 (Cohen Depo. 97:20-98:1).  Here, even if the

failure to name Del Mar as a loss payee on the insurance of the Vessel was a breach of

Defendants' obligations under the loan agreement, which it was not, such failure is not material to

protection of Plaintiff's interest in the Vessel.  In evaluating whether the "breach" was material,

the Court must "weigh the purpose to be served, the desire to be gratified, the excuse for deviation

from the letter [of the contract], [and] the cruelty of enforced adherence."  *Superior Motels*, 195

Cal. App. 3d at 1051.  Here, the overall intent of the provision in the Mortgage regarding

insurance is to keep the Vessel insured against loss.  Plaintiff's interest in the Vessel was never at

risk because the Vessel was and has been fully insured at all times relevant to the Promissory

Note.  Fanger Dec., Ex. 18; Ex. 6 (Cohen Depo. 97:20-98:1).  If something did happen to the

Vessel, Plaintiff's interest would be protected regardless of whether it was named as a loss payee

because it could recover directly against Defendants.  Naming Del Mar as a loss payee could have

easily been amended had Plaintiff contacted Defendants prior to the arrest.  This raises the

question as to whether it was objectively reasonable for Plaintiff to have the Vessel arrested on

DAVIS WRIGHT TREMAINE LLP

1    this ground.  At most, Defendants' alleged failure to name Del Mar as a loss payee is a technicality

2    that hardly justified interrupting Defendants' business by arresting the Vessel.[6]

3        Accordingly, Plaintiff has failed to show there are no undisputed material facts as to

4    Defendants alleged breach of the parties' agreement and Plaintiff is therefore not entitled to

5    judgment as a matter of law.

6        **C.**    **Material Facts Are In Dispute Regarding Defendants' Claim For Wrongful**

7              **Arrest.**

    Defendants contend that Plaintiff wrongfully arrested the Vessel.  Contrary to Plaintiff's

8    assertions, Defendants argue that Plaintiff's arrest of the Vessel breached Plaintiff's obligations

9    under the Promissory Note.  The arrest of the Vessel was wrongful because it not only breached

10   the express terms of the loan agreement but also breached the implied covenant of good faith and

11   fair dealing and was at minimum, gross negligence on the part of Plaintiff.

12

13       1.    <u>Plaintiff Breached the Express Terms of the Loan Agreement by Arresting</u>
        <u>the Vessel.</u>

14       Plaintiff has breached the express terms of the loan agreement.  Under the terms of the

15   agreement, Plaintiff's recourse of arresting the Vessel is conditioned upon Defendants' failure to

16   meet its own obligations under the Promissory Note.  *See generally*, Fanger Dec., Ex. 4

17   (Promissory Note).  However, Defendants contend they did not breach the terms of the parties'

18   agreement by failing to make payments, maintain the Vessel or name Del Mar as a loss payee.  *See*

19   Section IV.B above.  Moreover, contrary to Plaintiff's assertions, Defendants do not admit there is

20   a balance currently due on the Promissory Note.  Fanger Dec., Ex. 12 (Defendants' RFA

21   Responses No. 28).  The fact that there may be a balance remaining under the Promissory Note

22   does not mean that any such amount was in fact due at the time of the arrest.  Thus, Defendants

23   submit that they were not in default of the agreement and therefore, Plaintiff's act of arresting the

24   Vessel is a breach of the express terms of the loan agreement.

25       Whether or not Plaintiff breached the express terms of the agreement is a question of fact

26   that can not be resolved by summary judgment.

27

28   [6] As with the condition of the Vessel, Plaintiff did not raise the alleged breach at the time of the arrest.  Fanger Dec.,
Ex. 1.  Once again, Plaintiff is attempting to justify its improper arrest of the Vessel after the fact.

