**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. <br><br> And Related Counterclaims | Case No.: CV 07-02952 WHA <br><br> **PLAINTIFF'S REPLY BRIEF** <br><br><br><br><br><br><br><br><br><br> Date: April 10, 2008 <br> Time: 8:00 a.m. <br> Place: Courtroom 9, 19th Floor <br> Hon. William H. Alsup |

1. **Introduction**

   The Cohens' 25-page "shotgun" opposition is long on argument, and full of their contentions, allegations, conjectures, and beliefs, yet it contains very little of the factual

evidence they actually need to raise genuine issues of material fact regarding the issues presented by Del Mar.

The Cohens' dispute that the amount of the principal they owed under the Note and Mortgage was increased by any of the subsequent debts identified by Del Mar on its "Schedule of Payments" accounting spreadsheet[1] (*e.g.* Michael Cohen, Olde Port Inn (Leonard Cohen), Inventory, Point Loma, and Barry Cohen). While Del Mar agrees that there are issues of fact regarding the dollar amounts of the debts owed under the Note, Del Mar has not raised that issue in its motion. What is important for this motion is the fact that the Cohens have admitted that there is a balance of at least $27,000 due under the Note and that they have not made the required monthly payments. [CITE]

Since the Cohens have admitted that there is a balance due under the note and that they have not made the required monthly payments, the Court should grant summary adjudication in favor of Del Mar on the issues of breach and reserve for trial the issue of the remaining balance due under the note and mortgage. By doing so, the Court may therefore dispose of the issue of defendants' *default* (liability) on summary judgment and reserve the resolution as to *amount* owed (damages) for trial. Fed. R. Civ. Proc. 56 (d); *see, e.g., H. Naito Corp. v. Quest Entm't Ventures, L.P.*, 2001 U.S.Dist.LEXIS 9866 (D.Or.2001).[2]

2. **The Undisputed Facts Show That Defendants Were In Default At The Time Of The Arrest**

Defendants have admitted that at the time of the arrest in June 2007 they owed money

---

[1] Produced by plaintiff as DMSI 0001.

[2] While Del Mar asserts that the *amount* of the Cohen's debt under the Note is not at issue here, regarding Defendants' contention that, while the Mortgage expressly provides for "future advances", the Note does not, Plaintiff directs the Court's attention to paragraph 2 of the Note, on page 1, which is titled "Incorporation of Terms of First Preferred Mortgage" where it is expressly provided that the terms of the Mortgage are to be incorporated into the Note "to the same effect as if set forth in this note in their entirety." Therefore, **both** the Mortgage and the Note, expressly and by incorporation, provide that the Mortgage may secure future obligations.

Furthermore, the Ship Mortgage Act expressly provides for mortgages to secure future obligations. *Stewart & Stevenson Servs. v. M/V Chris Way MacMillan*, 890 F. Supp. 552, 557-558 (D.Miss.1995), citing 46 U.S.C. § 31321(b)(3); H.R. Rep. No. 100-918, reprinted in 1988 U.S. Code & Cong. News at 6111 (definition of § 31321(b)(3) intended to included future financing); and *Southland Financial Corp. v. Oil Screw Mary Evelyn*, 248 F. Supp. 520, 522 (E.D.La.1965) (use of mortgage to secure future advances is "widely accepted" commercial practice; obligation of mortgagee to extend credit is sufficient consideration for the mortgage).

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-2-   Case No.: CV 07-02952 WHA
PLAINTIFF'S REPLY BRIEF

under the Note and had not made any payments since April 2007. *See,* Ex. 8 to Kelley Dec. in support of plaintiff's moving papers, Defendants' Responses to Plaintiff's Requests for Admissions, No. 28, at page 12; Roggio Declaration in support of plaintiff's moving papers, ¶ 7; Defendant's Initial Disclosures, COHEN 0006 - 0008. The Note's terms required defendants to make monthly payments of $3,000 or 15% of the Vessel's monthly gross, whichever was greater, until the principal and interest were paid off in full. Therefore, absent an oral agreement to modify that monthly obligation, defendants were in default under the Note and Mortgage on June 8, 2007 when the Vessel was arrested. There is no evidence of any writing modifying the Note's repayment terms, and defendants have failed to present any evidence that there was any such oral modification.

