James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10,<br><br>Defendants. | No. C-07-2952-WHA<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>**Final Pretrial Conferene**<br>**May 5, 2008; 2:00pm**<br><br>**Trial Date: May 14, 2008**<br>**Time: 7:30 a.m.**<br>**Place: Courtroom 9, 19th Floor** |

Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Bench Cases, Defendants Barry Cohen, Christene Cohen, the F/V Point Loma, *in rem* (the "Vessel"), and counterclaimant, the F/V Point Loma Fishing Company (collectively, "Defendants"), submit this Trial Brief addressing all significant disputed issues of law.

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
A. The Parties ..... 1
B. The Relationship of the Parties ..... 2
C. The Note and Mortgage ..... 2
D. Payments by Defendants ..... 3
E. Amount of the Note and Mortgage ..... 4
F. The Arrest of the Vessel ..... 4
G. Impact of Arrest ..... 5
III. LEGAL ARGUMENT ..... 6
A. The Court Should Dismiss Plaintiff's Complaint In Its Entirety Because Defendants Did Not Breach The Note and Mortgage. ..... 6
1. Defendants Have Not Breached The Monthly Payment and Interest Terms. ..... 6
2. Any Alleged Failure to Make Monthly Payments is Not a Material Breach. ..... 8
3. Contrary to Plaintiff's Assertions, Defendants Only Agreed to Pay $215,000 under the Note and Mortgage. ..... 9
B. The Court Should Grant Defendants' Counterclaim for Wrongful Arrest because Plaintiff Acted with Bad Faith, Malice and Gross Negligence in Arresting the Vessel without Probable Cause. ..... 13
C. The Court Should Grant Defendants' Request for Relief because Plaintiff Intentionally Interfered with Defendants' Prospective Economic Advantage by Wrongfully Arresting the Vessel. ..... 15
D. The Court Should Grant Defendants' Request for Relief because Plaintiff Negligently Interfered with Defendants' Prospective Economic Advantage by Wrongfully Arresting the Vessel. ..... 17
IV. DEFENDANTS' DAMAGES ..... 19
V. CONCLUSION ..... 20

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Badie v. Bank of America* (1998) 67 Cal. App. 4th 779 .......... 6, 14

*Bd. of Cmm'rs. v. M/V Belle of Orleans*, 439 F. Supp. 1178 (S.D. Ala. 2006) .......... 15

*Beggerly v. Gbur* (1980) 112 Cal. App. 3d 180 .......... 11

*Coastal Barge Corp. v. M/V Maritime Prosperity*, 901 F. Supp. 325 (M.D. Fla. 1994) .......... 13

*Dishman v. UNUM Life Insur. Co. of America*, 269 F.3d 974 (9th Cir. 2001) .......... 19

*Essex Insur. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal. 4th 1252 .......... 12

*Fireman's Fund Insur. Cos. v. Big Blue Fisheries, Inc.*, 143 F.3d 1172 (9th Cir. 1998) .......... 19

*Floystrup v. City of Berkeley* (1990) 219 Cal. App. 3d 1309 .......... 14

*Frontera Fruit Co. v. Dowling*, 91 F.2d 293 (5th Cir. 1937) .......... 13

*In re Sizzler Restaurants Int'l.*, 225 B.R. 466 (CD Ca. 1998) .......... 11

*Korea Supply Co. v. Lockheed Martin Corp.* (2003), 29 Cal. 4th 1134 .......... 16, 17

*North American Chemical Co. v. Superior Court* (1997) 59 Cal. App. 4th 764 .......... 17, 18

*Parrish v. Greco* (1953) 118 Cal. App. 2d 556 .......... 12

*S.C. Anderson, Inc. v. Bank of America Nat'l Trust and Savings Ass'n* (1994) 24 Cal. App. 4th 529 .......... 19

*Salaman v. Bolt* (1977) 74 Cal App. 3d 907 .......... 12

*Salazar v. Atlantic Sun*, 881 F. 2d 73 (3d Cir. 1989) .......... 15

*Schumm v. Berg* (1951) 37 Cal. 2d 174 .......... 11

*South LaFourche Bank & Trust Company v. M/V Southern Star*, 582 F.Supp. 584 (E.D. La. 1984) .......... 10

*Southland Financial Corp. v. Oil Screw Mary Evelyn*,
248 F. Supp. 520 (E.D. La. 1965)....................10

*State Bank & Trust Company of Golden Meadow v. Boat D J Griffin*,
755 F. Supp. 1389 (E.D. La. 1991)....................10

*Stevens v. F/V Bonnie Doon*,
655 F.2d 206 (9th Cir. 1981)....................13

*Storek & Storek, Inc. v. Citicorp Real Estate*
(2002) 100 Cal. App. 4th 44....................14

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc*.
(1987) 195 Cal. App. 3d 1032....................8, 9

*Vance v. American Hawaii Cruises, Inc.*,
789 F.2d 790 (9th Cir. 1986)....................19

**STATUTES**

46 U.S.C. § 31321(b)(3)....................10

Cal. Civ. Code § 954....................12

Cal. Civ. Code § 1473....................7

Cal. Civ. Code § 1477....................7

Cal. Civ. Code § 1622....................11

Cal. Civ. Code §1624(a)(2)....................11

Cal. Civ. Code §1647....................7

Cal. Civ. Code §1661....................7

Cal. Civ. Code §1698....................11

Cal. Civ. Code §1698(b)....................8

Cal. Civ. Code §1698(c)....................8, 11

Federal Maritime Law and the Ship Mortgage Act, 46 U.S.C. 31301-43....................13

