1  James P. Walsh, CSB. No. 184620
2  Gwen Fanger, CSB No. 191161
   DAVIS WRIGHT TREMAINE LLP
3  505 Montgomery Street, Suite 800
   San Francisco, California 94111-3611
4  Telephone:  (415) 276-6500
   Facsimile:    (415) 276-6599
5  budwalsh@dwt.com

6  Attorneys for Defendants and Claimant
   BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and
7  Claimant, F/V POINT LOMA Fishing Company, Inc.

8

9                        UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12  DEL MAR SEAFOODS, INC.,                  ) No. C-07-2952-WHA
                                             )
13                      Plaintiff,           )
                                             ) **DEFENDANTS' PROPOSED**
14          v.                               ) **FINDINGS OF FACT AND**
                                             ) **CONCLUSIONS OF LAW**
15  BARRY COHEN, CHRIS COHEN (aka            )
    CHRISTENE COHEN), *in personam* and,     ) **Final Pretrial Conferene**
16  F/V POINT LOMA, Official Number          ) **May 5, 2008; 2:00pm**
    515298, a 1968 steel-hulled, 126-gross ton, )
17  70.8 foot long fishing vessel, her engines, ) **Trial Date:   May 14, 2008**
    tackle, furniture apparel, etc., *in rem*, and ) **Time:          7:30 a.m.**
18  Does 1-10,                               ) **Place:         Courtroom 9, 19th Floor**
                                             )
19                      Defendants.          )

20         Pursuant to Local Rule 16-10(b) and the Court's Guidelines for Trial and Final Pretrial

21  Conference in Civil Bench Cases before the Honorable William Alsup, Defendants Barry Cohen,

22  Chris Cohen, the F/V Point Loma, *in rem*, and Claimant F/V Point Loma Fishing Company, Inc.

23  submit these Proposed Findings of Fact and Conclusions of Law.

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

1  **I.      FINDINGS OF FACT**

2          **The Parties**

3          1.      The Plaintiff, Del Mar Seafoods, Inc., is engaged in the fish processing business.

4  Plaintiff owns fishing vessels and has been involved in the seafood industry for many years.

5          2.      Defendants Barry and Christene Cohen are a marital community and, although they

6  are currently separated, they are still legally married.

7          3.      The F/V Point Loma (the "Vessel") is owned by the F/V Point Loma Fishing

8  Company, Inc. ("PLFC"), a California subchapter S corporation.  Barry and Christene Cohen each

9  own 50% of the shares in PLFC.  Barry Cohen is the President and manager of PLFC.  In 2004,

10  the Cohens transferred ownership of the Vessel to PLFC.  Plaintiff knew of this transfer and raised

11  no objection.  The transfer served to enhance the security of the Vessel for Plaintiff rather than

12  diminish it.

13          4.      The Vessel engages in fishing activities off the coast of Northern California.

14  Specifically, the Vessel engages in the groundfish fisheries located outside the State of California

15  and in the U.S. Exclusive Economic Zone ("EEZ") (from three to 200 nautical miles) and is

16  licensed to land its catch only in the State of California.  The Vessel's home port is Port San Luis,

17  California.

18          **Prior Dealings between Plaintiff and Defendants**

19          5.      Plaintiff and Mr. Cohen have a history of business dealings.  Joe Cappuccio and

20  Mr. Cohen have known each other for at least 10 years and have engaged in various business

21  transactions.  Mr. Cohen was an employee of Del Mar at one time.

22          6.      Between 1999 and 2004, Plaintiff and Mr. Cohen were partners in a 50/50 joint

23  venture related to fish processing at the Port San Luis Pier in California involving Mr. Cohen's

24  other business, Olde Port Fisheries (the "Avila Beach Joint Venture").  Plaintiff and Mr. Cohen

25  each held a 50% interest in the Avila Beach Joint Venture.

26          7.      When Plaintiff pulled out of the Avila Beach Joint Venture, the parties entered into

27  an Assignment of Joint Venture Interest (the "Assignment") effective October 22, 2004.  Joe

28  Roggio, the Plaintiff's controller, and Barry Cohen signed the Assignment.  Under the

DAVIS WRIGHT TREMAINE LLP

1

DEFS. PROPOSED FINDINGS OF FACT/LAW                                          SFO 406244v1 0084289-000001
Case No. C-07-2952-WHA

1     Assignment, Plaintiff transferred all of its rights, title and interest in the Avila Beach Joint

2     Venture, including any claims or causes of action on behalf of the Avila Beach Joint Venture.

3     Any money owed to the Avila Beach Joint Venture is covered by the Assignment and as a result,

4     owed to Mr. Cohen and not Del Mar Seafoods, Inc.

5            **The Promissory Note and Mortgage**

6          8.       Plaintiff and Barry and Christene Cohen entered into a promissory note with

7     Plaintiff on October 31, 2003 (the "Note"). The Note is secured by a first preferred ship mortgage

8     on the Vessel (the "Mortgage"). Both Barry and Christene Cohen also signed the Mortgage on

9     October 31, 2003. Both the Note and Mortgage state that the amount secured by the Vessel is

10    $215,000.

11          9.       Plaintiff and Defendants entered into the Note and Mortgage to memorialize a loan

12    agreement between Plaintiff and Mr. Cohen in connection with a contemplated joint venture.

