**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. )<br>  )<br>        Plaintiff, )<br>  )<br>vs. )<br>  )<br>BARRY COHEN, CHRIS COHEN (aka )<br>CHRISTENE COHEN), *in personam* and )<br>F/V POINT LOMA, Official Number )<br>515298, a 1968 steel-hulled, 126-gross ton, )<br>70.8- foot long fishing vessel, her engines, )<br>tackle, furniture, apparel, etc., *in rem*, and )<br>Does 1-10, )<br>  )<br>        Defendants. )<br>  )<br>  )<br>And Related Counterclaims )<br>  ) | Case No.: CV 07-02952 WHA<br><br>**PLAINTIFF'S PROPOSED**<br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW**<br><br><br><br><br><br><br><br>Final Pretrial Conf.: May 5, 2008<br>Time: 2:00 p.m.<br><br>Trial Date:    May 14, 2008<br>Time:              7:30 a.m.<br>Courtroom 9, 19th Floor<br>Hon. William H. Alsup |

Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Bench Trials before the Honorable William Alsup, pg. 2, ¶ 2(d), Plaintiff Del Mar Seafoods, Inc. submits the following Proposed Findings of Fact and Conclusions of law.

-1-    Case No.: CV 07-02952 WHA
PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. PROPOSED FINDINGS OF FACT

### A. The Parties

1. Plaintiff Del Mar Seafoods, Inc. ("Del Mar") is a California corporation located in Watsonville, California and is engaged in the fish processing, marketing, and retailing business on the west coast.

2. Defendants Barry ("Cohen") and Christene Cohen (collectively "the Cohens") are married but currently legally separated.

3. The Defendant vessel, F/V POINT LOMA, is a U.S Coast Guard documented vessel, Official No. 515298 ("Vessel"). It is a 71-foot fishing vessel owned by Claimant F/V Point Loma Fishing Company, Inc. ("PLFC"), a California subchapter S corporation. Barry and Christene Cohen each own 50% of the shares in PLFC. Barry Cohen is the President and Manager of PLFC. In 2004 Cohen transferred the ownership of the Vessel from himself to PLFC.

4. At all times relevant to this lawsuit, the Vessel has engaged in fishing activities off the coast of Northern California. Specifically, the Vessel engages in the groundfish fisheries located outside the State of California and in the U.S. Exclusive Economic Zone ("EEZ") (from three to 200 nautical miles) and is licensed to land its catch only in the State of California. The Vessel's home port is Port San Luis, California.

### B. The Relationship of the Parties

5. Del Mar and Cohen have done business together in the past. Del Mar also employed Cohen from 2004 through 2006 at its processing plant in Watsonville.

6. From 1999 to 2004, Del Mar and Cohen engaged in a joint venture for the purpose of operating a fish processing business from a site Cohen had leased at the Port San Luis Pier in Avila Beach, California (the "Joint Venture"). The Joint Venture was formed based on an oral agreement between Del Mar and Cohen. Del Mar and Cohen each held a 50% interest in the Avila Beach Joint Venture.

7. After the books of the Joint Venture were closed in September 2004, Del Mar and Cohen signed an Assignment of Joint Venture Interest (the "Assignment") effective

October 22, 2004.

8. In or around 2001, Del Mar and Cohen began planning for a new joint venture in Mexico (the "Mexico Joint Venture"). Cohen and Del Mar's president, Joe Cappuccio, intended to use the Vessel in connection with the Mexico Joint Venture. Del Mar intended to purchase a 50% interest in the Vessel and advanced funds to Cohen to upgrade the Vessel in anticipation of the Mexico Joint Venture. When Del Mar decided not to purchase a 50% interest in the Vessel, the parties agreed to collateralize the funds contributed by Del Mar to upgrade the Vessel, together with other sums lent to Cohen as personal loans, into a personal loan to Cohen.

## C. The Note and Mortgage

9. The parties' agreement to collateralize the funds Del Mar loaned Cohen was formalized in a Promissory Note ("Note") signed by the Cohens on October 31, 2003. The principal amount stated in the Note is $215,000. Subsequently, in an unrelated lawsuit brought against the Port San Luis Harbor District, Cohen testified under oath that the amount of the Note's principal, $215,000, was a "low guess" of the amount Del Mar had actually put into the Mexico Joint Venture.

10. The Note was secured by a Preferred Ship Mortgage ("Mortgage") also signed by the Cohens on October 31, 2003. The Mortgage also states that the amount secured is $215,000. The Cohens had their signatures on the Mortgage notarized.

