1

**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**

2

Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)

3

190 The Embarcadero
San Francisco, CA 94105

4

Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

5

6

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)

7

700 Oceangate, Suite 700
Long Beach, CA 90802

8

Telephone: (562) 216-2946
Facsimile: (562) 216-2960

9

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

10

11

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

14

15

DEL MAR SEAFOODS, INC.                    )    Case No.: CV 07-02952 WHA
                                          )
16

            Plaintiff,              )    **PLAINTIFF DEL MAR SEAFOODS,**
                                          )    **INC.'S TRIAL BRIEF**
17

    vs.                               )
                                          )
18

BARRY COHEN, CHRIS COHEN (aka            )
CHRISTENE COHEN), *in personam* and       )
19

F/V POINT LOMA, Official Number          )
515298, a 1968 steel-hulled, 126-gross ton, )
20

70.8- foot long fishing vessel, her engines, )
tackle, furniture, apparel, etc., *in rem*, and )
21

Does 1-10,                                )
                                          )    Final Pretrial Conf.:  May 5, 2008
22

            Defendants.             )    Time: 2:00 p.m.
                                          )
23

_____  )    Trial Date:    May 14, 2008
                                          )    Time:          7:30 a.m.
24

                                          )    Courtroom 9, 19th Floor
And Related Counterclaims                 )    Hon. William H. Alsup
25

_____  )

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

26

      Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil

27

Bench Trials before the Honorable William Alsup, pg. 2, ¶ 2(e), Plaintiff Del Mar Seafoods,

28

Inc. submits this Trial Brief.

PLAINTIFF'S TRIAL BRIEF                                    Case No.: CV 07-02952 WHA

## I.    INTRODUCTION

This lawsuit is the culmination of efforts by a reputable fishing company to recover on loans that it has made to the defendants Barry and Chris Cohen and their two sons over the course of several years.  There are some disputes over which of these loans are subject to a promissory note and preferred ship mortgage, and there are issues about how certain payments have been or should be applied.  But the Cohens have not disputed that they or their sons actually received the money from Del Mar and still owe, by their own admission in this case, at least $27,000 and by their earlier admission at least $130,000.

The Cohens have also asserted a cross-complaint by which they seek to recover for lost income that they allege would have been earned during the roughly two months that the vessel was under arrest (from June 8, 2007 to August 17, 2007).  Styled variously as causes of action for wrongful arrest or negligent or tortious interference with prospective economic advantage (PEA) the recovery sought is the same.  In order to prevail on the cause of action for wrongful arrest, the Cohens must prove that Del Mar's decision to arrest the vessel was motivated by bad faith or malice or was taken with "gross-negligence."  The evidence will show that Del Mar had good faith concerns about the Cohen's ability to pay the large amount of debt that they had incurred, and also that the Cohens had missed monthly payment obligations that they undertook to make both in the promissory note and in correspondence months before the arrest.  On the causes of action for interference with PEA, the Cohens cannot meet their burden of proof that the actions of Del Mar were taken with the *intent* to interfere or even with the knowledge that interference would likely result.  Of course, if Del Mar was correct, and the Cohens were in breach of the promissory note and mortgage, then Del Mar's arrest of the vessel was the exercise of a legal and contractual right that cannot be the basis for an award of damages under any cause of action arising from the arrest.

## II.    STATEMENT OF FACTS TO BE PROVEN AT TRIAL

### 1.  The Parties

Del Mar Seafoods, Inc. is a fish buyer/processor on the West Coast.  In the commercial fishing industry it is common practice for companies like Del Mar to loan money

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

PLAINTIFF'S TRIAL BRIEF

1   to fishermen as "advances" to pay for the cost of fuel, ice, maintenance and repairs and other

2   necessaries used by the fishermen and to keep those accounts on a running balance offset by

3   the value of the catch.  These loans are often secured by a preferred mortgage against the

4   vessel.

