1   **COX, WOOTTON, GRIFFIN,**
    **HANSEN & POULOS LLP**
2   Gregory W. Poulos  (SBN 131428)
    Max L. Kelley (SBN 205943)
3   190 The Embarcadero
    San Francisco, CA  94105
4   Telephone No.: 415-438-4600
    Facsimile No.:  415-438-4601
5
    **LAW OFFICES OF RICHARD P. WAGNER**
6   Richard P. Wagner (SBN 166792)
    700 Oceangate, Suite 700
7   Long Beach, CA 90802
    Telephone: (562) 216-2946
8   Facsimile:  (562) 216-2960
9   Attorneys for Plaintiff
    DEL MAR SEAFOODS, INC.
10

11                   UNITED STATES DISTRICT COURT
12
               NORTHERN DISTRICT OF CALIFORNIA
13                  SAN FRANCISCO DIVISION

14
    DEL MAR SEAFOODS, INC.              )   Case No.: CV 07-02952 WHA
15                                      )
                   Plaintiff,           )   **PLAINTIFF'S RULE 26(a)(3)**
16                                      )   **PRETRIAL DISCLOSURES**
          vs.                           )
17                                      )
    BARRY COHEN, CHRIS COHEN (aka       )
18  CHRISTENE COHEN), *in personam* and )
    F/V POINT LOMA, Official Number     )
19  515298, a 1968 steel-hulled, 126-gross ton, )
    70.8- foot long fishing vessel, her engines, )
20  tackle, furniture, apparel, etc., *in rem,* and )
    Does 1-10,                          )
21                                      )
                   Defendants.          )
22                                      )
                                        )
23  _____    )
                                        )   Final Pretrial Conference: May 5, 2008
24  And Related Counterclaims           )   TRIAL: May 14, 2008
                                        )
25

26       Plaintiff Del Mar Seafoods, Inc. submits the following pretrial disclosures Pursuant to

27  Rule 26(a)(3):

28

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods\0204

I.     **The name, address and phone number of each witness:**

1. Joe Cappuccio, 331 Ford Street, Watsonville, CA 95076, Tel: (831)763-3003.

2. Joe Roggio, 331 Ford Street, Watsonville, CA 95076, Tel: (831)763-3003.

3. Harriet Shields, 200 Dolliver Street, Pismo Beach, CA, 93449, Tel: (805) 773-5405.

4. Dean Smith, 1813 Marsha Road, San Luis Obispo, CA, Tel: (805) 547-1040.

5. Barry Cohen, Santa Maria, California.

6. Christene Cohen, Scottsdale, AZ.

7. Leonard Cohen, Olde Port Inn Restaurant, Pier 3, Port San Luis Pier, Avila Beach, CA 93424 (Tel.: 805-595-2515).

8. Michael Cohen, Olde Port Inn Restaurant, Pier 3, Port San Luis Pier, Avila Beach, CA 93424 (Tel.: 805-595-2515).

9. David Cantrell, 519 Arroyo Grande, California;

II.     **The designation of those witnesses whose testimony the party expects to present by deposition**

Del Mar may call the following witnesses by deposition:

1. Leonard Cohen;

2. Michael Cohen;

3. David Cantrell.

III.     **Identification of each document or other Exhibit expected to be offered at trial:**

| No. | Description | Bates Range | Date Ident. | Date Admt. | Limitations |
|-----|-------------|-------------|-------------|------------|-------------|
| 1. | Color photograph of the F/V POINT LOMA | DMSI 0065 | | | |
| 2. | Color photograph of the F/V POINT LOMA | DMSI 0067 | | | |

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO SAN FRANCISCO, CA 94105 TEL 415-438-4600 FAX 415-438-4601

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

Case No.: CV 07-02952 WHA

| | | | | | |
|---|---|---|---|---|---|
| 3. | F/V POINT LOMA U.S.C.G. Certificate of Documentation | COHEN 00001 | | | |
| 4. | U.S. Groundfish Permit | COHEN 00002 | | | |
| 5. | F/V POINT LOMA Abstract of Title | DMSI 0057-0062 | | | |
| 6. | F/V POINT LOMA Bill of Sale | DMSI 0063-0064 | | | |
| 7. | Promissory Note | DMSI 0098-0100 | | | |
| 8. | First Preferred Mortgage. | DMSI 0101-0110 | | | |
| 9. | Cantrell Memorandum | DMSI 0235-0247 | | | |
| 10. | Asset balance sheets:, 10/31/03, 12/31/03 | DMSI 0003-0004 | | | |
| 11. | Fax from D. Smith to J. Roggio: Asset Balance Sheet 10/31/03 and Fisherman Advances ledger entries | DMSI 0002, 0008-0013 | | | |
| 12. | Del Mar Balance Sheet (same as 0002 but w/o writing) | DMSI 0176 | | | |
| 13. | Cohen cancelled checks | DMSI 0129-0171 | | | |
| 14. | Journal entry log 12/03 | DMSI 0178 | | | |
| 15. | Asset Balance Sheet 1/31/04 | DMSI 0179 | | | |
| 16. | Asset Balance Sheet 3/31/04 | DMSI 0181 | | | |
| 17. | Asset Balance Sheet 5/31/04 | DMSI 0183 | | | |
| 18. | Accounts Payable Trial Balance 10/22/04 | DMSI 0005 | | | |
| 19. | General Ledger Detail Report 10/22/04 | DMSI 0189 | | | |

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafood\2391

Case No.: CV 07-02952 WHA

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

| | | | | | |
|---|---|---|---|---|---|
| 20. | Accounts Payable Aged Invoice Report 10/21/04 | DMSI 0190-0192 | | | |
| 21. | Accounts Payable Trial Balance 10/22/04 | DMSI 0193 | | | |
| 22. | Accounts Payable Trial Balance 12/31/04 | DMSI 0007 | | | |
| 23. | Accounts Receivable Trial Balance 12/31/04 | DMSI 0006 | | | |
| 24. | Olde Port Fisheries Inventory records 10/04 | DMSI 0014-0018 | | | |
| 25. | 12/22/04 Cohen check ($5,000) | COHEN 00004 | | | |
| 26. | Del Mar deposit slip 6/24/05 | DMSI 0270 | | | |
| 27. | Olde Port Fisheries check no. 1158 | DMSI 0271 | | | |
| 28. | 11/9/05 Cohen check ($175,000) | COHEN 00005 | | | |
| 29. | Olde Port Fisheries Account Inquiry | DMSI 0195 | | | |
| 30. | Del Mar credit memo: Olde Port Fisheries (Barry Cohen) | DMSI 0196 | | | |
| 31. | Del Mar invoices to Olde Port Fisheries | DMSI 0197-0203 | | | |
| 32. | F/V POINT LOMA Account Inquiry | DMSI 0194 | | | |
| 33. | 1/30/07 Cohen check ($2,000) | COHEN 00007 | | | |
| 34. | 2/15/07 Cohen check ($3,000) | COHEN 00006 | | | |
| 35. | 4/23/07 Cohen check ($3,000) | COHEN 00008 | | | |
| 36. | 11/05 Schedule of Payments | COHEN 00009 | | | |

