James P. Walsh, CSB. No. 184620
Gwen Fanger, CSB No. 191161
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-3611
Telephone: (415) 276-6500
Facsimile:   (415) 276-6599
budwalsh@dwt.com

Attorneys for Defendants and Claimant
BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), the F/V POINT LOMA and Claimant, F/V POINT LOMA Fishing Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and, F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8 foot long fishing vessel, her engines, tackle, furniture apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. | No. C-07-2952-WHA <br><br> **DEFENDANTS' TRIAL BRIEF IN RESPONSE TO PLAINTIFF'S BRIEF ON THE APPLICATION OF THE CALIFORNIA STATUTE OF FRAUDS TO MARITIME CONTRACTS** <br><br> Trial Date: May 20, 2008 <br> Time: 7:30 a.m. <br> Place: Courtroom 9, 19th Floor |

Defendants, Barry Cohen, Chris Cohen, F/V Point Loma, *in rem*, and Counterclaimant, F/V Point Loma Fishing Company, Inc. (collectively, "Defendants"), submit this Trial Brief in Response to Plaintiff's Trial Brief on the Application of Statue of Frauds to Maritime Contracts.

### I.    Introduction

Defendants contend that California's statute of frauds applies to any alleged oral promise by Mr. Cohen to pay certain accounts receivables of his sons, Michael and Leonard Cohen, arising out of the Avila Beach Joint Venture. Accordingly, any alleged promise pay the debts of his sons

is invalid without a written agreement. Plaintiff contends that California law does not apply because the Note and Mortgage are maritime contracts and governed by admiralty law. However, as explained below, there is nothing inherently maritime about a promise to pay money, particularly where the alleged debt itself does not arise in connection with the boat Mortgage, and therefore local, California law applies.

## II.   Applicable Law

Contrary to Plaintiff's argument, the Court may apply California contract law to the interpretation of any alleged agreement by Mr. Cohen to pay the debts of his sons. Defendants agree that the Mortgage on the F/V Point Loma is a maritime contract that provides this Court with admiralty jurisdiction, based on the Federal Ship Mortgage Act. *The Thomas Barlum*, 293 U.S. 21, 33 (1934) (prior to enactment of Ship Mortgage Act 1920, the admiralty had no jurisdiction of a suit to foreclose a mortgage on a ship); 46 U.S.C. §§ 31322, 31325, and 31329; Schoenbaum, Admiralty and Maritime Law, 4th Ed., Vol. 1, § 3-10, 130-139 (2007). Generally speaking, admiralty jurisdiction requires the application of substantive admiralty law. Schoenbaum, Admiralty and Maritime Law, 4th Ed., Vol. 1, § 4-1, 157 (2007). However, one of the sources of admiralty law is state law, "insofar as appropriate in the admiralty context." *Id.*, at 158. Because admiralty law is not all-encompassing, this Court may fashion a rule by looking to various appropriate sources, including state statutory law and common law which is then borrowed and applied as the applicable federal rule. *See generally*, Schoenbaum, Admiralty and Maritime Law, 4th Ed., Vol. 1, §4-2, 164-166 (excerpt attached as Appendix A).

Here, the application of state law is appropriate because there is nothing especially maritime about a promissory note, although it contains the obligations Plaintiff seeks to enforce. Plaintiff's reliance on *Norfolk Southern Railway Co. v. James Kirby, Pty. Ltd.,* 543 U.S. 14 (2004) is distinguishable. In that case, the Court held that bills of lading for transportation of cargo across the ocean from Australia to the United States were maritime contracts because "their primary objective is to accomplish the transportation of goods by sea…." *Id*. at 24. In contrast, the primary objective of the Note in this case is to simply secure the repayment of a loan. Moreover, the alleged agreement at issue is Mr. Cohen's promise to pay the debts of his sons. The repayment

of money by Mr. Cohen raises no uniformity issues that could otherwise arise under true maritime contracts that primarily involve maritime services or those that could have an effect on maritime commerce. *See id.* at 25 ("[T]he] fundamental interest giving rise to maritime jurisdiction is the 'protection of maritime commerce.'")

