COX, WOOTTON, GRIFFIN,
HANSEN & POULOS LLP
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

LAW OFFICES OF RICHARD P. WAGNER
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10,<br><br>Defendants.<br><br>And Related Counterclaims | Case No.: CV 07-02952 WHA<br><br>**PLAINTIFF DEL MAR SEAFOODS, INC.'S TRIAL BRIEF SUMMARIZING EVIDENCE REGARDING APPLICATION OF DEBTS TO PROMISSORY NOTE AND MORTGAGE; ALLOCATION OF PAYMENTS; PROVISION OF INTEREST AND APPLICATION OF ASSIGNMENT**<br><br>Date: May 23, 2008<br>Time: 7:30AM<br>Courtroom: 9, 19th Floor<br><br>Honorable William H. Alsup |

I.   **INTRODUCTION**

Plaintiff DEL MAR SEAFOODS, INC. ("Del Mar") hereby submits this brief to outline the testimony presented at trial to establish that Barry Cohen agreed that certain debts were added to the debts covered by the promissory note and preferred mortgage.

1   As an alternative, even if the Court were to find that the evidence is not sufficient to
2   establish that the debts were added to the promissory note and mortgage, the Court should
3   still find that Barry and Christene Cohen owe $106,654.78 because they agreed that the
4   payment of $175,000 would be applied to pay other debts including the debts of Michael and
5   Leonard Cohen that he agreed to "be responsible for" and the "inventory" that he took at the
6   conclusion of the JV.

7   II.   **EVIDENCE AT TRIAL**:

8   A.   All of the Cohen's Debts to Del Mar are Covered by the Promissory Note and Mortgage:

10   During the examination of Barry Cohen on May 22, 2008 the following testimony
11   was read into the record from a deposition that Mr. Cohen gave in the Avila Beach litigation.
12   Preparatory to reading this testimony, Del Mar entered in evidence to Trial Exhibits (TE) 37
13   & 38. TE 37 is a copy of a "Schedule of Payments" spreadsheet that shows how payments
14   made by Barry Cohen were applied by Del Mar. TE 38 is an updated spreadsheet showing
15   additional payments.

16   TE 37 was created between November 10, 2005 (the date of the $175,000 payment
17   shown on the exhibit) and November 15, 2005 (the date that it was faxed by Barry Cohen to
18   his attorneys for use in his deposition taken on November 16, 2005 – the very next day). The
19   proof of the fax time and date is shown at the top of TE 37.

20   The Court has asked how Del Mar ties the debts of Michael Cohen, Olde Porte Inn
21   (Leonard Cohen's company), and "Inventory" to the promissory note. The answer is found in
22   Barry Cohen's repeated admissions that these items were covered by the promissory note.

23   The first admission occurs in Barry Cohen's testimony in the Avila Beach case in
24   which he was asked what documents he was given by Joe Roggio:

25   Q.   Okay. And what are the documents that you were – that were provided to you
26        by Mr. Roggio?
27   A.   A copy of the promissory note and a list of **payments I made on that note..**

1   Cohen Depo, Avila Beach Case, Vol 3, page 348:21 – 24[1]

2   Having identified TE 37 as a list of payments made **"on that [the promissory] note"**,

3   Barry Cohen was then questioned about the spreadsheet and what it showed. He testified:

4   Q.   And with respect to the balance, principal balance recited in the first

5        paragraph of the notice (sic), $215,000, how was that figure arrived at?

6   A.   I think it was a low guess.

7   Q.   A low guess?

8   A.   A guess.

9   Q.   Of what?

10  A.   Of the money that I borrowed for the boat from Del Mar. But I don't think

11       they knew exactly how much everything was.

12  Q.   Directing your attention to Exhibit 398 (TE 37). Can you identify that

13       document for the record.

14  A.   Yes.

15  Q.   Would you do so.

16  A.   It's a Del Mar Seafoods, Inc. schedule of payments.

17  Q.   And what does the schedule of payments relate to?

18  A.   What I paid, what the boat owed, what inventory was owed for Avila,

19       receivable on Olde Port Inn and on Michael Cohen.

20  **Q.   So this document, Exhibit 398 (TE 37), does not relate to the promissory**

21  **     note?**

22  **A.   Yes.**

23  **Q.   It does?**

24  **A.   Yes.**

25  ***

26  Q.   Okay. Can you explain to me why the principal balance owed under the terms

---

[1]   This testimony and that which follows are what Counsel's notes show as having been read into the Court's record. The daily transcript citations are not yet available.

Plaintiff's Trial Brief Re Testimony at Trial of Balance Due Under Promissory Note

1    of the promissory note, Exhibit 397 (TE 37), dated effective October 31, 2003,
2    is $215,000, and the beginning balance reflected on this schedule of payments
3    documents is $295,429?

