**COX, WOOTTON, GRIFFIN,
HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. <br><br> And Related Counterclaims | Case No.: CV 07-02952 WHA <br><br> **PLAINTIFF'S POST-TRIAL BRIEF RE QUESTIONS FOR ORAL ARGUMENT** <br><br><br><br> Hearing Date: June 16, 2008 <br> Time: 3:00 p.m. <br> Courtroom 9, 19th Floor <br> Hon. William H. Alsup |

In response to the Court's focus on the following issues for possible oral argument, and understanding that the Court may rule without such argument, Plaintiff Del Mar Seafoods, Inc. hereby submits this brief addressing the issues raised by the Court.

1. What is the evidence in favor of plaintiff's proposed finding No. 27?

Roggio at RT 106:6-107:11

2. What is the evidence in favor of whether additional advances were made personally to Barry Cohen after the note was signed?

Roggio at RT 65:23-66:18; 67:10–70:1; 71:6-74:12; 76:5-17; 85:15-87:9; 210:22-211:2; 213:7-18; Cohen at RT 279:10-282:5; 285:12-291:9; 468:16 – 469:12; 507:4-17; 510:15-512:1; Michael Cohen at RT 242:8 – 11; Leonard Cohen at RT 250:2 - 20

3. On the facts of our case, what is the law on whether the $175,000 payment should be treated as prepayment of installments into 2009?

- *Harman v. Walsh* (1951) 102 Cal.App.2d 608;
- *Smith v. Renz* (1954) 122 Cal.App.2d 535

(Copies attached)

Dated: June 6, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: /s/ Max L. Kelley
Gregory W. Poulos
Max L. Kelley

LEXSEE 102 CAL. APP. 2D 608

Caution
As of: Jun 03, 2008

ALBERT ERVAN HARMAN et al., Appellants, v. JAMES J. WALSH et al., Respondents

Civ. No. 17708

Court of Appeal of California, Second Appellate District, Division One

102 Cal. App. 2d 608; 228 P.2d 333; 1951 Cal. App. LEXIS 1352

March 5, 1951

**PRIOR HISTORY:** [***1] APPEAL from a judgment of the Superior Court of Los Angeles County. Kenneth C. Newell, Judge.

Action for specific performance and damages to which defendants filed a cross-complaint to quiet title.

**DISPOSITION:** Affirmed. Judgment for defendants affirmed.

**COUNSEL:** Martin P. Deming and Henry W. Cutter for Appellants.

W. Roger Revelle, Wellborn, Barrett & Rodi, Karl B. Rodi and Owen F. Goodman for Respondents.

**JUDGES:** Doran, J. White, P. J., and Drapeau, J., concurred.

**OPINION BY:** DORAN

**OPINION**

[*608] [**334] The action herein was instituted by the plaintiffs as purchasers under a contract for the sale of real estate, furniture and furnishings. Claiming an unlawful forfeiture by defendant sellers, the complaint seeks specific performance and damages. The defendants filed a cross-complaint [*609] to quiet title. Judgment was rendered in favor of defendants upon findings that the plaintiffs were in default in making payments, that such default had not been waived, that notice of forfeiture had been given. The trial court concluded that under the contract terms the defendants were entitled to retain as liquidated damages all sums paid by plaintiffs, and that plaintiffs had no right, [***2] title or interest in the property.

A written "Agreement for Sale of Real Estate" was executed by the parties on August 3, 1945, under which respondents agreed to sell the property to appellants for a price of $ 7,505. Appellants made a down payment of $ 100, and agreed to make monthly payments of $ 100.00 or more dollars, per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter, until such time as the principal has been reduced the amount of . . . $ 1,605.00." When such reduction in the amount due had been achieved, it was agreed that the property should be placed in escrow for the execution of a deed to plaintiffs and a trust deed back to defendants, the payments thereafter to be $ 50 or more per month. The sale had been effected through a broker whose commission of $ 395 appellants had agreed to pay. Upon execution of the agreement, appellants went into immediate possession of the property.

The agreement provides: "It is Understood and Agreed, that time is of the essence of this contract and should the buyer fail to comply with the terms hereof, then the Seller may at his option be released from all obligations in law and in equity to [***3] convey said property, and the buyer shall thereupon forfeit all right thereto and to all moneys theretofore paid under this contract as liquidated damages."

