**COX, WOOTTON, GRIFFIN,**
**HANSEN & POULOS LLP**
Gregory W. Poulos (SBN 131428)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

**LAW OFFICES OF RICHARD P. WAGNER**
Richard P. Wagner (SBN 166792)
700 Oceangate, Suite 700
Long Beach, CA 90802
Telephone: (562) 216-2946
Facsimile: (562) 216-2960

Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEL MAR SEAFOODS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BARRY COHEN, CHRIS COHEN (aka CHRISTENE COHEN), *in personam* and F/V POINT LOMA, Official Number 515298, a 1968 steel-hulled, 126-gross ton, 70.8- foot long fishing vessel, her engines, tackle, furniture, apparel, etc., *in rem*, and Does 1-10, <br><br> Defendants. <br><br> And Related Counterclaims | Case No.: CV 07-02952 WHA <br><br> **PLAINTIFF DEL MAR SEAFOODS, INC.'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES AND COSTS** <br><br><br><br> Honorable William H. Alsup |

Plaintiff DEL MAR SEAFOODS, INC. ("Del Mar") submits the following opposition to defendant's motion for award of attorneys' fees and costs.

I.   **INTRODUCTION**

Supreme Court and Ninth Circuit precedent require that the attorneys' fees awarded

1  "must be 'reasonable in relation to the success achieved.'" *Hensley v. Eckert*, 461 U.S. 423, 434 (1983); *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994).

Del Mar asserts that following the "lodestar method" for calculating attorneys' fees as set forth in *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), the reasonable fee in this case is no more than $34,400 (a sum equal to the actual damages awarded for the wrongful arrest). This opposition addresses the various "lodestar" factors as applicable to the pending motion.

## II.   STATEMENT OF FACTS

The facts and legal issues in this case were not complex. Del Mar alleged that the Cohens owed a substantial sum of money to Del Mar, while the Cohens alleged that they owed only $27,000. The sums alleged by Del Mar included advances that were made to Barry Cohen at various times over a period of years. Although the Cohens denied these sums were owed, the Court held that they "clearly" were:

> "...personal advances were made to Mr. Cohen by Del Mar in the amount of $22,035.48. Such advances were clearly covered by the mortgage and secured by the mortgage. In addition, subsequent advances for improvements of the F/V POINT LOMA were made in the amount of $16,021.33. These also were clearly covered by and protected by the mortgage. Contrary to the defense, further paperwork was not required to add these amounts to the mortgage, for it already covered any future advances made by Del Mar to the Cohens."

(FF at 4:11 – 16)

The Cohens also complicated this trial by denying their obligation to pay certain unsecured debts including the debts of their two sons and amounts Barry Cohen had promised to pay in legal fees from an earlier case. Despite the denials, the Court found against the Cohens on all of these items. As the court found in its *Findings of Fact and Conclusions of Law After Bench Trial* ("FF"):

> There is no question that Mr. Cohen agreed to be responsible for certain additional items, even if they were not secured by the vessel.

(FF at 11:20 – 21).

These unsecured debts included the debts of his two sons, Michael and Leonard. (FF

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

at 12:5 – 8). It also included inventory taken by Mr. Cohen. (FF at 12:9 – 10). The Cohens were also found to owe Del Mar for legal fees it incurred in earlier litigation between Mr. Cohen and the Avila Beach Harbor District. (FF at 14:7 – 17: "This item…is anchored in a straightforward promise by Mr. Cohen to Del Mar.").

Thus, although the Court found that the Cohens were not in default under the Note at the time that the Vessel was arrested, the Court found that, contrary to the positions taken by the Cohens, they owed virtually all of the money that Del Mar contended that they owed.