DAVIS WRIGHT TREMAINE LLP

2.    Plaintiff Breached the Implied Covenant of Good Faith and Fair Dealing.

California recognizes a covenant of good faith and fair dealing in every contract. *Storek &*

*Storek, Inc. v. Citicorp Real Estate* (2002) 100 Cal. App. 4th 44, 55 (every contract imposes on

each party a duty of good faith and fair dealing in the performance of the contract). The covenant

of good faith and fair dealing imposes on the parties to a contract the duty to perform their

obligations faithfully and not to deprive each other of the benefits of the contract. *Floystrup v.*

*City of Berkeley* (1990) 219 Cal. App. 3d 1309, 1318. Under this duty, parties to a contract must

refrain from doing anything that would render performance of the contract impossible. *Id.*

Defendants submit that Plaintiff breached its duty of good faith and fair dealing under the

Promissory Note and Mortgage. Under the loan agreement, Plaintiff had an implied obligation to

allow Defendants the uninterrupted use of the Vessel absent any breach of the agreement similar

to an implied covenant of quiet enjoyment. *See e.g., Ocean Services Corp. v. Ventura Port*

*District* (1993) 15 Cal. App. 4th 1762, 1781 (covenant of quiet enjoyment provides insulation

against an act by another party that interferes with the right to use and enjoy property for the

purposes contemplated by the agreement and overlaps with covenant of good faith and fair dealing

overlaps to impose similar duties of care). Plaintiff breached this obligation when it arrested the

Vessel without cause and failed to make a good faith inquiry into the financial condition of PLFC

and the Vessel prior to the arrest. Even the Mortgage provides that the Mortgagee may take action

only if it concludes "*in good faith* at any time that, through actual or prospective impairment of

Owner's net current asset position, net worth, asset-liability ratio, or earning…[that] Mortgagee is

in danger of losing said debt…." Fanger Dec., Ex. 5 (Article II(1)(b) (emphasis added)).

The essence of a good faith covenant is "objectively reasonable conduct." *Badie v. Bank*

*of America* (1998) 67 Cal. App. 4th 779, 796. It is a question of fact to be resolved at trial as to

whether the arrest was objectively reasonable under the circumstances where Plaintiff ignored the

$175,000 pre-payment; based its decision to arrest the Vessel on unsubstantiated "rumors" about

Mr. Cohen's financial condition; and failed to attempt to resolve any uncertainty directly with

Defendants. *See* Section III.E above.

Plaintiff's contention that it had probable cause and the act of arrest was "objectively

DAVIS WRIGHT TREMAINE LLP

1   reasonable" given an apparent "acknowledgment" by Mr. Cohen that there was an obligation to

2   make continuing payments after the payment of $175,000 is unfounded.  Probable cause requires a

3   showing of a reasonable basis for the arrest.  *See e.g., M/V Belle of Orleans*, 439 F. Supp. at 1189,

4   n.5, *quoting Salazar v. Atlantic Sun*, 881 F. 2d 73, 79 (3d Cir. 1989) (post arrest hearing intended

5   to make preliminary determination whether there were "reasonable grounds" for issuing the arrest

6   warrant).  Defendants submit that Plaintiff lacked probable cause to arrest the Vessel having no

7   reasonable basis for arresting the Vessel because Defendants were not in default under the terms

8   of the loan agreement.  *See* Section IV.B above; *see accord*, Fanger Dec., Ex. 3.

9          Nevertheless, Plaintiff's sole basis for alleging that its conduct was reasonable is the

10  alleged correspondence from Mr. Cohen to Joe Roggio in January 2007.  Fanger Dec., Ex. 19

11  (Exhibit 7 to Cohen Depo.)  Mr. Cohen testified that he does not recall writing this document.

12  Fanger Dec., Ex. 6 (Cohen Depo. 126:6-12).  More importantly, the wording of the document is

13  subject to interpretation and does not in fact support the Plaintiff's contention that it acted

14  reasonably.  *See* Fanger Dec., Ex. 19.  Mr. Cohen does not admit in the document that all of his

15  debts are included under the Promissory Note.  *Id.* (refers to balance of his "account" and not debt

16  owed under Promissory Note).  Nor does he admit in Ex. 19 that he owed monthly payments at the

17  time the document was allegedly written.  *Id.*

18         In addition, Plaintiff's allegations regarding this alleged "note" sent by Mr. Cohen with

19  one of his payments are contradicted by the entirety of the circumstances.  Again, viewing the

20  "note" from Mr. Cohen under the totality of the circumstances raises substantial questions as to

21  whether Plaintiff's conduct was objectively reasonable in light of, among other things, the

22  substantial pre-payment, the relationship of the parties, and Plaintiff's decision to arrest the Vessel

23  based on rumors.  *See* Sections III.C-E above.  Thus, Plaintiff's assertions are subject to different

24  inferences which must therefore be resolved at trial.