The Cohens offer two arguments in defense. They first argue that the parties modified the terms of repayment under the Note so that the lump sum payment of $175,000 Barry Cohen made in November 2005 relieved him of his obligation to make continuing monthly payments. This argument, however, is not consistent with the facts. The undisputed facts are that there was only one brief conversation between the parties relating to the payment of $175,000. According to Barry Cohen, that "whole conversation" was:

> A. I gave it [the check] to Joe Cappuccio. He looked at it and said – I said, "Here's the check that I said I would give." He said, "Thank you very much." And I said, "I'll pay you the rest as soon as I can." And he said, "Well, I'm not worried about" - "I'm not concerned" or "not worried about it; it's such a small amount now." [3]

The Cohens' opposition does not provide evidence of any other conversation that establishes an oral modification of the contract's payment terms. Del Mar contends that the words set forth above cannot be reasonably interpreted to serve as an oral modification of a written contract and certainly not one that is a forgiveness of the debt or the obligation to make continuing payments.

The Cohens opposition tries to skirt the lack of evidence of an oral modification by

---

[3] Cohen, 137:9 – 15; 138:4-8

arguing that written contracts can be modified by an *oral agreement* that is either "executed" or supported by new consideration. Cal. Civ. Code § 1698. The problem with this argument is that for either of these conditions to occur there must first be an *oral modification*. Here, again, the Cohens have not provided any evidence that a particular conversation took place at a particular time by which the parties reached a meeting of the minds to modify the contract terms. The "whole conversation" simply does not establish an agreement in the first instance. As a result, C.C.P. §§1698 (b) and (c) do not apply.

Defendants also argue that because Del Mar never sent any notice to Defendants that they were late on any payments, the contract was somehow altered.[4] This argument is contrary to the provisions of C.C.P. §1698 which sets forth the limited ways in which a written contract may be modified. Silence is not one of the allowed ways. Moreover, the promissory note expressly provides that "Maker hereby waivers (a) presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment;" MSJ Ex. 6, pg. 2, ¶ 6 ("Waiver of Rights by Maker").[5] Plaintiff has never been required to notify defendants that a payment was past due. The Cohens have not even suggested that this term was ever discussed or "orally modified."

The Cohens' contention that the written contract was orally modified to allow the lump sum pre-payment is also contradicted by both Barry Cohen's conduct and his subsequent writings. The Cohens give no explanation for why payments were made in January, February and April 2007 if, as they contend, no payments were actually due. They also fail to explain why Barry Cohen said in his note to Del Mar dated January 30, 2007 that he would try to make the continuing monthly payments. All the Cohens have been able to do is to weakly argue that Barry Cohen doesn't remember writing the note. Significantly, he hasn't denied that he did and he certainly hasn't denied that he in fact made further monthly payments thereafter.

Defendants have failed to raise any genuine issues of material fact that the *express*

---

[4] Opp. Brief at pg. 12, lines 23-28.
[5] The Mortgage, at the middle of page 1, states that the Note "shall become a part of this mortgage."

terms of the Note and Mortgage were modified by any oral agreement to relieve defendants from their obligations to make monthly payments. Therefore, plaintiff's failure to continue to make monthly payments in March and May 2007, after doing so in January, February and April 2007, is uncontroverted evidence that they were in default in June 2007.

3. **Defendants Have Failed To Raise Any Issue of Material Fact That Plaintiff Acted With Malice, Bad Faith, or Gross Negligence In Arresting The Vessel**

For the first time, defendants now allege that plaintiff, in arresting the Vessel, acted with malice, bad faith, or gross negligence. The pleadings are closed, however, so these new allegations come too late. The Cohens have failed moreover to support their contention with any evidence from which this Court could reasonably infer that Del Mar had the requisite malicious state of mind when it had the Vessel arrested.