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## I. INTRODUCTION

This case can be boiled down to two primary issues: (1) whether Defendants have committed a material breach of the terms of a $215,000 promissory note (the "Note") secured by a mortgage on Defendants' fishing vessel (the "Mortgage"); and (2) whether, absent a material breach, Plaintiff's arrest of Defendants' fishing vessel was wrongful because Plaintiff and its lawyers did not inform the Court of all material facts relevant to the issue of the alleged default. It is Defendants' position that Plaintiff Del Mar Seafoods, Inc.'s ("Plaintiff" or "Del Mar") rashly claimed that Defendants were in material default, even though the parties had agreed to amend the terms of the Note after Defendants made a $175,000 advance payment (not required under the Note) and $13,000 in other payments. Defendants assert that the very large advance payment was made upon two elements of new consideration: no interest would be due and the final amount ($27,000) could be paid as they wished. Precipitously, after Defendants made payments early in 2007, Plaintiff, without a phone call or demand letter to Defendants, obtained an *ex parte* order of arrest of the Vessel, a major source of income to Defendants, without informing the Court that Defendants had in fact paid a total of $188,000, including the substantial advance, at the time of the arrest. The Court ultimately ordered the release of the Vessel upon learning of the $175,000 payment and found that Plaintiff lacked probable cause for the arrest.

## II. STATEMENT OF FACTS

### A. The Parties

Plaintiff, Del Mar, is engaged in the fish processing business. Plaintiff owns fishing vessels and has been involved in the seafood industry for some time. Defendants Barry and Christene Cohen are a marital community and, although they are currently separated, they are still legally married. The Vessel, *in rem*, is owned by the F/V Point Loma Fishing Company, Inc. ("PLFC"), a California subchapter S corporation. Barry and Christene Cohen each own 50% of the shares in PLFC. Barry Cohen is the President and manager of PLFC. In 2004, Mr. Cohen transferred ownership of the Vessel to PLFC. The Vessel remains subject to the Mortgage following the transfer of ownership to PLFC. The transfer made Plaintiff's security interest in the Vessel more, rather than less, secure.

The Vessel engages in fishing activities off the coast of Northern California. Specifically, the Vessel engages in the groundfish fisheries located outside the State of California and in the U.S. Exclusive Economic Zone ("EEZ")(from three to 200 nautical miles) and is licensed to land its catch only in the State of California. The Vessel's home port is Port San Luis, California.

**B. The Relationship of the Parties**

For at least 10 years, Barry Cohen and Plaintiff have done business together. Del Mar also employed Barry Cohen from 2004 until 2006 in its processing plant at Watsonville, California. From 1999 to 2004, Plaintiff and Barry Cohen engaged in a joint venture for the purpose of operating a fish processing business from a site Mr. Cohen leased at the Port San Luis Pier in Avila Beach, California (the "Avila Beach Joint Venture"). The Avila Beach Joint Venture was based on an oral agreement between Plaintiff and Barry Cohen. Plaintiff and Barry Cohen each held a 50% interest in the Avila Beach Joint Venture. After the Avila Beach Joint Venture ended in 2004, Plaintiff and Barry Cohen signed an Assignment of Joint Venture Interest (the "Assignment") effective October 22, 2004. Under the Assignment, Plaintiff assigned all of its rights, title, and interests in the Avila Beach Joint Venture to Barry Cohen.

In or around 2001, Plaintiff and Barry Cohen began planning for another joint venture. Barry Cohen and Plaintiff's president, Joe Cappuccio, contemplated using Defendants' Vessel to fish in Mexico (the "Mexico Joint Venture"). Joe Cappuccio had intended to purchase a 50% interest in the Vessel related to this venture. When Joe Cappuccio decided not to purchase a 50% interest in the Vessel, the parties agreed to convert the funds contributed by Plaintiff to upgrade the Vessel into a loan under the Note secured by the Mortgage on the Vessel.

**C. The Note and Mortgage**

The parties agreed that the amount to be covered by the Note and Mortgage would be $215,000. This amount is expressly set forth in writing in both the Note and Mortgage. Defendants Barry and Christene Cohen signed the Note, dated October 31 2003, for $215,000 in favor of Plaintiff. The Note is secured by the Mortgage, on the Vessel, dated October 31, 2003, which both Barry and Christene Cohen signed. The only purpose of the Note was to memorialize a loan associated with Joe Cappuccio's contemplated purchase. Plaintiff's controller, Joe Roggio,



DAVIS WRIGHT TREMAINE LLP

prepared the Note and Mortgage that expressly states that $215,000 is the amount covered by both instruments. Defendants contend that at all times, the only amount secured by the Mortgage and owed under the Note has been $215,000.

Although the terms of the Note set forth monthly payment obligations in the amount of $3,000 or 15% of the gross landing of the Vessel, it was never the practice of the parties to enforce this provision. More importantly, as explained below, this provision was amended by the actual performance of the parties when Defendants made, and Plaintiff accepted, a lump sum payment in the amount of $175,000.

The Note and Mortgage are the only signed written agreements between Plaintiff and Defendants regarding money owed by Defendants. There is no signed written amendment to the Note or the Mortgage.

**D. <u>Payments by Defendants</u>**

Defendants made a payment to Plaintiff in December, 2004 in the amount of $5,000. In late 2005, Joe Cappuccio, the Plaintiff's President, asked the Cohens to reduce the size of the debt on the Vessel because of concerns expressed by Plaintiff's bank. The Cohens complied with the request, borrowed $175,000 from the equity in their home, and provided a check dated November 9, 2005 for that amount to Joe Cappuccio. The terms of the Note and Mortgage did not require Defendants to make such a payment in that amount at that time. Subsequently, when asked, Mr. Cohen made three additional payments on the Note totaling $8,000 in 2007. At no time did Plaintiff ever send any sort of notice to Defendants that they were behind in their monthly payments.

More importantly, the parties effectively modified the payment terms of the Note by actual performance when the Cohens made the advance, lump sum $175,000 payment on the Note. Mr. Cohen understood that the Note did not include interest based on his discussions with Mr. Roggio to that effect, the fact that he had borrowed money from the equity in his house to make the $175,000 lump sum, pre-payment at Plaintiff's request, and a statement by Joe Cappuccio upon receiving the check for $175,000 from Barry Cohen that he was not worried about the remainder and Barry Cohen could pay it off whenever he liked.