13    Plaintiff and Mr. Cohen had contemplated forming a joint venture to fish in Mexico (the "Mexico

14    Joint Venture"). Joe Cappuccio, Plaintiff's president, had intended to purchase a 50% interest in

15    the Vessel related to this venture. When Joe Cappuccio decided not to purchase a half interest in

16    the Vessel, the parties agreed to convert the money already spent on the Vessel into a loan under

17    the Note and secured by the Mortgage on the Vessel.

18        10.      The parties specifically agreed that the amount of the loan to be covered by the

19    Note and Mortgage would be $215,000. Plaintiff's controller, Joe Roggio, prepared the Note

20    which clearly sets forth in writing that the amount owed is $215,000.

21        11.      The Note includes a provision for the payment of reasonable attorneys' fees if a

22    suit is commenced on the Note.

23        12.      The only amount that is secured by the Mortgage on the Vessel and owed under the

24    Note is $215,000.

25        13.      Defendants' fishing permit is not included as part of the security interest under the

26    Note and Mortgage.

27        14.      The Note and Mortgage are the only signed, written agreements between the parties

28    relating to the debts owed by Defendants.

DAVIS WRIGHT TREMAINE LLP

2

1    15.    As a result of the transfer of the ownership of the Vessel from Mr. Cohen to PLFC,

2 the Vessel nevertheless remains subject to Mortgage and PLFC is responsible for the continued

3 operation of the Vessel.

4        **Payments by Defendants**

5    16.    The original terms of the Note required that Defendants would make monthly

6 payments in the amount of $3,000 or fifteen percent of the gross landing receipts of the Vessel's

7 seafood production.  Defendants made a payment on the Note in the amount of $5,000 by check

8 dated December 22, 2004.

9    17.    Subsequently, Defendants made a large, lump sum payment in the amount of

10 $175,000 by check dated November 9, 2005.  Defendants made this payment at Plaintiff's request.

11 In late 2005, Plaintiff's president, Joe Cappuccio, asked the Cohens to reduce the size of the loan

12 on the Vessel because of concerns expressed by Plaintiff's bank.  The Cohens complied with the

13 request, borrowed $175,000 from the equity in their home, and personally gave a check for that

14 amount to Joe Cappuccio around the date of the check in November 2005.

15    18.    Defendants made additional payments on the Note in January ($2,000), February

16 ($3,000), and March ($3,000) of 2007.  In total, Defendants have paid Plaintiff $188,000 on the

17 Note to date.

18    19.    Defendants intended the $175,000 payment to be a prepayment of their monthly

19 installments.  The parties effectively modified the monthly payment terms by actual performance

20 when the Cohens made an advance payment on the Note in the amount of $175,000.  The Note did

21 not require such a payment in that amount and at that time.  The payment of the $175,000 check

22 covered Defendants' monthly payment obligations for approximately 58 monthly installments

23 through 2009.  As a result, Defendants were and still are current on their monthly payments.

24    20.    When Mr. Cohen gave the check to Joe Cappuccio, Joe Cappuccio told Mr. Cohen

25 that he could pay off the remainder of the Note whenever he liked and he was not worried about

26 the balance because the remainder was such a small amount.

27        **Interest Term**

28

DAVIS WRIGHT TREMAINE LLP

3

1       21.    The Note includes an interest term.  Throughout the period between signing the

2   Note and the arrest of the Vessel, Plaintiff never sent any demand to Defendants for the payment

3   of any interest under the Note and Mortgage.

4       22.    The interest term was effectively modified when Defendants made the $175,000

5   payment.  In exchange for the lump sum payment, Defendants understood that they would not be

6   charged any interest.  When Mr. Cohen gave the check for $175,000 to Plaintiff, Joe Roggio,

7   Plaintiff's controller, said that he would see to it that the loan was interest free.

8   **Amount of the Note**

9       23.    The amount of the Note is $215,000 as set forth in the express terms of both the

10  Note and Mortgage.

11      24.    The only amount currently remaining on the Note is $27,000.

12      25.    Defendants never agreed, orally or in writing, to include any other amounts under

13  the Note and Mortgage.

14  **Plaintiff's Arrest of the Vessel**

15      26.    On June 7, 2007, Plaintiff sought and obtained an *ex parte* order of arrest of the

16  Vessel based on allegations in its verified complaint that Defendants had defaulted on the Note

17  and Mortgage for their failure to make monthly payments.

18      27.    Plaintiff failed to disclose to the Court in its verified complaint that Defendants had

19  made the substantial, $175,000 payment and in fact had paid a total of $188,000 on the Note at the

20  time of the arrest.

21      28.    The Vessel and all of its appurtenances, including fishing gear and a fishing net,

22  were held, and prevented from engaging in its fishing activities, for over two months before the

23  Court ordered the Vessel's release on August 17, 2007 for Plaintiff's failure to show probable

24  cause for the arrest after a Supplemental Admiralty Rule 4(E) hearing.

25      29.    Following the Court's order vacating the arrest, Plaintiff filed an application for

26  emergency stay and motion for leave to file motion for reconsideration.  Defendants were further

27  prevented from accessing their Vessel until the Court denied Plaintiff's application and motion on

28  August 27, 2008.

*DAVIS WRIGHT TREMAINE LLP*

4

1    30.    Prior to the arrest, Plaintiff never contacted Barry Cohen to resolve any issues

2  regarding payment.  It never sent any written demand for monthly payments or interest to

3  Defendants.  Nor did Plaintiff ever request that Defendants make any payments under the 15%

4  gross landing provision of the Note.

5    31.    Plaintiff knew that the Vessel was fishing at the time of the arrest.