11. The Note expressly provides that interest shall accrue at 7% per annum. The Mortgage provides for interest at 10% upon default and acceleration of the outstanding balance due.

12. The Note also provides that the Cohens waive their rights to "presentment, demand, protest, notice of dishonor and/or protest, and notice of non-payment."

13. By each instruments' express terms, the Note incorporates the Mortgage and vice versa.

14. The Mortgage contained, among other things, certain covenants for which the Mortgagors (the Cohens) failure to uphold constitute default. The Mortgage's primary term

-3- Case No.: CV 07-02952 WHA
PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

in that regard requires that Mortgagors make "punctual payment of the principal of the note secured hereby, or any installment thereof . . ." Failure to do so constitutes default. Default would also occur if the Mortgagors failed to name Mortgagee (Del Mar) as a loss payee on the insurance policies covering the Vessel, as required by the Mortgage at Article I, paragraph 3.

15. The express terms of the Note require the Cohens to make monthly payments of $3,000 or 15% of the gross landing receipts of each and every landing of fish by the Vessel, whichever is greater. Payments were to commence on January 15, 2004 and continue on the 15th of each succeeding month "until principal and interest are fully paid." The Note also provided that "payments are to be applied to interest first."

16. The Mortgage, by its express terms, allows for the addition of "Future Advances" to Cohen to be added to the secured debt.

17. The Note and the Mortgage are the only signed written agreements between Del Mar and the Cohens regarding Cohen's debts to Del Mar. There is no signed written amendment or modification to the Note or the Mortgage.

D. **Additional Debt Added to, and Payments Made On, the Note**

16. During 2004, Del Mar made additional personal loans to Cohen in the amounts of $11,767.38, $1,768.00, $3,500.00, and $16,021.31. Del Mar added these debts to the principal balance of the Note.

17. After the Joint Venture's books were closed in September 2004, Cohen's sons Michael Cohen and Leonard Cohen owed Del Mar $13,920.40 and $18,069.10, respectively, related the Joint Venture's business operations. Cohen told Joe Roggio, Del Mar's Controller, that he would be responsible for his sons' debts, and would make sure that Del Mar got paid those amounts. Cohen also requested that the amounts of his sons debts be added to his Note's principal balance, and Roggio did so.

18. After the Joint Venture was over, Cohen still owed Del Mar $10,383.24 for inventory not yet paid for. Roggio also added that amount to the Note's principal at Cohen's request.

19. On or around December 23, 2004, after almost two years, Cohen made his first payment on the Note for $5,000.

20. In June, 2005, Del Mar received a check from a vendor for inventory in the amount of $1,474.75 that was credited to Cohen's balance on the Note. In September 2005 a payment of $1,000.00 was made by Olde Port Fisheries (Michael Cohen) to Del Mar and was credited to Cohen's balance. In November 2005 Del Made an inventory adjustment of $1,300 that was also credited to Cohen's balance.

21. Del Mar's bank had expressed concerns to Del Mar regarding the large amount of debt covered by the Note and Mortgage. In order to allay those concerns, Joe Cappuccio asked Cohen to make a large payment towards the principal. On or around November 9, 2005, Cohen personally delivered a check for $175,000 to Cappuccio to "pay down his note."

22. Shortly after Cohen made the $175,000 payment, he asked Joe Roggio to prepare an accounting of how much he owned Del Mar and what specific amounts had been added to his debt. Roggio prepared a spreadsheet with that information and gave it to Cohen.

23. In December 2005, Cohen incurred other debts to Del Mar for personal loans and inventory totaling $8,786.49 that Del Mar added to Cohen's Note balance at Cohen's request.

24. At the end of 2005, after Del Mar's involvement in Cohen's lawsuit against the Port San Luis Harbor District had ended, Cohen agreed that he would reimburse Del Mar for the attorney's Del Mar had incurred as a result of that litigation - $21,308.52. Cohen requested that that amount be added to his balance on the Note and Del Mar did so.

25. In December, 2006 after Del Mar had received no further payments from the Cohens for more than a year, Joe Roggio called Barry Cohen on his cell phone to discuss his making further monthly payments on the Note. Barry didn't answer, so Roggio left him a voicemail message.