5       Barry Cohen has been involved in commercial fishing in California for the past 40

6   years, and for the past 10 years has been doing business with Del Mar. Barry Cohen is a

7   sophisticated businessman with multiple companies and joint ventures and more than thirty

8   years of business experience.  Over the past thirty years he has started three California

9   corporations and been part of four joint ventures.  He is also a sophisticated litigant, having

10   been involved in numerous lawsuits with, literally, millions of dollars in legal fees.  He is

11   currently suing his former attorneys for legal malpractice arising from his multi-year

12   litigation against the Port San Luis Harbor District.  From 2004 to 2006 he was employed by

13   Del Mar

14       Barry Cohen's wife, Chris Cohen is also a defendant in this action as she was also a

15   signatory on the Note and Mortgage and a partner in the F/V POINT LOMA Fishing

16   Company.  Chris Cohen was also once an employee of Del Mar Seafoods.

17       The F/V POINT LOMA is a 126-ton fishing vessel with a LOA of 70.8 feet.  The

18   vessel is now owned by the "Claimant" to the vessel, the F/V POINT LOMA FISHING

19   COMPANY, INC., a company set up by Barry and Chris Cohen to hold the fishing vessel.

20   The vessel is believed to be fishing out of San Francisco Bay participating primarily in the

21   groundfish fishery in the US EEZ.  Although the Court vacated the order for arrest, the vessel

22   is still a party to this action and is subject to the Court's jurisdiction by admission of Barry

23   Cohen and representation of his counsel.  If Del Mar prevails on its claims against the

24   Cohens and the vessel, the vessel itself, *in rem*, may be sold to pay for the value of any

25   judgment.

## 2.  Background on the Promissory Note and Mortgage

27       In 1999, Del Mar and Cohen formed the Avila Beach joint venture ("JV") for the

28   purpose of buying, processing, and selling fish from a site that Cohen had leased in Port San

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoodsV2504

1    Luis in Avila Beach, California. During the course of the JV, between 1999 and 2003, Del

2    Mar advanced Cohen money for a variety of purposes, including improvements to the F/V

3    POINT LOMA to prepare it for fishing in Mexico in anticipation of a joint venture between

4    Cohen and Del Mar, personal loans to Barry Cohen, and other "fishing loans." Del Mar never

5    obtained a promissory note or security for those debts. In 2003, as the sums grew, the

6    Cohens agreed to collateralize the loans with a promissory note and preferred ship mortgage

7    on the F/V POINT LOMA and its appurtenances. Copies of the Note and Mortgage are

8    stipulated for admission as Trial Exhibits (TE) 7 and 8 respectively.

9        When the loan was first documented, the principal balance was $215,000. Del Mar

10    will present evidence that this was a low estimate or guess of what Cohen owed Del Mar at

11    the inception of the Note and Mortgage. The principal balance was expected to change,

12    however, as additional sums were loaned or added to the balance by agreement. The

13    Mortgage therefore provides:

14        **FUTURE ADVANCES**. This mortgage is executed for the purpose of
         securing not only the payment of the above described note but also *to secure*
15       *all future advances made by the holder of said note to the mortgagor*; and
         said mortgage shall remain in full force and effect *to secure all future*
16       *advances* and all renewals or extensions of the above described note.

17    Mortgage, TE 8, Art. IX. (emphasis added)

18        Several additional debts were added to the original principal over time. These

19    included advances made directly to the Cohens ($33,056.69), loans made by Del Mar to the

20    Cohen's son Michael ($13,920.00), their son Leonard dba Olde Port Inn ($18,069.10) and for

21    inventory ($10,383.24). These additional amounts caused the principal balance to increase to

22    $290,429.43. The addition of each of these items to the promissory note was specifically

23    agreed to by Barry Cohen who instructed Del Mar to add them to his "balance." Each of his

24    sons has admitted in their depositions in this case that Barry Cohen told them that he had

25    taken responsibility for paying off their debts to Del Mar.

26        The note required monthly payments of the greater of $3,000.00 or 15% of the gross

27    landing receipts for each and every landing of seafood product made by the F/V POINT

28    LOMA. TE 7, page 1, first paragraph.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-4-

Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

**3.  Payments on the Note: The Default**

Since its inception, the Cohens have made only five payments on the note totaling $188,000.  These payments were made as follows:

- December 22, 2004: $5,000
- November 10, 2005: $175,000
- January 30, 2007: $2,000
- February 15, 2007: $3,000
- April 23, 2007: $3,000

Total: $188,000.

With this admitted history of payments, the Cohens have further admitted that they owe at least an additional $27,000 on the note and mortgage and that they have not made any payments since April, 2007.  They are therefore in default unless there has been some oral modification of the promissory note and mortgage relieving them of their monthly payment obligations.