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMar/Seafood/2501

Case No.: CV 07-02952 WHA

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

| | | | | | |
|---|---|---|---|---|---|
| 37. | 4/30/07 Schedule of Payments | DMSI 0111 | | | |
| 38. | 6/27/07 Schedule of Payments | DMSI 0001 | | | |
| 39. | 1/30/07 Cohen correspondence to Del Mar | DMSI 0078 | | | |
| 40. | Insurance policies covering the F/V POINT LOMA | COHEN 752-763 | | | |
| 41. | U.S. Marshal final invoice | DMSI 0272 | | | |
| 42. | Nat. Maritime Svcs. invoice | DMSI 0079 | | | |
| 43. | SugarDock LLC invoices | DMSI 0080-0084 | | | |
| 44. | Invoices for attorneys fees | *discuss at pretrial conference | | | |
| 45. | 12/15/05 Cappuccio Assignment | DMSI 0273 | | | |
| 46. | 10/22/04 JV Assignment | COHEN 00014-00015 | | | |
| 47. | Order Denying Atty. Fees | DMSI 0274-0280 | | | |
| 48. | 1/21/07 Cohen Declaration | DMSI 0281-0295 | | | |
| 49. | Cohen tax records 1999-2001 | DMSI 0054-0056 | | | |
| 50. | Cohen tax records 2004-2005 | COHEN 927-934 | | | |
| 51. | F/V POINT LOMA monthly trip revenue | COHEN 00676-00677 | | | |
| 52. | F/V POINT LOMA trip breakdown | COHEN 00683-00684 | | | |
| 53. | Del Mar Income Statement summary 1999-2004 | DMSI 0019-0020 | | | |
| 54. | Olde Port Fisheries Income Statement 9/30/04 | DMSI 0021-0023 | | | |

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO SAN FRANCISCO, CA 94105 TEL 415-438-4600 FAX 415-438-4601

DelMarSeafoodw2504

Case No.: CV 07-02952 WHA

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

| | | | | | |
|---|---|---|---|---|---|
| 55. | Olde Port Fisheries Balance Sheets 9/30/04 | DMSI 0024-0025 | | | |
| 56. | Olde Port Division, Operations spreadsheet 2004 | DMSI 0026-0027 | | | |
| 57. | Olde Port Fisheries Income Statement 12/31/03 | DMSI 0028-0030 | | | |
| 58. | Olde Port Fisheries Balance Sheets 12/31/03 | DMSI 0031-0032 | | | |
| 59. | Olde Port Fisheries Income Statement 12/31/02 | DMSI 0033-0036 | | | |
| 60. | Olde Port Fisheries Balance Sheets 12/31/02 | DMSI 0037-0038 | | | |
| 61. | Olde Port Fisheries Income Statement 12/31/01 | DMSI 0039-0041 | | | |
| 62. | Olde Port Fisheries Balance Sheets 12/31/01 | DMSI 0042-0043 | | | |
| 63. | Olde Port Fisheries Income Statement 12/31/00 | DMSI 0044-0046 | | | |
| 64. | Olde Port Fisheries Balance Sheets 12/31/00 | DMSI 0047-0048 | | | |
| 65. | Olde Port Fisheries Income Statement 12/31/99 | DMSI 0049-0051 | | | |
| 66. | Olde Port Fisheries Balance Sheets 12/31/99 | DMSI 0052-0053 | | | |
| 67. | Olde Port Fisheries Balance Sheet 7/31/03 | DMSI 0172 | | | |
| 68. | Olde Port Fisheries Balance Sheet 6/30/03 | DMSI 0173 | | | |
| 69. | Olde Port Fisheries Balance Sheet 8/31/03 | DMSI 0174 | | | |
| 70. | Olde Port Fisheries Balance Sheet 9/30/03 | DMSI 0175 | | | |
| 71. | Olde Port Fisheries Balance Sheet 11/30/03 | DMSI 0177 | | | |
| 72. | Olde Port Fisheries Balance Sheet 4/39/03 | DMSI 0182 | | | |
| 73. | Olde Port Fisheries Balance Sheet 6/30/03 | DMSI 0184 | | | |

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DxMxxSeafoods/2508

Case No.: CV 07-02952 WHA

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

| | | | | | |
|---|---|---|---|---|---|
| 74. | Olde Port Fisheries Balance Sheet 7/31/04 | DMSI 0185 | | | |
| 75. | Olde Port Fisheries Balance Sheet 8/31/04 | DMSI 0186 | | | |
| 76. | Olde Port Fisheries Balance Sheet 9/30/04 | DMSI 0187 | | | |
| 77. | Del Mar Journal Entry 10/25/04 | DSMI 0188 | | | |

Plaintiff reserves its rights to include evidence not listed in this disclosure to be offered at trial solely for the purpose of impeachment.

Dated: April 21, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: _____
Max L. Kelley

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Case No.: CV 07-02952 WHA

PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES

```
6/28/05 14:28                    DEL MAR Seafoods, Inc.                        Joe Roggio
2225552                          Deposit Slip 45407
                                 Wells Fargo - Checking                            Page

    CHECK #    DATE        DESCRIPTION                                   AMOUNT

     12996     06/24/05    American - Olde Port Beg Inv.             1,474.75
    028722     06/24/05    AMERICAN FISH                            27,253.00
    042201     06/24/05    FACCIOLA MEAT CO.                           125.00
    056566     06/24/05    PACIFIC FRESH-LA                           168.00
    056556     06/24/05    PACIFIC SEAFOODS - CL                   27,290.00

    TOTAL NUMBER OF CHECKS = 5                                     36,344.75
```

DMSI 0270



DMSI 0271

**PROCESS RECEIPT AND RETURN**
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

U.S. Department of Justice
United States Marshals Service

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| DEL MAR SEAFOODS, INC. | C-07-02952 WHA |
| DEFENDANT | TYPE OF PROCESS |
| BARRY COHEN, CHRIS COHEN, F/V POINT LOMA | VESSEL ARREST |

| SERVE | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| ➤ | F/V POINT LOMA |
| AT | ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code) |
| | Pier 45 (foot of HYDE ST.) San Francisco |

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

| | |
|---|---|
| Max L. Kelley<br>COX, WOOTTON, GRIFFIN, HANSEN & POULOS<br>190 The Embarcadero<br>San Francisco, CA 94105 | Number of process to be served with this Form - 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Location: Pier 45          Length: 71 ft.          Substitute Custodian:
Name: POINT LOMA                                   Adam Dambriackas
Official #: 515298          (949) 375-1409 cell

| Signature of Attorney or other Originator requesting service on behalf of: | ☐ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| *Cox L. Kelley* | | 415 438-4600 | Jun. 1, 2007 |

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated.<br>(Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 | No. 11 | No. 11 | | 6/1/07 |

I hereby certify and return that I ☒ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (complete only if different than shown above) | Date of Service | Time | am / pm |
| | 06/01/07 | 4:30 | pm |
| | Signature of U.S. Marshal or Deputy |
| | *Keller* |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|
| 270.00 | 4,869.12 | | 934.72 | 5,000.00 | | $4,065.28 |

REMARKS:          ICEPX 3hrs

DMSI 0272



**PACKERS OF:**

TELEPHONE: (831) 763-3000
FAX: (831) 763-2444

DEL MAR SEAFOODS, INC.    331 Ford Street Watsonville, CA 95076

*Processors and Distributors of Monterey Bay Squid*

December 15, 2005

Dear Barry:

By this letter, Del Mar Seafoods, Inc. ("Del Mar") acknowledges that you have full authority to recover in an action brought in your own name all damages suffered by the wholesale/processing fish business which you formerly operated on the Harford Pier in Avila Beach pursuant to the oral joint venture agreement between yourself and Del Mar. You may share this letter setting forth Del Mar's position on this matter with any concerned party.