Here, there is no maritime interest to protect where the repayment of an alleged, locally incurred debt is the subject of the agreement. The debts at issue are accounts receivable incurred by Mr. Cohen's sons in connection with the Avila Beach Joint Venture (a California business venture). Even if the Note is deemed a "maritime contract," local concerns predominate with respect to the construction and purported amendment of the Note; and the uniformity principle is not critical as to these issues. *See e.g.*, *Ham Marine, Inc. v. Dresser Industries, Inc.*, 72 F.3d 454, 459 (5th Cir. 1995) (to the extent not inconsistent with admiralty principles, state contract law may be applied to maritime contracts).

*Union Fish Co. v. Erickson* is also distinguishable. In *Union Fish Co.*, the Court held that the California statute of frauds did not apply to an oral contract to serve as a master of a vessel. 248 U.S. 308, 311 (1919). The Court explained that the California statute of frauds did not apply because the contract of the master was of a "maritime character" because it was for "services to be performed principally on the sea." *Id.* at 312. The Court found that maritime law applied in this specific instance because "[i]n entering into [the master contract] the parties contemplated no services in California. They were making an engagement for services of the master of the vessel, the duties to be performed in the waters of Alaska, mainly upon the sea." *Id.* at 313. In contrast, the alleged promise to pay the debts of Mr. Cohen's sons does not involve any maritime interests or services that necessitate the application of maritime law to address concerns of uniformity. The application of local contract law to Mr. Cohen's alleged repayment obligations would not implicate any maritime concerns. Thus, the repayment of debts is local in nature and the Court may therefore borrow from state law and apply California's statute of frauds.

### III. Statute of Frauds

The agreement at issue is the alleged promise by Mr. Cohen to pay the debts of his sons. As Defendants explained in their Trial Brief, there is no written agreement between Mr. Cohen

and Del Mar to pay the debts of his sons and therefore the statute of fraud applies. Cal. Civ. Code 1624(a)(2). Mr. Cohen's alleged agreement to include his sons' accounts receivable under the Note is covered by the statute of frauds and not enforceable without a writing where he allegedly agreed to pay the debts on his sons' behalf and did not assume the debt as a new, principal debtor. *See e.g., Parrish v. Greco* (1953) 118 Cal. App. 2d 556, 561. Even if Mr. Cohen promised to be responsible for the accounts receivable, such a promise is nevertheless an oral promise he made as a father to be responsible for existing debts of his sons. Mr. Cohen cannot be characterized as a new, principal debtor for these amounts particularly because the Cohens never received any sort of direct benefit from such an agreement. Thus, the statute of frauds applies and any alleged agreement to pay the debts of his sons or otherwise include their debts under the Note is invalid without a written agreement.

Moreover, any such oral agreement has never been executed. Plaintiff argues that Mr. Cohen's apparent obligation to pay the debts of his sons is memorialized in the spreadsheet prepared by Mr. Roggio (Trial Ex. 37) and that his subsequent payments after receipt of the spreadsheet served to execute the agreement to pay his sons' debts. The mere fact that Mr. Cohen made payments to Plaintiff after receipt of the spreadsheet does not support a finding that any alleged oral agreement to modify the terms of the Note and include the debts of his sons. Importantly, Mr. Cohen believed he was making a payment on the Note and not on any other unsecured debts he might owe. In addition, Mr. Cohen did not acknowledge and accept the spreadsheet as a contract and he in fact contends that he never agreed to include the amounts in the spreadsheet under the Note. Accordingly, there was no effective oral modification of the Note by execution under Cal. Civ. Code 1698.

### IV. Conclusion

The issues with respect to the payment of debts incurred by Mr. Cohen's sons are local in nature and do not raise any issues of uniformity that would preclude the application of California law. There, the Court may borrow from California law and apply the statute of frauds which invalidates any alleged oral promise made by Mr. Cohen to pay or include the debts of his sons under the Note absent a writing.

DATED this 22nd day of May, 2008.

                                  Respectfully submitted,

                                  DAVIS WRIGHT TREMAINE LLP

                                  By:   */s/ Gwen Fanger*
                                         James P. Walsh
                                         Gwen Fanger

                                         Attorneys for Defendants
                                         BARRY COHEN, CHRIS COHEN (aka
                                         CHRISTENE COHEN), the F/V POINT
                                         LOMA and Claimant, F/V POINT LOMA
                                         FISHING COMPANY, INC

# Appendix A

# ADMIRALTY AND MARITIME LAW

## Fourth Edition

By

**Thomas J. Schoenbaum**
*Professor of International Studies,
International Christian University, Tokyo
Visiting Professor of Law, George Washington University
Dean and Virginia Rusk Professor of Law Emeritus,
University of Georgia*

## Volume 1

### Chapters 1–10

**PRACTITIONER TREATISE SERIES®**



THOMSON
———★———™
WEST

Mat # 40165372

becomes a part of the domestic legal order. The United States is a party to many such conventions, most of which are compiled in Volume III of this Treatise.