4  A.  **Because I took the responsibility for these amounts owed and just put it**
5      **on mine.**[2]

6  Q.  Okay. So the beginning balance does not relate to the promissory note
7      balance. Correct?

8  A.  No, but – **it relates to the promissory note**.

9  Q.  Well, I'm looking at all of these figurres, Mr. Cohen, and let's start with
10     Barry, the column Barry, $237,035.48. That's the beginning balance. That
11     doesn't tie with the $215,000 principal balance owed pursuant to the terms of
12     the promissory note.

13 A.  Right.

14 Q.  Okay. How does it – how does that total relate to the promissory note
15     obligation?

16 A.  I just told you that the $215,000 was a low estimate.

17 Q.  Okay.

18 A.  So –

19 Q.  You owed money over and above the $215,000?

20 A.  **Right**. But we didn't know how much. This was just prepared a few days
21     ago. This – a lot of this was not known until a few days ago.

22 Q.  And "this," you're referring to Exhibit 398 (TE 37)?

23 A.  Yes.

24 Q.  The Michael Cohen beginning balance, what does that relate to?

25 A.  Money that Michael Cohen owes.

---

[2] The Court should note the use of the plural "these" when referring to the debts and the singular "mine" when referring to the promissory note. This is very similar to what Joe Roggio testified were Barry's words: "add it to my balance" (also singular). This testimony is strong evidence that there was only one "balance" under the promissory note that he was testifying about.

Plaintiff's Trial Brief Re Testimony at Trial of Balance Due Under Promissory Note

1 Q. For what?
2 A. For purchases that he made.
3 Q. Purchases of what?
4 A. Of Seafood from Del Mar.
5 Q. Okay. Olde Port Inn, what does that –
6 A. Purchases.
7 Q. Of fish?
8 A. Yes.
9 Q. Okay. Inventory, what does that relate to?
10 A. Fish and supplies.
11 Q. **Point Loma, what does that refer to?**
12 A. **I think that was an advance or advances.**
13 Q. **And the Barry Column, what does that beginning balance number refer**
14 **to?**
15 A. **That was probably the beginning balance of where I was at the time of**
16 **this promissory note.**
17 Q. And the total amount, $237,035, what does that total include?
18 A. I couldn't tell you offhand.
19 Q. Advances?
20 A. At the time they were not advances, **but they turned into advances. This is**
21 **what Joe Roggio was talking about when we were going to go partners in**
22 **the boat, and we did a lot of work on the boat to get ready for Mexico.**
23 **That was going to be Joe'' contribution to the 50/50.**
24 Q. Joe Cappuccio?
25 A. Yes.
26 Q. Okay. Now, regarding the schedule of payments, you've got a Barry payment
27 on December 22nd, 2004 of $5,000.
28 A. Right.

| | | |
|---|---|---|
| 1 | Q. | The next payment, I can't read the date, but the 24th of some month in 2005, |
| 2 | | American payment, what is that? |
| 3 | A. | A check they received from a fish company paying them by mistake. |
| 4 | Q. | Okay. Olde Port payment on 9/14/05. |
| 5 | A. | That's just what it says. |
| 6 | Q. | Olde Port Inn? |
| 7 | A. | No. |
| 8 | Q. | Okay. |
| 9 | A. | Olde Port Fisheries. |
| 10 | Q. | Okay. And November 10, 2005, payment from Barry, $175,000. |
| 11 | A. | Yeah. |
| 12 | Q. | Okay. You paid Del Mar $175,000 last week? |
| 13 | A. | Last week or the week before. |
| 14 | Q. | Okay. And what was the source of the funds you used to make that payment. |
| 15 | A. | Got a second on my house. |

Cohen Depo, Avila Beach Case, Vol. 3, page 510:6 – 514:22.

The above testimony (emphasis added) was read into the record of the trial. Taken in context of the questioning specifically about a document reflecting **"payments I made on that note"** it is explicit testimony that the payments reflected related to the promissory note. If the payments were made on the promissory note were, then obviously the debts were covered by the promissory note. Barry admits this when he testified that the "Beginning balance" "relates to the promissory note." The "beginning balance" shown on TE 37 includes all of the categories of debt at issue: Michael Cohen, Olde Port Inn, Inventory, Point Loma and Barry.

Barry Cohen has made other admissions that the accounting provided by Del Mar related to the promissory note. TE 40 is the note that Barry Cohen sent to Del Mar with his payment of $2,000 on January 30, 2007. In that note he confirms the accuracy of Del Mar's accounting shown on TE 37. Barry Cohen wrote:

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

> Joe,
>
> Please credit my account. With this payment, if your analysis was correct, the new balance should be $139,749.79.