The record discloses evidence that no payment was made in February, 1946, and upon request for this payment the Harmans claimed that no payment was due in February for the reason that in prior months excess pay-

ments of more than $ 100 had been made. This interpretation was protested by the sellers, and in March, 1946, payment of $ 200 was made by the buyers. In April, May, June, July and August, 1946, the specified payments of $ 100 were duly made on the first days of those months. On September 1, 1946, two checks were presented by appellants, one of appellant Violet Harman for $ 49.27 which was dishonored at the bank, and another check of Harry R. Kelly, for $ 50.73 which was duly paid. [*610] Mr. Kelly was a brother of Mrs. Harman who occupied the property and paid rent to the [**335] Harmans of $ 50 per month. No further sum was ever paid to respondents in satisfaction of the September payment.

On September 15, 1946, respondents' attorney notified appellants in writing of the September default and that the latter's [***4] rights would be forfeited unless the default was cured by October 1, 1946. On October 1, 1946, on account of the October installment, Mr. Kelly, by check, made a $ 50 payment. No further payments were made by any person, and on October 14, 1946, respondents gave written notice of forfeiture to the appellants.

It is appellants' contention that the written contract of sale is ambiguous as to the amount of payments due each month; that "The construction . . . adopted by the parties and as understood by the plaintiffs was that if total payments of the contract equalled One Hundred ($ 100.00) Dollars per month, the plaintiffs had fully complied with the payment terms of the contract." Since the contract is ambiguous, say appellants, it should be construed in favor of appellants.

It is further insisted by appellants that by the acceptance of the $ 50 payment on October 1, 1946, defendants waived the right of forfeiture, and that a new notice of forfeiture was then necessary. Appellants also claim to be entitled to relief under *section 3275 of the Civil Code* providing that "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture . . . by reason of his failure to [***5] comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty." Appellants denominate the default as "merely technical," and aver that considering all payments made since inception of the contract, the total amounts to $ 22 more than the required monthly payments. It is therefore declared that "the equities are all strongly in favor of the Plaintiffs."

It is likewise contended that "Defendants, by their conduct, repudiated the contract, thus excusing further tender or offer of performance by the plaintiffs," and that "Plaintiffs were and now are ready, willing and able to perform the terms and conditions of the contract."

(1) The appellants' contentions are without merit, and the record discloses no reversible error. As pointed out in respondents' brief, the agreement of sale is clear and unambiguous; [*611] it means exactly what it says. By express terms the contract obligates the buyers to pay "$ 100.00 or more Dollars per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter." Nowhere in the instrument is there any [***6] suggestion that in the event appellants should pay more than $ 100 in one month, later monthly payments should be reduced by the excess. Appellants' only privilege was to pay "more" than the stipulated sum on the first of any month; no privilege to pay "less" than $ 100 in any one month is granted. To read such a provision into an explicit written contract would amount to imposing upon the sellers additional terms not mentioned in the written instrument and in effect would negative the provision that "time is of the essence of this contract."

(2) The record discloses evidence to support the finding that there was no intention to waive the above provisions or that the parties adopted any other interpretation. Indeed, after default in the February payment appellants, claiming that no payment was due because of previous excess payments, appear to have made up the deficit by paying $ 200 in March. For the next five months thereafter, hundred dollar payments were duly made by appellants on the first of each month until the defaults of September and October.

Appellants' briefs contain many references to the principles of equitable relief, and aver that great injustice will result if specific [***7] performance of the agreement of sale be not ordered. In this connection appellants allege willingness and ability to perform, and that "they have in good faith fully performed," at least substantially. It is well to bear in mind, however, that equity is concerned with the rights of both buyer and seller.

Here appellants went into immediate possession of the property upon a small [**336] payment of $ 100 and a promise to make regular monthly payments of a like amount. The sellers under this written contract had a right to expect such payments to be made as therein specified. Under the interpretation sought by appellants, however, respondents would be obliged to accept almost any payment tendered, on the assumption that sooner or later appellants would make up the deficit, an arrangement entirely different from that specified in the written instrument. The principles of equity, important as they are, do not comprehend such an impairment of contract obligation.

[*612] The trial court had before it various conflicting contentions and evidence relating thereto. It cannot be said that the findings and judgment adverse to

102 Cal. App. 2d 608, *; 228 P.2d 333, **;
1951 Cal. App. LEXIS 1352, ***

appellants' contentions are either unsupported by [***8] substantial evidence or contrary to law.

The judgment is affirmed.

LEXSEE 122 CAL.APP.2D 535

Caution
As of: Jun 03, 2008

### CRAIG P. SMITH et al., Respondents, v. MAE V. RENZ, as Administratrix, etc., Appellant

Civ. No. 15660

Court of Appeal of California, First Appellate District, Division One

*122 Cal. App. 2d 535; 265 P.2d 160; 1954 Cal. App. LEXIS 1081*

January 18, 1954

**PRIOR HISTORY:** [***1] APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Herbert C. Kaufman, Judge.

Action in declaratory relief.