The other major issue in the case was the alleged damages suffered by the Cohens for the arrest of their fishing vessel. The Cohens contended throughout the case that they had lost substantial income as a result of the Vessel being arrested including both fishing profits, the value of a stolen fishing net, and the cost for advances to the Captain and crew. After a summary adjudication motion the Court threw out the claim for the loss of the fishing net, and after trial the court allowed only the advances given to the Captain and not to the crew. The Court in total awarded roughly one quarter of the damages the Cohens' claimed, and this was just $34,400.[1]

In the end, the case turned on the testimony of just a few witnesses (just seven witnesses testified at trial) and a few documents. Of the witnesses called, three of them were called only because the Cohens denied responsibility for the debts of their sons. These witnesses were the two sons and Chris Cohen, and all three's testimony were by deposition reading. These depositions and the time they took in Court could have been avoided had the Cohens not denied liability for the debts that the Court found there was "no question" they had agreed to be responsible for.

Similarly, the Cohens denied that they were responsible for paying the legal fees that Del Mar incurred in the Avila Beach litigation, and some time in this case was spent

---

[1] At the outset of this case, and up until the summary judgment motion and trial, the Cohens claimed damages of $146,250.78. This amount was comprised of $127,750.78 in lost fishing income for the two months that the vessel was under arrest, $16,000 in costs for the stolen fishing net, and $2,500 in the Cohens' alleged "estimated costs relating to the litigation." Declaration of Gregory W. Poulos, ¶18. At trial, The Cohens had claimed $68,000 in lost fishing profits alone, plus the costs of the payments to the crew and the value of the stolen fishing net. *See*, TT at 26:24 – 27:5. The total recovery of $34,400 is thus less than a quarter of what was alleged.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

deposing Mr. Cohen on these debts and presenting evidence about them at trial. As noted above, the Court found that these debts were legitimate and founded in Barry Cohen's "straightforward promise to pay."

In awarding the Cohens attorneys' fees, the Court should consider that the entire case would have been simpler, quicker, and cheaper to litigate had the Cohens and their counsel not denied the debts that were at issue or multiplied by more than a factor of four their damages for the arrest of the Vessel.

The Court should also be aware that Del Mar tried to reach a settlement of this case on several occasions and even offered the Cohens a "walk away" which would have left them in a far better position than the end result. Declaration of Gregory W. Poulos ("Poulos Dec."), ¶ 9.

The Cohens also fought unnecessary legal battles. For example, they brought a motion for a protective order to prevent the taking of the deposition of Mrs. Cohen even though they had designated Mrs. Cohen as a witness in their Rule 26 disclosures. The Court held that their motion for a protective order "should never have been brought." Declaration of Max L. Kelley ("Kelley Dec."), Exhibit 2, pg. 4, lines 12-13. Another example was the claim for the value of a fishing net that was stolen from the Cohens six weeks *after* the Vessel was arrested.

In the end, it was the Cohens' denial of legitimate debts, their claims for unjustified damages, and the filing of unnecessary motions that complicated what was otherwise a simple breach of contract action. The Cohens' efforts to complicate the case and to run up fees should not be rewarded with a large fee award.

### III. LAW AND ARGUMENT

The attorneys' fees awarded in this case must be limited to less than $100,000 for the following reasons.

#### A. The Attorneys' Fees Must Be Reasonable In Relation To The Success Achieved

In *Hensley v. Eckert*, 461 U.S. 423, 434 (1983), and *McGinnis v. Kentucky Fried*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

*Chicken*, 51 F.3d 805, 810 (9th Cir. 1994), the courts have held that any award of attorneys' fees must be "reasonable in relation to the success achieved." "Where the relief sought and obtained is limited to money, the terms 'extent of success' and 'level of success' are euphemistic ways of referring to money." *McGinnis*, 51 F.3d at 810. "It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee awarded." *Id.* (citing *Farrer v. Hobby*, 121 L.Ed.2d 494 (1992)).

An award of $127,242 in attorneys' fees in relation to damages of $34,000 was remanded to the district court in *McGinnis* with instructions to reduce the fee award. This remand occurred even though there was some public benefit conferred by the plaintiff in the McGinnis case.