25                3.    Plaintiff's Conduct Constitutes Bad Faith and/or Gross Negligence

26         Even under principles of admiralty law, Plaintiff's arrest of the Vessel meets the standard

27  of bad faith or at minimum, gross negligence.  Plaintiff's failure to attempt to sort out the obvious

28  uncertainties in this matter amount to malice, bad faith, or reckless disregard of another's legal

DAVIS WRIGHT TREMAINE LLP

1    rights, the basis for finding wrongful arrest. *Coastal Barge Corp. v. M/V Maritime Prosperity*,

2    901 F. Supp. 325 (M.D. Fla. 1994); Schoenbaum, Admiralty and Maritime Law 4th, § 21-3, at 402

3    (West 2007).  Plaintiff did not act in good faith but rather acted in complete disregard for

4    Defendants' legal rights to operate the Vessel uninterrupted without a breach of the loan

5    agreement. *See* Section IV.B.1-3 above; *Frontera Fruit Co. Inc. v. Dowling,* 91 F.2d 293, 297

6    (5th Cir. 1937).  Again, in light of the totality of the circumstances, a material question remains as

7    to whether the arrest was at minimum undertaken in gross negligence or even bad faith –

8    particularly where Plaintiff failed to inform the Court that Defendants had made a substantial pre-

9    payment on the Promissory Note and had no basis for the arrest. *See* Sections III.C-E and IV.B

10   above.  Thus, as a result of the improper arrest, Defendants' business activities were unnecessarily

11   interrupted and Defendants were injured. *See* Section III.E above.

12       Whether the arrest was in bad faith cannot be dismissed on summary judgment because it

13   requires analysis in light of nature of the security interest sought to be protected in this case.  The

14   relationship of the parties in this case is different from a typical maritime case involving the arrest

15   of a vessel.  Here, the parties had a long standing business relationship.  Mr. Cohen is in the

16   fishing business and has strong ties to the area.  Fanger Dec., Ex. 12 (Defendants' RFA Responses

17   No. 6).  The Vessel only fishes in northern California.  Fanger Dec., Ex. 11 (Kobak Depo. 29:10-

18   30:6).  Moreover, the subject of the Mortgage is the fishing Vessel – not an oil tanker or cruise

19   liner, for example, that run a real risk of being able to leave a jurisdiction without recourse.  It is a

20   question of fact for trial then as to whether Plaintiff's drastic action of arresting the Vessel was at

21   minimum, gross negligence under these circumstances.

22       Plaintiff argues that it acted on advice of counsel to arrest the Vessel and therefore is

23   afforded a complete defense against the Defendants' claims for wrongful arrest.  Courts have

24   noted that "the requirement that a claimant act on counsel's advice 'in good faith,' merely begs the

25   question.  Did Plaintiff, indeed, act on the advice in good faith?" *Coastal Barge Corp. v. M/V*

26   *Maritime Prosperity*, 901 F. Supp. 325, 329 (M.D. Fla. 1994).  Thus, this issue too raises

27   questions of material fact as to whether counsel's advice was acted on in good faith.  Did Plaintiff

28   inform its counsel of all the underlying facts here, such as the payment of the $175,000 check?

DAVIS WRIGHT TREMAINE LLP

1   And was counsel's advice objectively reasonable under the circumstances? Similar to cases for

2   malicious prosecution, a reckless disregard for the truth may constitute disregard of the claimant's

3   rights. *Id.* Here, Plaintiff possessed knowledge that Defendants made a lump sum payment of

4   $175,000 and withheld this fact from the Court. *See generally*, Fanger Dec., Ex. 1 (Verified

5   Complaint). This fact may well have precluded the arrest of the Vessel in the first place had it

6   been made known to the Court. *See Coastal Barge*, 901 F. Supp. at 329. Once the Court obtained