At the time of the arrest, Del Mar had a reasonable good faith belief that defendants were in default. Approximately five months prior to the arrest Del Mar received a letter from Barry Cohen in which he did not dispute Del Mar's accounting of the amount he owed. Importantly, in that letter Barry Cohen agreed to make monthly payments and, in fact, did so that month (January), in February, and in April. His words and actions fly directly in the face of his argument that he believed that because of his $175,000 payment he was 'paid up' on his monthly obligations through February 2009. Even ignoring Del Mar's concerns regarding the Cohens financial stability, the Cohens agreement at the end of January 2007 to make monthly payments, their doing so in January, February, and April 2007, and their failure to make payments in March and May of 2007 conclusively establish that they were in default at the time of the arrest. Combined with the uncontroverted testimony of Joe Roggio setting forth all of the facts that went into Del Mar's decision to arrest the vessel, including on the advice of counsel, there is no evidence on which a trier of fact could reasonably conclude that Del Mar had a malicious or bad faith intent when it decided to arrest the Vessel.

Defendants' reliance on *Coastal Barge Corp. v. The M/V Maritime Prosperity*, 901 F. Supp. 325 (M.D.Fla.1994), is unavailing because that case is readily distinguishable. In that case the plaintiff arrested the defendant's vessel in South Africa claiming damages resulting

from a collision between its vessel and the defendant's. Plaintiff accepted the terms of a letter of undertaking presented by the defendant and released the vessel and, in exchange, agreed not to rearrest the vessel in pursuit of its claims. *Id.* at 326. The plaintiff subsequently filed an action in the district court and had the vessel arrested but failed to inform the court of its previous arrest, release, and agreement not to rearrest the vessel. The district court found the plaintiff's failure to notify the court of its previous agreement not to arrest the vessel constituted bad faith.

Here, as noted, plaintiff had a good faith basis to believe the Cohens were in default and the security was at risk. While plaintiff concedes that the better practice would have been to initially provide a full accounting to Court, and apologizes for not doing so, the federal rules do not require the complaint to include a complete accounting of the Note, much less any specific allegation of itemized payments. Although the omission was a mistake, defendants have failed to present any evidence that raises any genuine issue of material fact that such omission was done with the requisite state of mind, that is, with bad faith, malice, or a reckless disregard for defendants' rights. *See, Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 256 (party cannot "defeat a properly supported motion for summary judgment in a conspiracy or libel case, for example, without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice. . . This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.")

Defendants also attempt to defeat a summary judgment that the arrest was not wrongful by attempting to raise an issue of fact whether plaintiff breached a covenant of good faith. That, however, *is not the test*, and defendants have cited no authority to the contrary.

4. **Defendants Have Failed to Raise a Genuine Issue of Material Fact That Plaintiff Intentionally or Negligently Interfered With Their Prospective Economic Advantage**

Defendants have failed to present any evidence that Del Mar was aware that defendants had an economic relationship with any third party. Defendants attempt to get

-6-    Case No.: CV 07-02952 WHA
PLAINTIFF'S REPLY BRIEF

around this failure by *alleging* that Del Mar's "general knowledge arising from its own experience in the seafood business, its ownership of fishing vessels, and its longstanding business relationship with Defendants raise a material question as to whether Plaintiff knew of Defendants' relationships with fish wholesalers."[6] These allegations, unsupported by any evidence of actual knowledge cannot defeat Del Mar's declaration that it had no knowledge of any such relationship between defendants and a third party.[7]

For the same reason, defendants cannot satisfy the third element, that Plaintiff "knew that the interference was certain or substantially certain to occur as a result of the" arrest. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1154. Defendants have failed to present evidence of any facts supporting their bare allegations and have therefore failed to raise a genuine issue of material fact that Del Mar acted with such knowledge.