**E. Amount of the Note and Mortgage**

The parties disagree as to the amount of money owed by Defendants to Plaintiff under the Note and Mortgage. Defendants submit that the express terms of the Note and Mortgage control and that the only debt secured by the Mortgage is and has always been for $215,000 as is unequivocally set forth in writing. There are no written modifications of the Note and Mortgage or any other agreements under which both Barry and Christene Cohen agreed to include any other amounts or third party obligations under the Note and Mortgage.

Furthermore, Defendants have never owed any interest on the Note contrary to Plaintiff's allegations. Defendants' position is consistent with Plaintiff's conduct. Most notably, Plaintiff never sent Defendants any notices or other demands for interest at any time prior to the arrest.

Moreover, regardless of what Plaintiff's original intent may have been regarding interest to be charged, the parties effectively modified the terms of the Note regarding interest payments when Defendants made the $175,000 lump sum payment. When Barry Cohen made the $175,000 payment, he understood that he could pay off the remainder of the Note whenever he liked and that no interest would be charged. His understanding was based on statements by Joe Roggio and Joe Cappuccio to that effect, the fact that has was making a substantial payment that was not owed or otherwise required at the time, and that Plaintiff never sent him or Christene Cohen any demand for payment of interest or notice of missed payments even up until the time of the arrest.

**F. The Arrest of the Vessel**

The parties do not dispute that, at the time of the arrest, Defendants had paid a total of $188,000 to Plaintiff. Plaintiff did not inform the Court of this fact when it sought an *ex parte* order of arrest and filed a verified complaint against Defendants asserting a right to foreclose on the Mortgage on June 7, 2007. Two months after the Court granted Plaintiff's application for the arrest, it vacated the *ex parte* order of arrest of the Vessel on August 17, 2007 after learning of the $175,000 payment and finding that Plaintiff lacked probable cause for the arrest.

Plaintiff had no basis for arresting the Vessel because Defendants were not in material default and its decision to do so simply makes no sense. The issues in this case could have been resolved without resorting to such drastic, unfounded measures. However, Plaintiff never even



DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

attempted to resolve its concerns prior to having the Vessel arrested. Plaintiff never contacted Barry Cohen, a person with whom it had a long standing business relationship. It never sent any written demand for payment or interest to the Cohens. It ignored Barry Cohen's history of making payments when asked to do so, including a large pre-payment not required under the Note.

Defendants were never in material default under the Note and Mortgage. Plaintiff asserted this claim to support its *ex parte* application to the Court for an order to arrest the Vessel. Despite Plaintiff's contention that the $175,000 lump sum payment did not cover Defendants' alleged monthly payment obligations, the payment terms of the Note had been amended by the actual performance of the parties when Defendants made the substantial, $175,000 pre-payment. Accordingly, Defendants were (and are) current on their payments at the time of the arrest.

Plaintiff's arrest was wrongful in light of the totality of the circumstances that existed at the time of the arrest. First and foremost, Defendants had paid, at Plaintiff's request, a $175,000 pre-payment on the Note. Second, both Plaintiff's president and controller never alleged that missed monthly payments formed the basis for Plaintiff's decision to arrest the Vessel in their testimony in this case. Rather, both Plaintiff's president and controller have stated that the decision to arrest the Vessel was based on unsubstantiated assumptions about the loss of a motion for attorneys' fees against Mr. Cohen in the Avila Beach litigation, his personal financial status (not the condition of PLFC, the owner of the Vessel) and that he was involved in a "nasty" divorce. Notably, Plaintiff admits that it knew the Vessel was in fact fishing at the time of the arrest.

**G. Impact of Arrest**

The wrongful arrest of the Vessel caused Defendants to miss at least 14 fishing trips and deprived them of their regular income from their fishing operations for more than two months. Prior to the arrest, the Vessel regularly engaged in fishing operations in the EEZ off California and on average, grossed approximately $9,000 per trip. During the time of the arrest, Defendants continued to pay the Vessel's regular captain and crew to remain available for when the Vessel was allowed to resume fishing. For Mr. Cohen, the Vessel represented his only income other than Social Security. The arrest directly cost Defendants opportunities for income from using the

Vessel in the local fisheries and making sales to fish wholesalers to whom they regularly sold their catch.

## III. LEGAL ARGUMENT

This case essentially involves two primary issues: (1) whether Defendants have committed a material breach of the terms of a $215,000 Note secured by the Mortgage on the Vessel; and (2) whether, absent a material breach, Plaintiff's arrest of the Vessel was wrongful because Plaintiff and its lawyers did not inform the Court of all material facts relevant to the issue of default. As discussed below, the Court should find in favor of Defendants as to both questions based on evidence to be presented at trial.

### A. The Court Should Dismiss Plaintiff's Complaint In Its Entirety Because Defendants Did Not Breach The Note and Mortgage.

The Note formalizes a loan agreement between the parties and therefore California contracts law applies when analyzing the terms and any modifications of the agreement. Ultimately, any question of interpretation of the Note must be resolved against the drafter, in this case, Plaintiff. *See e.g.*, *Badie v. Bank of America* (1998) 67 Cal. App. 4th 779, 798. Despite Plaintiff's allegations, Defendants have not breached the terms of their loan agreement with Plaintiff.

#### 1. Defendants Have Not Breached The Monthly Payment and Interest Terms.

The underlying dispute in this litigation is whether Defendants have breached the payment terms of their loan agreement under the Note and Mortgage. Plaintiff alleged in its complaint that the basis for the arrest was Defendants' default under the Note and Mortgage for failure to make monthly payments and pay interest.[1]

The threshold issue is whether the parties modified the written payment terms of the Note. Defendants did not breach the monthly payment and interest terms because they were amended by

[1] Throughout this litigation, Plaintiff has attempted to justify its arrest of the Vessel after the fact by asserting other alleged terms of default that did not appear in its complaint, including failure to maintain the condition of the Vessel and failure to name Plaintiff as a loss payee on the Vessel's insurance. However, the only claim raised in Plaintiff's complaint was default for failure to make monthly payments.



DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

the parties by actual performance when Defendants paid to Plaintiff, upon its request, a lump sum, advance payment in the amount of $175,000 and by oral agreement.

First, the monthly payment terms were modified upon execution and performance of the parties upon payment of the $175,000. *See e.g.*, Cal. Civ. Code §1661 (executed contract is one which is fully performed); Cal. Civ. Code § 1473 ("Full performance of an obligation, by the party whose duty it is to perform it…if accepted by the creditor, extinguishes it"); Cal. Civ. Code § 1477 ("A partial performance of an indivisible obligation extinguishes a corresponding proportion thereof, if the benefit of such performance is voluntarily retained by the creditor…"). Thus, the terms were effectively modified when Defendants gave a check to Mr. Cappuccio for $175,000 and Plaintiff, specifically Mr. Cappuccio, accepted it.

In addition, the amendment of the payment terms was supported by new consideration when Plaintiff received a lump sum pre-payment that it was not otherwise entitled to receive under the existing terms of the Note. In exchange, Defendants were not required to pay interest on the loan and Mr. Cohen could pay off the remainder of the loan when he chose. Plaintiff admits there is no provision in the Note requiring Defendants to make such a payment. Rather, Plaintiff's bank had become concerned about the size of the loan on its books and Plaintiff asked Defendants to make a substantial pre-payment on the Note. Defendants believed that the advance payment applied to the $215,000 owed under the Note. In addition, in exchange for the lump sum payment, Plaintiff would not charge Defendants any interest on the loan.

This interpretation of the amended agreement between the parties is consistent with the circumstances surrounding the making of the Note and the subsequent modification. *See e.g.*, Cal. Civ. Code §1647 (a contract may be explained by reference to circumstances under which it was made and the matter to which it relates). The conduct of the parties following the payment of the $175,000 supports Mr. Cohen's understanding of the amended payment terms. First, he made the substantial payment at the request of Joe Cappuccio that Defendants were not otherwise required to make. Second, following the advance, lump sum payment and prior to the arrest, Plaintiff never sent any notice to Defendants that they owed anything under the 15% of gross landing receipts provision of the Note. Third, Plaintiff did not send any notice to Defendants that they were late on

any payments. Nor did Plaintiff ever send a notice that a payment of interest was due prior the arrest. In fact, statements made by Plaintiff call into question that it ever intended to charge Defendants interest on the loan. Moreover, Defendants took out a second mortgage on their home to make the pre-payment so it is questionable that they would have done so if they were still required to pay $3,000 per month and the interest would not be charged on the loan made to them in connection with the contemplated purchase of a half interest in the Vessel by Joe Cappuccio.

Second, Defendants were not in default for the failure to make any interest payments. The interest terms of the Note were modified by an oral agreement among the parties when Defendants made the $175,000 payment. A written contract may be amended by an oral agreement to the extent the oral agreement has been executed or performed by the parties. Cal. Civ. Code §1698(b). Furthermore, a contract in writing may be amended by an oral agreement provided it is supported by new consideration. Cal. Civ. Code §1698(c).

When Defendants made the $175,000 payment, Plaintiff's controller said that he would see to it that no interest was charged. Plaintiff accepted the check for $175,000, again a payment that Plaintiff has admitted Defendants were not required to make at the time, and therefore received "new consideration" creating a valid modification of the interest terms. Only at the time of the arrest did Plaintiff contend that interest was ever owed by Defendants. This position is inconsistent with the oral modification of the Note as well as Plaintiff's behavior following the $175,000 payment. At no time prior to the arrest, did Plaintiff ever send Defendants any demand for interest payments.

**2. Any Alleged Failure to Make Monthly Payments is Not a Material Breach.**

Even if Defendants breached the term of the Note requiring monthly payments, the alleged breach is immaterial and did not justify the arrest of the Vessel. Under California law, not every instance of noncompliance justifies termination of a contract. *See e.g, Superior Motels, Inc. v. Rinn Motor Hotels, Inc*. (1987) 195 Cal. App. 3d 1032, 1051. Importantly, "California courts allow termination only if the breach can be classified as 'material,' substantial,' or 'total.'" *Id*. (emphasis added) In evaluating whether the "breach" was material, the Court must "weigh the



DAVIS WRIGHT TREMAINE LLP

purpose to be served, the desire to be gratified, the excuse for deviation from the letter [of the contract], [and] the cruelty of enforced adherence." *Id*.

Here, at the time of the arrest, Defendants had paid Plaintiff a total of $188,000 on the $215,000 Note. By any measure, this is a substantial and significant amount, especially in light of the fact that Defendants had made a lump sum payment for $175,000 that they were not otherwise required to make. The fact that Defendants made a lump sum payment instead of using that money to make monthly payments in the amount of $3,000 is not a material breach. Plaintiff still got paid and in fact was better off because it received $175,000 at one time instead of incremental payments over the next few years. Thus, Defendants did not breach the terms of the Note and Mortgage.

**3. Contrary to Plaintiff's Assertions, Defendants Only Agreed to Pay $215,000 under the Note and Mortgage.**

Plaintiff argues that Defendants were in breach of the Note and Mortgage because the Note and Mortgage included other amounts in addition to the $215,000 that is expressly stated on the face of each instrument.[2] Plaintiff argues that the $175,000 lump sum payment did not cover Defendants' monthly payments because it was entitled to apply the payment as it chose to "other debts" incurred by Mr. Cohen that were rolled into the Note as "future advances." These so-called "advances" include money owed to Plaintiff by Mr. Cohen's sons through their businesses, certain funds outstanding relating to the Avila Beach Joint Venture, and other alleged debts related to Mr. Cohen's businesses.