6    32.    Plaintiff was not concerned about any missed payments.  Plaintiff based its decision

7  to arrest the Vessel on assumptions about Barry Cohen's personal financial status, divorce

8  proceedings, his potential liability for attorneys' fees in unrelated litigation, and personal

9  animosity toward Barry Cohen.

10    33.    Plaintiff's assumptions regarding its security in the Vessel were unsubstantiated.

11  Prior to the arrest, Plaintiff never undertook any investigation to verify whether its concerns were

12  justified.  Barry Cohen has never declared or filed for bankruptcy.  He is not currently liable for

13  attorneys' fees in any prior, unrelated litigation.  The status of his divorce is not grounds for

14  default under the terms of the Note and Mortgage.  Plaintiff never inquired as to the financial

15  status of PLFC, the owner of the Vessel.  Plaintiff's position as a high priority creditor was never

16  threatened with respect to the Vessel.

17    **Impact of Arrest**

18    34.    The arrest prevented Defendants from engaging in fishing activities for over two

19  months.  It caused Defendants to miss at least 14 fishing trips.  Defendants missed at least 13

20  fishing trips during the time the Vessel was under arrest.  Defendants missed at least one

21  additional trip immediately after the Court granted Defendants' Motion to Vacate Order of Arrest

22  on August 17, 2007 because Defendants were prevented from taking the Vessel out pending the

23  Court's decision on Plaintiff's Application for Emergency Stay and Motion for Reconsideration of

24  the Court's Order Vacating the Arrest.  Defendants were unable to obtain the release of the Vessel

25  until after the Court denied Plaintiff's requests on or about August 27, 2007.

26    35.    The arrest directly cost Defendants opportunities for income from using the Vessel

27  in the local fisheries and making sales to fish wholesalers to whom they regularly sold their catch.

28

DAVIS WRIGHT TREMAINE LLP

5

DEFS. PROPOSED FINDINGS OF FACT/LAW                                                SFO 406244v1 0084289-000001
Case No. C-07-2952-WHA

1  Defendants had relationships with fish wholesalers, such as Caito Fisheries, to whom they sold

2  their catch during the period prior to and immediately after the arrest.

3      36.    During the time of the arrest, Defendants continued to pay the Vessel's regular

4  captain and crew to remain available for when the Vessel was allowed to resume fishing.

5      37.    For Mr. Cohen, the Vessel represented his only income other than Social Security.

6  **II.    CONCLUSIONS OF LAW**

7      **Jurisdiction**

8      38.    This Court has subject matter jurisdiction over this case in admiralty.  The Vessel

9  Mortgage is a maritime contract that provides this Court with admiralty jurisdiction, based on the

10  Federal Ship Mortgage Act.  *The Thomas Barlum*, 293 U.S. 21, 33 (1934) (prior to enactment of

11  Ship Mortgage Act 1920, the admiralty had no jurisdiction of a suit to foreclose a mortgage on a

12  ship); 46 U.S.C. §§ 31322, 31325, and 31329; Schoenbaum, Admiralty and Maritime Law, 4th

13  Ed., Vol. 1, § 3-10, 130-139 (2007).

14      **Applicable Law**

15      39.    Defendants' counterclaim for wrongful arrest is governed by federal maritime law.

16  *See* Federal Maritime Law and the Ship Mortgage Act, 46, U.S.C. 31301-43.

17      40.    California law applies to the issue of default on the Note.  Under 46 U.S.C.

18  §31325(b), Plaintiff may bring an action in this court to enforce a claim for an outstanding

19  indebtedness secured by a mortgaged vessel if there is a "default."  Admiralty jurisdiction requires

20  the application of substantive admiralty law.  Schoenbaum, Admiralty and Maritime Law, 4th Ed.,

21  Vol. 1, § 4-1, 157 (2007).  However, one of the sources of admiralty law is state law, "insofar as

22  appropriate in the admiralty context."  *Id.*, at 158.  Because admiralty law is not all-encompassing,

23  this Court may fashion a rule by looking to various appropriate sources, including state statutory

24  law and common law which is then borrowed and applied as the applicable federal rule.  Local

25  concerns predominate with respect to the construction of the Note and purported amendment and

26  the uniformity principle is not critical as to these issues.  *Ham Marine, Inc. v. Dresser Industries,*

27  *Inc.*, 72 F.3d 454, 459 (5th Cir. 1995) (to the extent not inconsistent with admiralty principles,

28

DAVIS WRIGHT TREMAINE LLP

6

1 state contract law may be applied to maritime contracts).  Accordingly, with regard to the Note

2 and associated issues, such as amendment of the Note and default, California law applies.

3          41.      For similar reasons, California law also applies to Defendants' counterclaims for

4 intentional and negligent interference with prospective economic advantage.  Since Plaintiff

5 breached the Note and Mortgage by arresting the Vessel without probable cause and in bad faith,

6 the Court may look to California law in analyzing Plaintiff's liability for intentional and negligent

7 interference with Defendants' prospective economic advantage.

8          **Breach of the Note and Mortgage**

9          42.      The monthly payment terms were modified upon execution and performance of the

10 parties upon payment of the $175,000.  *See e.g.*, Cal. Civ. Code §1661 (executed contract is one

11 which is fully performed); Cal. Civ. Code § 1473 ("Full performance of an obligation, by the party

12 whose duty it is to perform it…if accepted by the creditor, extinguishes it"); Cal. Civ. Code §

13 1477 ("A partial performance of an indivisible obligation extinguishes a corresponding proportion

14 thereof, if the benefit of such performance is voluntarily retained by the creditor…").