26. On January 30, 2007 (a little more than a month after that phone call), Barry Cohen made a payment of $2,000. The payment was sent together with a note from Barry

Cohen reading:

> Joe,
> Please credit my account. With this payment, if your analysis was correct, the new balance should be $139,749.79.
> I will try to send you at least $2,000/month, sometimes $3,000.
> I'm sick right now and if I try to talk I start coughing, so instead, you get this note.
> I'm still unemployed, but this gives me a chance to help Michael make Olde Port better.
> I hope things are going good for you and your family. Please give Yvonne my regards. Too bad our families never got the chance to become better friends. Oh, well things usually happen for a reason. Well, take care of yourself.
> Barry

26. In January, 2007 Del Mar also began receiving other disturbing news regarding the Cohens' financial condition. On January 22, 2007 Cohen filed a Declaration in a lawsuit that he was pursuing against the Port San Luis Harbor District relating to his lease of the property that was used by the Joint Venture with Del Mar. Cohen's declaration was filed in support of his motion for attorneys' fees, and it included a statement from Cohen, under penalty of perjury, that if he did not recover his attorneys' fees and costs (which were over two million dollars) he "may be forced out of business totally and into bankruptcy.

27. In the spring of 2007 Joe Roggio also received a phone call from Christene Cohen during which he got the impression that Cohen had been physically abusing her. In her deposition, Christene Cohen recalled telling Roggio that her and Cohen's divorce would be "messy."

28. Cohen made another payment of $3,000 on or around February 15, 2007.

29. On March 16, 2007 the Superior Court hearing the motion for attorneys fees and costs in Cohen's litigation against the Port San Luis Harbor District ruled that neither party was entitled to receive its attorneys' fees. Del Mar learned of this decision shortly after it was filed.

30. On or around April 23, 2007 Cohen made a payment of $3,000 on the Note. Cohen has made no further payments on the Note.

31. After no monthly payment was received in May, 2007, Del Mar consulted its attorneys regarding the Cohens and the debt they owned under the Note. Del Mar also told

1  its attorneys that the payments made by the Cohens on the Note totaled $188,000. Because
2  of what Del Mar had learned of the Cohens' financial situation, and that even with the
3  $188,000 in payments the Cohens still owed in excess of $150,000, Del Mar's attorneys
4  recommended that the Vessel be arrested to protect Del Mar's security.

5      27.    On June 7, 2007, by ex parte application, Del Mar filed the Verified
6  Complaint in this case and supporting papers requesting the Court issue an warrant for the
7  arrest of the Vessel based on the Cohen's default under the Note for failure to make the
8  required monthly payments. The following day, June 8, 2008, the U.S. Marshal arrested the
9  Vessel in San Francisco, California under this Court's authority. The Vessel was
10 subsequently taken into custody by the substitute custodian, National Maritime Services, Inc.
11 and, after approximately two weeks, transferred to another custodian, SugarDock, LLC.

12     28.    Defendants timely answered the Complaint and counter-claimed for wrongful
13 arrest. The Vessel owner, PLFC, also filed a claim of interest and/or right in the Vessel.
14 Defendants subsequently moved to vacate the arrest. On August 17, 2007, after a hearing on
15 Defendants' motion pursuant to Supplemental Federal Rules for Certain Admiralty and
16 Maritime Claims Rule E(4) and finding Plaintiff had no probable cause to arrest the Vessel,
17 this Court ordered the Vessel released to Cohen to resume fishing operations.

18     29.    The *custodia legis* costs Del Mar incurred as a result of the arrest was
19 $15,125.22.

20     30.    As of December 31, 2007, the principal balance owing on the Note was
21 $128,749.69. Accrued interest on the principal was $49,207.70.

## II. PROPOSED CONCLUSIONS OF LAW

23     1.    Del Mar has a valid Preferred Ship Mortgage on the Vessel under 46 U.S.C. §
24 31321 *et seq.*

25     2.    The Note and Mortgage taken together are a fully integrated contract between
26 the parties and the final expression of their intentions regarding the loans made by Del Mar to
27 Cohen.

28     3.    Following the execution of the Note and Mortgage on October 31, 2003, there

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

have been no oral or written agreements or modifications affecting the terms set forth in those documents. To the extent the terms addressing interest in those documents are ambiguous, interest on any unpaid balance due under the Note accrues at 7%.

4. The original principal amount of the Note, $215,000, was the parties' low estimate of the amount of money Del Mar had advanced to Cohen for the anticipated Mexico Joint Venture and other personal loans to Cohen. Subsequent additions to the principal balance by Del Mar for debts owed by Cohen are not only consistent with the express terms of the Mortgage allowing for future advances to be secured by the Mortgage, but are also consistent with the course and dealings of the parties as evidenced by Cohen's requests to add such additional debts to his "balance."