In its order granting in part and denying in part Del Mar's motion for partial summary judgment, the Court noted that much of this case turns on the treatment given by the parties to the $175,000 payment.  Del Mar contends that the payment was made to pay down principal while the Cohens are contending that the payment was to apply to future monthly payment obligations such that no payment was due until February, 2009.  If Del Mar is correct, then the defendants should be found to be in default and the total amount due under the note and mortgage is due and payable.  Del Mar believes that the evidence at trial will be clear and convincing that there was never an agreement to apply the $175,000 toward future monthly payments.

The evidence on this point is well set forth in the trial court's order on the recent Summary Judgment motion and therefore will not be re-addressed in detail here.  From Del Mar's perspective, the most relevant testimony is Barry Cohen's admission during his deposition that the $175,000 payment was specifically made to "pay down that note that much."  Barry Cohen testified that when he personally delivered the $175,000 check to Joe

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafood/2504

Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

Cappuccio on or around November 10, 2005 the following exchange took place:

> A. I gave it [the check] to Joe Cappuccio. He looked at it and said
> – I said, "Here's the check that I said I would give." He said,
> "Thank you very much." And I said, "I'll pay you the rest as
> soon as I can." And he said, "Well, I'm not worried about"
> "I'm not concerned" or "not worried about it; it's such a small
> amount now."

Barry testified at his deposition that this was "the whole conversation." The Court will note that there is no reference in this "whole conversation" to having the payment applied against future monthly payment obligations.

In December, 2006 after Del Mar had received no further payments from the Cohens for more than a year, Joe Roggio called Barry Cohen on his cell phone to discuss his making further monthly payments on the Note. Barry didn't answer, so Roggio left him a voicemail message. On January 30, 2007 (a little more than a month after that phone call), Barry Cohen made a payment of $2,000. (TE 34.). The payment on January 30, 2007 was sent together with a note from Barry Cohen reading:

> Joe,
> Please credit my account. With this payment, if your analysis
> was correct, the new balance should be $139,749.79.
> I will try to send you at least $2,000/month, sometimes $3,000.
> I'm sick right now and if I try to talk I start coughing, so
> instead, you get this note.
> I'm still unemployed, but this gives me a chance to help
> Michael make Olde Port better.
> I hope things are going good for you and your family. Please
> give Yvonne my regards. Too bad our families never got the
> chance to become better friends. Oh, well things usually
> happen for a reason. Well, take care of yourself.
> Barry

(TE 40).

The Court's recent order on the motion for partial summary judgment properly concludes that this note is inconsistent with the Cohen's entire theory of the case. This note, and the fact of payments made by Barry Cohen in February and April, 2007 are strong evidence that there was no oral agreement reached relieving Barry Cohen of the obligation to make monthly payments until February 2009 and that the $175,000 payment was made to "pay down that note that much" and not to act as a pre-payment.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

PLAINTIFF'S TRIAL BRIEF                    Case No.: CV 07-02952 WHA

1    Based on the evidence to be presented at trial, the Court will be able to find that there

2    was never an oral modification of the promissory note or mortgage relieving the Cohens of

3    the obligation to make monthly payments.  Since the lack of payments in May and June 2007

4    is undisputed, the Court should find that the Cohens were in default under the terms of the

5    promissory note and that the entire balance is now due.

6    **4.  *In Rem* Action Against the Vessel**

7    The preferred ship mortgage provides Del Mar with extensive rights in the event of a

8    default.  Under the mortgage in the event of an act of default Del Mar is entitled to: a) declare

9    the principal of the note and all accrued interest immediately due and payable; b) retake the

10    vessel with or  "without legal process" at any time wherever it is found, and without being

11    responsible for loss or damage; and c) sell the vessel in a public or private sale.