Sincerely,

Del Mar Seafoods, Inc.

By: _____
Joseph Cappuccio
It's: President



EXHIBIT 463
Deponent B. Cohen
Date 12/22/05

DMSI 0273

03/16/2007 FRI 10:49 [TX/RX NO 9024]



FILED
SAN LUIS OBISPO
SUPERIOR COURT

MAR 1 6 2007

COURT EXECUTIVE OFFICER

BY _____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

BARRY A. COHEN; LEONARD A.
COHEN; OLDE PORT INN, INC., and
OLDE PORT FISHERIES, INC.,

                Plaintiffs,

v.

PORT SAN LUIS HARBOR DISTRICT;
and DOES 1-50, inclusive,

                Defendants.

AND RELATED CROSS-ACTION

Case No.: CV040897

RULING ON THE PARTIES' MOTIONS
FOR ATTORNEYS' FEES AND COSTS
AND THE RESPECTIVE PARTIES'
MOTIONS TO TAX COSTS (AND
PLAINTIFFS' MOTION TO STRIKE
DISTRICT'S MEMORANDUM OF
COSTS)

      Defendants request that the court take judicial notice of certain trial court rulings and declarations of counsel filed in other local cases. The requests are denied because such documents are not relevant to the court's decision on the pending matters. Both parties object to certain declarations of counsel and various parties or other persons. Those objections are sustained as those declarations are not relevant to the issues presented herein.

      The threshold question presented is whether any party actually prevailed in this lawsuit. As they did throughout the pendency of this case, both sides vigorously

1

DMSI 0274

03/16/2007 FRI 10:49 [TX/RX NO 9024]

1   contend directly opposite positions.

2        At the outset, Plaintiffs contend that, at least, Barry Cohen should be awarded

3   costs as the prevailing party because he obtained a net monetary award. (*Pirkig v.*

4   *Dennis* (1989) 215 Cal.App.3rd 1560, 1566). The Plaintiffs' position is simply not

5   supported by the judgment. It is clear that Barry Cohen was awarded $50,000 but the

6   Defendant also was awarded approximately $45,000 in back rent and additional money

7   in future rents. Barry Cohen argues that he should be credited with the court-imposed

8   fifty percent rent reduction as a part of his successful litigation. In order to recognize

9   such an argument, the court would have to ignore the actual dollars encompassed in the

10  judgment which by its terms includes future rent to the date of the lease termination.

11  This case was not a clear victory in this respect for Barry Cohen such that the asserted

12  net $5,000 recovery would require his designation as the prevailing party on the 1994

13  lease. Moreover, Plaintiffs' contention in this regard only relates to costs (CCP §1032)

14  and not to attorneys' fees (CCP §1717). Plaintiffs cite no authority to support this

15  contention in the context of attorneys' fees. On the other hand, Defendant argues that it

16  prevailed in this cause against Barry Cohen because the court awarded some back and

17  future rent. However, the court also denied Defendant's ejectment claim which would

18  have terminated the lease, certainly a goal of Defendant. Thus the court finds no

19  prevailing party on the causes which related to the 1994 lease.

20       The parties' arguments on the remaining causes again claim victory for each.

21  The court has reviewed the complaint as a starting point. (*Hsu v. Abbara* (1995) 9

22  Cal.4th 863, 876) Defendant is correct that the complaint is drawn largely to request a

23  prayer for money damages. Defendant is also correct that while equity causes and

24  prayers were included, they did not comprise a significant portion of the allegations.

25  Further, Defendant is correct that Plaintiffs never requested early rulings on the equity

26  causes either by pretrial motion or by requests to proceed in equity at trial before the

27  legal causes for damages. Last, Defendant is correct that Defendant prevailed on all the

28  legal claims except one. The court has reviewed the pleadings upon motion practice,

**DMSI 0275**

PAGE 02/07                    SLO COURT                    8057882346    10:18    2007/16/03

[03/16/2007 FRI 10:49 [TX/RX NO 8024]

1   the excerpts of various opening statements and arguments, and the parties' settlement

2   conference briefs. (Ibid.)

3        Plaintiffs' settlement brief does not support their contention that they were

4   successful on the legal claims in any respect, even as to Barry Cohen. The court could

5   certainly attempt to address each of the legal causes and prepare findings as to each

6   beyond those contained in the Statement of Decision and Judgment. The court declines

7   to do so. The court finds that Defendant prevailed on the legal claims.

8        However, the court recognizes that the jury and the court found that Defendant

9   breached every contract. It is for that reason that the court was unwilling to simply

10  allow Defendant to continue the breaches with impunity. The court made a concerted

11  attempt to separate those breaches which could be rectified through equity from those

12  breaches upon which Plaintiffs' proof failed or upon which fairness would not allow

13  equity, such as the pier repairs assertions made by Plaintiffs.

14       Defendant argues that the equity causes wherein Plaintiff's prevailed were minor

15  matters. However, Plaintiffs are correct that Plaintiff's settlement agreement and their

16  attempts prior to the lawsuit to secure Defendant's cooperation at least with parking

17  availability, truck stoppage, and pedestrian safety indicates that these obligations were a

18  goal Plaintiffs sought to achieve for years. They sought damages eventually, but it is

19  not tenable to minimize the importance to all Plaintiffs of these failures by Defendants.

20  Defendant continues to argue that the parking spaces are and have been provided.

21  Defendant continues to ignore the jury and court findings to the contrary. Defendant

22  continues to this day to assert that it did not breach its specifically delineated obligation

23  to allow pier access for trucks which was critical to Plaintiffs' fish business. It is clear

24  to this court that if Defendant complies with the court's order in equity, Plaintiffs would

25  be able to operate their businesses in the manner contemplated by the parties to the

26  contract: the goal was to maximize business profits so both parties would achieve the

27  maximum benefits from the contracts. Plaintiffs were successful on their equity claims.