International conventions in the maritime field are usually sponsored by one or more of the international organizations concerned with shipping law: (1) the International Labour Organization (ILO), which has produced recommendations and conventions on seamen's health, safety, and general welfare; (2) the International Maritime Organization (IMO), which sponsors many conventions on shipping safety, pollution, and carriage of passengers; (3) the United Nations Conference on Trade and Development (UNCTAD), whose Shipping Committee has proposed conventions on marine insurance, charter parties, and ship liens and mortgages; (4) the United Nations Commission on International Trade Law (UNCITRAL), which is concerned with international commercial matters; and (5) the Comité Maritime International (CMI), an organization composed of national Maritime Law Associations whose main function is to formulate drafts and proposals for international conventions in the shipping field.

## § 4–2. The Application of State Law in Admiralty

The issue of federalism in admiralty and the scope of application of state law in maritime cases is one of the most perplexing issues in the law. As many commentators have explained, some in colorful terms,[1] the jurisprudence of the Supreme Court in the area of federalism in admiralty is difficult to reconcile. The Supreme Court has also refrained from setting out its own reconciliation of the cases and has been content to oversee a case-by-case development of often diverging lines of precedent. The commentators certainly have a point, but the criticism is probably unfair. In fact, the Supreme Court has consistently announced and applied major themes in its jurisprudence in deciding particular cases. The divergent lines of cases are really the result of competing legitimate interests which the court has been called upon to reconcile. Thus, the major themes of the court's jurisprudence have become clear. Difficulties remain, however, in applying those themes to particular cases because the competing doctrines pronounced by the court are ragged at the margins.

---

§ 4–2

1. See Brainard Currie, Federalism and the Admiralty: "The Devil's Own Mess," 1960 Sup.Ct.Rev. 158. See generally David W. Robertson, Admiralty and Federalism (1970).

For excellent articles, see Howard M. McCormack, Uniformity of Maritime Law, History and Perspective from the U.S. Point of View, 73 Tul. L. Rev. 1481 (1999) and Patrick J.S. Griggs, Uniformity and Maritime Law—An International Perspective, 73 Tul. L. Rev. 1551 (1999).

In W. Eugene Davis, the Role of Federal Courts in Admiralty: The Challenge Facing the Admiralty Judges of the Lower Federal Courts, 75 Tul. L. Rev. 1355 (2001) Judge Davis argues that federal judges are still very active in shaping the law.

In Robert Force, Choice of Law in Admiralty Cases: "National Interests" and the Admiralty Clause, 75 Tul. L. Rev. 1421 (2001) and Deconstructing Jensen: Admiralty and Federalism in the Twenty-First Century, 32 J. Mar. L. & Com. 41 (2001), Professor Force offers new approaches to attain uniformity in the law.

A first pervasive theme in the Supreme Court's federalism jurisprudence is the idea that the constitutional grant of federal authority over maritime matters requires the development of a uniform maritime law. The landmark case announcing this principle was Southern Pacific Co. v. Jensen,[2] which involved a dock worker killed in an accident on a berthed vessel's gangway. The Supreme Court took the case to decide whether the application of the New York Workmen's Compensation Act was an unconstitutional intrusion on federal admiralty jurisdiction. In concluding this was indeed the case, the court stated as follows:

> Article III, § 2 of the Constitution extends the judicial power of the United States: "To all cases of admiralty and maritime jurisdiction;" and Article I, § 8 confers upon the Congress power "to make all laws which may be necessary and proper for carrying into execution the foregoing powers and all other powers vested by this Constitution in the government of the United States or in any department or officer thereof." Considering our former opinions, it must now be accepted as settled doctrine that in consequence of these provisions Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country. * * * And further, that in the absence of some controlling statute, the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction. * * *
>
> And plainly, we think, [no state] legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself.[3]

Jensen thus established the principle that the general maritime law governs maritime occurrences and that state law must yield to the required uniformity of the maritime law. This uniformity is mandated whether the suit is brought in the admiralty forum, on the "law side" of the federal court in diversity jurisdiction, or in state court.[4]

Despite this ringing affirmation of the authority and necessity of federal maritime law, Jensen does not mandate the application of only

---

2. 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, 1996 AMC 2076 (1917).