The Court may notice that in his note, Barry Cohen refers to only a singular "account" and a singular "balance." The "balance" is exactly the amount shown on TE 38 when the final two payments of $3,000 each ($6,000 total) are added back in. In other words, this is evidence that Barry Cohen was working from the spreadsheet in both his Avila Beach trial and in his personal accounting.

Barry Cohen has also admitted during this trial that he told Joe Roggio of Del Mar that he would "be responsible" for the debts of Michael and Leonard. He admitted that this conversation occurred in 2004 when the Joint Venture was wrapped up, and the testimony of Michael and Leonard Cohen by deposition readings confirmed both the substance and timing of these admissions. Joe Roggio said that Barry Cohen told him (Joe) to "add it to my balance." The fact that Barry told Joe Roggio that he would be "responsible" for the debts of Michael and Leonard (Barry's wording) and / or that the debts should be "added to his balance" (Roggio's wording) is significant for two reasons. First Barry Cohen made no distinction regarding what "balance" there was. In the Court's order granting in part and denying in part summary judgment, the Court held that a finder of fact could conclude that some of the debts were secured and others were not. Since Barry Cohen has not presented any evidence that he ever discussed or maintained an accounting of a separate balance, Del Mar contends that such a finding would be clearly erroneous. In order for such a finding to be based on the evidence, Barry Cohen must come forward with some evidence that there was a separate accounting balance.

B.  In the Alternative, Only the Michael Cohen and Olde Port Inn Debts Could be Considered Unsecured

As noted above, the Court has stated in its order on the summary judgment motion that a trier of fact might conclude (on that record) that there were some debts that were

Plaintiff's Trial Brief Re Testimony at Trial of Balance Due Under Promissory Note

secured and others that were not. If the Court were to make such an ultimate finding then only the Michael and Leonard debts would be unsecured. These total $31,989.50. (TE 37 & 38).

The testimony of Barry Cohen in the Avila Beach case is that the "inventory" debt was for "fish and supplies" after the joint venture ended in September, 2004 and the "Point Loma" debt was for "advances" (clearly covered by the promissory note and mortgage). The "Barry" column he has also admitted was the "beginning balance" under the promissory note. As a result, even if the debts for Michael and Leonard are excluded, then the promissory note balance would still be $258,440.03 less payments.

C. Allocation of Payments

The parties do not dispute that a total of $188,000 has been paid to Del Mar. This amount came in five payments starting December 22, 2004 and ending on April 25, 2007. Only the allocation of the $175,000 payment dated November 10, 2005 is in dispute. Joe Roggio testified that when the payment was made he went over the allocation with Barry Cohen and they agreed on the allocation to each of the different balances that were then owed by Barry.

Barry Cohen testified in the Avila Beach case about Schedule of Payments (TE 37) just one week after he made the $175,000 payment. *Not once in his deposition did he dispute the allocation, but instead he produced the document as evidence of payments he made "on that note."* Barry Cohen's note to Del Mar of January 30, 2007 (TE 40) is of course further evidence that he accepted the allocation made during his discussions with Joe Roggio.

If the allocation shown on TE 37 is correct, then a total of $143,010.50 out of the $175,000 payment was applied to the note balance ($6,608.49 + $16,021.31 + $120,380.70). Deducting this amount from the original balance of even the lower figure of $258,440.03 left a balance owing of $115,429.53 plus interest. There have been $8,000 in payments since then leaving a remaining balance of $107,429.53 plus interest.

D. Interest

Barry Cohen must still take the stand and testify about interest on the note. The Court

Plaintiff's Trial Brief Re Testimony at Trial of Balance Due Under Promissory Note

has already heard, however, what he admitted in his testimony in the Avila Beach case, and it is obvious that his earlier testimony stands in stark contrast to his allegations in this matter. In the Avila Beach litigation, Barry Cohen testified one week after making the $175,000 payment that he did not know why he was not being charged interest. His testimony was:

> Q. Were you assessed interest under the terms of this promissory note?
>
> A. No.
>
> Q. Why not?
>
> A. I don't know.

In his declaration filed in this Court (TE 79, ¶11) Barry Cohen swore that "Joe Roggio told me at another meeting that, if I made the advance payment, he would see to it that the vessel loan with Del Mar would be interest free." During the trial on May 22, 2008 Mr. Cohen admitted that this alleged conversation occurred before he gave Del Mar the $175,000 check. It is highly suspect that Mr. Cohen would remember a specific conversation with Joe Roggio when he signed his declaration in this case, yet could not recall that earlier conversation when he testified just a few days after he made the $175,000 payment.