**DISPOSITION:** Reversed with directions. Judgment for plaintiffs reversed with directions.

**COUNSEL:** Young, Rabinowitz & Chouteau and Walter Chouteau for Appellant.

Hancock, Elkington & Rothert for Respondents.

**JUDGES:** Finley, J. pro tem. * Peters, P. J., and Bray, J., concurred.

* Assigned by Chairman of Judicial Council.

**OPINION BY:** FINLEY

**OPINION**

[*536] [**161] This action in declaratory relief concerns the application of a substantial advance payment of principal made on a promissory installment note nearly five years before any of the installments became due. The question of interest is not involved. The point to be decided is how this advance payment is to be applied on the principal amount. Appellant contends that it should be applied to the last installments which would otherwise have fallen due under the note, and not to the first installments, or, if this position is untenable, then application cannot extend beyond the first installment, leaving all those following to come due according to schedule and amount until the principal [***2] sum is paid. Respondents on the other hand contend, and the trial court found, that this advance payment should be applied ". . . toward the first forty-seven maturing $ 500 monthly installments. . . ."

Appellant is administratrix of the estate of Walter J. Renz, deceased, the payee named in the note, and respondents are successors in interest to the assets of the Hotel Corporation of America, the obligor.

Prior to his death, Walter J. Renz and respondents were stockholders, officers and directors in the Hotel Corporation of America. Renz was offered the equity in an apartment building in Los Angeles in exchange for a ranch then owned by him. He agreed with the other directors that title should be taken in the name of the corporation. This was done and Renz took from the corporation the following installment note secured by a third deed of trust on the apartment building: "$ 148,000.00 San Francisco, California, June 20, 1947.

"In installments as herein stated, for value received, I promise to pay to Walter J. Renz, or order, at San Francisco, California, the sum of - - - One Hundred Forty-eight Thousand & no/100 - - - Dollars, with interest from the date hereof on unpaid principal [***3] at the rate of - - five - - per cent per annum, payable monthly; principal payable in installments of - - - Five Hundred & no/100 - - - Dollars *or more* on the first day of each and every month, beginning on the first day of July, 1952, and continuing until said principal and interest have been paid.

[*537] "Should interest not be so paid it shall thereafter bear like interest as the principal. Should de-

Case 3:07-cv-02952-WHA    Document 191    Filed 06/06/2008    Page 7 of 8

122 Cal. App. 2d 535, *; 265 P.2d 160, **;
1954 Cal. App. LEXIS 1081, ***

fault be made in payment of any installment of principal or interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees. This note is secured by a Deed of Trust to Southern California Escrow Company, a California corporation.

| "Hotel Corporation of America | | |
|---|---|---|
| "By John R. Bickel | and | Norman Elkington |
| "Its Vice-President | | Its Secretary" |

(Emphasis added.)

In September, 1947, Renz subscribed in writing for 235 shares of stock in the Hotel Corporation of America at $100 per [**162] share, totaling $23,500, and [***4] the following receipt was executed:

"Receipt is acknowledged by the undersigned Walter J. Renz of *payment* by the Hotel Corporation of America in the amount of Twenty-Three Thousand Five Hundred & no/100 Dollars ($23,500.00) *on* the certain promissory note of Hotel Corporation of America to Walter J. Renz dated June 20, 1947 in the amount of One Hundred Forty Eight Thousand Dollars which said promissory note is secured by deed of trust dated     recorded in Volume    Official Records of Los Angeles County, page    .

"Dated, September 15, 1947.

"Walter J. Renz." (Emphasis added.)

Renz died in 1949, and through correspondence exchanged between the parties to this action it developed that there was a difference of opinion as to how the $23,500 credit should be applied on the note. The filing of this action followed.

In their briefs the parties devote considerable attention to the correspondence which had passed between them and its influence upon the problem here. We do not deem it necessary to discuss the points raised pertaining to it, for the solution is not affected thereby. The parties do not contend that we must look beyond the instruments upon [***5] which the indebtedness and credit are founded if by their own terms they provide the answer.

The note provides that principal is "payable in installments of - - - Five Hundred & no/100 - - - Dollars *or more* on [*538] the first day of each and every month, beginning on the first day of July, 1952" and continuing until paid. (Emphasis added.) The subscription agreement provides for the $23,500 "to be paid for by cancellation of portion of corporation's indebtedness to me." The receipt by Walter J. Renz acknowledges payment of $23,500 "*on* the certain promissory note. . . ." (Emphasis added.)