The Court's judgment is that the Cohens are the prevailing party and they are therefore entitled to their reasonable attorneys' fees. The Cohens recovered only $400 more than the plaintiff in *McGinnis* and conferred no public benefit. Moreover, the Court also held that the Cohens *owe* Del Mar $128,748.07. The Cohen's *net* recovery is therefore a *loss* of $94,348.07. At most the Cohens can claim to have *won* $34,400 in damages (against a claim for more than four times that amount) and their attorneys' fees must bear a reasonable relationship to this modest sum. Based on the Ninth Circuit's decision in *McGinnis*, the award must be less than $127,000 and should be in accord with what a reasonable plaintiff would be willing to pay an attorney to obtain a recovery of $34,400. In this case, plaintiff believes the facts and the law support an award in the range of $34,400 - $50,000.

**B.    In Determining What Is "Reasonable" The Court Should Consider Whether Substantial Settlement Offers Were Made**

The Court should take into consideration substantial settlement offers as a factor in determining an award of reasonable fees. *Moriarty v. Svec*, 233 F.3d 955. (7th Cir. 2000). In *Moriarty* the Court held:

> Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply. *See, Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

1332, 1337 (4th Cir. 1996). Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation. *See Marek v. Chesny*, 473 U.S. 1, 11, 87 L. Ed. 2d 1, 105 S. Ct. 3012 (1985). Determining whether an offer is substantial is left in the first instance to the discretion of the district court. Nevertheless, an offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer.

As set forth in the Declaration of Gregory W. Poulos, during the mediation held on November 15, 2007 and even thereafter, the Cohens were offered a "walk away" settlement which would have forgiven the $128,748.07 which the Court found that they owe Del Mar. According to the billing records submitted by the Cohens' counsel, as of November 15, 2007 the Cohens owed $77,928.50 in legal fees though the mediation. Adding to that the damages that the Court found in their favor ($34,400) means that their total "damages" at that time were $112,328.50 ($34,400 + $77,928.50 = $112,328.50). Del Mar was offering to "walk away" and forgive all of the Cohens' debt which the Court has found to be $128,748.07. The "walk away" offer therefore would have left the Cohens in a far better position with a net *gain* of $16,419.57[2] rather than a net *loss* of $94,348.07. Under this analysis, the settlement offer of a "walk away" was a "substantial offer" which should be taken into consideration in determining the fee to award.

The fact that the settlement offer from Del Mar at mediation was substantially greater than what Cohen obtained at trial should be considered by the Court, and the Court should reduce the amount of fees requested to zero for the period of time after the settlement offer was made.

C.  **The *Kerr* Factors**

In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), the appellate court set forth a number of factors that the district court should consider in determining an

---

2    $128,748.07 owed and forgiven - $112,328.50 incurred = $16,419.57 positive value; compare $128,748.07 owed by Court order - $34,400 damages recovered = $94,348.07 still owed by Cohens.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

attorneys' fees award. These are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

The Cohens' brief does not discuss any of these factors, and under the Court's order for presentation of attorneys' fees they are not permitted to provide a reply brief and thus they have failed to address key issues required by Ninth Circuit precedent. Some of these items may not be applicable, but others clearly are, and they are discussed below.

### 1. Time and Labor Required

As discussed above, the time and labor required in this case was in no small measure due to the Cohens' refusal to admit to owing debts that they "clearly" owed Del Mar. Overall, the number of depositions were kept at a minimum, but at least four of these depositions (Chris Cohen, Michael Cohen, Leonard Cohen, and David Cantrell) could have been avoided altogether had the Cohens not disputed their legitimate debts. Poulos Dec., ¶11. Similarly, the Cohens could have saved much time by avoiding unnecessary motion practice such as with the motion for a protective order.

### 2. Novelty of Legal Issues

The case did not present any novel legal issues. Poulos Dec., ¶13.

### 3. Skill requisite to perform the legal services properly

There was skill required to perform the legal services, but the skill was not beyond that to be normally found within the local maritime legal community. Poulos Dec., ¶13.