7   this information, it ordered the release of the Vessel. Regardless of whether Plaintiff followed the

8   advice of counsel, the omission of this fact suggests a "reckless disregard for the truth" which

9   cannot be translated into a good faith basis for causing the arrest of the Vessel. *See id.*

10      The entirety of the circumstances surrounding the arrest of the Vessel raises genuine

11   questions as to whether Plaintiff's arrest of the Vessel, contrary to its assertions that it has always

12   been "respectful" of its relationship with Mr. Cohen, was a breach of the parties' agreement and

13   undertaken in bad faith and therefore wrongful. Plaintiff is therefore not entitled to summary

14   judgment on the issue of wrongful arrest as a matter of law.

15   **D.    Material Facts Are In Dispute Regarding Defendants' Claim For Intentional
          and Negligent Interference With Prospective Economic Advantage.**

16

17      Under the general principles of California tort law, every person must be responsible for

18   the injuries caused by a lack of ordinary care. Cal. Civ. Code §1714. Applying these principles to

19   both of Defendants' claims for intentional and negligent interference with prospective economic

20   advantage raises, at minimum, a genuine question as to whether Plaintiff should be held

21   accountable for its unjustified actions in causing the arrest of the Vessel that in turn, caused injury

22   to Defendants' fishing business. Defendants' counterclaim sufficiently states a claim for

23   intentional and negligent interference with prospective economic advantage. Federal notice

24   pleading rules require that a pleading contain only a "short and plain statement of the claim

25   showing that the pleader is entitled to relief." *Self Directed Placement Corp. v. Control Data

26   Corp.,* 908 F.2d 462, 466 (9th Cir. 1990). Such statement need only provide notice to the

27   opposing party and the grounds upon which the claim is based. *Id.* Here, Defendants, as

28   counterclaimants, need only have set forth enough details to provide Plaintiff with a fair idea of

DAVIS WRIGHT TREMAINE LLP

1   the basis for their counterclaims. *Id.* Defendants' Answer and Counterclaim sets forth facts

2   showing the arrest was wrongful, the arrest disrupted the activities of the Vessel and prevented it

3   from earning income for the benefit of Defendants. Fanger Dec. Ex. 20 (¶41). These facts

4   provide sufficient notice to Plaintiff who is active in the same line of business as Defendants and

5   therefore satisfy federal notice pleading requirements.

6        Nevertheless, there are questions of material facts as to each element of Defendants' claims

7   for intentional and negligent interference of prospective economic advantage such that summary

8   judgment is not appropriate on these issues.

9           1.    Plaintiff Intentionally Interfered with Defendants' Prospective Economic
Advantage by Seizing the Vessel without Cause.

10      Defendants contend that they meet each of the six elements to support a claim for

11   intentional interference with prospective economic advantage. *See Korea Supply Co. v. Lockheed*

12   *Martin Corp.* (2003), 29 Cal. 4th 1134, 1153 (setting forth six elements of claim). Contrary to

13   Plaintiff's assertions, Defendants need not show that Plaintiff specifically intended to interfere

14   with their business expectancies. *Id.* at 1141. Defendants contend they meet each of the elements

15   as follows:

16        a.    *Economic relationship with third parties.* Contrary to Plaintiff's argument,

17   intentional interference of prospective economic advantage does not require the Defendants show

18   they have a contractual relationship with a third party. It only requires establishing an economic

19   relationship. *Korea Supply*, 29 Cal. 4th at 1158. Defendants' relationships with fish wholesalers,

20   such as Caito Fisheries, to whom they regularly sell fish, meet the requirement that there must be

21   an economic relationship with a third party with the probability of future economic benefit to

22   Defendants. *See e.g.*, Fanger Dec., Ex. 14 (Settlement sheets for Caito Fisheries, Inc. from fish

23   sales by the Vessel for trips prior to the arrest).

24        b.    *Knowledge of economic relationships.* Since no contractual relationship is

25   required, Plaintiff's general knowledge arising from its own experience in the seafood business, its

26   ownership of fishing vessels, and its longstanding business relationship with Defendants raise a

27   material question as to whether Plaintiff knew of Defendants' relationships with fish wholesalers.