### 5. Defendants Have Failed to Raise Any Issue of Fact That The Loss of the Fishing Net Was Caused By the Arrest

Defendants argue that this is an issue of damages and, therefore, not appropriate for summary judgment but provide no supporting authority. Federal Rule of Civil Procedure 56 (d) specifically contemplates that partial summary judgment may be rendered where appropriate as to "what facts – ***including items of damages*** or other relief – are not genuinely at issue." (Emphasis added.) The issue of proximate cause may also be properly decided by summary judgment. *See, e.g., Miller Marine Services, Inc. v. Travelers Prop. Cas. Ins. Co.*, 2005 U.S.Dist.LEXIS 39906, *22 (E.D.N.Y.2005).

Defendants' other arguments are equally unavailing. They argue that the now-missing net was "within the Plaintiff's control" during the time of the arrest because Plaintiff's complaint requested that the Warrant of Arrest include the net. This is wrong as a matter of law. The record is devoid of any evidence that the fishing net located at another facility away from the vessel was ever taken into custody by the U.S. Marshal. In fact, the evidence is that the Cohens (through Capt. Kobak) continued to exercise dominion and

---

[6] Opp. Brief, pg. 21, lines 25-28.
[7] Fed. R. Civ. Proc. 56 (e): Declaration of Joe Roggio in Support of Plaintiff's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, ¶ 13.

control over that net by continuing to store it at Pier 45 and filing a police report when it was stolen alleging theft by another fishing vessel.[8]

In addition, the moving papers set forth the law establishing that any claim for loss of equipment taken into custody must be brought against the US Marshal and / or the substitute custodian. The opposition brief does not address this legal issue at all.

Further, the Court issued a Warrant of Arrest covering the Vessel and its associated equipment and materials. A reasonable and practical inference would be that this would include items affixed to the Vessel, located on the Vessel, and perhaps located adjacent to the Vessel. If defendants somehow believed that the Marshal had a duty to take possession of the net located at Pier 45, and entirely separated from the Vessel, they could have easily come into court and requested an order to that effect. They did not. If the loss of the net was proximately related to the arrest, then the Cohens failure to inform the Court and the Marshal that a portion of the arrested property was located unguarded at Pier 45 is an intervening and superceding cause for its loss. The Cohens should not be allowed to profit from their own efforts to withhold arrested property from the Court.

As to defendants' 'but for the arrest, the net would not be missing' argument, not only is it pure speculation, but that is also not the test in this Circuit.[9] Such an analysis not only stretches the limits of a proximate cause analysis beyond reason, it fails to raise an genuine issue of material fact rebutting Captain Kobak's sworn testimony that he saw the net still on the dock at Pier 45 for almost a month after the arrest and didn't even notice it was missing until almost two weeks after that.

### 6. Conclusion

The Cohens have failed to present sufficient evidence to raise any genuine issues of material fact that they were in default at the time of the arrest, that Del Mar acted without bad faith, malice, or gross negligence in having the Vessel arrested, that Del Mar breached any

---

[8] Kelley Dec. in support of plaintiff's moving papers, Ex. 15, Kobak Depo at 31:16-33:1, 33:12-25, 34:11-35:4; Ex. 21 (police report).
[9] *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1135 (9th Cir. 1998), C.J. Nelson, concurring (proximate causation has two prongs: 1) cause in fact, and 2) legal cause); *see, also, Miller, supra*, 2005 U.S.Dist.LEXIS 39906 at *21 ("Proximate cause is not decided by relying on "but for" causation." (Citation omitted)).

1  covenant of good faith and fair dealing, or that it tortiously interfered with their prospective
2  economic advantage. For the reasons discussed herein, and in its moving papers, Del Mar
3  respectfully requests that the Court grant its motion.

Dated: March 20, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: _____
Max L. Kelley

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

PLAINTIFF'S REPLY BRIEF                                -9-                          Case No.: CV 07-02952 WHA