Contrary to Plaintiff's assertions, the Note was never amended to cover anything other than the $215,000 set forth expressly in its terms. Plaintiff has admitted there is no signed, written amendment to the Note and Mortgage. Absent a written agreement to include other amounts under the terms of the Note and Mortgage, Plaintiff cannot show it has an enforceable agreement by both Mr. and Mrs. Cohen to amend the original amount covered by the Note and

[2] Plaintiff has also argued that the original amount of the Note and Mortgage should have been for nearly $237,000 instead of $215,000. Any evidence that the original amount of the Note and Mortgage should have been greater at the time it was signed is barred by the parol evidence rule. Defendants briefed this issue in Defendants Motion in Limine No. 1 to Exclude Parol Evidence Regarding Amount of Debt under Promissory Note.



DAVIS WRIGHT TREMAINE LLP

Mortgage.

Plaintiff has attempted to force the other debts allegedly owed by Mr. Cohen to be characterized as "advances" so as to fall within the "future advances" provision of the Mortgage. However, none of the alleged additional debts constitute "advances" and the Note contains no provision for "advances." All of the additional "debts" are business obligations that were incurred separate from the Note. Any money owed by Mr. Cohen's sons to Del Mar can hardly be characterized as "advances" when such money was never paid by Del Mar to the Cohens or the Vessel. Similarly, any financial obligations related to the Avila Beach Joint Venture and litigation or inventory owed by Mr. Cohen are regular business expenses that are not intended to be covered by an unrelated Note and Mortgage.

Moreover, while the Mortgage has a provision that provides for security in "advances," the Note has no provision that provides for such advances. Indeed, the Note provides a fixed amount to be secured, $215,000, plus interest and attorney's fees, if any, but does not itself have a provision for future loans. The Mortgage itself only secures the underlying loan transaction but does not contain any substantive agreement by the parties either to make or accept future advances, thus no such advances are secured under the Mortgage in this case unless the Note has been amended in writing. *See generally*, *State Bank & Trust Company of Golden Meadow v. Boat D J Griffin*, 755 F. Supp. 1389 (E.D. La. 1991) (agreements did not cover future advances); *South LaFourche Bank & Trust Company v. M/V Southern Star*, 582 F.Supp. 584 (E.D. La. 1984) and *Southland Financial Corp. v. Oil Screw Mary Evelyn*, 248 F. Supp. 520 (E.D. La. 1965) (applying Louisiana law to uphold a vessel mortgage that secures an instrument that provides for future advances). *See also* 46 U.S.C. § 31321(b)(3) (providing for amounts that may be secured by a mortgage and an underlying instrument). Since, as discussed above, there is no written agreement to amend the terms of the Note to specifically include "advances," such amounts are not therefore included under the terms of the Note and Mortgage.

Any oral agreement amending the amount Note would also be unenforceable for lack of consideration. A contract in writing may be modified by an oral agreement provided the oral agreement is supported by new consideration. Cal. Civ. C. §1698(c). Contrary to Plaintiff's

contention that Defendants orally agreed to amend the terms of the Note to include other amounts, such an agreement would be invalid for lack of new consideration (even if Mr. Cohen had in fact agreed to do so, which he did not). *See Beggerly v. Gbur* (1980) 112 Cal. App. 3d 180, 190. Absent evidence of new consideration, a purported oral modification is unenforceable. *In re Sizzler Restaurants Int'l.*, 225 B.R. 466, 476 (CD Ca. 1998) (analyzing oral modification of license agreement under Cal. Civ. Code §1698).

Both Barry and Chris Cohen signed the Note and Mortgage and neither ever agreed to include any other unsecured debts or other amounts to the Note. Even if the Cohens did agree to include the other amounts in the Note, there must be some gain to them or detriment to Del Mar for the oral agreement to be enforceable. However, no new consideration was given with respect to amending the Note to include any additional amounts since Defendants gained nothing and Plaintiff gave up nothing in exchange for allegedly agreeing to include other so-called debts under the Note. Absent consideration, the alleged promises by Mr. Cohen to include any "advances" or the debts of his sons under the Note are at best characterized as "gratuitous oral promises" and not enforceable. *See e.g., Beggerly*, 112 Cal. App. 3d at 190.

In particular, any alleged promise by Mr. Cohen to include his sons' accounts receivable under the Note is invalid because it is not in writing. Cal. Civ. Code § 1622 (contracts may be oral except where specially required by statute to be in writing). Generally, under the statute of frauds, a "special promise to answer for the debt…of another…" must be in writing. Cal. Civ. Code §1624(a)(2). A writing is required where the promise made is in fact an assumption of another's liability and is not an original and independent undertaking by the promisor. *Schumm v. Berg* (1951) 37 Cal. 2d 174, 187-188 (whenever "the leading and main object of the promisor is not to become surety or guarantor of another, but to subserve some purpose or interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another")(internal quotations omitted).

There is no writing in which Defendants agree to include the accounts receivable of Mr. Cohen's sons under the Note and Mortgage. Mr. Cohen's alleged agreement to include his sons' accounts receivable under the Note is covered by the statute of frauds and not enforceable without

DAVIS WRIGHT TREMAINE LLP

a writing where he allegedly agreed to pay the debts on his sons' behalf and did not assume the debt as a new, principal debtor. *See e.g., Parrish v. Greco* (1953) 118 Cal. App. 2d 556, 561. Even if Mr. Cohen promised to be responsible for the accounts receivable, such a promise is nevertheless an oral promise he made as a father to be responsible for existing debts of his sons. Mr. Cohen cannot be characterized as a new, principal debtor for these amounts particularly because the Cohens never received any sort of direct benefit from allegedly modifying the original Note to include the debts of Mr. Cohen's sons nor did they ever receive any consideration to do so. Thus, the statute of frauds applies and any alleged agreement to include the debts of his sons under the Note is invalid without a written agreement.

More importantly, Plaintiff waived its right to assert any claims or debts related to the Avila Beach Joint Venture when it signed all of its interest, including any claims and causes of action of the Avila Beach Joint Venture, to Mr. Cohen in the Assignment. As set forth in Paragraph 2 of the Assignment, Plaintiff effectively transferred to Mr. Cohen "…all of [Plaintiff's] entire interest in the Joint Venture…including and without limitation all rights, entitlements and/or interests in and to any claims, rights of actions, causes of action, recoveries, damages or other legal recourse owned or held by the Joint Venture."

This Assignment between Plaintiff and Mr. Cohen is a valid transfer of all of Plaintiff's interests in the Avila Beach Joint Venture. All rights, claims, and causes of action, other than those of a personal nature, are freely transferable. *See e.g., Essex Insur. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal. 4th 1252, 1263 (under Cal. Civ. Code § 954, "assignability is the rule"). When a cause of action is transferred to an assignee by assignment, the assignee stands in the shoes of the assignor "taking his rights and remedies." *Id.* at 1264 (*quoting Salaman v. Bolt* (1977) 74 Cal App. 3d 907, 919). As a result, Plaintiff waived its rights to make claims against Mr. Cohen for alleged debts arising out of the Avila Beach Joint Venture when it assigned and transferred to Barry Cohen "to the fullest extent possible and without restriction" its entire interest, including any claims against the Cohens, their sons, or any other related business entity arising out of the Avila Beach Joint Venture.

Therefore, the only amount Defendants agreed to pay under the Note and Mortgage was never larger than $215,000 as expressly stated in both instruments.

**B. The Court Should Grant Defendants' Counterclaim for Wrongful Arrest because Plaintiff Acted with Bad Faith, Malice and Gross Negligence in Arresting the Vessel without Probable Cause.**

Under federal admiralty law, Defendants may recover for the arrest of the Vessel if it was done with bad faith, malice, or gross negligence.[3] *See e.g.*, *Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir. 1981) (damages recoverable for detention of vessel in bad faith); *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("gravaman" of right to recover is "bad faith, malice or gross negligence of the offending party"). In *Coastal Barge Corp. v. M/V Maritime Prosperity*, a ship owner brought an action against a vessel and obtained a warrant of arrest without disclosing a letter of undertaking in its complaint in which the ship owner had promised not to arrest the vessel as a means of securing the ship owner's claim of damages. 901 F. Supp. 325, 326-327 (M.D. Fla. 1994). Upon learning of the letter of undertaking, the court subsequently quashed its arrest. *Id*. The court found that the failure to disclose the promise not to arrest the vessel amounted to bad faith in that it exhibited "a reckless disregard for the truth" and the omission of this "pertinent fact" could not translate into a good faith basis for causing the arrest regardless of whether the ship owner believed in good faith that the letter of undertaking was invalid for lack of consideration. *Id.* at 329. Similar to a cause of action for malicious prosecution, the court explained that the ship owner had a duty to fully and fairly disclose all evidence, including exculpatory evidence. *Id*. The court awarded damages for causing the arrest and held that by keeping silent as to the letter of undertaking, the ship owner caused injury and made the court an instrument of that injury. *Id.*

[3] Federal maritime law governs the claim for wrongful arrest. *See* Federal Maritime Law and the Ship Mortgage Act, 46 U.S.C. 31301-43.

Here, Plaintiff Del Mar acted with similar, reckless disregard for Defendants' rights.[4] First and foremost, Plaintiff failed to inform this Court of the payment of Defendants' substantial $175,000 payment in its *ex parte* application for an arrest warrant. Notably, upon learning of this pertinent fact, the Court ordered the release of the Vessel for lack of probable cause for the arrest. The *ex parte* arrest of the Vessel was costly and severe and such action required due care in seeking the arrest. The disclosure of the substantial $175,000 payment may well have precluded the arrest and Plaintiff's conscious decision to not disclose this fact to the Court constitutes bad faith.

Second, a reasonable person would believe that a substantial lump sum payment, which was not otherwise due at the time it was paid, covered his or her monthly payment obligations. Here, in light of the $175,000 payment, it was unreasonable for the Plaintiff to arrest the Vessel without attempting to resolve whether any monthly payments were in fact due at the time. In addition, Plaintiff never sent Defendants any demand for payment at any time between the payment of the $175,000 and the arrest of the Vessel. To arrest the Vessel after such a course of dealings amounts to at minimum, gross negligence if not bad faith.

Third, Plaintiff's failure to investigate its concerns about Defendants' financial condition or attempt to resolve any questions about payment prior to the arrest amounts to bad faith, malice or gross negligence. Unlike traditional maritime cases, this case does not involve a large tanker or international cruise liner that may run a real risk of leaving a jurisdiction and avoiding resolution of disputes. Here, the Defendants own a commercial fishing vessel that only fishes off the coast of northern California. In addition, Plaintiff and Defendants have a history of engaging in business

---

[4] The reckless disregard for Defendants' rights by omitting the salient fact of the $175,000 payment when seeking the *ex parte* arrest warrant also constitutes a *contractual* claim for breach of the implied covenant of good faith and fair dealing in the Note and Mortgage. There is a covenant of good faith and fair dealing in every contract. *Storek & Storek, Inc. v. Citicorp Real Estate* (2002) 100 Cal. App. 4th 44, 55. The covenant of good faith and fair dealing imposes on the parties a contractual duty to perform their obligations faithfully and not to deprive each other of the benefits of the contract. *Floystrup v. City of Berkeley* (1990) 219 Cal. App. 3d 1309, 1318. Under this duty, parties to a contract must refrain from doing anything that would render performance of the contract impossible. *Id*. Under the covenant of good faith in the Note and Mortgage, Plaintiff had an obligation not to interfere with Defendants' use of the Vessel without cause. The essence of a good faith covenant is "objectively reasonable conduct" and it was objectively *unreasonable* for Plaintiff to prevent Defendants from fishing without resolving the any questions about the application of the $175,000 payment. *Badie v. Bank of America* (1998) 67 Cal. App. 4th 779, 796.