15          43.      The original terms of the Note required that Mr. Cohen would make monthly

16 payments in the amount of $3,000 or fifteen percent of the gross landing receipts of the Vessel's

17 seafood production.  However, the parties modified the payment terms of the Note by actual

18 performance when the Cohens made an advance payment on the Note in the amount of $175,000

19 by check dated November 9, 2005.  The Note did not require such a payment.  Nevertheless, in

20 late 2005, Joe Cappuccio, the Plaintiff's President, asked the Cohens to reduce the size of the debt

21 on the Vessel because of concerns expressed by Plaintiff's bank.  The Cohens complied with the

22 request, borrowed $175,000 from the equity in their home, and provided a check for that amount

23 to Joe Cappuccio on or around the date of the check.  Thus, the monthly payment and interest

24 terms were effectively modified when Defendants gave a check to Mr. Cappuccio for $175,000

25 and Plaintiff, specifically Mr. Cappuccio, accepted it.

26          44.      In addition, the amendment of the payment terms was supported by new

27 consideration when Plaintiff received a lump sum pre-payment that it was not otherwise entitled to

28 receive under the existing terms of the Note.  In exchange, Defendants were not required to pay

7

DAVIS WRIGHT TREMAINE LLP

1  interest on the loan and Mr. Cohen could pay off the remainder of the loan when he chose.

2  Defendants made the lump sum payment at the request of Plaintiff when Plaintiff's bank became

3  concerned about the size of the loan on Plaintiff's books and Plaintiff asked Defendants to make a

4  substantial pre-payment on the Note.  The advance payment applied to the $215,000 owed under

5  the Note and in exchange for the lump sum payment, Plaintiff agreed that it would not charge

6  Defendants any interest on the loan.

7       45.     This interpretation of the amended agreement between the parties is consistent with

8  the circumstances surrounding the making of the Note and the subsequent modification.  *See e.g.*,

9  Cal. Civ. Code §1647 (a contract may be explained by reference to circumstances under which it

10  was made and the matter to which it relates).  The conduct of the parties following the payment of

11  the $175,000 illustrates the amended payment terms.  First, Mr. Cohen made the substantial

12  payment at the request of Joe Cappuccio that Defendants were not otherwise required to make.

13  Second, following the advance, lump sum payment and prior to the arrest, Plaintiff never sent any

14  notice to Defendants that they owed anything under the 15% of gross landing receipts provision of

15  the Note.  Third, Plaintiff did not send any notice to Defendants that they were late on any

16  payments.  Nor did Plaintiff ever send a notice that a payment of interest was due prior the arrest.

17  Moreover, Defendants took out a second mortgage on their home to make the pre-payment which

18  they would not have done if they were still required to make monthly, $3000 payments on the

19  Note.

20       46.     Defendants were also not in default for the failure to make any interest payments.

21  The interest terms of the Note were modified by an oral agreement among the parties when

22  Defendants made the $175,000 payment.  A written contract may be amended by an oral

23  agreement to the extent the oral agreement has been executed or performed by the parties.  Cal.

24  Civ. Code §1698(b).  Furthermore, a contract in writing may be amended by an oral agreement

25  provided it is supported by new consideration.  Cal. Civ. Code §1698(c).

26       47.     When Defendants made the $175,000 payment, Plaintiff's controller said that he

27  would see to it that no interest was charged.  Plaintiff accepted the check for $175,000, again a

28  payment that Defendants were not required to make at the time, and therefore received "new

8

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  consideration" which created a valid modification of the interest terms.  Only at the time of the

2  arrest did Plaintiff contend that interest was ever owed by Defendants.

3      48.      Any breach of the Note and Mortgage must be material in order to constitute a

4  default.  Defendants did not materially breach the Note and Mortgage by failing to make

5  additional monthly payments after paying Plaintiff $175,000 in a lump sum.  The breach alleged

6  by Plaintiff is immaterial and did not justify the arrest of the Vessel.  Under California law, not

7  every instance of noncompliance justifies termination of a contract.  *See e.g*, *Superior Motels, Inc.*

8  *v. Rinn Motor Hotels, Inc*. (1987) 195 Cal. App. 3d 1032, 1051.  Importantly, "California courts

9  allow termination only if the breach can be classified as 'material,' substantial,' or 'total.'"  *Id*.

10 (emphasis added)  To evaluate whether the "breach" was material, the Court must "weigh the

11 purpose to be served, the desire to be gratified, the excuse for deviation from the letter [of the

12 contract], [and] the cruelty of enforced adherence."  *Id*.

13     49.      At the time of the arrest, Defendants had paid Plaintiff a total of $188,000 on the

14 $215,000 Note.  By any measure, this is a substantial and significant amount, especially in light of

15 the fact that Defendants had made a lump sum payment for $175,000 that they were not otherwise

16 required to make.  The fact that Defendants made a lump sum payment instead of using that

17 money to make monthly payments in the amount of $3,000 is not a material breach.  Plaintiff still

18 got paid and in fact was better off because it received $175,000 at one time instead of incremental

19 payments over the next few years.

20     **Amount of Note**

21     50.      Defendants only agreed to pay $215,000 under the Note and Mortgage.  Defendants

22 did not agree to include any other amounts under the Note and Mortgage.  There is no signed,

23 written agreement amending the amount of the Note and Mortgage.  The only signed, written

24 agreement between the parties regarding the amount owed by Defendants under the Note and

25 Mortgage are the Note and Mortgage themselves.

26     51.      Plaintiff claims that additional debts, including attorneys' fees in an unrelated

27 litigation, outstanding inventory and debts from the Avila Beach Joint Venture, and certain debts

28 of Mr. Cohen's sons are included under the provision in the Mortgage for "future advances."