5. Upon being told by Joe Cappuccio, Del Mar's President, that its bank was concerned about the large balance on the Note, in November 2005 Cohen presented a check for $175,000 to Cappuccio so Del Mar could pay down the Note's balance. This was a lump sum payment towards the principal amount due on the Note and, while it considerably reduced the amount of principal owed, it did not relieve the Cohens of their obligation under the Note to continue to make monthly payments. This conclusion is consistent with the parties' understanding that the lump sum payment was to "pay down the note" meaning the large balance on the Note that raised concerns with Del Mar's bank. It is also consistent with the letter Cohen sent to Del Mar over a year later at the end of January 2007 enclosing a $2,000 payment. In that letter Cohen assented to Del Mar's accounting of the principal owed under the Note which included the additional debts Del Mar added to the principal balance, and Cohen also agreed to start making monthly payments and did make two more payments in February and April 2007.

6. Because the last monthly payment the Cohens made on the Note was in April, 2007, and there was no payment in May 2007, the Defendants were in default under the terms of the Mortgage on June 7, 2007 and Del Mar had probable cause at that time to arrest the Vessel when it applied to the Court for a warrant.

7. While it may have been a better business practice for Del Mar to contact

Cohen prior to arresting the Vessel to inquire whether he was able to meet his monthly payment obligations going forward, in light of the express terms of the Note whereby Defendants waived any notice and what Del Mar had learned of his financial condition and the Cohens' actual default, Del Mar was under no legal obligation to do so. Therefore, Del Mar's failure to contact the Cohens prior to the arrest did not constitute bad faith, malice, or gross negligence.

8.  Although the Court found at the hearing on Defendants' Motion to Vacate the Arrest of the Vessel that Del Mar lacked probable cause to arrest the Vessel, that finding was expressly made with the specific caveat that it would not preclude Del Mar from proving at trial that Defendants were, in fact, in default at the time of the arrest.

9.  Because Del Mar had probable cause to arrest the Vessel, in doing so it acted without bad faith or malice. Del Mar's failure to include in its Complaint and ex parte papers the fact that Defendants had made $188,000 in payments to Del Mar, while not the best pleading practice, did not amount to gross negligence given Del Mar's accounting of the total amount owed by the Cohens and its reliance on the advice of their attorneys who had knowledge of the loan history. Therefore, the arrest was not wrongful. *Frontera Fruit Co., Inc. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937).

10. Del Mar did not arrest the Vessel in order to interfere with Defendants' prospective economic advantage. While Del Mar may have learned of an existing economic relationship Defendants had with a fish processor, there has been no evidence presented that Del Mar's intent in arresting the Vessel was to interfere with such a relationship. To the contrary, the Court concludes that Del Mar arrested the Vessel in good faith to protect the security it held for the debts of Defendant. Therefore, Del Mar did not intentionally or negligently interfere with Defendant's prospective economic advantage. *Della Penna v. Toyota Motor Sales,* (1995) 11 Cal.4th 376.

11. Cohen had only one 'account' with Del Mar, the balance he owed under the Note and Mortgage. When Cohen told Del Mar to add the additional debts he incurred after he signed the Note and Mortgage to his "balance" or "account", Del Mar properly added

those debts to the Note's balance. These subsequent debts included the amounts his sons owed Del Mar following the close of the Joint Venture, additional personal loans made to Cohen, and inventory Cohen kept but had not paid for.

12.  The Assignment of Joint Venture Interest was effective on October 22, 2004, however, the Joint Venture effectively would up at the end of September, 2004, with the Cohen sons' debts being transferred off of the Joint Venture's books and to Del Mar's books before the Assignment became effective. Therefore, any right to collect those debts did not rest in Joint Venture at the time of the Assignment and could not be assigned to Cohen.

13.  The failure of the Cohens to name Del Mar as a loss payee on the insurance policies covering the Vessel was an additional act of default also entitling Del Mar to foreclose under the express terms of the Mortgage. Mortgage, Art. I, ¶ 3.

14.  As Plaintiff has carried its burden at trial, it is entitled to attorneys fees and costs as the prevailing party as expressly set forth in the Note at page 2, ¶ 5.

15.  Judgment shall be entered in favor of Plaintiff in the amount of $180,563.47 in principal and interest owed, plus $15,125.22 in *custodia legis* costs.

16.  Pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the Local Admiralty Rules, Plaintiff is entitled to foreclose on the Mortgage by way of a judicial sale of the Vessel.

Dated: April 28, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: ____/s/____
Max L. Kelley