12    Del Mar's decision to arrest the vessel in June, 2007 was consistent with its rights

13    under the mortgage.  Although Del Mar could have retaken the vessel without judicial

14    process, Del Mar chose instead to proceed with an action to arrest the vessel through this

15    Court and then only after receiving information that raised legitimate concerns about the

16    Cohens' ability to repay the large debt that they had accumulated to Del Mar.  In the months

17    immediately before the arrest Del Mar received news that:

18    • Barry Cohen was sick and unemployed and "trying" to make payments;

19    • Barry Cohen was potentially responsible for over two million dollars in attorneys

20    fees in other litigation that he was pursuing and that, by his own admission, he

21    "may be forced out of business totally and into bankruptcy"  if the trial Court in

22    that case did not award him his fees;

23    • On March 16, 2007 the Superior Court hearing the motion for attorneys fees and

24    costs in the Cohen's litigation against the Port San Luis Harbor District ruled that

25    neither party was entitled to receive its attorneys' fees;

26    • Barry and Chris Cohen were going through a divorce that would likely be

27    "messy."

28    • The Cohens despite making a few payments, started to again miss payments in

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Sea/feezib/2504

Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

1  March, May and June, 2007.

2  Del Mar's decision to proceed with an *in rem* action against the vessel was taken to

3  secure the asset which was in default under the terms of the Note and Mortgage. On June 7,

4  2007, the verified complaint was filed alleging that the Cohens were in default as May 1,

5  2007. The vessel was subsequently arrested by the U.S. Marshal who turned custody over to

6  the court-appointed substitute custodian, National Maritime Services ("NMS"). On or about

7  June 21, 2007, NMS moved the Vessel to Point Richmond and turned custody over to Sugar

8  Dock, LLC. The vessel was released from arrest on August 17, 2007. It was therefore under

9  arrest for a total of 70 days.

10  **5.    Counterclaim by the Cohens**

11  The Cohens have counterclaimed against Del Mar alleging the wrongful arrest of the

12  vessel, and intentional and/or negligent interference with prospective economic advantage.

13  As noted above, the evidence shows that Del Mar had several legitimate bases for concern

14  regarding the financial ability of the Cohens meet their monthly payment obligations. Del

15  Mar also acted on the advice of experienced maritime counsel in proceeding with the arrest.

16  In addition, the Court should note that the parties had agreed that Del Mar could retake the

17  vessel without legal process in the case of a default. The fact that Del Mar chose to proceed

18  through the Courts instead of resorting to a self-help remedy is itself evidence that Del Mar

19  was not acting in "bad faith" or with malice or gross-negligence.

20  **III.    LIABILITY ANALYSIS**

21  A.    Del Mar's Action for Breach of Promissory Note and Preferred Mortgage:

22  Del Mar has the initial burden of proof to establish the facts of the promissory note

23  and mortgage, the payment terms and balance, and the act or acts of default by the Cohens. If

24  Del Mar meets this burden of proof, then Del Mar should receive a verdict in its favor on its

25  action for breach of the promissory note and mortgage, and the Court should foreclose the

26  mortgage against the vessel. If the Cohens are not able to immediately pay the judgment, the

27  Court should order the re-arrest of the F/V POINT LOMA and its sale to satisfy the

28  promissory note and mortgage.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

1    Normal California rules of contract interpretation apply. As set forth above and in the
2    trial exhibits, the terms of the Promissory Note and Preferred Mortgage are clear and
3    unequivocal. They require monthly payments of $3,000 or 15% of the gross landing receipts
4    for the vessel. They also allow additional debts to be added to the balance. Interest accrues
5    at 7.0% per annum. The evidence at trial will establish that the Cohens agreed to add
6    additional sums to their balance and then repeatedly failed to meet their payment obligations.

7    As of the date of the vessel's arrest, the Cohens owed a balance of $100,023.50 in
8    principal plus interest of $45,259.66 for a total balance due under the note of $145,283.16.
9    The Court should find that the Cohens are in default for non-payment of the debt and should
10   foreclose on the Preferred Mortgage.

11   The Cohens' allege in defense that they entered into an oral modification of the
12   contract terms requiring monthly payments. Written contracts can be modified by an oral
13   agreement that is either "executed" or supported by new consideration. Cal. Civ. Code §
14   1698. The problem with the Cohens' argument is that for either of these conditions to occur
15   there must first be an *oral modification*. Here, again, the Cohens have not provided any
16   evidence that a particular conversation took place at a particular time by which the parties
17   reached a meeting of the minds to modify the contract terms. The "whole conversation"
18   Cohen had with Joe Cappuccio simply does not establish an agreement in the first instance.
19   As a result, C.C.P. §§1698 (b) and (c) do not apply.