28  The claims on the 1998 lease were denied as unnecessary to achieve a fair result. The

3

DMSI 0276

[03/16/2007 FRI 10:49 [TX/RX NO 9024]

1   equity claims on the pier repairs were denied because Plaintiffs failed to prove that the
2   pier was unable to support the trucks. In addition the pier repair claims would not have
3   directly benefited Plaintiffs even if ordered. Defendant never attempted to prove that
4   the pier could not support the fish trucks and Plaintiffs never proved that the pier
5   actually needed repairs in order to allow Plaintiffs to operate their businesses (except
6   the walkway). The Defendant's equity successes were certainly not part of its litigation
7   objectives. The lack of declaratory relief in some respects and the lack of an order for
8   specific performance of repairs has never been a goal of the Defendant. The court did
9   not order any injunctions for reasons which had little, if anything, to do with the
10  Defendant's arguments or evidence or any other presentation.

11      Although the court had little trouble discerning that Plaintiffs were not
12  prevailing parties in any respect, the question of Defendant's status as such was
13  problematic and turned on the court's assessment of the effects of the equity claims. As
14  a starting point, Defendant's settlement brief contains a summary of its contentions on
15  page 4. Of the six contentions, Defendants prevailed on one (except as to Plaintiff
16  Barry Cohen where a small damage award was ordered). While Defendant continues to
17  argue that equitable relief should not be available to Plaintiffs, this court ordered such
18  relief, albeit on a limited basis. In the final analysis, the Defendant did not achieve a
19  "simple, unqualified win." (Id. at p. 876 citing *Deane Gardenhome Association v.*
20  *Denktas, et al.* (1993) 13 Cal. App.4th 1394, 1398). The contract attorney fees clause in
21  the settlement agreement, upon which most of the equitable relief was granted, includes
22  equitable causes of action. The results are mixed. (Ibid.) The court finds that Plaintiffs
23  prevailed on their equity causes, one legal cause, and on the liability element of each
24  legal cause. Thus, the court finds that neither side prevailed. (CCP §§1032, 1717; *Scott*
25  *Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103).

26      Defendant served settlement offers on each Plaintiff which is a basis for
27  Defendant to claim post offer costs. (CCP §998) The offer to Barry Cohen would have
28  provided zero dollars to him; Barry Cohen received an award. Defendants cannot be

4

DMSI 0277

[9024 ON XH/XL]    6ħ:0ī IRɟ ∠00Z/9ī/80

1  awarded costs pursuant to CCP 998 as to Barry Cohen. The offer to Leonard Cohen
2  would have provided payment to him of $101,000. Defendant argues that Leonard
3  Cohen received nothing as a result of his lawsuit It is true that Leonard Cohen received
4  zero dollars from the jury. However, Leonard Cohen did receive equity relief from the
5  court in two respects. First, the court ordered Defendants to actually provide the
6  parking spaces required by the contracts. While Defendants continue to argue that the
7  defined spaces provide that parking, the jury and the court disagreed with the contention
8  because of the truck blockage and the Defendant's failure to effectively and consistently
9  enforce parking restrictions. Second, the truck stoppage space ordered by the court
10  would inure to the benefit of Leonard Cohen because parking space availability would
11  be increased. Plaintiffs and Leonard argue that since the cost to Defendant to perform
12  their obligations under the equity order would be in excess of the CCP 998 offer to
13  Leonard Cohen, Leonard achieved a result valued in excess of the offer. Although there
14  is no direct case authority for that proposition, the court finds Leonard's argument
15  persuasive. The lawsuit began and ended with a contention by Plaintiffs that parking
16  and truck access were critical to their expectations under the contracts. They obtained
17  orders from the court in equity which will require Defendants to perform these
18  obligations. Defendants have appealed those orders on grounds, inter alia, that
19  Plaintiffs failed to prove causation and damages so that equity is unavailable. This
20  court disagreed with Defendant and Leonard did obtain a result which had a value on
21  the basis of probable costs of repair or construction in excess of the offer to settle.
22  Defendant is not entitled to costs from Leonard pursuant to CCP 998.
23      Plaintiffs have filed a motion for prejudgment interest. The court has
24  insufficient information on what money is owed and awaits further information on that
25  issue. Plaintiffs also filed pleadings regarding an allegation that Defendant has not
26  ///
27  ///
28

5

DMSI 0278

03/16/2007 FRI 10:49   [TX/RX NO 5024]

1  performed as ordered by the court. Again, there is insufficient information to rule at

2  this time. The motions to tax costs and to strike the Defendants Memorandum of Costs

3  are rendered moot by this ruling.

4

5  DATED: March 16 2007

6                                              BARRY T. LABARBERA

7                                              Judge of the Superior Court

8

9

10  BTL:sv

11

12  w:\courtops\svaladez\labarbera\cv040897.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**DMSI 0279**

[03/16/2007 FRI 10:49 [TX/RX NO 9024]

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

CERTIFICATE OF MAILING

| | |
|---|---|
| BARRY COHEN<br><br>        VS.<br><br>PORT SAN LUIS | CV040897 |

FAX: 925-933-4126

Speir, George B.
    *Attorney for Plaintiff*
MILLER, STARR & REGALIA
1331 N. California Blvd., 5th Floor
Walnut Creek        CA 94596

Kingery, Carol A.
    *Attorney for Defendant*
ADAMSKI MOROSKI MADDEN & GREEN
P.O. Box 3835
San Luis Obispo        CA 93403 3835

Cumberland, David M.
    *Attorney for Defendant*
CUMBERLAND, COATES & DUENOW
P.O. Box 749
San Luis Obispo        CA 93406 0000

Wagner, Richard P.
    *Attorney for Respondent*
400 Oceangate, STe. 700
Long Beach        CA 90802 0000

Fox, Herb
    *Attorney for Plaintiff*

15 West Carrillo Street, Suite 211
Santa Barbara        CA 93101

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                            OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

WAYNE HALL, Court Executive Officer

by _____, Deputy        Dated: 3/16/07

DMSI 0280

01/22/2007 11:11 FAX 925 933 4120        MILLER STARR                    ☑014

GEORGE B. SPEIR (Bar No. 78276)
ARTHUR F. COON (Bar No. 124206)
CAROLYN E. NELSON (Bar No. 238526)
MILLER, STARR & REGALIA
A Professional Law Corporation
1331 N. California Blvd., Fifth Floor
Post Office Box 8177
Walnut Creek, California 94596
Telephone: (925) 935-9400

Attorneys for Plaintiffs
BARRY A. COHEN, LEONARD A. COHEN,
OLDE PORT INN, INC., and OLDE PORT
FISHERIES, INC.

**FILED**

JAN 22 2007

SAN LUIS OBISPO SUPERIOR COURT
BY _Nancy G. Gudina_
N. Gudino, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

BARRY A. COHEN; LEONARD A.
COHEN; OLDE PORT INN, INC.; and
OLDE PORT FISHERIES, INC.,

Plaintiffs,

v.

PORT SAN LUIS HARBOR THE
DISTRICT; and DOES 1 to 50, inclusive,

Defendants.

AND RELATED CROSS-ACTION.