3. 244 U.S. at 215–16, 37 S.Ct. at 528–29.

4. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). See also Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). For a recent case applying the principle that federal maritime law applies even in diversity cases, see Butler v. American Trawler Co., Inc., 707 F.Supp. 29, 1989 AMC 2909 (D.Me.1989), affirmed 887 F.2d 20, 1993 AMC 2995 (1st Cir.1989) [holding that the federal maritime tort law statute of limitations provision controls over a longer state statute of limitations]. See the discussion in Winter v. Eon Production, Ltd., 433 F.Supp. 742, 1977 AMC 2653 (E.D.La. 1976).

federal rules in admiralty decisions. On the contrary, the general maritime law is not a complete legal system; there are numerous gaps that must be filled either by the federal judiciary, in making up new rules of law, or by the application of state law. Although the federal judiciary has the power to announce new principles of general maritime law, this is done very infrequently and only when there is a compelling need to fashion new rules.[5] Furthermore, the demand for uniformity in admiralty is not inflexible and does not preclude the balancing of competing state, national, and international interests.

In the years since Jensen, the Supreme Court has made clear that the uniformity principle does not preclude the application of state law in admiralty. Rather, the decision whether to apply a state rule must be based upon balancing state and federal interests. In Kossick v. United Fruit Co.,[6] the court explained this process as follows:

> The fact that maritime law is—in a special sense at least—federal law, and therefore supreme by virtue of Article VI of the U.S. Constitution, carries with it the implication that wherever a maritime interest is involved no matter how slight or marginal it must displace a local interest, no matter how pressing or significant. But the process is surely rather one of accommodation, entirely familiar in many areas of overlapping state and federal concern or a process somewhat analogous to the normal conflict of laws situation where two sovereignties assert divergent interests in a transaction as to which both have some concern.

The question before the Kossick court was whether to apply the state statute of frauds rule which would have made unenforceable an oral promise by an employer to pay for an employee's injuries. Or the opposite federal statute of frauds rule which would have resulted in enforcement of the promise. Applying the balancing of interests approach, the court included that the contract between the seaman and his employer was not "peculiarly a matter of state and local concern" and that the oral promise should be enforced.[7]

---

5. Moragne; East River Steamship Corp. v. Transamerica Delaval, 476 U.S. 858, 865, n. 2, 106 S.Ct. 2295, 2299, n. 2, 90 L.Ed.2d 865, 1986 AMC 2027 (1986); DeLoach v. Companhia de Navegacao Lloyd Brasileiro, 782 F.2d 438, 1986 AMC 1217 (3d Cir.1986).

6. 365 U.S. 731, 739, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961), rehearing denied 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961).

7. Id. at 741, 81 S.Ct. at 893.

The Kossick court's approach is echoed by the court in Romero, which stated as follows:

> To claim that all enforced rights pertaining to matters maritime are rooted in federal law is a destructive oversimplification of the highly intricate interplay of the states and the national government in their regulation of maritime commerce. It is true that state law must yield to the needs of a federal maritime law when this court finds inroads on a harmonious system. But this limitation still leaves the states a wide scope * * *. State rules for the partition and sale of ships, state laws governing the specific performance or arbitration agreements, state laws regulating the effect of the breach of the warranty under contracts of marine insurance: All of these laws and others have been accepted as rules of decision in admiralty cases even, at times, when they conflicted with a rule of maritime law which did not require uniformity. * * * Here, as is so often

Thus, the actual scope of possible application of state law in admiralty is quite broad; there are several theories under which state decisional law or legislation may be applied in maritime cases:

(1) Borrowing

(2) Default

(3) Maritime but local

(4) Supplementation

First, since the body of federal maritime statutes and judicially created general maritime law is not a complete system, judges in admiralty cases frequently adopt state law rules through a process of "borrowing," thereby incorporating them into the general maritime law.[8] This "borrowing" process is frequently accomplished; for example, much of general maritime tort law is borrowed state law.[9] The general maritime law has also adopted state agency law.[10] In this borrowing process the federal courts prefer to borrow the general common law rather than the law of any particular state because this promotes uniformity in the general maritime law.[11] The basic constraint on this practice of borrowing is that the state law must neither contravene a clearly established rule of general maritime law nor impair the principle of national uniformity that underlies the federal and maritime admiralty statutes.[12]

---

true in our federal system, allocations of jurisdiction have been carefully wrought to correspond to the realities of power and interest in national policy. 358 U.S. at 373–75, 79 S.Ct. at 480 (footnotes omitted).