Joe Roggio testified that he never had a conversation with Barry Cohen in which he agreed that by making the payment Barry Cohen's balance would be interest free. Chris Cohen testified via deposition that she did not know of any such agreement (although she is a half debtor on the promissory note and mortgage), and Joe Cappuccio testified that Del Mar charges interest to everyone and never waives it. In short, Barry Cohen's testimony on the interest is not credible. Interest under the promissory note is at 7.0%.

E.     The Assignment

The Court has raised a concern that the assignment may apply to preclude certain debts from being effectively transferred to Del Mar. Del Mar has previously provided a trial brief that discusses the broad recognition of oral contracts in maritime law. The State law statutes of fraud do not apply. The parties were free to, and did, agree to transfer debts from the joint venture to Del Mar, and they did so with good reason. As Mr. Cohen has admitted,

Del Mar was the financial backer of the joint venture. When the joint venture was closed at the end of September, 2004, Barry Cohen was given full credit for his half interest in the joint venture, and this left Del Mar as the entity entitled to collect on the debts. This was explained by Joe Roggio in his trial testimony on May 22 when he testified:

Q. We talked about the Michael Cohen and Leonard Cohen debts, Olde Port Inn debts. Those were debts that were incurred to the joint venture, is that right?

A. Yes, they were.

Q. How did those end up on Del Mar's books?

A. Basically, when we had ceased the operation in Avila Beach, we had transferred over those balances, the balances that were left in the joint venture over to Del Mar Seafood's books.

Q. Okay.

A. And later, after discussion wit Barry, they were transferred over. Well, the amounts that you're referring to were then added to Barry's account.

Q. You guys were joint venturers in Avila Beach, right? In that JV, you, Del Mar and Barry?

A. Yes, we were.

Q. Did Barry get some sort of a credit or how did – if those were joint venture debts to collect, how did they end up on Del Mar's books as opposed to Barry's or split evenly with Barry?

A. Basically, these numbers were included in the final balances of the joint venture.

Q. What does that mean from an accounting standpoint?

A. Well, basically Barry already received his credit for those. When we had ceased the books for the joint venture, there was an ending figure. And Barry had received his fifty percent credit for that, in essence, for his fifty percent share into that joint venture. I think it's important to note that in this case there was a loss here. So Del Mar Seafoods funded that whole operation. So

|   |   |   |
|---|---|---|
| 1 |   | in order for – I mean, so basically those losses basically carry over to Del Mar |
| 2 |   | Seafoods, because Del Mar Seafoods funded those losses. |
| 3 | Q. | Okay. So did Barry – just so we're clear, Did Barry get the credit for |
| 4 |   | whatever the value is of his fifty percent interest in those? |
| 5 | A. | Yes, he did. Whenever there was a profit in the joint venture we had issued a |
| 6 |   | check to Barry for his fifty percent share which he accounted for on his |
| 7 |   | personal tax return. That only left Del Mar's fifty percent share left in the |
| 8 |   | joint venture, which was added to Del Mar Seafood's tax return. So we each |
| 9 |   | split of fifty percents. Barry accounted for his personally on his tax return. |
| 10 |   | De Mar took their fifty percent and accounted for it on their tax return. |
| 11 | Q. | So once these debts were transferred over they became Del Mar's, not the |
| 12 |   | JV's? |
| 13 | A. | Correct. |
| 14 | Q. | And when did that transfer take place? |
| 15 | A. | On or around the September 30th. Realistically, probably a few days after the |
| 16 |   | September 30th close date. |

Trial Transcript: pages 106:6 – 108:3.

## IV.   CONCLUSION

There is very strong evidence that Barry Cohen believed and testified that all of the debts shown on TE 37 and 38 were debts under the promissory note and mortgage (which incorporate each other). His testimony in the Avila Beach case consistently tied his answers to questions about the balance due under the promissory note. He directly admits that TE 37 "relates to the promissory note" and that the "beginning balance" on that spreadsheet "relates to the promissory note."

Even if the Cohen brothers debts are excluded, Barry Cohen still owes a substantial balance due under the promissory note and has failed to make his monthly payments.

There is no credible evidence that there was any agreement to waive the monthly payment obligations or interest.

Under the facts as presented at trial, the Court should find that Barry and Christene Cohen were in default of the terms of the promissory note and mortgage and are indebted to Del Mar for the full amount of the claim including interest.

Dated:   May 22, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: /s/ Gregory W. Poulos
Gregory W. Poulos

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

Plaintiff's Trial Brief Re Testimony at Trial of Balance Due Under Promissory Note