(1) When payment is made *on* an obligation, unless there is some indication to the contrary, the practical and ordinary interpretation must undoubtedly be that payment is to be applied to the part first coming due to be paid. No rule or logical reason has been offered as to why, in the ordinary course of events, it should be approached the other way around. It certainly would not seem to be the ordinary thing to do, and it must be assumed that if the parties intended to depart from the ordinary they would have specifically so provided. Section 1479, subdivision 3, of the Civil [***6] Code may be deemed to bespeak such public or legislative policy as may exist on the point though it is conceded that installment obligations are not specifically mentioned. It provides in effect that if several obligations exist between a debtor and creditor and a payment is made by the debtor without designation as to the obligation on which it is to be credited, and if the creditor does not make an election within a reasonable time, the law will apply the payment to the obligation earliest in date of maturity.

(2) It would seem also to be stretching rules of construction and reason a bit to say that just because a payment was made in advance of the due date of the first of a number of installments it cannot be considered payment of the installment first coming due, but must, on the contrary, be credited directly to a number of installments which would not fall due for years to come. Appellant contends that this advance payment cannot be credited to an installment first coming due because the note does not provide that payments can be made on *or before* the dates specified. It would seem that this reasoning would apply with equal force to the last 47 installments to which appellant [***7] seeks to have the $23,500 applied.

If appellant's reasoning is sound, the note could be paid in full *on* any of the installment dates because it provides for payments of $500 *or more*, but because it does not provide that payments may be made on *or be-*

*fore* the installment dates, no payment at all can be credited to any *installment* [*539] unless paid *on* the actual due date. If it be said that this construction is too strict, then where in point of time is the line of distinction to be drawn? How long prior to the actual due date can a payment be made and still have legal standing as payment [**163] of an installment? Would it be a day, a week, or longer? The case of *Hanson v. Fox, 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A.N.S. 338]*, cited by appellant, is not in point and does not help us.

(3) In the absence of agreement to the contrary, it is undoubtedly the rule in installment cases providing for the payment of a specific amount *or more* at fixed intervals, that an excess payment made prior to or on one installment date is not effective to reduce the amount of or obviate the necessity of paying subsequent installments as they fall [***8] due according to the agreed schedule.

The case of *Harman v. Walsh, 102 Cal.App.2d 608 [228 P.2d 333]*, involved an agreement for the sale of real estate calling for payments of "$ 100.00 *or more* dollars, per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter, until such time as the principal has been reduced the amount of . . . $ 1,605.00." Payments in excess of $ 100 were made for several months and then fell below that amount. Notice of default was given to the buyer and the right of the seller to declare the buyer in default was upheld, even though the total amount which had been paid to the seller exceeded the amount which would have been paid in required monthly payments. In discussing the point, the court said: "Appellants' only privilege was to pay 'more' than the stipulated sum on the first of any month; no privilege to pay 'less' than $ 100.00 in any one month is granted." (P. 611.)

It will be noted in that part of the opinion just quoted, the court uses the language ". . . only privilege was to pay . . . *on* the first of any month . . ." The only question before the court was whether if the payor made an excess [***9] payment on one installment he was entitled to have the excess credited on those next successively following. It was held that he was not. The question of payor's right to make advance payment to apply only on the one installment next to become due was not involved. So even if the court there intended, by the use of this language, to restrict the payor's privilege to paying "*on*" the actual due date, it would be dicta and not binding as precedent here. Such a rule would be highly [*540] impractical, particularly in those instances where payments are sent by mail or from a distance. Law is reason and as far as is possible it should be tailored to practical living. It is not the purpose of the law to unnecessarily magnify technicalities into practical difficulties, where preferring the practical involves no substantial invasion of legal rights.

(4) What was intended by the parties is manifest by the language in the receipt for stock executed by Walter J. Renz and accepted by the corporation. The $ 23,500 was acknowledged as "*payment . . . on* the note" which is singular, not plural. (Emphasis added.) Had the term *payments* been used it might then have been logically [***10] argued that the $ 23,500 was intended to be applied to a number of installments rather than only one.

We are aware of no law or binding precedent to the contrary, and therefore hold that consistent with what we deem to be the intent of the parties the $ 23,500 must all be considered as an advance payment of the first installment of $ 500 *or more*, but that it does not in anywise affect the remaining schedule of installments provided in the note, other than to lessen the principal sum by that amount and consequently reduce the number of installments remaining to be paid.

Since the judgment of the trial court directed application of the $ 23,500 to the first 47 installments, instead of only the first, it must be, and it is, reversed with directions to the trial court to amend its findings and conclusions and to enter judgment in accordance with the views herein expressed.