### 4. Preclusion of other Employment

There is no evidence that the Cohens' attorneys were precluded from other employment during this case. In fact, there were various times when Del Mar was informed that the Cohens' attorney would be unavailable because he was actively involved in other

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

cases, particularly a case overseas. Poulos Dec., ¶14.

### 5. Customary Fee

The Cohens have submitted legal bills and declarations showing that they were charged $490 per hour going to $520 per hour by the Partner on the file (James Walsh) and $275 per hour going to $350 per hour by the Associate (Gwen Fanger). These rates are excessive and outside the norm for experienced attorneys in San Francisco handling the same type of matters.

Del Mar has submitted the declarations of its own counsel showing that the hourly rates for highly experienced Partners in San Francisco handling maritime arrest cases range from the low to mid $300.00 per hour figure and that the range for associates is $200.00 - $250.00 per hour. See Declarations of Gregory W. Poulos, Mr. Joshua Kirsch, and Edward Bull, filed herewith.

In support of the high rates charged to the Cohens, their attorneys have submitted three declarations from the firm's lead counsel on the case and two managing Partners responsible for setting the firm's billing rates. None of these declarations discuss the rates charged by other firms in San Francisco handling maritime-related civil litigation.

### 6. Whether the Fee is Fixed or Contingent

The Cohens have not addressed this issue in their papers, but there is some confusion on the point. Del Mar has asked for and received a copy of the fee agreement in which the Cohens agreed to pay an hourly fee and to make payments monthly within 30 days of receiving the invoice. On the other hand, the invoices submitted by their counsel shows that *none of the legal fees have ever been paid*. Thus, there is a substantial question whether there is some alternative fee agreement that has not been disclosed. The Court will be aware that it is highly unusual for a law firm to allow fees of more than $450,000 to be incurred over the course of a year without a single payment having been made.

### 7. Time Limitations Imposed by the Client or the Circumstances

There were admittedly some time limits imposed by virtue of the Vessel's arrest at the outset of the case, but once the Vessel was released from arrest in mid-August 2007 the case

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

DelMarSeafoods/2504

proceeded on a normal schedule.

**8.     The Amount Involved and the Results Obtained**

The amounts involved were a claim for approximately $138,000 in principal plus interest on Del Mar's claim and the Cohens' claim for roughly $146,250 in lost profits and other claims. Ultimately, the Cohens were found to owe virtually all of the sums claimed by Del Mar and recovered less than a quarter of the damages they claimed.

**9.     The Experience, Reputation and Ability of the Attorneys**

All counsel in this case are experienced maritime attorneys of good ability and reputation..

**10.    The Undesirability of the Case**

There was nothing "undesirable" about this case.

**11.    The Nature and Length of the Professional Relationship with the Client**

Mr. Cohen filed a declaration in this case stating that he had been referred to Mr. Walsh by another attorney, and this fact is supported by the legal bills that show a referral by Mr. D. Wood. As a result Del Mar understands that there was no ongoing or existing client relationship.

**12.    Awards in Similar Cases**

As discussed above, the most analogous case is the decision in *McGinnis* where the plaintiff recovered $34,000 in damages and $127,242 in attorneys fees, and the Ninth Circuit reversed and remanded the case to the district court with instructions to reduce the fee award to be "commensurate with the monetary value of plaintiff's success."

**D.    <u>Defendant's Hours Are Excessive For Particular Tasks</u>**

The Court has requested that the parties divide their time into particular tasks so that the Court can determine whether the time spent for that task was appropriate and comparable to the time spent by the other party on the same tasks. Del Mar contends that some of the time spent by the Cohens' counsel on particular tasks was excessive. The following discussion addresses these particular items. Tables documenting both the objectionable line items and the time expended on the same or similar task by plaintiff's counsel are attached to

the Declaration of Max L. Kelley as Exhibit 1.