28

DAVIS WRIGHT TREMAINE LLP

1    *See e.g.*, Fanger Dec., Ex. 15 (Cappuccio Depo. 10:7-9; 11:8-10; 12:17-13:4).

2        c.    *Intentional act of disruption.*  Plaintiff's arrest of the Vessel was intentional and

3    therefore meets the third requirement of the claim as an intentional act designed to disrupt

4    Defendants' relationships with fish wholesalers.  Plaintiff misstates this element by asserting

5    Defendants must show specific intent.  *Korea Supply*, 29 Cal. 4th at 1141 (no specific intent

6    required).  Defendants need not show Plaintiff specifically intended to interfere with their

7    relationships but rather Plaintiff knew that its interference in Defendants' ability to sell to

8    wholesalers and earn income was certain or substantially certain to occur as a result of the arrest.

9    Rather, they contend that the arrest necessarily prevented them from conducting their fishing

10   activities satisfies.  *See id.* at 1154.  Again, Plaintiff's experience in the seafood business, its

11   ownership of fishing vessels, and longstanding business relationship with Defendants is relevant to

12   this analysis.  Fanger Dec., Ex. 15 (Cappuccio Depo. 8:12-17; 10:7-9; 11:8-10; 12:17-13:4).  A

13   reasonable interpretation of this evidence suggests that Plaintiff, at minimum, should have known

14   that Defendants had economic relationships directly related to their fishing activities with fish

15   wholesalers that would be directly impacted if the Vessel was arrested and could not fish.

16       d.    *Economic relationship actually disrupted.*  The arrest of the Vessel meant that

17   Defendants were prevented from engaging in fishing activities and making sales to wholesalers for

18   more than two months.  Fanger Dec., Ex. 2 (Order of Arrest issued 6/7/07) and Ex. 3 (Order

19   Vacating Arrest issued 8/16/07); *see also* Ex. 13.

20       e.    *Disruption proximately caused harm.*  Defendants incurred economic harm that

21   was proximately caused by the arrest in that it directly prevented them from using the Vessel to

22   fish and sell their catch to wholesalers.  They missed at least 13 fishing trips and as a result had no

23   catch to sell to wholesalers.  Fanger Dec., Ex. 11 (Kobak Depo. 19:2-4); Ex. 13.

24       f.    *Act independently wrongful.*  The arrest was independently wrongful apart from the

25   interference itself.  As described above in Sections IV.B, Defendants contend that they were not in

26   breach of the loan agreement and Plaintiff therefore lacked any basis for the arrest, thus breaching

27   the loan agreement itself.  *Korea Supply*, 29 Cal. 4th at 1159 (conduct wrongful if unlawful by

28   separate legal measure).

DAVIS WRIGHT TREMAINE LLP

22

1    Thus, underlying factual questions remain such that Plaintiff is not entitled to summary

2    judgment as a matter of law regarding Defendants' claim for intentional interference with

3    prospective economic advantage.

     2.    Plaintiff Negligently Interfered with Defendants' Prospective Economic
4           Advantage by Seizing the Vessel.

5    Plaintiff also contends that summary judgment is appropriate as to Defendants' claim for

6    negligent interference with prospective economic advantage because there is no evidence of a

7    contract for which there was actual interference.  MSJ at III.6 at p. 22.  Again, similar to

8    intentional interference with prospective economic advantage, negligent interference may be

9    established by Defendants demonstrating 1) that an economic relationship existed between

10   Defendants and a third party which contained a reasonably probable future economic benefit or

11   advantage to Defendants; 2) Plaintiff knew of the existence of the relationship and was aware or

12   should have been aware that if it did not act with due care its actions would interfere with the

13   relationship and cause economic injury to Defendants; 3) Plaintiff was negligent; and 4) such

14   negligence caused damage to Defendants' prospective economic advantage.  *North American*

15   *Chemical Co. v. Superior Court* (1997) 59 Cal. App. 4th 764, 786.