DAVIS WRIGHT TREMAINE LLP

transactions and Plaintiff knew of Defendant Barry Cohen's long standing ties to the local area. None of the rumors on which Plaintiff based its decision to arrest the Vessel were terms of default under the Note and Mortgage. More importantly, Defendants have a history of making payments that were not in fact owed when asked to do so by Plaintiff. In addition to the $175,000 payment, Defendant Barry Cohen made subsequent payments on the amount remaining on the Note that he did not believe were owed at the time but because Plaintiff asked him to do so.

Fourth, Plaintiff lacked any reasonable basis for arresting the Vessel. *See e.g., Bd. of Cmm'rs. v. M/V Belle of Orleans*, 439 F. Supp. 1178, 1188, n.5 (S.D. Ala. 2006), *quoting Salazar v. Atlantic Sun*, 881 F. 2d 73, 79 (3d Cir. 1989) (post arrest hearing intended to make preliminary determination whether there were "reasonable grounds" for issuing the arrest warrant). As described above, Defendant had not defaulted on the Note. As the Court found in its Order Vacating Motion of Arrest, Plaintiff lacked probable cause as Defendants were not in default of the Note having made a substantial, lump sum payment and effectively prepaying monthly payments well into the future. The parties do not dispute that Mr. Cohen made a substantial payment of $175,000 on the $215,000 Note. At Plaintiff's request, Mr. Cohen made this payment and he intended this payment to cover his monthly payments well into the future. Plaintiff accepted this payment and for nearly two years following the large advance payment, Mr. Cohen never received any notice or invoice from Plaintiff that he was behind on his monthly payments. Moreover, subsequent to the lump sum payment, in November 2005, when Plaintiff asked, Mr. Cohen made additional payments in the amount of $8,000. At the time of the arrest, Mr. Cohen had paid a total of $188,000 making him current under the Note through approximately February 2009.

Accordingly, Plaintiff wrongfully arrested the Vessel by acting with bad faith, malice, and gross negligence.

### C. <u>The Court Should Grant Defendants' Request for Relief because Plaintiff Intentionally Interfered with Defendants' Prospective Economic Advantage by Wrongfully Arresting the Vessel.</u>

Plaintiff intentionally interfered with Defendants' prospective economic advantage ("Intentional Interference") when it wrongfully arrested the Vessel. Plaintiff's actions meet all of



DAVIS WRIGHT TREMAINE LLP

the six elements establishing a claim of Intentional Interference under California law. Defendants will show: 1) an economic relationship between Defendants and a third party, with the probability of future economic benefit to Defendants; 2) Plaintiff's knowledge of the relationship; 3) intentional acts on the part of Plaintiff designed to disrupt the relationship; 4) actual disruption of the relationship; 5) economic harm to Defendants proximately caused by Plaintiff's actions; and 6) a wrongful act apart from the interference itself. *Korea Supply Co. v. Lockheed Martin Corp.* (2003), 29 Cal. 4th 1134, 1153 (setting forth six elements of claim). Defendants will present evidence at trial that they satisfy each of the elements as follows:

1. *Economic relationship with third parties*. Defendants need not establish the existence of a "valid" contract to sustain their claim for Intentional Interference. Rather, they need only show interference with "a contract that is certain to be consummated" or, simply an "economic relationship." *Korea Supply*, 29 Cal. 4th at 1158. Defendants are in the business of catching fish and regularly sell their catch to fish wholesalers. These relationships with fish wholesalers, such as Caito Fisheries, meet the requirement that there must be an economic relationship with a third party with the probability of future economic benefit to Defendants.

2. *Knowledge of economic relationships*. Since no existing contractual relationship is required, Plaintiff's general awareness of Defendants' relationships with fish wholesalers arising from Plaintiff's own experience in the seafood business, its ownership of fishing vessels, and its longstanding business relationship with Defendants satisfy this element.

3. *Intentional act of disruption*. Plaintiff's arrest of the Vessel was intentional and therefore meets the third requirement of the claim as an intentional act designed to disrupt Defendants' relationships with fish wholesalers. No specific intent is required to meet this element. *Korea Supply*, 29 Cal. 4th at 1141. Defendants need only show that Plaintiff knew that its interference in Defendants' ability to sell to wholesalers and earn income was certain or substantially certain to occur as a result of the arrest. *Id*. at 1155. Plaintiff's president admitted in his deposition that he knew the Vessel was fishing at the time of the arrest. Common sense dictates that Plaintiff should have known that the arrest would prevent Defendants from being able to fish without a boat. It is unquestionable that Plaintiff, with years of experience in the seafood



DAVIS WRIGHT TREMAINE LLP

business, would not know that depriving Defendants of their fishing boat would necessarily prevent them from catching fish to sell to fish wholesalers. *See id*. at 1154.

4. *Economic relationship actually disrupted.* The arrest took the Vessel away from Defendants and disrupted any fishing expeditions that were planned and therefore necessarily prevented them engaging in fishing activities and making sales to wholesalers for more than two months.

5. *Disruption proximately caused harm*. Defendants incurred economic harm that was proximately caused by the arrest. The arrest directly prevented Defendants from using the Vessel to fish and sell their catch to wholesalers. They missed at least 14 fishing trips because of the arrest and as a result incurred economic harm because they had no catch to sell to wholesalers.

6. *Act independently wrongful*. Lastly, Defendants argue that the arrest was independently wrongful and therefore satisfies the sixth element for a claim of Intentional Interference. *Id*. at 1159. As described above, the disruption was wrongful because Plaintiff acted with bad faith, malice, or gross negligence in arresting the Vessel without any cause.

**D. The Court Should Grant Defendants' Request for Relief because Plaintiff Negligently Interfered with Defendants' Prospective Economic Advantage by Wrongfully Arresting the Vessel.**

Plaintiff's baseless arrest of the Vessel also negligently interfered with Defendants' prospective economic advantage ("Negligent Interference"). The elements of a claim for Negligent Interference are similar to those for Intentional Interference. Negligent Interference may be established by demonstrating 1) that an economic relationship existed between Defendants and a third party which contained a reasonably probable future economic benefit or advantage to Defendants; 2) Plaintiff knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with the relationship and cause economic injury to Defendants; 3) Plaintiff was negligent; and 4) such negligence caused damage to Defendants' prospective economic advantage. *North American Chemical Co. v. Superior Court* (1997) 59 Cal. App. 4th 764, 786.

Defendants will show that all four elements are satisfied. The first element requiring an economic relationship is similar to that for Intentional Interference as explained above.



DAVIS WRIGHT TREMAINE LLP

Defendants also can establish that Plaintiff knew or should have known that its actions would interfere with Defendants' livelihood as commercial fishermen. Plaintiff admitted that it knew the Vessel was fishing at the time of the arrest. At minimum, it should have been aware especially because of its experience in the fishing and seafood industry and its own operation of fishing vessels that depriving Defendants of their fishing boat would prevent them from catching and selling fish.

As to the third element, at minimum, Plaintiff's arrest of the Vessel was negligent. Plaintiff owed Defendants a duty of care under both the terms of the loan agreement and by virtue of their long standing business dealings. *North American,* 59 Cal. App. 4th at 781-782 (duty of care created by contract). Plaintiff owed Defendants a duty not to interfere with their business and arrest the Vessel without just cause. Plaintiff caused the arrest of the Vessel by withholding evidence from the Court of a substantial payment made by Defendants and has admitted that its decision to arrest the Vessel was based solely on unsubstantiated assumptions about Defendants' financial condition and marital status. Despite the severity of arresting the Vessel, Plaintiff made no effort to investigate the basis for its claims or send Defendants any sort of demand for payment or other notice of missed payments prior to the arrest. Plaintiff's failure to exercise due care in arresting the Vessel was recognized by the Court when it released the Vessel upon finding that Plaintiff had in fact lacked probable cause for the arrest.

Lastly, as to the fourth element, Plaintiff's actions proximately caused the interference with Defendants' relationships with fish wholesalers. A claim for Negligent Interference allows recovery of the prospective economic advantage that would have been recovered but for the negligent conduct of the Plaintiff. *Id.* at 782. It was foreseeable, especially to Plaintiff who also engages in the fishing business, that the wrongful arrest of the Vessel would cause Defendants to lose income from their fishing activities. The arrest prevented Defendants from fishing for nearly two months and missing at least 14 trips. As a result, Defendants lost the economic benefit of their relationships with wholesalers which was directly caused by Plaintiff's failure to exercise due care in obtaining the *ex parte* order of arrest from the Court without cause.

**IV. DEFENDANTS' DAMAGES**

As a direct result of the baseless arrest of the Vessel, Defendants sustained losses to their fishing business and incurred expenses and attorneys fees and costs in order to obtain the release of the Vessel and defend their interests. Defendants' damages for lost profits are those that were reasonably certain to have been earned but for the arrest preventing them from going on at least 14 trips. *See e.g.*, *Fireman's Fund Insur. Cos. v. Big Blue Fisheries, Inc.*, 143 F.3d 1172, 1177 (9th Cir. 1998) (damages awarded in admiralty case for lost profits actually or reasonably supposed to have been lost and proven with "reasonable certainty); *S.C. Anderson, Inc. v. Bank of America Nat'l Trust and Savings Ass'n* (1994) 24 Cal. App. 4th 529, 537-538 (for California claims, not required to establish amount of damages with absolute precision but only demonstrate the loss with "reasonable certainty). The amount of lost profits will be determined at trial. In addition, Mr. Cohen paid his captain and crew $8,000 during the time of the arrest to compensate them for their lost income and also to mitigate his damages by discouraging them from leaving and finding new employment elsewhere. Defendants incurred approximately $5,000 in expenses related to the litigation and more than $260,000 in legal fees and costs to date.

Defendants are also entitled to prejudgment interest on their claim of wrongful arrest. Plaintiff owes Defendants prejudgment interest for the money that the arrest deprived them from using. Prejudgment interest may be granted in cases in admiralty. *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 795 (9th Cir. 1986). Thus, Defendants are entitled to prejudgment interest as compensation for additional losses arising from the wrongful arrest. Prejudgment interest is appropriate to "compensate the wronged party for being deprived of the monetary value of the loss from the time of the loss to the payment of judgment." *Id.* Here, Defendants should be awarded prejudgment interest from the date of the arrest, June 7, 2007, until the date that judgment is entered.

Prejudgment interest may be calculated at a rate that will compensate Defendants for their losses. *Dishman v. UNUM Life Insur. Co. of America*, 269 F.3d 974, 988 (9th Cir. 2001). The Court may look to the interest rates for U.S. Securities-Treasury constant maturities nominal[10] – 1 year as used to determine post judgment interest in calculating prejudgment interest for lost profits



DAVIS WRIGHT TREMAINE LLP

and expenses. The average monthly interest rate for June, July, and August of 2007, the period during which Defendants were prevented from using their Vessel and earning income, is 4.80%. This rate should be applied from the date of the arrest through the entry of judgment to Defendants damages.

Defendants respectfully request that upon finding in their favor on their counterclaims, that the Court order Plaintiff to pay damages, prejudgment interest, and attorneys' fees as appropriate.

**V. CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint for breach of the Note and Mortgage and foreclosure of the Mortgage. Defendants also respectfully request that the Court grant Defendants' claims for wrongful arrest and intentional and negligent interference with prospective economic advantage.

DATED this 28th day of April, 2008.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _*/s/ James P. Walsh*_
James P. Walsh
Gwen Fanger

DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants and Claimant BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA FISHING COMPANY, INC.

DAVIS WRIGHT TREMAINE LLP