9

DEFS. PROPOSED FINDINGS OF FACT/LAW                                    SFO 406244v1 0084289-000001
Case No. C-07-2952-WHA

1    However, these additional amounts are not properly characterized as "advances" because they are

2    unrelated, business obligations that were incurred separate and apart from the Note and the Note

3    contains no provision for "advances."  Nor were these amounts paid directly to the Cohens or the

4    Vessel.

5        52.      While the Mortgage has a provision that provides for security in "advances," the

6    Note has no provision that provides for such advances.  Indeed, the Note provides a fixed amount

7    to be secured, $215,000, plus interest and attorney's fees, if any, but does not itself have a

8    provision for future loans.  The Mortgage itself only secures the underlying loan transaction but

9    does not contain any substantive agreement by the parties either to make or accept future

10   advances, thus no such advances are secured under the Mortgage in this case unless the Note has

11   been amended in writing.  *See generally*, *State Bank & Trust Company of Golden Meadow v. Boat*

12   *D J Griffin*, 755 F. Supp. 1389 (E.D. La. 1991) (agreements did not cover future advances); *South*

13   *LaFourche Bank & Trust Company v. M/V Southern Star*, 582 F. Supp. 584 (E.D. La. 1984) and

14   *Southland Financial Corp. v. Oil Screw Mary Evelyn*, 248 F. Supp. 520 (E.D. La. 1965) (applying

15   Louisiana law to uphold a vessel mortgage that secures an instrument that provides for future

16   advances).  *See also* 46 U.S.C. § 31321(b)(3) (providing for amounts that may be secured by a

17   mortgage and an underlying instrument).  Since, as discussed above, there is no written agreement

18   to amend the terms of the Note to specifically include "advances," such amounts are not therefore

19   included under the terms of the Note and Mortgage.

20       53.      There is also no valid, oral agreement amending the Note and Mortgage to include

21   additional debt.  A contract in writing may be modified by an oral agreement provided the oral

22   agreement is supported by new consideration.  Cal. Civ. C. §1698(c); s*ee Beggerly v. Gbur* (1980)

23   112 Cal. App. 3d 180, 190; *In re Sizzler Restaurants Int'l.*, 225 B.R. 466, 476 (CD Ca. 1998)

24   (analyzing oral modification of license agreement under Cal. Civ. Code §1698).

25       54.      There was no new consideration for any oral agreement to include additional

26   amounts under the Note and Mortgage.  Both Barry and Chris Cohen signed the Note and

27   Mortgage and neither agreed to include any other amounts under the Note.  Defendants gained

28   nothing by any agreement to include other amounts under the Note and Mortgage.  Moreover,

DAVIS WRIGHT TREMAINE LLP

10

1  Plaintiff did not forgo any rights by agreeing to include any additional amounts that had already

2  and separately been incurred under the Note and Mortgage.  There were no additional changes in

3  the repayment terms in exchange for inclusion of other amounts under the Note.  Absent

4  consideration, the alleged promises by Mr. Cohen to include any "advances" or the debts of his

5  sons under the Note are at best characterized as "gratuitous oral promises" and are not enforceable.

6  *See e.g., Beggerly*, 112 Cal. App. 3d at 190.

7         55.      Under the statute of frauds, a "special promise to answer for the debt…of

8  another…" must be in writing.  Cal. Civ. Code §1624(a)(2).  A writing is required where the

9  promise made is in fact an assumption of another's liability and is not an original and independent

10  undertaking by the promisor.  *Schumm v. Berg* (1951) 37 Cal. 2d 174, 187-188 (whenever "the

11  leading and main object of the promisor is not to become surety or guarantor of another, but to

12  subserve some purpose or interest of his own, his promise is not within the statute, although the

13  effect of the promise may be to pay the debt or discharge the obligation of another")(internal

14  quotations omitted).

15         56.      Mr. Cohen's alleged agreement to include his sons' accounts receivable under the

16  Note is covered by the statute of frauds and not enforceable without a writing where he allegedly

17  agreed to pay the debts on his sons' behalf and did not assume the debt as a new, principal debtor.

18  *See e.g., Parrish v. Greco* (1953) 118 Cal. App. 2d 556, 561.  Mr. Cohen cannot be characterized

19  as a new, principal debtor for these amounts particularly because the Cohens never received any

20  sort of direct benefit from allegedly modifying the original Note to include the debts of Mr.

21  Cohen's sons nor did they ever receive any consideration to do so.  Thus, the statute of frauds

22  applies and any alleged agreement to include the debts of his sons under the Note is invalid

23  without a written agreement.

24         57.      Defendants do not owe Plaintiff for any debts incurred by or related to the Avila

25  Beach Joint Venture.  Plaintiff assigned all of its claims and entitlements to Mr. Cohen when it

26  entered into the Assignment with Mr. Cohen.  The Assignment between Plaintiff and Mr. Cohen is

27  a valid transfer of all of Plaintiff's interests in the Avila Beach Joint Venture.  All rights, claims,

28  and causes of action, other than those of a personal nature, are freely transferable.  *See e.g., Essex*

DAVIS WRIGHT TREMAINE LLP

11

1  *Insur. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal. 4th 1252, 1263 (under Cal. Civ. Code

2  § 954, "assignability is the rule").  When a cause of action is transferred to an assignee by

3  assignment, the assignee stands in the shoes of the assignor "taking his rights and remedies."  *Id.*

4  at 1264 (*quoting Salaman v. Bolt* (1977) 74 Cal App. 3d 907, 919).  As a result, Plaintiff waived

5  its rights to make claims against Mr. Cohen for any debts arising out of the Avila Beach Joint

6  Venture when it assigned and transferred to Barry Cohen "to the fullest extent possible and

7  without restriction" its entire interest, including any claims against the Cohens, Mr. Cohen's sons,

8  or any other related business entity arising out of the Avila Beach Joint Venture.

9      **Wrongful Arrest**

10      58.    Defendants' counterclaim includes a cause of action for wrongful arrest.  Under

11  federal admiralty law, Defendants may recover for the arrest of the Vessel if it was done with bad

12  faith, malice, or gross negligence.  *See e.g., Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th

13  Cir. 1981) (damages recoverable for detention of vessel in bad faith); *Frontera Fruit Co. v.*

14  *Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("gravamen" of right to recover is "bad faith, malice or

15  gross negligence of the offending party").  The complete disregard for the truth also constitutes

16  bad faith for a claim for wrongful arrest.  *Coastal Barge Corp. v. M/V Maritime Prosperity*, 901 F.

17  Supp. 325, 329 (M.D. Fla. 1994).

18      59.    Plaintiff wrongfully arrested the Vessel when it acted with a complete disregard for

19  the truth regarding payments made by Defendants at the time of the arrest.  Plaintiff failed to

20  inform this Court of the payment of Defendants' substantial $175,000 payment in its *ex parte*

21  application for an arrest warrant.  Upon learning of the lump sum payment, this Court ordered the

22  release of the Vessel for lack of probable cause for the arrest.  The *ex parte* arrest of the Vessel

23  was costly and severe and such action required due care in seeking the arrest.  The disclosure of

24  the substantial $175,000 payment would have precluded the arrest and Plaintiff's conscious

25  decision to not disclose this fact to this Court constitutes bad faith.  *Coastal Barge Corp. v. M/V*

26  *Maritime Prosperity*, 901 F. Supp. 325 (M.D. Fla. 1994).

27      60.    Plaintiff's arrest of the Vessel was also wrongful and in bad faith because Plaintiff

28  lacked any reasonable basis for arresting the Vessel.  *See e.g., Bd. of Cmm'rs. v. M/V Belle of*

DAVIS WRIGHT TREMAINE LLP

12

1  *Orleans*, 439 F. Supp. 1178, 1188, n.5 (S.D. Ala. 2006), *quoting Salazar v. Atlantic Sun*, 881 F. 2d

2  73, 79 (3d Cir. 1989) (post arrest hearing intended to make preliminary determination whether

3  there were "reasonable grounds" for issuing the arrest warrant).  Defendants had not defaulted on

4  the Note.  As this Court found in its Order Vacating Motion of Arrest, Plaintiff lacked probable

5  cause for the arrest because Defendants were not in default of the Note having made a substantial,

6  lump sum payment and effectively prepaying monthly payments well into the future.

7       61.    Plaintiff's failure to investigate its concerns about Defendants' financial condition

8  or attempt to resolve any questions about payment prior to the arrest also amounts to bad faith,

9  malice or gross negligence because there was no risk to Plaintiff's security interest at the time of

10  the arrest.  Defendants own a commercial fishing vessel that only fishes off the coast of northern

11  California.  In addition, Plaintiff and Defendants have a history of engaging in business

12  transactions and Plaintiff knew of Defendant Barry Cohen's long standing ties to the local area.

13  Moreover, Plaintiff' s decision to arrest the Vessel was based on unfounded assumptions about

14  Defendants' financial and marital status.  None of the rumors on which Plaintiff based its decision

15  to arrest the Vessel were terms of default under the Note and Mortgage.  More importantly,

16  Defendants have a history of making payments that were not in fact owed when asked to do so by

17  Plaintiff.  In addition to the $175,000 payment, Defendant Barry Cohen made subsequent

18  payments on the amount remaining on the Note that he did not believe were owed at the time but

19  because Plaintiff asked him to do so.

20       62.    Plaintiff's failure to disclose the $175,000 payment to the Court also constitutes

21  bad faith because it was a breach of the *contractual* duty of good faith and fair dealing implied

22  under the Note and Mortgage.  Under the Note and Mortgage, there was an implied contractual

23  duty for Plaintiff not to interfere with Defendants' use of the Vessel or to abuse its ability to cause

24  the arrest of the Vessel without probable cause.  There is a covenant of good faith and fair dealing

25  in every contract.  *Storek & Storek, Inc. v. Citicorp Real Estate* (2002) 100 Cal. App. 4th 44, 55.

26  The covenant of good faith and fair dealing imposes on the parties to a contract the duty to

27  perform their obligations faithfully and not to deprive each other of the benefits of the contract.

28  *Floystrup v. City of Berkeley* (1990) 219 Cal. App. 3d 1309, 1318.  Under this duty, parties to a

DAVIS WRIGHT TREMAINE LLP

13

1  contract must refrain from doing anything that would render performance of the contract

2  impossible. *Id.* Under the covenant of good faith in the Note and Mortgage, Plaintiff had an

3  obligation not to interfere with Defendants' use of the Vessel without cause. The essence of a

4  good faith covenant is "objectively reasonable conduct" and it was objectively *unreasonable* for

5  Plaintiff to prevent Defendants of the use of their Vessel by obtaining an *ex parte* order of arrest

6  without disclosing the fact of the $175,000 payment to the Court. *Badie v. Bank of America*

7  (1998) 67 Cal. App. 4th 779, 796. This reckless disregard for Defendants' rights by omitting the

8  salient fact of the $175,000 payment when seeking the arrest warrant constitutes was a breach of

9  Plaintiff's implied, contractual obligations of good faith under the Note and Mortgage and was

10  necessarily done in bad faith and Plaintiff is therefore liable for wrongful arrest.

11            **Intentional Interference with Prospective Economic Advantage**

12        63.    Plaintiff intentionally interfered with Defendants' prospective economic advantage

13  ("Intentional Interference") when it wrongfully arrested the Vessel. Plaintiff's actions meet all of

14  the six elements establishing a claim of Intentional Interference under California law. The six

15  elements of a claim for Intentional Interference are:  1) an economic relationship between

16  Defendants and a third party, with the probability of future economic benefit to Defendants; 2)

17  Plaintiff's knowledge of the relationship; 3) intentional acts on the part of Plaintiff designed to

18  disrupt the relationship; 4) actual disruption of the relationship; 5) economic harm to Defendants

19  proximately caused by Plaintiff's actions; and 6) a wrongful act apart from the interference itself.

20  *Korea Supply Co. v. Lockheed Martin Corp.* (2003), 29 Cal. 4th 1134, 1153.

21        64.    Defendants had an economic relationship with third parties. The first element of

22  Intentional Interference requires only that Defendants have had an economic relationship with

23  third parties. It does not require a "valid" contract but rather that Plaintiff interfered with "a

24  contract that is certain to be consummated" or, simply an "economic relationship." *Korea Supply*,

25  29 Cal. 4th at 1158. Defendants are in the business of catching fish and regularly sell their catch

26  to fish wholesalers. These relationships with fish wholesalers, such as Caito Fisheries, meet the

27  requirement that there must be an economic relationship with a third party with the probability of

28  future economic benefit to Defendants.

DAVIS WRIGHT TREMAINE LLP

14

1    65.    Plaintiff knew of Defendants economic relationships with fish wholesalers.

2    Plaintiff has been involved in the seafood industry for many years, including the fish processing

3    business.  In addition, Plaintiff and Defendants have engaged in joint ventures together related to

4    the seafood processing business.  Moreover, Plaintiff and Defendants had known each other for at

5    least the past ten years.  Plaintiff therefore was aware that Defendants sold fish to wholesalers and

6    that they used the Vessel to conduct this business.

7    66.    Plaintiff's arrest of the Vessel was intentional and therefore meets the third

8    requirement of the claim for Intentional Interference as an intentional act designed to disrupt

9    Defendants' relationships with fish wholesalers.  No specific intent is required to meet this

10    element. *Korea Supply*, 29 Cal. 4th at 1141.  Plaintiff knew that the Vessel was fishing at the time

11    of the arrest.  Plaintiff therefore knew that it was certain or substantially certain that, as a result of

12    the arrest, Defendants would be unable to engage in their fishing activities without the Vessel and

13    therefore be unable to catch fish to sell to wholesalers and earn income. *Id*. at 1155.

14    67.    The arrest in fact interrupted Defendants' relationship with fish wholesalers.  The

15    arrest directly prevented Defendants from using their Vessel and disrupted any fishing expeditions

16    that were planned.  It therefore necessarily prevented them from catching fish and having product

17    to sell to wholesalers during and immediately after the arrest.

18    68.    The arrest proximately caused the harm to Defendants' relationships with fish

19    wholesalers.  Defendants incurred economic harm that was proximately caused by the arrest.  The

20    arrest directly prevented Defendants from using the Vessel to fish and sell their catch to

21    wholesalers.  They missed at least 14 fishing trips because of the arrest and as a result incurred

22    economic harm in the form of lost profits because they had no catch to sell to wholesalers.

23    69.    Lastly, the arrest was independently wrongful because Plaintiff acted with bad

24    faith, malice and gross negligence in causing the arrest by failing to disclose the fact of

25    Defendants' lump sum payment to this Court when it sought and obtained the *ex parte* order of

26    arrest. *Id*. at 1159.

27

28

*DAVIS WRIGHT TREMAINE LLP*

15

1

**Negligent Interference with Prospective Economic Advantage**

2    70.    Plaintiff's arrest of the Vessel also negligently interfered with Defendants'

3 prospective economic advantage ("Negligent Interference").  The elements of a claim for

4 Negligent Interference are similar to those for Intentional Interference.  Negligent Interference

5 may be established by demonstrating 1) that an economic relationship existed between Defendants

6 and a third party which contained a reasonably probable future economic benefit or advantage to

7 Defendants; 2) Plaintiff knew of the existence of the relationship and was aware or should have

8 been aware that if it did not act with due care its actions would interfere with the relationship and

9 cause economic injury to Defendants; 3) Plaintiff was negligent; and 4) such negligence caused

10 damage to Defendants' prospective economic advantage.  *North American Chemical Co. v.*

11 *Superior Court* (1997) 59 Cal. App. 4th 764, 786.

12    71.    The first element requiring an economic relationship is similar to that for

13 Intentional Interference and Defendants regularly sold fish to fish wholesalers, therefore

14 establishing this first element.

15    72.    As to the second element, Plaintiff knew or should have known that its actions

16 would interfere with Defendants' livelihood as commercial fishermen.  Plaintiff knew that the

17 Vessel was fishing at the time of the arrest.  It was also aware that the arrest would interfere with

18 Defendants' economic relationships with fish wholesalers by depriving them of use of the Vessel

19 because of its own experience in and knowledge of the fishing and seafood industry and its own

20 operation of fishing vessels.

21    73.    The arrest of the Vessel also satisfies the third element of Negligent Interference

22 because the arrest itself was negligent.  Plaintiff owed Defendants a duty of care under both the

23 terms of the loan agreement and by virtue of its long standing business dealings and relationship

24 with Defendants.  *North American,* 59 Cal. App. 4th at 781-782 (duty of care created by contract).

25 Plaintiff owed Defendants a duty not to interfere with their business and arrest the Vessel without

26 just cause.  Plaintiff caused the arrest of the Vessel by withholding evidence from the Court of a

27 substantial payment made by Defendants and has admitted that its decision to arrest the Vessel

28 was based solely on unsubstantiated assumptions about Defendants' financial condition and

DAVIS WRIGHT TREMAINE LLP

16

1    marital status.  Despite the severity of arresting the Vessel, Plaintiff made no effort to investigate

2    the basis for its claims or send Defendants any sort of demand for payment or other notice of

3    missed payments prior to the arrest.

4        74.    Lastly, as to the fourth element, Plaintiff's actions proximately caused the

5    interference with Defendants' relationships with fish wholesalers.  A claim for Negligent

6    Interference allows recovery of the prospective economic advantage that would have been

7    recovered but for the negligent conduct of the Plaintiff.  *Id*. at 782.  It was foreseeable, especially

8    to Plaintiff who also engages in the fishing business, that the wrongful arrest of the Vessel would

9    cause Defendants to lose income from their fishing activities.  The arrest prevented Defendants

10    from fishing for nearly two months and caused them to miss at least 14 trips.  As a result,

11    Defendants lost the economic benefit of their relationships with wholesalers which was directly

12    caused by Plaintiff's failure to exercise due care in obtaining the *ex parte* order of arrest from the

13    Court without probable cause.

14        **Defendants' Damages**

15        75.    Defendants must prove their damages to a reasonable certainty.  *Fireman's Fund*

16    *Insur. Cos. v. Big Blue Fisheries, Inc.*, 143 F.3d 1172, 1177 (9th Cir. 1998) (damages awarded in

17    admiralty case for lost profits actually or reasonably supposed to have been lost and proven with

18    "reasonable certainty); *S.C. Anderson, Inc. v. Bank of America Nat'l Trust and Savings Ass'n*

19    (1994) 24 Cal. App. 4th 529, 537-538 (for claims governed by California law, not required to

20    establish amount of damages with absolute precision but only demonstrate the loss with

21    "reasonable certainty).

22        76.    The Court finds that Defendants sustained damages for lost profits as a result of the

23    arrest that prevented them from engaging in fishing activities.  Defendants missed at least 14

24    fishing trips during and immediately following the arrest and therefore lost profits for those trips

25    that they would otherwise have earned but for the arrest.

26        77.    Defendants sustained damages for certain costs and expenses.  Defendants paid the

27    captain and crew $8,000 during the time of the arrest to compensate them for their own lost

28    fishing time and to mitigate further injury to Defendants' business had the captain and crew sought

17

DAVIS WRIGHT TREMAINE LLP

1    employment elsewhere.  Defendants incurred certain out of pocket expenses related to this

2    litigation in the amount of $5,000.

3        78.    The Court also finds that Plaintiff should pay Defendants prejudgment interest for

4    their claim of wrongful arrest.  Prejudgment interest may be granted in cases in admiralty unless

5    "peculiar circumstances justify its denial."  *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d

6    790, 795 (9th Cir. 1986) (internal citations omitted).  Prejudgment interest is appropriate to

7    "compensate the wronged party for being deprived of the monetary value of the loss from the time

8    of the loss to the payment of judgment."  *Id*.

9        79.    Prejudgment interest is calculated at a rate that will compensate Defendants for

10   their losses.  *Dishman v. UNUM Life Insur. Co. of America*, 269 F.3d 974, 988 (9th Cir. 2001).

11   The appropriate rate is based on interest rates for U.S. Securities-Treasury constant maturities

12   nominal[10] – 1 year as used in post judgment interest awards.  The average interest rate for June,

13   July, and August of 2007, the period during which Defendants were prevented from using their

14   Vessel and would therefore have had to borrow money, is 4.80%.

15       80.    The Court determines that Defendants should be paid prejudgment interest from the

16   date of the arrest, June 7, 2007, until the date this judgment has been entered.

17       81.    Defendants are the prevailing party on the dispute over the Note.  Defendants are

18   directed to file a motion for attorneys' fees within 30 days of the Court's ruling.

19   DATED this 28th day of April, 2008.

20                                Respectfully submitted,

21                                DAVIS WRIGHT TREMAINE LLP

22

23                                By:  _____*/s/ James P. Walsh*_____
                                       James P. Walsh
                                       Gwen Fanger

24

25                                DAVIS WRIGHT TREMAINE LLP
                                  Attorneys for Defendants and Claimant
26                                BARRY COHEN, CHRIS COHEN (aka
                                  CHRISTENE COHEN), the F/V POINT
27                                LOMA and Claimant, F/V POINT LOMA
                                  FISHING COMPANY, INC.

28

DAVIS WRIGHT TREMAINE LLP

18

1

2

3        ENTERED this ____ day of _____, 2008.

4                                                    _____
                                                     WILLIAM ALSUP
5                                                    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

19

DEFS. PROPOSED FINDINGS OF FACT/LAW                                    SFO 406244v1 0084289-000001
Case No. C-07-2952-WHA