20   Defendants also argue that because Del Mar never sent any notice to Defendants that
21   they were late on any payments, the contract was somehow altered. This argument is
22   contrary to the provisions of C.C.P. §1698 which sets forth the limited ways in which a
23   written contract may be modified. Silence is not one of the allowed ways. Moreover, the
24   promissory note expressly provides that "Maker hereby waivers (a) presentment, demand,
25   protest, notice of dishonor and/or protest, and notice of non-payment." TE 7, ¶ 6 ("Waiver of
26   Rights by Maker"). Plaintiff has never been required to notify defendants that a payment was
27   past due. The Cohens have not even suggested that this term was ever discussed or "orally
28   modified."

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

199 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafood/v2504

PLAINTIFF'S TRIAL BRIEF

1    The Cohens' contention that the written contract was orally modified to allow the

2    lump sum pre-payment is also contradicted by both Barry Cohen's conduct and his

3    subsequent writings. The Cohens give no explanation for why payments were made in

4    January, February and April 2007 if, as they contend, no payments were actually due. They

5    also fail to explain why Barry Cohen said in his note to Del Mar dated January 30, 2007 that

6    he would try to make the continuing monthly payments.

7    Finally, Del Mar's position on the proper application of the $175,000 payment is also

8    supported by California Civil Code Section 1479 which provides that unless the debtor

9    (Cohen) manifests his intention or desire as to how his payments are to be applied to his

10    debts, the creditor (Del Mar) "may apply it toward the extinction of *any obligation,*

11    *performance of which was due to him from the debtor at the time of such performance . . . .*"

12    (emphasis added). Unless the Cohens present new evidence that they directed Del Mar how

13    to apply the payments, then Del Mar was entitled to apply them in any way it chose

14    consistent with the promissory note which, in this case, was to accrued interest and principal

15    leaving the balance due with all monthly payment obligations still in force.

16    B.    Cross-Complaint for Wrongful Arrest:

17    The Cohens have admitted that Del Mar has a valid maritime lien against the vessel,

18    and the sole issue on the arrest of the vessel is therefore whether there was an act of default

19    giving rise to the right to foreclose. If there was, then the Cohens' action for wrongful arrest

20    fails in its entirety.

21    The federal maritime law provides that the arrest must be allowed if there is

22    "probable cause" to arrest with vessel. Courts throughout the country, including in the Ninth

23    Circuit, have held that this burden is met by showing that the claimant has a valid maritime

24    lien. *Greger Leasing Corp. v. Barge PT. Portrero*, 2006 U.S. Dist. LEXIS 18863, *4 (N.D.

25    Cal. 2006) (holding that "Plaintiff bears the burden of showing that 'probable cause' existed

26    to arrest the vessel, which 'translates roughly to requiring that plaintiff show entitlement to a

27    maritime lien,'"); *Newport News Shipbldg. and Dry Dock Co. v. S.S. Independence*, 872

28    F.Supp. 262, 265 (E.D. Va. 1994). The post arrest hearing "is not intended to resolve

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

-10-                    Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

1    definitively the dispute between the parties, but only to make a preliminary determination

2    whether there were reasonable grounds for issuing the arrest warrant." Quoting *Lion De Mer*

3    *S.A. v. M/V Loretta D*m 1998 U.S. Dist. LEXIS 10182, No. Civ. L-98-921, 1998 WL 307077

4    at *2 (D. Md. Apr. 3, 1998).

5         Del Mar recognizes that the trial court initially ordered the release of the vessel from

6    arrest due to the failure of Del Mar to disclose the payment of $175,000 in its initial

7    pleadings and because there were allegations made by the Cohens that there was an

8    agreement by the parties to apply the $175,000 toward future monthly payment obligations

9    such that the Cohens were not in default. These issues were sufficient for the Court to issue

10    an order on August 16, 2007 vacating the arrest of the vessel. That order, however, also

11    specifically states that: "This order is without prejudice to plaintiff proving its case at trial or

12    on summary judgment." In a subsequent order denying a motion for stay, the Court further

13    held that the August 16 order vacating the arrest based on a lack of probable cause "was not a

14    conclusive factual finding. Plaintiff's arguments may very well carry the day upon final

15    resolution of his action." Del Mar is confident that after hearing all of the evidence, the Court

16    will find that there was no agreement to apply the $175,000 payment toward future monthly

17    payment obligations and that the Cohens were therefore in default. This evidence will

18    support a finding that there was in fact probable cause for the arrest.

19         Even if the Court concludes after trial that there was not probable cause for the arrest,

20    the Cohens have the burden of proof to establish that in arresting the vessel Del Mar acted

21    with bad faith, malice or gross-negligence. *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297

22    (5th Cir. 1937). The evidence at trial will not support a finding of bad faith, malice or gross-

23    negligence on the part of Del Mar.

24         The Court has already received briefing in the summary judgment motion on the

25    causes of action for interference with prospective economic advantage. Again, the evidence

26    will not be re-summarized here as the Court is well familiar with it. Suffice it to say that Del

27    Mar believes that the evidence at trial will establish that Del Mar did not know of nor intend

28    to interfere with any of the Cohens' contracts (if any) with third parties nor did it believe that

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood\2384

PLAINTIFF'S TRIAL BRIEF

1    such interference was substantially likely to occur. The evidence at trial will show that Del

2    Mar believed that the Cohens would take the typical approach of putting up a bond or

3    undertaking to release the vessel and thereby provide security for Del Mar's claims.

4    **IV.    DAMAGES**

5        Del Mar's damages are the amount due under the promissory note and mortgage

6    including all accrued interest. This amount as of trial is $180,563.47. In addition, Del Mar is

7    entitled to recover the *custodial legis* costs incurred while the vessel was under arrest. These

8    costs are $15,125.22. The promissory note and mortgage also provide for recovery of

9    attorneys fees. The normal practice is for the attorneys' fees to be subject to a post trial

10   prove-up by the prevailing party, and Del Mar understands that this issue will be addressed at

11   the pre-trial conference.

12       Based on the above, Del Mar will ask the Court for a judgment in its favor of

13   $195,688.69 together with attorneys' fees and costs.

14       The Cohens' cross-complaint alleges that the Cohens and the F/V POINT LOMA

15   Fishing Company sustained lost income as a result of the vessel's arrest. The evidence at

16   trial will establish that when all of the costs of operation are included (insurance, dockage,

17   maintenance, crew expenses, fuel, ice, license fees, etc) the Cohens claims for lost profits are

18   entirely speculative. The facts are that they were losing money on the operation of the Point

19   Loma (or so they claimed on their taxes), or alternatively that the profits were very small. In

20   a "best case" scenario based on historical fishing records for the vessel, the Cohens lost

21   approximately $9,000 during the time that the vessel was under arrest.

22   **III.    CONCLUSION**

23       The Cohens owe Del Mar a substantial sum of money. At the very least they owe by

24   their own admission $27,000 and by an earlier admission over $130,000, exclusive of

25   interest. The Court has properly noted that the outcome of the case will depend in large

26   measure on the treatment given to the one time payment of $175,000. If, as Mr. Cohen

27   admits and Del Mar agrees, the payment was made to "pay down that note by that much"

28   then the Cohens were not relieved of their obligation to make monthly payments, and they

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2501

-12-                                    Case No.: CV 07-02952 WHA

PLAINTIFF'S TRIAL BRIEF

1    should be found to be in default.  Such a holding resolves both the complaint and the cross-

2    complaint for wrongful arrest.

3        Only if the Court finds that there was an oral agreement to modify the payment terms

4    should the Court entertain the cross-complaint for wrongful arrest.  Del Mar contends that

5    there is no evidence of an oral agreement to modify the payment terms.  In addition, even if

6    the Court reaches the issue of wrongful arrest, the evidence at trial will establish that Del Mar

7    did not act with malice, bad faith or gross-negligence in seeking to foreclose its maritime lien

8    against the F/V POINT LOMA.

9        Judgment should be entered in favor of Del Mar and against Barry and Christine

10   Cohen, the F/V POINT LOMA and the F/V POINT LOMA FISHING COMPANY, INC.

11

12

13   Dated: April 28, 2008                      COX, WOOTTON, GRIFFIN,
                                                HANSEN & POULOS, LLP
14                                              Attorneys for Plaintiff
                                                DEL MAR SEAFOODS, INC.

15

16

17                                    By: _____/s/_____
                                                Gregory W. Poulos
18

19

20

21

22

23

24

25

26

27

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2501

PLAINTIFF'S TRIAL BRIEF                                     Case No.: CV 07-02952 WHA