Case No. CV 040897

DECLARATION OF BARRY COHEN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES

Date: February 21, 2007
Time: 9:00 a.m.
Judge: Hon. Barry T. LaBarbera
Location: 801 Grand Avenue
          San Luis Obispo, CA

Complaint Filed: October 22, 2004
Trial Date: May 8, 2006

I, Barry Cohen, declare:

1.    I am an individual currently residing in Aptos, Santa Cruz County,

California. I am a plaintiff in this lawsuit and an owner of plaintiff Olde Port Fisheries, Inc.

("OPF"). The facts stated in this declaration are true as of my own personal knowledge, and if

called as a witness I could and would testify competently to those facts.

2.    I am a fisherman and have been for most of my adult life. I built the Olde

Port Inn restaurant and OPF facilities on the Harford Pier (the "Pier") starting in approximately

-1-

CRAA\41581\683417.3

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

DMSI 0281

01/22/2007 11:11 FAX 925 933 1120        MILLER STARR                    ☒016

1  1964. I had operated a wholesale/processing fish busi .   on the Pier for over 40 years, until the

2  actions of Defendant Port San Luis Harbor District ("the District") in mid-to-late 2004

3  drastically and fatally prevented me from operating my business on the Pier. Without the

4  necessary, reasonable truck access, I was virtually "kicked off the Pier." These actions of the

5  District, among others, breached the settlement and lease agreements I made over ten years ago

6  with the District and resulted in the filing of this lawsuit.

7        3.        The District has been found by the jury and the Court to have breached

8  several contracts it has with me and the other plaintiffs. The 1994 Lease that the District

9  breached was required by and incorporates the 1993 Settlement Agreement. The 1993

10 Settlement Agreement and 1994 Lease embody the settlement of my previous lawsuit against the

11 District in the early-1990s. That lawsuit concerned the District's plan to demolish the historic

12 warehouse canopy on the terminus of the Pier. This historic structure serves as the supporting

13 structure for the OPI restaurant and OPF buildings, as well as the restaurant roof.

14        4.        I hired the law firm of Miller Starr Regalia ("MSR") to represent me in

15 that lawsuit. Before hiring MSR, I sought the advice of my local counsel. Richard Carsel, my

16 attorney in the San Luis Obispo area, informed me that I would need an attorney with special

17 experience with CEQA issues. He suggested MSR, which then had offices in Oakland and

18 Walnut Creek, California. Following Mr. Carsel's recommendation, I met with George Speir

19 and Arthur F. Coon of MSR, and I hired MSR because they seemed most qualified to handle my

20 case and there were no comparable alternative firms in the San Luis Obispo area that I knew of

21 to handle issues of this nature, complexity and importance.

22        5.        MSR instituted litigation on my behalf in which I was successful in

23 obtaining a preliminary injunction against the District's threatened unlawful demolition of the

24 canopy. After substantial additional litigation, but before trial and as an alternative to continuing

25 that lawsuit, the District and I made an agreement that I would dismiss the lawsuit in return for

26 the District's agreement to, among other things, the following material conditions:

27        a.        The District would not demolish the canopy;

28

CRAAH415R683417.3                               -2-

DMSI 0282

1     b. The District would perform certain duties, such as enforcement of

2 parking regulations on the Pier, repair and maintenance of the Pier, etc.;

3     c. The District would grant certain rights to me, my businesses and

4 my customers, such as guaranteed fish semi-truck access, a specific minimum number of public

5 parking spaces on the Pier, and non-exclusive parking rights on all other the District property;

6 and

7     d. The District would construct an additional building, and the

8 District and I would enter into a lease for the additional site and building on certain terms and for

9 which I would pay fair rent.

10    6. In return for a dismissal of the lawsuit, the District agreed to these

11 conditions and we memorialized them in the 1993 Settlement Agreement, and later the 1994

12 Lease. Accordingly, I dismissed the lawsuit. However, the District has now breached the

13 material terms and conditions of our settlement contained in both the 1993 Settlement

14 Agreement and the 1994 Lease.

15    7. I fulfilled my obligation to the District by dismissing the lawsuit in 1993.

16 On the other hand the District, after receiving the benefits of this dismissal, chose not to fulfill its

17 obligation to honor the terms and conditions of our underlying settlement agreement, namely, the

18 terms and conditions of the 1993 Settlement Agreement and the 1994 Lease.

19    8. As a result of my initial lawsuit against the District, I first considered the

20 issue of an attorneys' fees clause because the 1976 Lease did not have one. I had to pay my

21 attorneys' fees out-of-pocket even though I did nothing to bring about the circumstances giving

22 rise to the District's illegal decision to demolish the canopy. I decided I had to protect myself in

23 the event that the District might again take unlawful action and/or breach some aspect of the

24 1976 Lease and/or the settlement agreement. An attorneys' fees clause, I hoped and believed,

25 would act as a deterrent and afford me some protection. If the District still persisted and

26 deprived me of my legal rights, and if I prevailed in a legal and/or equitable action, then the

27 District would be held accountable and responsible to pay my expenses, costs and attorneys'

28

CRAAM4158\6883417.3       -3-

fees. This is exactly what the District agreed to do on page 14 of the 1993 Settlement

Agreement, at paragraph 11 ("Attorneys' Fees")

> If any litigation be commenced between the parties hereto concerning this agreement or the rights and duties of either Cohen or The District hereunder, whether it be an action for damages, equitable or declaratory relief, the prevailing party in such litigation, in addition to such other relief as may be granted by the court, shall be entitled to recover from the other party reasonable expenses, attorneys' fees and costs.

9.    The District agreed to have "Attorneys' Fees" clauses in the 1993

Settlement Agreement and the 1994 Lease, and to "tie" an attorneys' fees clause to the 1976

Lease. The "tie" for attorneys' fees to the 1976 Lease comes from the 1993 Settlement

Agreement, page 16, paragraph 15 ("Good Faith"): "The parties acknowledge and agree that

each party hereto has an obligation of good faith and fair dealing, to conduct himself or itself in

such a fashion so as not to deprive any other party of the benefits to be derived from this

Agreement *or from the Lease*." (Italics added.) The "Lease" referred to was defined in the 1993

Settlement Agreement on page 1 in the recitals: "WHEREAS, Cohen and The District are

parties to a lease agreement dated January 1, 1976 ('Lease'), pursuant to which Cohen leases

certain property from the District." So a violation of the 1976 Lease is also a violation of the

"Good Faith" clause of the 1993 Settlement Agreement, which includes an attorneys' fees

clause.

10.    Although over the years the District did not live up to all of its continuing

contract obligations, as shown by its lack of parking enforcement, allowance of exclusive RV

parking, failure to maintain the Pier, etc., I did not take any legal action against the District. I

complained to the District about its failures to uphold its end of the agreements, but I did not

want another legal battle with the District. A lawsuit would be my absolute last recourse.

11.    When it became clear that the District's threat of breaches regarding

guaranteed truck access and parking were real and imminent, my son, Leonard, and I, again

following Richard Carsel's advice, retained MSR to try to resolve the dispute. We retained the

firm again because of its affiliation with the prior lawsuit, and its qualifications, capability, and

familiarity with the facts and issues. MSR was uniquely acquainted with the parties and

CRAA\4158\683417.3

DMSI 0284

1   contracts at issue, as it had handled the prior litigation and participated in negotiating and

2   drafting the 1993 Settlement Agreement and 1994 Lease. No local firm shared this familiarity

3   with the issues, parties, documents and evidence, and we felt MSR was really our only wise

4   choice.

5         12.    Unfortunately, at the June 2004 the District Commissioners' Meeting, the

6   District took action that I could not live with. The District reconfigured the parking areas on the

7   Pier terminus in such a manner as to deprive me of the settlement agreement's guaranteed

8   twenty, but in no event less than seventeen, public parking spaces. I was also deprived of the

9   reasonable fish truck access guaranteed by the 1994 Lease. Either way, at any given time, I

10  could only have one or the other, but not both.

11        13.    At that meeting I pleaded with the District's Commissioners to reconsider.

12  I explained that the action the District was about to take would be in direct violation of our 1993

13  Settlement Agreement and our 1994 Lease. I reminded Commissioner Carolyn Moffat that she

14  was the Commissioner who signed the 1993 Settlement Agreement on behalf of the District. I

15  explained there were other viable options that would accomplish the same goals the District said

16  it wanted to achieve -- primarily an open 18-foot fire lane the length of the Pier -- without

17  violating the agreements the District had with me. Commissioner Moffat said she was sorry that

18  this would hurt our customers, and in turn hurt me, but she voted for the new parking

19  configuration anyway. All but one of the Commissioners voted in favor of the new

20  configuration, without even looking at the 1993 Settlement Agreement or the 1994 Lease, even

21  though copies of the agreements were available in the same building as the meeting. The

22  Commissioners apparently did not care enough about their obligations to even review the

23  agreements to confirm what their obligations were under those agreements, prior to voting on an

24  action that would clearly breach them.

25        14.    Still, I wanted to avoid any legal action if at all possible. I had Arthur

26  Coon, our attorney from MSR, come to the next meeting of the Harbor The District Commission

27  to speak with the Commissioners in an effort to avoid any legal action. He explained in detail

28  how the District could comply with its contracts with the Cohens and its own Master Plan and

CRAA4415N683417.3             -5-

DMSI 0285

01/22/2007 11:12 FAX 025 033 4120          MILLER STARR          Ⓩ010

1    Coastal Act obligations in a way that would be a "win-win." The Commissioners simply

2    thanked Mr. Coon for his concerns and moved on to the next agenda item without further

3    comment or acknowledgement. Nothing changed. Next, my son Leonard and I offered the

4    District up to a $20,000 loan to help cover the cost to use another parking/truck access option

5    that both the District and I could live with. The District rejected the offer, which was formally

6    made in a July 2, 2004, letter to the District. We tried to meet with CDF to explain and resolve

7    the problem, but CDF, which is the District's designated fire protection agent, would only meet

8    with the District. I tried very hard to find a compromise that would avoid litigation, but the

9    District would not budge one inch off their position. It did not even try to honor its contracts.

10      15.     Eventually, the District started placing "warning" tickets on "illegally"

11    stopped vehicles (mostly the semi fish trucks). Finally, the District had the CDF Fire Marshall

12    issue an actual citation to a semi fish truck. Once that happened, I had no choice but to seek

13    legal redress. I notified Art Coon who filed a complaint. We attempted mediation with Judge

14    Conklin, and CDF's Mike Harkness even attended a session at the Judge's request to see if a

15    solution to the pier configuration problem could be reached, but the District would still not agree

16    to honor its contract obligations.

17      16.     The District put me in an impossible position that left me no choices or

18    options. I did nothing to provoke this lawsuit and in fact made great efforts to avoid it. In spite

19    of my repeated pleas, the leases, the settlement agreement, our attorney's public explanation to

20    the Commissioners, and our monetary offer, the District knowingly chose to breach its

21    settlement agreement. If I wanted to maintain and protect my bargained-for rights, then I was

22    forced to seek this Court's assistance.

23      17.     Since the District chose to deprive me of the full advantage of the leases

24    and settlement agreement and drove my wholesale fish processing operation out of business, I

25    stopped paying rent under the 1994 Lease and wanted to renegotiate a new "fair" rental value for

26    the 1994 Lease. But the District chose, instead, to send me a 15-day "notice of eviction" to evict

27    me for nonpayment of rent. I responded in good faith by tendering a $6,000 adjusted rent check

28    with an explanation that this was a good faith effort toward payment of a reasonably reduced

CRAAM4158\683417.3           -6-

DMSI 0286

1  rent. If the District and I could not agree on what a "fair" rent should be, as required in the 1993

2  Settlement Agreement, I felt that the only option was to make a good faith tender and let a court

3  of law make the decision as to the fair amount for us given the District's material breaches of our

4  Settlement Agreement.

5         18.   The District rejected my good faith offer, returned the check and notified

6  me that only the full rent amount would be acceptable. The District then sued me in a cross-

7  complaint, asking for full rent and seeking to evict me for not paying such rent. My position,

8  going into court, remained the same. I should pay whatever the judge or jury decided to be a fair

9  reduced rent for the premises due to the District's breach of the leases and settlement agreement.

10  For its part, the District went into court asking for full rent only, plus late fees and interest, and

11  my eviction from the premises.

12         19.   I am a prevailing party in this action because I received the "greater relief"

13  on the contract claims. From the beginning of this dispute, when the District announced its

14  intention to implement the interim shared-use plan, my main objective was to stop the District's

15  breaches and force the District to comply with its settlement agreement obligations. To try to

16  achieve this objective, my attorney drafted a public entity claim letter demanding that the

17  District "do whatever needs to be done to comply with its legal obligations." When it became

18  clear that the District would not comply with its obligations, my attorney filed a Complaint

19  seeking to remedy the District's stubborn refusal to honor its agreements to provide the required

20  public parking and truck access, and to adequately repair and maintain the Pier. Throughout the

21  litigation, my primary concern remained the District's breaches of the contracts at issue, i.e., the

22  settlement agreement. After more than 2 years of litigation during which the District refused to

23  acknowledge its breaches or offer to perform, I finally achieved my goal of proving those

24  breaches and compelling the District to comply with its obligations when the Court issued its

25  Statement of Decision and entered Judgment granting me $50,000 in past damages (as awarded

26  by the jury) and significant equitable relief, and setting a fair reduced rent. The declaratory

27  judgment and specific performance decree granted me substantially all redress I sought to

28  achieve by this law suit.

CRA\4415\4\683417.3         -7-

DMSI 0287

1    20.    In addition to achieving my primary litigation objectives, this relief far

2   outweighs any relief granted to the District. From the outset, the District's contentions have

3   been that it did breach the contracts and did not have to comply with what we contended were its

4   obligations under the contracts. The District also made a claim against me for indemnity,

5   ejectment, and full back rent under the agreements. The Court's Judgment—which found that

6   the District had and breached contract obligations to the plaintiffs, that the District must comply

7   with those obligations, that I need not indemnify the District, that the District's claim for

8   ejectment was rejected, and that I owe only partial back rent because of the District's breaches—

9   is therefore a complete failure for the District. It was not the District's primary litigation

10  objective to be declared and found liable for breach of all the contracts, to pay my damages, to

11  be forced to reduce my rent to half and allow me to remain in possession of the premises, and to

12  be ordered to permit parking truck access, remove RVs from Harford landing and require the

13  pier walkway as we had requested. While the Court ordered that I pay the District $44,808.98 in

14  back rent on the cross-complaint, *this actually represented a success for me on Defendant's*

15  *breach of contract claim.* The new "fair" amount of "back rent due" awarded to the District was

16  actually a net loss to the District of one-half of the original "fair" amount of "rent due" under the

17  1994 Lease (before the District's breach). Therefore, the District suffered a net loss of rent

18  income under the 1994 Lease by one-half of the rent otherwise due because of their breach of the

19  1994 Lease. Moreover, the District will suffer further loss of rent income under the 1994 Lease

20  by one-half until they comply with the 1993 Settlement Agreement and the 1994 Lease, which

21  again, will be a monetary gain to me. The amount awarded by the Court to the District was less

22  than my $50,000 damages award, and less than half of what the District demanded and excludes

23  late fees. Essentially, the Court found that I was substantially justified in not paying rent due to

24  the District's material breaches, ruling in favor of my request for an adjusted "fair" rent and at

25  the same time verifying that the District was in breach of the leases and settlement agreement

26  and could not expect payment of full rent, just like I had said. At the outset, I had offered partial

27  rent -- which the District rejected, insisting on full rent -- so this partial rent award is no victory at

28  all for the District. When the District's minimal, partial relief, and failure to achieve its primary

CRAAM4159683417.3    -8-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

01/22/2007 11:12 FAX 925 833 4128        MILLER STARR                    ⌀022

1  litigation objectives, is compared with my substantial equitable and monetary awards, and

2  achievement of our primary litigation objectives, it is clear that we obtained the greater relief in

3  this action.

4       21.    The District never made any sincere effort to reach an agreement with me

5  or any of us to settle our dispute or this lawsuit. It is also a fact that the District, at its sole

6  discretion, could have corrected and cured its breaches and fulfilled its obligations at any time,

7  before the trial, during the trial and now. The District is the only one, between us, that has the

8  authority and ability to make things right. However, the District has chosen not to do so.

9       22.    I believe, and with good cause, that one of the District's strategies was to

10  spend its insurance company's money to multiply and expand this litigation so as to force

11  Leonard and I to expend all their personal resources until none were left and the District could

12  win by default. Why else would such a basic decision-making process over parking, truck

13  access and a fire lane be turned into a multi-million dollar lawsuit, especially when there were

14  attorneys' fees clauses benefiting the prevailing party who obtained either damages or equitable

15  relief? At this point, this lawsuit has cost me so much in time, money and personal hardship,

16  that even if I were awarded all of the expenses, costs and attorneys' fees, it would still take me

17  years, if ever, to be made whole. I have been forced to take out loans on and finally to put my

18  house up for sale to finance this lawsuit in an effort to enforce the contracts with the District. I

19  ask the Court to consider the overall fairness and justice of the outcome of the jury trial and the

20  Court's rulings on plaintiffs' equitable claims. With their eyes wide open, the District

21  knowingly and in bad faith has purposely deprived me, my son and our family businesses of the

22  material benefits under their current agreements with me, which they promised me in 1993, if I

23  would dismiss the lawsuit against them.

24       I find it ludicrous that the District would even think to ask this Court or me for

25  anything other than forgiveness. Again, the District, with their eyes open, knowingly and in bad

26  faith "broke" their word to me. They "breached" all our leases between us. They violated the

27  1993 Settlement Agreement after they enjoyed a dismissal of the previous lawsuit. They deprived

28  Leonard and I of our Lease rights. They have hurt and are still hurting our businesses and even

CRAAM4158\4834173                                    -9-

DMSI 0289

1  "ran" the major commercial fishing activities (which is in violation of the California Coastal Act)

2  out of the Harbor. They let the Pier deteriorate and fall into neglect. They knowingly allowed our

3  customers to get hurt walking the Pier because of their neglect. They displaced our customer's

4  parking spaces with RVs. They used "scorched earth" tactics during this lawsuit to drain all of our

5  resources. They attacked Leonard and I personally. They invaded our privacy. They knowingly

6  lied about me. They were found by the judge and jury to have "breached" our leases and

7  Settlement Agreement, yet they continue on. Threatening me with an appeal of this Court's

8  decision, I know now without a doubt their motives and actions. They feel no remorse for acting

9  like a bully throughout this litigation, forcing us to trial, forcing us to establish liability and

10  breaches, but still failing to comply with this Court's order. Even today, they still have not made

11  any effort to do the "right thing."

12          The District has acted in bad faith with me and now with this Court, also  In my

13  opinion the District has not made a sincere effort to comply with this Court's orders. The District

14  has tried again and again to mislead this Court. Today they stand in defiance of this Court's

15  orders. The District seems to think they are above the law, but that is not how I understand

16  the legal system to work. I have also personally watched and listened to them mislead and be less

17  than truthful to the Coastal Commission.

18          It is incredible that they have the temerity to come into this Court, claiming to be

19  the prevailing party. They are also asking this same Court, that they defy, to order Leonard and I

20  to pay their costs and their attorneys' fees, even though they acted in such bad faith and caused

21  such harm. Have these people absolutely no conscience at all? Here are the facts: These are the

22  people that promised in 1993 to pay our reasonable expenses, attorneys' fees, and costs if

23  they acted in such a fashion as to deprive us of the benefits of our leases and settlement

24  agreement. Well, here we are today and that's exactly what they did: "deprive us of the benefits

25  of our leases and settlement agreement," with their eyes wide open. I am astonished that the

26  District can stand before you and with a straight face say they deserve anything other than

27  punishment for their behavior, acting  as if they did nothing wrong, caught "red

28  handed," and yet not be embarrassed for their defiance of this Court's orders, for their disregard of

CRAAM4158\6804\7.3                              -10-

DMSI 0290

1  other's rights, and their total lack of good faith and fair dealing. The District badly hurt my son

2  and I, our families, and our businesses.

3         In my humble opinion, it would not be fair to my son and I if we were denied

4  an award of expenses, attorneys' fees, and costs. After all, that is what the District promised us in

5  1993. Denial of our total lawsuit expenses may actually cause me to be forced out of business

6  totally and into bankruptcy, only because I stood up for my clear legal rights when they were

7  being knowingly and intentionally violated by the District.

8         23.    In summary:

9                a.    The District made an agreement with me in 1993, from which they

10  have already enjoyed the benefits and are now depriving me of my benefits.

11                b.    The District was found by the judge and the jury to have breached

12  our leases and settlement agreement.

13                c.    The District agreed to an "Expenses, Attorneys' Fees, and Costs"

14  clause as part of our 1993 Settlement Agreement.

15                d.    The District agreed to a "Good Faith" provision in our 1993

16  Settlement Agreement.

17                e.    The District voted to hurt our businesses before even reviewing our

18  agreements.

19                f.    We offered The District up to a $20,000 loan to help fund a

20  mutually agreeable option.

21                g.    The District made this lawsuit as expensive as they possibly could to

22  "clean us out," hoping to "win" by default.
                        (i)    The District used insurance money to finance this litigation.
23                      (ii)   We used our money to enforce our rights and stand up to The
   District's tactics.
24                h.    The District has not complied with the judge's order.

25                i.    The District did not use "good faith" and "fair dealings" in their

26  agreements with me.

27

28

CRAAM41586834417.3                    -11-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

DMSI 0291

1         j.     We had to pay and owe over two million dollars just to protect our

2  rights from the same people that "gave" them to us.

3         k.     We did all we could to avoid this lawsuit, but the District was the

4  one that had the "power" to make things right. They chose not to avoid the lawsuit.

5        24.     For all the reasons previously stated, and the Court's orders and the jury's

6  findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who

7  obtained the greater relief under the contracts.  Furthermore, I ask the Court to enforce those

8  contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of

9  our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact

10  circumstances, in exchange for me dismissing my worthy lawsuit against the District.

11  Furthermore, I ask for any other award this Court deems appropriate.

12        I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct. Executed this _____ day of January, 2007, at Aptos, California.

14

15

16                                       BARRY A. COHEN

17

18

19

20

21

22

23

24

25

26

27

28

CRAAW4158\0832417.3                 -12-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

DMSI 0292

j.     We had to pay and owe over two million dollars just to protect our rights from the same people that "gave" them to us.

k.     We did all we could to avoid this lawsuit, but the District was the one that had the "power" to make things right. They chose not to avoid the lawsuit.

24.     For all the reasons previously stated, and the Court's orders and the jury's findings, I ask the Court to find me and the other plaintiffs to be the "prevailing parties" who obtained the greater relief under the contracts. Furthermore, I ask the Court to enforce those contracts by ordering the District to pay all of our reasonable expenses, all of our costs, and all of our attorneys' fees, as the District, in 1993, agreed that it would do, under these exact circumstances, in exchange for me dismissing my worthy lawsuit against the District. Furthermore, I ask for any other award this Court deems appropriate.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this __21st__ day of January, 2007, at Aptos, California.

BARRY A. COHEN

CRAA\413\6834173

-12-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

DMSI 0293

01/22/2007 11:13 FAX 025 033 4120     MILLER STARR     @027

1
2

### PROOF OF SERVICE
*(Barry A. Cohen, et al. v. Port San Luis Harbor District*
San Luis Obispo Superior Court, Case No. CV 040897)

3

I, Karen Irias, declare:

4

I am a resident of the State of California and over the age of eighteen years, and not
a party to the within action; my business address is 1331 N. California Blvd., Fifth Floor, Post
Office Box 8177, Walnut Creek, CA 94596. On January 22, 2007, I served the within
documents:

5

6

7

DECLARATION OF BARRY COHEN IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES

8

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

9

10

☐ by transmitting via electronic e-mail, to the following e-mail addresses indicated
below on this date before 5:00 p.m.

11

☒ by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Walnut Creek, California addressed as
set forth below.

12

13

☐ by placing the document(s) listed above in a sealed _____ envelope
and affixing a pre-paid air bill, and causing the envelope to be delivered to a
_____ agent for delivery.

14

15

☐ by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

16

17

Martin P. Moroski
Adamski, Moroski, Madden & Green
P. O. Box 3835
San Luis Obispo, CA 93403-3835
Tel: (805) 543-0990
Fax: (805) 543-0980
e-mail:
moroski@adamskimoroski.com

18

19

20

*Overnight/Hand Delivery Only:*
6633 Bay Laurel Place
Avila Beach, CA 93424

21

22

Attorneys for Defendant and Cross-
Complainant PORT SAN LUIS
HARBOR DISTRICT

23

24

David M. Cumberland
Cumberland, Coates & Duenow, LLP
550 Dana Street
San Luis Obispo, CA 93401-3429
Tel: (805) 541-4200
Fax: (805) 541-4293
e-mail: dmc@ccdlawfirm.com

Co-Counsel for Defendant and Cross-
Complainant PORT SAN LUIS
HARBOR DISTRICT

25
26
27
28

CRAAM4158\683417.3                    -13-

DECL. OF BARRY COHEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

DMSI 0294

*Courtesy Copy:*

Hon. Barry T. LaBarbera
San Luis Obispo Superior Court
Department 2
1035 Palm St., 3rd Fl.
San Luis Obispo, CA 93408
e-mail:
Barry.LaBarbera@slo.courts.ca.gov

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 22, 2007, at Walnut Creek, California.

Karen Irias

**PROOF OF SERVICE**

Case:          *Del Mar Seafoods, Inc. v. Barry Cohen, Chris Cohen and F/V Point Loma*

Case No.:      U.S. District Court, Northern Dist. Case No.: CV 07-02952 WHA

    I am employed in the City and County of San Francisco by the law firm of COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP, 190 The Embarcadero, San Francisco, California 94105. I am over the age of 18 years and not a party to the within action.

    On April 21, 2008, I served the attached document(s):

- **PLAINTIFF'S RULE 26(a)(3) PRETRIAL DISCLOSURES**

on the parties, through their attorneys of record, by placing copies thereof in sealed envelopes (except facsimile transmission(s)), addressed as shown below, for service as designated below:

**(A)**    By First Class Mail: I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. mail in San Francisco, California, for collection and mailing to the addressee on the date indicated.

**(B)**    By Personal Service: I caused each such envelope to be personally delivered to the addressee(s) by a member of the staff of this law firm on the date indicated.

**(C)**    By Messenger Service: I caused each such envelope to be delivered to a courier employed by FIRST LEGAL SUPPORT SERVICES or by WORLDWIDE ATTORNEY SERVICES, with both of whom we have a direct billing account, who personally delivered each such envelope to the addressee(s) on the date indicated.

**(D)**    By Federal Express:    I caused each such envelope to be delivered to Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the addressee(s) on the next business day. I deposited each such envelope/package at the Three Embarcadero Center location of Federal Express Corporation.

**(E)**    By Facsimile: I caused such document to be served via facsimile electronic equipment transmission (fax) on the party(ies) in this action by transmitting a true copy to the following fax numbers:

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL·415-438-4600
FAX·415-438-4601

Del Mar/Point Loma/2504

| SERVICE | ADDRESSEE | PARTY REPRESENTED |
|---|---|---|
| A | James P. Walsh<br>Gwen Fanger<br>DAVIS WRIGHT TREMAINE LLP<br>505 Montgomery Street<br>Suite 800<br>San Francisco, CA 94111<br>Tel: 415-276-6500<br>Fax: 415-276-6599<br>Budwalsh@dwt.com | Counsel for Defendants and Claimant<br>BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant<br>F/V POINT LOMA Fishing Company, Inc. |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 21, 2008 at San Francisco, California.

_____
Zoe Conner

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

Decl.Point Loma/2504

PROOF OF SERVICE

Case No.: CV 07-02952 WHA