8. Hebert v. Outboard Marine Corp., 638 F.Supp. 1166 (E.D.La.1986), where the court stated, "Where there is no uniform federal rule courts applying maritime law may adopt state law by express or implied reference or 'by virtue of the interstitial nature of federal law' citing Palestina v. Fernandez," 701 F.2d 438, 1984 AMC 910 (5th Cir.1983).

9. See, e.g., Jones and Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768, 1983 AMC 1881 (1983), on remand 711 F.2d 570 (3d Cir. 1983); Earl v. Bouchard Transportation Co., Inc., 735 F.Supp. 1167 (E.D.N.Y.1990), affirmed in part, remanded in part 917 F.2d 1320, 1991 AMC 1060 (2d Cir.1990).

Borrowing is appropriate rather than the application of state law when there is great diversity among the laws of the states. See Wells v. Liddy, 186 F.3d 505, 525, 2000 AMC 2112 (4th Cir.1999).

10. Atlantic and Gulf Stevedores v. Revelle Shipping Agency, Inc., 750 F.2d 457 (5th Cir.1985).

11. See Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd., 959 F.2d 49, 1993 AMC 2268 (5th Cir.1992), rehearing denied 963 F.2d 754, 1993 AMC 2274 (5th Cir.1992); Conner v. Aerovox, Inc., 730 F.2d 835, 1984 AMC 2507 (1st Cir.1984); East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–865, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865, 1986 AMC 2027 (1986).

12. See e.g., Sea–Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1973 AMC 2572 (1974), rehearing denied 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974) [allowing loss of consortium claim to be brought in maritime wrongful death action after court had concluded (1) that state wrongful death statutes were nearly uniform in allowing such claims and (2) that the claim was not barred by any established and inflexible federal maritime rule]; Byrd v. Byrd, 657 F.2d 615, 1981 AMC 2563 (4th Cir.1981) ["admiralty law at times looks to state law either statutory or decisional to supply the rule of decision where there is no admiralty rule on point"]; Alvez v. American Export Lines, Inc., 46 N.Y.2d 634, 415 N.Y.S.2d 979, 389 N.E.2d 461, 1979 AMC 906 (1979), cert. granted 444 U.S. 924, 100 S.Ct. 261, 62 L.Ed.2d 180 (1979), affirmed 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284, 1980

Second, the application of state law in admiralty is a *default* rule: state law applies if there is no well-established federal admiralty rule and there is no need to create one. The leading case on this issue is Wilburn Boat Co. v. Fireman's Fund Ins. Co.,[13] which held that state law should be applied to a warranty provision in a marine insurance contract. This default doctrine has been widely applied, however, in other admiralty contexts.[14]

Third, an admiralty case may allow the application of state law as such and even the decisional or statutory law of a particular state on three conditions: (1) where there is no applicable admiralty rule; (2) where local and state interests predominate; and (3) where the uniformity principle is not crucial.[15] This principle allows the application of a particular state law even where uniformity is impaired on the basis that the predominant interest in the matter is on the state level despite the presence of a maritime claim.[16] The doctrine which allows the application of particular state laws in admiralty cases is sometimes given the awkward name "maritime but local." The essence of the "maritime but local" doctrine is a search for accommodation between competing state and federal interests. The doctrine is difficult to manage because it can be applied only on a case-by-case basis analogous to the conflict of laws situation where two sovereignties assert divergent interests in the same transaction. The courts are required to analyze the competing interests and to make a choice between federal or state concerns.[17]

---

AMC 618 (1980) [allowing loss of consortium claim to be brought in personal injury and maritime action since such claims are allowed in most states]; Bodnar v. Hi-Lex Corp., 919 F.Supp. 1234, 1996 AMC 1661 (N.D.Ind.1996) [admiralty recognizes the doctrine of contribution].

13. 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

14. E.g., Ingersoll Milling Machine Co. v. M/V Bodena, 619 F.Supp. 493, 1987 AMC 988 (S.D.N.Y.1985); Young v. Players Lake Charles, 47 F.Supp.2d 832, 1999 AMC 2529 (S.D.Tex.1999); Greenly v. Mariner Management Group, 192 F.3d 22, 2000 AMC 475 (1st Cir.1999).

15. Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), rehearing denied 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243 (1955); St. Hilaire Moye v. Henderson, 496 F.2d 973, 1974 AMC 2661 (8th Cir.1974); Conticarriers & Terminals, Incr v. Delta Bulk Terminal, 807 F.Supp. 1252 (M.D.La. 1992).

16. See Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924) where the Supreme Court held that a state court could apply a New York law that provided specific performance of an arbitration clause in a maritime contract. See also Madruga v. Superior Court, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954) which allowed the application of a California partition remedy to supplement the availability of the *in rem* procedure of general maritime law. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921) where the Supreme Court allowed a state wrongful death statute to apply in the case of a longshoreman killed while working in the hold of a vessel.

In Morcher v. Nash, 26 F.Supp.2d 758, 1999 AMC 1413 (D.Vi.1998) the court applied local law in an admiralty case because local interests predominated.

In Zych v. Unidentified, Wrecked and Abandoned Vessel, 941 F.2d 525, 1992 AMC 532 (7th Cir.1991), on remand 811 F.Supp. 1300, 1993 AMC 2201 (D.Ill.1992), affirmed 19 F.3d 1136, 1994 AMC 2672 (7th Cir. 1994) the court upheld the application of state law on a "waiver of preemption" theory since Congress, in enacting the Abandoned Shipwreck Act, precluded the application of the federal law of salvage and the law of finds.

17. See e.g., Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488, 1986 AMC 1641 (11th Cir.1986) where the court stated the analysis as follows:

Fourth, state law may be applied in an admiralty case as long as it supplements but does not contravene the admiralty rule.[18] Thus, in Yamaha Motor Corp. v. Calhoun[19], the Supreme Court held that state wrongful death remedies are available to supplement federal remedies for non-seafarers killed in admiralty jurisdiction. This rule requires a preemption analysis, an issue which is the subject of the next section.

In addition to *whether* state law applies in admiralty, two conflicts-of-laws issues bedevil the courts. First, even if state law is found to apply, a court may have to decide which state law is most appropriate, a statute or the common law rule. This was the issue in Princess Cruises v. General Electric Co.,[20] where the court decided that although the

---

One must identify the state law involved in determining whether there is an admiralty principle with which the state law conflicts, and if there is not such admiralty principle consideration must be given to whether such an admiralty rule could be fashioned. If none is to be fashioned the state rule should be followed. * * * If there is an admiralty-state conflict, comparative interest must be considered * * * they may be such that admiralty shall prevail as in Kossick v. United Fruit Co., * * * or if the policy underlying the admiralty rule is now sworn and the effect on admiralty is minimal, the state law may be given effect * * *

See also Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305, 1960 AMC 527 (1960), on remand 282 F.2d 633 (9th Cir.1960); Just v. Chambers, 312 U.S. 383, 387–88, 61 S.Ct. 687, 690–91, 85 L.Ed. 903, 1941 AMC 430 (1941); In re M/T Alva Cape, 405 F.2d 962, 1969 AMC 805 (2d Cir.1969).

This choice of law interest analysis is frequently referred to as the "maritime but local doctrine," which derives from Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). The Garcia case concerned the death of a longshore worker and the doctrine was originally invented to allow the application of state law. The maritime but local doctrine in personal injury cases, however, was laid to rest in Davis v. Department of Labor and Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), rehearing denied 317 U.S. 713, 63 S.Ct. 438, 87 L.Ed. 567 (1943) where the Supreme Court invented the concept of a twilight zone where both state law and the Longshore and Harbor Workers Compensation Act could apply. However, the concept was revived in other contexts such as Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), rehearing denied 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243 (1955) which applied state law to construe the warranty provisions of a marine insurance contract. In 1961, however, the Supreme Court correctly transformed the "maritime but local" doctrine into a choice of law interest analysis which calls upon the court on a case-by-case basis to analyze which sovereignty, federal or state, has the predominant interest in a particular matter.

18. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). See, e.g., Maryland National Bank v. Darovec, 820 F.Supp. 1083, 1994 AMC 122 (N.D.Ill.1993) (state self-help repossession remedy applies in maritime foreclosure action); Southworth Machinery v. F/V Corey Pride, 994 F.2d 37, 1993 AMC 2261 (1st Cir.1993) (state attorney's fee statute cannot apply since it is inconsistent with maritime law); Delta Marine, Inc. v. Whaley, 813 F.Supp. 414, 1993 AMC 2825 (E.D.N.C. 1993) (state punitive damages remedy cannot apply because of inconsistency with maritime law).

19. 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, 1996 AMC 305 (1996). On remand, the court ruled that while Pennsylvania law governs the determination of compensatory damages and Puerto Rican law governs the recovery of punitive damages, federal admiralty law standards govern the defendant's liability. 216 F.3d 338, 2000 AMC 1865 (3d Cir.2000). See also Wells v. Liddy, 186 F.3d 505, 2000 AMC 2112 (4th Cir.1999). State contract law may be applied to maritime contracts where such application is not inconsistent with admiralty principles when it applied Mississippi law to an action by a shipyard against a contractor for breach of contract and tortious interference with contract. Ham Marine, Inc. v. Dresser Indus., 72 F.3d 454, 1996 AMC 1210 (5th Cir.1995). See also Hails v. Sun Oil, 653 So.2d 851 (La.App. 1995).

20. 143 F.3d 828, 1998 AMC 2539 (4th Cir.1998).

Uniform Commercial Code (U.C.C.) may apply in admiralty, the common law was more appropriate in the case at bar, which was principally concerned with the rendering of services rather than the sale of goods.[21]

Second, a court may have to apply choice of law principles to determine which state law applies if two or more states have an interest in the particular case. This issue is resolved by applying federal choice of law, the Restatement (Second) of Conflicts of Laws approach, to determine which state has the most significant relationship to the transaction at hand.[22]

The courts will also generally honor the parties' choice of law decision where there is agreement in advance.[23]

### § 4–3.  Preemption in Admiralty

The principles of preemption to resolve conflicts between federal and state law rest upon the authority of Article VI of the U.S. Constitution, which declares federal law to be the supreme law of the land. Thus, federal legislation, if enacted pursuant to the Congress's constitutionally delegated authority, can nullify conflicting state or local law. Preemption can rest upon several different theories. First, Congress may expressly provide that federal law supplant state authority; second, preemption can be implied from the federal law purpose; third, state law is preempted to the extent that it actually conflicts with federal law; and fourth, Congress's intent to preempt may be inferred from pervasive federal regulation of the field.[1]

---

21. Id. at 833.

22. E.g. American Home Assur. Co. v. L & L Marine Serv., 153 F.3d 616, 1998 AMC 2789 (8th Cir.1998).

23. E.g., Morcher v. Nash, 26 F.Supp.2d 758, 1999 AMC 1413 (D.Vi.1998); New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 1998 AMC 603 (2d Cir.1997).

**§ 4–3**

1. E.g., Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); Worm v. American Cyanamid Co., 970 F.2d 1301 (4th Cir.1992), on remand 1992 WL 368062 (D.Md.1992). Barnard v. Zapata Haynie Corp., 975 F.2d 919, 1993 AMC 402 (1st Cir.1992).

For an example of statutory preemption in admiralty, see Polo Ralph Lauren v. Tropical Shipping & Constr. Co., 215 F.3d 1217, 2000 AMC 212 (11th Cir.2000) [COGSA preempts tort and contract claims].

The Supremacy Clause of the Constitution provides Congress with the power to preempt state law. Preemption may occur in any one of at least four situations: (1) express preemption, which results when Congress expresses a clear intent to preempt state law, Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383–84, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992), on remand 966 F.2d 1512 (5th Cir.1992); Louisiana Public Serv. Comm'n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986); (2) implied preemption which results when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); (3) conflict preemption, which results from an actual conflict between federal and state law even though Congress is silent, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), rehearing denied 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963); and (4) field preemption, which results from a determination that Congress intended to remove an entire subject from state regulatory authority, Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Preemption may result also from action taken by a