**Project 16, Defendants' Deposition of Joe Cappuccio**: On 12/10/07 J. Walsh spent 1.6 hours to "Review matters regarding depositions; check rules; conference with G. Fanger regarding the same." This time is excessive for someone of Mr. Walsh's qualifications and experience and is not reasonable. Plaintiff respectfully requests the Court to strike this amount in its entirety, or alternatively, to reduce it to a reasonable amount, 0.2 hours.

Mr. Walsh has documented $3,920.00 in fees for 8.0 hours to "Defend deposition of Dave Cantrell" on 12/27/07. However, not only is this line item erroneously included under Project 16, Mr. Walsh has also included $3,920.00 for 8.0 hours preparing for, attending, following up, and return travel for Mr. Cantrell's deposition the same day under Project 19, Plaintiff's Deposition of Dave Cantrell. One of these duplicative line items should be stricken entirely.

**Project 24, Trial Brief**: Defense counsel document 47.5 hours spent preparing its trial brief equating to $16,317.50 in billed attorneys' fees, including up to 4.0 hours for legal research regarding the parol evidence rule. In contrast, plaintiff documented only 7.3 hours and billed $2,315.00 in attorneys' fees for preparing its own trial brief. Defendants' attorneys' fees for preparing its trial brief should be reduced to ten hours, a reasonable amount of hours commensurate with plaintiff's expenditure.

**Project 27, Defendants' Motion in Limine re Parol Evidence Rule**: Defendants' counsel document 28.6 hours spent preparing its *unsuccessful* motion, including an additional 3.7 hours for legal research regarding the parol evidence rule, and $10,078.00 billed. In contrast, plaintiff spent only 13.7 hours preparing its opposition to defendants' motion in limine and for which it billed $3,565.00. Kelley Dec., Ex. 1. The bringing of *unsuccessful* in limine motions should most likely not be rewarded at all. If, however, the Court is inclined to make some award for this Project, the time spent should be reduced to 15 hours, a reasonable amount of hours commensurate with plaintiff's expenditure.

**Project 33, Settlement Conference**: Defendants' counsel document 32.1 hours to prepare its Settlement Conference Statement for the settlement conference with J. Larson,

and billed $11,626.00. This amount of time is excessive given that mediation had already taken place and defendants' Settlement Conference Statement could easily and efficiently have been adopted from defendants' previously prepared Mediation Brief. In comparison, plaintiff spent only 13.3 hours preparing its Settlement Conference Statement, for which it billed $3,805.00. Kelley Dec., ¶ 1. Defendants' attorneys' fees for preparing its Settlement Conference Statement should be reduced to 15 hours, a reasonable amount of time commensurate with plaintiff's effort.

**Project 34, Preparation of Cross-Examination of Joe Roggio**: Defense counsel G. Fanger spent 4.6 hours and billed $1,610.00 to issue a trial subpoena to J. Roggio, including 3.2 hours to "analyze" and "conduct legal research regarding service of trial subpoenas." The amount of time expended on this task is excessive for an attorney of Ms. Fanger's experience and qualifications, accounting for the brevity of the document, *and given that counsel reached an agreement to accept service of trial subpoenas on behalf of the each other's party witnesses*. By way of comparison, plaintiff spent only 1.7 hours preparing it trial subpoenas, for which it billed $475.00. Defendants' hours and fees should be reduced to 2 hours for preparing trial subpoenas, which is a reasonable amount and in line with plaintiff's expenditures for the same tasks.

Ms. Fanger also spent an excessive amount of time preparing "Roggio witness file" between May 5 and May 15, 2008, 9.8 hours, equating to $3,430.00 in fees. A reasonable amount of time to spend on such a nebulous task would be 3 hours.

**Project 35, Preparation for Cross Exam of Joe Cappuccio**: Defense counsel G. Fanger documented 0.2 hours to "Analyze rules regarding issuance of trial subpoena to Cappuccio" in addition to the 0.2 hours spent on the same task for J. Roggio's trial subpoena. This work is redundant and unreasonable and should be stricken. Furthermore, Ms. Fanger spent an additional 1.4 hours to prepare Mr. Cappuccio's trial subpoena, which is grossly excessive considering her qualifications and experience, the brevity of the document, and that counsel reached a mutual agreement to accept service of each other's party witness subpoenas. The time counsel spent preparing Mr. Cappuccio's trial subpoena should be

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

reduced to a reasonable amount, 0.5 hours.

**Project 41, Defendants' Damages Analysis**: Defense counsel spent 10.0 hours and billed $3,500.00 to research and prepare their motion in limine to recover defendant B. Cohen's travel expenses for attending certain proceedings in San Francisco. ***Defendants lost this motion on two separate grounds.*** A party asserting invalid claims for damages should not be rewarded with attorneys fees when those claims are denied by the Court. Therefore, the entire amount is excessive and unreasonable and should be stricken completely. In the alternative, if defense counsel's efforts in bringing this motion in limine are found to be compensable, the amount of time expended is excessive and should be reduced accordingly.

In contrast to the hours and fees claimed by defense counsel for this motion in limine, plaintiff's most junior counsel and fresh out of law school, J. Taliaferro, billed only 7.1 hours and $770.00 in fees to oppose the defendants' motion. Defense counsel's time should be reduced to a reasonable amount more in line with plaintiff's effort, 3-4 hours, depending on the hourly rate ultimately used.

For the same reasons, $355.00 billed for 0.9 hours spent pursuing defendants' claim for damages for its missing fishing net should be stricken completely, or at least reduced substantially. That issue was raised by plaintiff's motion for summary judgment and plaintiff *prevailed* on that issue.

Plaintiff also defeated defendants' cause of action for the breach of the implied covenant of good faith and fair dealing on summary judgment, therefore, the 100+ hours defendants spent opposing plaintiff's motion should be reduced accordingly by 15%, the approximate weight given to that cause of action in proportion to the motion as a whole. At Ms. Fanger's hourly rate of $350.00 per hour this would reduce the legal fees by $15,000.

Tables referencing the specific line items for the preceding projects, as well as plaintiff's line items for the same or similar projects are attached as Exhibit 1 to the concurrently filed Declaration of Max L. Kelley.

E.    **Duplicate Time Entries**:

The Court's order concerning the procedure for documenting attorneys' fees provides

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

that normally having more than one attorney attending depositions or hearings is excessive. Plaintiff objects to the defendants' line items documenting proceedings at which both counsel for defendants' attended as being duplicative and therefore excessive and unreasonable. Only the amount for the less experienced attorney is proposed to be stricken. A table containing the objectionable line items is attached the Declaration of Max L. Kelley as Exhibit 1.

Plaintiff respectfully requests the Court strike these amounts as unreasonable.

F. **Unnecessary and Unrelated Legal Work:**

Plaintiff's objects to the following fees as being unreasonable because they were charged for legal work that was *unrelated* to this case and the issues being litigated and were therefore *unnecessary* and *unreasonable*. The specific line items objected to are contained in the tables attached to the Declaration of Max L. Kelley as Exhibit 1.

Project 2, Release of Vessel and Related Motions: Plaintiff objects to the work performed by defense counsel to revive the corporate status of defendant F/V Point Loma Fishing Company, Inc. This was a business expense that should have been normally incurred by defendants alone.

Project 10, Respond to Plaintiff's Document Requests: Defense counsel spent a total of 17.9 hours and billed $5,167.50 to contest plaintiff's request for defendant B. Cohen's income tax records, including 4.3 hours spent by Ms. Fanger regarding the discoverability of tax records (Project 19, 12/20/07 and 12/26/07). After several meet and confers and following letter briefs to the Court by both sides, defendants' finally relented and produced the requested documents. In light of defendants' stubborn and ill-conceived resistance to turn over documents that plaintiff was clearly entitled to, and defendants themselves had put in play, this was time and money that should never have been expended in the first place. Plaintiff respectfully requests that the Court strike the entire amount as being unreasonable.

Project 15, Defendants' Motion for Protective Order Regarding Deposition of Chris Cohen: The Court will recall that defendants identified Chris Cohen, defendant Barry Cohen's wife, as a witness in their Rule 26 disclosures and then sought to protect her from having to be deposed. Defendants' improper efforts in that regard resulted in the need for

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

motion practice. The Court stated during the hearing on defendants' motion for a protective order that the motion "should never have been brought" and ordered the deposition to proceed. Kelley Dec., Exhibit 2. Defendants should not now be awarded any attorneys' fees for a motion that should never have been brought in the first place. Plaintiff respectfully requests the Court strike all 35.0 spent by defense counsel on this task and the $11,681.00 in attorneys' fees, as well as $780.00 in attorneys' fees for 1.5 hours spent by J. Walsh on 1/2/08 and erroneously included under Project 16 in preparing for the discovery hearing, and the $82.50 in fees for 0.3 hours spent by G. Fanger on 12/26/07 for analyzing the opposition for replying to motion for protective order, also erroneously included under Project 16.

As plaintiff is objecting to every line item for this Project, only a summary has been included in Kelley Dec., Ex. 1.

Project 43, Deposition Designations for Use at Trial: Defense counsel G. Fanger includes $1,015.00 for 2.5 hours for "conduct research regarding rules for out of state subpoenas" on 5/6/08. This time is related to her own client being asked to appear for trial and should be known to an attorney of Ms. Fanger's qualifications and experience. Plaintiff respectfully requests the Court strike the entire amount.

**IV.    COSTS**

Per the Court's order, costs are to be determined "in strict compliance with the local rules." Defendants have failed to submit a bill of costs, supporting affidavit(s), or any supporting documentation as required by Local Rule 54-1(a). The Table of Defendants' Costs that defendants have submitted lists many costs that are not allowed under the federal and local rules. In particular, the Table lists improper costs for:

A. Unspecified copying[3]: ($3,345.70)

B. Costs for Service of Copies to Court: ($579.23)

C. Lexis Nexis Research costs: ($5,372.50)

D. Airfare. ($511.00)

---

[3] Under local rule 54-3(d) only certain copying costs are allowed. Since there is no breakdown of what costs are correlated with the charges, none should be recoverable.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES & COSTS

1  E.  "Working Meals" and other travel: ($1,083.33)

2  F.  Local Cab Fare, parking and Car Rental: ($536.13)

3  G.  "Law Library" expenses: ($7.20)

4  H.  Court reporter fees for depositions taken in other matters as these are essentially

5  copying costs: ($2,708.05)

6  Defendants have failed to follow the local rules regarding submission of their costs bill, therefore, all of their costs should be disallowed. Alternatively, if the Court finds defendants are entitled to some of their costs despite their failure to follow the proper procedure, plaintiff submits defendants' costs should be reduced by the preceding improper amounts.

**Total reduction in costs per local rules: $14,143.14.**

## V.  CONCLUSION

In this case the Cohens actually lost when the Court considers that they were found to owe more than they have recovered in damages. The most that the Cohens can claim to have "won" is $34,400 in damages for the arrest of their vessel. Under the Supreme Court and Ninth Circuit cases, their award of attorneys' fees must bear a reasonable relationship to this recovery. It must, under the authority of the *McGinnis* case, be something less than $127,000, and Del Mar contends it should be substantially less. Keeping in mind that the Cohens turned down a substantially better settlement offer, their fees and expenses after the mediation should be disallowed or very substantially reduced. In addition, even if the court delves into the individual tasks of the attorneys, many must be reduced as duplicative and unnecessary or excessive work.

Del Mar suggests a reasonable fee award would be between $34,400 and $50,000, but no more.

Dated: July 28, 2008

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Plaintiff
DEL MAR SEAFOODS, INC.

By: _____/s/_____
Gregory W. Poulos