16   Defendants contend all four elements are satisfied.  Elements one and two are similar to

17   those for intentional interference, as discussed above in IV.D.1, with one exception.  Even if

18   Plaintiff was unaware that if it did not act with due care, the arrest would interfere with

19   Defendants' livelihood, it should have been aware especially because of its experience in the

20   fishing and seafood industry and its own operation of fishing vessels.  Fanger Dec., Ex. 15

21   (Cappuccio Depo. 8:12-17; 10:7-9; 11:8-10).  There is little question that arresting the Vessel

22   would not interfere with Defendants' business because they required a fishing vessel to conduct

23   their fishing activities.

24   As to the third element, at minimum, Plaintiff's arrest of the Vessel was negligent.  Here,

25   Defendants submit that Plaintiff owed Defendants a duty of care under both the terms of the loan

26   agreement and by virtue of their long standing business dealings.  *North American,* 59 Cal. App.

27   4th at 781-782 (duty of care created by contract).  As explained above in Section IV.C.2 and 3,

28

*DAVIS WRIGHT TREMAINE LLP*

23

1   Plaintiff owed Defendants a duty not to interfere with their business and arrest the Vessel without

2   just cause. Their arrest of the Vessel without cause and without any investigation into the true

3   financial condition of Defendants was therefore negligent.

4          Lastly, as to the fourth element, Plaintiff's actions proximately caused the interference with

5   Defendants' relationships with wholesalers. A negligence claim for interference with prospective

6   economic advantage allows recovery of the prospective economic advantage that would have been

7   recovered but for the negligent conduct of the Plaintiff. *Id.* at 782. It was foreseeable, especially

8   to Plaintiff who also engages in the fishing business, that arrest of the Vessel would cause

9   Defendants to lose income from their fishing activities. The arrest prevented Defendants from

10  fishing for nearly two months and missing at least 13 trips. Fanger Dec., Ex. 11 (Kobak Depo.

11  19:2-4), Ex. 13 (COHEN 00056-57). As a result, Defendants lost the economic benefit of their

12  relationships with wholesalers.

13         Because Plaintiff has failed to show that the facts supporting Defendants' counterclaims

14  for both intentional and negligent interference with prospective economic advantage are

15  undisputed, it is not entitled to summary judgment on these claims as a matter of law.

16  **E.     Whether Or Not Defendants Should Recover Any Damages Related To The
           Loss Of The Fishing Net Is An Issue Of Damages And Not Appropriate For
17         Summary Judgment.**

18         Plaintiff's argument that the Court should hold that Defendants cannot recover any

19  damages related to the loss of the fishing net is not a question to be decided on summary

20  judgment. This is a question of the amount of damages and not Plaintiff's liability for such

21  damages and therefore should not be resolved at the summary judgment stage. Fed. R. Civ. P.

22  56(c). As discussed above, significant material issues remain as to Plaintiff's liability.

23         Even if this was an appropriate question for summary judgment, Plaintiff's motion on this

24  issue would fail because there is a genuine question as to whether but for the arrest of the Vessel,

25  the net would not have disappeared. Plaintiff caused the arrest and included the net in the items

26  seized by the U.S. Marshal. Fanger Dec., Ex. 1 (p. 5, ¶1). Defendants argue that the net was

27  therefore within Plaintiff's control during the time of the arrest. Fanger Dec., Ex. 6 (Cohen Depo.

28  119:22-120:14; 120:21-121:7). There is a question to be resolved at the damages phase of the

*DAVIS WRIGHT TREMAINE LLP*

1   litigation as to whether had the Vessel been allowed to continue its normal fishing activities, the

2   net would not have disappeared.  Thus, partial summary judgment is not appropriate here.

3   **V.    CONCLUSION**

4        For the reasons set forth above, Defendants respectfully submit that Plaintiff's Motion for

5   Summary Judgment should be denied on all grounds.

6

7   DATED this 13th day of March 2008.

8                                 Respectfully submitted,

9                                 DAVIS WRIGHT TREMAINE LLP

10

11                                By: _____

12                                    James P. Walsh
                                Gwen Fanger

13                                Attorneys for Defendants and Claimant

14                                BARRY COHEN, CHRIS COHEN (aka
                              CHRISTENE COHEN), the F/V POINT

15                                LOMA and Claimant, F/V POINT LOMA
                              Fishing Company, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP